## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

JENNIFER MORRILL, individually and
on behalf of all others similarly situated,

               Plaintiff,

    v.

LAKEVIEW LOAN SERVICING, LLC,

               Defendant.

Case No. _____

**CLASS ACTION COMPLAINT**

JURY DEMAND

COMPLEX

Plaintiff Jennifer Morrill ("Plaintiff"), individually and on behalf of all others similarly situated ("Class Members"), brings this Class Action Complaint against Lakeview Loan Servicing, LLC ("Lakeview" or "Defendant"), and alleges upon personal knowledge as to her own actions and the investigation of her counsel, and upon information and belief as to all other matters, as follows:

### INTRODUCTION

1.    Plaintiff brings this Class Action Complaint against Defendant for its failure to adequately secure and safeguard electronically stored, personally identifiable information ("PII") that Defendant collected and maintained, including, without limitation, first and last names, mailing addresses, loan number and/or Social Security number, as well as additional information provided to Defendant in connection with a loan application, a loan modification, or other items regarding loan servicing.[1]

2.    Lakeview is the fourth largest mortgage servicing company in the United States servicing mortgage loans for over 1.4 million customers.  This includes processing payments,

---

[1] *See* Exhibit A, Notice of Data Breach letter.

managing escrow, and providing customer service in connection with mortgage loans.[2]

3.      As a result of its business, Lakeview maintains contact details and other personal information about individuals in connection with their mortgages.

4.      Individuals entrust Defendant, or the companies that do business with Defendant, with an extensive amount of their sensitive PII. Defendant makes public statements that it understands the importance of protecting such information. For example, in its website Privacy Policy, Lakeview represents that it "recognizes the importance of keeping the personal information you provide to us private and secure," that it "use[s] the latest technology to ensure that your personal information is secure," and that it "respects your privacy."[3]

5.      Despite these proclamations, however, in early December 2021, Defendant learned that an unauthorized actor breached its system and accessed and acquired electronic files containing the PII of Defendant's customers, including Plaintiff's and Class Members' data (the "Data Breach"). The data included, at least, Plaintiff's and Class Members' first and last names, mailing addresses, loan numbers and Social Security numbers, and in some instances "information provided in connection with a loan application, loan modification, or other items regarding loan services."[4]

6.      By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties to those individuals.

7.      The exposed PII of Plaintiff and Class Members was, upon information and belief, already listed for sale on the dark web. Plaintiff and Class Members have already been the victims of actual fraud perpetrated with the PII stolen from Defendant, and face a present and immediate

---

[2] https://lakeview.com/about/ (last accessed March 28, 2022).
[3] https://lakeview.com/privacy-notice/ (last accessed March 28, 2022).
[4] Exhibit A.

lifetime risk of identity theft, which is heightened here by the loss of their birthdates and Social Security numbers.

8.      This PII was compromised due to Defendant's negligent, careless, and intentional acts and omissions and the failure to protect the PII of Plaintiff and Class Members.

9.      Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of its inadequate information security practices; and (iii) avoid sharing the PII of Plaintiff and Class Members without adequate safeguards. Defendant's conduct amounts to negligence and violates federal and state statutes.

10.     Plaintiff and Class Members have suffered concrete injury as a result of Defendant's conduct. These injuries include: (i) fraudulent misuse of the stolen PII that is fairly traceable to this Data Breach; (ii) lost or diminished value of PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; and (v) the present and immediate risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

11.     Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff's and Class Members' PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable,

required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, the PII of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized criminal third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## PARTIES

12.     Plaintiff Jennifer Morrill is a resident and citizen the State of California and intends to remain domiciled in and a citizen of the State of California.

13.     Defendant Lakeview Loan Servicing, LLC is a Delaware limited liability company with a principal place of business in Coral Gables, Florida.

14.     All of Plaintiff's claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because this is a class action wherein the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant. Plaintiff is a citizen of California and therefore diverse from Defendant, which is headquartered in Florida and incorporated in Delaware.

16.     This Court has personal jurisdiction over Defendant because Lakeview has its principal place of business within this District.

