**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| In re Lakeview Loan Servicing Data Breach Litigation | Case No. 1:22-cv-20955-DPG |
| | Oral Argument Requested |

**DEFENDANTS LAKEVIEW LOAN SERVICING, LLC, PINGORA LOAN SERVICING, LLC, AND BAYVIEW ASSET MANAGEMENT LLC'S MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rules 12(b)(1) and 12(b)(6), Defendants Lakeview Loan Servicing, LLC, Pingora Loan Servicing, LLC, and Bayview Asset Management LLC respectfully move this Court to dismiss Plaintiffs' Consolidated Class Action Complaint (Dkt. No. 47, "Complaint" or "Compl.") because certain Plaintiffs lack standing and all Plaintiffs fail to state a claim.

## I.   BACKGROUND.

Defendants Lakeview Loan Servicing, LLC ("Lakeview") and Pingora Loan Servicing, LLC ("Pingora") provide loan servicing to mortgagors.  Compl. ¶¶ 87, 90, 145-537.  Defendant Bayview Asset Management LLC ("Bayview") "is an investment management services company" and is alleged to be the parent company of Lakeview and Pingora.  *Id.* ¶¶ 93-94.

In December 2021, Defendants discovered that an unauthorized person accessed their servers (the "Incident").  *Id.* at Ex. 1 (Dkt. No. 47-1).  They took immediate steps to contain the Incident, inform law enforcement and affected customers, and engage a forensic investigator.  *Id.* at Ex. 1 (Dkt. No. 47-1) & ¶ 115.  The forensic investigator determined that the unauthorized access occurred between October 27 and December 7, 2021, during which time unauthorized persons *may* have accessed Plaintiffs' personally identifiable information ("PII"), including "name, address, loan number, and Social Security number and, for some, information provided in connection with a loan application, loan modification, or other items regarding loan servicing." *Id.* at Ex. 1 (Dkt. No. 47-1) & ¶¶ 3-4.

Plaintiffs are mortgagors who allege their PII was accessed in the Incident.  *Id.* ¶¶ 1-4, 114. They allege that Defendants failed to implement adequate data security and failed to warn Plaintiffs of the alleged inadequacies.  *Id.* ¶¶ 19, 106.  They further allege that criminals were able to access Plaintiffs' PII and, in some instances, use it to use make unauthorized transactions.  *Id.* ¶ 20.  Based on these allegations, Plaintiffs assert twenty-two causes of action, which they purport to bring on behalf of a class and over a dozen subclasses.  *Id.* ¶¶ 548, 560-844.

## II.   STANDARD OF REVIEW

In reviewing a Rule 12(b)(1) motion, the Court must determine whether subject-matter jurisdiction exists.  *See Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013).  Plaintiffs bear the burden of proving jurisdiction exists and "[s]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims."  *Id.*  To have standing, Plaintiffs must plausibly allege: "[1] an injury in fact, [2] fairly traceable to the defendant's conduct, [3] that is likely to be redressed by a favorable

decision from the court." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  To allege injury in fact, Plaintiffs must show "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]"  *Id.* at 560.  To be imminent, the threat of future injury must be "certainly impending."  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 416 (2013).  Moreover, Plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class…."  *See Warth v. Seldin*, 422 U.S. 490, 502 (1975).

Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'"  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Indeed, a claim is only facially plausible when its factual content "allows the court to draw a reasonable inference that the defendants are liable for the misconduct alleged."  *Id.*  "Factual allegations must be enough to raise a right to relief above the speculative level…."  *Twombly*, 550 U.S. at 555-56.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts in the Eleventh Circuit take "a two-step approach in evaluating a motion to dismiss: '1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  *See Kautz v. Residence Inn by Marriott, LLC*, No. 8:14-CV-988-T-24-MAP, 2014 WL 4416012, at *2 (M.D. Fla. Sept. 5, 2014) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)).  Importantly, "all legal conclusions must be supported by factual allegations." *Id.* (citing *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010)).  While the Court's review is typically limited to the four corners of the complaint, the Court may consider all documents attached to the complaint or incorporated by reference.  *See Gill v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019); *M.C. Dean, Inc. v. City of Miami Beach, Fla.*, 199 F. Supp. 3d 1349, 1352 (S.D. Fla. 2016) (citations omitted).  "[I]f the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls."  *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (citing *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009)).

## III.    ARGUMENT

The Court should dismiss Plaintiffs' claims for lack of standing and failure to state a claim. Certain Plaintiffs do not plausibly allege injury in fact, so they lack standing.  Moreover, no Plaintiff can satisfy the elements of their asserted causes of action.  Among other reasons, Plaintiffs fail to satisfy Rule 9(b), where applicable, and their threadbare allegations do not even satisfy Rule 8.  Plaintiffs also assert claims under statutes for which there is no private right of action and fail to allege recoverable damages for many of their claims.  Lastly, Plaintiffs assert claims under numerous state consumer protection laws, but Plaintiffs cannot satisfy the elements of those claims because the relationship between Plaintiffs and Defendants is not a consumer-merchant relationship.  Thus, for all the reasons stated below, the Complaint should be dismissed.

### A.    **Plaintiffs Crenshaw, McMahon, Thomas, Myers, and Saporta Lack Standing**

The Court should dismiss Plaintiffs Crenshaw, McMahon, Thomas, Myers, and Saporta's claims because they do not plausibly allege injury in fact for purposes of standing.

***Emotional Distress.***   Each of these Plaintiffs allege emotional distress, but only offer generic labels without supporting factual allegations.  Saporta, Crenshaw, McMahon, and Myers copy and paste the same generic allegation of "fear, anxiety, and stress" (Compl. ¶¶ 486, 510, 521, 533) and Thomas alleges "anxiety [and] emotional distress." *Id.* ¶ 496.  However, threadbare allegations of emotional distress are insufficient to plausibly allege standing.  *See Crowder v. Andreu, Palma, Lavin & Solis, PLLC*, No. 2:19-CV-820-SPC-NPM, 2021 WL 1338767, at *6 (M.D. Fla. Apr. 9, 2021) (rejecting "conclusory statements on emotional distress"); *Santiago v. Hunter Warfield, Inc.*, No. 8:20-CV-2823-TPB-JSS, 2021 WL 4894092, at *2 (M.D. Fla. Oct. 20, 2021) (same); *Adler v. Penn Credit Corp.*, No. 19-CV-7084 (KMK), 2022 WL 744031, at *9 (S.D.N.Y. Mar. 11, 2022) (rejecting "'perfunctory [and unsupported] [claim] of emotional distress'") (quoting *Maddox v. Bank of N.Y. Mellon Tr. Co.*, N.A., 19 F.4th 58, 66 (2d Cir. 2021)); *Zlotnick v. Equifax Info. Servs., LLC*, No. 21CV7089GRBJMW, 2022 WL 351996, at *2 (E.D.N.Y. Feb. 3, 2022) ("Plaintiff does allege that he suffered 'mental and emotional pain,' however such conclusory assertions do not confer standing.") (citing *Iqbal*, 556 U.S. at 678 & *Maddox*, 19 F.4th at 65).

***Dark Web.***   McMahon and Saporta allege that they "are informed and believe that their information" is on the "dark web," but this is not enough to satisfy Article III.  Compl. ¶ 16. Notably, they do not allege their PII ***is*** on the "dark web" ***because*** of the Incident.  *Id.*  Even if

they alleged a connection to the Incident, that allegation would be implausible because only two of the thirty-three Plaintiffs allege their information is on the "dark web," which supports the inference that there is no connection. Moreover, the mere posting of PII on the dark web does not confer standing because there is no harm unless a series of speculative events come to pass. *See Clemens v. ExecuPharm, Inc.*, No. CV 20-3383, 2021 WL 735728, at \*4 (E.D. Pa. Feb. 25, 2021).

 ***Mitigation Efforts.*** Each of these Plaintiffs allege that they undertook efforts to mitigate future harm (Compl. ¶¶ 485, 495, 507, 520, 530), but mitigation efforts are insufficient to confer standing unless injury is imminent. Whether these Plaintiffs will suffer an actual injury depends on the occurrence of a chain of speculative events, so injury in not imminent. *See In re Equifax, Inc., Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2019 WL 926999, at \*1, \*4 (N.D. Ga. Jan. 28, 2019) (holding that plaintiffs whose names, dates of birth, Social Security numbers, addresses, and driver's license numbers were potentially accessed did not face imminent injury, so mitigation efforts were insufficient for Article III standing); *Clapper*, 568 U.S. at 409 ("[Plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").

