# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| In re Lakeview Loan Servicing Data Breach Litigation | Case No. 1:22-cv-20955-DPG |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS <u>CONSOLIDATED CLASS ACTION COMPLAINT</u>

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL ALLEGATIONS ............................................................................... 2

III.    LEGAL STANDARD.......................................................................................... 4

IV.     ARGUMENT ....................................................................................................... 4

        A.      Plaintiffs Have Article III Standing. ....................................................... 4

        B.      Plaintiffs' Negligence Claim Is Adequately Alleged............................... 8

        C.      Plaintiffs State a Claim for Breach of Implied Contract........................ 10

        D.      Lakeview and Pingora Plausibly Breached Fiduciary Duties to Plaintiffs. .......... 11

        E.      The California Plaintiffs Sufficiently Allege Claims Under State Law. .............. 12

                (i)      The Customer Records Act Claim Should Be Upheld............................. 12

                (ii)     Plaintiffs State a Claim Under the CCPA. ................................. 14

                (iii)    The UCL Claim Is Adequately Alleged.................................... 17

        F.      Plaintiff Berg States a Claim Under the Illinois Consumer Fraud Act................ 18

        G.      The Florida Deceptive and Unfair Trade Practices Act Claim Should Proceed... 20

        H.      Plaintiff McMahon States a Maryland Consumer Protection Act Claim. ............ 21

        I.      The Missouri Merchandising Practices Act Claim Is Sufficiently Pleaded.......... 22

        J.      The Indiana Deceptive Consumer Sales Act Claim Should Be Upheld. .............. 23

        K.      Plaintiffs State a Texas Deceptive Trade Practices Claim.................................. 23

        L.      The Challenge to the Ohio Residential Mortgage Loan Act Claim Fails. ........... 24

        M.      The Pennsylvania Unfair Trade Practices Claim Is Well Pled. ........................... 24

        N.      Plaintiff Burnett May Maintain a Tennessee Consumer Protection Act Claim.... 25

        O.      The New York General Business Law Claim Should Proceed............................. 26

        P.      The Declaratory Judgment Claim Is Not Superfluous. ....................................... 27

V.      CONCLUSION.................................................................................................. 27

# TABLE OF AUTHORITIES

**Cases**

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*
    125 F. Supp. 3d 945 (N.D. Cal. 2015) .................................................................... 17

*Airlines, Inc. v. Wolens*
    513 U.S. 219 (1995) ........................................................................................... 10

*Anderson v. Hannaford Bros. Co.*
    659 F.3d 151 (1st Cir. 2011) ............................................................................. 11

*Aquent LLC v. Stapleton*
    65 F. Supp. 3d 1339 (M.D. Fla. 2014) ............................................................... 12

*Bank of Am., N.A. v. Jill P. Mitchell Living Trust*
    822 F. Supp. 2d 505 (D. Md. 2011) ................................................................... 21

*Blankenship v. Pushpin Holdings, LLC*
    2015 WL 5895416 (N.D. Ill. Oct. 6, 2015) ........................................................ 19

*Bohnak v. Marsh & McLennan Cos., Inc.*
    580 F. Supp. 3d 21 (S.D.N.Y. 2022) .................................................................... 7

*Borges v. Smiledirectclub, LLC*
    2022 WL 4269564 (S.D. Fla. Sept. 15, 2022) ...................................................... 4

*Bowen v. Paxton Media Grp., LLC*
    2022 WL 4110319 (W.D. Ky. Sept. 8, 2022) ........................................................ 7

*Bray v. Gamestop Corp.*
    2018 WL 11226516 (D. Del. Mar. 16, 2018) ...................................................... 23

*Brody v. Finch Univ. of Health Scis./The Chicago Med. Sch.*
    298 Ill. App. 3d 146 (1998) .............................................................................. 19

*Brush v. Miami Beach Healthcare Grp. Ltd.*
    238 F. Supp. 3d 1359 (S.D. Fla. 2017) ................................................................ 8

*Cameron v. Terrell & Garrett, Inc.*
    618 S.W.2d 535 (Tex. 1981) ............................................................................. 24

*Capiccioni v. Brennan Naperville, Inc.*
    339 Ill. App. 3d 927 (2003) .............................................................................. 20

*Castillo v. Seagate Tech., LLC*
    2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ............................................... 11, 13

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*
  2017 WL 1436044 (N.D. Cal. Apr. 24, 2017) ........................................................ 17

*Clemens v. ExecuPharm Inc.*
  2022 WL 4005322 (3d Cir. Sept. 2, 2022) ......................................................... 5, 7

*Crusselle v. Mong*
  59 So. 3d 1178 (Fla. 5th DCA 2011) .................................................................. 12

*Cupit v. Dry Basement, Inc.*
  592 S.W.3d 417 (Mo. Ct. App. 2020) ................................................................. 22

*deJesus v. Seaboard Coast Line R. Co.*
  281 So. 2d 198 (Fla. 1973) ................................................................................. 9

*Desue v. 20/20 Eye Care Network, Inc.*
  2022 WL 796367 (S.D. Fla. Mar. 15, 2022) ......................................................... 7

*Dieffenbach v. Barnes & Noble, Inc.*
  887 F.3d 826 (7th Cir. 2018) ............................................................................. 20

*Discover Bank v. Morgan*
  363 S.W.3d 479 (Tenn. 2012) ............................................................................ 26

*DiTeodoro v. J.G. Durand Int'l*
  566 F. Supp. 273 (E.D. Pa. 1983) ...................................................................... 25

*Doe v. Boys Clubs of Greater Dallas, Inc.*
  907 S.W.2d 472 (Tex. 1995) .............................................................................. 24

*Doe v. Fertility Centers of Illinois, S.C.*
  2022 WL 972295 (N.D. Ill. Mar. 31, 2022) ........................................................... 5

*Doherty v. Allianz Life Ins. Co. of N. Am.*
  2019 WL 3934100 (M.D. Fla. Aug. 20, 2019) ..................................................... 12

*Downey Surgical Clinic, Inc. v. Ingenix, Inc.*
  2014 WL 12558848 (C.D. Cal. May 30, 2014) .................................................... 17

*Farmer v. Humana, Inc.*
  582 F. Supp. 3d 1176 (M.D. Fla. 2022) ........................................................... 5, 7

*First Choice Fed. Credit Union v. Wendy's Co.*
  2017WL 9487086 (W.D. Pa. Feb. 13, 2017)
  *report & recommendation adopted*, 2017 WL 1190500 (W.D. Pa. Mar. 31, 2017).................. 9

*Galaria v. Nationwide Mut. Ins. Co.*
  663 F. App'x 384 (6th Cir. 2016) ..................................................................... 5, 6

*Gomez v. Wells Fargo Bank*
  2014 WL 11878882 (S.D. Fla. Jan. 7, 2014) ...................................................... 12

*Gordon v. Chipotle Mexican Grill, Inc.*
   344 F. Supp. 3d 1231 (D. Colo. 2018) .................................................. 11, 17, 19, 23

*Goshen v. Mut. Life Ins. Co.*
   98 N.Y.2d 314 (N.Y. 2002) ............................................................................ 26

*Griffey v. Magellan Health Inc.*
   2022 WL 1811165 (D. Ariz. June 2, 2022) ............................................. 21, 26, 27

*Hameed-Bolden v. Forever 21 Retail, Inc.*
   2018 WL 6802818 (C.D. Cal. Oct. 1, 2018) .................................................. 16, 18

*Haymer v. Countrywide Bank, FSB*
   2011 WL 2790172 (N.D. Ill. July 15, 2011) ...................................................... 19

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*
   380 F. Supp. 3d 1243 (M.D. Fla. 2019) ............................................................. 4, 9

*In re Ambry Genetics Data Breach Litig.*
   567 F. Supp. 3d 1130 (C.D. Cal. 2021) ............................................................... 16

*In re Anthem Data Breach Litig.*
   162 F. Supp. 3d 953 (N.D. Cal. 2016) ................................................................. 27

*In re Brinker Data Incident Litig.*
   2020 WL 691848 (M.D. Fla. Jan. 27, 2020) .......................................... 8, 11, 18

*In re Brinker Data Incident Litig.*
   2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) .................................................... 6

*In re Cap. One Consumer Data Sec. Breach Litig.*
   488 F. Supp. 3d 374 (E.D. Va. 2020) ........................................................ *passim*

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs. & Prods. Liab. Litig.*
   295 F. Supp. 3d 927 (N.D. Cal. 2018) ................................................................ 26

*In re Equifax Inc. Customer Data Sec. Breach Litig.*
   999 F.3d 1247 (11th Cir. 2021) .................................................................. 5, 6, 7

*In re Equifax, Inc., Customer Data Security Breach Litig.*
   362 F. Supp. 3d 1295 (N.D. Ga. 2019) ................................................................ 9

*In re Experian Data Breach Litig.*
   2016 WL 7973595 (C.D. Cal. Dec. 29, 2016) .............................................. 13, 27

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*
   341 F.R.D. 128 (D. Md. 2022) ............................................................................. 7

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*
   440 F. Supp. 3d 447 (D. Md. 2020) ............................................................ *passim*

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*
    543 F. Supp. 3d 96 (D. Md. 2021) .......................................................................... 21

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*
    2022 WL 1468057 (S.D. Fla. May 10, 2022) .............................................. *passim*

*In re Michaels Stores Pin Pad Litig.*
    830 F. Supp. 2d 518 (N.D. Ill. 2011) ...................................................................... 11

*In re Pawn Am. Consumer Data Breach Litig.*
    2022 WL 3159874 (D. Minn. Aug. 8, 2022) ........................................................ 6, 8

*In re Rutter's Inc. Data Security Breach Litigation*
    511 F. Supp. 3d 514 (M.D. Pa. 2021) .................................................................... 25

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*
    2020 WL 2214152 (S.D. Cal. May 7, 2020) ..................................... 14, 18, 24, 27

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*
    996 F. Supp. 2d 942 (S.D. Cal. 2014) .................................................................... 14

*In re Target Corp. Data Sec. Breach Litig.*
    66 F. Supp. 3d 1154 (D. Minn. 2014) .............................................................. 11, 17

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*
    2016 WL 2897520 (N.D. Ga. May 17, 2016) ........................................................ 28

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) .................................................................. 16

*In re USAA Data Sec. Litig.*
    2022 WL 3348527 (S.D.N.Y. Aug. 12, 2022) .......................................................... 7

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*
    2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ........................................................ 17

*Irwin v. Jimmy John's Franchise, LLC*
    175 F. Supp. 3d 1064 (C.D. Ill. 2016) .................................................................... 11

*Irwin v. RBS Worldpay, Inc.*
    2010 WL 11570892 (N.D. Ga. Feb. 5, 2010) ......................................................... 11

