UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re Lakeview Loan Servicing Data Breach Litigation | Case No. 1:22-cv-20955-DPG<br><br>Oral Argument Requested |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**

**I.     REPLY TO STANDING ARGUMENTS.**

Plaintiffs assert several theories of "injury" that they claim substitute for allegations of identity theft, fraud, or other actual misuse of their personally identifiable information ("PII"). None of these alleged injuries satisfy Article III's injury requirement.

***Diminution in Value.*** Plaintiffs rely on out-of-circuit cases to argue injury based on lost value of their PII (Opp.[1] at 5), but courts in this Circuit reject the diminution in value theory where, as here, Plaintiffs do not derive monetary value from their PII. Mem. at 6 (collecting cases).

***Emotional Distress.*** Plaintiffs argue generally that emotional distress ***can*** suffice as an injury (Opp. at 7), but Plaintiffs' threadbare allegations are insufficient to state a plausible claim that any of them actually suffered emotional distress (Mem. at 3). Plaintiffs fail to cite any authority holding that merely uttering the phrase "emotional distress" in a complaint satisfies Article III.

***Dark Web.*** Plaintiffs fail to respond to the argument that certain Plaintiffs' "dark web" allegations fail to establish injury in fact (*id.* at 3-4), so they concede these allegations do not confer standing. *See Giuliani v. NCL (Bahamas) Ltd.*, 558 F. Supp. 3d 1230, 1244 (S.D. Fla. 2021).

***Mitigation Efforts.*** Alleged mitigation efforts do not confer standing because injury is not imminent. Mem. at 4. Plaintiffs argue injury is imminent because Defendants recommended that Plaintiffs review account statements and look for fraud (Opp. at 5), but these are commonsense steps any responsible person would take, regardless of the Incident. *See In re Brinker Data Incident Litig.*, 2019 WL 3502993, at *6 (M.D. Fla. Aug. 1, 2019) ("Monitoring one's accounts for fraudulent activity is something many individuals do, regardless of whether they have been informed their information is at risk"). Indeed, if Plaintiffs' allegations that they protected their PII prior to the Incident are true (Compl. ¶¶ 480, 492, 504, 516, 527), they would already have been taking these actions. If untrue, and the Incident prompted Plaintiffs to protect their PII, that is not an injury. Moreover, Plaintiffs' claim that injury is "imminent" is implausible because they do not allege they suffered fraud more than a year after the Incident occurred. *Id.* ¶ 4; Black's Law Dictionary (defining "imminent" as "threatening to occur immediately," "dangerously impending," or "[a]bout to take place"); *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 958 (D. Nev. 2015) ("The more time that passes without the alleged future harm actually occurring undermines any argument that the threat of that harm is [imminent].").

---

[1] "Memorandum" or "Mem." refer to Dkt. 59 and "Opposition" or "Opp." refer to Dkt. 71.

***Spam Phone Calls.*** Plaintiffs' "spam" allegations fail because they do not allege causation and causation cannot be inferred since contact information was not accessed. Mem. at 4. Plaintiffs argue causation can be inferred due to the "close temporal proximity between the [Incident]" and the "increase in spam" (Opp. at 7 n.3), but causation cannot be inferred from temporal sequence alone. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005) (rejecting "fallacy" that "a temporal relationship proves a causal relationship").

***Loss of Privacy.*** Thomas argues "invasion of privacy is 'a harm that has traditionally been regarded as providing a basis for a lawsuit'" (Opp. at 7) but she does not (and cannot) state a claim for invasion of privacy because such a claim requires an intentional disclosure, which she does not allege. *See Purrelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 620 (Fla. Dist. Ct. App. 1997).

## II.    REPLY TO ARGUMENTS REGARDING FAILURE TO STATE A CLAIM.

### A.    Negligence.

Plaintiffs argue bodily injury or property damage is not required to state a claim for negligence. Opp. at 8-9. Not so. Florida law clearly requires "bodily injury or property damage." *See* 38 Fla. Jur 2d Negligence § 32 ("bodily injury or property damage is an essential element [of] negligence"); Mem. at 5-6 (collecting cases).[2]

Plaintiffs argue negligence per se claims can be predicated on statutes without a private right of action, but cite no authority supporting this assertion. Opp. at 9. They also contend that "Defendants' argument is [] out of step with recent data breach cases" (*id.*), but Plaintiffs' authorities do not address Florida law, which does not permit negligence per se claims based on statutes that do not provide for a private right of action (Mem. at 6).

Plaintiffs argue their "shotgun pleading" should be excused because Defendants were able to articulate defenses (Opp. at 9-10), but the Complaint "commingles multiple negligence and liability theories into a single claim" and fails to allege which Defendants are responsible for alleged acts and omissions, which is the essence of "shotgun pleading." Mem. at 6.

