UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re Lakeview Loan Servicing Data Breach Litigation | Case No. 1:22-cv-20955-DPG<br><br>Judge: Hon. Darrin P. Gayles<br>       Hon. Edwin G. Torres |

**DEFENDANTS' SUPPLEMENTAL FILING REGARDING THEIR ASSERTIONS OF ATTORNEY-CLIENT PRIVILEGE AND ATTORNEY WORK PRODUCT CONCERNING MANDIANT AND PROTIVITI**

On October 19, 2023, the Court heard argument regarding Plaintiffs' efforts to compel production of communications with and reports prepared by cybersecurity firms Mandiant and Protiviti over Defendants' objections that they are protected from disclosure because they were prepared in anticipation of litigation and adverse regulatory proceedings after an unauthorized access to certain devices in Bayview's network (the "Incident"). At the hearing, the Court directed Defendants to submit a supplemental filing setting forth the pre-existing relationship between (1) Defendants and Mandiant and (2) Defendants and Protiviti, and to address the relevant case law. In accordance with the Court's instruction, Defendants hereby submit this supplemental filing.

**FACTUAL BACKGROUND**

    A.    <u>Bayview's relationship with Mandiant.</u>

In October 2019, Mandiant and Bayview Asset Management, LLC ("Bayview") entered into a Master Services Agreement ("MSA") and executed a Statement of Work ("SOW") that secured Mandiant's services in the event of a data incident, which would be defined at the time of engagement. (Declaration of Scott Norton, dated November 2, 2023, at ¶ 2, attached hereto as Exhibit A). To be ready to quickly provide services in the event of a data incident, Mandiant gathered information about Defendants' systems, security tooling, logging, and other relevant matters and which is reflected in a report (to be produced). (*Id.* at ¶¶ 3-4).

1

In June 2021, Mandiant and Bayview executed a renewal SOW for Mandiant to continue to be at the ready so that Bayview could respond quickly in the event of a data incident. (*Id.* at ¶ 5). Mandiant was not actively performing any work at the time the Incident was discovered. (*Id.* at ¶¶ 4-6). In sum, at the time the Incident was discovered, the only work Mandiant had performed for Bayview was the report providing an assessment of Bayview's ability to support requests that may be made by Mandiant during an incident response engagement. (*Id.*). Otherwise, Mandiant was simply at the ready to quickly respond if a data incident occurred. BakerHostetler engaged Mandiant to perform the forensic investigation related to the Incident. (Declaration of Craig Hoffman, dated October 16, 2023, at ¶ 8, attached hereto as Exhibit B).

B.  Bayview's relationship with Protiviti.

On December 2, 2019, Protiviti was engaged by Bayview to provide various services, two of which were related to data privacy or information security but were unrelated to the Incident. (Ex. A at ¶¶ 7-8). Prior to BakerHostetler engaging Protiviti, Protiviti had not entered into any SOW with Defendants to provide similar work. (*Id.* at ¶ 9).[1]

C.  Plaintiffs have the facts concerning the Incident.

Defendants previously produced an Incident Summary Report which is a summary of the facts identified during the investigation. (Supplemental Declaration of Craig Hoffman, dated November 2, 2023, at ¶ 10, attached hereto as Exhibit C). Further, Lakeview's Rule 30(b)(6) witnesses testified at length regarding the facts surrounding Defendants' security posture, the Incident, Defendants' response to the Incident and the factual findings made by Mandiant and Protiviti. *See, e.g.*, Exhibit D, Norton Tr. at 50:12-52:5, 57:20-58:9, 64:17-65:8, 100:18-101:15;

---

[1] The Mandiant and Protiviti MSAs and SOWs were to be produced during the course of Defendants' rolling productions in this case.

Exhibit E, Wilkey Tr. at 34:16-42:13, 63:13-64:17, 126:12-127:2. Plaintiffs agreed to a stipulation from Defendants that this testimony would apply to the other Defendants. Plaintiffs never asserted that the deponents could not fully answer questions on this topic.

