UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-CV-20955-GAYLES/TORRES

In re Lakeview Loan Servicing Data Breach
Litigation

_____/

## ORDER

**THIS CAUSE** comes before the Court upon Defendants Lakeview Loan Servicing, LLC ("Lakeview"), Pingora Loan Servicing, LLC ("Pingora"), and Bayview Asset Management LLC's ("Bayview") Motion to Dismiss Consolidated Class Action Complaint and Incorporated Memorandum of Law (the "Motion"). [ECF No. 59]. The Court has reviewed the Consolidated Class Action Complaint, the Motion, and the record and is otherwise fully advised. For the reasons set forth below, the Motion is **GRANTED, in part, and DENIED, in part**.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiffs are a group of mortgagors who allege that Defendants Lakeview and Pingora, loan servicers, failed to secure Plaintiffs' sensitive personally identifiable information ("PII"). [ECF No. 47 ¶ 1]. The PII included names, addresses, loan numbers, and Social Security numbers and, for some, information provided in connection with loan applications, loan modifications, or other items regarding loan servicing. *Id.* ¶ 3. Specifically, Plaintiffs contend that on October 27, 2021, an intruder gained entry to Defendants' network systems, accessed the PII stored therein, and exfiltrated information (the "Data Breach"). *Id.* ¶ 4. The Data Breach resulted in the stolen PII

---

[1] The Court accepts Plaintiffs' allegations set forth in their Consolidated Class Action Complaint (the "Complaint"), [ECF No. 47], as true for purposes of the motion to dismiss. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

of about 4 million customers. *Id.* ¶ 114.

On March 16, 2022 and April 6, 2022, Lakeview and Pingora, respectively, began notifying Plaintiffs and class members of the Data Breach. *Id.* ¶ 6. Plaintiffs allege that the exposed PII can be and, in certain cases, has been sold to other identity thieves or placed on the dark web. *Id.* ¶ 15. A number of Plaintiffs allege to have suffered actual injuries, including identity theft, unauthorized charges, and mitigation expenses, *see, e.g., id.* ¶¶ 20, 152, 194, 209, while the rest of Plaintiffs are at substantial risk of identity theft, *id.* ¶ 540. Bayview is the parent company of Lakeview and Pingora, and the Bayview Security Operations Center operates to protect the Bayview brand and assets, including managing and maintaining security devices. *Id.* ¶¶ 2, 8.

On August 1, 2022, Plaintiffs, and on behalf of all others similarly situated, filed their Complaint against Defendants asserting the following twenty-two (22) counts:

Count I – Negligence (All Plaintiffs and the Class against All Defendants);

Count II – Breach of Contract (All Plaintiffs and the Class against Lakeview);

Count III – Breach of Contract (All Plaintiffs and the Class against Pingora);

Counts IV – Breach of Fiduciary Duty (All Plaintiffs and the Class against Lakeview);

Count V – Breach of Fiduciary Duty (All Plaintiffs and the Class against Pingora);

Count VI – Violation of California's Consumer Record Act (Plaintiffs Crenshaw, Keach, and Saporta and the California Subclass against All Defendants);

Count VII – Violation of California's Consumer Privacy Act (Plaintiffs Crenshaw, Keach, and Saporta and the California Subclass against All Defendants);

Count VIII – Violation of the Unlawful and Unfair Prong of California's Unfair Competition Law (Plaintiffs Crenshaw, Keach, and Saporta and the California Subclass against All Defendants);

Count IX – Violation of the Illinois Consumer Fraud Act (Plaintiff Berg and the Illinois Subclass against Lakeview and Bayview);

Count X – Violation of the Florida Deceptive and Unfair Trade Practices Act (Plaintiffs

Wojciechowski, Scott, and Franke and the Florida Subclass against all Defendants);

Count XI – Violations of the Maryland Consumer Protection Act (Plaintiff McMahon and the Maryland Subclass against Bayview and Lakeview);

Count XII – Violations of the Missouri Merchandising Practices Act (Plaintiff Blando and the Missouri Subclass against Bayview and Lakeview);

