UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-20955-DPG

| | |
|---|---|
| In re Lakeview Loan Servicing Data Breach Litigation | Judge: Hon. Darrin P. Gayles<br>Hon. Edwin G. Torres |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO UNITED DATA TECHNOLOGIES, INC.'S MOTION TO QUASH THIRD-PARTY SUBPOENA OR FOR A PROTECTIVE ORDER**

Plaintiffs, by and through their undersigned counsel, pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, submit this Response in Opposition to United Data Technologies, Inc.'s Motion to Quash Third-Party Subpoena or for a Protective Order ("Motion to Quash" or "Mot."). ECF No. 165.

Between October and December of 2021, Bayview Asset Management LLC, Lakeview Loan Servicing, LLC, Pingora Loan Servicing, LLC, and Community Loan Servicing, LLC (the "Bayview Defendants") experienced a cyber intrusion into their shared computer network that resulted in the disclosure of the confidential personal information of approximately five million individuals throughout the United States (the "Data Breach"). Since at least September 2018, the Bayview Defendants have contracted with United Data Technologies, Inc. ("UDT") to perform myriad information technology services. *See* BAYVIEW000170316, at -334. During that time—which encompasses the period before and after the Data Breach—UDT was responsible for auditing the Bayview Defendants' data security policies and practices. As a result, both before and after the breach, UDT oversaw a data migration project where it performed a "[f]ull [e]nd to [e]nd [a]ssessment of all [i]nfrastructure, [n]etwork equipment, [a]pplication and [d]atabases in plans for [d]ata [c]enter [r]elocations." BAYVIEW000037745. And following the breach, UDT was

1

separately engaged by the Bayview Defendants to "[p]erform the on-going network device monitoring and patching." BAYVIEW000016553.

Given the facial relevance of Bayview-related documents in UDT's possession, on January 12, 2024, Plaintiffs served UDT with a subpoena seeking documents related to the Data Breach and the Bayview Defendants' data policies and practices. On February 1, 2023, Plaintiffs and UDT met and conferred regarding the scope of the subpoena. Plaintiffs offered to work with UDT to narrow the requests and/or work on search terms to address any concerns as to overbreadth and burden. But UDT declined to do so, and stated it intended to file a motion to quash instead.

The following day, UDT filed its Motion to Quash and, in support thereof, contends the subpoena: (1) is overbroad and unduly burdensome; (2) seeks confidential information; and (3) seeks information discoverable from the Bayview Defendants. But Plaintiffs' document requests are narrowly tailored to information relating to the Data Breach and the information technology services UDT provided before and after the incident. Moreover, UDT's confidentiality concerns are unfounded as the production of documents in this action is governed by the Stipulated Protective Order (ECF No. 69), and there is no danger that any documents will be produced to UDT's or the Bayview Defendants' competitors. Finally, Plaintiffs have taken "reasonable steps" to seek this information from the Bayview Defendants and thereby, "avoid imposing an undue burden or expense" on UDT. *See* Fed. R. Civ. P. 45(d)(1). The Motion to Quash should therefore be denied.

## BACKGROUND

Since filing suit against the Bayview Defendants on March 29, 2022, Plaintiffs have engaged in substantial discovery efforts, and the Bayview Defendants have produced over 96,000 documents. Absent from the Bayview Defendants' production, however, are documents and

information relating to the relationship between the Bayview Defendants and UDT, such as: any master service agreements entered into by UDT and the Bayview Defendants; any presentations, work product, or supporting materials UDT created, used, or provided in carrying out its information technology services for the Bayview Defendants; and any communication UDT had with government entities regarding the Data Breach. Plaintiffs have repeatedly identified the absence of these documents and requested them directly from the Bayview Defendants. But the Bayview Defendants have repeatedly declined to produce the documents.

Finally, on December 21, 2023, in a final attempt to seek this discovery from the Bayview Defendants, Plaintiffs sent copies of the UDT subpoena (among others) to the Bayview Defendants and requested that they produce the documents requested in the subpoena that were responsive to previously served Rule 34 requests for production. But the Bayview Defendants did not acknowledge any deficiency in their production and declined to produce the documents. Accordingly, Plaintiffs served the subpoena on UDT in early January 2024.

