**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| In re Lakeview Loan Servicing Data Breach Litigation | Case No. 1:22-cv-20955-DPG |

**DEFENDANTS' MOTION TO DISMISS AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rule 12(b)(6), Bayview Asset Management, LLC ("Bayview"), Lakeview Loan Servicing, LLC ("Lakeview"), Pingora Loan Servicing, LLC ("Pingora"), and Community Loan Servicing, LLC ("Community") (collectively, "Defendants"), respectfully move to dismiss the Amended Consolidated Class Action Complaint (ECF No. 187, "Complaint").

## I.      ALLEGED FACTS

In December 2021, Defendants discovered that an unauthorized person accessed their servers (the "Incident"). Compl., ¶¶ 5, 104. They took steps to contain the Incident and inform law enforcement and borrowers. *Id.*, ¶¶ 111–20. Investigators determined that unauthorized access occurred from October 27 to December 7, 2021, and unauthorized persons may have accessed personally identifiable information ("PII"). *Id.*, ¶ 120. Plaintiffs are mortgagors who allege their PII was contained in files accessed by the attackers. *Id.*, ¶¶ 26, 99. Plaintiffs assert ten causes of action on behalf of a nationwide class and/or five state-specific subclasses. *Id.*, ¶¶ 614, 626–967.

## II.     STANDARD OF REVIEW

Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A claim is only facially plausible when its factual content "allows the court to draw a reasonable inference that the defendants are liable for the misconduct alleged." *Id*. "Factual allegations must be enough to raise a right to relief above the speculative level…." *Twombly*, 550 U.S. at 555–56. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, pursuant to Rule 8(a), a complaint must contain a short and plain statement of the facts supporting the elements of each claim by each plaintiff against each

defendant. "Shotgun pleading" is not allowed. *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 732 (11th Cir. 2020).

## III.   ARGUMENT

### A.   The Complaint Should be Dismissed with Prejudice Because Plaintiffs Continue to Engage in Shotgun Pleading

"[A] district court is required to give a counseled plaintiff only one chance to replead before dismissing a complaint with prejudice on shotgun-pleading grounds." *Id*. Moreover, where a party is on notice that their complaint is a shotgun pleading and files an amended complaint with the same defect, district courts "should" dismiss with prejudice. *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358–59 (11th Cir. 2018).

Plaintiffs had their "one chance" to correct their shotgun pleading. In its Order dismissing all but one claim in Plaintiffs' original complaint, the Court explained that Rule 8 requires "a short and plain statement of the claim" and a "complaint [that] indiscriminately groups the defendants together… fails to comply with the minimum standard of Rule 8." ECF No. 144 at 14–15. However, Plaintiffs ignored the Court's ruling. The Complaint is now ***225 pages*** long (323 with exhibits) and includes ***967 paragraphs*** (over 1,300 including subparts), so it is anything but "short and plain." Indeed, the Complaint is 60 pages longer and contains 123 more paragraphs than the original complaint. *Compare* Compl. *with* ECF No. 47. Moreover, the Complaint contains dozens of gratuitous quotes and citations to confidential and highly confidential documents produced in discovery. Compl., *passim*; *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008) ("[T]o force the parties and the court to sift through an additional 100 pages of letters, reports, and contracts would frustrate the purpose of Rule 8(a)(2)"); *Barone v. Wells Fargo Bank, N.A.*, 757 F. App'x 877, 878–79 (11th Cir. 2018) (Per Curiam) (explaining that a "complaint—containing 811 numbered paragraphs and 165 pages of exhibits—was a 'shotgun pleading'").

Plaintiffs cannot justify their lengthy Complaint by pointing to the deficiencies found by the Court. The new paragraphs do not cure Plaintiffs' error in lumping Defendants together and failing to distinguish Defendants' conduct. ECF No. 144 at 14–15; Compl., ¶¶ 4–6, 8, 13–14, 20, 22, 24, 100–01, 103, 126, 169, 214, 220–224. And, even when Plaintiffs purport to allege Defendant-specific conduct, they generally copy the same allegations into separate paragraphs for each Defendant. This merely pays lip service to the Court's Order. Likewise, Plaintiffs' trivial edits to create the appearance of distinguishing Defendants do not resolve the Court's concern. Compl., ¶¶ 134–54, 196–213, 668–97, 753–89, 956–67, 626–67, 698–752, 790–917, 932–55.

Moreover, every Count begins by indiscriminately incorporating the same ***625 paragraphs*** of factual allegations, making it impossible for the Court and Defendants to determine which allegations relate to which claims. *Id.*, ¶¶ 626, 668, 698, 753, 790, 825, 876, 918, 932, 956. This is a clear violation of Rule 8 and shotgun pleading under Eleventh Circuit precedent. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir.1997) (complaint containing 43 paragraphs of factual allegations that are incorporated into every count "is an all-too-typical shotgun pleading" because one "must speculate as to which factual allegations pertain to which count"); *Jackson*, 898 F.3d at 1356 ("amended complaint [was] an incomprehensible shotgun pleading" because it "incorporate[d] by reference all [123 paragraphs of] factual allegations into each claim"). Moreover, Plaintiffs incorporate these 625 paragraphs into each Count when many paragraphs are clearly irrelevant. For instance, Counts III through IX—*i.e.*, seven of ten Counts— allege violations of state law on behalf of Plaintiffs who reside in the particular state. Nevertheless, each Count incorporates 430 paragraphs of factual allegations regarding all twenty-six named Plaintiffs, regardless of residency. Compl., ¶¶ 27–78, 227–604 (reciting Plaintiff-specific allegations); *id.*, ¶¶ 698, 753, 790, 825, 876, 918, 932 (incorporating all 625 paragraphs into state-

specific claims); *Pelletier v. Zweifel*, 921 F.2d 1465, 1517–18 (11th Cir. 1991) (describing complaints that incorporate all factual allegations into each count as "quintessential 'shotgun' pleadings" because "[a]nyone schooled in the law … would know that many of the facts alleged could not possibly be material to all of the counts").

