UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Master File No. 1:22-cv-20955-GAYLES/TORRES


In re LAKEVIEW LOAN SERVICING DATA&#41;   <u>CLASS ACTION</u>
BREACH LITIGATION                        &#41;
&#41;


**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**<u>AMENDED CONSOLIDATED CLASS ACTION COMPLAINT</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT ................................................................................................................. 2

        A.      The Complaint Is Not A "Shotgun" Pleading........................................................ 2

                1.      Plaintiffs' Allegations Are Now Particularized To Each Defendant............... 2

                2.      Plaintiffs May Incorporate General Allegations ............................................. 4

                3.      Defendants' Other Threshold Arguments Lack Merit...................................... 5

        B.      Plaintiffs' Claims Are Adequately Alleged .......................................................... 7

                1.      Plaintiffs State a Negligence Claim ............................................................... 7

                2.      Plaintiffs State a Claim Under the California Consumer Privacy Act ............. 9

                        a.      Plaintiffs Adequately Allege Notice and No "Cure" ................................ 9

                        b.      Plaintiff Kim's CCPA Statutory Damages Claim Is Timely .................. 12

                3.      Plaintiffs State a California Customer Records Act Claim ............................ 13

                4.      Plaintiffs State a California Unfair Competition Law Claim.......................... 14

                5.      Plaintiffs State a Florida Deceptive & Unfair Trade Practices Act Claim...... 15

                6.      Plaintiffs State a Claim Under the Illinois Consumer Fraud Act................... 16

                7.      Plaintiffs State a Claim Under the New York General Business Law ........... 18

                8.      Plaintiffs State a Washington Consumer Protection Act Claim..................... 19

III.    CONCLUSION............................................................................................................ 20

4862-6470-6502.v1

# TABLE OF AUTHORITIES

## CASES

*Am. Pipe & Constr. Co. v. Utah*,
  414 U.S. 538 (1974)................................................................13

*Amin v. Pepperman*,
  2023 WL 7323082 (M.D. Fla. Nov. 7, 2023) ............................5

*Bailey v. Janssen Pharm., Inc.*,
  288 F. App'x 597 (11th Cir. 2008) ............................................5

*Barone v. Wells Fargo Bank, N.A.*,
  757 F. App'x 877 (11th Cir. 2018) ............................................6

*Blow v. Carnival Corp.*,
  674 F. Supp. 3d 1239 (S.D. Fla. 2023) ..................................4, 5

*Bohannon v. Lyon Real Estate*,
  No. 23CV009153(Apr. 12, 2024) ............................................10

*Bradbury v. NCL (Bahamas) Ltd.*,
  2021 WL 2530664 (S.D. Fla. June 20, 2021) ............................5

*Brenner v. Miller*,
  2009 WL1393420 (S.D. Fla. May 18, 2009) ..............................8

*Brinkman v. ABM Onsite Svcs.-West, Inc.*,
  383 F. Supp. 3d 1120 (D. Or. 2019) ........................................13

*Broadway Gate Master Fund, Ltd. v. Ocwen Fin. Corp.*,
  2016 WL 9413421 (S.D. Fla. June 29, 2016) ..........................13

*Chudasama v. Mazda Motor Corp.*,
  123 F.3d 1353 (11th Cir. 1997) ................................................6

*City & Cnty. of S.F. v. Purdue Pharma L.P.*,
  491 F. Supp. 3d 610 (N.D. Cal. 2020) ....................................15

*Corbett v. PharmaCare U.S.*,
  567 F. Supp. 3d 1172,1200 (S.D. Cal. 2021)...........................11

*CustomGuide v. CareerBuilder, LLC*,
  813 F. Supp. 2d 990 (N.D. Ill. 2011) ......................................17

*Desue v. 20/20 Eye Care Network, Inc.*,
  2022 WL 796367 (S.D. Fla. Mar. 15, 2022)............................16

4862-6470-6502.v1

*Dieffenbach v. Barnes & Noble, Inc.*,
    887 F.3d 826 (7th Cir. 2018) ............................................................................18

*Farmer v. Humana, Inc.*,
    582 F. Supp. 3d 1176 (M.D. Fla. 2022)........................................................8, 16

*Florence v. Order Exp.*,
    674 F. Supp. 3d 472,482-83 (N.D. Ill. 2023)......................................................11

*Forby v. One Techs. LP*,
    2017 WL 11618169 (N.D. Tex. Mar. 31, 2017) ..................................................18

*Galaxy Am., Inc. v. EZ Inflatables, Inc.*,
    2021 WL 12092648 (M.D. Fla. Aug. 17, 2021) ...................................................5

*Galstaldi v. Sunvest Cmtys. USA, LLC*,
    637 F. Supp. 2d 1045 (S.D. Fla. 2009) ..............................................................16

*Gordon v. Chipotle Mexican Grill, Inc.*,
    344 F. Supp. 3d 1231 (D. Colo. 2018)...............................................................17

*Gregorio v. Ford Motor Co.*,
    522 F. Supp. 3d 264 (E.D. Mich. 2021)..............................................................11

*Griffey v. Magellan Health Inc.*,
    2022 WL 1811165 (D. Ariz. June 2, 2022) .........................................................11

*Guy v. Convergent Outsourcing, Inc.*,
    2023 WL 4637318 (W.D. Wash. July 20,2023) ...........................................10, 11

*H. M. Jasper Ret. Tr. v. Ivax Corp.*,
    920 F. Supp. 1260 (S.D. Fla. 1995) ...................................................................18

*Hasemann v. Gerber Prods. Co.*,
    331 F.R.D. 239 (E.D.N.Y. 2019) .......................................................................19

*Holiday Resort Comm. Ass'n v. Echo Lake Assocs.*,
    134 Wash. App. 210 (2006)................................................................................20

*Hypertouch*, Inc. v. ValueClick*, Inc.*,
    192 Cal. App. 4th 805 (2011) ............................................................................13

*In re Accellion, Inc. Data Breach Litig., LLC*,
    2024 WL 333893 (N.D. Cal. Jan. 29, 2024)......................................................20

*In re Ambry Genetics Data Breach Litig.*,
    567 F. Supp. 3d 1130 (S.D. Cal. 2021)..............................................................14

4862-6470-6502.v1

*In re Arthur J. Gallagher Data Breach Litig.*,
    631 F. Supp. 3d 573 (N.D. Ill. 2022) ...................................................................14

*In re Brinker Data Incident Litig.*,
    2020 WL 691848 (M.D. Fla. Jan. 27, 2020) ...........................................................8

*In re Cmty. Bank of N. Va.*,
    622 F.3d 275 (3d Cir. 2010) ...................................................................................13

*In re Experian Data Breach Litig.*,
    2016 WL 7973595 (C.D. Cal. Dec. 29, 2016) ...............................................14, 19

*In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*,
    440 F. Supp. 3d 447 (D. Md. 2020) ...............................................................18, 19

*In re MCG Health Data Sec. Issue Litig.*,
    2023 WL 3057428 (W.D. Wash. Mar. 27, 2023), *R&R adopted* 2023 WL 4131746
    (W.D. Wash. June 22, 2023) ...................................................................................20

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
    603 F. Supp. 3d 1183 (S.D. Fla. 2022) ........................................................ *passim*

*In re Sequoia Benefits & Ins. Data Breach Litig.*,
    2024 WL 1091195 (N.D. Cal. Feb. 22, 2024) ...............................................8, 9, 12

*In re Takata Airbag Prod. Liab. Litig.*,
    2023 WL 4363938 (S.D. Fla. May 25, 2023) ......................................................4, 5

*Jackson v. Bank of Am., N.A.*,
    898 F.3d 1348 (11th Cir. 2018) ................................................................................6

*Johnson v. Cmty. Loan Servicing, LLC*,
    No. 1:22-cv-23079-DPG (S.D. Fla.) .......................................................................13