17.     Defendant is subject to the personal jurisdiction of the Court because it transacts business in, has agents in, or is otherwise found in and has purposely availed itself of the privilege

4

of doing business in Florida and in this District, and because the alleged misconduct occurred in this District.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred or were intentionally directed to residents and customers in this District.

## FACTUAL ALLEGATIONS

### *Background*

19.     Lakeview operates as the fourth largest mortgage servicer in the United States, owning the servicing rights to over 1.4 million customers' mortgages. This includes processing customer information in connection with processing payments, managing the escrow, and providing customer services for existing mortgages.

20.     Plaintiff and Class Members relied on this sophisticated Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand security to safeguard their PII.

21.     Defendant had a duty to adopt reasonable measures to protect Plaintiff's and Class Members' PII from involuntary disclosure to third parties.

### *The Data Breach*

22.     In its Notice of Data Breach, Defendant admits that cybercriminals accessed its computer systems and file storage servers from October 27, 2021 to December 7, 2021.[5]

23.     More than three months after discovering the Data Breach, Defendant publicly announced that it had experienced the Data Breach.[6] Defendant sent notice letters to various states'

---

[5] *See* Exhibit A.
[6] *Id.*

Attorneys General and to approximately 2,537,261 individuals impacted by the Data Breach. The

Notice to Plaintiff Morrill, for example, stated:

> We are writing to inform you of an incident that involved some of your information.[7]

24.    Also in the notice to impacted individuals, Defendant stated:

> **What Happened?**
> Lakeview owns the servicing rights to your mortgage loan.  A security incident involving unauthorized access to our file servers was identified in early December 2021. Steps were immediately taken to contain the incident, notify law enforcement, and a forensic investigation firm was engaged.  The investigation determined that an unauthorized person obtained access to files on our file storage servers from October 27, 2021 to December 7, 2021.  The accessed files were then reviewed by our investigation team to identify the content.
>
> **What Information Was Involved?**
> On January 31, 2022, the review process generated a preliminary list of individuals, including you, whose name, address, loan number, and Social Security number were included in the files.  We then took extensive measures to review that list to ensure accuracy and prepare the list to be used to mail notification letters.  For some, the accessed files may also have included information provided in connection with a loan application, loan modification, or other items regarding loan servicing.   The additional loan related information in the files is not the same for all individuals.
>
> **What We Are Doing.**
> We regret that this incident occurred and apologize for any inconvenience.  Additional steps are being taken to further enhance our existing security measures.

*Id.*

25.    Defendant admits that an unauthorized criminal party gained "unauthorized access

to" electronic files that contained sensitive PII belonging to Plaintiff and Class Members.

Defendant also admits that the PII included "name, address, loan number, and Social Security

number" and that "[f]or some, the accessed files may also have included information provided in

connection with a loan application, loan modification, or other items regarding loan servicing." *Id.*

26.    In response to the Data Breach, Defendant claims that "[a]dditional steps are being

---

[7] *Id.*

taken to further enhance our existing security measures."[8] However, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure a breach does not occur again have not been shared with the states' Attorneys General or Plaintiff and Class Members, who retain a vested interest in ensuring that their information remains protected.

27.     Moreover, Defendant concedes Plaintiff and Class Members now face a present and immediate risk of identity theft because their sensitive PII has been stolen ("obtained") by criminals. In particular, Defendant advised Plaintiff and Class Members in the Notice to obtain identity monitoring services including "Credit Monitoring, Fraud Consultation, and Identity Theft Restoration."[9]

28.     Plaintiff's and Class Members' non-encrypted information has already, or may in the immediate future, end up for sale on the dark web, or may simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiff and Class Members.[10] Because of this Data Breach, unauthorized individuals have and can in the future easily access the PII of Plaintiff and Class Members.

29.     Upon information and belief, Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, non-encrypted information it was maintaining for Plaintiff and Class Members, causing their PII to be exposed.