 ***Spam Phone Calls.*** Plaintiffs Thomas, Myers, and Crenshaw allege they "experienced an increase of spam calls, text messages and emails after the Data Breach," but they do not allege these spam communications are connected to the Incident. Compl. ¶¶ 498, 508, 531. Indeed, they do not even allege that their phone numbers or email addresses were accessed in the Incident (*id.* ¶¶ 493, 505, 528), so they have failed to plausibly allege that the spam communications are connected to the Incident. *See Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) ("The receipt of spam by itself, however, does not constitute a sufficient injury entitling [plaintiff] to compensable relief."); *Jackson v. Loews Hotels, Inc.*, No. EDCV18827DMGJCX, 2019 WL 6721637, at \*4 (C.D. Cal. July 24, 2019).

 ***Loss of Privacy.*** Plaintiff Thomas alleges a "loss of privacy" (Compl. ¶ 496), but this allegation is insufficient to confer standing. *See Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 695 (7th Cir. 2015) (holding that plaintiffs' alleged "loss of their private information" is an "abstract injury" that cannot support standing); *Kuhns v. Scottrade, Inc.*, 868 F.3d 711 (8th Cir. 2017) ("Plaintiffs do not allege any facts demonstrating that they suffered any damages or injury due to a loss of privacy or breach of confidentiality. These theories are not sufficiently concrete to establish injury in fact and do not support standing in this case."); *Sheffler v. Americold Realty Tr.*,

No. 1:21-CV-1075-TCB, 2022 WL 1815505, at *4 (N.D. Ga. Jan. 19, 2022) ("[L]oss of privacy is not a legally cognizable injury."); *C.C. v. Med-Data Inc.*, No. 21-2301-DDC-GEB, 2022 WL 970862, at *10 (D. Kan. Mar. 31, 2022) ("[L]oss of privacy, in and of itself, is not a concrete harm that can provide the basis for Article III standing.").

Thus, Plaintiffs Crenshaw, McMahon, Thomas, Myers, and Saporta fail to plausibly allege injury in fact, so they lack standing.

### B.     Plaintiffs Fail to State Claims for Each of their Asserted Causes of Action

The Complaint should be dismissed because Plaintiffs cannot satisfy the elements of their asserted causes of action.  Moreover, further amendment of the Complaint would not resolve Plaintiffs' inability to state a claim, so dismissal should be with prejudice.

#### 1.     Count I, Negligence

Plaintiffs' negligence claims fail because: (1) Plaintiffs do not allege bodily injury or property damage; (2) there is no private right of action under the FTC Act to support a negligence per se claim; and (3) Plaintiffs' negligence claims are based on impermissible shotgun pleading in which Plaintiffs fail to allege which acts or omissions were committed by which defendant.

To prevail, Plaintiffs must show that they suffered "bodily injury or property damage." *See Monroe v. Sarasota Cnty. Sch. Bd.*, 746 So.2d 530, 531 (Fla. Ct. App. 1999) ("bodily injury or property damage is an essential element of a cause of action in negligence"); *Perry v. Schumacher Group of La.*, No. 13-cv-36, 2014 WL 988751, at *4 (M.D. Fla. Mar. 13, 2014) ("The economic loss allegedly suffered by plaintiff does not amount to actual bodily injury or property damage; thus, she cannot maintain her claim of negligence."), *aff'd* 809 F. App'x 574 (11th Cir. 2020).[1]

---

[1] Florida law governs Plaintiffs' negligence claims.  Federal courts apply the choice of law rules of the forum state and Florida courts apply the "most significant relationship" test, which considers: "(a) the place where the injury occurred, (b) the place where the conduct causing injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *See O'Donnell v. Wachovia Bank*, No. 09-61185-CIV-COHN, 2010 WL 1416986, at *5–6 (S.D. Fla. Apr. 7, 2010).  Florida clearly has the "most significant relationship" to Plaintiffs' negligence claims under (b), (c), and (d), because Florida is where the alleged injurious conduct occurred, where two of the three Defendants have their principal places of business, and where Defendants' computer systems reside.  *See* Compl. ¶¶ 87-98 (alleging "tortious acts in Florida").  Presumably, Plaintiffs' alleged injuries occurred in their states of residence, but Plaintiffs reside in multiple states, including Florida.  Thus, Florida has the "most significant relationship."

Plaintiffs clearly do not allege bodily injury and their allegations regarding the Incident's impact on their PII do not constitute property damage because PII is not property. *See In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019) ("The Court rejects [Plaintiffs' intangible property] theory of injury in fact because Plaintiffs have not alleged that their personal information has an independent monetary value that is now less than it was before the Data Breach."); *Provost v. Aptos, Inc.*, No. 1:17-CV-02120-ELR, 2018 WL 1465766, at *4 (N.D. Ga. Mar. 12, 2018) ("The Court is not persuaded by the hypothetical diminution of value propounded by Plaintiff. Plaintiff has failed to allege with particularity any facts explaining how her personal identity information is less valuable than it was before the Breach."); *PFM Air, Inc. v. Dr. Ing. h.c. F. Porsche A.G.*, No. 8:08-CV-392-T-17MAP, 2011 WL 13176223, at *6 n.9 (M.D. Fla. Aug. 2, 2011) ("[T]he traditional negligence approach… protects person and property from physical injury. Intangible economic risks (lost expectations) are 'matters that should be left as externalities borne by the party that experienced them rather than as costs internalized into the social contract of safety.'") (quoting *Monroe*, 746 So.2d at 535); Compl. ¶¶ 145-547 (alleging injuries). Thus, Plaintiffs' negligence claims fail for lack of injury.

Plaintiffs' negligence per se theory fails because it is premised on an alleged violation of the FTC Act, which does not include a private right of action. Compl. ¶¶ 587-91; *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1365–66 (S.D. Fla. 2015) ("'Florida courts have refused to recognize a private right of action for negligence per se based on an alleged violation of a federal statute that does not provide for a private right of action.'") (collecting cases); *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-J-32MCR, 2020 WL 691848, at *9 (M.D. Fla. Jan. 27, 2020); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2022 WL 1468057, at *26 (S.D. Fla. May 10, 2022).

Lastly, Plaintiffs' negligence claims fail because they constitute "shotgun pleading that improperly commingles multiple negligence and liability theories into a single claim" and fails to allege which Defendants are responsible for which alleged acts and omissions. *See Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2022 WL 796367, at *7 (S.D. Fla. Mar. 15, 2022) (dismissing negligence claims for engaging in "shotgun pleading"); Compl. ¶¶ 560-96.

## 2.  Counts II and III, Breach of Implied Contract

The Court should dismiss Plaintiffs' breach of implied contract claims under Florida and Colorado law. Florida courts apply the *lex loci contractus* rule, which provides that "issues

6

concerning the validity and substantive obligations of contracts are governed by the law of the place where the contract is made" and "[a] contract is made where the last act necessary to complete the contract is performed." *See Trumpet Vine Invs., N.V. v. Union Cap. Partners I, Inc.*, 92 F.3d 1110, 1119–20 (11th Cir. 1996); *Commodore Plaza Condo. Ass'n, Inc. v. Evanston Ins. Co.*, No. 21-CV-24328, 2022 WL 3139106, at *2 (S.D. Fla. Aug. 5, 2022). Plaintiffs allege that implied contracts were formed when Lakeview and Pingora "acquired" Plaintiffs' PII (Compl. ¶¶ 600, 605, 614, 618) and that Lakeview and Pingora are located in Florida and Colorado, respectively (*id.* ¶¶ 87, 90). Thus, Plaintiffs' claims against Lakeview and Pingora are governed by Florida and Colorado law, respectively.

    *Lakeview.* Plaintiffs' claims against Lakeview fail under Florida law for three reasons. *First*, Plaintiffs fail to allege the existence of a valid contract because they do not allege that they provided consideration to Lakeview in exchange for loan servicing—let alone data security—and they do not specify the essential terms of the alleged implied contract. *See Ruff v. Allianz Life Ins. Co. of N. Am.*, No. 6:19-CV-1709-WWB-DCI, 2021 WL 1053166, at *3 (M.D. Fla. Mar. 8, 2021) (explaining that an implied contract requires "consideration" and "sufficient specification of the essential terms"); Compl. ¶ 604 (vaguely alleging Lakeview agreed to "take reasonable steps to safeguard [Plaintiffs'] PII" and "reasonably safeguard and protect [Plaintiffs'] PII.").

    *Second*, Plaintiffs do not plausibly allege a meeting of the minds. Plaintiffs' alleged understanding that they entered into a contract with Lakeview to provide some undefined level of data security is insufficient to support the existence of an implied contract. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2022 WL 1468057, at *22–23 & n.20 ("Unilateral and subjective expectations in a transaction cannot be inferred to coalesce into the meeting of the minds required to establish an implied contract."); *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1368–69 (S.D. Fla. 2017) (dismissing implied contract claim because plaintiff contracted to receive healthcare, not data security). Here, Lakeview undertook to provide loan servicing, not data security, so there was no meeting of the minds and Plaintiffs' claims fail.