*Iskander v. Laugh Factory, Inc.*
    2020 WL 2114939 (C.D. Cal. Mar. 17, 2020) ....................................................... 17

*Jackson v. Charlie's Chevrolet, Inc.*
    664 S.W.2d 675 (Mo. Ct. App. 1984) .................................................................... 22

*K.A. by & through B.W. v. Children's Mercy Hosp.*
    2019 WL 13207485 (W.D. Mo. May 17, 2019) .................................................... 22

*Karter v. Epiq Sys., Inc.*
2021 WL 4353274 (C.D. Cal. July 16, 2021) ................................................................ 15, 16

*Kennedy v. Mondelez Glob. LLC*
2020 WL 4006197 (E.D.N.Y. July 10, 2020) ....................................................................... 26

*Klay v. Humana, Inc.*
382 F.3d 1241 (11th Cir. 2004) ............................................................................................ 10

*Lewert v. P.F. Chang's China Bistro, Inc.*
819 F.3d 963 (7th Cir. 2016) ................................................................................................... 6

*Lisk v. Lumber One Wood Preserving, LLC*
792 F.3d 1331 (11th Cir. 2015) ............................................................................................ 25

*LSQ Funding Grp., L.C. v. EDS Field Servs.*
879 F. Supp. 2d 1320 (M.D. Fla. 2012) .............................................................................. 10

*McFarlane v. Altice USA, Inc.*
524 F. Supp. 3d 264 (S.D.N.Y. 2021) ................................................................................. 11

*McLellan v. Fitbit, Inc.*
2018 WL 2688781 (N.D. Cal. June 5, 2018) ....................................................................... 16

*Mehta v. Robinhood Fin. LLC*
2021 WL 6882377 (N.D. Cal. May 6, 2021) ....................................................................... 15

*Millstein v. Holtz*
2022 WL 4017172 (S.D. Fla. Sept. 2, 2022) ......................................................................... 9

*Mount v. PulsePoint, Inc.*
684 F. App'x 32 (2d Cir. 2017) ............................................................................................... 7

*MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*
40 F.4th 1295 (11th Cir. 2022) ............................................................................................... 4

*Mukamal v. Bakes*
378 F. App'x 890 (11th Cir. 2010) ....................................................................................... 12

*Mulkey v. RoundPoint Mortg. Serv. Corp.*
2021 WL 5804575 (N.D. Ohio Dec. 7, 2021) ..................................................................... 24

*Murphy v. Stonewall Kitchen, LLC*
503 S.W.3d 308 (Mo. App. E.D. 2016) ............................................................................... 22

*Norwest Mortgage, Inc. v. Super. Ct.*
72 Cal. App. 4th 214 (1999) ................................................................................................. 17

*Nypl v. JPMorgan Chase & Co.*
2017 WL 3309759 (S.D.N.Y. Aug. 3, 2017) ....................................................................... 17

*Opris v. Sincera Reprod. Med.*
   2022 WL 1639417 (E.D. Pa. May 24, 2022) ............................................................ 5, 9, 25, 26

*Patton v. Experian Data Corp.*
   2018 WL 6190349 (C.D. Cal. Jan. 23, 2018) .......................................................................... 13

*Perdue v. Hy-Vee, Inc.*
   455 F. Supp. 3d 749 (C.D. Ill. 2020) ........................................................................... 19, 20, 22

*Perry v. Cable News Network, Inc.*
   854 F.3d 1336 (11th Cir. 2017) ................................................................................................... 7

*Perry v. Schumacher Grp. of La.*
   2014 WL 988751 (M.D. Fla. Mar. 13, 2014) ............................................................................. 9

*PFM Air, Inc. v. Dr. Ing. h.c. F. Porsche A.G.*
   2011 WL 13176223 (M.D. Fla. Aug. 2, 2011) ........................................................................... 9

*Portier v. NEO Tech. Sols.*
   2019 WL 7946103 (D. Mass. Dec. 31, 2019) .......................................................................... 13

*Provost v. Aptos, Inc.*
   2018 WL 1465766 (N.D. Ga. Mar. 12, 2018) ............................................................................ 9

*Purvis v. Aveanna Healthcare, LLC*
   563 F. Supp. 3d 1360 (N.D. Ga. 2021) .................................................................................. 9, 11

*Randall v. Scott*
   610 F.3d 701 (11th Cir. 2010) ..................................................................................................... 4

*Remijas v. Neiman Marcus Grp., LLC*
   794 F.3d 688 (7th Cir. 2015) ................................................................................................... 6, 8

*Resnick v. AvMed, Inc.*
   693 F.3d 1317 (11th Cir. 2012) ..................................................................................... 8, 12, 13

*Reynolds v. FCA US LLC*
   546 F. Supp. 3d 635 (E.D. Mich. 2021) ................................................................................... 26

*Roopchan v. ADT Sec. Sys.*
   781 F. Supp. 2d 636 (E.D. Tenn. 2011) ................................................................................... 25

*Rudolph v. Hudson's Bay Co.*
   2019 WL 2023713 (S.D.N.Y. May 7, 2019) ............................................................................ 11

*Sackin v. TransPerfect Glob., Inc.*
   278 F. Supp. 3d 739 (S.D.N.Y. 2017) ...................................................................................... 11

*Sanchez v. Wal-Mart Stores, Inc.*
   2007 WL 1345706 (E.D. Cal. May 8, 2007) ............................................................................ 16

*Seifi v. Mercedes-Benz USA, LLC*
    2013 WL 5568449 (N.D. Cal. Oct. 9, 2013) ........................................................... 16

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*
    559 U.S. 393 (2010) ........................................................................................... 26

*Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*
    955 F. Supp. 2d 452 (E.D. Pa. 2013) ................................................................. 25

*Snow v. Align Tech., Inc.*
    2022 WL 1396223 (N.D. Cal. May 4, 2022) ...................................................... 18

*Spokeo, Inc. v. Robins*
    578 U.S. 330 (2016) ............................................................................................. 7

*Stasi v. Inmediata Health Grp. Corp.*
    501 F. Supp. 3d 898 (S.D. Cal. 2020) ...................................................... 7, 14, 16

*Suchanek v. Sturm Foods, Inc.*
    311 F.R.D. 239 (S.D. Ill. 2015) ........................................................................ 26

*Taylor v. Thomas*
    624 F. App'x 322 (6th Cir. 2015) ..................................................................... 26

*Toretto v. Donnelley Fin. Sols., Inc.*
    583 F. Supp. 3d 570 (S.D.N.Y. 2022) .......................................................... 14, 27

*Torres v. Wendy's Int'l, LLC*
    2017 WL 8780453 (M.D. Fla. 2017) ................................................................ 11

*Toy v. Metro. Life Ins. Co.*
    593 Pa. 20 (2007) .............................................................................................. 25

*TransUnion LLC v. Ramirez*
    141 S. Ct. 2190 (2021) ......................................................................................... 4

*Vess v. Ciba-Geigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003) .......................................................................... 17

*Virgilio v. Ryland Grp., Inc.*
    680 F.3d 1329 (11th Cir. 2012) ........................................................................... 8

*Wallace v. Health Quest Sys., Inc.*
    2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) .................................................. 27

*Wellnext LLC v. OVM LLC*
    2018 WL 7048129 (S.D. Fla. Feb. 16, 2018) ................................................... 10

*Wiegel v. Stork Craft Mfg., Inc.*
    780 F. Supp. 2d 691 (N.D. Ill. 2011) ............................................................... 19

*Wigod v. Wells Fargo Bank, N.A.*
    673 F.3d 547 (7th Cir. 2012)..................................................................... 18, 20

*Wilding v. DNC Servs. Corp.*
    941 F.3d 1116 (11th Cir. 2019).......................................................................... 4

*Willis v. Bank of Am. Corp.*
    2014 WL 3829520 (D. Md. Aug. 1, 2014).......................................................... 21

*Wynne v. Audi of Am.*
    2022 WL 2916341 (N.D. Cal. July 25, 2022)..................................................... 7

*Zolin v. Caruth*
    2009 WL 2982907 (N.D. Fla. Sept. 14, 2009)................................................... 27

**Statutes**

Cal. Civ. Code § 1798.140................................................................................... 15

Cal. Civ. Code § 1798.150............................................................................. 15, 16

Cal. Civ. Code § 1798.81.5............................................................................ 13, 15

Cal. Civ. Code § 1798.82(a)........................................................................... 13, 14

Ind. Code § 24-5-0.5 -2(7)................................................................................. 23

Ind. Code § 24-5-0.5 -2(8)................................................................................. 23

Md. Code Ann., Com. Law § 13-301(3)................................................................ 21

Md. Code Ann., Com. Law § 13-301(9)................................................................ 21

Mo. Rev. Stat § 407.010(4)................................................................................ 22

Tenn. Code Ann. § 47-18-109(a)(1)..................................................................... 26

Tenn. Code Ann. § 47-18-109(g)......................................................................... 26

Tex. Bus. & Com. Code § 17.45(4)...................................................................... 24

**Rules**

Fed. R. Civ. P. 15............................................................................................. 27

# I.   INTRODUCTION

The Defendants in this consolidated proceeding—Lakeview Loan Servicing, LLC ("Lakeview"), Pingora Loan Servicing, LLC ("Pingora"), and Bayview Asset Management LLC ("Bayview")—were entrusted with the sensitive personal information of millions of Americans with mortgages. Defendants knew that the Social Security numbers and other personally identifiable information ("PII") they collected as a precondition for servicing these loans were a target for cybercriminals, and Defendants assured consumers that they would protect the information. Yet Defendants failed to protect it, neglecting to even take basic precautions such as encrypting the PII or deleting old information that was no longer needed. As a result, in late October 2021, an unauthorized third party was able to gain access to Defendants' network and take files containing the PII of nearly four million current and former customers (the "Data Breach"). Not until four months after learning of the breach did Defendants notify Plaintiffs and other customers of the breach—a delay Defendants have not attempted to justify.

The Data Breach has already harmed Plaintiffs. Despite the care they took to safeguard their PII, many Plaintiffs began experiencing incidents of fraud and identity theft soon after the breach. One Plaintiff had thousands of dollars stolen from her account and several have learned that their personal information has been found on the dark web. Defendants do not challenge the standing of the majority of Plaintiffs but contend that those who have not yet suffered identity fraud have not alleged a cognizable injury in fact. But all Plaintiffs have been required to take steps to mitigate the effects of the Data Breach, and, particularly where the PII obtained from the breach has already been misused, each Plaintiff now confronts a substantial and present risk of identity theft. As many courts have held, these concrete injuries satisfy Article III standing requirements.