---

[2] Plaintiffs argue that some of the cases cited by Defendants should be disregarded because they address standing (Opp. at 8-9), but they are cited for the proposition that PII is not property (Mem. at 6), which Plaintiffs do not dispute. Plaintiffs also argue the Court should disregard the "bodily injury or property damage" requirement in a data breach case (Opp. at 9), but the requirement applies to all negligence claims. *See* 38 Fla. Jur 2d Negligence § 32; Mem. at 5–6.

### B. Breach of Implied Contract

Plaintiffs argue they "furnished their PII in exchange for mortgage services" (Opp. at 10 (citing Compl. ¶¶ 102-03, 123)), but the cited paragraphs do not support this statement. Rather, Plaintiffs allege they provided PII in a loan application. *See* Compl. ¶ 123 (admitting PII was provided to lenders). Thus, they provided PII before there was a loan to service, so their claim would be implausible even if alleged. Plaintiffs also argue Lakeview's Privacy Policy constitutes a meeting of the minds because the policy "represented that Plaintiffs' [PII] would be reasonably safeguarded" and "assured customers about the steps [Lakeview] takes to 'protect [PII]." Opp. at 10-11. However, these vague statements do not show a meeting of the minds and the terms are too indefinite. Mem. at 7. Moreover, the Privacy Policy even warns customers of the risk of "unauthorized access" and Plaintiffs' acceptance of that risk, so if an implied contract was created, Plaintiffs accepted the risk of "unauthorized access" under that contract. *Id.* at 7-8. Lastly, Lakeview's Privacy Policy cannot create an implied contract with the other Defendants.

### C. Breach of Fiduciary Duty.

Plaintiffs argue Florida law applies to their breach of fiduciary duty claims, but the case they cite rejects their contention that receipt of PII creates a fiduciary relationship. Opp. at 11-12 & n.8 (citing *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2022 WL 1468057, at *28 (S.D. Fla. May 10, 2022) ("[M]ere receipt of confidential information is insufficient by itself to [create] a fiduciary relationship.")). Thus, Plaintiffs' claims fail under their own and other authorities. *See* Mem. at 8-9. Moreover, Plaintiffs' argument that fiduciary duties "'may be implied in law on the specific factual situation surrounding the transaction and the relationship of the parties" (Opp. at 12) is of no avail because courts have addressed the "factual situation" and "relationship" that exists here and found no fiduciary relationship. Mem. at 8-9 (collecting cases).

### D. California's Consumer Records Act ("CCRA")

In response to Defendants' argument that "[Plaintiffs] do not allege any damages resulting from the alleged delay," Plaintiffs argue they would have responded more quickly if made aware of the Incident earlier (Opp. at 14), but they do not point to any injury they would have avoided had they been notified earlier, so their argument fails (Mem. at 10-11).

In response to Defendants' argument that Plaintiffs do not satisfy the CCRA's definition of "customer," Plaintiffs argue that Defendants' interpretation of "customer" has been rejected. Opp. at 13 (citing *In re Experian Data Breach Litig.*, 2016 WL 7973595, at *9 (C.D. Cal. Dec. 29,

3

2016)). This is false. The *Experian* court merely said defendants there failed to cite authorities supporting their interpretation. 2016 WL 7973595, at *9. Here, Defendants provided ample authority, including authorities addressing the unambiguous definition of "customer." Mem. at 10; *see also In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 2897520, at *5 (N.D. Ga. May 18, 2016); *In re Waste Mgmt. Data Breach Litig.*, 2022 WL 561734, at *7 (S.D.N.Y. Feb. 24, 2022). Plaintiffs also argue that Section 1798.82(a) is not limited to "customers" (Opp. at 13), but Section 1798.84(b) makes clear that only "customers" have standing under the CCRA. *See Boorstein v. CBS Interactive, Inc.*, 222 Cal. App. 4th 456, 466–67 (2013).

In response to Defendants' argument that alleging failure to "maintain reasonable security procedures and practices" is too conclusory, Plaintiffs argue that "Defendants failed to encrypt Plaintiffs' PII in violation of industry standards and neglected to delete information that Defendants no longer had reason to maintain." Opp. at 13. However, these are precisely the kind of threadbare allegations courts routinely reject. Mem. at 10 (collecting cases).[3]

Lastly, in response to Defendants' argument that they are not subject to Section 1798.82(b)'s immediate notification requirements, Plaintiffs argue this raises a factual dispute. Opp. at 14. However, since Plaintiffs allege that Defendants "maintain" PII (Mem. at 11), there is no factual dispute. Plaintiffs also argue that "section 1798.82(a) expressly requires a business that 'licenses' PII to disclose a security breach 'in the most expedient time possible and without unreasonable delay.'" Opp. at 14. However, Plaintiffs alleged a violation of 1798.82(***b***), not (***a***) (Compl. ¶¶ 644-48), so this argument is irrelevant.