## **LEGAL ANALYSIS**

The Eleventh Circuit has not established a definitive test for the applicability of the attorney work product doctrine. *Goosby v. Branch Banking & Trust Co.*, 309 F. Supp. 3d 1223, 1234 (S.D. Fla. 2018). In the Eleventh Circuit, courts have used either the primary purpose or dual purpose test. *Id.* Under the primary purpose test, a document is protected "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Id.* at 1233 (quoting *U.S. v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981)). With the dual purpose test, "even if a document has some purpose within the ordinary course of business, the document is protected as work product if it is substantially infused with litigation purpose." *Id.* (quoting *Devs. Sur. & Indem. Co. v. Harding Vill., Ltd.*, No. 06-21267CIV, 2007 WL 2021939, at *2 (S.D. Fla. July 11, 200)). This Court has indicated that it "view[s] the issue from a practical standpoint" and looks to whether litigation was one important reason for the creation and use of a document. *Van Calcar v. Royal Caribbean Cruises, Ltd.*, No. 14-20280-CIV-COOKE/TORRES, 2014 WL 12861855, at *3 (S.D. Fla. Nov. 19, 2014); *Button v. Royal Caribbean Cruises, Ltd.*, No. 12-23624-Civ-UNGARO/TORRES, 2013 WL 12064489, at *5 (S.D. Fla. June 25, 2013).

At the hearing, Plaintiffs argued they did not timely challenge Defendants' privilege and work product assertions because they did not know that the Defendants had a relationship with Mandiant and Protiviti prior to the Incident until documents were produced. Thus, Plaintiffs' challenge to Defendants' privilege and work product assertions appears to be premised solely on their assertion that Defendants had a relationship with Mandiant and Protiviti prior to the Incident.

(Transcript of Discovery Hearing on October 19, 2023 at 6:4-23, attached hereto as Exhibit F).

Before the hearing, Plaintiffs submitted an overbroad proposed order that would encompass the reports prepared by Mandiant and Protiviti, all communications between Defendants and Mandiant or Protiviti and counsel, and all internal communications about the work performed by Mandiant and Protiviti. At the hearing, Plaintiffs limited their request to: (1) the written reports prepared by Mandiant and Protiviti; and (2) communications between Defendants and Mandiant and Protiviti that did not include (as author, recipient, or cc) legal counsel. (*Id.* at 6:18-23, 51:8-13). Thus, the issue before the Court is limited to the above categories of documents. Considering Plaintiffs' limitation at the hearing, Defendants agree to undertake a review of the communications between Defendants and Mandiant or Protiviti that do not include counsel to determine if each communication relates to the provision of legal advice and identify such communications in an updated privilege log. Defendants will produce responsive communications between them and Mandiant or Protiviti that <u>do not</u> include counsel and <u>do not</u> pertain to legal advice—*e.g.*, reflect directions by counsel, actions taken at the request of counsel, information sought by counsel, or mental impressions or opinion of counsel.

**A.      The Attorney-Work Product Doctrine Applies.**

The limited relationships with Mandiant and Protiviti detailed herein do not invalidate work product protection. Courts have upheld claims of work product over similar reports. The Court should follow this line of cases because they are more consistent with the Court's own prior precedent and analysis of similar issues (albeit in different factual circumstances).

1.      <u>Case law supports Defendants' assertions of work product.</u>

The decision in *In re Experian Data Breach Litig.* supports Defendants' position. No. SACV 15-01592, 2017 WL 4325583, at * 2-3 (C.D. Cal. May 18, 2017). There, Mandiant had performed work for Experian prior to the data breach which included Mandiant performing an

4

analysis of Experian's systems. *Id.* at *3. But, while Mandiant had previously performed work for Experian, it was outside counsel who hired Mandiant to perform the investigation pertaining to the subject data breach. *Id*. Notwithstanding that Mandiant had previously performed work for Experian, the court found that "Mandiant conducted the investigation and prepared its report for [outside counsel] in anticipation of litigation, even if that wasn't Mandiant's only purpose" and, therefore, it was protected work product. *Id.* at *2.