Count XIII – Violations of the Indiana Deceptive Consumer Sales Act (Plaintiff Farley and the Indiana Subclass against Bayview and Lakeview);

Count XIV – Violations of the Texas Deceptive Trade Practices – Consumer Protection Act (Plaintiffs Stone, Gonzales, and Myers and the Texas Subclass against Bayview and Lakeview);

Count XV – Violation of the Ohio Residential Mortgage Loan Act (Plaintiff Thomas and the Ohio Subclass against Bayview and Lakeview);

Count XVI – Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Plaintiff Kraus and the Pennsylvania Subclass against Bayview and Pingora);

Count XVII – Violations of the Tennessee Identity Theft Deterrence Act of 1999 (Plaintiff Burnett and the Tennessee Subclass against Bayview and Lakeview);

Count XVIII – Violations of the Tennessee Consumer Protection Act of 1977 (Plaintiff Burnett and the Tennessee Subclass against Bayview and Lakeview);

Count XIX – Violations of the Georgia Security Breach Notification Act (Plaintiff Hamilton and the Georgia Subclass against Bayview and Lakeview);

Count XX – Violations of New York General Business Law (Plaintiff Sevak and the New York Subclass against Bayview and Lakeview);

Count XXI – Violations of Information Security Breach and Notification Act (Plaintiff Sevak and the New York Subclass against Bayview and Lakeview); and

Count XXII – Declaratory Judgment and Injunctive Relief (All Plaintiffs and the Class against all Defendants)

*See* [ECF No. 47].

On September 1, 2022, Defendants moved to dismiss the Complaint, arguing that certain Plaintiffs lack standing and that each count fails to state a claim. [ECF No. 59]. Specifically,

Defendants contend that named Plaintiffs Derek Crenshaw, John McMahon, Shannon Thomas, Mathew Myers, and Jay Saporta fail to plausibly allege an injury in fact because, unlike the other named Plaintiffs, they do not allege actual identity theft. *Id.* Instead, those Plaintiffs allege other injuries such as having their PII on the dark web and mitigation expenses that, according to Defendants, are not concrete harms for the basis of Article III standing. *Id.* Defendants further argue, among other things, that Plaintiffs fail to properly identify which Defendant is responsible for which alleged act, Plaintiffs fail to properly allege that they are "customers" under the respective state consumer protection laws, and many of the counts that are sound in fraud fail to comply with Rule 9(b)'s heightened pleading standard. *Id.*

In opposition, Plaintiffs Crenshaw, McMahon, Thomas, Myers, and Saporta argue that they have established Article III standing because the availability of their PII on the dark web establishes a present injury and a substantial risk of future injury. [ECF No. 71]. Next, because each Plaintiff was required to exchange his/her PII for loan servicing, Plaintiffs contend they were customers of Defendants. *Id.* Plaintiffs also contend that each count is adequately pled. *Id.* Finally, Plaintiffs concede, in light of Defendants' arguments, that Count XIX (Violations of the Georgia Security Breach Notification Act), Count XXI (Violations of the New York Information Security Breach and Notification Act), and Count XVII (Violations of the Tennessee Identity Theft Deterrence Act) warrant dismissal. *Id.* at n.1.

## LEGAL STANDARD

"[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). To establish Article III constitutional standing, "the plaintiff must show an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and 'that is likely to be redressed by a favorable

judicial decision.'" *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017) (quoting *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016)). The "irreducible constitutional minimum of standing" requires an "injury in fact" that is both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted).

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (internal quotation and citation omitted). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Therefore, a complaint that merely presents "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.* (internal quotation omitted).