On February 1, 2024, counsel for UDT met and conferred with counsel for Plaintiffs and indicated that UDT intended to move to quash the subpoena on the grounds that it was overbroad, unduly burdensome, and that a Master Service Agreement ("MSA") between UDT and the Bayview Defendants prevented UDT from disclosing certain categories of documents. Plaintiffs directed UDT to the Stipulated Protective Order, ECF No. 69, which, as it relates to confidential nonparty information, provides: "[t]he Receiving Party shall not disclose or permit the disclosure" of "proprietary or competitively sensitive information" designated as "Highly Confidential." *See id.* at ¶¶ 16, 25-34. Plaintiffs separately offered to discuss narrowing the requests or agreeing to ESI search terms to address any concerns of overbreadth or burden, but counsel for UDT declined to further engage with Plaintiffs, stating that UDT needed judicial guidance on the issue of the

3

confidentiality provisions in the MSA. On February 2, 2024, UDT filed its Motion to Quash. ECF No. 165.

## LEGAL STANDARD

In moving to quash a subpoena, "the burden is on the objecting party to demonstrate with specificity how an objected-to request is unreasonable or unduly burdensome." *Fed. Trade Comm'n v. Simple Health Plans LLC*, No. 18-62593-CIV, 2019 WL 7371812, at *3 (S.D. Fla. Nov. 19, 2019) (citing to *Rossbach v. Rundle*, 128 F. Supp. 3d 1348, 1354 (S.D. Fla. 2000)). Importantly, "boilerplate objections and generalized responses stating, for example, that a request is 'overly broad, or unduly burdensome' are without merit." *Id*. (citing to *Alhassid v. Bank of America*, 2015 WL 1120273, at *2 (S.D. Fla. March 12, 2015)). Where a motion to quash is premised on a confidentiality agreement or an objection to producing trade secrets, the moving party must demonstrate both that proprietary information is at issue and that the producing party will be harmed by its disclosure to competitors. *Cytodyne Techs., Inc. v. Biogenic Techs., Inc.*, 216 F.R.D. 533, 536 (M.D. Fla. 2003). Ultimately, a court considering a motion to quash a subpoena must weigh the interests served by quashing the subpoena against the interests served by enforcing it. *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1342 (11th Cir. 2020). Where a court determines that a subpoena is overbroad, as an alternative to quashing a subpoena it may instead issue a protective order that limits production to information relevant to the dispute. *Barrington v. Mortage IT, Inc.* 2007 WL 4370647 (S.D. Fla. 2007).

## ARGUMENT

I.   **Plaintiffs' Requests are Neither Overbroad Nor Unduly Burdensome.**

UDT's argument that the subpoena should be quashed due to concerns of overbreadth and burden is unavailing for two reasons. First, the subpoena contains only six narrowly tailored requests that seek only documents related to services that UDT performed or offered to perform

4

for the Bayview Defendants, documents relating to the Bayview Defendants' data security compliance efforts, and the Data Breach itself. *See* Mot., Ex. B, pp. 10-11. Indeed, the examples cited by UDT in its Motion, *i.e.*, "services UDT merely offered to provide to Bayview before the Data Breach; recommendations as to IT systems," are facially relevant to the question of whether the Bayview Defendants adopted reasonable security measures before and after the Data Breach. *See* Mot. at 4. For example, if UDT recommended that the Bayview Defendants take certain industry standard security precautions and Bayview declined to do so, such information is relevant to the question of whether the Bayview Defendants complied, or continue to comply, with their duty to reasonably secure the PII in their possession from unauthorized access.

Second, the requests seek clearly relevant information and are therefore well within the bounds of discovery under Rule 26, and by extension Rule 45, which are broad and permit a subpoena to be quashed only if it calls for "clearly irrelevant matters." *Sunshine Shredding, LLC v. Proshred Franchising Corp.*, No. 11-22432-MC, 2011 WL 4591935, at *2 (S.D. Fla. Sept. 30, 2011) (cleaned up); *see also Digital Assur. Certification, LLC v. Pendolino*, 6:17-cv-72, 2017 WL 4342316, at *8 (M.D. Fla. Sept. 29, 2017) ("The scope of discovery under Rule 45 is the same as the scope of discovery under Federal Rule of Civil Procedure 26."). The Court need not determine the admissibility of documents prior to trial or quash a subpoena demanding their production if there is any good ground on which they might be relevant. *See* 9A Wright & Miller, Federal Practice & Procedure: Civil 3d § 2459 (2008). Courts construe relevance "broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Daly v. Markel Serv., Inc.*, No. 21-62056-CIV, 2022 WL 21835384, at *2 (S.D. Fla. Oct. 14, 2022) (cleaned up). Although the discovery sought from UDT directly relates to Plaintiffs' allegations in this case, discovery is not limited to issues raised by the