The Eleventh Circuit's opinions in *Chudasama* and *Jackson* are instructive. *Chudasama* held that a complaint incorporating ***43 paragraphs*** of factual allegations into each count is a shotgun pleading. *Chudasama*, 123 F.3d at 1359 n. 9. *Jackson* held that a complaint incorporating ***123 paragraphs*** of factual allegations into each count is a shotgun pleading. *Jackson*, 898 F.3d at 1356. Plaintiffs commit the same violation, but on a much grander scale by incorporating ***625 paragraphs*** into every count. Moreover, Plaintiffs repeatedly refuse to describe their alleged damages and, instead, expect the Court and Defendants to analyze hundreds of paragraphs to figure out Plaintiffs' alleged damages for eight of ten Counts. Compl. ¶¶ 767, 774, 781, 788, 875, 916, 931, 955. If plaintiff's conduct in *Jackson* was sufficiently egregious for the Eleventh Circuit to conclude that the "[t]he District Court ***should have*** dismissed the amended complaint with prejudice" because "[it] was, like its predecessor, a shotgun pleading," surely the Complaint here should be dismissed with prejudice. *Jackson*, 898 F.3d at 1354, 1359 (emphasis added).

### B. Plaintiffs' Breach of Contract Claim Fails (Count II)

Plaintiffs' new Breach of Contract (Third-Party Beneficiary) claim fails because Plaintiffs: (1) fail to identify the alleged contracts with reasonable specificity; and (2) fail to allege any specific language in the alleged contracts from which it can plausibly be inferred that the contracting parties' intended to "primarily and directly benefit [Plaintiffs]."

Plaintiffs must "identify a valid contract with a degree of specificity…." *Pierce v. State Farm Mut. Auto. Ins. Co.*, No. 14-22691-CIV, 2014 WL 7671718, at *4 (S.D. Fla. Dec. 17, 2014). Moreover, "[i]t is a basic tenet of contract law that a party can only advance a claim of breach of

written contract by identifying and presenting the actual terms of the contract allegedly breached." *Herssein Law Group v. Reed Elsevier, Inc.*, 594 F. App'x 606, 608 (11th Cir. 2015). However, Plaintiffs fail to identify a single specific contract that was breached, which is telling since they gratuitously cite dozens of documents throughout their Complaint. Compl., ¶¶ 669, 677, 686 (vaguely alleging "[Defendants] entered into written contracts with various financial institutions").

Moreover, since Plaintiffs assert a third-party beneficiary theory, they must identify language that clearly and specifically expresses an intent to "primarily and directly benefit [Plaintiffs]." *GVB, LLC v. Cigna Health Ins. Co.*, No. 19-CV-21373, 2020 WL 13880660, at *3 (S.D. Fla. Mar. 18, 2020) (Gayles, J.) ("Plaintiff's breach of third-party beneficiary contract claim … must be dismissed because Plaintiff alleges no facts demonstrating a clear or manifest intent of the contracting parties … [to] primarily and directly benefit [plaintiff].") (citations and quotation marks omitted); *Fischer v. CentralSquare Techs., LLC*, No. 21-CV-60856-RAR, 2021 WL 10558134, at *4 (S.D. Fla. Sept. 16, 2021); *Giuliani v. NCL (Bahamas) Ltd.*, 558 F. Supp. 3d 1230, 1238–39 (S.D. Fla. 2021) (Gayles, J.). Plaintiffs fail to identify any language evidencing an intent to "primarily and directly benefit [Plaintiffs]," so their claim fails. Compl., ¶¶ 668–97.

### C.    Plaintiffs' Statutory Damages Claims Fail

#### 1.    California Consumer Privacy Act ("CCPA") (Count III)

Count III is brought by Plaintiffs Robert and Maureen Keach, Villanueva, Rubio, Grossman, Kim, and Saporta ("CCPA Plaintiffs"), and fails for five reasons:

*First*, the CCPA Plaintiffs failed to satisfy the requirement that they provide "30 days' written notice identifying the specific provisions [they] allege[] have been or are being violated." Cal. Civ. Code § 1798.150(b). Plaintiffs' notices allege violations of Cal. Civ. Code §§ 1798.81.5, 1798.81.5(a)(1), 1798.81.5(b), 1798.150, and 1798.150(a)(1). ECF Nos. 187-6–187-11. However, §§ 1798.81.5 and 1798.150 contain numerous provisions and no "specific provision" is cited in

Plaintiffs' letters; § 1798.81.5(a)(1) merely states the legislature's intent; § 1798.81.5(b) generally requires "reasonable security procedures and practices," but Grossman's letter does not explain how Community allegedly violated this provision;[1] and § 1798.150(a)(1) merely provides for a private right of action. Moreover, none of the specific violations alleged in the Complaint were disclosed in Plaintiffs' notice letters, so Plaintiffs failed to provide adequate notice. *Compare* ECF Nos. 187-6–187-11 *with* Compl. ¶¶ 710, 720, 730, 740; Cal. Civ. Code § 1798.150(b) (granting businesses the right to "cure[] ***the*** **_noticed_** ***violation***") (emphasis added).