*Krobath v. S. Nassau Comm. Hosp.*,
    115 N.Y.S.3d 389 (2019) .........................................................................................19

*Kyle K. v. Chapman*,
    208 F.3d 940 (11th Cir. 2000) ..................................................................................4

*Levine v. World Fin. Network Nat'l Bank*,
    437 F.3d 1118 (11th Cir. 2006) ................................................................................7

*Limon v. Circle K Stores Inc.*,
    84 Cal. App. 5th 671 (2022) ...................................................................................13

*Luna Distrib. v. Stoli Grp.(USA), LLC*,
    2018 WL 5099277 (C.D. Cal. July 10, 2018) ........................................................15

- iii -

*Mehta v. Robinhood Fin. LLC*,
  2021 WL 6882377 (N.D. Cal. May 6,2021) ....................................................................11

*Miller v. Collectors Universe, Inc.*,
  159 Cal. App. 4th 988 (2008) .......................................................................................13

*Miller v. Syracuse Univ.*,
  662 F. Supp. 3d 338,367(N.D.N.Y. 2023)...................................................................18

*Millstein v. Holtz*,
  2022 WL 4017172 (S.D. Fla. Sept. 2, 2022) .................................................................5

*Moors v. Carnival Corp.*,
  2023 WL 2866391 (S.D. Fla. Feb. 10, 2023), *R&R adopted*, 2023 WL 2866384
  (S.D. Fla. Mar. 1, 2023) ................................................................................................5

*Morgan v. AT&T*,
  177 Cal.App.4th 1235,1260-61(2009) ........................................................................11

*Murphy v. Kenneth Cole Prods. Inc.*,
  40 Cal.4th 1094,1102-03,1114 (2007)...................................................................12, 13

*Murphy v. Toyota Motor Sales USA, Inc.*,
  2021 WL 2801456 (C.D. Cal. Apr. 21, 2021) ..............................................................19

*Osahar v. U.S. Postal Serv.*,
  297 F. App'x 863 (11th Cir. 2008) .................................................................................6

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20...............................................................................................................18

*Ounjian v. Globoforce, Inc.*,
  89 F.4th 852 (11th Cir. 2023) ......................................................................................15

*Panag v. Farmers Ins. Co. of Wash.*,
  166 Wash.2d 27 (2009)................................................................................................20

*Perdue v. Hy-Vee, Inc.*,
  455 F. Supp. 3d 749 (C.D. Ill. 2020) .....................................................................17, 18

*Phillips v. Netblue, Inc.*,
  2006 WL 3647116 (N.D. Cal. Dec. 12, 2006)..............................................................12

*Prudential Home Mortg. Co. v. Super Ct.*,
  66 Cal. App. 4th 1236 (1998) ......................................................................................12

*Prutsman v. Nonstop Admin. & Ins. Servs.*,
  2023 WL 5257696 (N.D. Cal. Aug. 16, 2023) ........................................................11, 12

4862-6470-6502.v1

*Resnick v. AvMed, Inc.*,
    693 F.3d 1317 (11th Cir. 2012) ...................................................................................7

*Ricol Holdings, LLC v. Westchester Surplus Lines Ins. Co.*,
    684 F. Supp. 3d 1216 (N.D. Fla. 2023)........................................................................3

*Rivera v. Lakeview Loan Servicing, LLC*,
    No. 1:22-cv-20968 (S.D. Fla.), ECF 19 .....................................................................10

*Rubio v. Lakeview Loan Servicing, LLC*,
    No. 22-cv-00603 (S.D. Cal.), ECF 1...........................................................................10

*SEC v. Complete Bus. Sols. Grp., Inc.*,
    538 F. Supp. 3d 1309 (S.D. Fla. 2021) .........................................................................3

*Seifi v. Mercedes-Benz USA, LLC*,
    2013 WL 5568449 (N.D. Cal. Oct. 9, 2013)...............................................................10

*Selinger v. Kimera Labs, Inc.*,
    2022 WL 34444 (S.D. Fla. Jan. 3, 2022), *R&R adopted*, 2022 WL 220063
    (S. D. Fla. Jan. 25, 2022) .............................................................................................8

*Shersher v. Super. Ct.*,
    154 Cal. App. 4th 1491 (2007) ...................................................................................15

*Stutman v. Chem. Bank*,
    95 N.Y.2d 24 (2000) ...................................................................................................19

*Sweet v. BJC Health Sys.*,
    2021 WL 2661569 (S.D. Ill. June 29, 2021)..........................................................17, 18

*Tavares v. Cargill Inc.*,
    2019 WL 2918061 (E.D. Cal. July 8, 2019) ...............................................................13

*Tershakovec v. Ford Motor Co.*,
    79 F.4th 1299 (11th Cir. 2023) ..............................................................................15, 16

*Thompson v. Procter & Gamble Co.*,
    2018 WL 5113052 (S.D. Fla. Oct. 19, 2018)..............................................................16

*Torres v. Wendy's Int'l*,
    2017 WL 8780453 (M.D. Fla. Mar. 21, 2017) .............................................................8

*Veridian Credit Union v. Eddie Bauer, LLC*,
    295 F. Supp. 3d 1140 (W.D. Wash. 2017)...................................................................19

*Vibe Micro, Inc. v. Shabanets*,
    878 F.3d 1291 (11th Cir. 2018) ....................................................................................5

4862-6470-6502.v1

*Villanueva v. Lakeview Loan Servicing, LLC,*
    No. 1:22-cv-21548-DPG (S.D. Fla.) .......................................................................10

*Weiland v. Palm Beach Cnty. Sheriff's Off.,*
    792 F.3d 1313 (11th Cir. 2015) ......................................................................2, 3, 4

*White v. Miami-Dade Cnty.,*
    2019 WL 1318177,(S.D. Fla. Mar. 22, 2019)........................................................5

*Wiegel v. Stork Craft Mfg. Inc.,*
    780 F. Supp. 2d 691 (N.D. Ill. 2011) ....................................................................17

*ZB, N.A. v. Super Ct.,*
    8 Cal. 5th 175 (2019) .............................................................................................12

**STATUTES, RULES, AND REGULATIONS**

California Business & Professions Code
    §17200 ....................................................................................................................14

California Civil Code
    §1798.81.5 ..............................................................................................................11
    §1798.84 .................................................................................................................13
    §1798.150 ...............................................................................................................11
    §1798.150(a)(1) ........................................................................................................9
    §1798.150(a)(1)(A) ................................................................................................12
    §1798.150(b) ..........................................................................................................11

California Code of Civil Procedure
    §338(a) ...................................................................................................................12
    §340(a) .............................................................................................................12, 13

Federal Rules of Civil Procedure
    Rule 8(d) ..................................................................................................................8

Florida Statutes
    §501.211(1) ............................................................................................................16

Illinois Compiled Statutes Annotated
    505/1(b) ..................................................................................................................17

New York General Business Law
    §349........................................................................................................................18

Washington Revised Code
    §19.86.010(2) .........................................................................................................20

## I.   <u>INTRODUCTION</u>

In its ruling on Defendants' first motion to dismiss, the Court found Plaintiffs had standing to pursue their claims and suffered actual harm resulting from Defendants' failure to protect their sensitive personally identifiable information ("PII") but dismissed all but the declaratory judgment claim for not sufficiently distinguishing the conduct attributable to each Defendant.[1] ECF 144 at 8, 15. The Court granted Plaintiffs leave to amend. Plaintiffs' subsequently filed an Amended Consolidated Class Action Complaint ("Complaint") drops 15 claims, alleges one new claim, adds several new Plaintiffs and one previously-consolidated Defendant, and cures the deficiencies the Court identified by particularizing the allegations as to each Defendant. Based on documents Defendants produced in discovery, the Complaint now details Bayview's acute knowledge of its own serious security vulnerabilities, citing, for example, its express acknowledgement ███████████ ████████████████████████████████████████████████ ¶14.[2]

The Complaint also includes ██████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████████████████ ¶189. As to each Bayview subsidiary, Plaintiffs quote ██████████████████████████████████████████████ ██████████████████████████████████████████ ¶192.