30.     To prevent and detect cyber-attacks Defendant could and should have

---

[8] *Id.*

[9] *Id.*

[10] It is clear that the information exposed in the Data Breach was unencrypted: California law requires companies to notify California residents "whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person" due to a "breach of the security of the system[.]" Cal. Civ. Code § 1798.82(a)(1) (emphasis added). Defendant notified the California Attorney General of the Data Breach on Mar. 18, 2022, evidencing that the exposed data was unencrypted.

implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users, Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions— with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical

separation of networks and data for different organizational units.[11]

31.     To prevent and detect cyber-attacks Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[12]

32.     To prevent and detect cyber-attacks attacks Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

---

[11] *How to Protect Your Networks from Ransomware*, *available at* https://www.justice.gov/criminal-ccips/file/872771/download (last visited Mar. 29, 2022).

[12] *See Security Tip (ST19-001) Protecting Against Ransomware* (original release date Apr. 11, 2019), *available at:* https://us-cert.cisa.gov/ncas/tips/ST19-001 (last visited March 28, 2022).

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events;

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[13]

33.     Given that Defendant was storing the PII of Plaintiff and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyber-attacks.

34.     Upon information and belief, the occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent ransomware attacks, resulting in the Data Breach and the exposure of the PII of an undisclosed amount of current and former consumers, including Plaintiff and Class Members.

***Defendant Acquired, Collected and Stored Plaintiff's and Class Members' PII.***

35.     Defendant acquired, collected, and stored Plaintiff's and Class Members' PII.

36.     As a condition of providing the full range of its services, Defendant required that Plaintiff and Class Members entrust Defendant with highly sensitive, confidential PII.

37.     By obtaining, collecting, and storing the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was

---

[13] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at:* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited March 28, 2022).

responsible for protecting the PII from disclosure.

38.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

### Securing PII and Preventing Breaches

39.     Defendant could have prevented this Data Breach by properly securing and encrypting the PII of Plaintiff and Class Members. Alternatively, Defendant could have destroyed the data that was no longer useful, especially outdated data.

40.     Defendant's negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to businesses to protect and secure sensitive data.

41.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

### Defendant Failed to Comply with FTC Guidelines

17.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

18.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly

dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[14] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[15]

19.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

20.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

21.     Upon information and belief, Defendant failed to properly implement basic data security practices.

22.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' PII constitutes an unfair act or

---

[14] Protecting Personal Information: A Guide for Business, Federal Trade Commission (Oct. 2016), *available at*: https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited March 28, 2022).
[15] *Id*.

practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

23.     Defendant was at all times fully aware of its obligation to protect the PII of Plaintiff and Class Members. Defendant was also aware of the significant repercussions that would result from its failure to do so.

### Defendant Failed to Comply with Industry Standards

24.     Several best practices have been identified that at a minimum should be implemented by companies like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data, and; limiting which employees can access sensitive data. Defendant failed to follow these industry best practices.

25.     Other best cybersecurity practices that are standard in the lead exchange industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

26.     Upon information and belief, Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

13

27.     These foregoing frameworks are existing and applicable industry standards in the industry, and Defendant failed to comply with these accepted standards thereby opening the door to the cyber incident and causing the data breach.

### *Value of Personally Identifiable Information*

28.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[16] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[17]

29.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[18] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[19] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[20]

30.     Social Security numbers, for example, are among the worst kind of PII to have

---

[16] 17 C.F.R. § 248.201 (2013).

[17] *Id.*

[18] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited March 28, 2022).

[19] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited March 28, 2022).

[20] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited March 28, 2022).

stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[21]

31.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

32.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[22]

33.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to

---

[21] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited March 28, 2022).
[22] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited March 28, 2022).

change—Social Security number, driver's license number, addresses, and financial information.

34.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[23]

35.     Among other forms of fraud, identity thieves may use Social Security numbers to obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

36.     The fraudulent activity resulting from the Data Breach may not come to light for years.

37.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[24]

38.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members, including Social Security numbers, and of the foreseeable consequences that would occur if Defendant's data security system and network was breached, including, specifically, the significant costs that would be

---

[23] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited March 28, 2022).
[24] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last visited March 28, 2022).

imposed on Plaintiff and Class Members as a result of a breach.

39.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

40.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's server(s), amounting to potentially thousands of individuals' detailed PII, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

41.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

42.    The ramifications of Defendant's failure to keep secure the PII of Plaintiff and Class Members are long lasting and severe. Once PII is stolen, particularly Social Security numbers and financial information, fraudulent use of that information and damage to victims may continue for years.