    *Third*, the Court cannot infer the existence of an implied contract to safeguard PII because the Privacy Policy on which Plaintiffs rely (Compl. ¶ 602) makes clear that Lakeview **does not** guarantee the security of Plaintiffs' PII, and Plaintiffs accepted the risk of unauthorized access:

> While we undertake these security measures, you acknowledge that no security measure or modality of data transmission over the Internet can be guaranteed to be 100% secure. We take security seriously; however, you should not expect that any

> personal information provided to use through the Site is free from the risk posed by
> unauthorized access.

*Id.*, Ex. 2 at 6 (Dkt. No. 47-2); *Brush*, 238 F. Supp. 3d at 1368 (explaining that the existence of an implied contract "is inferred in whole or in part from the parties' conduct"). Given Lakeview's disclosure of the risk of unauthorized access and Plaintiffs' acceptance of that risk (*i.e.*, "the parties' conduct"), there is no basis for finding the existence of an implied contract to safeguard Plaintiffs' PII.

  ***Pingora.*** Plaintiffs' breach of implied contract claims fail under Colorado law for similar reasons. *First*, Plaintiffs do not plausibly allege they provided consideration to Pingora in exchange for loan servicing—let alone data security—nor do they allege terms that are "'sufficiently definite [such] that the promises and performances of each party are reasonably certain.'" *See Virostek v. IndyMac Mortg. Servs.*, No. 11-CV-00030-WYD-MEH, 2011 WL 6937185, at *10 (D. Colo. Sept. 6, 2011), *report and recommendation adopted sub nom.* 2012 WL 10292 (D. Colo. Jan. 3, 2012) (quoting *Watson v. Pub. Serv. Co. of Colo.*, 207 P.3d 860, 868 (Colo. App. 2008)); Compl. ¶ 617 (vaguely alleging Pingora agreed to "take reasonable steps to safeguard [Plaintiffs'] PII" and "reasonably safeguard and protect [Plaintiffs'] PII").

  *Second*, there is no basis for inferring that Pingora accepted Plaintiffs' alleged offer to enter into an agreement to provide data security. *See Virostek*, 2011 WL 6937185, at *10 (requiring "offer and acceptance").

### 3. Counts IV and V, Breach of Fiduciary Duty.

  The Court should dismiss Counts IV and V because Plaintiffs cannot establish the existence of a fiduciary relationship with Lakeview or Pingora. Compl. ¶¶ 324-39. Fiduciary duty claims against LLCs are governed by the law of the state where the LLC is organized, so Delaware law applies. *See Aquent LLC v. Stapleton*, 65 F. Supp. 3d 1339, 1347 (M.D. Fla. 2014); *Mukamal v. Bakes*, 378 F. App'x 890, 896–97 (11th Cir. 2010); Compl. ¶¶ 88, 90 (alleging organization under Delaware law).

  Under Delaware law, Plaintiffs must establish the existence of a fiduciary relationship. *See York Lingings v. Roach*, No. 16622-NC, 1999 WL 608850, at *2 (Del. Ch. July 28, 1999); *In re*

*Tropicana Ent., LLC*, 520 B.R. 455, 470 (Bankr. D. Del. 2014).[2]   While Defendants have not identified case law addressing whether a fiduciary relationship exists between a mortgagor and a loan servicer under Delaware law, Delaware courts do not recognize the existence of a fiduciary relationship between mortgagees and mortgagors.  *See Keith v. Sioris*, No. CIV.A. 05C-02-272, 2007 WL 544039, at *7 (Del. Super. Ct. Jan. 10, 2007); *see also N. Am. Cath. Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 99 (Del. 2007) ("Delaware courts have traditionally been reluctant to expand existing fiduciary duties.").  Mortgagees receive PII from mortgagors, yet there is no fiduciary relationship, so it stands to reason that a loan servicer's receipt of the same PII does not create a fiduciary relationship.  *See* Compl. ¶¶ 626, 634 (alleging fiduciary relationship based on receipt of PII).  Indeed, courts routinely reject Plaintiffs' theory that the mere receipt of PII gives rise to a fiduciary relationship.  *See, e.g., Weinberg*, 147 F. Supp. 3d at 1367 ("[T]he mere receipt of confidential information is insufficient by itself to transform an arm's-length transaction into a fiduciary relationship.") (collecting cases); *McCulloch v. PNC Bank*, 298 F.3d 1217, 1226 n.13 (11th Cir. 2002); *Walts v. First Union Mortg. Corp.*, 259 A.D.2d 322, 323, 686 N.Y.S.2d 428, 430 (1999) ("The relationship between plaintiffs and [loan servicers] was merely one of debtor and creditor, and therefore did not create a fiduciary relationship."); *Hogan v. Praetorian Ins. Co.*, No. 1:17-CV-21853-UU, 2018 WL 8266803, at *10 (S.D. Fla. Jan. 11, 2018) ("It is well-settled Florida law that a lender or loan servicer does not generally owe a fiduciary duty to its borrower."); *Bennett v. Ocwen Loan Servicing, LLC*, No. 213CV00243WCOJCF, 2014 WL 12860644, at *7 (N.D. Ga. May 13, 2014).  Thus, there is no fiduciary relationship, so Plaintiffs' breach of fiduciary duty claims fail.

   **4.**  **Count VI, Violation of California's Consumer Records Act ("CCRA")**

   CCRA claims are brought by Plaintiffs Keach, Saporta, and Crenshaw against all Defendants (Compl. ¶¶ 640-41), and they fail for four reasons.

---

[2] Plaintiffs make conflicting allegations regarding Lakeview's state of incorporation.  Compl. ¶¶ 87-88 (alleging organization under Florida and Delaware law).  Lakeview is a Delaware LLC, but Plaintiffs must establish a fiduciary relationship under either state's laws, so the result is the same. *See Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1367 (S.D. Fla. 2015); *Branch Banking and Trust Co.*, 2008 WL 4186982 (S.D. Fla. Sept. 8, 2008) (dismissing breach of fiduciary duty claim against loan servicer and holding that no fiduciary duty could be implied from relationship between the parties).

*First*, Plaintiffs do not allege that they are "Customers" as that term is defined in the CCRA. *See Corona v. Sony Pictures Ent., Inc.*, No. 14-CV-09600 RGK EX, 2015 WL 3916744, at *7 (C.D. Cal. June 15, 2015) (dismissing CCRA claim because plaintiffs were not customers); *Toretto v. Donnelley Fin. Sols., Inc.*, No. 1:20-CV-2667-GHW, 2022 WL 348412, at *18 (S.D.N.Y. Feb. 4, 2022) (same).  The CCRA defines "Customer" as "an individual who provides personal information to a business for the purpose of purchasing or leasing a product or obtaining a service from the business."  Cal. Civ. Code § 1798.80(c).  Thus, Plaintiffs must plausibly allege that they provided their PII to Lakeview or Pingora for the purpose of receiving loan servicing.

Keach, Saporta, and Crenshaw do not allege they provided their PII to Bayview, so their CCRA claims against Bayview fail.  Keach admits he did not provide his PII to any Defendant, so his claims fail.  *See* Compl. ¶ 190 (alleging Keach provided his PII to "his mortgage originator and servicers, whom he believes provided his PII to Pingora").  While Saporta and Crenshaw allege they provided their PII to Pingora and Lakeview, respectively, to receive loan servicing (*id.* ¶¶ 515, 526), these allegations are implausible.  Mortgagors do not shop around for loan servicers; they contract with and provide their PII to lenders and the lenders arrange for loan servicing.  *Id.* ¶ 123 (admitting Plaintiffs' PII was provided to "mortgage lenders," not to Defendants specifically); *Alvarez v. BAC Home Loans Servicing*, L.P., 228 Cal. App. 4th 941, 949 (2014) ("borrowers are captive, with no choice of servicer"); *Syverson v. Countrywide Home Loans, Inc.*, No. D069829, 2017 WL 977100, at *18 (Cal. Ct. App. Mar. 14, 2017).

*Second*, Plaintiffs' claim that Lakeview and Pingora failed to "maintain reasonable security procedures and practices" in violation of Cal. Civ. Code § 1798.81.5 fails because Plaintiffs offer nothing more than conclusory allegations that Defendants' security was inadequate.  *See, e.g.*, Compl. ¶¶ 21, 121, 144, 722; *Razuki v. Caliber Home Loans, Inc.*, No. 17CV1718-LAB (WVG), 2018 WL 6018361, at *1 (S.D. Cal. Nov. 15, 2018) (dismissing CCRA claims because plaintiff's allegation that "Defendant knew of higher-quality security protocols" was "precisely the type of 'threadbare' claim *Iqbal* warns of") (citing *Iqbal*, 556 U.S. at 678–79); *Anderson v. Kimpton Hotel & Restaurant Grp., LLC*, Case No. 19-cv-01860-MMC, 2019 WL 3753308, at *5 (N.D. Cal. Aug. 8, 2019) (dismissing CCRA claim because conclusory allegation that defendant "fail[ed] to implement and maintain reasonable security procedures and practices" did not satisfy *Iqbal*).