With limited exceptions,[1] Defendants' substantive challenges to Plaintiffs' claims should be rejected. Contrary to Defendants' arguments in support of dismissal, Plaintiffs allege specific

---

[1] In light of the arguments in Defendants' motion, Plaintiffs do not oppose dismissal of their claims under the Georgia Security Breach Notification Act (Count XIX), the New York Information Security Breach and Notification Act (Count XXI), and the Tennessee Identity Theft Deterrence Act (Count XVII).

facts relating to the Data Breach, how Defendants' data security was inadequate, and why Defendants' representations that they would safeguard customers' PII were misleading. Plaintiffs' allegations plausibly show that their stolen information has value. Defendants do not and cannot deny that they owed Plaintiffs a duty to protect this PII or that Plaintiffs were compelled to provide highly personal information to obtain Defendants' services. Defendants' state-specific arguments, moreover, invert the pleading standard, consistently and impermissibly misconstrue the complaint in Defendants' own favor, and raise questions of fact improper to resolve on a motion to dismiss.

Accordingly, for the reasons detailed below, other than with respect to the causes of action noted in footnote 1 above, the Court should deny the motion and allow this case to proceed.

## II.  FACTUAL ALLEGATIONS

Lakeview and Pingora are mortgage loan servicers and subsidiaries of Bayview. ¶¶ 1-2, 87-94.[2] Lakeview and Pingora process payments, manage escrows, and provide customer service for millions of mortgages each year. ¶ 100. As mortgage servicers, Defendants require consumers to provide them with highly confidential information. ¶ 123. Thus, they are custodians of sensitive and confidential PII belonging to millions of consumers across America, including names, addresses, Social Security numbers ("SSNs"), and other information consumers provided in connection with loan applications or modifications. ¶¶ 1, 2, 3, 5, 14, 100, 102, 122. This PII commands value on the black market. ¶¶ 131, 135–36.

Plaintiffs are careful not to share their personal information in a careless or reckless manner, and take precautions to prevent it from being used without their approval. *E.g.*, ¶¶ 158–59, 174–75, 187–89. When Plaintiffs and other consumers provided their PII in connection with mortgage services, they expected it would be kept secure. ¶ 105. Defendants know the information they collect is highly sensitive and a constant target for cybercriminals. ¶¶ 7, 104, 106–13, 140, 142. Lakeview's Privacy Policy assures consumers it will safeguard their personal information from unauthorized access and that it takes measures to secure its files. Bayview similarly touts that its Security Operations Center protects its affiliates—which include Lakeview and Pingora—from

---

[2] All "¶" references are to the Consolidated Amended Complaint. [D.E. 47].

cyberthreats and unauthorized intrusions. ¶¶ 8-9.

Defendants failed to take appropriate steps to safeguard Plaintiffs' PII and prevent this highly sensitive data from being exposed. ¶¶ 13, 14, 106, 113, 121. On or around October 27, 2021, Defendants' data systems were breached, resulting in the theft of Plaintiffs' and Class Members' PII, including their SSNs. ¶¶ 4, 114, 116, 144. Defendants could have prevented the Data Breach by taking reasonable security measures to protect Plaintiffs' PII—such as by (1) encrypting the PII and (2) deleting the PII of those whose mortgages are no longer being serviced by Defendants. ¶ 126. Defendants ignored repeated warnings and alerts to adequately protect this sensitive information. ¶¶ 127-28. All told, more than 2.6 million Lakeview accounts and almost 1.3 million Pingora accounts were compromised in the Data Breach. ¶ 121.

All Defendants discovered the Data Breach on or around December 7, 2021. ¶ 114. They then waited over four months, and in some cases longer, before they notified Plaintiffs and other customers of the Data Breach. Lakeview began informing its customers through letters on March 16, 2022; Pingora waited until April 6. ¶ 6. Although Defendants now claim that there is no risk of harm to the victims, after the breach both Lakeview and Pingora offered the victims free credit monitoring and advised them to take steps to mitigate their losses, including, for example, reviewing their account statements and credit reports for unauthorized activity, and placing fraud alerts on their credit reports and credit freezes on their credit files. ¶¶ 7, 143, 148, 165, 180.

Many Plaintiffs—who had carefully safeguarded their PII before the Data Breach—began experiencing identity theft and fraudulent charges soon afterward (*e.g.*, ¶¶ 149-51, 167, 181-83), including fraudulent transfers of funds that they have not recovered (¶¶ 356-57). Several Plaintiffs also have been informed that their personal information and SSNs have been found on the dark web, a hidden network of black-market websites that are havens for illicit activity. ¶¶ 15-16. Plaintiffs thus face a substantial and present risk of fraud and identity theft as a result of the Data Breach. ¶¶ 16, 130, 538-547. Social Security numbers are personal information of the highest sensitivity: once compromised they are very hard to change, and they command premium values on the black market as they enable a range of identity fraud. ¶¶ 132-36. Such fraud may occur for

years before being discovered and may continue for years afterwards. ¶¶ 139, 141. The Data Breach has already harmed Plaintiffs including from unauthorized charges on their accounts, fraudulent tax filings and government benefit claims, lost time fighting identity theft and cancelling impacted accounts, and (understandable) emotional distress. *E.g.*, ¶¶ 20, 149–57, 166–73, 181–85, 234, 247, 539–45.

### III.   LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[] all well-pleaded allegations as true and construe the allegations in the light most favorable to the Plaintiff." *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1301-02 (11th Cir. 2022). This includes "draw[ing] all reasonable inferences in the plaintiff's favor." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). The motion should be denied when the plaintiff has pleaded "enough facts to state a claim for relief that is plausible on its face." *Borges v. Smiledirectclub, LLC*, 2022 WL 4269564, at *2 (S.D. Fla. Sept. 15, 2022) (citation omitted).

### IV.   ARGUMENT

#### A.   Plaintiffs Have Article III Standing.

Article III standing requires a plaintiff to plead or prove "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124 (11th Cir. 2019). Defendants do not dispute that the vast majority of the 33 Plaintiffs have standing, but argue that five—Crenshaw, McMahon, Thomas, Myers, and Saporta—have not suffered injury in fact. Mot. at 3. Like the other Plaintiffs, these five have suffered concrete injuries in the form of the substantial and present risk of fraud and identity theft they now face, their mitigation expenses, the emotional distress they have experienced, and the loss of their privacy. *See In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1254-57 (M.D. Fla. 2019); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, — F. Supp. 3d —, 2022 WL 1468057, at *8 (S.D. Fla. May 10, 2022); *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1185

- 4 -

(M.D. Fla. 2022). The challenge to these Plaintiffs' standing should therefore be rejected.

All Plaintiffs have established injury-in-fact because their lost PII has value. ¶ 542. PII is desirable for criminals who are willing to pay hundreds of dollars for such information because they can use it to commit identity fraud. ¶¶ 131, 137. And PII sets that include SSNs, as here, are worth up to ten times more on the black market. ¶¶ 131-38. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461-62 (D. Md. 2020) (acknowledging "the value that personal identifying information has in our increasingly digital economy" and noting that PII is valuable on the black market); *Opris v. Sincera Reprod. Med.*, 2022 WL 1639417, at *8 (E.D. Pa. May 24, 2022) (finding that "the alleged loss of value to [the plaintiffs'] PII . . . further supports that they suffered damages as a result of [Defendants'] negligence.").

Defendants argue that these Plaintiffs cannot manufacture standing by undertaking mitigation efforts where the risk of future harm is only speculative. But "when a plaintiff faces a sufficient risk of harm, the time, money, and effort spent mitigating that risk are also concrete injuries." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021). Each Plaintiff undertook mitigation efforts *at Lakeview's and Pingora's direction* (¶¶ 485, 495, 507, 520, 530) and the Defendants' own offer of "credit monitoring and identity restoration services . . . confirms the reasonableness of at least some of [their] out-of-pocket mitigation expenditures." *Doe v. Fertility Centers of Illinois, S.C.*, 2022 WL 972295, at *2 (N.D. Ill. Mar. 31, 2022); *see Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) ("Nationwide seems to recognize the severity of the risk, given its offer to provide credit-monitoring and identity-theft protection for a full year.").

Moreover, each of the factors recognized in data breach cases that suggest the risk of harm is substantial and imminent exist here: (1) "the data breach was intentional"; (2) "the data was misused"; and (3) "the nature of the information accessed through the data breach could subject a plaintiff to a risk of identity theft." *Clemens v. ExecuPharm Inc.*, — F.4th —, 2022 WL 4005322, at *4 (3d Cir. Sept. 2, 2022) ("These non-exhaustive factors can serve as useful guideposts, with no single factor being dispositive to our inquiry."). As to the first and third factors, Plaintiffs

plausibly allege that an intruder intentionally gained access to Defendants' network to steal Plaintiffs' valuable PII. ¶¶ 114-18. It is hardly a leap in logic that the "primary incentive for hackers" who steal PII is to make fraudulent charges or assume identities. *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967 (7th Cir. 2016). Further, the information that was compromised places Plaintiffs at a significant risk of identity theft because it includes their SSNs. ¶¶ 129-30, 132-36. Indeed, an SSN "is about the worst kind of private data that one could lose, at least when it comes to creating a risk of identity theft." *In re Pawn Am. Consumer Data Breach Litig.*, 2022 WL 3159874, at *4 (D. Minn. Aug. 8, 2022).

While the five Plaintiffs at issue have not yet experienced identity theft, the Eleventh Circuit held that "actual identity theft is by no means required when there is a sufficient risk of identity theft." *Equifax*, 999 F.3d at 1262. Courts have found that "the allegations of identity theft by other plaintiffs whose personal information was stolen makes the threatened injury sufficiently imminent," such that plaintiffs who did not themselves allege actual misuse have "established injury-in-fact based on the non-speculative imminent threat of identity theft." *In re Marriott*, 440 F. Supp. 3d at 460. Unlike data breach cases where courts have found that plaintiffs lacked standing, the sheer fact that so many of the other Plaintiffs here already experienced fraud soon after the Data Breach despite taking care to protect their PII shows that the risk of identity theft faced by the remaining Plaintiffs is significant. *E.g.*, ¶¶ 16, 120, 149-151 (identity fraud and unauthorized charges), 167 (opening fraudulent accounts), 181 (identity theft), 194 (unauthorized charges). Thus "[t]his is not a case where Plaintiffs seek to manufacture standing by incurring costs in anticipation of non-imminent harm," *Galaria*, 663 F. App'x at 388 (citation omitted); instead, given the allegations of actual misuse, the mitigation costs borne by each of these five Plaintiffs are reasonable and satisfy the Article III injury requirement. *See In re Brinker Data Incident Litig.*, 2021 WL 1405508, at *5 (M.D. Fla. Apr. 14, 2021) ("Because Plaintiffs have shown evidence of some misuse, Plaintiffs' alleged actual injuries . . . are not manufactured."); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693 (7th Cir. 2015). In other words, because there is a "a substantial and imminent risk of future identity theft" as confirmed by the misuse of the stolen

data, "injuries related to the mitigation of those risks—including time spent reviewing their financial accounts—are sufficiently concrete to establish injury in fact." *Desue v. 20/20 Eye Care Network, Inc.*, 2022 WL 796367, at *6 (S.D. Fla. Mar. 15, 2022); *Equifax*, 999 F.3d at 1263; *Marriott*, 440 F. Supp. 3d at 478 ("The allegations about . . . identity theft by other plaintiffs whose personal information was stolen makes the threatened injury sufficiently imminent.").