### E. California's Consumer Privacy Act ("CCPA").

In response to the argument that Plaintiffs do not allege Defendants are "businesses," Plaintiffs selectively quote the definition by omitting the requirements in Section 1798.140(c)(1)(A)–(C) and cite *Karter v. Epiq Sys., Inc.*, 2021 WL 4353274, at *2 (C.D. Cal. July 16, 2021). Opp. at 14-15. However, as Defendants and *Karter* explained, an entity must satisfy one of the requirements in Section 1798.140(c)(1)(A)–(C) to be a "business." Mem. at 11; *Karter*, 2021 WL 4353274, at *2 n.1.

---

[3] In support of their consumer protection claims under Illinois, Florida, Maryland, Missouri, Indiana, Texas, Ohio, and Tennessee law, Plaintiffs incorporate the same argument addressed here. Opp. at 14 n.9. To avoid repetition, Defendants' responses to those claims below incorporate their argument here.

4

Plaintiffs respond to the argument that they failed to provide notice by dismissing it as a "technical argument" (Opp. at 15), but the CCPA clearly requires notice. *See* Cal. Civ. Code § 1798.150(b). Plaintiffs then argue they provided the requisite notice, but Plaintiffs were required to provide "30 days' written notice ***identifying the specific provisions*** [that were] violated." Mem. at 12 (citing Cal. Civ. Code § 1798.150(b) (emphasis added)). Plaintiffs' letters generically reference "a violation of Civil Code §§ 1798.81.5 and 1798.150" (Dkts. 47-6 & 47-7), but these statutes contain numerous provisions and Plaintiffs failed to identify any "specific provisions." Thus, Plaintiffs' contention that Section 1798.81.5(***b***) could suffice is irrelevant because Plaintiffs did not cite subsection (b) in their letters. Their belated reference to Section 1798.81.5(***b***) merely underscores their failure to "***identify[] the specific provisions***" in their notices.

Plaintiffs do not dispute that Keach and Saporta's notice was untimely, but argue the Consolidated Complaint was filed after the notice, so the deficiency was cured. Opp. at 16. However, Plaintiffs' authorities do not address the CCPA, which does not permit them to cure. *See* Cal. Civ. Code § 1798.150(b) (requiring notice "prior to initiating any action"). Keach and Saporta filed an action without giving the required notice (Opp. at 16), so their claims fail.

Plaintiffs also argue that whether Defendants cured is a factual issue. (*Id.* However, the alleged failure to cure is based on an alleged failure to take three specific actions (Compl. ¶ 660) and none of those actions are required (Mem. at 12 & n.3), so there is no material fact dispute. Moreover, Plaintiffs' argument that the Court must defer deciding whether there was a cure is nonsensical because it would require the parties to complete discovery—and perhaps even trial—before deciding whether Plaintiffs can pursue an action in the first place.

In response to Defendants' argument that Plaintiffs fail to allege damages, Plaintiffs do not dispute that Keach and Crenshaw fail to allege damages, but argue that Saporta's alleged monthly $15 payment for a fraud alert raises a factual dispute. Opp. at 16. However, it is beyond dispute that fraud alerts are free, and courts may take judicial notice of facts that are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201; Mem. at 13 & n.4; https://consumer.ftc.gov/articles/what-know-about-credit-freezes-fraud-alerts (explaining that fraud alerts are "free") (accessed Oct. 18, 2022).

Lastly, injunctive relief is inappropriate because the Incident is unlikely to reoccur. Mem. at 13. Plaintiffs' argument is merely that the Incident occurred, so it is likely to reoccur, but there is no basis for this assumption given the enhanced security measures now in place. *See* Dkt. 47-8.