The decision in *In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.* is also instructive. MDL No. 19-MD-2879, 2021 WL 2660180 (D. Md. June 29, 2021). In *Marriott*, the plaintiffs argued that Marriott could not claim work product over IBM's work relating to a data breach because Marriott had an existing relationship with IBM. *Id.* at *3. The court rejected that argument, finding that because Marriott had retained IBM to provide the services specific to assisting BakerHostetler in providing legal advice to Marriott, the documents related to IBM's investigation were protected attorney work product. *Id.* at *3-6. The fact that IBM's work "yielded a result or results similar to work done before…[could not] negate the universal agreement of the witnesses that Marriott had retained IBM for a specific purpose—to aid [counsel] in his defense of Marriott." *Id.* at *6.

These decisions are in accord with how this Court has analyzed claims of attorney work product over reports following an investigation. *See, e.g.*, *Van Calcar*, 2014 WL 12861855 at *3; *Button*, 2013 WL 12064489 at *5. Like the reports in *Van Calcar* and *Button*, which generated fact work product used by defense counsel, Mandiant's report following its forensic investigation generated fact work product for BakerHostetler to use in providing legal advice. (Ex. B at ¶ 13). Protiviti's report also generated fact work product to be used by BakerHostetler in the legal defense of Defendants. (*Id.* at ¶¶ 15-17). The Mandiant and Protiviti reports are no different than those

prepared by Royal Caribbean in *Val Calcar* and *Button* as far as their intended purpose. The fact that it is possible to ascribe a business purpose to such work is a red herring because a business purpose can be ascribed to any incident reports, as an entity always has a business purpose in understanding how any type of incident occurred.

        2.    <u>The cases relied upon by Plaintiff and *Wengui* are distinguishable.</u>

Plaintiffs rely on *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230 (D. Or. 2017), *In re Capital One Consumer Data Sec. Breach Litig.*, MDL No. 1:19md2915, 2020 WL 3470261, at * 5-6 (E.D. Va. June 25, 2020), and *In re Dominion Dental Servs. USA, Inc. Data Breach Litig.*, 429 F. Supp. 3d 190, 194-95 (E.D. Va. 2019) to support their position. Those cases are distinguishable and Defendants respectfully assert that the better reasoned line of cases are the cases they rely on above.

In *Premera*, the determining factor was not simply the existence of a prior relationship. Instead, it was that Mandiant was continuing to perform the *same* work it had already been performing prior to the data breach and the only thing that changed after the data breach was who supervised Mandiant's work. 296 F. Supp. 3d at 1246. Indeed, it was Mandiant that discovered the existence of malware while reviewing Premera's systems and it was not until three weeks after that discovery that Premera retained counsel and entered into an amended statement of work that "shifted supervision of Mandiant's work to outside counsel." *Id.* at 1245. The court declined to find the attorney-work product doctrine and attorney-client privilege applied simply because the defendant transferred supervision over Mandiant's *on-going* work to outside counsel. *Id.* at 1246.

In *Capital One* and *Dominion*, the defendants had prior agreements with Mandiant to perform the same work it performed after the data breaches at issue and the courts found the defendants had failed to show that the reports would not have been "prepared in a substantially

6

similar form" absent the threat of litigation. 2020 WL 3470261, at * 5-6; 429 F. Supp. 3d at 194-95. The court in *Dominion* also placed great weight on the fact that the defendant had "publicized the retention and work of Mandiant for non-litigation purposes." 429 F. Supp. 3d at 194. There, the courts focused on the fact that the defendants already had executed SOWs with Mandiant to provide the exact same services Mandiant provided after outside counsel's involvement. *Capital One*, 2020 WL 3470261 at *5; *Dominion*, 429 F. Supp. 3d at 194.