## DISCUSSION

I. **Plaintiffs' Standing**[2]

Before the Court can discuss whether each of the Complaint's twenty-two counts state a viable claim, the issue of standing must be addressed. "For purposes of the concrete injury analysis under Article III, [the Eleventh Circuit has] recognized three kinds of harm: 1) tangible harms, like physical or monetary harms; 2) intangible harms, like injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts; and, finally, 3) a material risk of future harm when a plaintiff is seeking injunctive relief." *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 888 (11th Cir. 2023). Defendants argue that Plaintiffs Crenshaw, McMahon, Thomas, Myers, and Saporta lack standing because their allegations of emotional distress, PII on the dark web, mitigation efforts, increased spam calls, and loss of privacy are not concrete. Conversely, Plaintiffs argue that while those five Plaintiffs have not yet experienced identity theft, the allegations of actual identity theft by other named Plaintiffs and having the PII of these five Plaintiffs on the dark web create a substantial risk of future harm. The Court agrees with Plaintiffs.

Eleventh Circuit precedent is clear: "[t]he actual identity theft already suffered by some [p]laintiffs further demonstrates the risk of identity theft all [p]laintiffs face." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021). Here, some of the named Plaintiffs allege actual injuries resulting from the Data Breach, including unauthorized credit card charges, identity theft, and unauthorized opening of bank accounts. [ECF No. 47 ¶¶ 149–151, 181, 194]. Though the five Plaintiffs at issue have not experienced such

---

[2] Plaintiff Derek Crenshaw, along with Plaintiffs Cathryne Fera, Judith Cefaly, Julia Franke, Kristine Milewski, and Emily Holt, filed a Notice of Voluntary Dismissal of their individual claims after the Motion was filed. [ECF No. 104].

injuries, they do allege that the third-party hacker obtained the PII of about 4 million customers and that the exposed PII can be and, in certain cases, has been sold to other identity thieves or on the dark web. *Id.* ¶¶ 14–16,114, 120, 484. Such allegations are sufficient to show that the risk of identity theft and fraud is material and imminent. *In re Equifax*, 999 F.3d 1262–63. Additionally, the Eleventh Circuit has also held that exposure of one's PII on the dark web shows a present injury as well. *Green-Cooper,* 73 F.4th at 889–890. Thus, the Court finds that all Plaintiffs here have standing.

## II.  Negligence Claim (Count I)

To properly allege negligence under Florida law, Plaintiffs must allege that "(1) [D]efendants owe [P]laintiffs a duty, (2) [D]efendants breached the duty, (3) [D]efendants' breach injured Plaintiffs, and (4) [P]laintiffs' damage was caused by the injury to the [Plaintiffs] as a result of the [Defendants'] breach of duty." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012) (internal quotation and citation omitted). Here, Plaintiffs allege both negligence and negligence *per se* in Count I of their Complaint. Specifically, Plaintiffs allege that Defendants breached their common law duty to exercise reasonable care in safeguarding Plaintiffs' PII, resulting in the Data Breach. [ECF No. 47 ¶¶ 560–86]. Additionally, Plaintiffs assert that Defendants violated the Federal Trade Commission Act (the "FTC Act") by failing to use reasonable measures to protect PII and not complying with applicable industry standards. *Id.* ¶ 588. In response, Defendants argue that Plaintiffs' negligence claims fail for three reasons: (1) Plaintiffs fail to allege any actual damages; (2) there is no private right of action under the FTC Act to support a negligence *per se* claim; and (3) Plaintiffs' negligence claims fail to allege which acts or omissions were committed by which Defendant. [ECF No. 59 at 6].

At the October 26, 2023 Motion to Dismiss Hearing, Plaintiffs conceded that there is no private right of action under the FTC Act and, therefore, do not plan to proceed on their negligence

*per se* claim. [ECF No. 134]. As to their standard negligence claim, Plaintiffs allege injuries such as exposure of ones' PII on the dark web, unauthorized charges, actual identity theft, mitigation expenses, and substantial risk of future harm. The Court finds that "a reasonable jury could conclude that the injuries discussed in the standing context translate to actual harm in the negligence context." *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1224 (S.D. Fla. 2022).