pleadings because "discovery itself is designed to help define and clarify the issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Grayson v. No Labels, Inc.*, No. 6:20-CV-1824-PGB-LRH, 2021 WL 8199894, at *3 (M.D. Fla. Nov. 17, 2021) ("The Federal Rules of Civil Procedure strongly favor full discovery whenever possible."). The information technology services that UDT provided to the Bayview Defendants before and after the Data Breach are relevant to the question of whether the Bayview Defendants' data security posture was inadequate and/or continues to be inadequate. Therefore, the requests are relevant to Plaintiffs' claims.

UDT argues that the temporal scope of the subpoena is overbroad. But the Data Breach took place between October and December 2021, and the subpoena asks for documents beginning in October 2019, only two years prior. *See* ECF No. 165-2 at 10. Importantly. the Bayview Defendants had contracted UDT as an information technology vendor since at least September 2018, making the work it performed (or did not perform) directly relevant to the case. *See* BAYVIEW000170316, at -334; *Suffolk Constr. Co., Inc. v. Edenburg Hosp., Inc.*, No. 1:22-CV-20431-KMM, 2022 WL 19330700, at *2 (S.D. Fla. Dec. 30, 2022) ("[I]t does not necessarily follow that the subpoena is overbroad by seeking production of documents from before the Parties entered into the subcontract, as some of the documents requested may have been created before the Parties entered into the subcontract."). Here, the nature of the Bayview Defendants' data security practices preceding the date of the breach fall well within the limits of Rules 26(b)(1) and 45. Moreover, Plaintiffs seek declaratory and injunctive relief, which require them to not only show that the Bayview Defendants' past data security practices were inadequate, but that they continue to be so. ECF No. 144 at 16 (citing to *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 414–15 (E.D. Va. 2020) (finding, in a similar data breach case, that plaintiffs' allegations of defendants' inadequate security practices and continued storage of personal

information were sufficient to state a claim for declaratory relief)). Accordingly, because the subpoena is restricted to the period during which UDT provided information technology services for the Bayview Defendants, the temporal scope of the document requests is properly constrained. *Feingold v. Cardinale*, No. 22-CV-20375, 2023 WL 4763149, at *2, 4 (S.D. Fla. Apr. 25, 2023) (noting that a subpoena limited in scope to the three-year period during which the parties had a relationship was sufficiently narrow).

Finally, it is disingenuous for UDT to complain about overbreadth – Plaintiffs offered to meet and confer with UDT to narrow the requests or neg7otiate search terms and address any concerns of burden or overbreadth, but UDT declined and instead filed its Motion. Accordingly, UDT cannot now insist that the requests are overbroad or unduly burdensome when it was offered the opportunity to address those concerns. *See Classic Soft Trim, Inc. v. Albert*, No. 618CV1237ORL40GJK, 2019 WL 11073334, at *3 (M.D. Fla. Apr. 12, 2019) (finding document requests relevant and proportional where plaintiffs had offered to provide accommodations to the non-party). If the Court denies UDT's Motion, Plaintiffs will confer with UDT in detail about the potential burden presented by Plaintiffs' requests, and will work with UDT to navigate it.

II. **Any Information UDT Produces is Protected from Disclosure by the Stipulated Protective Order, and UDT has Failed to Satisfy its Burden to Demonstrate That the Requested Documents are Protected or That it Would be Harmed by Their Disclosure to Plaintiffs.**

UDT's reliance on the MSA to support its Motion fails to acknowledge that "[t]here is no 'absolute privilege' for trade secrets and similar confidential business information[.]" *Id*. at *2 (quoting *United States ex rel. Willis v. SouthernCare, Inc.*, No. CV410-124, 2015 WL 5604367, at *3 (S.D. Ga. Sept. 23, 2015)).[1] As the moving party, UDT bears the burden of showing that

---

[1] Courts reviewing Rule 45 subpoenas regularly hold that the federal judicial branch's subpoena power overrides private contractual duties. *See, e.g.*, *B.L v. Schuhmann*, No. 3:18-CV-151-RGJ-CHL, 2020 WL 3145692, at *3 (W.D. Ky. June 12, 2020) (refusing to quash subpoena because