*Second*, the notices were not sent thirty days "prior to initiating ***any action*** …." Cal. Civ. Code § 1798.150(b) (emphasis added). Saporta, Robert and Maureen Keach, and Rubio provided notice and filed an action on the same day. Compl., ¶¶ 267, 516, 574, 748; Case No. 1:22-cv-20968-DPG, ECF No. 19; *Rubio v. Lakeview Loan Servicing, LLC*, Case No. CVRI2201604 (Super. Ct., Riverside Cty., Cal.). Villanueva provided notice one day *after* filing an action. Compl., ¶ 282; *Villanueva v. Lakeview Loan Servicing, LLC*, Case No. 3:22-cv-02607 (N.D. Cal.), ECF No. 1. Grossman provided notice on June 6, 2022, three months *after* this action was filed. Compl., ¶ 604; ECF No. 1. Kim provided notice on October 31, 2022, seven months *after* this action was filed. Compl., ¶ 557; ECF No. 1. Since Plaintiffs did not each provide 30 days' written notice "prior to initiating any action," their claims for statutory damages fail. *See* Cal. Civ. Code § 1798.150(b); *Griffey v. Magellan Health Inc.*, No. CV-20-01282-PHX-MTL, 2022 WL 1811165, at *6 (D. Ariz. June 2, 2022) (dismissing CCPA claim with prejudice where plaintiff failed to provide 30 days' notice and rejecting argument that failure to provide notice can be cured).

---

[1] Even if Grossman's reference to this provision were enough, her claim against Community fails for the reasons stated *infra* at 8–9 and her letter cannot salvage claims against the other Defendants.

The Tenth Circuit's opinion in *Breen v. Pruter* is instructive. 679 F. App'x 713 (10th Cir. 2017). *Breen* affirmed dismissal of a damages claim under California's Consumer Legal Remedies Act ("CLRA") with prejudice for failure to provide thirty-days' notice. *Id.* at 722–25. In *Breen*, plaintiff filed suit only two days after providing notice. *Id.* at 719. The court held that this violated the CLRA and further held that dismissal with prejudice was warranted because the record showed that defendant cured any alleged violation. *Id.* at 724–25. Here, as in *Breen*, Plaintiffs, failed to comply with an unambiguous notice requirement and documents incorporated into the Complaint demonstrate that any alleged violated was cured, so dismissal with prejudice is appropriate.

*Third*, the CCPA Plaintiffs admit that Defendants provided written cure statements in response to Plaintiffs' notice letters, which, as a matter of law, forecloses an action for statutory damages. ECF No. 187-7; Compl. ¶¶ 282–83, 604 (citing Ex. 1, Villanueva CCPA Response; Ex. 2, Grossman CCPA Response).[2] If a business cures within 30 days and provides "an express written statement that the violations have been cured and that no further violations shall occur, no action for individual statutory damages or class-wide statutory damages may be ***initiated*** against the business." Cal. Civ. Code § 1798.150(b) (emphasis added). Defendants' responses advised that they implemented comprehensive security enhancements to prevent a future incident and provided written assurances that no further violation would occur. More than two years after the Incident, no further violation is alleged to have occurred. Thus, Plaintiffs cannot pursue statutory damages. Cal. Civ. Code § 1798.150(b); *In re Canon U.S.A. Data Breach Litig.*, No. 20CV6239AMDSJB, 2022 WL 22248656, at *13 (E.D.N.Y. Mar. 15, 2022); *Rodriguez v. River City Bank*, No. 34-2021-00296612, 2021 Cal. Super. LEXIS 105085, *21–24 (Sept. 2, 2021).

---

[2] Plaintiffs allege that Lakeview and Pingora did not respond to Villanueva and Grossman's notice letters, but their allegation is demonstrably false. Compl. ¶¶ 282–83, 604; Exs. 1–2.

In *Rodriguez*, the court dismissed a CCPA statutory damages claim where the complaint showed that defendant's cure letter provided assurances that "new security procedures and practices" cured any alleged violation and that no further violations would occur. That is all that is required under the operative version of the CCPA. *Rodriguez*, 2021 Cal. Super. LEXIS 105085, *23 (amended version of § 1798.150(b) is inapplicable to actions filed before 2023); 2020 Cal. Legis. Serv. Prop. 24, § 31(a) ("this act … shall only apply to personal information collected by a business on or after January 1, 2022"); Compl. ¶ 5 (alleging Incident occurred in 2021).

*Fourth*, Plaintiffs are not entitled to pecuniary damages because they do not allege any. They simply allege their "damage[s] and losses" are "described above" (*i.e.*, somewhere in the first 712 paragraphs). Compl., ¶¶ 713, 723, 733, 743. However, a careful review of every factual allegation fails to reveal a plausible allegation of pecuniary loss by the CCPA Plaintiffs.