Ignoring these and other Defendant-specific allegations, Defendants renew their shotgun pleading argument. The Complaint, however, bears none of the hallmarks of a shotgun pleading. While each count incorporates the general factual allegations, no count incorporates any preceding

---

[1] Community Loan Servicing, LLC ("Community"), which together with Lakeview Loan Servicing, LLC ("Lakeview"), Pingora Loan Servicing, LLC ("Pingora") and their parent company Bayview Asset Management LLC ("Bayview") are collectively referred to as "Defendants."

[2] Citations to "¶__" refer to paragraphs of the Amended Complaint, ECF 187. Citations to "Mot." refer to ECF 201. Unless otherwise noted, all emphasis is added and citations are omitted.

count. The Complaint – while detailed – reflects the number of parties, the technical nature of the allegations, the abundance of additional facts gleaned from discovery, Plaintiffs' compliance with the Court's prior dismissal Order, and ultimately provides each Defendant with the requisite fair notice of the nature of the claims against it.

The Court should also reject Defendants' substantive arguments for dismissal.[3] As to negligence, Defendants challenge causation and damages, arguing that the harms Plaintiffs have suffered are not cognizable and cannot plausibly be attributed to the data breach. But, each Plaintiff took steps to protect their PII before the breach and, shortly after it, experienced identity fraud and other harms plausibly accomplished via use of the information exposed in the breach. The Court has already held that Plaintiffs plead cognizable negligence damages, and other courts have similarly held that steps taken to mitigate a data breach's effects are cognizable. As to Plaintiffs' statutory claims, Defendants' failure to adequately secure Plaintiffs' PII, and their concealment of their data security inadequacies, are actionable under the ***relevant*** states' laws. Defendants insist that some of those laws do not apply to them because, they say, loan servicing is for noteholders, not borrowers. But, that bald assertion is refuted by Plaintiffs' plausible allegations to the contrary and Defendants' own public statements. Defendants elsewhere improperly ask the Court to invert the pleading standard, and draw inferences in their favor by, for instance, claiming they have cured the deficiencies in their data security. That, too, cannot be resolved at this stage of the case.

## II.   **ARGUMENT**

### A.   **The Complaint Is Not A "Shotgun" Pleading**

#### 1.   **Plaintiffs' Allegations Are Now Particularized To Each Defendant**

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree

---

[3] Plaintiffs do not oppose dismissal of their breach of contract (third-party beneficiary) claim or their claim for actual damages under Florida Deceptive & Unfair Trade Practices Act ("FDUTPA")

4862-6470-6502.v1

or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Hence, courts do not dismiss under the shotgun-pleading doctrine so long as a complaint is sufficiently clear enough for a defendant to respond. *See, e.g.*, *SEC v. Complete Bus. Sols. Grp., Inc.*, 538 F. Supp. 3d 1309, 1341 (S.D. Fla. 2021); *Ricol Holdings, LLC v. Westchester Surplus Lines Ins. Co.*, 684 F. Supp. 3d 1216, 1219 (N.D. Fla. 2023).

The Court previously found that Plaintiffs had not specifically alleged "how each Defendant is responsible for its acts or omissions" and directed Plaintiffs to "specify which Defendant committed which alleged act and/or breach." ECF 144 at 8. The Complaint addresses these flaws and gives each Defendant fair notice of the claims against it. For instance, the Complaint:

**(1)** Details each Defendant's independent responsibilities for consumer PII and its security:

• Parent Bayview was ultimately responsible for the entire enterprise's data security and provided data security and storage services for the PII of each of Lakeview's, Pingora's and Community's customers. ¶¶15-17, 91-98, 200, 205, 212, 706-707.

• Lakeview, Pingora, and Community each used the Bayview-managed network to store its customers' PII and, in coordination with Bayview, each controlled its own customers' PII and made its own decisions as to what needed to be encrypted, what was saved, where and for how long, and who could access it. ¶¶197, 200, 203-205, 208, 212, 706-707.

**(2)** Outlines the close coordination and regular communication between Bayview, Lakeview, Pingora, and Community officials on data security matters, with Bayview as the information hub. ¶¶18, 141-142, 146-147, 152-154, 175, 707, 717.

**(3)** Explains Bayview's relationships with and reliance on data security vendors (including to review each subsidiary Defendant's security practices), whose practices each Defendant independently failed to monitor, and who Bayview left with no ability to effectively communicate about observed patterns. ¶¶23-24, 108-110, 183-185, 717.

**(4)** Provides evidence of each Defendant's knowledge that the consumer PII it maintained

- 3 -

was a target of data thieves – allegations bearing on each Defendant's independent imperative duty to guard against those foreseeable criminal exploits. ¶¶22, 130-132, 134, 138, 143, 148, 627(a).

**(5)** Discusses each Defendant's individual policies regarding its own purported security measures intended to guard against these risks. ¶¶135-137, 139-140, 144-145, 149-151.

**(6)** Adds Defendant-specific facts and evidence showing that before the data breach:

• Each Defendant knew its own security measures were inadequate, including with respect to the security of consumer PII. ¶¶14, 172-175, 177-187, 198-200, 204-205, 209-212. For example, PII was unencrypted, inadequately secure, and was being kept for too long. *Id.*

• Bayview was keenly aware of inadequacies related to its data security vendors and knew its subsidiaries were not doing enough to secure consumer PII. And each subsidiary knew (or should have known), including from Defendants' regular communications about data security, that Bayview was not taking the necessary steps. ¶¶174-176, 187, 192, 199.

**(7)** Alleges how each Defendant independently and collectively failed to address these known deficiencies and to take appropriate steps to protect Plaintiffs' PII. ¶¶4, 13-14, 22-24, 173, 179-180, 200, 204-212. Plaintiffs also separately enumerate what each Defendant should have done, but failed to do, with respect to encryption, deletion, storage and other protocols. *E.g.*, ¶¶23-24, 107-110, 198, 200, 204-205, 209, 212, 630-632, 639-641, 648-651, 657-659, 710-711, 720, 730, 740.

These and other Defendant-specific allegations refute any claim of improper group pleading. And, while Defendants are sometimes accused of engaging in the same conduct, that does not render the Complaint deficient. *See Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000).

## 2.    Plaintiffs May Incorporate General Allegations

Defendants argue that the Complaint is a shotgun pleading because each count incorporates the general factual allegations. Mot. at 3. This argument "is an incorrect reading of the Eleventh Circuit's precedent." *Blow v. Carnival Corp.*, 674 F. Supp. 3d 1239, 1248 (S.D. Fla. 2023) (citing *Weiland*, 792 F.3d at 1321); *In re Takata Airbag Prod. Liab. Litig.*, 2023 WL 4363938, at *3 (S.D.

Fla. May 25, 2023). A count's adoption of prior allegations is improper "only when [the] count incorporates all the general allegations, legal and factual, *of a preceding count*." *Moors v. Carnival Corp.*, 2023 WL 2866391, at *3-4 (S.D. Fla. Feb. 10, 2023), *R&R adopted*, 2023 WL 2866384 (S.D. Fla. Mar. 1, 2023); *see also Millstein v. Holtz*, 2022 WL 4017172, at *7 (S.D. Fla. Sept. 2, 2022). No *count* in the Complaint incorporates allegations from *any* preceding count. Rather, for each count, Plaintiffs incorporate their factual allegations, which are relevant to each count,[4] and allege the facts necessary to state a claim. This is not shotgun pleading. *See Blow*, 674 F. Supp. 3d at 1248; *White v. Miami-Dade Cnty.*, 2019 WL 1318177, at *2 (S.D. Fla. Mar. 22, 2019) (Gayles, J.).