### *Plaintiff Jennifer Morrill*

43.    Plaintiff Jennifer Morrill is a resident and citizen the State of California and intends to remain domiciled in and a citizen of the State of California.

44.    Plaintiff Morrill received a letter dated March 17, 2022 from Defendant concerning the Data Breach. The letter stated that her name, address, loan number, and Social Security number were exposed in the Data Breach.

45.     The letter also stated that "[f]or some, the accessed files may also have included information provided in connection with a loan application, loan modification, or other items regarding loan servicing."

46.     Plaintiff Morrill has suffered from misuse of her PII.  Following the Data Breach, in March 2022 an unauthorized party used Plaintiff Morrill's PII to access her credit card and to make four fraudulent charges on her account totaling over $1,500.  Also in March 2022, an unauthorized party attempted to access another of Plaintiff's credit cards.

47.     The actual fraud suffered by Plaintiff Morrill is fairly traceable to this Data Breach, as the type of PII stolen (most notably name, address, and Social Security number) is precisely the type of information that one would use to perpetrate the acts of fraud described herein. Moreover, the temporal proximity of the fraud to this Data Breach further demonstrates that Plaintiff Morrill's injury is fairly traceable to this Data Breach.

48.     Since learning of the Data Breach, Plaintiff Morrill made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to:  researching the Data Breach; reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud; and communications with various banking institutions regarding the multiple fraudulent charges detailed above. Plaintiff Morrill has spent at least 6 hours dealing with the fallout from this Data Breach, valuable time Plaintiff Morrill otherwise would have spent on other activities, including but not limited to work and/or recreation.

49.     The Data Breach has caused Plaintiff Morrill emotional distress due to the release of her PII, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her PII for purposes of

identity theft and fraud. Plaintiff Morrill is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

50.     Plaintiff Morrill suffered actual injury from having her PII compromised as a result of the Data Breach including, but not limited to: (a) damage to and diminution in the value of her PII, a form of property that Defendant obtained from Plaintiff Morrill; (b) violation of her privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

51.     As a result of the Data Breach, Plaintiff Morrill anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff Morrill is at a present, substantial and impending risk and will continue to be at increased risk of identity theft and fraud for years to come.

52.     Plaintiff Morrill has suffered present and immediate injury arising from the actual financial fraud perpetrated against her, and the substantially increased risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of unauthorized third-parties and possibly criminals.

53.     Plaintiff Morrill has sustained actual damages as a result of the injuries, including the time spent mitigating the financial fraud perpetrated against her, the lost value of her PII, and emotional distress.

54.     Plaintiff Morrill has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ALLEGATIONS

55.     Plaintiff brings this suit on behalf of herself and a class of similarly situated

individuals under Federal Rule of Civil Procedure 23, which is preliminarily defined as:

> All persons Lakeview Loan Servicing, LLC identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach (the "Nationwide Class").

56.  Plaintiff also seeks certification of a California sub-class defined as follows:

> All individuals residing in California whose PII was compromised in the data breach announced by Defendant on or about March 17, 2022 (the "California Subclass").

57.     The Nationwide Class and California Subclass are collectively referred to herein as the "Class" or "Classes."

58.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

59.     Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

60.     This action is brought and may be maintained as a class action because there is a well-defined community of interest among many persons who comprise a readily ascertainable class. A well-defined community of interest exists to warrant class wide relief because Plaintiff and all members of the Classes were subjected to the same wrongful practices by Defendant, entitling them to the same relief.

61.     **Numerosity.** The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time,

Defendant reported to the Maine Attorney General that 2,537,261 individuals had their PII compromised in this Data Breach. The identities of Class Members are ascertainable through Lakeview's records, Class Members' records, publication notice, self-identification, and other means.

62.     **Commonality.** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.   Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;

b.   Whether Defendant had a duty not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

c.   Whether Defendant had a duty not to use the PII of Plaintiff and Class Members for non-business purposes;

d.   Whether Defendant failed to adequately safeguard the PII Plaintiff and Class Members;

e.   Whether and when Defendant actually learned of the Data Breach;

f.   Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

g.   Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

h.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.   Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.   Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members;

k.   Whether Plaintiff and Class Members are entitled to actual damages, nominal damages, and/or statutory damages as a result of Defendant's wrongful conduct;

l.   Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

m.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

63.     **Typicality.** Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of every other Class member, was compromised in the Data Breach.