*Third*, Plaintiffs' claim that Lakeview and Pingora failed to comply with the CCRA's notification requirement in violation of Cal. Civ. Code § 1798.82(b) fails because Plaintiffs do not

allege any damages resulting from the alleged delay, as distinguished from the Incident itself.  *See* Cal. Civ. Code § 1798.84(b) (limiting recovery to damages caused by a violation); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 2020 WL 2214152, at *8 (S.D. Cal. May 7, 2020) ("Plaintiffs must allege 'incremental harm suffered as a result of the alleged delay in notification,' as opposed to harm from the Data Breach itself.") (quoting *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *7 (S.D. Cal. Nov. 3, 2016)).

*Fourth*, Defendants are not subject to the immediate notification requirements of Cal. Civ. Code § 1798.82(b), so Plaintiffs' claims fail.  Plaintiffs allege that Defendants were required to provide immediate notification because they "maintain" PII.  Compl. ¶¶ 644-48 (citing Cal. Civ. Code § 1798.82(b)).  However, Defendants "*license*" PII; they do not "*maintain*" PII, so they are not subject to the immediate notification requirement of Section 1798.82(b).  Under the CCRA, "license" means to "retain[] [PII] as part of the business' internal customer account or for the purpose of using that information in transactions with the person to whom the information relates."  *See* Cal. Civ. Code § 1798.81.5(a)(2).  The CCRA defines "maintain" as "includ[ing] personal information that a business maintains **but does not own or license**."  *Id.* (emphasis added).  Thus, if Defendants "license" PII, they do not "maintain" it because the definitions of "license" and "maintain" are mutually exclusive.  Plaintiffs admit their PII is "necessary for loan servicing" (Compl. ¶ 102) and it cannot reasonably be disputed that loan servicers use PII to service loans.  Thus, Defendants "license" PII, so they are not subject to the immediate notification requirements of Cal. Civ. Code § 1798.82(b).

     **5.**     **Count VII, Violations of California's Consumer Privacy Act ("CCPA").**

CCPA claims are brought by Plaintiffs Keach, Saporta, and Crenshaw against all Defendants (Compl. ¶¶ 651-52), and they fail for five reasons.

*First*, Plaintiffs fail to allege that Defendants satisfy the CCPA's definition of a "business." Plaintiffs allege that "Defendants are organized for the profit or financial benefit of their owners and collect PII as defined in Cal. Civ. Code § 1798.140," but do not allege that Defendants satisfy any of the threshold requirements listed in Section 1798.140(c)(1)(A) – (C).  Compl. ¶ 657.  Thus, Plaintiffs fail to state a claim because they fail to allege that any defendant is a "business," which is a prerequisite for a private right of action.  *See* Cal. Civ. Code § 1798.150(a)(1).

*Second*, Keach, Saporta, and Crenshaw failed to comply with the CCPA's notice requirement. They were required to provide "30 days' written notice identifying the specific provisions [they] allege[] have been or are being violated." *See* Cal. Civ. Code § 1798.150(b). However, their notices fail to identify any specific provision that was violated. *See* Compl. Exs. 6-7 (Dkt. Nos. 47-6 & 47-7). As Defendants explained in their responses, Plaintiffs' notices refer to Section 1798.81.5, which sets forth the Legislature's intent, and Section 1798.150, which governs when a private right of action exists. Compl. Ex. 8 (Dkt. No. 47-8). Since the notices do not identify specific provisions that were violated, they do not satisfy the CCPA's notice requirement and Plaintiffs cannot pursue claims for statutory damages. *See* Cal. Civ. Code § 1798.150(b).

*Third*, even if the notices identified specific provisions, Plaintiffs Keach and Saporta's notice was not sent 30 days prior to filing suit. *See id.* (requiring 30 days' notice "prior to initiating any action"); Case No. 1:22-cv-20968-DPG, Dkt. No. 19 (amended complaint adding Keach and Saporta, filed Apr. 14, 2022); Compl. Ex. 6 (Dkt. No. 47-6) (notice letter dated Apr. 14, 2022). Thus, Plaintiffs Keach and Saporta cannot pursue claims for statutory damages.

*Fourth*, Plaintiffs' claims fail because Defendants' responses demonstrate that any alleged CCPA violation was cured. Compl. Ex. 8 (Dkt. No. 47-8) (describing enhanced security measures implemented after the Incident). Since Defendants cured any alleged CCPA violation and provided written assurances that no further violation would occur, Plaintiffs cannot pursue claims for statutory damages. *See* Cal. Civ. Code § 1798.150(b); Ex. 1 hereto, *In Re Canon U.S.A. Data Breach Litig.*, Mar. 15, 2022 Mem. Op. at 24-25. Plaintiffs try to avoid this result by arguing that Lakeview was required to "retriev[e] and secur[e] the lost data," encrypt Plaintiffs' PII, and delete any data that is no longer needed (Compl. ¶ 660), but the CCPA does not require any of these actions to effect a cure. *See In re Waste Mgmt. Data Breach Litig.*, No. 21CV6147 (DLC), 2022 WL 561734, at *7 (S.D.N.Y. Feb. 24, 2022) (rejecting argument that defendant was required to recover exfiltrated data to cure); Cal. Civ. Code §§1798.100, *et seq.*[3] Defendants demonstrated that they cured any alleged violation, so Plaintiffs cannot maintain a suit for statutory damages.

---

[3] Plaintiffs' argument that Defendants were required to take these actions finds no support in the text of the CCPA. Indeed, their argument that Defendants are required to proactively delete PII is foreclosed by the CCPA, which permits consumers to request deletion. *See* Cal. Civ. Code § 1798.105. If proactive deletion was required, the legislature would have articulated that requirement instead of fashioning a provision allowing consumers to request deletion.

*Fifth*, Plaintiffs are not entitled to pecuniary damages or injunctive relief. Plaintiffs did not suffer pecuniary damages as a result of any alleged violation. *See* Compl. ¶¶ 190-202, 515-25, 526-37. At most, Plaintiff Saporta alleges that he pays $15 per month to place a fraud alert with all three credit reporting agencies. *Id.* ¶ 520. However, fraud alerts are free,[4] so Saporta's alleged damages were not caused by the Incident, and he cannot manufacture damages by alleging he paid for a service that is free. Moreover, Injunctive relief is inappropriate because any alleged violation was cured. *Supra*; *Davis v. Farmers Ins. Exch.*, 245 Cal. App. 4th 1302, 1326–27 (2016) ("'there must be a threat that the wrongful conduct will continue'"); *Guzman v. RLI Corp.*, No. LACV2008318JAKASX, 2020 WL 6815026, at *2 (C.D. Cal. Oct. 6, 2020) (declining to grant injunctive relief where the Pacer filing containing PII was already removed).

### 6. Count VIII, Violation of the Unlawful and Unfair Prongs of California's Unfair Competition Law ("UCL")

Plaintiffs Crenshaw, Keach, and Saporta bring UCL claims against all Defendants based on the UCL's unlawful and unfair prongs. Compl. ¶¶ 662-72. As an initial matter, Plaintiffs' claims fail because the UCL does not apply extraterritorially. *See Toretto*, 2022 WL 348412, at *18–20. Since Plaintiffs fail to allege conduct occurring in California, their claims fail.