Plaintiffs' intangible injuries also independently establish their standing. *See Mednax*, 2022 WL 1468057, at *8-9; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (holding that "intangible injuries can nevertheless be concrete."). The emotional distress allegations are not "threadbare" as Defendants assert because "if the plaintiff's knowledge of the substantial risk of identity theft causes him to presently experience emotional distress or spend money on mitigation measures like credit monitoring services, the plaintiff has alleged a concrete injury." *Clemens*, 2022 WL 4005322, at *6; *Bowen v. Paxton Media Grp., LLC*, 2022 WL 4110319, at *4 (W.D. Ky. Sept. 8, 2022) (similar); *see also Desue*, 2022 W 796367, at *5-6. Likewise, invasion of privacy is "a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340–41 (11th Cir. 2017), and the release of Plaintiffs' personal information via the Data Breach invaded their privacy. *See, e.g.*, *Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 34 (2d Cir. 2017). At a minimum, Plaintiffs may recover nominal damages for such harm. ¶¶ 596, 610, 623, 631, 639, 655, 666. *See Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 921 (S.D. Cal. 2020); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 164 (D. Md. 2022); *Farmer*, 582 F. Supp. 3d at 1188. Therefore, the loss of Plaintiffs' privacy that resulted from the Data Breach "constitutes an injury-in-fact" for standing purposes. *In re USAA Data Sec. Litig.*, 2022 WL 3348527, at *5 (S.D.N.Y. Aug. 12, 2022); *accord Wynne v. Audi of Am.*, 2022 WL 2916341, at *5 (N.D. Cal. July 25, 2022); *Bohnak v. Marsh & McLennan Cos., Inc.*, 580 F. Supp. 3d 21, 30 (S.D.N.Y. 2022).[3]

---

[3] Although they do not dispute that it constitutes a concrete injury, Defendants also argue that the increase in spam calls and messages that Plaintiffs Thomas, Myers, and Crenshaw experienced is not plausibly connected to the Data Breach. To the extent Defendants are raising a causation challenge to standing, that also fails. Given the close temporal proximity between the Data Breach and when Plaintiffs began experiencing an increase in spam calls and messages—and considering Plaintiffs' efforts to safeguard their

**B.      Plaintiffs' Negligence Claim Is Adequately Alleged.**

To state a claim for negligence, a plaintiff "must allege four elements: a duty, breach of that duty, causation, and damages." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012). The parties agree that Florida law applies to the negligence claim. Moreover, Defendants neither dispute that they owed Plaintiffs a duty to safeguard their PII nor that the elements of breach and causation are sufficiently alleged. Their only substantive challenge to the negligence count is that Plaintiffs "do not allege bodily injury or property damage" (Mot. at 5-6), but this argument demands too much and lacks merit under settled principles.

Contrary to Defendants' argument, courts applying Florida law have repeatedly upheld negligence claims in data breach cases. *See, e.g.*, *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1186 (M.D. Fla. 2022) (allegations of time spent "dealing with the consequences of" the data breach held sufficient to plead that Farmer incurred "some actual harm" as a result of the data breach); *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012); *Marriott*, 440 F. Supp. 3d at 478; *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359 (S.D. Fla. 2017); *see also In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 402-05 (E.D. Va. 2020). These authorities demonstrate that Plaintiffs' mitigation expenses, lost time dealing with the consequences of the Data Breach, and risk of fraud and identity theft are "cognizable injuries" that support a negligence claim in tort. *Farmer*, 582 F. Supp. 3d at 1186-87; *In re Brinker Data Incident Litig.*, 2020 WL 691848, at *8 (M.D. Fla. Jan. 27, 2020); *Mednax*, 2022 WL 1468057, at *26 ("[T]he Court finds that a reasonable jury could conclude that the injuries discussed in the standing context translate to actual harm in the negligence context"). By contrast, in the cases Defendants rely on, courts were not addressing a negligence claim but, rather, the question of standing and found that the increased risk of identity theft and mitigation expenses, if not the decreased value of PII, were sufficient to confer standing. *See 21st Century Oncology*, 380 F. Supp. 3d at 1257; *Provost v. Aptos, Inc.*, 2018 WL 1465766, at *4 (N.D. Ga. Mar. 12, 2018) (no

---

PII—"[i]t is certainly plausible for pleading purposes that their injuries are 'fairly traceable' to the data breach[.]" *Remijas*, 794 F.3d at 696 (citation omitted); *see In re Pawn Am.*, 2022 WL 3159874, at *5.

discussion of negligence). The other cited cases are factually inapposite. *See, e.g.*, *Perry v. Schumacher Grp. of La.*, 2014 WL 988751, at *4 (M.D. Fla. Mar. 13, 2014) (racial discrimination); *PFM Air, Inc. v. Dr. Ing. h.c. F. Porsche A.G.*, 2011 WL 13176223, at *5 (M.D. Fla. Aug. 2, 2011) (products liability suit involving aircraft engines).

Defendant further argues that Florida law does not recognize a negligence *per se* claim unless the underlying statute provides for a private right of action, and insist that Section 5 of the FTC Act does not confer such a private right of action. Mot. at 6. But under Florida law, a violation of a statute "which establishes a duty to take precautions to protect a particular class of persons," like the FTC Act, is negligence *per se*. *deJesus v. Seaboard Coast Line R. Co.*, 281 So. 2d 198, 201 (Fla. 1973). Defendants' argument is also out of step with recent data breach cases. *See, e.g.*, *In re Cap. One*, 488 F. Supp. 3d at 408 (holding that the plaintiffs plausibly alleged a claim for negligence *per se* premised on Section 5); *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360, 1374 (N.D. Ga. 2021);[4] *In re Equifax, Inc., Customer Data Security Breach Litig.*, 362 F. Supp. 3d 1295, 1327 (N.D. Ga. 2019). Courts also allow alternate theories of negligence to be pursued. *See, e.g.*, *Opris*, 2022 WL 1639417, at *10 (declining to dismiss negligence *per se* claim grounded in FTC Act violation). This Court should likewise find Plaintiffs' negligence *per se* claim not susceptible to resolution on the pleadings.[5]

Defendants' only other challenge to Plaintiffs' negligence claim is that it constitutes an improper "shotgun" pleading—but, tellingly, they do not contend that they lack adequate notice of the facts giving rise to liability. Moreover, "[t]he essence of a shotgun pleading is 'that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Millstein v. Holtz*, 2022 WL 4017172, at *7 (S.D. Fla. Sept. 2, 2022) (citation omitted). That Defendants have articulated defenses to the negligence claims demonstrates that Plaintiffs

---

[4] *See also In re The Home Depot Inc. Customer Data Sec. Litig.*, 2016 WL 2897520, at *4 (N.D. Ga. May 16, 2016); *In re Arby's Rest. Grp. Inc. Litig.*, 2018 WL 2128441 at *8-9 (N.D. Ga. Mar. 5, 2018); *In re Marriott*, 440 F. Supp. 3d at 479; *First Choice Fed. Credit Union v. Wendy's Co.*, 2017 WL 9487086, at *4 (W.D. Pa. Feb. 13, 2017), *report & recommendation adopted*, 2017 WL 1190500 (W.D. Pa. Mar. 31, 2017).

[5] Even if a separate negligence *per se* claim is not viable, a violation of the standards of care under the FTC Act tends to support the plausibility of allegations of negligence.

cannot be accused of shotgun pleading. *See Wellnext LLC v. OVM LLC*, 2018 WL 7048129, at \*8 (S.D. Fla. Feb. 16, 2018) ("Defendants should be able to understand the allegations of the Complaint—as is evidenced by Defendants' substantive engagement with the Complaint in its Motion—and Defendants have been adequately put on notice of Plaintiffs' claims.").

### C.     Plaintiffs State a Claim for Breach of Implied Contract.

Plaintiffs allege that Lakeview and Pingora breached their obligations under implied contracts to reasonably safeguard Plaintiffs' PII.[6] ¶¶ 597-623. A contract requires "offer, acceptance, consideration, and specificity in terms of the contract" and an implied contract may be inferred, at least in part, from the parties' conduct. *Humana*, 582 F. Supp. 3d at 1187 (citation omitted). Defendants claim that there was no consideration, an agreement on the essential terms, or a meeting of the minds (Mot. at 6-8), but these arguments fail on the pleadings.

Defendants first argue that there was no valid contract because Plaintiffs did not directly provide consideration. But Plaintiffs furnished their PII in exchange for mortgage services (¶¶ 102-03, 123) and "[c]onsideration need not pass directly to the promisor, but may move to either the promisor or a third person." *LSQ Funding Grp., L.C. v. EDS Field Servs.*, 879 F. Supp. 2d 1320, 1329 (M.D. Fla. 2012). Thus, Lakeview and Pingora received this consideration for their promise to take reasonable steps to safeguard the PII.

Defendants further disclaim an enforceable contract because Lakeview and Pingora only agreed to provide loan servicing and not "some undefined level of data security," but the relevant privacy policy represented that Plaintiffs' information *would* be reasonably safeguarded. ¶¶ 8-9. Lakeview assured customers about the steps it takes to "protect your personal information from unauthorized access and use" (¶ 107), a statement that is an "indication of [its] intent to enter into

---

[6] Defendants' contention that Florida and Colorado law apply to the implied contract claims against Lakeview and Pingora, respectively, is belied by the case they cite. In *Mednax*, the court concluded that at least for some states, the governing law for contract claims was the plaintiffs' home states where they entered into the agreements. 2022 WL 1468057, at \*4. In any event, Defendants have not suggested that Florida or Colorado law conflict with the other Plaintiff states in regard to the standards applicable to a claim of breach of implied contract. *Cf. Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 n.8 (1995) ("[C]ontract law is not at its core diverse, nonuniform, and confusing") (internal quotation marks and citation omitted); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004) ("A breach is a breach is a breach"), *abrogated in part on other grounds, Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

an implied contract that included a promise to 'reasonably protect' Plaintiffs' private information." *Purvis*, 563 F. Supp. 3d at 1381; *see also Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017) (finding that a privacy policy "supports a finding of an implicit promise").[7]

Lakeview attempts to escape liability by arguing that it "does not *guarantee* the security of Plaintiffs' PII, and Plaintiffs accepted the risk." Mot. at 7-8 (emphasis added). But Plaintiffs are not claiming that Lakeview (or Pingora) was categorically required to prevent all data breaches. The point is that Defendants failed to implement and maintain reasonable measures that were "necessary to effectuate the contract." *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 159 (1st Cir. 2011). In addition, "[w]hen a person hands over sensitive information, in addition to receiving a job, good, or service, they presumably expect to receive an implicit assurance that the information will be protected." *Castillo*, 2016 WL 9280242, at *9; *see Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1247 (D. Colo. 2018) (rejecting argument, similar to Defendants' here, that agreement was for purchase of food rather than for data security).