5

### F. California's Unfair Competition Law ("UCL")

In response to Defendants' argument that Plaintiffs fail to allege "what 'reasonable measures' [Defendants] failed to use or how [Defendants] deviated from or otherwise failed to conform to any industry standard," Plaintiffs argue their allegations of "inadequate security and unreasonable failure to safeguard [] PII are both detailed and plausible." Opp. at 17. However, they fail to support this statement with citations to the Complaint and fail to identify measures Defendants failed to take or standards Defendants failed to follow in violation of the UCL. *Id.*

In response to Defendants' argument that Plaintiffs fail to allege which UCL section was violated and fail to allege supporting facts with "reasonable particularity," Plaintiffs argue their claims are not subject to Rule 9(b). *Id.* However, "a UCL claim of any kind 'must identify the particular section of the statute that was violated, and must describe with reasonable particularity the facts supporting the violation.'" *See Baba v. Hewlett-Packard Co.*, 2010 WL 2486353, at *5–6 (N.D. Cal. June 16, 2010); *Bros. v. Hewlett-Packard Co.*, 2006 WL 3093685, at *7 (N.D. Cal. Oct. 31, 2006); *In re Brinker Data Incident Litig.*, 2020 WL 691848, at *16 (M.D. Fla. Jan. 27, 2020).

In response to Defendants' argument that Plaintiffs fail to allege deception is likely, Plaintiffs argue they are only required to allege deception under the UCL's fraud prong (Opp. at 18). This is false. *See People v. McKale*, 25 Cal.3d 626, 635 (1979) ("What constitutes 'unfair competition' or 'unfair or fraudulent business practice' under any given set of circumstances is a question of fact ... the essential test being whether the public is likely to be deceived...."); *Friedman v. AARP, Inc.*, 855 F. 3d 1047, 1055 (9th Cir. 2017) ("To state a claim under either prong, … plaintiff must show that members of the public are likely to be deceived by the practice.").

In response to Defendants' argument that Plaintiffs are not entitled to restitution or injunctive relief, Plaintiffs argue that "'indirect purchasers [can] seek restitution….'" Opp. at 18. However, Plaintiffs do not plausibly allege they provided money or property to Defendants (or anyone else) in exchange for loan servicing. Thus, Plaintiffs are not entitled to restitution because they did not lose money or property that was gained by Defendants. Mem. at 14. Plaintiffs also argue that injunctive relief is appropriate because "their personal information is still at risk and a data breach is sufficiently likely to recur[.]" Opp. at 18 (citing Compl. ¶¶ 841-82). However, most of the paragraphs cited by Plaintiffs are not in the Complaint and those that exist do not plausibly

6

allege reoccurrence is likely. They merely allege, in conclusory fashion, that "[t]he risk of another breach is real, immediate, and substantial." Compl. ¶¶ 841-44.

      **G.**      **Illinois Consumer Fraud Act ("ICFA")**

In response to Defendants' argument that Berg failed to comply with Rule 9(b), she argues that Rule 8(a) applies. Opp. at 18. However, she alleges deceptive conduct, so Rule 9(b) applies. *See* Compl. ¶¶ 677–80 (alleging "deceptive and unfair acts"); *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019) ("If the claim rests on allegations of deceptive conduct, then Rule 9(b) applies….").

In response to Defendants' argument that she is not a "consumer," Berg relies on the "consumer nexus" test. Opp. at 19. However, the Court should reject this test because the Illinois Supreme Court made clear that only "consumers" have standing to pursue ICFA claims. *See Steinberg v. Chicago Med. Sch.*, 371 N.E.2d 634, 638 (Ill. 1977) (explaining that the ICFA's inapplicability to non-consumers "is patent from the title of the Act"); *see also Prime Leasing, Inc. v. Kendig*, 773 N.E.2d 84, 95–96 (Ill. App. 3d 2002) ("[Plaintiff] was not a consumer and, as such, cannot be granted relief under the [ICFA]."); *Commonwealth Edison Co. v. Munizzo*, 986 N.E.2d 1238, 1248 (Ill. App. 3d 2013) (same).

Even if the Court considers the "consumer nexus" test, Berg's claims fail because she did not plead a "consumer nexus." Compl. ¶¶ 673–85; *Demarco v. CC Servs. Inc.*, 2017 IL App (1st) 152933-U, ¶¶ 34–35 ("Because [plaintiff] failed to adequately allege the required consumer nexus, [her] Consumer Fraud Act claim was properly dismissed."). Moreover, she cannot show that "[her] actions were akin to a consumer's actions" or that the "requested relief would serve the interests of consumers." *See Brody v. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 698 N.E.2d 257, 269–70 (Ill. App. 3d 1998) (reciting elements). Berg's actions were not "akin to a consumer's actions" because she did not seek out a loan servicer and her receipt of an incidental service does not convert her into a "consumer" with respect to that service. *See* Mem. at 20 (collecting cases applying analogous Texas). Moreover, the relief she requests would not "serve the interests of **consumers**" because Berg and putative members of the Illinois subclass—*i.e.*, the purported beneficiaries of Berg's claims—are not "consumers." *Id.* at 15. While some courts allow ICFA claims by non-consumers in contravention of *Steinberg*, those courts still require that the "requested relief" "serve the interests of **consumers**," which is not the case here.