Lastly, this Court requested that the Parties address *Wengui v. Clark Hill, PLC*, 338 F.R.D. 7 (D.D.C. 2021). In *Wengui*, the Court had concluded that substantially the same report over which Clark Hill was asserting work product "would have been prepared in any event…as part of the ordinary course of [defendant's] business." *Id.* at 11. But, notably, the defendant did not "quarrel with this general thesis." *Id.* Here, Defendants do not agree with such a thesis. Moreover, the court found that the record before it showed the report was widely shared and used for business purposes, which was a large driving factor for its conclusion. *Id.* at 12. As set forth below, that is not what happened here. The remaining part of the decision in *Wengui* concerned the defendant's argument that it conducted a "two-track investigation," which the court rejected as being unsupported by the record. *Id.* at 11-12. Here, Defendants do not contend that a two-track investigation occurred (this is not a payment card matter where payment card network rules require a separate, non-privileged investigation like in the *Target* case). Nonetheless, through the Bayview Incident Summary, the same effect as a two-track investigation occurred—Plaintiffs have the facts.

      i.    <u>*Premera*, *Capital One*, *Dominion*, and *Wengui* do not suggest Mandiant's report and all of its communications are discoverable.</u>

Unlike in *Premera*, Mandiant was not actively performing work for Defendants for business purposes at the time of the Incident and for which BakerHostetler was later delegated supervisory duties. (Ex. A at ¶ 6). Instead, when Mandiant began its investigation of the Incident,

7

it did so at the direction of Mr. Hoffman from BakerHostetler for the express purpose of assisting Mr. Hoffman in providing legal advice to Defendants in anticipation of litigation and regulatory investigations. (Ex. B at ¶¶ 12-13). Unlike *Capital One* and *Dominion*, the work contemplated by the SOW between Mandiant and Bayview was not identical to the work to be performed under the SOW between Mandiant and BakerHostetler. (*Cf.* Ex. A at Ex. 1 & 3, *with* Ex. B at Ex. 1).

Mandiant was asked to provide factual and expert analysis that it otherwise would not have been providing for the purpose of developing legal advice. Under the SOW executed with counsel, Mandiant was required to produce a "written summary of the incident response results" to BakerHostetler (if requested by counsel) that contained a "supporting analysis." (*Id.*). This is different in scope than the prior SOW that did not contemplate a "supporting analysis" and was limited to a "written detailed *technical* document." (*Id.* (emphasis added)). While Plaintiffs argued that Mandiant's prior SOW includes three services that are also included in the SOW with BakerHostetler, the SOW with BakerHostetler set forth three additional services that included reporting to BakerHostetler findings and recommendations. (*Id.*). The evidence shows that Mandiant provided a report that would not have been prepared in similar form absent anticipated litigation and regulatory investigation.[2] (*Id.*; Ex. C at ¶ 3).

Further, unlike in *Wengui*, Mandiant's report was not used for a wide range of business purposes or widely disclosed. (Ex. C at ¶¶ 7, 9). The Mandiant report was only disclosed to one regulatory or quasi-regulatory entity at their insistence and, therefore, as a matter of necessity and

---

[2] Public policy also supports upholding Defendants' work product claim. Engaging experts who are familiar with Bayview's systems and processes and can hit the ground running should be considered a best practice, not a catch-22 that forces companies to face waiving privilege unless they wait to engage cybersecurity experts until after a data security incident occurs, at which time a company unfamiliar with the impacted systems needs to get up to speed. *See generally In re Shell Oil Refinery*, 134 F.R.D. 148, 150–51 (E.D. La. 1990).

to select members of Bayview's management only once it was demanded by this entity. (*Id.*).[3] The record here is factually distinct from *Wengui*.

      ii.  <u>*Premera*, *Capital One*, *Dominion*, and *Wengui* do not suggest Protiviti's report and all of its communications are discoverable.</u>

Unlike the cases relied on by Plaintiffs, at the time BakerHostetler engaged Protiviti, Protiviti was not performing similar work for Defendants that simply continued under the supervision of BakerHostetler. (Ex. A at ¶ 9). Protiviti was asked by BakerHostetler to provide factual and expert analysis that was entirely different from the earlier services Protiviti provided and resulted in a report that would not have been otherwise prepared. (*See id.*; Ex. C at ¶ 4). Protiviti's report was not widely shared or used for business purposes. (Ex. C at ¶¶ 7, 9). Like the Mandiant report, the Protiviti report was shared with the same entity out of necessity. (*Id.*). The Protiviti report was otherwise only shared with a few, select high-level individuals of Bayview's management for purposes of BakerHostetler providing legal advice. (*Id.*).