However, the Court agrees with Defendants' argument that Plaintiffs fail to distinguish which Defendants are responsible for certain acts or omissions in their Complaint. For example, Plaintiffs allege that "Defendants, through their actions and inaction, unlawfully breached their duties to Plaintiffs and the Class by failing to implement industry protocols and exercise reasonable care." [ECF No. 47 ¶ 579]. Plaintiffs do not specifically allege how each Defendant is responsible for its acts or omissions. Plaintiffs must specify which Defendant committed which alleged act and/or breach. *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275, 2022 WL 796367, at *7 (S.D. Fla. Mar. 15, 2022) (dismissing plaintiffs' negligence claim because, among other things, "[p]laintiffs fail[ed] to make clear *which* Defendants are responsible for certain acts or omissions"). As Plaintiffs' negligence claim fails for these reasons, Count I shall be dismissed.

### III.   Breach of Implied Contract Claims (Counts II and III)

Plaintiffs allege that Lakeview and Pingora, respectively, breached their implied contract with Plaintiffs by failing to protect Plaintiffs' PII. [ECF No. 47 ¶¶ 579–623]. Specifically, Plaintiffs assert that when Lakeview and Pingora acquired Plaintiffs' PII, there was a meeting of the minds and mutual understanding that Lakeview and Pingora would safeguard the PII and not take unjustified risks when storing the PII. *Id.* ¶¶ 600, 614. Defendants argue that Plaintiffs fail to allege the existence of an implied contract with either Lakeview or Pingora because they do not

8

(1) allege consideration, (2) plausibly allege a meeting of the minds, and (3) provide a basis for inferring acceptance. [ECF No. 59 at 8–9]. As to which state law applies to Plaintiffs' breach of implied contract claims, the Court agrees with Plaintiffs that there is no conflict between Colorado and Florida law.[3] Thus, only one analysis, under Florida law, is required.

"A contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words." *Gem Broad., Inc. v. Minker*, 763 So. 2d 1149, 1150 (Fla. 4th DCA 2000). In its contract analysis, the Court must consider "the effect which the parties, as fair and reasonable men, presumably would have agreed upon if, having in mind the possibility of the situation which has arisen, they had contracted expressly in reference thereto." *Bromer v. Fla. Power & Light Co.*, 45 So. 2d 658, 660 (Fla. 1949) (internal quotation and citation omitted).

In similar data breach cases, there is a split among federal courts as to whether an implied contract is formed where a consumer is required to give personal information in order to receive services. *Compare In re Brinker Data Incident Litig.*, No. 3:18-CV-686-J-32MCR, 2020 WL 691848, at *5 (M.D. Fla. Jan. 27, 2020) (holding plaintiffs' allegations that defendant "solicited and invited" them to "eat at its restaurants and make purchases using their credit or debit cards" sufficient to allege an implicit agreement that defendant would protect sensitive credit card information) (internal quotation omitted), *Torres v. Wendy's Int'l, LLC*, No. 16-210, 2017 WL 8780453, at *3 (M.D. Fla. Mar. 21, 2017) (holding plaintiff's allegations that "defendant invited

---

[3] Defendants argue that the breach of implied contract claim against Lakeview is under Florida law, while the claim against Pingora is under Colorado law. [ECF No. 59 at 8–9]. Plaintiffs argue that both breach of implied contract claims are under Florida law, but in any event, there is no conflict. [ECF No. 71 at n.6]. To state a claim for breach of contract under Florida law, a plaintiff must allege: (1) the existence of a contract; (2) breach of the contract; and (3) damages resulting from the breach. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2007). Under Colorado law, "a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

9

its customers to pay for their purchases with credit cards containing confidential information" sufficient to allege an implicit agreement to "protect its customers' confidential information as a reasonable and prudent merchant would"), *and Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1187 (M.D. Fla. 2022) (agreeing with the analysis in *In re Brinker*); *with Brush v. Miami Beach Healthcare Grp. Ltd.,* 238 F. Supp. 3d 1359, 1369 (S.D. Fla. 2017) (finding there was no implied contract where plaintiff contracted to receive healthcare services, not data security specifically), *and In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d at 1221 (finding no implied contract because plaintiffs alleged no invitation or solicitation by defendants indicating that defendants implicitly assented to secure their personal information in exchange for payment of healthcare services).