7

"compliance with the subpoenas requires the disclosure of privileged or protected information or that compliance presents an undue burden." *Fadalla v. Life Auto. Prod.*, Inc., 258 F.R.D. 501, 504 (M.D. Fla. 2007). "Only after such a showing is made does the burden shift to the party seeking the discovery to show the information sought is relevant and necessary." *Am. Standard Inc. v. Humphrey*, No. 306-CV-893J-32MCR, 2007 WL 1186654, at *3 (M.D. Fla. Apr. 19, 2007).

Accordingly, UDT must first demonstrate that the requested information implicates "trade secrets" and, second, that its disclosure would result in some identifiable harm. *Id*. UDT does not come remotely close to satisfying either requirement because the documents Plaintiffs seek are those already exchanged between UDT and the Bayview Defendants. *See Cytodyne Techs., Inc.*, 216 F.R.D. at 536 (noting that a trade secret "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use") (quoting Fla. Stat. § 688.002(4)). Indeed, in the case upon which UDT relies, the subpoenaing party, *a direct competitor*, sought "the identity of its customers and suppliers, the products it currently markets or sells to such customers and suppliers, its marketing strategies, and sales figures." *Fadalla*, 258 F.R.D. at 506. Noting the economic harm that would result from disclosure of such information to

---

movant "provided no law in support of its position that a private confidentiality agreement constitutes 'privileged or other protected matter' within the meaning of the rule, nor would it make sense for parties to be able to categorically put materials beyond the reach of a court order by contract"); *Entergy Gulf States La., L.L.C. v. La. Generating, L.L.C.*, No. CV 14-385-SDD-RLB, 2020 WL 2130991, at *5 (M.D. La. May 5, 2020) (finding contractual confidentiality agreement "no basis for precluding discovery"); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Porter Hayden Co.*, No. CIV. CCB-03-3408, 2012 WL 628493, at *2 (D. Md. Feb. 24, 2012) (noting that "confidentiality agreements do not necessarily bar discovery that is otherwise permissible and relevant" and denying motion to quash based on purported contractual confidentiality obligations); *Sonnino v. Univ. of Kansas Hosp. Auth.*, No. CIV.A.02-2576-KHVDJ, 2004 WL 769325, at *3 (D. Kan. Apr. 8, 2004) ("[L]itigants cannot shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality, and cannot modify the Federal Rules of Civil Procedure by agreement.").

a direct competitor, the court issued a protective order to restrict the disclosure of competitive trade secrets. *Id*.

No such concerns are present here, not only because the information in question was already shared between UDT and the Bayview Defendants but also because the parties have negotiated and the Court has entered a Stipulated Protective Order that applies to third-party productions and protects documents that "contain proprietary or competitively sensitive information" from disclosure. *See* ECF No. 69, ¶¶ 7, 10, 16, 25–34; *see also Kristoff-Rampata v. Publix Super Markets, Inc.*, No. 3:15-CV-1324-J-20PDB, 2016 WL 11431488, at *2, *3 (M.D. Fla. Sept. 9, 2016) (explaining that "[p]rotective orders prevent[] the parties from using any confidential information obtained during discovery except as part of the litigation" and "allow the parties to make full disclosure in discovery without fear of public access to sensitive information and without the expense and delay of protracted disputes") (cleaned up); *Leber as Tr. of Steven E. Leber Charitable Remainder Unitrust v. Konigsberg*, No. 09-80593-CIV, 2010 WL 11603144, at *1 (S.D. Fla. May 12, 2010) ("Generally . . . protective orders serve the purpose of protecting third-party privacy rights and/or sensitive and proprietary type information[.]"); *Bender v. Tropic Star Seafood, Inc.*, No. 4:07CV438-SPM/WCS, 2008 WL 2824450, at *2 (N.D. Fla. July 21, 2008) ("The normal way to protect a person's privacy is to enter a protective order limiting disclosure of the sensitive information.").