*Fifth*, the statutory damages claim against Community is untimely. The CCPA does not contain a statute of limitations, so California's Code of Civil Procedure applies. Cal. Civ. Pro. Code § 312. The Code contains two periods applicable to CCPA claims: (1) Section 338(a) provides a three-year period for "[a]n action upon a liability created by statute, ***other than a penalty or forfeiture***"; and (2) Section 340(a) provides a one-year period for "[a]n action upon a statute ***for a penalty or forfeiture***…." *Id.*, §§ 338(a), 340(a) (emphasis added). The CCPA makes clear that statutory damages are a penalty and recoverable only if they exceed "actual damages." Cal. Civ. Code § 1798.150(a). Indeed, the CCPA directs courts to assess statutory damages based on culpability. *Id.*, § 1798.150(a)(2) (directing courts to consider "the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth"). Thus, the CCPA's statutory damages provision is

clearly penal and subject to a one-year limitations period. *Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 840–45 (2011) (explaining that where a statute provides for actual damages and statutory damages, statutory damages are subject to § 340(a)); *Tavares v. Cargill Inc.*, No. 118CV00792DADSKO, 2019 WL 2918061, at *7 (E.D. Cal. July 8, 2019) (holding that statutory damages are "a penalty or forfeiture" and, thus, subject to § 340's one-year period); *Akopian v. VW Credit, Inc.*, No. 2:12-CV-8679-SVW-RZ, 2013 WL 12123231, at *2 (C.D. Cal. Feb. 28, 2013) ("Plaintiff … seeks statutory damages…. Thus, this is an action upon a statute for a penalty, and is subject to the one-year statute of limitations.") (quotation marks omitted).

The only Plaintiff asserting a CCPA claim against Community is Kim. Compl., ¶¶ 701. She received notice of the Incident on October 17, 2022 and sent a CCPA notice letter on October 31, 2022, wherein she threatened to file suit, but did not do so after receiving Community's cure letter. *Id.*, ¶ 557; ECF No. 187-7 at pg. 6; ECF No. 187-11. The Complaint was filed on March 28, 2024, and is the first pleading asserting a CCPA claim against Community, so any claim for statutory damages against Community is untimely.

### 2.    New York General Business Law, § 349 (Count VIII)

Plaintiff Sevak's Section 349 claim against Lakeview fails for four reasons:

*First*, Sevak fails to allege conduct occurring in New York. Compl., ¶¶ 918–31; *Goshen v. Mut. Life Ins. Co. of New York*, 774 N.E.2d 1190, 1196 (N.Y. 2002) ("[O]ur General Business Law analysis does not turn on the residency of the parties. As both the text of the statute and the history suggest, the intent is to protect consumers in their transactions that take place in New York State."); *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013) ("[T]he appropriate test in this case is to focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than 'on the residency of the parties.'"). Sevak does not contend that loan servicing or the alleged violations occurred in New York. Nor

could he, since twenty-five Plaintiffs with no alleged ties to New York assert they were injured by the same alleged acts and omissions. Compl., ¶¶ 27–78 (listing Plaintiffs' states of residence), 88–89 (alleging "tortious acts in Florida"). Thus, New York is not the location of "the allegedly deceptive transaction," so Sevak's Section 349 claim fails. *In re GE/CBPS Data Breach Litig.*, No. 20 CIV. 2903 (KPF), 2021 WL 3406374, at *13 (S.D.N.Y. Aug. 4, 2021) (holding that plaintiff failed to allege a sufficient connection to New York as opposed to the state "where Defendants maintain servers, where employees responsible for… information technology work, or where those involved in the Data Breach notification processes work."); Compl., ¶ 88–90 (alleging "[Defendants] committed tortious acts in Florida" and that "decisions regarding the management of the information security … were made by Bayview within this district, Defendants maintain Plaintiffs' and Class Members' PII in this district, and the harm caused to Plaintiffs and Class Members emanated from this district.").

*Second*, Sevak fails to allege a deceptive act or practice. He alleges Lakeview failed to implement adequate data security, misrepresented that it would protect PII, and failed to provide timely notification. Compl., ¶ 925. However, Lakeview's alleged statements "do not constitute an unlimited guaranty that [PII] could not be stolen or [] hacked" and an "alleged failure to safeguard [PII] from theft… does not constitute a deceptive practice within the meaning of the statute." *Abdale v. N. Shore Long Island Jewish Health Sys.*, Inc., 19 N.Y.S.3d 850, 859–60 (N.Y. Sup. Ct. 2015); *Prignoli v. Bruczynski*, No. 20-CV-907 (MKB), 2021 WL 4443895, at *7 (E.D.N.Y. Sept. 28, 2021) ("[A]n omission-based claim must plausibly allege that … defendants had knowledge of the material information and failed to disclose or actively concealed such information….").

*Third*, Sevak does not allege that he paid for any product or service provided by Lakeview, so his claim for actual damages fails. Compl. ¶ 922 (alleging he "paid for or otherwise availed

[himself]" of Defendants' services); *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 195 (E.D.N.Y. 2018) ("An actual injury claim under [§ 349] typically requires a plaintiff to allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.") (quotation marks omitted). In any event, Sevak fails to allege what his actual damages are and expects the Court and Defendants to figure it out. Compl., ¶ 931 (alleging entitlement to "actual damages as set forth above" in the preceding 930 paragraphs).