### 3.    Defendants' Other Threshold Arguments Lack Merit

Defendants argue the Complaint should be dismissed because it is too long and has "dozens of gratuitous quotes and citations" to their documents from discovery. Mot. at 2-3. It is common for plaintiffs to incorporate newly discovered information into an amended complaint. *See, e.g.*, *Galaxy Am., Inc. v. EZ Inflatables, Inc.*, 2021 WL 12092648, at *2-7 (M.D. Fla. Aug. 17, 2021). Plaintiffs should not be penalized for the volume of Defendants' own inculpatory documents, which Plaintiffs appropriately synthesized for each Defendant. And, a lengthy complaint is not automatically a shotgun pleading. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 & n.2 (11th Cir. 2018); *Bailey v. Janssen Pharm., Inc.*, 288 F. App'x 597, 603 (11th Cir. 2008).

Defendants rely on several Eleventh Circuit decisions, but each is readily distinguishable.

---

[4] Defendants argue that, in Counts III-IX, some incorporated allegations – regarding Plaintiffs who do not reside in the subject states – are "irrelevant." Mot. at 3-4. That certain Plaintiffs are not parties to a claim does not render their experiences irrelevant. Moreover, Defendants do not and cannot argue an inability to discern which Plaintiff-specific allegations form the basis of each count. The Complaint has headings that allow for easy identification of each Plaintiff's experience; and each count identifies which Plaintiffs assert the claim, giving Defendants the requisite fair notice. *Cf. Bradbury v. NCL (Bahamas) Ltd.*, 2021 WL 2530664, at *3 (S.D. Fla. June 20, 2021) (incorporating "almost every" fact allegation and alleging "some irrelevant allegations" is not shotgun pleading where defendant put on notice of facts giving rise to claims). To the extent the Court disagrees, wholesale dismissal is not warranted. *Cf. Amin v. Pepperman*, 2023 WL 7323082, at *2 (M.D. Fla. Nov. 7, 2023).

No "sifting" through the Complaint's exhibits or referenced documents is required because the Complaint quotes or specifically cites the relevant portions of each. *E.g.*, ¶¶5, 14-20, 107, 131-132, 139, 141-147, 151-154, 172-192, 198-213. *Cf. Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008) (rejecting plaintiff's reliance on exhibits to "clarify" his "rambling" complaint as it would require "sift[ing] through an additional 100 pages"). In *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356-58 (11th Cir. 2018), the two-plaintiff complaint alleged 16 counts, all of which incorporated "all prior paragraphs[,]" including each prior ***count's*** allegations, and was "incomprehensible," requiring the court to "rewrit[e]" it into "an intelligible document" and leaving one defendant "to guess as to the particular claims to which it individually should respond." *Barone v. Wells Fargo Bank, N.A.*, 757 F. App'x 877 (11th Cir. 2018), turned on two similar deficiencies. *See also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997) (allegations were "vague[,]" irrelevant to any count and left reader to "speculate" as to each count's pertinent allegations and plaintiffs' fraud "theory"). Unlike all of those cases, the detailed allegations in the Complaint here are straightforward, explain how each Defendant's respective acts and omissions led to the data breach, and do not leave any Defendant to guess which claims are alleged against it. And again, no count incorporates the allegations of a preceding count.

Moreover, while Defendants now complain that the Complaint is too long and detailed as to their respective conduct, they previously argued (successfully) that the prior complaint was insufficiently detailed on that score. Defendants cannot have it both ways. Plaintiffs did as Defendants demanded and the Court directed, separately detailing each Defendant's respective conduct and using Defendants' own documents to support their allegations. It is hardly surprising that the result is a longer Complaint, especially after the Court granted leave to add new plaintiffs and consolidate the claims against a fourth defendant (Community). Even so, Plaintiffs sought to

substantially streamline this case by removing 15 claims. This is not shotgun pleading.

Defendants also argue (with no supporting authority) that, for some claims, Plaintiffs fail to sufficiently identify or "describe" their damages. Mot. at 4, 8, 12, 15-18. But, Section V of the Complaint (¶¶227-613) describes Plaintiffs' damages under the sub-headings of each Plaintiff's name and then again under the unambiguous sub-heading "Plaintiffs' Injuries and Damages." In any case, "under the notice pleading standard," Plaintiffs need not specify their damages in detail. *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1123-24 (11th Cir. 2006).

**B.      Plaintiffs' Claims Are Adequately Alleged**

**1.      Plaintiffs State a Negligence Claim**

Defendants challenge Plaintiffs' negligence claim on causation and damages grounds, arguing: (a) Plaintiffs "do not plausibly allege" a "logical nexus" between the data breach and their damages; and (b) Plaintiffs' post-breach "efforts to protect their PII do not constitute damages" because they tried to protect their PII before the breach. Mot. at 19. Both arguments fail.

Defendants' cursory causation argument relies exclusively on *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324-25 (11th Cir. 2012), which held that data breach victims sufficiently alleged causation where their sensitive unencrypted information was stolen and later used to open unauthorized accounts, they had never before had their identities stolen, and took precautions to protect their personal information before the breach. Plaintiffs' allegations here are no different – they took steps to safeguard their PII before the breach and soon after the breach (some almost immediately), several of them began experiencing (for the first time ever) identity fraud, plausibly accomplished via use of the PII exposed in the breach. *E.g.*, ¶¶238, 241-242, 249-250, 256, 264-265, 288, 298, 301, 310-311, 317-320, 346, 360, 390, 432, 435-436, 443-444, 449, 563, 634-663. Under *Resnick*, these allegations are sufficient. *See also In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1224 (S.D. Fla. 2022).

- 7 -

Consistent with other courts, this Court has already held that Plaintiffs' "mitigation expenses" and other harms are cognizable negligence damages. ECF 144 at 8; *Mednax*, 603 F. Supp. 3d at 1203-05, 1224; *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1186-87 (M.D. Fla. 2022). Contrary to Defendants' view, taking common sense steps to protect their PII prior to the breach is not the same as incurring out-of-pocket expenses afterwards. ¶¶664-666. Indeed, as Plaintiffs allege, it was ***Defendants*** who expressly told Plaintiffs that, as a result of the breach, they should "be vigilant for incidents of fraud and identity theft by reviewing [their] account statements" for "unauthorized activity" for 12 to 24 months. ¶12.

Defendants also take issue with Plaintiffs' negligence *per se* allegations because the GLBA does not provide a private right of action. Nonetheless, the GLBA is relevant to Plaintiffs' ordinary negligence claim, including "as evidence that the data breach was within the foreseeable zone of risk." *In re Brinker Data Incident Litig.*, 2020 WL 691848 (M.D. Fla. Jan. 27, 2020) (applying principle to FTC Act); *see Torres v. Wendy's Int'l*, 2017 WL 8780453 (M.D. Fla. Mar. 21, 2017).