64.     **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel is competent and experienced in litigating Class actions, including data privacy litigation of this kind.

65.     **Predominance.** Lakeview has engaged in a common course of conduct toward Plaintiff and Class Members in that all the Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

66.     **Superiority.** A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is

superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Lakeview. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

67.     Lakeview has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

68.     Likewise, particular issues under Federal Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.  Whether Lakeview owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

    b.  Whether Lakeview's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

    c.  Whether Lakeview's failure to institute adequate protective security measures amounted to negligence;

    d.  Whether Lakeview failed to take commercially reasonable steps to safeguard consumer PII; and

e.  Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the data breach.

69.  Finally, all members of the proposed Class are readily ascertainable. Lakeview has access to Class Members' names and addresses affected by the Data Breach. Lakeview has already preliminarily identified and sent notice of the Data Breach to Class Members.

## COUNT I
### NEGLIGENCE
**(On Behalf of Plaintiff and the Nationwide Class)**

70.  Plaintiff and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 96.

71.  Lakeview knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

72.  Lakeview had a duty under common law to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' PII.

73.  Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were wrongfully disclosed.

74.  By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' PII held within it— to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its

24

security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

75.     Lakeview had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair. . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

76.     Pursuant to the Gramm-Leach-Bliley Act, Defendant had a duty to protect the security and confidentiality of Plaintiff's and Class Members' PII.  *See* 15 U.S.C. § 6801.

77.     Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or Class Members.

78.     Upon information and belief, a breach of security, unauthorized access, and resulting injury to Plaintiff and Class Members was reasonably foreseeable, particularly in light of Defendant's inadequate security practices, including sharing and/or storing the PII of Plaintiff and Class Members on its computer systems.

79.     Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and Class Members, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Defendant's systems.

80.     Defendant's own conduct created a foreseeable risk of harm to Plaintiff and Class Members. Upon information and belief, Defendant's misconduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included their decisions not to comply with industry standards for

the safekeeping of the PII of Plaintiff and Class Members, including basic encryption techniques freely available to Defendant.

81.   Plaintiff and Class Members had no ability to protect their PII that was in, and possibly remains in, Defendant's possession.

82.   Defendant was in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

83.   Defendant had and continues to have a duty to adequately disclose that the PII of Plaintiff and Class Members within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

84.   Defendant had a duty to comply with the industry standards set out above.

85.   Lakeview, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' PII within Lakeview's possession.

86.   Lakeview, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' PII.

87.   Lakeview, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the PII within Lakeview's possession might have been compromised and precisely the type of information compromised.

88.   Lakeview's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' PII to be compromised.

89.     As a result of Lakeview's ongoing failure to notify Plaintiff and Class Members regarding the type of PII that has been compromised, Plaintiff and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

90.     Lakeview's breaches of duty caused Plaintiff and Class Members to suffer from identity theft, fraud, loss of time and money to monitor their finances for fraud, and loss of control over their PII.

91.     As a result of Lakeview's negligence and breach of duties, Plaintiff and Class Members are in danger of imminent harm in that their PII, which is still in the possession of third parties, will be used for fraudulent purposes.

92.     There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiff and Class Members and the harm, or risk of imminent harm, suffered by Plaintiff and Class Members. The PII of Plaintiff and Class Members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII, by adopting, implementing, and maintaining appropriate security measures.

93.     Plaintiff seeks an award of actual damages on behalf of herself and the Class.

94.     Plaintiff seeks injunctive relief on behalf of the Class in the form of an order compelling Lakeview to institute appropriate data collection and safeguarding methods and policies with regard to customer information.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Nationwide Class)**

95.     Plaintiff and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 96.

96.     Through their course of conduct, Defendant, Plaintiff, and Class Members entered into implied contracts for the Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' PII.

97.     Defendant induced Plaintiff and Class Members to provide and entrust their PII, including name, address, loan number, and Social Security number, as a condition obtaining full use of all Defendant's services.