Plaintiffs' UCL claims also fail because they do not allege "what 'reasonable measures' [Defendants] failed to use or how [Defendants] deviated from or otherwise failed to conform to any industry standard." *See Anderson*, 2019 WL 3753308, at *6; *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *5–6 (N.D. Cal. June 16, 2010) ("In California, a UCL claim of any kind 'must identify the particular section of the statute that was violated, and must describe with reasonable particularity the facts supporting the violation.'"). Plaintiffs do not allege how Defendants' alleged acts or omissions were unlawful or unfair, so their UCL claims fail. Moreover, to the extent Plaintiffs' claims are based on the UCL's unfairness prong, they must plausibly allege that members of the public are likely to be deceived, and Plaintiffs' threadbare allegation that deception is likely does not suffice. Compl. ¶¶ 664-65; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

---

[4] *See, e.g.*, https://www.transunion.com/fraud-alerts ("A fraud alert is free and notifies creditors to take extra steps to verify your identity before extending credit.") (accessed Aug. 8, 2022)

Plaintiffs' UCL claims also fail because Plaintiffs do not seek relief that is recoverable under the UCL.  The UCL limits relief to restitution and injunctive relief, so Plaintiffs' claims for declaratory relief, attorneys' fees and costs, and any other relief, fail.  *See* Cal. Bus. & Prof. Code § 17203; *De La Torre v. CashCall, Inc.*, 5 Cal. 5th 966, 993 (2018) ("Private individuals like plaintiffs may win restitution or injunctive relief, but they cannot obtain damages or attorney fees."); Compl. ¶ 672 (requesting relief).  To the extent Plaintiffs seek restitution, their claims fail because they do not allege that they ***lost*** money or property and that such money or property was ***gained*** by Defendants.  *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323-25 (2011) (requiring a loss of "money or property"); *Zhang v. Superior Court*, 57 Cal. 4th 364, 371 (2013) ("A restitution order against a defendant [] requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other.") (quotation marks omitted).  Plaintiffs do not (and cannot) plausibly allege that Defendants acquired the lost confidentiality that Plaintiffs allegedly lost, so Plaintiffs are not entitled to restitution.

Lastly, Plaintiffs are not entitled to injunctive relief because they do not plausibly allege that the Incident is likely to reoccur.  *See Davis*, 245 Cal. App. 4th at 1326–27 ("'there must be a threat that the wrongful conduct will continue'"); *Guzman*, 2020 WL 6815026, at *2 (declining to grant injunctive relief where the Pacer filing containing PII was already removed); *see also* Compl. Ex. 8 (Dkt. No. 47-8) (describing extensive enhanced security measures to prevent reoccurrence).

### 7.     Count IX, Violation of the Illinois Consumer Fraud Act ("ICFA")

The Court should dismiss Plaintiff Berg's ICFA claim, which is brought against Lakeview and Bayview.  Compl. ¶ 674.  Plaintiff's claims against Bayview fail because she does not allege any dealings with Bayview (*id.* ¶¶ 38, 242-53), and for six additional reasons.

*First*, Berg fails to comply with the ICFA's heightened pleading standard.  *See Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 419 (2002) ("The complaint must state with particularity and specificity the deceptive manner of defendant's acts or practices, and the failure to make such averments requires the dismissal of the complaint."); *Advanced Physicians, S.C. v. ATI Holdings, LLC*, 2015 IL App (1st) 141073-U ¶ 22 ("Both the 'unfair practices' and 'deceptive practices' claims under the [ICFA] are subject to this heightened pleading standard requiring particularity and specificity.").  Berg's conclusory allegations that Defendants failed to maintain adequate data security, failed to disclose that data security was inadequate, and failed to properly respond to the Incident (Compl. ¶ 677) do not satisfy the ICFA's heightened pleading standards.

14

*Second*, Berg is not a "consumer," which the ICFA defines as "any person who purchases or contracts for the purchase of merchandise…."  815 ILCS 505/1(e).  Berg does not allege that she "purchase[d] or contract[ed] for the purchase of [loan servicing]."  Indeed, she admits loan servicing is arranged by "mortgage lenders" (Compl. ¶ 123), so she cannot plausibly allege that she "purchase[d] or contract[ed] for the purchase" of loan servicing.  *Alvarez*, 228 Cal. App. 4th at 949 ("borrowers are captive, with no choice of servicer"); *Syverson*, 2017 WL 977100, at *18.

*Third*, Berg's conclusory allegation that "Defendants intended that Plaintiff and the Illinois Subclass rely on their deceptive and unfair acts and practices and the concealment and omission of material facts" does not satisfy Rule 8.  *See Iqbal*, 556 U.S. at 678–79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 160 (2002) (requiring reliance).

*Fourth*, Berg does not allege "actual damage" that was "proximately caused" by Defendants.  *See Oliveira*, 201 Ill.2d at 160 (requiring "actual damage to the plaintiff [] proximately caused by the deception").  Under the ICFA, "actual damages must arise from 'purely economic injuries.'"  *Cooney v. Chi. Public Sch.*, 407 Ill.App.3d 358, 365 (2010).  The only economic injury Berg alleges is that she paid $57 toward a $3,500 unauthorized credit card charge.  Compl. ¶ 246.  However, all Berg needed to do was dispute the unauthorized charge, which she evidently did because does not allege she paid the full $3,500.  Thus, her decision to pay $57 was not proximately caused by the Incident and she cannot manufacture damages by making a payment she was not required to make.

*Fifth*, Plaintiff does not allege that she received any communication from Lakeview or Bayview relating to data security.  *See De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) ("A consumer cannot maintain an action under the Illinois Consumer Fraud Act when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant."); *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 76 (2007) ("plaintiffs must prove that each and every consumer who seeks redress actually saw and was deceived by the statements in question").

*Sixth*, Berg is not entitled to injunctive relief under the ICFA because she does not plausibly allege that the Incident is likely to reoccur.  *See Camasta v. Jos. A. Bank Clothiers*, 761 F.3d 732, 741 (7th Cir. 2014) (rejecting argument that past harm means future harm is likely); *see also* Compl. Ex. 8 (Dkt. No. 47-8) (describing enhanced security measures implemented after the Incident).

### 8.    Count X, Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")

Plaintiffs' FDUTPA claims should be dismissed because Plaintiffs fail to allege a deceptive act or unfair practice and fail to allege actual damages.  *See In re Brinker Data Incident Litig.*, 2020 WL 691848, at *12 (requiring "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.") (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)).

Plaintiffs' conclusory allegation that Defendants engaged in deceptive acts and unfair practices (Compl. ¶ 697) falls well short of plausibly alleging a deceptive act or unfair practice, so their FDUTPA claims fail.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Even if Plaintiffs alleged a deceptive act or unfair practice, dismissal is nevertheless appropriate because they fail to allege "actual damages," which correspond to the "difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties."  *See* Fla. Stat § 501.211(2); *Butland*, 951 So.2d at 869, 873, 884 ("FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment."); *Rollins, Inc. v. Heller*, 454 So.2d 580, 585 (Fla. Dist. Ct. App. 1984); *Farmer v. Humana, Inc.*, No. 8:21-CV-1478-MSS-SPF, 2022 WL 732126, at *9 (M.D. Fla. Jan. 25, 2022); *In re Brinker Data Incident Litig.*, 2020 WL 691848, at *13 ("FDUTPA does not apply to… a claim for damage to property other than the property that is the subject of the consumer transaction") (quotation marks omitted).  Here, there is no allegation that the market value of Defendants' mortgage servicing was diminished.  Indeed, Plaintiffs do not (and cannot) allege that they pay for servicing, so their FDUTPA claims fail for lack of "actual damages."

### 9.    Count XI, Violations of the Maryland Consumer Protection Act ("MCPA")

Plaintiff McMahon brings MCPA claims against Bayview and Lakeview.  Compl. ¶¶ 708-09.  As discussed, *supra* at III.A, McMahon lacks standing, so his MCPA claims should be dismissed.  Moreover, his claims should be dismissed as to Bayview because he does not allege any dealings with Bayview (Compl. ¶¶ 78, 479), and his claims should be dismissed as to both

16

Defendants because he fails to comply with Rule 9(b)[5] and fails to allege an unfair or deceptive practice resulting in actual injury.

McMahon's MCPA claims sound in fraud, so they are subject to Rule 9(b). *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013); Compl. ¶¶ 708-15. However, he only offers vague and conclusory allegations that Defendants failed to implement adequate data security and concealed the alleged failure (Compl. ¶ 712), which do not satisfy Rule 9(b), and would not even satisfy Rule 8. *See supra* at footnote 5 (reciting the requirements of Rule 9(b)); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

McMahon also fails to allege an unfair or deceptive practice. His claim is premised on the Incident, but a "one time" event is not an unfair or deceptive practice. *See Hibdon v. Safeguard Props., LLC*, No. CIV. PJM 14-591, 2015 WL 4249525, at *7 (D. Md. July 9, 2015). Since the Incident does not constitute Defendants' "operating policy or customary practice," McMahon's MCPA claims fail. *See Hibdon*, 2015 WL 4249525, at *7 ("[W]hat matters is whether Plaintiffs have plausibly alleged… a 'practice' of the trade under the MCPA, not merely an 'act' that occurs in the course of trade activities, even if it may harm the consumer.").

Lastly, McMahon fails to plead an actual injury. To state a claim, he "must have suffered an identifiable loss, measured by the amount [he] spent or lost…." *See Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 143 (2007); *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 621 (D. Md. 2014) (requiring an injury that is "objectively identifiable" with reference to "to some amount that it would take to remedy the loss"). McMahon does not allege any "amount [he] spent or lost," so he fails to state a claim.