Courts have therefore held that when plaintiffs "are required to provide a variety of PII" to obtain a service, it is reasonably likely that the defendant agreed to safeguard their PII. *Humana*, 582 F. Supp. 3d at 1187 (citation omitted); *see also Torres v. Wendy's Int'l, LLC*, 2017 WL 8780453, at *3 (M.D. Fla. 2017). As in those cases, Plaintiffs were required to provide their SSNs and other personal information as a condition of receiving Lakeview's and Pingora's services. ¶¶ 102, 599, 613. They did so reasonably expecting that industry-standard precautions would be applied to protect, maintain and safeguard that information, such as by encrypting the PII and deleting unnecessary data. ¶¶ 7, 14, 20, 21, 105, 109, 126. Defendants failed to do so.

### D.    Lakeview and Pingora Plausibly Breached Fiduciary Duties to Plaintiffs.

Plaintiffs allege that Lakeview and Pingora breached their fiduciary duties in failing to

---

[7] *See also, e.g.*, *McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264, 282 (S.D.N.Y. 2021); *Solara*, 2020 WL 2214152, at *5; *Brinker*, 2020 WL 691848, at *4; *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1176 (D. Minn. 2014); *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 531 (N.D. Ill. 2011); *Irwin v. RBS Worldpay, Inc.*, 2010 WL 11570892, at *6 (N.D. Ga. Feb. 5, 2010); *Rudolph v. Hudson's Bay Co.*, 2019 WL 2023713, at *11 (S.D.N.Y. May 7, 2019); *Marriott*, 440 F. Supp. 3d at 486; *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1070 (C.D. Ill. 2016).

safeguard Plaintiffs' PII. ¶¶ 624-39. Florida law governs these claims[8] and courts applying Florida law have upheld fiduciary duty claims in data breach and other cases in which a defendant was entrusted with private information. *See, e.g.*, *Resnick*, 693 F.3d at 1328; *Gomez v. Wells Fargo Bank*, 2014 WL 11878882, at *9 (S.D. Fla. Jan. 7, 2014) (refusing to dismiss claim for breach of fiduciary duty where bank "allowed . . . others to misuse [plaintiff's] private and confidential information").

Under Florida law, a claim for breach of fiduciary duty requires a duty, its breach, and resulting damage. *Crusselle v. Mong*, 59 So. 3d 1178, 1181 (Fla. 5th DCA 2011). "Whether a fiduciary duty exists is an issue of fact." *Doherty v. Allianz Life Ins. Co. of N. Am.*, 2019 WL 3934100, at *6 (M.D. Fla. Aug. 20, 2019). Fiduciary duties "may be implied in law on the specific factual situation surrounding the transaction and the relationship of the parties." *Crusselle*, 59 So. 3d at 1181. In this case, Plaintiffs placed their trust in Lakeview and Pingora to protect their highly sensitive PII—a duty Defendants expressly assumed as part of their provision of mortgage-related services—and Plaintiffs reasonably expected that the entities entrusted with their PII would adequately protect it from cybercriminals. ¶¶ 626, 634-35. Plaintiffs have thus pleaded a fiduciary duty that was breached. *See Resnick*, 693 F.3d at 1328.

### E.   The California Plaintiffs Sufficiently Allege Claims Under State Law.

#### (i)   The Customer Records Act Claim Should Be Upheld.

The California Customer Records Act ("CCRA") requires a business that "owns, licenses, or maintains personal information about a California resident" to "implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access" and to disclose unauthorized disclosures of personal information "in the most expedient time possible and without unreasonable delay[.]" Cal.

---

[8] Defendants' cases applying Delaware law are readily distinguishable as they concern duties of *officers* to their respective corporations and LLCs. *See Aquent LLC v. Stapleton*, 65 F. Supp. 3d 1339, 1342, 1347 (M.D. Fla. 2014) (alleging trade theft of former vice president of LLC); *Mukamal v. Bakes*, 378 F. App'x 890, 896–97 (11th Cir. 2010) (involving claims against officers and directors of corporation). Here, the fiduciary duties arose because Plaintiffs entrusted their highly sensitive data to Defendants—an act that has nothing to do with Defendants' legal structure or their officers' duties to the corporation. Thus, Florida law applies. *See Mednax*, 2022 WL 1468057, at *4.

Civ. Code §§ 1798.81.5(b), 1798.82(a). As discussed above, although Defendants learned of the Data Breach in early December 2021, they did not inform Plaintiffs of the breach until the middle of March 2022 at the earliest. ¶¶ 4-6. Nowhere in Defendants' challenge to the CCRA claim do they contend that this delay was reasonable. Mot. at 9-10.

Defendants begin by insisting that Plaintiffs were not their "customers" because they did not provide their PII to Bayview and Plaintiff Keach did not provide his PII to a Defendant. Nonetheless, courts have held that plaintiffs do not have to provide their PII *directly* to a business to be "customers" under the CCRA. *See In re Experian Data Breach Litig.*, 2016 WL 7973595, at *9 (C.D. Cal. Dec. 29, 2016) (rejecting "narrow interpretation" of the definition of "customer"). While acknowledging that Plaintiffs Saporta and Crenshaw allege that they did provide their PII to Pingora and Lakeview, Defendants raise a factual dispute that is inappropriate for a motion to dismiss by arguing that the allegations are implausible because "[m]ortgagers do not shop around for loan servicers." Mot. at 10. Moreover, even if Plaintiffs were not Defendants' customers, they still may bring a claim under section 1798.82 of the Act because "the plain language of the CRA supports Plaintiffs' argument that the notice requirement in Section 1798.82(a) is not limited to Defendants' customers." *Patton v. Experian Data Corp.*, 2018 WL 6190349, at *6 (C.D. Cal. Jan. 23, 2018); *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *7 (N.D. Cal. Sept. 14, 2016); *Portier v. NEO Tech. Sols.*, 2019 WL 7946103, at *23 (D. Mass. Dec. 31, 2019).

Next, Defendants claim that Plaintiffs' allegations regarding Defendants' failure to adopt "reasonable security procedures and practices" are conclusory. Not so. Plaintiffs allege that Defendants failed to encrypt Plaintiffs' PII in violation of industry standards and neglected to delete information that Defendants no longer had reason to maintain. ¶¶ 14, 21, 126, 142, 573-74, 601. *See Mednax*, 2022 WL 1468057, at *21 ("The Court disagrees. Plaintiffs allege that their PHI and PII were maintained and/or exchanged in unencrypted email accounts, in violation of industry best practice."); *Humana*, 582 F. Supp. 3d at 1186; *cf. Resnick*, 693 F.3d at 1328 (allegation that defendant "failed to implement the data management and security measures that are mandated by industry standards" stated claim for unjust enrichment); *see also In re Sony Gaming Networks &*

*Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 966 (S.D. Cal. 2014); *Arby's*, 2018 WL 2128441, at *10. Defendants' own cases recognize that allegations of data security inadequacies require no more detail than the detail Plaintiffs provide. *See, e.g.*, *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 580 (S.D.N.Y. 2022).[9]

Likewise, as the cases cited by Defendants hold, a delay of five months gives rise to cognizable harm under the CCRA. *See In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 2020 WL 2214152, at *8 (S.D. Cal. May 7, 2020). Without claiming their delay in notifying Plaintiffs was reasonable, Defendants assert that Plaintiffs do not explain how they were injured by the delay. Yet "courts applying the CCRA have inferred from plaintiffs' post-disclosure remedial actions—coupled with allegations of harm by the data breach—that timely disclosure would have prompted a swifter response and that the delay caused the type of cognizable injury— *i.e.*, ongoing compromise of unprotected data—required by the statute." *Mednax*, 2022 WL 1468057, at *21; *see also Stasi*, 501 F. Supp. 3d at 925. Here, too, Defendants' delayed disclosure of the breach deprived Plaintiffs of the ability to take timely self-protection measures. *E.g.*, ¶¶ 192, 194, 200-01.

Defendants' last CCRA challenge again raises a fact dispute that cannot be resolved on the pleadings. Mot. at 11. Although Defendants acknowledge the allegation that they "maintain" PII, they contend they in fact only "license" PII and therefore are not required to "immediately" notify consumers of the breach under section 1798.82(b). But section 1798.82(a) expressly requires a business that "licenses" PII to disclose a security breach "in the most expedient time possible and without unreasonable delay." Defendants cannot excuse their delay as reasonable.

### (ii)     Plaintiffs State a Claim Under the CCPA.

Defendants also challenge Plaintiffs' claim under California's Consumer Privacy Act ("CCPA"), which "provides that any consumer whose personal information is subject to

---

[9] Defendants make similar arguments for dismissing Plaintiffs' claims under the consumer protection laws of Illinois (Mot. at 15), Florida (Mot. at 16), Maryland (Mot. at 17), Missouri (Mot. at 18), Indiana (Mot. at 19), Texas (Mot. at 20), Ohio (Mot. at 21), and Tennessee (Mot. at 24). These arguments should be rejected for the same reason stated in the main text above.

exfiltration 'as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action.'" *Karter v. Epiq Sys., Inc.*, 2021 WL 4353274, at *2 (C.D. Cal. July 16, 2021) (quoting Cal. Civ. Code § 1798.150(a)(1)).

Defendants argue they are not subject to the CCPA because Plaintiffs do not allege that they satisfy the definition of a "business" outlined in section 1798.140(c)(1)(A)–(C). "The CCPA defines 'business' as an entity including a for-profit corporation 'that collects consumers' personal information or on the behalf of which that information is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information.'" *Karter*, 2021 WL 4353274, at *2. Plaintiffs allege that Defendants are businesses under the CCPA given the number of affected individuals (approximately 4 million) and the fact that Lakeview is the fourth-largest mortgage loan servicer in the country. ¶¶ 100, 121. Defendants do not (and cannot in good faith) deny that they meet the definitional requirement for a "business."