7

In response to Defendants' argument that Berg fails to properly allege Defendants intended for her to *rely* on their alleged deceptive acts (Mem. at 15), Berg argues that she is not required to allege intent to *deceive* (Opp. at 19). As Berg fails to respond to Defendants' actual argument, she concedes this point. *See Giuliani*, 558 F. Supp. 3d at 1244. Berg also argues she need not have seen the allegedly deceptive communication (Opp. at 19), but her argument is foreclosed by binding Illinois Supreme Court precedent (Mem. at 15 (collecting cases)). Moreover, two of the cases she relies on pertain to alleged omissions (Opp. at 19 (citing *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 770–71 (C.D. Ill. 2020) & *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1250–51 (D. Colo. 2018))). Here, Berg alleges Lakeview explicitly promised to protect her PII from unauthorized disclosure and promised its security was adequate. Compl. ¶¶ 21, 107, 602. Thus, she alleges affirmative false statements, not omissions. The third case she relies on says nothing about whether plaintiff must see the allegedly deceptive communication. Opp. at 19 (citing *Blankenship v. Pushpin Holdings*, LLC, 2015 WL 5895416, at *8 (N.D. Ill. Oct. 6, 2015)).

In response to Defendants' argument that Berg does not allege "actual damage" that was "proximately caused" by Defendants, she argues she "paid $57 toward an unauthorized charge" because "credit reporting agencies informed her that her credit score would significantly decrease unless she made a partial payment." Opp. at 20. Thus, she admits her decision was proximately caused by the flawed advice of "credit reporting agencies," which is an intervening force that breaks the chain of causation. *See Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734, 751 (Ill. 1994). Berg also argues that "time she spent dealing with fraudulent activity [] constitutes actual damage" and claims her conclusion is supported by *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 761 (C.D. Ill. 2020) and *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 829 (7th Cir. 2018). Opp. at 20. However, in the referenced passages, *Purdue* was addressing negligence claims and *Dieffenbach* was addressing California law. Under the ICFA, "actual damages must arise from 'purely economic injuries.'" *Cooney v. Chi. Public Sch.*, 943 N.E.2d 23, 31 (Ill. App. 3d 2010).

Lastly, in response to Defendants' argument that Berg is not entitled to injunctive relief, she incorporates Plaintiffs' response to a similar argument concerning Plaintiffs' CCPA claims (Opp. at 17 n.10), so Defendants incorporate their response (*supra* at 5).

## H. Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")

Plaintiffs' FDUTPA claims should be dismissed because they fail to allege a deceptive act or unfair practice and fail to allege actual damages. *See* Mem. at 16. Plaintiffs respond that they

8

allege "unfair, unconscionable, and unlawful acts and practices" (Opp. at 20 (citing Compl. ¶ 697)), but these threadbare allegations do not satisfy Rule 8(a) (Mem at 16).

Plaintiffs next argue that "they overpaid for mortgage services[.]" Opp. at 20 (citing Compl. ¶ 543). However, Plaintiffs' claim that they pay Defendants for mortgage servicing is not remotely plausible. Loan servicing is an incidental service that is provided free of charge. *See* Mem. at 20 (collecting cases applying analogous Texas law); *Blaine v. N. Brevard Cnty. Hosp. Dist.*, 317 F. Supp. 3d 1157, 1159 (M.D. Fla. 2018) (explaining that in assessing plausibility, "courts draw on their 'judicial experience and common sense'" and may take judicial notice of facts that cannot reasonably be disputed). Moreover, "actual damages" correspond to the "'difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered'" (Mem at 16), but Plaintiffs do not allege that Defendants' mortgage servicing was deficient.

## I. Maryland Consumer Protection Act ("MCPA")

In response to the argument that he failed to comply with Rule 9(b), McMahon cites a District of Maryland case holding that "Rule 9(b) is relaxed for claims of omission." Opp. at 21. That is not the law in this Circuit. *See Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1352 (11th Cir. 2008) ("Under [Rule] 9(b), allegations about the material misrepresentations or omissions 'must state with particularity the circumstances constituting fraud.'").

McMahon also argues "Defendants' continued failure to take the necessary steps to protect sensitive PII, and their concealment of this material information" are unfair or deceptive practices (Opp. at 21), but this argument is based on utterly conclusory allegations amounting to the assertion that the fact of a data breach implies inadequate data security. Moreover, McMahon does not plausibly allege that Defendants' business practice is to have inadequate security, and a data security incident coupled with conclusory allegations that security remains inadequate do not show a "practice of the trade." Mem. at 17, Lastly, McMahon claims he suffered an identifiable loss because his PII is on the dark web, he engaged in mitigation efforts, the value of his PII was diminished, and he overpaid for loan servicing. Opp. at 21. However, McMahon does not allege any "amount [he] spent or lost as a result of his [] reliance on ***the sellers'*** misrepresentation." *See Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007) (emphasis added). Indeed, Defendants did not ***sell*** McMahon anything and his allegation that he paid for loan servicing is implausible. *Supra* at 3.