    3.  <u>Plaintiffs cannot overcome the protections of the work-product doctrine.</u>

Plaintiffs have the facts underlying the Incident. They cannot demonstrate substantial need for attorney-work product documents or undue hardship resulting from being unable to obtain such documents. If Plaintiffs take issue with the facts provided, they can seek the same underlying forensic data that Mandiant examined and conduct their own investigation. Plaintiffs cannot overcome the work product protection afforded to the reports and communications.

  **B.**  **The Attorney-Client Privilege Applies to Communications Between Defendants and Mandiant and Protiviti.**

The attorney-client privilege precludes disclosures of Mandiant's and Protiviti's

---

[3] This disclosure is not a waiver of the work product privilege. *See Brown v. NCL (Bahamas), Ltd.*, 155 F. Supp. 3d 1335, 1338-40 (S.D. Fla. 2015) (discussing that work product protection is not waived when disclosed consistent with the intent to maintain confidentiality against adversaries).

communications with Defendants that pertain to legal advice, even if those documents do not include counsel. "[I]n general, agents and subordinates working under the direct supervision and control of the attorney are included within the scope of the attorney-client privilege." *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-21511-CIV, 2010 WL 3637958, at *3 (S.D. Fla. Sept. 20, 2010). Thus, communications between a client and professionals retained by an attorney to assist the attorney in providing legal advice are privileged. *See, e.g.*, *In re Int'l Oil Trading Co., LLC*, 548 B.R. 825, 834 (Bankr. S.D. Fla. 2016). Accordingly, communications between Defendants and either Mandiant or Protiviti remain privileged even without the presence of legal counsel if the communications pertain to legal advice. Plaintiffs' request that this Court order Defendants to produce *all* communications between Defendants and Mandiant or Defendants and Protiviti that do not include counsel is overbroad and should be denied.

      **C.**     **Federal Rule of Civil Procedure 26(b)(4)(D) Applies.**

Rule 26(b)(4)(D) protects the facts and opinions held by non-testifying experts retained or specially employed in anticipation of litigation. Fed. R. Civ. P. 26(b)(4)(D). To overcome this rule, Plaintiffs must show "exceptional circumstances under which it is impracticable for the party to obtain facts or opinion on the same subject by other means." *Id.* at 26(b)(4)(D)(ii). Plaintiffs cannot show exceptional circumstances because they can obtain −and have received −the facts regarding the Incident from other sources. Accordingly, this Court should find that Rule 26(b)(4)(D) applies to the facts and opinions held by Mandiant and Protiviti, who are non-testifying experts, as it relates to the work performed at the direction and request of BakerHostetler. *In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, MDL No. 19-MD-2879, 2021 WL 2910541, at *2 (D. Md. July 12, 2021). *See also Culliver v. BP Expl. & Prod., Inc.*, No. 3:21CV4942-MCR-HTC, 2022 WL 19568968, at *5-6 (N.D. Fla. Oct. 13, 2022); *In re Shell*, 134 F.R.D. at 150–51.

Dated: November 2, 2023.   /s/ Julie Singer Brady
Julie Singer Brady
Florida Bar No. 389315
jsingerbrady@bakerlaw.com
BAKER & HOSTETLER LLP
200 South Orange Avenue, Suite 2300
Orlando, FL 32801
Telephone: 407.649.4000
Facsimile: 407.841.0168

Paul Karlsgodt (*pro hac vice*)
PKarlsgodt@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO 80202
Telephone: 303.861.0600
Facsimile: 303.861.7805

Evan M. Mannering (*pro hac vice*)
emannering@bakerlaw.com
BAKER & HOSTETLER LLP
1050 Connecticut Ave, NW, Suite 1100
Washington, DC 20036
Telephone: 202.861.1500
Facsimile: 202.861.1783

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 2, 2023, I electronically filed the foregoing document with the Clerk of the Court by using the Florida E-Filing Portal, which will send a Notice of Electronic Filing to all counsel of record.

/s/ Julie Singer Brady
Julie Singer Brady