Like *Brush* and *In re Mednax Servs.*, Plaintiffs here do not allege that Lakeview and/or Pingora solicited Plaintiffs' business or invited Plaintiffs to purchase loan servicing. Instead, Plaintiffs allege that their PII was provided in connection with a loan application and as required to receive loan servicing. [ECF No. 47 ¶ 3]. Additionally, unlike *In re Brinker* and *Torres,* Plaintiffs are one step removed from Lakeview and Pingora as customers because their PII was provided to Lakeview and Pingora indirectly through Plaintiffs' mortgage lenders. *Id.* ¶ 123. Thus, Plaintiffs did not even choose Lakeview and/or Pingora to provide loan servicing, Plaintiffs' lenders did. Based on these factual allegations, the Court cannot infer "the mutual assent and meeting of the minds required to form an implied contract for data security services based on the parties' conduct." *In re Mednax Servs.*, 603 F. Supp. 3d at 1222. As such, the Motion is granted as to Counts II and III.

### IV. **Breach of Fiduciary Duty Claims (Counts IV and V)**

In Counts IV and V, Plaintiffs allege that Lakeview and Pingora, respectively, breached the fiduciary duty owed to Plaintiffs by failing to (1) act in good faith, fairness, and honesty, (2) act with the highest and finest loyalty, and (3) protect the private information of Plaintiffs. [ECF No. 47 ¶¶ 627, 635]. Plaintiffs and Defendants disagree as to which state law applies, with Plaintiffs arguing that Florida law applies and Defendants arguing that Delaware law applies. Even applying Florida law, Plaintiffs still fail to state a claim of breach of fiduciary duty. To state a claim for breach of fiduciary duty, a plaintiff must plausibly allege "(1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages proximately caused by the breach." *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1338 (S.D. Fla. 2011) (citing *Gracey v. Eaker*, 837 So. 2d 348 (Fla. 2002)). "Under Florida law, a fiduciary relationship exists where confidence is reposed by one party and a trust accepted by the other." *Id*. (citing *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002)).

A "fiduciary relationship" is one that "may be implied by law, and such relationships are 'premised upon the specific factual situation surrounding the transaction and the relationship of the parties.'" *Evans,* 814 So. 2d at 374–75 (quoting *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994)). "Florida courts have construed the term 'fiduciary or confidential relation' as being very broad." *Linville v. Ginn Real Estate Co., LLC*, 697 F. Supp. 2d 1302, 1309 (M.D. Fla. 2010). But courts typically do not construe business or "arm's-length" relationships— such as those created through contract—as implying a fiduciary duty "because there is no duty imposed on either party to protect or benefit the other." *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005) (holding no fiduciary relationship was implied in law where no allegations of dependence nor of "recognition, acceptance or undertaking

11

of the duty to advise, counsel, protect, or benefit" the weaker party existed). "[A] party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Id.*

The Court finds that the transaction between Plaintiffs and Defendants Lakeview and Pingora was an arm's-length, commercial transaction. The fact that Lakeview and Pingora acquired Plaintiffs' PII does not elevate the relationship between a mortgagor and loan servicer to that of a fiduciary and a beneficiary. *In re Mednax Servs.*, 603 F. Supp. 3d at 1226 ("[T]he mere receipt of confidential information is insufficient by itself to transform an arm's-length transaction into a fiduciary relationship."). Furthermore, Plaintiffs' allegation that they placed their trust in Lakeview and Pingora does not establish that a fiduciary relationship exists sufficient to withstand a motion to dismiss. [ECF No. 47 ¶¶ 626, 634]. "[O]ne may not unilaterally impose a fiduciary responsibility on another simply by reposing trust; absent some conscious acceptance of such duties, no fiduciary relationship is created." *Silver v. Countrywide Home Loans, Inc.,* 760 F. Supp. 2d 1330, 1339 (S.D. Fla. 2011). There are no allegations that Lakeview and/or Pingora explicitly accepted the trust of Plaintiffs and willingly stepped into the role of advisor and/or counselor.