Moreover, UDT has not satisfied its burden to demonstrate that "compliance with the subpoenas requires the disclosure of privileged or protected information." *Fadalla*, 258 F.R.D. at 504. UDT has presented the Court only with self-selected excerpts of the MSA and has omitted both the context of that language within the MSA, as well as how particular documents requested implicate UDT's obligations under the MSA. *Classic Soft Trim*, 2019 WL 11073334, at *3 (finding

conclusory statements that the information requested is confidential are insufficient to sustain a party's burden); *Partners Insight, LLC v. Gill*, No. 2:22-CV-739-SPC-KCD, 2023 WL 5352310, at *4 (M.D. Fla. Aug. 21, 2023) ("[T]hese are mere categorical descriptions and are not useful in evaluating whether the information withheld is truly confidential. The Court declines to wholly shield information that is plainly relevant under such a perfunctory justification."). Such a showing is crucial here because even if trade secrets are at issue, "[i]nformation which meets the definition of a trade secret and which may be harmful to a company if disclosed, is not automatically subject to unlimited protection." *Fadalla*, 258 F.R.D. at 506. In short, because UDT has not provided either Plaintiffs or the Court with sufficient information to evaluate both the MSA and the documents UDT claims fall within the aegis of the MSA, UDT has not substantiated its confidentiality argument and the Motion should be denied.

### III. Plaintiffs Have Already Attempted to Obtain the Information Directly From the Bayview Defendants.

Next, while UDT insists that the information sought in the subpoena can be more easily obtained from the Bayview Defendants, it also acknowledges (as it must) that Plaintiffs have already sought the documents requested in the subpoena directly from the Bayview Defendants. Mot. at 6 (citing to ECF No. 159). Accordingly, because Plaintiffs have already attempted to acquire the documents from the Bayview Defendants, Plaintiffs have taken "reasonable steps to avoid imposing an undue burden or expense" on UDT. *See* Fed. R. Civ. P. 45(d)(1).

There is no cardinal rule that a party must first exhaust all potential sources of documents before issuing a subpoena to a non-party. *Suffolk Constr. Co., Inc. v. Edenburg Hosp., Inc.*, No. 1:22-CV-20431-KMM, 2022 WL 19330700, at *2 (S.D. Fla. Dec. 30, 2022) ("Plaintiff asserts that Defendant should be prohibited from seeking production of the documents at issue 'until after [defendant] reviews [plaintiff's] responsive documents and determines what, if any, are

10

additionally needed from [the third party].' However, there is no such requirement in Rule 26 or 45.") (citing *Puccio v. Sclafani*, No. 12-61840-CIV, 2013 WL 4068782, at *2 (S.D. Fla. Aug. 12, 2013); *Simple Health Plans*, 2019 WL 7371812, at *3 ("[T]he fact that a party may already possess documents does not prohibit the party from requesting the production of those same documents from another source.").

Here, Plaintiffs did attempt to exhaust other sources. They first attempted to acquire the documents from the Bayview Defendants, and only after those attempts failed did Plaintiffs issue the subpoena to UDT. Moreover, it appears that, given the volume of potentially responsive documents that UDT has already identified,[2] UDT possesses a more complete record of responsive documents than the Bayview Defendants, who have not produced a meaningful number of documents relating to UDT despite Plaintiffs' prior discovery requests. *See Simple Health Plans*, 2019 WL 7371812, at *3. Accordingly, as there exists no alternate means for Plaintiffs to acquire documents relevant to their claims against the Bayview Defendants, the Motion should be denied. *Compare Continuum on S. Beach Condo. v. QBE Ins. Corp.*, 338 F.R.D. 668, 671 (S.D. Fla. 2021) (denying motion to quash but entering protective order because the opposing party had already produced the information sought by the subpoenaing party) *with IPN, LLC v. POSaBIT, Inc.*, No. 22-81506-CIV, 2023 WL 4763145, at *2 (S.D. Fla. June 15, 2023) (holding that the subpoena may be reissued once the subpoenaing party reviewed the opposing party's production to determine if the requested information could be obtained from the party opponent).

### IV.     A Protective Order is Unnecessary.

UDT's request for a protective order should be denied because, unlike the facts of *Continuum*, where the opposing party had already produced nearly all the information sought by

---

[2] *See* ECF No. 165-1, ¶ 8.

the subpoenas and "[t]he topics and lack of a time limitation [were] not relevant to Plaintiff's claim and the Defendant's available defenses," the Bayview Defendants here have not sufficiently produced the responsive documents and Plaintiffs' requests are narrowly tailored to the time and facts surrounding the Data Breach. 338 F.R.D. at 671. Moreover, any concerns that UDT may have regarding the MSA are obviated by the Stipulated Protective Order that governs the disclosure of information acquired through discovery. *See* ECF No. 69.