*Fourth*, Sevak fails to allege that he was misled. Compl., ¶¶ 815-23; *Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 739 (W.D.N.Y. 2020) ("[T]he case law consistently holds that 'in order to have been injured by the defendant's deceptive act, a plaintiff must have been personally misled or deceived.'") (collecting cases). Indeed, the only alleged "misrepresentations" are contained in Lakeview's Privacy Policy, which clearly states that it only applies to "California Residents," and Sevak admitted under penalty of perjury that he did not read it. Compl., ¶ 926; ECF No. 187-2 at 2 of 16 ("This Privacy Notice and Disclosure for California Residents applies solely to those who reside in the State of California…."); Ex. 3 at RFA No. 13. Thus, Sevak's claim that these alleged "misrepresentations" injured him fails. Compl., ¶¶ 927–28.

### D.    Plaintiffs' Remaining Consumer Claims Fail

#### 1.    California Consumer Records Act ("CCRA") (Count IV)

Plaintiffs' CCRA claim fails for two reasons:

*First*, Plaintiffs do not allege that they are "Customers." The CCRA defines "Customer" as "an individual who provides personal information **to a business** for the purpose of purchasing or leasing a product or obtaining a service **from the business**." Cal. Civ. Code § 1798.80(c) (emphasis added). Thus, Plaintiffs must plausibly allege they provided their PII **to a Defendant** to receive a product or service **from that Defendant**. However, the Court recognized that "Plaintiffs are one step removed from [Defendants] as customers because their PII was provided to

[Defendants] indirectly through Plaintiffs' mortgage lenders." ECF No. 144 at 10. Moreover, loan servicing is a service provided to the note holder, not the mortgagor. Thus, Plaintiffs are not "customers" and their CCRA claim fails. *Boorstein v. CBS Interactive, Inc.*, 222 Cal. App. 4th 456, 467 (2013) ("Because the right to institute a civil action arises only under subdivision (b), a plaintiff must meet the terms of that section—i.e., he or she must be a 'customer'…."); *Corona v. Sony Pictures Ent., Inc.*, No. 14-CV-09600 RGK EX, 2015 WL 3916744, at *7 (C.D. Cal. June 15, 2015) (dismissing CCRA claim because plaintiffs were not customers); *Toretto v. Donnelley Fin. Sols., Inc.*, No. 1:20-CV-2667, 2022 WL 348412, at *18 (S.D.N.Y. Feb. 4, 2022) (same).

*Second*, Plaintiffs do not allege incremental damages caused by Defendants' alleged untimely notification. *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 2020 WL 2214152, at *8 (S.D. Cal. May 7, 2020) ("Plaintiffs must allege 'incremental harm suffered as a result of the alleged delay'") (quoting *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *7 (S.D. Cal. Nov. 3, 2016)). Plaintiffs merely list mitigation efforts they allegedly would have engaged in sooner. Compl., ¶¶ 766, 773, 780, 787. Notably, they do not allege their damages were greater because they did not engage in those efforts sooner, so they do not allege incremental damages resulting from the alleged delay. *Id.*; Cal. Civ. Code § 1798.84(b) (limiting recovery to damages caused by a violation). Indeed, Plaintiffs do not even allege what their CCRA damages are and expect the Court and Defendants to figure Plaintiffs' damages out. Compl., ¶¶ 767, 774, 781, 788 (alleging Plaintiffs' damages are "described above").

### 2.    California's Unfair Competition Law ("UCL") (Count V)

Plaintiffs' UCL claim fails for three reasons:

*First*, Plaintiffs continue to engage in shotgun pleading and fail to plead their claim with particularity. As with every Count, they begin by indiscriminately citing all 625 paragraphs of factual allegations. Compl., ¶ 790. Then, they purport to make Defendant-specific allegations, but

merely copy the same allegations for each Defendant, with trivial differences for Bayview. *Id.*, ¶¶ 796–823. Thus, Plaintiffs fail to plead their claim with particularity because they do not "specify which Defendant engaged in the deceptive practices or which Defendant affirmatively made false promises." ECF No. 144 at 14; *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *5–6 (N.D. Cal. June 16, 2010) ("[A] UCL claim of any kind … must describe with reasonable particularity the facts supporting the violation.'").

*Second*, Plaintiffs fail to identify the specific section of the UCL that was allegedly violated. Compl., ¶¶ 790–824; *Baba*, 2010 WL 2486353, at *5–6 ("[A] UCL claim of any kind 'must identify the particular section of the statute that was violated….'"); *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993) ("Demurrer was properly sustained … because the … complaint identifies no particular section of the [UCL] which was violated….").