Finally, citing no legal authority, Defendants seek dismissal of Plaintiffs' demand for injunctive relief in their negligence claim (and several other counts) because it is "duplicative" of the Declaratory Judgment/Injunctive Relief claim and Defendants have "demonstrated" their "cure" of "any conceivable deficiency in their data security." Mot. at 20. Both arguments must be rejected. Federal Rule of Civil Procedure 8(d) explicitly permits parties to plead claims in the alternative. *Brenner v. Miller*, 2009 WL 1393420, at *1 (S.D. Fla. May 18, 2009). While "ultimate recovery cannot be had for multiple claims that rely entirely on the same facts," that is "a potential election-of-remedies problem," "not a problem that requires dismissal." *Selinger v. Kimera Labs, Inc.*, 2022 WL 34444, at *3 (S.D. Fla. Jan. 3, 2022), *R&R adopted*, 2022 WL 220063 (S. D. Fla. Jan. 25, 2022) (Gayles, J.). Defendants' claim that they have cured does not "render implausible

the plaintiffs' allegations to the contrary." *In re Sequoia Benefits & Ins. Data Breach Litig.*, 2024 WL 1091195, at \*7 (N.D. Cal. Feb. 22, 2024); *e.g.*, ¶¶188-193, 201, 206, 213, 745-752. "[W]hether Defendants have ***actually*** cured" is a "fact issue." *Id.*

### 2. Plaintiffs State a Claim Under the California Consumer Privacy Act

Defendants' challenges to the California Plaintiffs' claim under California's Consumer Privacy Act ("CCPA") disregard the Complaint's allegations and are contrary to law.

### a. Plaintiffs Adequately Allege Notice and No "Cure"

The CCPA permits the recovery of actual or statutory damages, injunctive and any other proper relief. Cal. Civ. Code §1798.150(a)(1). CCPA actions seeking statutory damages, but not other relief, have a pre-suit notice requirement. *Id.* at (b). A consumer must "provide a business 30 days' written notice identifying the specific provisions of [the CCPA] the consumer alleges have been or are being violated" before "initiating any action for statutory damages …." *Id.* Only where "cure is possible" and, within 30 days, "the business actually cures" and provides "an express written statement" of its cure, can actions for statutory damages be barred. *Id.*

Defendants claim that no California Plaintiff provided the requisite notice prior to seeking CCPA statutory damages, but that is demonstrably false. Defendants themselves point out that the Complaint, "is the first pleading" in which Plaintiff Kim ever "assert[ed] a CCPA claim," and she provided notice over a year earlier (in October 2022). Mot. at 9. Plaintiff Grossman provided notice in June 2022 (¶749), and she too did not allege a CCPA claim until the Complaint.[5] With respect to Plaintiffs Villanueva, Rubio, Saporta and the Keaches, Defendants cite their April 2022 notices

---

[5] To support their argument as to Grossman, Defendants point to the complaint filed in March 2022. Mot. at 6 (citing ECF 1). But, Grossman was not a plaintiff in that complaint and so obviously did not initiate any CCPA action by its filing. Defendants appear to argue that Grossman had to provide notice before some ***other*** consumer filed suit seeking CCPA statutory damages, but they cite no legal authority for their position, which is contrary to the CCPA's plain language.

and complaints (Mot. at 6), but fail to mention that each of those complaints expressly excluded CCPA statutory damages from their requested relief and advised of the intent to amend to seek those damages if, within 30 days, Defendants failed to cure.[6] Villanueva and Rubio waited two years for Defendants to cure, seeking CCPA statutory damages for the first time in the Complaint. Saporta and the Keaches waited four months, seeking CCPA statutory damages for the first time in August 2022 (ECF 47).[7] Thus, each California Plaintiff provided the requisite notice.

A California state court recently rejected the very argument Defendants appear to make here–that a plaintiff must provide 30 days' notice prior to *any* CCPA action. *See Bohannon v. Lyon Real Estate*, No. 23CV009153 (Apr. 12, 2024) (attached as **Exhibit A**). There, like here, the plaintiff did not seek CCPA statutory damages but reserved the right to amend if the defendant failed to cure. Five months later, the plaintiff amended to seek statutory damages, alleging a failure to cure. The court held this complied with the CCPA's notice requirement and defendant's contrary argument "fail[ed] to reckon with CCPA's cure period requirement and the actual language of [plaintiff's initial] pleading." *Id.* at 14; *see also Seifi v. Mercedes-Benz USA,LLC*, 2013 WL 5568449 at *6 (N.D. Cal. Oct. 9, 2013) (notice requirement met where damages not sought in initial complaint but only added after expiration of notice period). *Bohannon* is consistent with the holdings of many other courts, which have interpreted the CCPA and other California statutes with similar notice provisions as requiring sufficient notice prior to the filing of the ***operative*** complaint, not some earlier complaint that is no longer operative. *See Guy v. Convergent Outsourcing, Inc.*, 2023 WL 4637318, at *9(W.D. Wash. July 20,2023) (dismissing CCPA statutory damages claim

---

[6] *See* Complaints *Villanueva v. Lakeview Loan Servicing, LLC*, No. 1:22-cv-21548-DPG (S.D. Fla.), ECF 1 ¶96; *Rubio v. Lakeview Loan Servicing, LLC*, No. 22-cv-00603 (S.D. Cal.), ECF 1 at Ex. A ¶67; *Rivera v. Lakeview Loan Servicing, LLC*, No. 1:22-cv-20968 (S.D. Fla.), ECF 19 ¶219.

[7] While Villanueva was a party to that complaint, she did not assert a claim under the CCPA.

without prejudice to allow plaintiffs to provide notice); *see also Morgan v. AT&T*, 177 Cal.App.4th 1235,1260-61(2009); *Corbett v. PharmaCare U.S.*, 567 F. Supp. 3d 1172,1200 (S.D. Cal. 2021); *Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 276 (E.D. Mich. 2021).[8] Here, each California Plaintiff gave notice over a year before the filing of this Complaint. No more is required.

Defendants' other "notice" argument is that Plaintiffs' letters did not identify which CCPA provision Plaintiffs contend they violated. Mot. at 5-6. Plaintiffs' letters show otherwise, identifying Cal. Civ. Code §§1798.81.5 and 1798.150. Complaint, Exs. 6, 8-11. Rubio's letter even attached a copy of his initial complaint. *Id.*, Ex. 9. Cal. Civ. Code §1798.81.5 does not "merely state[] the legislature's intent" (Mot. at 6) but directs businesses to implement reasonable security procedures. Cal. Civ. Code §1798.150 expressly references §1798.81.5 in making a violation of the duty to implement "reasonable security procedures and practices" actionable. These provisions, and, thus Plaintiffs' letters, sufficiently identify Defendants' statutory violations – their failure to adopt adequate data security measures. *See Mehta v. Robinhood Fin. LLC*, 2021 WL 6882377, at *8 (N.D. Cal. May 6,2021); *Florence v. Order Exp.*, 674 F. Supp. 3d 472,482-83 (N.D. Ill. 2023).

Regarding their violations, Defendants again repeat their "cure" argument in the CCPA context. The Court should reject it. Plaintiffs' CCPA statutory damages claim is not barred as "a matter of law" simply because defense counsel sent unverified, self-serving letters claiming Defendants had implemented "security enhancements" that "cured" their CCPA violations. Mot. at 7. The CCPA requires that Defendants "actually cure." Cal. Civ. Code §1798.150(b). That Defendants say they have cured, without any evidence, is not proof of their actual cure and does not render Plaintiffs' allegations of Defendants' failure to cure "implausible." *Prutsman v. Nonstop*

---

[8] *Griffey v. Magellan Health Inc.*, 2022 WL 1811165 (D. Ariz. June 2, 2022), Mot. at 6, is out of step with the overwhelming weight of contrary authority and "provided no explanation" for its dismissal with prejudice, which does not "align with the [CCPA's] purpose." *Guy*, 2023 WL 4637318, at *9.

*Admin. & Ins. Servs.*, 2023 WL 5257696, at *2 (N.D. Cal. Aug. 16, 2023); *Sequoia*, 2024 WL 1091195, at *7; *see* ¶¶188-193, 201, 206, 213, 745-752.

### b. Plaintiff Kim's CCPA Statutory Damages Claim Is Timely

Defendants argue that Kim's CCPA statutory damages claim is time barred. While no court has yet addressed the limitations period for CCPA statutory damages claims, the statute's text, legislative history, and cases construing similarly-worded statutes compel the conclusion that they are governed by California's three-year statute, California Code of Civil Procedure §338(a) ("CCP"), under which Kim's claim is indisputably timely.