98.     Defendant solicited and invited Plaintiff and Class Members to provide their PII as part of its regular business practices. Plaintiff and Class Members accepted Defendant's offer and provided their PII to Defendant.

99.     As a condition of being customers of Defendant, Plaintiff and Class Members provided and entrusted their PII to Defendant. In so doing, Plaintiff and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such non-public information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been breached and compromised or stolen.

100.    A meeting of the minds occurred when Plaintiff and Class Members agreed to, and did, provide their PII to Defendant, in exchange for, amongst other things, the protection of their Private Information.

101.    Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

102.    Defendant breached the implied contracts it made with Plaintiff and Class Members by failing to safeguard and protect their PII, and by failing to provide timely and accurate notice to them that their PII was compromised as a result of the Data Breach.

28

103.     As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and Class Members have suffered (and will continue to suffer), ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

104.     As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members sustained damages as alleged herein.

105.     Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach, including the loss of the benefit of the bargain.

## COUNT III
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Nationwide Class)

106.     Plaintiff and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 96.

107.     This count is plead in the alternative to the breach of implied contract count above.

108.     Plaintiff and Class Members conferred a monetary benefit to Defendant when they provided their PII to Defendant in order to receive Defendant's services.

109.     Defendant knew that Plaintiff and Class Members conferred a monetary benefit to Defendant when it accepted and retained that benefit. Defendant profited from this monetary

benefit, as the transmission of PII to Defendant allows Defendant to perform its mortgage services, for which it receives compensation, and the receipt of PII is an integral part of Lakeview's business.

110.    Defendant was supposed to use some of the monetary benefit provided to it, directly or indirectly, from Plaintiff and Class Members to secure the PII belonging to Plaintiff and Class Members by paying for costs of adequate data management and security.

111.    Defendant should not be permitted to retain any monetary benefit belonging to Plaintiff and Class Members because Defendant failed to implement necessary security measures to protect the PII of Plaintiff and Class Members.

112.    Defendant gained access to the Plaintiff's and Class Members' PII through inequitable means because Defendant failed to disclose that it used inadequate security measures.

113.    Plaintiff and Class Members were unaware of the inadequate security measures and would not have provided their PII to Defendant had they known of the inadequate security measures.

114.    To the extent that this cause of action is pled in the alternative to the others, Plaintiff and Class Members have no adequate remedy at law.

115.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds from the monetary benefit that it unjustly received from them.

## COUNT IV
### Violations of California's Consumer Privacy Act
### Cal. Civ. Code § 1798.100, *et seq.* ("CCPA")
### (On Behalf of Plaintiff and the California Subclass)

116.    Plaintiff and the California Subclass re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 96.

117.    Defendant violated section 1798.150(a) of the California Consumer Privacy Act ("CCPA") by failing to prevent Plaintiff's and the California Subclass' PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violations of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII.

118.    The PII of Plaintiff and the California Subclass was subjected to unauthorized access and exfiltration, theft, or disclosure as a direct and proximate result of Defendant's violation of its duty under the CCPA.

119.    Plaintiff and the California Subclass lost money or property, including but not limited to the loss of legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses as a direct and proximate result of Defendant's acts described above.

120.    Defendant knew, or should have known, that its network computer systems and data security practices were inadequate to safeguard PII and that the risk of a data breach or theft was highly likely. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect PII, such as properly encrypting the PII so in the event of a data breach the PII cannot be read by an unauthorized third party. As a result of the failure to implement reasonable security procedures and practices, the PII of Plaintiff and members of the California Subclass was exposed.

121.    Defendant is organized for the profit or financial benefit of its owners and collects PII as defined in Cal. Civ. Code section 1798.140.

122.    Plaintiff and the California Subclass seek injunctive or other equitable relief to ensure that Defendant hereinafter adequately safeguard PII by implementing reasonable security

procedures and practices. This relief is important because Defendant still holds PII related to Plaintiff and the California Subclass. Plaintiff and the California Subclass have an interest in ensuring that their PII is reasonably protected.