---

[5] The Eleventh Circuit has articulated the requirements of Rule 9(b) as follows:

> While Rule 9(b) does not abrogate the concept of notice pleading, it plainly requires a complaint to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

*FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

10.     **Count XII, Violations of the Missouri Merchandising Practices Act ("MMPA")**

The Court should dismiss Plaintiff Blando's MMPA claims, which are asserted against Bayview and Lakeview.  Compl. ¶ 717.  Blando does not allege any dealings with Bayview (*id.* ¶¶ 50, 316, 318), so his claims fail as to Bayview, and his claims fail for three additional reasons.

*First*, Blando's claims sound in fraud (*id.* ¶ 718), so they must be pled with particularity. *See Kuhns*, 868 F.3d at 719; *Budach v. NIBCO, Inc.*, No. 2:14-CV-04324-NKL, 2015 WL 6870145, at *5 (W.D. Mo. Nov. 6, 2015); *supra* at footnote 5 (reciting the requirements of Rule 9(b)).  However, Blando offers nothing more than conclusory allegations of inadequate data security (Compl. ¶¶ 716-27), so his claims fail.

*Second*, "to be actionable under the MMPA, the alleged unlawful act must occur in relation to a ***sale of merchandise***, and an ascertainable pecuniary loss must occur in relation to the plaintiff's ***purchase or lease of that merchandise***."  *See Kuhns*, 868 F.3d at 719 (emphasis added); Mo. Stat. § 407.025(1); *Grawitch v. Charter Commc'n, Inc*., 750 F.3d 956, 960 (8th Cir. 2014); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1057–58 (E.D. Mo. 2009) (dismissing MMPA claim based on alleged "failure to employ adequate security measures coupled with [] false promises to protect confidential information" because plaintiff failed to allege any specific amount paid for data security); *id.* ("A claim of damages for time expended is not sufficiently definite or certain to support a monetary award for an 'ascertainable loss' under the MMPA.").  Blando does not allege he purchased (*i.e.*, paid for) loan servicing, so his MMPA claims fail.  *Id.* at 1057 ("One ... who never ... pays anything of value cannot be said to have suffered damage [under the MMPA] by reason of any unlawful practice.").

*Third*, Blando's allegations do not relate to the loan servicing he received from Lakeview (Compl. ¶ 316), so he has no damages.  Under the MMPA, damages are "the difference between the actual value of the property and what its value would have been if it had been as represented[.]" *See Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883, 886 (Mo. App. E.D. 1994); *Shiplet v. Copeland*, 450 S.W.3d 433, 442 (Mo. App. W.D. 2014).  Since PII is not "property," *supra* at III.B.1, and Blando does not allege that the loan servicing he receives is worth less due to the Incident, his MMPA claims fail.

11. **Count XIII, Violations of the Indiana Deceptive Consumer Sales Act ("IDCSA")**

The Court should dismiss Plaintiff Farley's IDCSA claims, which are brought against Defendants Bayview and Lakeview.  Compl. ¶¶ 728-39.  Farley does not allege any dealings with Bayview (*id.* ¶¶ 40, 254), so she cannot state a claim against Bayview.  She also fails to plausibly allege that Bayview or Lakeview committed an uncured or incurable deceptive act, so her claims fail.  *See* Ind. Code § 24-5-0.5-4 ("A person relying upon an ***uncured or incurable*** deceptive act may bring an action….") (emphasis added); *McKinney v. State*, 693 N.E.2d 65, 68 (Ind. 1998) ("[T]he Act provides for two kinds of actionable deceptive acts: 'uncured' deceptive acts and 'incurable' deceptive acts."); Compl. ¶¶ 737 (conceding that Farley must allege "an uncured or incurable deceptive act"), 734 (alleging, in conclusory fashion, that Defendants committed incurable deceptive acts); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Even if Farley plausibly alleged "an uncured or incurable deceptive act," her claim would fail.  To pursue a claim for an *uncured* deceptive act, Farley was required to provide Bayview and Lakeview with written notice and an opportunity to cure.  She did not provide notice (Compl. ¶¶ 728-39), so she cannot pursue claims for an *uncured* deceptive act.  *See* Ind. Code § 24-5-0.5-5(a); *Mackey v. Belden, Inc.*, No. 4:21-CV-00149-JAR, 2021 WL 3363174, at *13 (E.D. Mo. Aug. 3, 2021).  Farley also fails to state a claim for an *incurable* deceptive act because her allegations do not satisfy Rule 9(b).  *See McKinney*, 693 N.E.2d at 71; *Mackey v. Belden, Inc.*, No. 4:21-CV-00149-JAR, 2021 WL 3363174, at *13 (E.D. Mo. Aug. 3, 2021) (dismissing IDCSA claims based on alleged incurable deceptive act for failure to comply with Rule 9(b) because plaintiff failed to identify "specific statements by [defendant] indicating that [plaintiff's] PII would be secured."); *supra* at footnote 5 (reciting the requirements of Rule 9(b)).  Farley does not come close to satisfying Rule 9(b), so she cannot pursue claims for an *incurable* deceptive act.

Lastly, Farley does not state a claim for an incurable deceptive act because she does not allege "a deceptive act done by a supplier as part of a scheme, artifice, or device ***with intent to defraud or mislead***."  *See* Ind. Code § 24-5-0.5-2(8) (emphasis); *McKinney*, 693 N.E.2d at 68 ("Intent to defraud or mislead is thus clearly an element of an incurable deceptive act.").  Farley's allegation that Bayview and Lakeview engaged in "unfair and deceptive practices… with intent to defraud or mislead" (Compl. ¶ 734) does not come close to satisfying Rule 9(b).  *Supra* at footnote

5 (reciting the requirements of Rule 9(b)).  Indeed, such threadbare allegations do not even satisfy Rule 8.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### 12.   Count XIV, Violations of the Texas Deceptive Trade Practices – Consumer Protection Act ("TDTPA")

The Court should dismiss Plaintiffs Stone, Gonzales, and Myers' TDTPA claims, which are brought against Bayview and Lakeview.  Compl. ¶¶ 740-41.  Plaintiffs do not allege any dealings with Bayview (*id.* ¶¶ 161, 177, 503), so they cannot state claims against Bayview under the TDTPA, and their claims fail for two additional reasons.

*First*, Plaintiffs fail to comply with Rule 9(b).  "It is well-established that '[c]laims alleging violations of the [TDTPA] are subject to the requirements of Rule 9(b).'"  *See Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 795–800 (N.D. Tex. 2009).  However, Plaintiffs' allegations amount to little more than a recitation of the elements of a TDTPA claim (Compl. ¶ 745) and conclusory allegations that Bayview and Lakeview's data security was inadequate (*id.* ¶ 746).  These allegations fall well short of satisfying Rule 9(b) and would not even satisfy Rule 8.  *Supra* at footnote 5 (reciting the requirements of Rule 9(b)); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

*Second*, Plaintiffs cannot satisfy the definition of "consumer."  *See* Tex. Bus. & Com. Code Ann. § 17.45(4) (defining "consumer" as "an individual… who seeks or acquires by purchase or lease, any goods or services….."); *Mendoza v. American Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex. App.-San Antonio 1996) ("consumer status is an essential element of a DTPA cause of action").  Plaintiffs cannot satisfy the definition of "consumer" because they did not "purchase or lease" loan servicing; it is a service that is incidental to their loan.  *See Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 769 (5th Cir. 2016) ("[T]he key principle in determining consumer status is that the goods or services purchased must be an objective of the transaction, not merely incidental to it.") (citations and quotation marks omitted); *Randall v. BAC Home Loans Servicing, LP*, No. 4:11-CV-182, 2012 WL 12902782, at *2 (E.D. Tex. Oct. 23, 2012) ("The services provided as the loan servicer [] are merely incidental to the completed mortgage loan and do not transform Plaintiff into a 'consumer' for purpose of the [TDTPA].");  *Davis v. Wells Fargo Bank, N.A.*, 976 F. Supp. 2d 870, 886 (S.D. Tex. 2013) (holding that loan servicing is "incidental to the original purchasing objective"); *Fowler v. U.S. Bank, Nat. Ass'n*, 2 F. Supp. 3d 965, 974 (S.D. Tex. 2014) (same).

### 13. Count XV, Violation of the Ohio Residential Mortgage Loan Act ("RMLA")

The Court should dismiss Plaintiff Thomas' RMLA claims, which are brought against Bayview and Lakeview.  Compl. ¶¶ 757-64.  As discussed, *supra* at III.A, Thomas lacks standing so her RMLA claim should be dismissed, and her claims against Bayview fail because she does not allege any dealings with Bayview.  Compl. ¶¶ 490-91, 494-95, 502.