Defendants also make the technical argument that Plaintiffs did not give the requisite notice under the CCPA. As reflected in their notice letters [D.E. 47-6 & 47-7], these Plaintiffs identified the relevant sections Defendants violated: Civil Code sections 1798.81.5 and 1798.150. Contrary to what Defendants argue, section 1798.81.5 does more than set out the legislative intent; it also directs businesses to "implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." In making a violation of the duty to implement "reasonable security procedures and practices" actionable, section 1798.150(a) expressly references section 1798.81.5. Thus, Plaintiffs identified the basis for Defendants' violation—their failure to adopt adequate data security measures. *See Mehta v. Robinhood Fin. LLC*, 2021 WL 6882377, at *8 (N.D. Cal. May 6, 2021) (plaintiffs stated CCPA claim based on defendants' alleged failure to implement reasonable security); *Stasi*, 501 F. Supp. 3d at 924.

Plaintiffs Keach and Saporta also complied with the CCPA's notice requirement. While Defendants do not cite relevant authority on this issue, courts interpreting other California statues

- 15 -

with similar notice provisions have permitted fellow named plaintiffs to provide notice. *See, e.g.*, *McLellan v. Fitbit, Inc.*, 2018 WL 2688781, at *3 (N.D. Cal. June 5, 2018); *Sanchez v. Wal-Mart Stores, Inc.*, 2007 WL 1345706, at *3 (E.D. Cal. May 8, 2007). Defendants do not dispute that Plaintiff Crenshaw satisfied the 30 days' notice requirement and therefore the remedial purpose of the CCPA's notice requirement has been met. *Cf. In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1175 (C.D. Cal. 2010). In addition, while the notice letters of Plaintiffs Keach and Saporta were sent on April 14, 2022—the same day that the amended complaint adding them as Plaintiffs was filed—the operative Consolidated Class Action Complaint was filed on August 1; hence, any deficiency was cured. *Cf. Seifi v. Mercedes-Benz USA, LLC*, 2013 WL 5568449, at *6 (N.D. Cal. Oct. 9, 2013).

Once again raising fact issues, Defendants argue that (1) the CCPA claim fails because they cured any violations by implementing enhanced security measures, foreclosing injunctive relief, and (2) Plaintiff Saporta could not have paid for fraud alerts because they are free. The CCPA expressly contemplates that it may not be possible to cure a violation of the statute, stating "[i]n the event a cure is possible . . . ." Cal. Civ. Code § 1798.150(b). To the extent Defendants' violations can be cured, the sufficiency of "enhanced security measures" they claim to have implemented is plainly a question of fact. *See Karter*, 2021 WL 4353274, at *2 (declining to dismiss CCPA claim "when the bases for dismissal upon which Defendants rely do not appear in the complaint"). And despite Defendants' factual critique, Plaintiff Saporta's payment of $15 per month for relevant services constitutes actual damages recoverable under the CCPA. ¶ 520.

Plaintiffs may pursue injunctive relief under the CCPA, moreover, because they have adequately alleged a future threat of harm. *See In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1141 (C.D. Cal. 2021); *cf. Hameed-Bolden*, 2018 WL 6802818 at *9. Plaintiffs do not rely upon hypothetical claims of future identity theft—identity theft has already befallen many Plaintiffs and the actual access to and misuse of Plaintiffs' PII establishes a "substantial risk" of such future harm. *Mednax*, 2022 WL 1468057, at *7. Plaintiffs' PII also "remains in the hands of Defendants" such that Plaintiffs "face a 'real and immediate threat' of further disclosure of their

PII" given the systems inadequacies that the hack exploited. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *31 (N.D. Cal. Aug. 30, 2017). Finally, Plaintiffs allege that Defendants failed to encrypt their PII, and section 1798.150 makes the unauthorized disclosure of "nonencrypted" PII actionable. Defendants' response letter erroneously disputes that a failure to encrypt may be actionable under the CCPA. *See In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1161 (D. Minn. 2014) (plaintiffs could pursue injunctive relief including ordering defendant to "encrypt all customer data"); *Chipotle*, 344 F. Supp. 3d at 1252 (plaintiffs could pursue injunctive relief "because their PII remains on Defendant's insufficiently secured computer systems") (internal quotations and brackets omitted).[10]

### (iii)    The UCL Claim Is Adequately Alleged.

Defendants next move to dismiss Plaintiffs' claims under California's Unfair Competition Law ("UCL"). Mot. at 13. To start with, as California residents, Plaintiffs may bring claims against Defendants because "a UCL claim may be brought by a plaintiff who is a resident of California, regardless of where the alleged misconduct occurred." *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 972 (N.D. Cal. 2015) (citing *Norwest Mortgage, Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 222 (1999).[11] Further, in challenging the UCL claim, Defendants repeatedly misstate the applicable legal standard. They argue that the UCL claim is not pleaded with particularity, but the UCL claim is brought under the law's unlawful and unfair prongs—not the fraud prong—and allegations of unfair conduct are *not* subject to the heightened pleading requirements of Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Downey Surgical Clinic, Inc. v. Ingenix, Inc.*, 2014 WL 12558848, at *11 (C.D. Cal. May 30, 2014).

Moreover, as discussed above, Plaintiffs' allegations of Defendants' inadequate security and unreasonable failure to safeguard Plaintiffs' PII are both detailed and plausible. *See Hameed-Bolden v. Forever 21 Retail, Inc.*, 2018 WL 6802818, at *1 (C.D. Cal. Oct. 1, 2018) (upholding

---

[10] Defendants also make the same arguments for why Plaintiffs purportedly cannot seek injunctive relief under Illinois law (Mot. at 15), and those arguments should be rejected for the same reason.

[11] *See also Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, 2017 WL 1436044, at *6 (N.D. Cal. Apr. 24, 2017); *Nypl v. JPMorgan Chase & Co.*, 2017 WL 3309759, at *7 (S.D.N.Y. Aug. 3, 2017); *Iskander v. Laugh Factory, Inc.*, 2020 WL 2114939, at *10 (C.D. Cal. Mar. 17, 2020).

UCL claim in data breach case). Defendants are similarly wrong in claiming that Plaintiffs must show that members of the public are likely to be deceived as that only applies to a claim under the fraud prong. *See Solara*, 2020 WL 2214152, at *9; *Brinker*, 2020 WL 691848, at *19. In any event, Plaintiffs have alleged specific factual representations, including that Defendants treat data security as important, and related material omissions that were likely to deceive reasonable consumers into believing their PII would be secured. *See Marriott*, 440 F. Supp. 3d at 489-90.

Defendants' challenges to Plaintiffs' requests for relief under the UCL are not persuasive. First, "California law permits indirect purchasers to seek restitution under the UCL so long as the purchasers can plausibly trace property from their hands to the hands of the defendant." *Snow v. Align Tech., Inc.*, 2022 WL 1396223, at *1 (N.D. Cal. May 4, 2022). Second, Plaintiffs plausibly allege that their personal information is still at risk and a data breach is sufficiently likely to recur such that they may pursue injunctive relief because Defendants continue to refuse to employ industry standard data security protocols. ¶¶ 841-82. Third, Defendants mischaracterize the claim by arguing they did not acquire Plaintiffs' "lost confidentiality" for purposes of making restitution. That framing is twisted: Plaintiffs properly seek restitution of money Defendants acquired as a result of their unfair business practices. ¶ 672. As such, the UCL claim should be upheld.[12]

### F.  Plaintiff Berg States a Claim Under the Illinois Consumer Fraud Act.

Plaintiff Berg's allegations that Defendants failed to maintain adequate data security, disclose the inadequacies, and promptly respond to the breach (¶ 677) satisfy the pleading requirements under the Illinois Consumer Fraud Act ("ICFA"). *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (discussing elements of ICFA claim). Contrary to Defendant's contention, Illinois courts "have held that similar complaints alleging fraud and deceptive practices in federal court should be judged under Rule 8(a) and not the particularity requirement for fraud under Rule 9(b)." *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 769 (C.D.

---

[12] In addition, while the UCL does not itself provide for attorneys' fees, "a prevailing plaintiff may seek attorney fees as a private attorney general under Code of Civil Procedure section 1021.5." *Zambrano v. CarMax Auto Superstores, LLC*, 2014 WL 6751065, at *10 (S.D. Cal. Dec. 1, 2014) (citation omitted); *see Cones v. Parexel Int'l Corp.*, 2017 WL 2908789, at *2 (S.D. Cal. July 7, 2017) ("To recover attorney's fees under § 1021.5, a plaintiff need not even include a prayer in any pleadings.").

Ill. 2020). Further, as discussed at page 13 above, Plaintiffs' allegations regarding the aspects of Defendants' inadequate data security are not conclusory.

Plaintiffs allege that Defendants failed to disclose the inadequacy of their data security or their unwillingness or inability to secure sensitive PII. ¶ 677. "[A]n omission or concealment of material fact in the conduct of trade can constitute a violation of the Illinois CFA." *Perdue*, 455 F. Supp. 3d at 770–71. In *Perdue*, the court upheld an ICFA claim because "Defendant's failure to disclose that its system for payment cards was not reasonably secure is a material omission, and if Plaintiffs had known that information, they would not have made the purchases." *Id*. at 771. Berg's allegations are similar and adequately support a claim under the ICFA. *Id.*; *see also Haymer v. Countrywide Bank, FSB*, 2011 WL 2790172, at *4 (N.D. Ill. July 15, 2011).

Defendants incorrectly argue Berg is not a "consumer" because she didn't "purchase" loan services. Yet they overlook that "there is nothing in the [ICFA] that suggests that it applies only to direct 'consumers' (and hence, to purchasers)." *Wiegel v. Stork Craft Mfg., Inc*., 780 F. Supp. 2d 691, 693 (N.D. Ill. 2011) (citation omitted). Where, as here, a party alleges "some nexus between the complained-of conduct and consumer protection concerns"—which Plaintiff Berg has done by alleging that all customers must furnish their PII to Defendants and that her PII was compromised (¶¶ 102, 114, 117, 123)—the ICFA claim may proceed. *Brody v. Finch Univ. of Health Scis./The Chicago Med. Sch*., 298 Ill. App. 3d 146, 160 (1998).

As for causation, Berg need not "allege that he or she actually saw a communication or advertisement and was deceived by Defendant's statements"; rather, as stated above, acts or omissions are actionable under the ICFA "if they are intended to induce the plaintiff's reliance" *Perdue*, 455 F. Supp. 3d at 770–71 (citations omitted); *see Chipotle*, 344 F. Supp. 3d at 1250-51 (rejecting objection that Plaintiff did not allege she saw a specific statement); *Blankenship v. Pushpin Holdings, LLC*, 2015 WL 5895416, at *8 (N.D. Ill. Oct. 6, 2015). Defendants never informed Berg of their inadequate security systems. ¶ 679. Additionally, "[i]ntent to deceive is not a required element of a claim under [ICFA], which provides redress not only for deceptive business practices, but also for business practices that, while not deceptive, are unfair." *Wigod*, 673 F.3d at

- 19 -

574-75; *see also Capiccioni v. Brennan Naperville, Inc.*, 339 Ill. App. 3d 927, 933 (2003) ("A defendant need not have intended to deceive the plaintiff[.]").