9

### J. Missouri Merchandising Practices Act ("MMPA")

Blando's MMPA claims fail because: (1) they are not plead with particularity; (2) he has no ascertainable pecuniary loss; and (3) the value of his mortgage servicing did not decrease. Mem. at 18. Blando's response to the first argument fails for the reasons stated *supra* at 4 & n.3. In response to the second argument, Blando claims "[his] PII was tendered to Defendants in exchange for [mortgage servicing]" (Opp. at 22), but that claim is implausible for the reasons stated *supra* at 3, and the Court need not accept this obvious falsehood. *See Blaine*, 317 F. Supp. 3d at 1159. Moreover, even if true, this would not be an "ascertainable *pecuniary* loss."[4] Mem. at 18. Lastly, he does not respond to the third argument, so he concedes. *See Giuliani*, 558 F. Supp. 3d at 1244.

### K. Indiana Deceptive Consumer Sales Act ("IDCSA")

Farley alleges an incurable deceptive act (Opp. at 23), so she must comply with Rule 9(b) and plausibly allege "intent to defraud or mislead" (Mem. at 19-20). She does not dispute this pleading requirement (Opp. at 23) and her conclusory allegation that Defendants engaged in "unfair and deceptive practices… with intent to defraud or mislead" does not satisfy Rule 9(b).[5]

### L. Texas Deceptive Trade Practices – Consumer Protection Act ("TDTPA")

Plaintiffs' TDTPA claims fail because they do not satisfy Rule 9(b) and Plaintiffs are not "consumers." Mem. at 20. Plaintiffs' response to the first argument fails for the reasons stated *supra* at 4 & n.3. In response to the second argument, Plaintiffs claim they "sought and acquired Defendants' loan servicing services in exchange for their PII" (Opp. at 24 (citing Compl. ¶¶ 740-56)), but the cited paragraphs do not support this claim. Moreover, Plaintiffs fail to address the numerous cases holding that loan servicing is an incidental service, the receipt of which does not make one a "consumer" under the TDTPA. Mem. at 20 (collecting cases).

### M. Ohio Residential Mortgage Loan Act ("RMLA")

Kraus' Section 1322.40(C) claim fails because she does not comply with Rule 9(b) and her Section 1322.45(A) claim fails because it is unsupported by factual allegations. Mem. at 21. Kraus does not dispute that her Section 1322.40(C) claim is subject to Rule 9(b), but contends that merely

---

[4] Blando cites *Jackson v. Charlie's Chevrolet, Inc.*, 664 S.W.2d 675, 677 (Mo. Ct. App. 1984) for the proposition that a pecuniary loss is unnecessary, but *Jackson* was discussing Chapter 301 of the Missouri Code, which deals with "Registration and Licensing of Motor Vehicles."

[5] Farley cites *Bray v. Gamestop Corp.*, 2018 WL 11226516, at *6 (D. Del. Mar. 16, 2018) as holding that "allegations that defendant misled consumers 'that it would adequately protect [PII] and failed to inform customers that it did not maintain adequate data protection systems' [are] sufficient" (Opp. at 23), but the allegations in *Bray* were more detailed and plausible.

10

alleging "that Defendants failed to adequately protect the PII and made misleading claims regarding their data security practices and protocols" is enough (Opp. at 24), but this threadbare allegation does not satisfy Rule 9(b). Moreover, her allegations cannot support a Section 1322.45(A) claim because that section has nothing to do with PII or data security.

### N. Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL")

In response to Defendants' argument that Kraus did not purchase or lease loan servicing, he repeats the specious claim that he purchased loan servicing from Defendants. *Id.* The Court need not accept this implausible allegation. *Supra* at 3; *Blaine*, 317 F. Supp. 3d at 1159.