Plaintiffs have not alleged any special circumstances that would impose a fiduciary duty upon Lakeview and Pingora. Thus, the Motion is granted as to Counts IV and V.

V.    **Consumer Fraud Claims (Counts IX, XI, XII, XIII, XIV, XV, and XVIII)**

Counts IX, XI, XII, XIII, XIV, XV, and XVIII are sounded in fraud and, therefore, are subjected to a heightened pleading standard. Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see, e.g., Inman v. Am. Paramount Fin.*, 517 F. App'x 744, 748 (11th Cir. 2013). The particularity rule alerts "defendants to the 'precise misconduct with which they are charged' and protect[s] defendants 'against spurious charges of

immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). "The application of the rule, however, must not abrogate the concept of notice pleading." *Id*. Rule 9(b) is satisfied if the complaint states:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotation marks omitted). Furthermore, "[a] bare allegation of reliance on alleged misrepresentations, bereft of any additional detail, will not suffice under Rule 9(b)." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019) (affirming the district court's dismissal of the plaintiffs' fraud claims because they "failed to allege with particularity the manner in which they relied on the defendants' statements").

Here, Defendants argue that Plaintiffs' fraud claims fail because Plaintiffs offer only vague and conclusory allegations that Defendants failed to implement adequate data security and concealed the alleged failure. [ECF No. 59 at 15, 18–22, 25]. The Court agrees. In their consumer fraud claims, Plaintiffs fail to identify the specific misrepresentations and omissions at issue[4] and which Defendant made them. For example, Plaintiffs allege that "Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment and omission of material facts", [ECF No. 47 ¶¶ 677]; "[Defendants] affirmatively promised that they would maintain adequate security", *id.* ¶ 733; and "Defendants' representations were false and misleading", *id.* ¶ 713. Similar allegations

---

[4] The Court is cognizant that Plaintiffs argue that Lakeview's Privacy Policy can be understood as an affirmative representation. [ECF No. 71 at 12, 33]. However, in each count, Plaintiffs fail to identify which statements in the Privacy Policy were misrepresentations and who made them. Furthermore, Lakeview's Privacy Policy would not apply to Pingora or Bayview.

13

were made throughout the remaining consumer fraud claims. *See id.* ¶¶ 724, 748, 761, 797. At no point, however, do Plaintiffs specify which Defendant engaged in the deceptive practices or which Defendant affirmatively made false promises. Plaintiffs also fail to allege how any of the misrepresentations or omissions informed their decision to receive loan servicing from Defendants. *Fernau v. Enchante Beauty Prod., Inc.*, 847 F. App'x 612, 623 (11th Cir. 2021) (finding that fraud claims fail where plaintiffs "have failed to allege with particularity the manner in which they relied on the defendants' statements and omissions") (internal quotation and citation omitted).

Similarly, Plaintiffs generally allege that Defendants failed to disclose or omitted material facts to Plaintiffs about their lack of adequate data security, their inability or unwillingness to properly secure and protect Plaintiffs' PII, and their failure to comply with the requirements of relevant federal and state laws. *See, e.g.,* [ECF No. 47 ¶¶ 677, 712, 724, 796]. However, these allegations are also insufficient because Plaintiffs do not identify what data security information should have been provided to Plaintiffs or which federal and state laws Defendants violated. Therefore, the Motion is granted as to Counts IX, XI, XII, XIII, XIV, XV, and XVIII.

**VI.**     **Unfair and Unlawful Practices Claims (Counts VI, VII, VIII, X, XVI, and XX)**

Plaintiffs' unfair and unlawful practices claims also fail for the same reason discussed above: the lack of distinction between Defendants. Though Federal Rule of Civil Procedure 8 only requires "a short and plain statement of the claim showing that the pleader is entitled to relief, [i]f the complaint indiscriminately groups the defendants together, it fails to comply with the minimum standard of Rule 8." *Joseph v. Bernstein*, 612 F. App'x 551, 555 (11th Cir. 2015). Lumping Defendants together "creates confusion and makes the analysis [of the Complaint] unnecessarily

burdensome." *Ct. Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, No. 05-60080CIV, 2008 WL 926512, at *4 (S.D. Fla. Mar. 31, 2008).