### V. UDT's Request for Attorneys' Fees Should Also Be Denied.

UDT's request for attorneys' fees should be denied because: (a) UDT's Motion fails on the merits; and (b) Plaintiffs took reasonable steps to avoid any undue burden to UDT before UDT filed its Motion. On February 1, 2024, Plaintiffs met and conferred by telephone with Ms. Kelly R. Melchiondo, counsel for UDT, to discuss UDT's intent to move to quash the subpoena. After Ms. Melchiondo indicated that UDT intended to move to quash the subpoena on the grounds that the requests were overbroad and imposed an undue burden on UDT, Plaintiffs offered to work with UDT to narrow the requests and discuss search terms to address any concerns UDT may have. Ms. Melchiondo *declined*, stating that UDT first needed judicial guidance on the issue of the confidentiality provision in the MSA before it could discuss production of the requested information. Accordingly, as Plaintiffs attempted and offered to address any concerns related to overbreadth or undue burden, UDT's request for attorneys' fees should be denied. *In re Subpoena Dated June 18, 2020*, No. 20-MC-82327-BER, 2021 WL 7540812, at *9 (S.D. Fla. Apr. 14, 2021) (denying request for fees where "the totality of the record" did not indicate that plaintiffs failed to take "reasonable steps" to avoid undue burden or expense); *Partners Insight, LLC v. Gill*, No. 2:22-CV-739-SPC-KCD, 2023 WL 5352310, at *6 (M.D. Fla. Aug. 21, 2023) (request for fees denied where defendants offered to explore resolving the matter before plaintiffs' motion was filed, but plaintiffs "responded by simply coming to court.").

12

## **CONCLUSION**

For the forgoing reasons, Plaintiffs respectfully request that this Court deny UDT's Motion to Quash.

Dated February 16, 2024

Respectfully submitted,

*/s/ Julie Braman Kane*
JULIE BRAMAN KANE
Florida Bar No. 980277
**COLSON HICKS EIDSON**
255 Alhambra Circle—Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
julie@colson.com

*Liaison Counsel*

JOHN A. YANCHUNIS
RYAN D. MAXEY
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
jyanchunis@ForThePeople.com
rmaxey@ForThePeople.com

*Chair, Plaintiffs' Executive Committee*

ADAM E. POLK (*pro hac vice*)
JORDAN ELIAS (*pro hac vice*)
SIMON GRILLE (*pro hac vice*)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
jelias@girardsharp.com
sgrille@girardsharp.com

STUART ANDREW DAVIDSON
NICOLLE B. BRITO
**ROBBINS GELLER RUDMAN & DOWD LLP**
225 N.E. Mizner Boulevard, Suite 720
Boca Raton, FL 33432
561-750-3000
Fax: 750-3364
sdavidson@rgrdlaw.com
nbrito@rgrdlaw.com

RACHELE R. BYRD (*pro hac vice*)
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599
byrd@whafh.com

GARY M. KLINGER (*pro hac vice* forthcoming)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

*Members, Plaintiffs' Executive Committee*

TERRY R. COATES (*pro hac vice*)
DYLAN J. GOULD (*pro hac vice* forthcoming)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: 513/651-3700
513/665-0219 (fax)
tcoates@msdlegal.com
dgould@msdlegal.com

M. ANDERSON BERRY (*pro hac vice*)
GREGORY HAROUTUNIAN (*pro hac vice* forthcoming)
**CLAYEO C. ARNOLD,
A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile: (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com

JOSEPH M. LYON (pro hac vice forthcoming)
**THE LYON FIRM, LLC**
2754 Erie Avenue
Cincinnati, OH 45208
Telephone: (513) 381-2333
jlyon@thelyonfirm.com

DAVID K. LIETZ (pro hac vice forthcoming)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW
Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
Email: dlietz@milberg.com

LORI G. FELDMAN *(pro hac vice)*
**GEORGE GESTEN MCDONALD, PLLC**
*102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Phone: (917) 983-9321
Fax: (888) 421-4173
Email:* LFeldman@4-Justice.com
*E-Service:* eService@4-Justice.com

*Additional Attorneys for Plaintiffs*