*Third*, Plaintiffs' do not seek relief that is recoverable under the UCL. The UCL limits relief to restitution and injunctive relief. Cal. Bus. & Prof. Code § 17203; *De La Torre v. CashCall, Inc.*, 5 Cal. 5th 966, 993 (2018) ("Private individuals like plaintiffs may win restitution or injunctive relief, but they cannot obtain damages or attorney fees."); Compl., ¶ 824 (requesting relief). To the extent any of the Plaintiffs seek restitution, their claims fail because they do not allege that they ***lost*** money or property that was ***gained*** by Defendants. Compl., ¶¶ 790–824; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323-25 (2011) (requiring a loss of "money or property"); *Zhang v. Superior Court*, 57 Cal. 4th 364, 371 (2013) ("A restitution order against a defendant [] requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other.") (quotation marks omitted).

### 3.   Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count VI)

Plaintiffs' FDUTPA claims should be dismissed for three reasons:

*First*, Plaintiffs lack standing because they are not consumers and Defendants did not make any representations to the Florida plaintiffs regarding data security. "A 'consumer' is one who has engaged in the purchase of goods or services," so a person who has not purchased a good or service does not have standing under FDUTPA. *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1296–97 (S.D. Fla. 2014). Plaintiffs do not allege they purchased loan servicing; they allege that they "paid for **_or_** otherwise availed themselves" of Defendants' services, and it is common knowledge that mortgagors do not pay for loan servicing. Indeed, it is a service provided to note holders, not mortgagors, so Plaintiffs are not "consumers" in this context. Compl., ¶¶ 833, 842, 852, 862 (emphasis added); Fed. R. Evid. 201 (permitting courts to "judicially notice a fact that is not subject to reasonable dispute"). Plaintiffs also lack standing because they do not allege that Defendants made any misrepresentation that induced Plaintiffs to purchase a good or service, so they have no damages. *DFG Grp., LLC. v. Stern*, 220 So. 3d 1236, 1238 (Fla. Dist. Ct. App. 2017); *Baptist Hosp., Inc. v. Baker*, 84 So. 3d 1200, 1204–05 (Fla. Dist. Ct. App. 2012).

*Second*, FDUTPA does not apply to "a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3). Plaintiffs allege that Defendants provided loan servicing, but do not allege the loan servicing was defective, so their claim fails. Compl., ¶¶ 830, 834, 841–44, 851–54, 861–64. *Flores v. Aon Corp.*, 2023 IL App (1st) 230140, ¶ 48 ("None of [plaintiff's] alleged injuries, including the fraudulent PayPal charge, the diminution in the value of her personal information, and her emotional distress, are considered actual damages under [FDUTPA].") (collecting cases); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1212–13 (S.D. Fla. 2022) (concluding that alleged damages corresponding to diminution in value or personal information and "future risk of identity

theft and emotional distress" are not recoverable under FDUTPA). And, again, loan servicing is a service provided to the note holder, not the mortgagor.

*Third*, Plaintiffs' claim for "actual damages" fails. "Actual damages" correspond to the "difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *See* Fla. Stat § 501.211(2); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869, 873, 884 (Fla. 2d DCA 2006); *Rollins, Inc. v. Heller*, 454 So.2d 580, 585 (Fla. Dist. Ct. App. 1984); *Farmer v. Humana, Inc.*, No. 8:21-CV-1478-MSS-SPF, 2022 WL 732126, at *9 (M.D. Fla. Jan. 25, 2022). Plaintiffs do not allege the loan servicing was deficient, so they have no "actual damages." Moreover, Plaintiffs do not even allege they paid for loan servicing, so they cannot claim their payment exceeded the market value of the loan servicing. Compl., ¶¶ 833, 842, 852, 862 (alleging Plaintiffs "paid for *__or otherwise availed themselves__*" of Defendants' services") (emphasis added). In any event, Defendants fail to allege what their "actual damages" are, once again, putting the onus on the Court and Defendants to make that determination. Compl., ¶ 875 (alleging "actual damages" are "set forth" in the preceding 874 paragraphs).

### 4.   Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count VII)

Plaintiffs' ICFA claims should be dismissed for seven reasons:

*First*, the alleged violations did not "occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 187 (2005) ("[A] plaintiff may pursue a private cause of action under the [ICFA] if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois."); *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 773–74 (C.D. Ill. 2020) (dismissing ICFA claim where the "disputed transaction occurred in Kansas, not Illinois"). Plaintiffs allege that Defendants violated the ICFA by "servicing loans and collecting

borrowers' PII without implementing adequate data security precautions." Compl., ¶ 882. However, Plaintiffs allege the violations occurred in Florida, not Illinois. *Id.*, ¶¶ 835, 845, 855, 865 ("The unfair, unconscionable, and unlawful acts and practices of [Defendants] alleged herein, and in particular the decisions regarding data security, emanated and arose within [] Florida…."); *id.*, ¶ 88 (alleging that Defendants "committed tortious acts in Florida"); *id.*, ¶ 90 ("[D]ecisions regarding the management of the information security of Plaintiffs' and Class Members' PII were made by Bayview within this district, Defendants maintain Plaintiffs' and Class Members' PII in this district, and the harm caused to Plaintiffs and Class Members emanated from this district."). None of the actions allegedly giving rise to an ICFA violation occurred in Illinois.