Defendants urge that all statutory damages are "penalties" and so are governed by California's one-year statute, CCP §340(a). Mot. at 8-9. That is not the law: "California law recognizes the distinction between statutory damages which are compensatory in nature and those which are penal." *Phillips v. Netblue, Inc.*, 2006 WL 3647116, at *5 (N.D. Cal. Dec. 12, 2006). Where statutory damages are "compensatory," as opposed to "penal," California's three-year statute applies. *Murphy v. Kenneth Cole Prods. Inc.*, 40 Cal.4th 1094,1102-03,1114 (2007). As a "settled rule[,]" statutory damages are penalties only where they provide recovery that is "***additional*** to actual losses incurred" (*e.g.*, treble damages) and are "calculated without reference" to "the actual damage sustained." *Prudential Home Mortg. Co. v. Super Ct.*, 66 Cal. App. 4th 1236, 1242, 1245 (1998); *Murphy*, 40 Cal. 4th at 1104. "Compensatory" statutory damages, on the other hand, "primarily seek to compensate" for "actual losses incurred," and secondarily might also seek to shape conduct. *ZB, N.A. v. Super Ct.*, 8 Cal. 5th 175, 186 (2019). Here, the manifest purpose of CCPA statutory damages is to compensate consumers for their actual losses.

The CCPA provides for the recovery of ***either*** statutory "damages" of $100-$750 "***or*** actual damages, whichever is greater." Cal. Civ. Code §1798.150(a)(1)(A). The statutory damage amounts, thus, are compensatory: they substitute for – rather than being "in addition to" – the

- 12 -

consumer's actual damages. *Murphy*, 40 Cal. 4th at 1104, 1107; *see also Brinkman v. ABM Onsite Svcs.-West, Inc.*, 383 F. Supp. 3d 1120, 1128 (D. Or. 2019).[9] Other state statutes that similarly allow recovery of either statutory or actual damages, but not both, are compensatory in nature. *Limon v. Circle K Stores Inc.*, 84 Cal. App. 5th 671, 700-03 (2022); *Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 991, 1006 (2008). These cases rest on the principle that "[w]here damages are obscure and difficult to prove, the Legislature may select a set amount of compensation without converting that remedy into a penalty." *Murphy*, 40 Cal. 4th at 1112. The CCPA's legislative history demonstrates that providing for a set or minimum amount of compensation was precisely the Legislature's intent. *See* Cal. S. Jud. Comm., Analysis of SB 1121, 2017-2018 Sess., at 5-7 (Apr. 24, 2018) (purpose of "right to [fixed amount of] statutory damages" is to "ensure[] that consumers are adequately protected" because "often it is difficult, if not impossible, to prove actual damages" when consumer data is lost).[10] The CCPA's statutory damages are therefore not penalties and CCP §338(a)'s three-year statute applies.[11]

### 3. Plaintiffs State a California Customer Records Act Claim

Plaintiffs' California Customer Records Act ("CCRA") claim is based on Defendants'

---

[9] Defendants' cited cases do not support a different conclusion. In *Tavares v. Cargill Inc.*, 2019 WL 2918061, at *7 (E.D. Cal. July 8, 2019), the statute allowed recovery of actual damages ***and*** expressly-denominated civil "penalties." In *Hypertouch, Inc. v. ValueClick, Inc.* 192 Cal. App. 4th 805, 840-43 (2011), the statute allowed recovery of "either or both" of actual damages and liquidated damages, and the court found the latter were "penal" because, unlike in the CCPA, they were in addition to actual damages.

[10] If the Legislature had intended the CCPA's statutory damages to be a penalty, it would have said so, as it has in related statutes. *See* Cal. Civ. Code §1798.84; *Murphy*, 40 Cal. 4th at 1107.

[11] Even if CCP §340(a) applied, Kim's claim would still be timely under the tolling principle of *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), given the August 2022 filing of a class action complaint against Community alleging claims based on the same facts underlying Kim's claim. *See* Complaint, *Johnson v. Cmty. Loan Servicing, LLC*, No. 1:22-cv-23079-DPG (S.D. Fla.), ECF 1; *see also Broadway Gate Master Fund, Ltd. v. Ocwen Fin. Corp.*, 2016 WL 9413421 (S.D. Fla. June 29, 2016). Kim's claim also relates back to the *Johnson* complaint under Rule 15(c)(1)(B) because it "arose out of the [same] conduct, transaction, or occurrence." *See In re Cmty. Bank of N. Va.*, 622 F.3d 275, 295 (3d Cir. 2010).

failure to timely inform them of the data breach. ¶¶754-789. Defendants argue that Plaintiffs cannot pursue this claim because they are not "customers" under the CCRA because they "indirectly" provided their PII to Defendants and "loan servicing is a service provided to the note holder, not the mortgagor." Mot. at 11-12. Plaintiffs need not have provided their PII directly to Defendants to qualify as "customers" under the CCRA. *See In re Experian Data Breach Litig.*, 2016 WL 7973595, at \*9 (C.D. Cal. Dec. 29, 2016) (rejecting "narrow interpretation" of "customers"; finding it sufficient that plaintiffs "did, at least indirectly through [their carrier], provide information to Defendants"). Defendants' conclusory assertion that they provided no services to Plaintiffs disregards the standard on a motion to dismiss and is belied not only by Plaintiffs' plausible allegations, but by Defendants' own public statements. *See* ¶¶1, 3, 99-100, 102, 169, 268, 576, 592; Plaintiffs' Request for Judicial Notice ("RJN"), file herewith.[12] At a minimum, this is a fact question that cannot be resolved at the pleading stage.

Defendants also argue that Plaintiffs allege no "incremental damages" caused by Defendants' untimely notification. Mot. at 12. But, Plaintiffs plainly allege that the delayed disclosure deprived them of the ability to take timely self-protection and mitigation measures – actions they took after Defendants finally advised them of the breach. *E.g.*, ¶¶24, 766, 773, 780, 787. That is sufficient, as courts consistently hold. *See Mednax*, 603 F. Supp. 3d at 1219; *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 589-90 (N.D. Ill. 2022); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1150 (S.D. Cal. 2021).

### 4. Plaintiffs State a California Unfair Competition Law Claim

California's Unfair Competition Law ("UCL") prohibits "unlawful, unfair or fraudulent" business acts and practices. Cal. Bus. & Prof. Code §17200. Contrary to Defendants' claim,

---

[12] Defendants repeatedly insist that mortgage servicers only provide services to note holders, but their own websites tout the services they provide to homeowning customers. *See* Plaintiffs' RJN.

Plaintiffs identify "the specific section of the UCL that was allegedly violated" (Mot. at 13)—the "unfair" and "unlawful" prongs. ¶¶796-798,803-805,810-812,817-819. Plaintiffs further allege the facts supporting each "unfair" and "unlawful" business act and practice of each Defendant, the statutes upon which the "unlawful" claim is based (CCPA and CCRA), and how each Defendant's conduct was "unlawful" under those statutes. ¶¶790-822. That is sufficient. Indeed, because Plaintiffs' UCL claim is not premised on fraud, it is not subject to a heightened pleading standard. *See Luna Distrib. v. Stoli Grp.(USA), LLC*, 2018 WL 5099277, at *18-19 (C.D. Cal. July 10, 2018).

Defendants also challenge Plaintiffs' right to restitution. Mot. at 13. But, Plaintiffs properly seek restitution of money Defendants acquired from them indirectly by means of their unfair business practices. ¶824. *See Shersher v. Super. Ct.*, 154 Cal. App. 4th 1491, 1498 (2007) (restitution means "the return of money or property the defendant acquired through its unfair practices"). A defendant does not have to receive a plaintiff's money directly for it to be liable for restitution under the UCL. *See id.* at 1500; *City & Cnty. of S.F. v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 695 (N.D. Cal. 2020). Plaintiffs, thus, state a UCL claim.