123.    On March 29, 2022, Plaintiff's counsel mailed a CCPA notice letter to Defendant via certified mail. If Defendant does not "actually cure" the effects of the Data Breach, which would require retrieving the PII or securing the PII from continuing and future use, within 30 days of delivery of the CCPA notice letter (which Plaintiff believes any such cure is not possible under these facts and circumstances), Plaintiff intends to amend this complaint to seek actual damages, and statutory damages of no less than $100 and up to $750 per customer record subject to the Data Breach, on behalf of the California Subclass as authorized by the CCPA.

<u>**COUNT V**</u>
**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

124.    Plaintiff and the California Subclass re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 96.

125.    By reason of the conduct alleged herein, Defendant engaged in unlawful and unfair business practices within the meaning of California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, *et seq*.

126.    Defendant stored the PII of Plaintiff and California Subclass members in its computer systems.

127.    Defendant knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with federal regulations and that would have kept Plaintiff and California Subclass members' PII secure and prevented the loss or misuse of that PII.

128.    Defendant did not disclose at any time that Plaintiff and California Subclass members' PII was vulnerable to hackers because Defendant's data security measures were inadequate and outdated, and Defendant was the only one in possession of that material information, which Defendant had a duty to disclose.

***Unlawful Business Practices***

129.    Defendant engaged in unlawful business acts and practices by failing to establish adequate security practices and procedures as set forth above, by soliciting and gathering the PII of Plaintiff and the California Subclass knowing that the information would not be adequately protected, and by storing the PII of Plaintiff and the California Subclass in an unsecure electronic network, all in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Defendant to undertake reasonable measures to safeguard the PII of Plaintiff and the California Subclass, as well as the FTC Act.

130.    Plaintiff and California Subclass members suffered injury in fact and lost money or property as the result of Defendant's unlawful business practices. In addition, Plaintiff and California Subclass members' PII was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the hacked information is of tangible value.

***Unfair Business Practices***

131.    Defendant engaged in unfair business practices under the "balancing test." The harm caused by Defendant's actions and omissions, as described in detail above, greatly outweigh any perceived utility. Indeed, Defendant's failure to follow basic data security protocols and failure to disclose inadequacies of Defendant's data security cannot be said to have had any utility at all.

All of these actions and omissions were clearly injurious to Plaintiff and California Subclass members, directly causing the harms alleged below.

132.    Defendant engaged in unfair business practices under the "tethering test." Defendant's actions and omissions, as described in detail above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the law.

133.    Plaintiff and California Subclass members suffered injury in fact and lost money or property as the result of Defendant's unfair business practices. Plaintiff and California Subclass members' PII was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the hacked information is of tangible value.

134.    As a result of Defendant's unlawful and unfair business practices in violation of the UCL, Plaintiff and California Subclass members are entitled to damages, injunctive relief, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and Class Members, requests judgment against Defendant and that the Court grant the following:

A.      For an Order certifying the Class, and appointing Plaintiff and her Counsel to

represent the Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiff and Class Members;

C.    For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

    i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii.    requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    iii.    requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

    iv.    requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

    v.    prohibiting Defendant from maintaining the PII of Plaintiff and Class Members on a cloud-based database;

    vi.    requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct

testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii. requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix. requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x. requiring Defendant to conduct regular database scanning and securing checks;

xi. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii. requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii. requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding

subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv. requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi. requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment;

D. For an award of damages, including actual, nominal, statutory, consequential, and punitive damages, as allowed by law in an amount to be determined;

E. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. For prejudgment interest on all amounts awarded; and

G. Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that this matter be tried before a jury.

DATE:  March 29, 2022               Respectfully Submitted,

**DBR LAW, P.A**.

*/s/ Daniel Rosenthal*_____
DANIEL ROSENTHAL

DANIEL B. ROSENTHAL, ESQ.
1900 Glades Road, Suite 270
Boca Raton, Florida 33431
(561) 853-0991 (work)
(561) 414-3622 (cell)
Fla. Bar No. 711934
daniel@dbrlawfirm.com
rose@dbrlawfirm.com

M. ANDERSON BERRY (*pro hac vice*
forthcoming)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
aberry@justice4you.com

RACHELE R. BYRD (*pro hac vice* forthcoming)
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599
byrd@whafh.com

*Attorneys for Plaintiff and the Class*