Thomas' claims premised on Section 1322.40(C) (*id.* ¶ 759) fail because they sound in fraud and her allegation that Defendants "fail[ed] to implement and maintain reasonable security measures" (*id.* ¶ 761) does not come close to satisfying Rule 9(b)'s heightened pleading standards.  *See* Ohio Rev. Code § 1322.40(C) (prohibiting "conduct that constitutes improper, fraudulent, or dishonest dealings"); *supra* at footnote 5 (reciting the requirements of Rule 9(b)).  Indeed, such threadbare allegations do not even satisfy Rule 8.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiff's claims premised on Section 1322.45(A) also fail because they are unsupported by any factual allegations that would support a finding that Lakeview violated the RMLA.  *See* Compl. ¶ 761 (alleging, in conclusory fashion, that Defendants "fail[ed] to implement and maintain reasonable security measures").

### 14. Count XVI, Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL")

The Court should dismiss Plaintiff Kraus' PUTPCPL claims, which are asserted against Bayview and Pingora.  Compl. ¶ 765-66.  His claims against Bayview fail because he does not allege any dealings with Bayview (*id.* ¶¶ 76, 467, 469) and his claims fail for three additional reasons.

*First*, Kraus cannot maintain a private action because he did not purchase or lease loan servicing.  *See* 73 Pa. Stat. § 201-9.2 (providing for a private right of action for "[a]ny person who purchases or leases goods or services"); *Tracy v. P.N.C. Bank, N.A.*, No. 2:20-CV-1960-NR, 2022 WL 2275493, at *4 (W.D. Pa. June 23, 2022) (dismissing PUTPCPL claim because plaintiffs "did not purchase a relevant service").

*Second*, Kraus does not allege an "ascertainable loss of money or property, real or personal[.]"  *See* 73 Pa. Stat. § 201–9.2; Compl. ¶¶ 471-76 (reciting Kraus' alleged injuries); *Weinberg v. Sun Co.*, 565 Pa. 612, 618 (2001) ("The [PUTPCPL] clearly requires, in a private action, that a plaintiff suffer an ascertainable loss as a result of the defendant's prohibited action.");

*In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 541 (M.D. Pa. 2021) (dismissing PUTPCPL claim for failure to allege a "loss of money or property, real or personal").

*Third*, Kraus does not plausibly allege justifiable reliance. *See Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 438 (2004) ("[P]laintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance."); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JMC, 2021 WL 3568394, at \*14–16 (D.S.C. Aug. 12, 2021) (dismissing PUTPCPL for lack of justifiable reliance). Kraus merely alleges, in conclusory fashion, that "[he] did rely on Defendants' misrepresentations and omissions relating to their data privacy and security" (Compl. ¶ 774), so his claims fail. *See In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 542 (M.D. Pa. 2021) (dismissing PUTPCPL claims where "Plaintiffs' complaint only includes a single, conclusory allegation that 'Plaintiffs relied on Rutter's misrepresentations and omissions relating to its data privacy and security.'").

### 15. Count XVII, Violations of the Tennessee Identity Theft Deterrence Act of 1999 ("TITDA")

The Court should dismiss Plaintiff Burnett's TITDA claims, which are brought against Bayview and Lakeview. Compl. ¶¶ 781-82. Burnet does not allege any dealings with Bayview and the allegedly inadequate notification was from Lakeview, so her claims should be dismissed as to Bayview. *Id.* ¶¶ 62, 388, 390. Moreover, her claims fail for three additional reasons.

*First*, Bayview and Lakeview are not subject to TITDA. "TITDA expressly states that '[t]he provisions of this section shall not apply to any person who is subject to the provisions of Title V of the Gramm-Leach-Bliley Act of 1999.'" *See Walton v. Nova Info. Sys.*, No. 3:06-CV-292, 2008 WL 1751525, at \*18 (E.D. Tenn. Apr. 11, 2008) (quoting Tenn. Code. Ann § 47-18-2107(i)). Title V applies to any entity that is a "financial institution," which is defined to include "any institution the business of which is engaging in financial activities as described in [12 U.S. Code § 1843(k)]." *See Trans Union LLC v. F.T.C.*, 295 F.3d 42, 48–49 (D.C. Cir. 2002); *F.T.C. v. AmeriDebt, Inc.*, 343 F. Supp. 2d 451, 456 (D. Md. 2004); 15 U.S.C. §§ 6801, 6809(3)(A); 12 U.S.C. § 1843(k).

Section 1843(k) provides that "financial activities" include "[e]ngaging in any activity that the [Federal Reserve] Board has determined, by order or regulation that is in effect on November 12, 1999, to be so closely related to banking or managing or controlling banks as to be a proper

incident thereto…." *See* 12 U.S.C. § 1843(k); *Trans Union LLC*, 295 F.3d at 48–49; *AmeriDebt, Inc.*, 343 F. Supp. 2d at 456.  The Federal Reserve Board promulgated 12 C.F.R. § 225.28(a) - (b)(1), which provides that "acquiring, brokering, [and] servicing loans" are "so closely related to banking or managing or controlling banks," and the regulation was "in effect on November 12, 1999." *See* 12 C.F.R. § 225.28(a)–(b)(1); 62 Fed. Reg. 9329 (Feb. 28, 1997).  Since Lakeview is a "private mortgage loan servicer" (Compl. ¶ 87) and Bayview acquires loans and servicing rights,[6] they are "subject to the provisions of Title V of the Gramm-Leach-Bliley Act of 1999" and, thus, not subject to TITDA.

Section 1843(k) also provides that "financial activities" include "[p]roviding financial, investment, or economic advisory services" (12 U.S. Code § 1843(k)(4)(C)), which would encompass Bayview because it is alleged to be an "investment management services company" (Compl. ¶ 93).  Thus, again, Bayview is "subject to the provisions of Title V of the Gramm-Leach-Bliley Act of 1999" and, therefore, not subject to TITDA.

*Second*, Burnett does not allege any damages resulting from the alleged untimely notice.  *See* Tenn. Code. Ann § 47-18-2107(h) (requiring damages caused by the violation).  Burnett alleges emotional distress, that a fraudulent tax return was filed in her name, and that she spent and will continue spending time addressing and mitigating the effects of the Incident.  Compl. ¶¶ 392-96.  However, there are no allegations to support the inference that these alleged injuries would not have occurred if Lakeview provided notice earlier.  *See supra* at III.B.4 (discussing analogous case law under California's Consumer Records Act).

*Third*, Burnett's request for injunctive relief is without merit.  She alleges that Lakeview's notice, which she received on April 4, 2022, was untimely.  Compl. ¶¶ 62, 781-89.  However, there is no injunctive relief this Court could fashion to cure the alleged untimeliness and there is no basis for concluding that the Incident is likely to reoccur, so injunctive relief is unwarranted.  *See id.* at Ex. 8 (Dkt. No. 47-8) (describing enhanced security measures implemented after the Incident).

---

[6] *See* https://bayview.com/#learnmore ("[Bayview] is an investment management firm focused on investments in mortgage and consumer credit, including whole loans, asset backed securities, mortgage servicing rights, and other credit-related assets.") (accessed Aug. 25, 2022).

### 16. Count XVIII, Violations of the Tennessee Consumer Protection Act of 1977 ("TCPA")

The Court should dismiss Plaintiff Burnett's TCPA claims, which are brought against Bayview and Lakeview.  Compl. ¶¶ 790-806.  She does not allege any dealings with Bayview, so her claims should be dismissed as to Bayview (*id.* ¶¶ 62, 388, 390) and they fail for three additional reasons.

*First*, Burnett purports to bring TCPA claims on behalf of a class (*id.* ¶ 791), which is not permitted, so her claims fail.  *See* Tenn. Code. Ann § 47-18-109 ("No class action lawsuit may be brought to recover damages for an unfair or deceptive act or practice declared to be unlawful by this part."); *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 798–99 (E.D. Mich. 2019).

*Second*, Burnett fails to satisfy Rule 9(b).  TCPA claims are subject to Rule 9(b)'s heightened pleading standards.  *See Bridgestone Am.'s, Inc. v. Int'l Bus. Machines Corp.*, 172 F.Supp.3d 1007, 1019 (M.D. Tenn. 2016); *Rhodes v. Bombardier Cap., Inc.*, No. 3:09-CV-562, 2010 WL 3861074, at *2 (E.D. Tenn. Sept. 24, 2010) (citing *Metro. Prop. & Cas. Ins. Co. v. Bell*, No. 04-5965, 2005 WL 1993446, at *5 (6th Cir. Aug. 17, 2005)).  However, Burnett's conclusory allegation that Defendants' data security was inadequate falls well short of satisfying Rule 9(b) and would not even satisfy Rule 8.  Compl. ¶¶ 19, 106-07, 126-30; *supra* at footnote 5 (reciting the requirements of Rule 9(b)); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

*Third*, Burnett fails to allege damages recoverable under the TCPA.  To state a TCPA claim, Burnett must plausibly allege "an ascertainable loss of money or property[.]"  Tenn. Code. Ann § 47-18-109 (2021).  The loss must have "tangible economic value" and be "measurable."  *See Akers v. Prime Succession of Tenn., Inc.*, 387 S.W.3d 495, 509–10 (Tenn. 2012) (rejecting emotional distress damages); *Discover Bank v. Morgan*, 363 S.W.3d 479, 496 (Tenn. 2012).  Burnett alleges a fraudulent tax return was filed in her name, emotional distress, and time spent addressing and mitigating the effects of the Incident.  Compl. ¶¶ 392-96.  Since these alleged injuries do not constitute "ascertainable loss[es] of money or property," her TCPA claims fail.