Berg suffered "actual damages" under the ICFA. Defendants not only downplay that Berg paid $57 toward an unauthorized charge of $3,500, they also omit that credit reporting agencies informed her that her credit score would significantly decrease unless she made a partial payment. ¶ 246. The time she spent dealing with fraudulent activity also constitutes actual damage. *See Perdue*, 455 F. Supp. 3d at 761; *see also Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 829 (7th Cir. 2018) (discussing value of lost time spent in response to data breach).

### G.     The Florida Deceptive and Unfair Trade Practices Act Claim Should Proceed.

Plaintiffs Wojciechowski, Scott, and Franke's Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim is likewise adequately pleaded. ¶¶ 686-707. As an initial matter, Defendants do not challenge whether Plaintiffs may pursue injunctive relief under the FDUTPA, but instead repeat that the claim is conclusory and Plaintiffs have not suffered "actual damages." ¶ 702. But Plaintiffs identify the allegedly unfair, unconscionable, and unlawful acts and practices (¶ 697)—namely, Defendants' failure to implement reasonable data security practices and concealment of material facts regarding the inadequacy of their data security. In the *Capital One* case, breach victims similarly alleged that the defendants concealed material facts "that they did not reasonably or adequately secure the Florida Plaintiffs' PII," which was sufficient to plausibly show that consumers were likely to be deceived. 488 F. Supp. 3d at 423-24.

Plaintiffs also allege cognizable damages under the FDUPTA. While Defendants argue there is no indication the value of "Defendants' mortgage servicing was diminished" (Mot. at 16), among other forms of harm, Plaintiffs were damaged because they did not receive the benefit of the bargain—they overpaid for mortgage services that were supposed to be accompanied by reasonable data security (¶ 543). *See Capital One*, 488 F. Supp. 3d at 424 (loss of the benefit of their bargain sufficient to support FDUTPA claim); *Griffey v. Magellan Health Inc*., 2022 WL 1811165, at *8 (D. Ariz. June 2, 2022) (overpayment for products and services may constitute actual damages under the FDUTPA and "it is reasonable to infer that [plaintiff] alleges that he

overpaid for health services that Magellan in some way administers because Magellan's data security was inadequate").

### H.      Plaintiff McMahon States a Maryland Consumer Protection Act Claim.

Bayview's and Lakeview's conduct also constitutes unfair or deceptive practices under the Maryland Consumer Protection Act ("MCPA"), which prohibits the "[f]ailure to state a material fact if the failure deceives or tends to deceive." Md. Code Ann., Com. Law § 13-301(3); *see also Willis v. Bank of Am. Corp.*, 2014 WL 3829520, at *22 (D. Md. Aug. 1, 2014) (quoting *Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 535 (D. Md. 2011)). The MCPA further prohibits the "knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same." Md. Code Ann., Com. Law § 13-301(9). "[A] consumer relies on a material omission under the [MCPA] where it is substantially likely that the consumer would not have made the choice in question had the commercial entity disclosed the omitted information." *Willis*, 2014 WL 3829520, at *22 (citation omitted).

Defendants argue that a single incident cannot constitute an unfair or deceptive practice but the "practice" at issue here is not the Data Breach—it is Defendants' continued failure to take the necessary steps to protect sensitive PII, and their concealment of this material information. ¶ 712. *See Marriott*, 440 F. Supp. 3d at 489 (finding that "Plaintiffs have sufficiently alleged a violation of the Maryland CPA" based on similar allegations and noting that Rule 9(b) is relaxed for claims of omission); *see also In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 96, 153 (D. Md. 2021) (plaintiffs sufficiently alleged MCPA claim "by alleging that they gave their personal information to Marriott and [with] their allegations that Marriott knew or should have known that the personal information was not secure.").

Plaintiff McMahon suffered an identifiable loss under the MCPA because his SSN was compromised and ended up on a dark-web site; he spent time mitigating the harm; his PII lost value; and he overpaid for services that he expected would be accompanied by adequate protection of his PII (¶¶ 483-85, 538-46). *See Marriott*, 440 F. Supp. 3d at 494-95 (plaintiff adequately alleged damages under the MCPA and other consumer statutes).

## I.     The Missouri Merchandising Practices Act Claim Is Sufficiently Pleaded.

Plaintiff Blando states a claim under the Missouri Merchandising Practices Act ("MMPA"). ¶¶ 716-27. "To plead a violation of the MMPA, the plaintiff must plead that he or she (1) purchased merchandise (which includes services) from the defendant, (2) for personal, family, or household purposes, and (3) suffered an ascertainable loss of money or property, (4) as a result of an act declared unlawful by section 407.020." *Cupit v. Dry Basement, Inc.*, 592 S.W.3d 417, 423 (Mo. Ct. App. 2020) (citing *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 311 (Mo. App. E.D. 2016)). The statute defines "merchandise" as "any objects, wares, goods, commodities, intangibles, real estate, or *services*." Mo. Rev. Stat § 407.010(4) (emphasis added). Plaintiff Blando used Defendants' services in refinancing a home mortgage. ¶ 316.

Stressing that the unlawful act must occur in relation to the sale or purchase of "merchandise," Defendants argue that Blando did not purchase loan servicing and suffered no damages. But, under the MMPA, a "plaintiff's loss should be a result of the defendant's unlawful practice"; the MMPA does not require that a *purchase* be induced by the "unlawful practice." *K.A. by & through B.W. v. Children's Mercy Hosp.*, 2019 WL 13207485, at *3 (W.D. Mo. May 17, 2019) (alleging unfair and deceptive practices, including "failing to implement security measures to protect personal health information," sufficiently pleaded that plaintiff's loss was the result). Moreover, "'[p]urchase' with regard to merchandise, is defined in Webster's . . . as meaning 'to obtain by paying money or its equivalent.'" *Jackson v. Charlie's Chevrolet, Inc.*, 664 S.W.2d 675, 677 (Mo. Ct. App. 1984). Plaintiff Blando's PII was tendered to Defendants in exchange for their home mortgage refinancing services, which qualify as "merchandise" under the MMPA's definition. Thus, even under their own logic, Defendants' unlawful acts occurred in relation to a purchase of merchandise and Plaintiff Blando suffered cognizable harm because his PII was compromised and he was forced to mitigate the harm. *See Perdue*, 455 F. Supp. 3d at 770 (finding "purchase of merchandise" requirement met where plaintiff purchased gas at pumps "affected by the data breach" and suggesting that time spent driving to bank and disputing charges constituted ascertainable loss of money under the MMPA); *Chipotle*, 344 F. Supp. 3d at 1255.

**J.      The Indiana Deceptive Consumer Sales Act Claim Should Be Upheld.**

Plaintiff Farley states a claim for violation of the Indiana Deceptive Consumer Sales Act ("IDCSA"). ¶¶ 728-39. As an initial matter, notice is only required for a consumer damaged by an "uncured deceptive act," and the "intent to mislead" is the *mens rea* that distinguishes an uncured deceptive act from an incurable deceptive act. *See* Ind. Code §§ 24-5-0.5 -2(7), (8). An "incurable deceptive act" under the IDCSA is an "act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead." Ind. Code § 24-5-0.5 -2(8). As this claim involves an incurable deceptive act, it does not depend on providing Defendants notice and an opportunity to cure.

Despite knowing that their electronic systems and data security practices were inadequate to safeguard Plaintiff Farley's PII, Lakeview and Bayview did nothing to warn her about the deficient practices, but instead affirmatively promised reasonable security in a deliberate effort to mislead her and other customers into using the services. ¶¶ 731-36. This is sufficient under the IDCSA. *See Bray v. Gamestop Corp.*, 2018 WL 11226516, at *6 (D. Del. Mar. 16, 2018) (allegations that defendant misled consumers "that it would adequately protect customer information and failed to inform customers that it did not maintain adequate data protection systems" sufficient). Lakeview's Privacy Policy also "can fairly be understood as an affirmative representation that [it] would adequately protect customers' personal information," and intent to mislead may be reasonably inferred from a promise that the defendant "protect[s] your personal information from unauthorized access and use, [and] use[s] security measures that comply with federal law" while failing to take basic steps to safeguard the PII. *Id.*

**K.      Plaintiffs State a Texas Deceptive Trade Practices Claim.**

Plaintiffs Stone, Gonzales, and Meyers seek to recover from Lakeview and Bayview under the Texas Deceptive Trade Practices Act ("TDTPA"). To state a TDTPA claim, a plaintiff must allege that "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing § 17.50(a)(1)). Defendants are wrong that Plaintiffs are not "consumers" under the TDTPA. To qualify as a

consumer, "a person must have sought or acquired goods or services by purchase or lease," and "the goods and services purchased or leased must form the basis of the complaint." Tex. Bus. & Com. Code § 17.45(4); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981). Plaintiffs here sought and acquired Defendants' loan servicing services in exchange for their PII, and the deceptive mismanagement of Plaintiffs' PII is the basis of their claim. ¶¶ 740-56. Plaintiffs therefore may maintain a TDTPA claim. *See Capital One*, 488 F. Supp. 3d at 427.

### L.      The Challenge to the Ohio Residential Mortgage Loan Act Claim Fails.

Plaintiff Thomas alleges that Lakeview and Bayview violated the Ohio Residential Mortgage Loan Act ("RMLA"), which provides that an entity covered by the act "cannot make false or misleading statements of material facts or false promises regarding a material fact." *Mulkey v. RoundPoint Mortg. Serv. Corp.*, 2021 WL 5804575, at *4 (N.D. Ohio Dec. 7, 2021). Defendants recycle the same arguments addressed above regarding Plaintiffs' standing and the specificity of their allegations. Defendants' only unique argument is that Plaintiff Thomas does not describe how they violated the RMLA—but this ignores the allegations that Defendants failed to adequately protect the PII and made misleading claims regarding their data security practices and protocols. Nothing more is required. *See id.* ("Plaintiffs state Defendant failed to take reasonable care in protecting Plaintiffs' PII, delayed the notification of unauthorized PII disclosure, and did not disclose to Plaintiffs the full range of information compromised.").

### M.      The Pennsylvania Unfair Trade Practices Claim Is Well Pled.

Defendants' challenge to Plaintiff Kraus's claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL") (¶¶ 765-80) is meritless. Defendants begin by wrongly suggesting that Plaintiff Kraus "did not purchase or lease loan servicing" for purposes of PUTPCPL liability. Mot. at 21. Yet, unlike in the cases Defendants cite, Kraus alleges that he "purchased goods and services" and used Defendants' "services when he took out a mortgage[.]" ¶¶ 102, 467, 769; *see DiTeodoro v. J.G. Durand Int'l*, 566 F. Supp. 273, 275 (E.D. Pa. 1983).