In response to Defendants' argument that Kraus does not allege an "ascertainable loss of money or property," he argues the value of his PII was diminished, unauthorized charges were made on his credit card, and his computer was hacked. Opp. at 24-25. However, the alleged diminution in value of Kraus' PII does not constitute an "ascertainable loss of money or property." *See Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 180 (3d Cir. 2015) (affirming district court's rejection of "speculative" diminution in value theory). There is also no basis for inferring the alleged credit card charges are connected to the Incident because no credit card information was accessed, and Kraus does not allege an out-of-pocket loss due to the alleged charges. *See* Compl. ¶ 3 (describing PII that was allegedly accessed); *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 541 (M.D. Pa. 2021) (rejecting claim that unauthorized credit card charges constitute an ascertainable loss where there was no out-of-pocket loss).[6] Similarly, the information that was allegedly accessed would not enable criminals to hack Kraus' computer, so it is implausible that there is a connection between the Incident and the alleged hack.

In response to Defendants' argument that Kraus does not plausibly allege justifiable reliance, he argues it is sufficient to "alleg[e] that he 'relied on Defendants to keep [his] PII confidential and securely maintained' and would not have handed over his PII had Defendants disclosed that their data security systems were vulnerable to attack." Opp. at 25. However, "[Kraus] must show that he justifiably relied on the defendant's wrongful conduct or representation…." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 438 (2004). Thus, the issue is not whether Kraus relied on Defendants; it's whether he relied on their alleged "wrongful

---

[6] Kraus tries to distinguish *Rutter's* by arguing the court held that "alleged overdraft fees and lost wages satisfied this element of the claim." Opp. at 25. However, Kraus does not allege overdraft fees or lost wages and *Rutter's* makes clear that there must be an out-of-pocket loss.

11

conduct or representation," so Kraus' argument is irrelevant. Moreover, his conclusory allegation that "'[he] did rely on Defendants' misrepresentations and omissions relating to their data privacy and security'" does not suffice. Mem. at 22.

### O. Tennessee Consumer Protection Act of 1977 ("TCPA")

In response to Defendants' argument that TCPA does not allow class actions, Burnett argues it is premature to determine whether TCPA permits class actions (Opp. at 25), but there is no basis for deferring the interpretation of an unambiguous statute. Moreover, Burnett's reliance on *In re Chrysler-Dodge-Jeep* is misplaced because there, multiple States' consumer protection acts were in play, some of which permitted class actions and some of which did not. *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs. & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1016 (N.D. Cal. 2018). Here, the issue is whether the TCPA permits class actions and it clearly does not.

Burnett also argues the TCPA's class action prohibition is procedural rather than substantive (Opp. at 25-26), but this argument disregards the text of the TCPA, which clearly reflects the legislature's intent to only permit the State to bring actions on behalf of consumers generally. The TCPA provides that "[a]ny person who suffers an ascertainable loss… ***may bring an action individually*** to recover actual damages" and that "[n]o class action lawsuit may be brought…." *See* Tenn. Code Ann. § 47-18-109(a)(1), (g) (emphasis added). As the Tennessee Supreme Court explained, the TCPA provides "a person may file an action, *individually*" but only permits the State to bring an action "akin to a class action" for the "protection of *classes* of consumers[.]" *See Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 308–11 (Tenn. 2008) (emphasis in original). Thus, the TCPA creates substantive rights, but, in the case of private individuals, the right is limited to individual actions.[7] If the Court were to permit Burnett to

---

[7] Consistent with *Walker*, courts have rejected Plaintiffs' argument that the limitations in the TCPA are procedural. *See, e.g., Bearden v. Honeywell Int'l Inc.*, 2010 WL 3239285, at *10 (M.D. Tenn. Aug. 16, 2010) ("[T]he class-action limitation contained in the TCPA is so intertwined with that statute's rights and remedies that it functions to define the scope of the substantive rights" whereas *Shady Grove* involved "a separate procedural rule"); *id.* ("[A]s explained by the Tennessee Supreme Court, the class-action limitation reflects a policy that the proper remedy for a violation affecting a class of consumers is prosecution by the [State]—not a private class action."); *Tait v. BSH Home Appliances Corp.*, 2011 WL 1832941, at *7–9 (C.D. Cal. May 12, 2011) (following *Bearden*); *Ham v. Swift Transportation Co., Inc.*, 2011 WL 13350069, at *3 (W.D. Tenn. Oct. 12, 2011) ("[T]he Tennessee Supreme Court in *Walker* has construed the TCPA as authorizing only claims brought individually… and does not permit class actions…. [N]either Fed. R. Civ. P. 23 nor the United States Supreme Court decision in *Shady Grove* alters the *Walker* holding.").

maintain a TCPA class action, the effect would be to "enlarge or modify [a] substantive right" in violation of the Rules Enabling Act. *See* 28 U.S.C. § 2072(b). This is confirmed by Plaintiffs' own authority. *See Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1335 (11th Cir. 2015) (explaining that disregarding class action prohibitions violates the Rules Enabling Act if doing so would "'abridge, enlarge or modify any substantive right'") (quoting 28 U.S.C. § 2072(b)).