Here, Plaintiffs make no distinction between Lakeview, Pingora, and Bayview and merely lump them together in each claim, providing no factual basis to distinguish their conduct. At no point do Plaintiffs allege that Defendants are agents or instrumentalities of one another. As such, it is necessary for Plaintiffs to properly allege which Defendant is responsible for which alleged act to prevent confusion. *Id.* at 5 (dismissing the complaint as to one of the defendants due to the lack of specific, individualized allegations). Thus, the Motion is granted as to Counts VI, VII, VIII, X, XVI, and XX.

### VII. Declaratory Judgment and Injunctive Relief Claim (Count XXII)

To state a claim for relief under the Declaratory Judgment Act, Plaintiffs must adequately allege a dispute that is: (1) "definite and concrete, touching the legal relations of parties having adverse legal interests"; (2) "real and substantial"; and (3) "admit[ting] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007). "An essential element for a declaratory judgment action is the existence of an 'actual controversy' between the parties, a term which holds the same meaning as the cases and controversies requirement of Article III to the United States Constitution." *Sprint Sols., Inc. v. 4 U Cell, LLC*, No. 2:15-CV-605-FTM-38CM, 2016 WL 1244528, at *2 (M.D. Fla. Mar. 30, 2016). "[A]n 'actual controversy' exists where 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 151 F. Supp. 3d 1294, 1302 (M.D. Fla. 2015) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co*., 312 U.S. 270, 273 (1941)); *see*

*also Nat'l Gen. Ins. Online, Inc. v. Black,* 5:15-CV-111-OC-30PRL, 2015 WL 7777533, at *2 (M.D. Fla. 2015) ("A potential claim need not mature to the level of a lawsuit to qualify as a 'substantial controversy' of 'sufficient immediacy.'").

Plaintiffs seek a declaration that (1) each of Defendants' security measures failed to comply with their duties to provide reasonable security procedures to protect Plaintiff's PII and (2) Defendants are obligated to implement certain reasonable security measures to comply with their duties of care. [ECF No. 47 ¶ 841]. Defendants argue that Plaintiffs' claim for declaratory judgment should be dismissed because the Declaratory Judgment Act does not create an independent cause of action. [ECF No. 59 at 27–28]. In opposition, Plaintiffs argue that because they have adequately pled claims for relief against Defendants, their declaratory judgment claim should be allowed to proceed. [ECF No. 71 at 37].

Here, the Complaint alleges that there is an actionable dispute between Plaintiffs and Defendants regarding the duty to properly secure Plaintiffs' PII, which remains in the possession of Defendants. [ECF No. 47 ¶¶ 836–37]. Plaintiffs allege that Defendants' continued failure to implement adequate security measures will likely lead to another security breach and further exposure of Plaintiffs' PII. *Id.* ¶¶ 838–840. Given that the Data Breach has already occurred and Defendants continue to possess Plaintiffs' PII, Plaintiffs have sufficiently alleged a claim for declaratory relief. *See In re Cap. One Consumer Data Sec. Breach Litig.,* 488 F. Supp. 3d 374, 414–15 (E.D. Va. 2020) (finding, in a similar data breach case, that plaintiffs' allegations of defendants' inadequate security practices and continued storage of personal information were sufficient to state a claim for declaratory relief). Thus, the Motion is denied as to Count XXII.

## CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants Lakeview Loan Servicing, LLC, Pingora Loan Servicing, LLC, and Bayview Asset Management LLC's Motion to Dismiss Consolidated Class Action Complaint and Incorporated Memorandum of Law, [ECF No. 59], is **GRANTED, in part, and DENIED, in part,** as follows:

    a. GRANTED as to Counts I–XXI , and

    b. DENIED as to Count XXII; and

2. Counts I–XXI of Plaintiffs' Consolidated Class Action Complaint, [ECF No. 47], are **DISMISSED without prejudice**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 15th day of December 2023.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:   All Counsel of Record