*Second*, Plaintiffs fail to comply with the ICFA's heightened pleading standard. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 419 (2002) ("The complaint must state with particularity and specificity the deceptive manner of defendant's acts or practices, and the failure to make such averments requires the dismissal of the complaint."); *Advanced Physicians, S.C. v. ATI Holdings, LLC*, 2015 IL App (1st) 141073-U ¶ 22 ("Both the 'unfair practices' and 'deceptive practices' claims under the [ICFA] are subject to this heightened pleading standard requiring particularity and specificity."); ECF No. 144 at 12–15 (dismissing ICFA claim, formerly Count IX, for failure to comply with Rule 9(b)). Plaintiffs' conclusory allegations that Defendants failed to maintain adequate data security, failed to disclose inadequate security, and failed to properly respond to the Incident do not suffice. Compl., ¶¶ 889, 899, 909; *Robinson*, 201 Ill. 2d at 419.

*Third*, Plaintiffs are not "consumers," which the ICFA defines as "any person who purchases or contracts for the purchase of merchandise…." 815 ILCS 505/1(e). Plaintiffs allege "they paid for *or* otherwise availed themselves of [Defendants' services]," so they do not allege that they actually purchased merchandise from Defendants. Compl., ¶ 881 (emphasis added). At

best, Plaintiffs allege they ***may have*** paid for services, which does not suffice and is implausible because it is well understood that mortgagors do not pay for loan servicing. Servicers are paid by the note holder, who is the "consumer" in this context.

*Fourth*, apparently recognizing they are not "consumers," Plaintiffs allege in the alternative that "[they] are 'consumers' in view of their relevant factual nexus to Defendants." Compl., ¶ 882. However, Plaintiffs' reliance on the "consumer nexus" test is misplaced because they cannot show that "[their] actions were akin to a consumer's actions" or that the "requested relief would serve the interests of consumers." *Brody v. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 698 N.E.2d 257, 269–70 (Ill. App. 3d 1998) (reciting "consumer nexus" elements). Plaintiffs' actions were not "akin to a consumer's actions." They did not go shopping for a loan servicer and the fact that Defendants service loans ***on behalf of lenders*** does not convert ***Plaintiffs*** into "consumers." Moreover, the relief Plaintiffs seek would not "serve the interests of consumers" because, again, mortgagors are not "consumers" in the mortgage servicing context.

*Fifth*, Plaintiffs do not allege that Defendants intended for Plaintiffs to rely on the alleged (and undefined) deception, which is an element of their claim. Compl. ¶¶ 876–917; *Avery*, 216 Ill. 2d at 179–80.

*Sixth*, Plaintiffs do not allege "actual damage" that was "proximately caused" by Defendants' deception. *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 160 (2002) (requiring "actual damage to the plaintiff [] proximately caused by the deception"). Under the ICFA, "actual damages must arise from 'purely economic injuries.'" *Cooney v. Chi. Public Sch.*, 407 Ill.App.3d 358, 365 (2010). However, once again, Defendants fail to allege what their "actual damages" are and expect the Court and Defendants to figure it out. Compl., ¶ 916 (alleging that "actual damages" are "set forth" in the preceding 915 paragraphs).

*Seventh*, Plaintiffs fail to allege actionable conduct because the alleged ICFA violations consist of alleged omissions, which cannot give rise to an actionable claim "[i]f there has been no communication with the plaintiff." Compl., ¶¶ 889, 899, 909; *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009); *Phillips v. DePaul Univ.*, 2014 IL App (1st) 122817, ¶ 40, 19 N.E.3d 1019, 1030 (holding that there was no actionable conduct "in the absence of any claimed affirmative misstatement"). The ICFA Plaintiffs do not allege they communicated with Defendants regarding data security, so their claim fails. *Id.*

### 5.      Washington Consumer Protection Act ("WCPA") (Count IX)

Plaintiff Arthur's WCPA claim fails three reasons:

*First*, Arthur fails to allege damages. He merely states that "[he] seek[s] all monetary and non-monetary relief allowed by law, including actual damages *as set forth above*…." Compl., ¶ 955 (emphasis added). Telling the Court and Defendants to analyze *954 paragraphs* to figure out his alleged damages does not suffice. *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 857 (W.D. Wash. 2023) (reciting WCPA elements); *Paris v. Steinberg & Steinberg*, 828 F.Supp.2d 1212, 1217 (W.D. Wash. 2011) (dismissing WCPA claim where plaintiff paid "lip-service to damages"); *Young v. Toyota Motor Sales, U.S.A.*, 9 Wash. App. 2d 26, 33 (2020) ("Failure to satisfy even one of the elements is fatal…."). Even if Arthur alleged damages, his claim would fail for lack of causation because he does not allege Defendants "induced [him] to act or refrain from acting." *Browne v. Avvo Inc.*, 525 F. Supp. 2d 1249, 1254 (W.D. Wash. 2007). Indeed, he alleges he had no knowledge of or input into the decision to transmit his PII to Defendants. Compl. ¶ 227.

*Second*, Arthur fails to allege an unfair or deceptive act or practice occurring in trade or commerce. He concedes that he "did not use Pingora's services" and that Pingora "never serviced his mortgage" and his only allegation against Bayview is that PII is stored on its network. Compl. ¶ 227. However, merely possessing PII is not trade or commerce. Wash. Rev. Code § 19.86.010

(defining "Trade" and "commerce"); *Browne*, 525 F. Supp. 2d at 1254 (explaining that the merely possessing data is not "trade" or "commerce"). Moreover, Arthur does not allege he was injured by loan servicing; he alleges he was injured by a criminal act, which is not commerce. Compl. ¶ 229.