### 5. Plaintiffs State a Florida Deceptive & Unfair Trade Practices Act Claim

Defendants argue that Plaintiffs' FDUTPA claim fails because Plaintiffs are not consumers. Mot. at 14. But, a "plaintiff need not be a consumer to assert a FDUTPA claim." *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 860 (11th Cir. 2023). A plaintiff need only "prove that there was an injury or detriment to consumers." *Id.*[13] While Defendants also insist that the FDUTPA claim fails because they did not make any direct representations to Plaintiffs, "a plaintiff asserting a FDUTPA claim need not show actual reliance on the representation or omission at

---

[13] Here again, on the "consumer" point, Defendants improperly dispute their own public statements and Plaintiffs' allegations, pointing to purported "common knowledge" to disclaim their services to homeowners (Mot. at 14). *See* Plaintiffs' RJN.

issue." *Tershakovec v. Ford Motor Co.*, 79 F.4th 1299, 1311 (11th Cir. 2023); *Thompson v. Procter & Gamble Co.*, 2018 WL 5113052, at *2 (S.D. Fla. Oct. 19, 2018) (Gayles, J.). Florida federal courts have accordingly upheld FDUTPA claims for injunctive relief in the data breach context even where the plaintiff's information was provided to the defendant through an intermediary. *See, e.g.*, *Desue v. 20/20 Eye Care Network, Inc.*, 2022 WL 796367, at *8, 11 (S.D. Fla. Mar. 15, 2022); *Farmer*, 582 F. Supp. 3d at 1191-92.

Defendants erroneously argue that Plaintiffs do not seek injunctive relief under the FDUTPA. Mot. at 20 n.3. The FDUTPA authorizes "anyone aggrieved by a violation of this part" to "bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part." *Galstaldi v. Sunvest Cmtys. USA, LLC*, 637 F. Supp. 2d 1045, 1057 (S.D. Fla. 2009) (quoting Fla. Stat. §501.211(1)). This provision is "broadly worded to authorize declaratory and injunctive relief." *Id.* Expressly citing this provision, Plaintiffs allege that they "bring this action to obtain a declaratory judgment that Defendants' act or practices violate the FDUTPA." ¶869; *see also* ¶874. These allegations sufficiently request injunctive relief, and Defendants' contrary contention simply ignores them. Defendants ultimately do not seek dismissal of the FDUTPA claim to the extent it seeks declaratory and injunctive relief. Plaintiffs should, thus, be permitted to proceed with the claim to the extent it seeks such relief.[14]

### 6.   Plaintiffs State a Claim Under the Illinois Consumer Fraud Act

Defendants' arguments for dismissal of Plaintiffs' Illinois Consumer Fraud Act ("ICFA") claim similarly lack merit. The underlying violations against Illinois Plaintiffs did substantially and sufficiently occur in Illinois under the ICFA because each Illinois Plaintiff received

---

[14] Plaintiffs do not oppose dismissal of their claim for actual damages under the FDUTPA.

Lakeview's or Community's services in Illinois, and that is where they provided their PII. ¶¶313, 517, 530. *See Sweet v. BJC Health Sys.*, 2021 WL 2661569, at *6 (S.D. Ill. June 29, 2021) (rejecting similar argument). Defendants also incorrectly insist that ICFA claims are subject to a heightened pleading standard, but in the data breach context, courts have indicated that ICFA claims "should be subject to the liberal pleading rule of [Rule] 8(a), rather than Rule 9(b)." *Id.* (citing *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 769 (C.D. Ill. 2020)).

Defendants next argue that the Illinois Plaintiffs are not "consumers" because they did not "purchase" merchandise, only services. Mot. at 16-17. This overlooks that the ICFA defines "merchandise" to include "services." 815 Ill. Comp. Stat. Ann. 505/1(b). In addition, "there is nothing in the [ICFA] that suggests that it applies only to direct 'consumers' (and hence, to purchasers)." *Wiegel v. Stork Craft Mfg. Inc.*, 780 F. Supp. 2d 691, 693 (N.D. Ill. 2011). Where a party alleges "some nexus between the complained-of conduct and consumer protection concerns" – which Plaintiffs do here by alleging that Defendants' services pertain to consumer loans and their trade practices implicate consumer concerns (¶882) – the ICFA claim may proceed. *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011).

Defendants also challenge causation and intent, arguing they did not communicate with Plaintiffs or intend for Plaintiffs to rely on any deception. Mot. at 17-18. But, a plaintiff need not allege she "actually saw a communication … and was deceived by Defendant's statements"; rather, acts or omissions are actionable under the ICFA "if they are intended to induce the plaintiff's reliance." *Perdue*, 455 F. Supp. 3d at 770-71; *see Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1250-51 (D. Colo. 2018). Defendants' intent that Plaintiffs rely on their deception may be inferred from the fact that they engaged in consumer-facing conduct – *i.e.*, mortgage

services in Illinois – but concealed their known inadequate data security practices from consumers. ¶¶313,517,530,882; *Forby v. One Techs. LP*, 2017 WL 11618169, at *3 (N.D. Tex. Mar. 31, 2017).

Each Plaintiff has also suffered "actual damages" under the ICFA. For instance, Plaintiff Berg paid $57 toward an unauthorized charge, she did not receive her tax refund after someone fraudulently obtained one in her name, and she paid $120 for protection services after the breach. ¶¶317-322. *See Sweet*, 2021 WL 2661569, at *5. The time each Plaintiff spent dealing with fraudulent activity also constitutes actual damage (¶¶321,323,521,523,535,537). *See Perdue*, 455 F. Supp. 3d at 761, 769; *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 829 (7th Cir. 2018).

### 7. Plaintiffs State a Claim Under the New York General Business Law

Defendants' challenges to Plaintiff Sevak's claims under New York General Business Law §349 ("GBL") fail. The claim has a sufficient connection to New York because Sevak was deceived in New York, where he resides and "used Lakeview's services" after "Lakeview acquired his mortgage on his home in Floral Park, New York" and because, as a condition of receiving loan services in New York on his New York home, Sevak's PII was provided to Lakeview. ¶¶356, 922-923; *see In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 493 (D. Md. 2020); *Mednax*, 603 F. Supp. 3d at 1212-13.

Sevak also alleges the requisite materially deceptive act or practice and resulting harm. *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25-26 (1995). Defendants first mischaracterize the GBL claim as treating Lakeview's Privacy Policy as an "unlimited guaranty" that Plaintiffs' PII would never be stolen. Mot. at 10. *See Miller v. Syracuse Univ.*, 662 F. Supp. 3d 338, 367(N.D.N.Y. 2023) (rejecting similar argument). Defendants next attempt to rely on Sevak's discovery responses regarding the Privacy Policy, which is improper in the context of a motion to dismiss. *H. M. Jasper Ret. Tr. v. Ivax Corp.*, 920 F. Supp. 1260, 1263 (S.D. Fla. 1995). Defendants then misconstrue the GBL, which requires only

"some amount of exposure," and does not have "a seeing [or] a reliance requirement." *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 266-67 (E.D.N.Y. 2019). And, while Sevak may not have read the Privacy Policy, it can be plausibly inferred from the Complaint's allegations that he was at least ***exposed*** to it. In any event, Sevak's claim is not based only on the Privacy Policy's affirmative misrepresentations; he also alleges that Lakeview concealed the material facts that it did not reasonably or adequately protect his PII or comply with its legal duties with respect to PII security and privacy – facts Lakeview was acutely aware of. ¶¶196-201, 925-926. Sevak further alleges as a result of this deception, he provided his PII to Lakeview and suffered harm. That is sufficient to establish a deceptive act and causation. *See Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29-30 (2000); *Krobath v. S. Nassau Comm. Hosp.*, 115 N.Y.S.3d 389, 392 (2019).