### 17. Count XIX, Violations of the Georgia Security Breach Notification Act

Plaintiff Hamilton's claims for alleged violations of the Georgia Security Breach Notification Act fail because the Act does not provide for a private right of action.  *See In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1342 (N.D. Ga. 2019).

24

### 18.    Count XX, Violations of New York General Business Law

The Court should dismiss Plaintiff Sevak's Section 349 claims, which are brought against Bayview and Lakeview.  Compl. ¶¶ 815-16.  He does not allege any dealings with Bayview, so his claims should be dismissed as to Bayview (*id.* ¶¶ 48, 303-15) and his claims fail for four additional reasons.

*First*, Sevak fails to allege conduct occurring in New York. *Id.* ¶¶ 815-23; *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 325, 774 N.E.2d 1190, 1196 (2002) ("[O]ur General Business Law analysis does not turn on the residency of the parties.  As both the text of the statute and the history suggest, the intent is to protect consumers in their transactions that take place in New York State."); *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013) ("[T]he appropriate test in this case is to focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than 'on the residency of the parties.'").  Sevak does not contend that loan servicing or the alleged misrepresentations, omissions or inadequate notification occurred in New York, nor could he since thirty-two other Plaintiffs with no relevant ties to New York allege they were injured by the same alleged acts and omissions.  *See* Compl. ¶¶ 23-86 (listing Plaintiffs' states of residence), 97-98 (alleging "tortious acts in Florida").  Thus, New York is not the location of "the allegedly deceptive transaction," so Sevak's Section 349 claims fail.  *See In re GE/CBPS Data Breach Litig.*, No. 20 CIV. 2903 (KPF), 2021 WL 3406374, at *13 (S.D.N.Y. Aug. 4, 2021) (holding that plaintiff failed to allege a sufficient connection to New York as opposed to the state "where Defendants maintain servers, where employees responsible for… information technology work, or where those involved in the Data Breach notification processes work."); Compl. ¶ 99 ("[D]ecisions regarding the management of the information security of Plaintiffs' and Class Members' PII were made by Bayview within ***this district***.  Moreover, it is believed that Defendants maintain Plaintiffs' and Class Members PII in the district, and the harm caused to Plaintiffs and Class Members emanated from ***this district***.") (emphasis added).

*Second*, Sevak fails to allege a deceptive act or practice.  He alleges Lakeview failed to implement adequate data security, misrepresented that it would protect PII, and failed to provide adequate and timely notification.  Compl. ¶ 817.  However, Lakeview's alleged statements "do not constitute an unlimited guaranty that [PII] could not be stolen or [] hacked" and an "alleged failure to safeguard [PII] from theft… does not constitute a deceptive practice within the meaning of the

statute." *See Abdale v. N. Shore Long Island Jewish Health Sys.*, Inc., 19 N.Y.S.3d 850, 859–60 (N.Y. Sup. Ct. 2015); *Prignoli v. Bruczynski*, No. 20-CV-907 (MKB), 2021 WL 4443895, at *7 (E.D.N.Y. Sept. 28, 2021) ("[A]n omission-based claim must plausibly allege that … defendants had knowledge of the material information and failed to disclose or actively concealed such information…. [A] defendant's failure to reveal facts about which even it was unaware at the time will not lead to liability under [§] 349."). Indeed, Lakeview's Privacy Policy, which is attached to the Complaint, forecloses any argument that Lakeview deceived Sevak:

> While we undertake these security measures, you acknowledge that no security measure or modality of data transmission over the Internet can be guaranteed to be 100% secure. We take security seriously; however, you should not expect that any personal information provided to us through the Site is free from the risk posed by unauthorized access.

Compl. Ex. 2 at 5 (Dkt. No. 47-2).

*Third*, Sevak does not allege that he paid for any product or service provided by Bayview or Lakeview, so his Section 349 claims fail. *Id.* ¶ 303; *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 195 (E.D.N.Y. 2018) ("An actual injury claim under [s]ection[s] 349 [and 350] typically requires a plaintiff to allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.") (quotation marks omitted).

*Fourth*, Sevak fails to allege that he was misled (Compl. ¶¶ 815-23), so his claims fail. *See Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 739 (W.D.N.Y. 2020) ("[T]he case law consistently holds that 'in order to have been injured by the defendant's deceptive act, a plaintiff must have been personally misled or deceived.'") (collecting cases).

### 19. Count XXI, Violations of Information Security Breach and Notification Act

Plaintiff Sevak's claims for alleged violations of New York's Information Security Breach and Notification Act fail because the Act does not provide for a private right of action. *See Abdale*, 19 N.Y.S.3d 850, 857–58 ("no private right of action exists with respect to General Business Law § 899-aa"); *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 69 Misc. 3d 597, 608, 131 N.Y.S.3d 817, 827 (N.Y. Sup. Ct. 2020); *Torres v. Wendy's Int'l, LLC*, No. 616CV210ORL40DCI, 2017 WL 8780453, at *6 (M.D. Fla. Mar. 21, 2017).

### 20. Count XXII Declaratory Judgment And Injunctive Relief

Plaintiffs' Declaratory Judgment Act claims fail because the Act does not create an independent cause of action. *See Zolin v. Caruth*, No. 3:09CV38-WS, 2009 WL 2982907, at *7

(N.D. Fla. Sept. 14, 2009) ("[T]he Declaratory Judgment Act does not establish an independent cause of action, it is procedural only and merely establishes a legal remedy available in cases brought pursuant to some other law.") (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937) & *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  Even if this were not the case, dismissal would be appropriate because Plaintiffs' Declaratory Judgment Act claims are duplicative of many of Plaintiffs' other claims, which seek injunctive and declaratory relief.  *See* Compl. ¶¶ 596, 610, 623, 631, 639, 650, 661, 672, 685, 700, 702, 706, 727, 739, 780, 789, 805, 814, 823, 832; *Gentry v. Harborage Cottages-Stuart, LLLP*, Case No. 08-14020-CIV, 2008 WL 1803637, at *4 (S.D. Fla. Apr. 21, 2008) ("Here, the claim for declaratory judgment is superfluous because Plaintiffs' other claims will resolve all the disputed issues before this Court. Therefore, this Court exercises its discretion to dismiss the claim for declaratory judgment."); *Dear v. Q Club Hotel, LLC*, No. 15-60474-CIV, 2015 WL 4273054, at *3 (S.D. Fla. July 14, 2015) (dismissing Declaratory Judgment Act claim because it was duplicative).

## IV.  CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice.

## V.  REQUEST FOR HEARING

Defendants respectfully request a hearing before this Court.  The Complaint asserts twenty-two causes of action, under the laws of fourteen states, on behalf of thirty-three Plaintiffs, and Defendants seek dismissal of all claims.  Given the complexity of the issues and the number of causes of action, Defendants believe the Court and the parties would benefit from a hearing where the parties can present their respective arguments and address any questions the Court may have. Defendants estimate that one hour for Defendants and one hour for Plaintiffs will be sufficient.

Dated: August 31, 2022.

_s/ Julie Singer Brady_

Julie Singer Brady
Florida Bar No. 389315
jsingerbrady@bakerlaw.com
BAKER & HOSTETLER LLP
200 South Orange Avenue, Suite 2300
Orlando, FL 32801
Telephone: 407.649.4000
Facsimile: 407.841.0168

Paul Karlsgodt (_pro hac vice_)
PKarlsgodt@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO 80202
Telephone: 303.861.0600
Facsimile: 303.861.7805

Evan M. Mannering (_pro hac vice_)
emannering@bakerlaw.com
BAKER & HOSTETLER LLP
1050 Connecticut Ave, NW, Suite 1100
Washington, DC 20036
Telephone: 202.861.1500
Facsimile: 202.861.1783

_Counsel for Defendants_

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on August 31, 2022, I electronically filed the foregoing document with the Clerk of the Court by using the Florida E-Filing Portal, which will send a Notice of Electronic Filing to all counsel of record.

*s/ Julie Singer Brady*
Julie Singer Brady