Moreover, Kraus suffered an ascertainable loss based on the diminution in value of his personal data. ¶ 170. *See Solara*, 2020 WL 2214152, at *15 (finding that plaintiffs "each allege an

ascertainable loss in the diminution in value of their personal information and the loss of the benefit of their bargain."); *Opris*, 2022 WL 1639417, at *8 ("Discovery in this case will reveal . . . whether Plaintiffs' PII . . . lost value because of the alleged data breach."). Defendants' reliance on *In re Rutter's Inc. Data Security Breach Litigation* is self-defeating. 511 F. Supp. 3d 514 (M.D. Pa. 2021). The *Rutter's* court found that the plaintiffs' time spent remediating a data breach was insufficient to allege an ascertainable loss *where they expended no money and lost no property*. *Id.* at 541. But the court also recognized that a plaintiff who alleged overdraft fees and lost wages satisfied this element of the claim. *Id.* As a result of the Data Breach, Kraus suffered "identify fraud in the form of unauthorized charges to his credit card" totaling $2,813, and hacking that rendered his computer inoperable. ¶¶ 471-72. *Rutter's* thus demonstrates his claim should proceed.

Kraus also sufficiently pleads justifiable reliance by alleging that he "relied on Defendants to keep [his] PII confidential and securely maintained" and would not have handed over his PII had Defendants disclosed that their data security systems were vulnerable to attack. ¶¶ 105, 123, 477, 774-78; *see Slemmer v. McGlaughlin Spray Foam Insulation, Inc*., 955 F. Supp. 2d 452, 461 (E.D. Pa. 2013) (plaintiffs sufficiently alleged justifiable reliance where they "would not have purchased [the goods] had the damaging side effects been disclosed"); *see also Toy v. Metro. Life Ins. Co*., 593 Pa. 20, 55 (2007) (reliance is a question of fact).

### N.     Plaintiff Burnett May Maintain a Tennessee Consumer Protection Act Claim.

Defendants' challenges to Plaintiff Burnett's claim under the Tennessee Consumer Protection Act ("TCPA")—which should be "liberally construe[d]" to effectuate its remedial purpose—likewise lack merit. *Roopchan v. ADT Sec. Sys.*, 781 F. Supp. 2d 636, 657 (E.D. Tenn. 2011). Defendants' first argument, that TCPA claims cannot be brought on behalf of a class (Mot. at 24), is premature and can be deferred to the class certification stage. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs. & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1016 (N.D. Cal. 2018). Even if the Court reaches the question now, the TCPA class claims should proceed given the Supreme Court's holding in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010); *see Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1335 (11th Cir.

- 25 -

2015). Applying *Shady Grove*, other courts have found the TCPA's class action prohibition to be procedural in nature and therefore inapplicable in federal court, where Rule 23 applies. *See, e.g.*, *Reynolds v. FCA US LLC*, 546 F. Supp. 3d 635, 657 (E.D. Mich. 2021) (finding TCPA class action bar procedural and declining to dismiss plaintiff's TCPA class claims under *Shady Grove*); *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 264 (S.D. Ill. 2015).[13]

Burnett also adequately alleges an "ascertainable loss of money or property . . . or . . . other . . . thing of value." Tenn. Code Ann. § 47-18-109(a)(1). "A loss is ascertainable if it is measurable, even if the precise amount of the loss is unknown," *Discover Bank v. Morgan*, 363 S.W.3d 479, 496 (Tenn. 2012). and "include[s] both 'out-of-pocket loss or *a loss of value*.'" *Taylor v. Thomas*, 624 F. App'x 322, 327 (6th Cir. 2015) (emphasis added); *see also Opris*, 2022 WL 1639417, at *13. The loss in value of Burnett's PII due to the Data Breach thus qualifies . ¶¶ 20, 542.

**O.      The New York General Business Law Claim Should Proceed.**

Defendants' challenges to Plaintiff Sevak's claims under New York General Business law section 349 ("GBL") fail. The GBL claim has a sufficient connection to New York because Sevak was misled in New York, where he "used Lakeview's services when Lakeview acquired his mortgage on his home in Floral Park, New York," and because, as a condition of receiving loan services, Sevak's PII "was provided to Lakeview." ¶ 303; *see Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 325 (N.Y. 2002); *Marriott*, 440 F. Supp. 3d at 493; *Kennedy v. Mondelez Glob. LLC*, 2020 WL 4006197, at *8 (E.D.N.Y. July 10, 2020). Moreover, Sevak read Lakeview's misleading Privacy Policy in New York, where he resides. *See Griffey*, 2022 WL 1811165, at *9.

Sevak sufficiently alleges a deceptive act or practice violative of the GBL. All Plaintiffs allege they would not have entered into transactions with Defendants had they known the truth about the risks to their PII. ¶¶ 601, 615. Mischaracterizing Plaintiffs' claims, Defendants argue that Lakeview's Privacy Policy does not constitute an "unlimited guaranty" (Mot. at 25-26) when, in fact, Sevak alleges that Defendants' misrepresentations deceived him by stating they would

---

[13] Furthermore, the TCPA's class action prohibition is limited to class claims "brought to *recover damages* for an unfair or deceptive act or practice declared to be unlawful by this part." Tenn. Code Ann. § 47-18-109(g) (emphasis added). Therefore, Burnett's injunctive relief claim would survive no matter what. ¶ 805.

*adequately* protect the privacy and confidentiality of his PII. ¶ 817. This is enough to allege a deceptive act. *See Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *15 (S.D.N.Y. Mar. 23, 2021); *Griffey*, 2022 WL 1811165, at *9.

Defendants are also incorrect that Sevak has not suffered actionable damage under the GBL. *See* ¶¶ 307-12 (time spent mitigating harm from Data Breach); *see Marriott*, 440 F. Supp. 3d at 493-94; *Mednax*, 2022 WL 1468057, at *14. Nor is Sevak required to allege that he directly paid for Defendants' services. *See In re Anthem Data Breach Litig.*, 162 F. Supp. 3d 953, 995 (N.D. Cal. 2016) ("[T]he Court finds that 'Loss of Value of PII' constitutes a cognizable injury under GBL § 349."); *see also Experian*, 2016 WL 7973595, at *3-5. Defendants' challenge overlooks that "allegations that [plaintiffs] would not have entered into a transaction with [the defendant] had they known about the inadequate data security is a cognizable, and thus sufficient, ground for damages." *Capital One*, 488 F. Supp. 3d at 425.

### P.   The Declaratory Judgment Claim Is Not Superfluous.

According to Defendants, the Declaratory Judgment Act claim should be dismissed because the Act does not create an independent cause of action and is duplicative of Plaintiffs' other claims. Mot. at 26-27. Under the very cases Defendants cite, however, because Plaintiffs have adequately pleaded claims for relief against Defendants, their declaratory judgment claim also should proceed. *See, e.g.*, *Toretto*, 583 F. Supp. 3d at 606; *Zolin v. Caruth*, 2009 WL 2982907, at *7 (N.D. Fla. Sept. 14, 2009); *see also Solara*, 2020 WL 2214152, at *15. In short, the claim is not duplicative because the parties have an actionable dispute concerning the ongoing security of Plaintiffs' PII that remains in Defendants' possession. ¶¶ 837-41; *see Capital One*, 488 F. Supp. 3d at 414-15; *Arby's*, 2018 WL 2128441, at *14; *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 2897520, at *4 (N.D. Ga. May 17, 2016).

### V.   <u>CONCLUSION</u>

For all the foregoing reasons, the Court should deny Defendants' Motion to Dismiss. To the extent any portion of the motion is granted, Plaintiffs respectfully request leave to amend under Federal Rule of Civil Procedure 15.

Date:  October 10, 2022                       Respectfully submitted,

                                              /s/  *Julie Braman Kane*
                                              JULIE BRAMAN KANE
                                              Liaison Counsel
                                              Florida Bar No.: 980277
                                              julie@colson.com
                                              **COLSON HICKS EIDSON**
                                              255 Alhambra Circle – Penthouse
                                              Coral Gables, Florida 33134
                                              Telephone: (305) 476-7400
                                              Facsimile: (305) 476-7444

                                              JOHN A. YANCHUNIS
                                              Chair, Plaintiffs' Executive Committee
                                              RYAN D. MAXEY
                                              **MORGAN & MORGAN COMPLEX**
                                              **LITIGATION GROUP**
                                              201 N. Franklin Street, 7th Floor
                                              Tampa, Florida 33602
                                              Telephone: (813) 223-5505
                                              jyanchunis@ForThePeople.com
                                              rmaxey@ForThePeople.com

                                              Adam E. Polk (*Pro Hac Vice*)
                                              Jordan Elias (*Pro Hac Vice*)
                                              Simon Grille (*Pro Hac Vice*)
                                              Kimberly Macey (*Pro Hac Vice*)
                                              **GIRARD SHARP LLP**
                                              601 California St, Ste 1400
                                              San Francisco, CA  94108
                                              Telephone: (415) 981-4800
                                              apolk@girardsharp.com
                                              jelias@girardsharp.com
                                              sgrille@girardsharp.com
                                              kmacey@girardsharp.com

                                              STUART ANDREW DAVIDSON
                                              BRADLEY BEALL
                                              NICOLE BRITO
                                              **ROBBINS GELLER RUDMAN & DOWD**
                                              **LLP**
                                              120 East Palmetto Park Road, Suite
                                              500

- 28 -

Boca Raton, FL 33432
561-750-3000
Fax: 750-3364
Email: sdavidson@rgrdlaw.com
bbeall@rgrdlaw.com
nbrito@rgrdlaw.com

RACHELE R. BYRD (*pro hac vice* forthcoming)
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599
byrd@whafh.com

GARY M. KLINGER (*pro hac vice* forthcoming)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

Joseph M. Lyon (*Pro Hac Vice Forthcoming*)
**THE LYON FIRM, LLC**
2754 Erie Avenue
Cincinnati, OH 45208
Telephone: (513) 381-2333
jlyon@thelyonfirm.com

M. ANDERSON BERRY (*pro hac vice*
forthcoming)
**CLAYEO C. ARNOLD,
A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
aberry@justice4you.com

DAVID K. LIETZ (*pro hac vice* forthcoming)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW
Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877

- 29 -

Email: dlietz@milberg.com

TERRY R. COATES (pro hac vice)
DYLAN J. GOULD (pro hac vice
forthcoming)
**MARKOVITS, STOCK &
DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: 513/651-3700
513/665-0219 (fax)
tcoates@msdlegal.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on October 10, 2022, a true and correct copy of the foregoing was filed

with the Clerk of the Court using the CM/ECF system, which then sent notification of filing to all

counsel of record.

*/s/      Julie Braman Kane*
Julie Braman Kane