In response to Defendants' argument that Burnett fails to allege "an ascertainable loss of money or property," Burnett argues the diminished value of her PII qualifies. Opp. at 26. However, she fails to explain how her PII is less valuable to her or how the speculative value she places on her PII can be measured. *See Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (explaining that the TCPA requires a "[s]ubstantial injury [which] usually involves monetary injury or unwarranted health and safety risks" and "speculative" injuries do not suffice).

### P. New York General Business Law

Sevak claims he alleges conduct occurring in New York because *his conduct* occurred there (Opp. at 26), but it is the location of the allegedly deceptive conduct that matters, and Defendants' allegedly deceptive acts occurred in Florida. Compl. ¶ 817; Mem. at 25.

Sevak also argues he alleged a deceptive act because Defendants "stat[ed] they would adequately protect… his PII" (Opp. at 26-27), but Lakeview's Privacy Policy contains no such guarantee; to the contrary, it makes clear there is no guarantee of security and Sevak accepted the risk of "unauthorized access." Mem. at 25-26 (quoting Dkt. 47-2). Thus, Sevak cannot credibly claim the Privacy Policy was deceptive.[8]

Sevak claims an actual injury because he spent time mitigating harm (Opp. at 27), but "[he] must allege that, on account of a materially misleading practice, [he] purchased a product and did not receive the full value of [his] purchase." *See Orlander v. Staples, Inc.*, 802 F. 3d 289, 302 (2nd Cir. 2015); Mem. at 26. Sevak also cites several cases for the proposition that "time spent mitigating harm" suffices (Opp. at 27), but most of the cases do not support this proposition and his reliance on a California federal case recognizing lost value of PII as an injury is of no avail because the Ninth Circuit subsequently held that "a plaintiff must show that she did not receive the full value of her purchase, by alleging (for instance) that she paid a price premium due to the

---

[8] Sevak also failed to allege that he read the Privacy Policy, so he cannot have been misled by it. He tries to remedy this deficiency by claiming in the Opposition that he read the Privacy Policy (Opp. at 26), but the Court should disregard this claim since it is not supported by the Complaint.

deception." *See Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019). Further, there must be a "connection between the misrepresentation and any **harm from, or failure of, <u>the product</u>**." *See Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999) (emphasis added). Here, the product is loan servicing, which is not alleged to be defective.

Sevak responds to Defendants' argument that he did not allege he was misled by claiming he "was misled in New York" (Opp. at 26 (citing Compl. ¶ 303)), but the cited paragraph does not allege Sevak was misled.

### Q. Declaratory Judgment And Injunctive Relief

Defendants demonstrated that Count XXII fails because the Declaratory Judgment Act does not create an independent cause of action and, even if it did, Plaintiffs' claims are duplicative. Mem. at 26-27. Plaintiffs' Opposition fails to show that the Declaratory Judgment Act creates an independent cause of action and fails to rebut Defendants' argument that Plaintiffs' Declaratory Judgment Act claims are duplicative, so dismissal is appropriate.

### R. Other Claims Abandoned or Conceded in the Opposition

Plaintiffs abandon Counts XVII, XIX, and XXI (Opp. at 1 n.1) and fail to respond to Defendants' argument that Counts VI, IX, XI–XVI, XVIII, and XX fail as to Bayview, so they concede. Mem. at 10, 14, 16, 18-25; *Giuliani*, 558 F. Supp. 3d at 1244. Thus, Counts XIX, XVII, and XXI should be dismissed in their entirety and, in addition to the reasons set forth above, Counts VI, IX, XI-XVI, XVIII, and XX dismissed as to Bayview.

Dated: November 7, 2022.

*s/ Julie Singer Brady*
Julie Singer Brady
Florida Bar No. 389315
jsingerbrady@bakerlaw.com
BAKER & HOSTETLER LLP
200 South Orange Avenue, Suite 2300
Orlando, FL 32801
Telephone: 407.649.4000
Facsimile: 407.841.0168

Paul Karlsgodt (*pro hac vice*)
PKarlsgodt@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO 80202
Telephone: 303.861.0600

Facsimile: 303.861.7805

Evan M. Mannering (*pro hac vice*)
emannering@bakerlaw.com
BAKER & HOSTETLER LLP
1050 Connecticut Ave, NW, Suite 1100
Washington, DC 20036
Telephone: 202.861.1500
Facsimile: 202.861.1783

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 7, 2022, I electronically filed the foregoing document with the Clerk of the Court by using the Florida E-Filing Portal, which will send a Notice of Electronic Filing to all counsel of record.

*s/ Julie Singer Brady*
Julie Singer Brady