*Third*, the WCPA does not apply where there is no connection between the alleged conduct and Washington. *Trader Joe's Co. v. Hallat*, 835 F.3d 960, 976–77 (9th Cir. 2016) (WCPA did not apply extraterritorially where defendants resided in Canada and their conduct occurred there). In *Trader Joe's*, the Ninth Circuit explained that the justification to apply the WCPA "extraterritorially—that it may be applied to combat deceptive practices of Washington businesses—would not be served by applying it" where the defendant and alleged conduct have no connection to Washington. *Id.* Here, Defendants performed loan servicing for noteholders. There are no allegations that those services were performed in Washington or that Defendants or the noteholders are located in Washington. Moreover, Arthur alleges that he was injured by the criminal acts of third-parties with no alleged ties to Washington. Compl. ¶ 229. His allegation that he is a Washington resident, is not enough for the WCPA to apply.

### E. Plaintiffs' Negligence Claim (Count I)

Plaintiffs' negligence claim fails because they do not plausibly allege causation. Plaintiffs must show a logical nexus between the Incident and their alleged damages. However, they merely allege that the Incident caused unknown actors to possess Plaintiffs' PII. Compl. ¶¶ 634–35, 643–44, 652–53, 661–62. Then they leap to the conclusion that this possession of their PII caused a laundry list of purported injuries. And, because they suffered the purported injuries after the Incident, Plaintiffs presume causation. Compl. ¶¶ 664–67; *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324–28 (11th Cir. 2012). Moreover, Plaintiffs' undertaking of efforts to protect their PII do not constitute damages. Indeed, every Plaintiff alleges they "[took] reasonable steps to maintain the

confidentiality of their PII" ***before*** the Incident, as any prudent person would do. Compl. ¶ 164; *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-J-32MCR, 2019 WL 3502993, at *6 (M.D. Fla. Aug. 1, 2019) ("Monitoring one's accounts for fraudulent activity is something many individuals do, regardless of whether they have been informed their information is at risk.").

Plaintiffs' negligence per se allegations also fail. After conceding that negligence per se cannot be predicated on a statute without a private right of action, Plaintiffs purport to do just that. ECF No. 144 at 7–8; Compl., ¶¶ 632, 641, 650, 659. They allege each Defendant committed negligence per se by violating the Gramm-Leach-Bliley Act ("GLBA") and copy the same allegations for each Defendant. Compl., ¶¶ 632, 641, 650, 659. However, the GLBA does not provide a private right of action. *Owens-Benniefield v. Nationstar Mortg. LLC*, 258 F. Supp. 3d 1300, 1318 (M.D. Fla. 2017) ("[C]ourts across the country have held that no private right of action exists for violations of the GLBA."); *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1365–66 (S.D. Fla. 2015) (explaining that negligence per se requires a private right of action) (collecting cases). Lastly, Plaintiffs' demand for injunctive relief is duplicative because Plaintiffs assert a claim for Declaratory Judgment and Injunctive Relief. Compl., ¶¶ 667, 956–67. In any event, Defendants demonstrated that any conceivable deficiency in their data security has been cured, so there is no basis for awarding injunctive relief. *Supra* at 7–8.[3]

## IV.    CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice.

---

[3] Plaintiffs seek injunctive relief in connection with Counts I–V and VIII–IX. Compl., ¶¶ 667, 697, 744, 789, 824, 931, 955. To avoid repetition, Defendants incorporate this argument in response to all Counts that seek injunctive relief.

## **REQUEST FOR HEARING**

Defendants request oral argument. The Motion raises numerous disputes concerning deficiencies in Plaintiffs' Complaint and the viability of their claims, which are brought under the laws of several states. Defendants believe the Court will benefit from oral argument and the opportunity to question the parties. Defendants estimate that a half hour per side will be sufficient.

Dated: May 10, 2024.                                   *s/ Julie Singer Brady*

Julie Singer Brady
Florida Bar No. 389315
jsingerbrady@bakerlaw.com
Yameel L. Mercado Robles
Florida Bar No. 1003897
ymercadorobles@bakerlaw.com
BAKER & HOSTETLER LLP
200 South Orange Avenue, Suite 2300
Orlando, FL 32801
Telephone: 407.649.4000
Facsimile: 407.841.0168

Paul Karlsgodt (*pro hac vice*)
PKarlsgodt@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO 80202
Telephone: 303.861.0600
Facsimile: 303.861.7805

Evan M. Mannering (*pro hac vice*)
emannering@bakerlaw.com
BAKER & HOSTETLER LLP
1050 Connecticut Ave, NW, Suite 1100
Washington, DC 20036
Telephone: 202.861.1500
Facsimile: 202.861.1783

Joseph Givner
Florida Bar No. 850705
Primary Email: jgivner@givner.law
Secondary Email: paralegal@givner.law
GIVNER LAW GROUP, LLP
19790 W. Dixie Hwy, Suite 706
Miami, Florida 33180
Telephone: 305.933.9970

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 10, 2024, I electronically filed the foregoing document with the Clerk of the Court by using the Florida E-Filing Portal, which will send a Notice of Electronic Filing to all counsel of record.

*s/ Julie Singer Brady*
Julie Singer Brady