Putting aside New York Plaintiffs' right to ***statutory damages*** under the GBL, Defendants' challenges to Sevak's "claim for actual damages" also fail. Mot. at 10-11. Actual damages under the GBL are not limited to amounts directly paid for a defendant's services, as Defendants contend, and the time Sevak spent mitigating harm from the data breach and loss of value of his PII are recoverable. ¶¶360-365, 928; *Experian*, 2016 WL 7973595, at *3-5; *Mednax*, 603 F. Supp. 3d at 1203-04, 1211; *Marriott*, 440 F. Supp. 3d at 493-95.

### 8. Plaintiffs State a Washington Consumer Protection Act Claim

Defendants' challenges to Plaintiff Arthur's Washington Consumer Protection Act ("WCPA") claim fare no better. The failure to employ adequate security measures is an unfair act under the WCPA. *See Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1162 (W.D. Wash. 2017). The claim has a sufficient connection to Washington, where Arthur's loan services were provided, where he provided his PII and where he was injured, including by spending time and money remedying the effects of the data breach. *See, e.g.*, *Murphy v. Toyota Motor Sales USA, Inc.*, 2021 WL 2801456, at *4 (C.D. Cal. Apr. 21, 2021). While actual damages are not

- 19 -

required to state a WCPA claim, contrary to Defendants' contention (Mot. at 18), the lost time Arthur spent dealing with the fallout of the data breach, and the loss of value of his PII exposed in the breach, are sufficiently-alleged actionable injuries under the WCPA. ¶¶231, 233; *see In re MCG Health Data Sec. Issue Litig.*, 2023 WL 3057428, at \*11 (W.D. Wash. Mar. 27, 2023) , *R&R adopted* 2023 WL 4131746 (W.D. Wash. June 22, 2023); *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash.2d 27, 58 (2009).

Finally, Defendants argue that Plaintiffs fail to allege an unfair practice "occurring in trade or commerce" because Arthur did not use Pingora's services and Bayview only stored his PII. Mot. at 18-19. That Defendants did not deal directly with Arthur but gathered and stored his data does not shield them from liability. The WCPA defines trade and commerce to include "any commerce directly or indirectly affecting the people" of Washington. Wash. Rev. Code §19.86.010(2). The Complaint alleges Bayview "obtained and stored" Plaintiffs' PII to allow "its subsidiaries to service loans and manage portfolios of mortgages" and that its "acts and practices were done in the course of it and its affiliates' businesses of offering, providing, and servicing loans throughout Washington." ¶¶937-938. That meets the WCPA's definition of trade and commerce. Pingora likewise engaged in "the procurement or provision of loan services to or for" Plaintiffs and serviced loans for borrowers in Washington. ¶¶948-949. Whether Arthur used Pingora's services is irrelevant, as a plaintiff need not be in privity with a defendant to state a WCPA claim. *See Holiday Resort Comm. Ass'n v. Echo Lake Assocs.*, 134 Wash. App. 210, 219-20 (2006); *In re Accellion, Inc. Data Breach Litig., LLC*, 2024 WL 333893, at \*18 (N.D. Cal. Jan. 29, 2024).

## III.   <u>CONCLUSION</u>

Apart from the breach of contract and FDUTPA actual damages claims, the Court should deny Defendants' Motion. To the extent any other portion of the Motion is granted, Plaintiffs respectfully request leave to amend under Rule 15 of the Federal Rules of Civil Procedure.

4862-6470-6502.v1

DATED:  June 7, 2024

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON
Florida Bar No. 0084824
DOROTHY P. ANTULLIS
Florida Bar No. 890421
NICOLLE B. BRITO
Florida Bar No. 43399

<u>**Stuart A. Davidson**</u>
STUART A. DAVIDSON

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
dantullis@rgrdlaw.com
nbrito@rgrdlaw.com

COLSON HICKS EIDSON
JULIE BRAMAN KANE
*Plaintiffs' Liaison Counsel*
Florida Bar No. 980277
255 Alhambra Circle – Penthouse
Coral Gables, FL  33134
Telephone:  305/476-7400
305/476-7444 (fax)
julie@colson.com

MORGAN & MORGAN COMPLEX
  LITIGATION GROUP
JOHN A. YANCHUNIS
Florida Bar No. 324681
*Chair, Plaintiffs' Executive Committee*
201 North Franklin Street, 7th Floor
Tampa, FL  33602
Telephone:  813/223-5505
jyanchunis@ForThePeople.com

4862-6470-6502.v1

GIRARD SHARP LLP
ADAM E. POLK (*pro hac vice*)
JORDAN ELIAS (*pro hac vice*)
SIMON GRILLE (*pro hac vice*)
KIMBERLY MACEY (*pro hac vice*)
601 California Street, Suite 1400
San Francisco, CA  94108
Telephone:  415/981-4800
apolk@girardsharp.com
jelias@girardsharp.com
sgrille@girardsharp.com
kmacey@girardsharp.com

WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP
RACHELE R. BYRD (*pro hac vice*)
750 B Street, Suite 1820
San Diego, CA  92101
Telephone:  619/239-4599
619/234-4599 (fax)
byrd@whafh.com

MILBERG COLEMAN BRYSON
   PHILLIPS GROSSMAN, PLLC
GARY M. KLINGER (*pro hac vice*)
227 Monroe Street, Suite 2100
Chicago, IL  60606
Telephone:  866/252-0878
gklinger@milberg.com

THE LYON FIRM, LLC
JOSEPH M. LYON (*pro hac vice*)
2754 Erie Avenue
Cincinnati, OH  45208
Telephone:  513/381-2333
jlyon@thelyonfirm.com

- 22 -

CLAYEO C. ARNOLD,
  A PROFESSIONAL LAW CORP.
M. ANDERSON BERRY (*pro hac vice*)
GREGORY HAROUTUNIAN (*pro hac vice*
forthcoming)
865 Howe Avenue
Sacramento, CA  95825
Telephone:  916/777-7777
916/924-1829 (fax)
aberry@justice4you.com
gharoutunian@ justice4you.com

MARKOVITS, STOCK &
  DEMARCO, LLC
TERRY R. COATES (*pro hac vice*)
DYLAN J. GOULD (*pro hac vice*)
119 East Court Street, Suite 530
Cincinnati, OH  45202
Telephone:  513/651-3700
513/665-0219 (fax)
tcoates@msdlegal.com
dgould@msdlegal.com

*Members of Plaintiffs' Executive Committee*

- 23 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 7, 2024, a true and correct copy of Plaintiffs'

Unredacted Opposition to Defendants' Motion to Dismiss Amended Consolidated Class Action

Complaint was served via email upon the following counsel of record:

| | |
|---|---|
| Julie Singer Brady<br>BAKER & HOSTETLER LLP<br>200 South Orange Avenue<br>Suite 2300<br>Orlando, FL  32801 | jsingerbrady@bakerlaw.com |
| Paul Karlsgodt<br>BAKER & HOSTETLER LLP<br>1801 California Street<br>Suite 4400<br>Denver, CO  80202 | PKarlsgodt@bakerlaw.com |
| Evan M. Mannering<br>BAKER & HOSTETLER LLP<br>1050 Connecticut Ave, NW<br>Suite 1100<br>Washington, DC  20036 | emannering@bakerlaw.com |
| Joseph Givner<br>GIVNER LAW GROUP, LLP<br>19790 W. Dixie Hwy<br>Suite 706<br>Miami, FL  33180 | jgivner@givner.law |

**Stuart A. Davidson**
STUART A. DAVIDSON

4862-6470-6502.v1