**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| In re Lakeview Loan Servicing Data Breach Litigation | Case No. 1:22-cv-20955-DPG |

**DEFENDANTS' MOTION TO STRIKE CLASS DEMAND FOR STATUTORY DAMAGES BY CALIFORNIA SUBCLASS AND MEMORANDUM OF LAW**

Pursuant to Rule 23(d)(1)(D), Fed. R. Civ. P., Defendants Bayview Asset Management, LLC ("Bayview"), Lakeview Loan Servicing, LLC ("Lakeview"), Pingora Loan Servicing, LLC ("Pingora"), and Community Loan Servicing, LLC ("Community") (collectively, "Defendants"), respectfully move to strike the class demand for statutory damages on behalf of the California Subclass made in Count III of the Amended Consolidated Class Action Complaint (ECF No. 187, "FAC"). Defendants have separately moved to dismiss the Plaintiffs' CCPA claim under Rule 12(b)(6), Fed. R. Civ. P. If that claim is dismissed, this motion will be rendered moot.

**INTRODUCTION**

In Count III of the FAC, seven of the 26 named Plaintiffs bring a claim on behalf of a California Subclass for statutory damages under Section 1798.150 of California's Consumer Privacy Act (the "CCPA"). The CCPA provides, however, that statutory damages are only available if a plaintiff first provides notice to the defendant and gives the defendant an opportunity to cure the alleged CCPA violation. The FAC filed by Plaintiffs alleges that only the named plaintiffs provided the requisite notice and, even for those Plaintiffs, there are clear deficiencies in the notice provided. The FAC does not allege that any of the other 888,129 members of the putative California Subclass provided the requisite statutory notice. Nor does it allege that the putative California Subclass members appointed any of the named Plaintiffs as their agent for the purpose of giving such notice. Nonetheless, the California Subclass seeks a recovery of statutory

damages on behalf of all members of the putative California Subclass of between $88,813,600 and $666,102,000.

If the absent members of the putative California Subclass each brought individual actions under the CCPA, none of those individuals would be entitled to seek statutory damages since they did not provide the requisite notice. Plaintiffs here seek to circumvent this fatal defect by bringing the CCPA claim on a class-wide basis. However, neither California law nor federal law supports such an abusive expansion of the substantive rights of the California Subclass through the use of a class action. Because the entire California Subclass, with the alleged exception of the seven named Plaintiffs, failed to provide the requisite statutory notice, the demand for statutory damages made on behalf of the putative California Subclass should be stricken.[1]

## I. BACKGROUND

1. There are seven named plaintiffs in the FAC bringing claims on behalf of the California Subclass: Robert Keach, Cindy Villanueva, Pedro Rubio, Norma Grossman, Maureen Keach, Linda Kim, and Jay Saporta (collectively the "California Subclass Plaintiffs"). [FAC ¶¶ 746 – 752].

2. R. Keach, Grossman, M. Keach and Saporta allege they gave notice to Pingora [FAC ¶¶ 746, 749, 750 and 752].

3. R. Keach, M. Keach, Kim and Saporta allege they gave notice to Bayview [FAC 746, 750, 751 and 752].

4. Villanueva and Rubio allege they gave notice to Lakeview [FAC ¶¶ 747, 748].

5. Kim alleges she gave notice to Community [FAC ¶ 751].

---

[1] Defendants are not moving to strike any claim for actual damages under the CCPA by the California Subclass. The relief sought is limited strictly to the claim for statutory damages.

6. The "California Subclass" is defined in the FAC as "All individuals residing in California whose PII was accessed or exfiltrated during the Data Breach." [FAC ¶ 614]

7. The California Subclass consists of approximately 888,136 individuals.[2] *See* Composite Exhibit A (Excerpts from Defendants Bayview, Pingora and Lakeview's Objections and Responses to Plaintiffs' First Set of Interrogatories.)

8. The FAC does not allege that any of the approximately 888,129 absent members of the putative California Subclass provided the requisite statutory notice.

9. The FAC does not allege that the putative California Subclass appointed any of the California Subclass Plaintiffs as their agent for the purpose of giving such notice.

10. The CCPA defines recoverable damages for a plaintiff to be the "greater of" actual damages or statutory damages of no less than $100 and no greater than $750. Cal. Civ. Code § 1798.150(a)(1)(A).

11. The statutory scheme, therefore, enables an aggrieved plaintiff who suffers no actual damages to recover no less than $100 and as much as $750 in statutory damages from a defendant.

12. With 888,136 claimants in the putative California Subclass, Defendants collectively face statutory damages under the CCPA in the staggering amount of no less than $88,813,600 and as much as $666,102,000, even if no one in the proposed class suffered any actual damages.

A.   **Demands for Class Relief that are Legally Defective as Pled Must Be Stricken**

When the unsuitability of class treatment as to one or more issues is clear from the face of the complaint, and when entertaining a motion to strike does not "mirror the class certification

---

[2] In answers to Interrogatories, each of Bayview, Pingora and Lakeview indicates that 888,136 persons received notice of the data breach incident from Defendants. To be clear, this does not mean that personally identifiable information of such persons was actually subject to any exfiltration or theft and Defendants in fact dispute such suggestion.

inquiry," motions to strike those allegations may be properly filed and considered before expensive and exhaustive discovery is undertaken. *Goff v. LaSalle Bank, N.A.*, 2009 U.S. Dist. LEXIS 141567, at *9-10 (N.D. Ala. 2009) (granting motion to strike class allegations); *In re Initial Public Offering Securities Litigation*, No. 21-MC-92(SAS), 2008 U.S. Dist. LEXIS 38768, 2008 WL 2050781, at *2 (S.D.N.Y. May 13, 2008) (granting motion to strike class allegations as to eight consolidated class actions); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 (D.N.J. 2003) (striking class allegations). Motions to strike reflect the Court's inherent power to prune pleadings to expedite the administration of justice and to prevent abuse of its process. *Bd. of Educ. of Twp. High Sch. v. Climatemp, Inc.*, Nos. 79-C-3144 & 79-C-4898, 1981 U.S. Dist. LEXIS 11092, 1981 WL 2033v, at *2, *5 (N.D. Ill. Feb. 20, 1981) (striking class allegations for failure to meet numerosity requirement where discovery identified a limited number of potential plaintiffs); *see also* 1 Joseph M. McLaughlin, McLaughlin on Class Actions § 3:4 (20th ed.) ("Class allegations also may be stricken when they are asserted in contravention of a clear legal bar against class treatment of the action, such as the plaintiff's lack of standing or the assertion of claims under a statute that does not permit class treatment.").

  **B.**  **Only Individuals Who Provide a Statutory Cure Notice Pursuant to the CCPA are Entitled to Seek Statutory Damages.**

Only those individuals who provide a statutory cure notice to a defendant pursuant to Section 1798.150(b) of the CCPA are authorized to seek any statutory damages. The version of Section 1798.150(b) in effect at the time of the facts giving rise to this case provided:

> Actions pursuant to this section may be brought by a consumer if prior to initiating any action against a business for statutory damages on an individual or class-wide basis, a consumer provides a business 30 days' written notice identifying the specific provisions of this title the consumer alleges have been or are being violated. In the event a cure is possible, if within the 30 days the business actually cures the noticed violation and provides the consumer an express written statement that the violations have been cured and that no further violations shall occur, no action for

>individual statutory damages or class-wide statutory damages may be initiated against the business. No notice shall be required prior to an individual consumer initiating an action solely for actual pecuniary damages suffered as a result of the alleged violations of this title.

The objective of this pre-suit requirement under Section 1798.150(b) (the "Pre-Suit Notice") is "to allow the defendant an opportunity to cure the defect outside of court." *Griffey v. Magellan Health Inc.,* 2022 U.S. Dist. LEXIS 98785, at *20; 2022 WL 1811165 (D. Ariz. 2022) (quoting *T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 875 (N.D. Cal. 2015). The legislature sought to address industry concerns when they enacted the CCPA by adding a clear "right to cure" to protect businesses from liability when a violation has been cured. (2017 Legis. Bill Hist. CA A.B. 375). The authors believed it was a necessary tradeoff to address competing interests. *Id*.

The failure by a plaintiff to deliver the requisite pre-suit notice and afford the defendant an opportunity to cure defeats any claim for statutory damages under the CCPA. *See e.g. Griffey*, 2022 U.S. Dist. LEXIS 98785, at *20 (dismissing with prejudice the plaintiffs' claim under the CCPA due to plaintiffs' failure to allege that they gave the requisite cure notice under the CCPA); *Guy v. Convergent Outsourcing, Inc.,* 2023 U.S. Dist. LEXIS 125332 *29; 2023 WL 4637318 (W. D. Wash. 2023) (dismissing claim for statutory damages under the CCPA for failure to provide requisite cure notice required by Section 1798.150(b)).

As the only individuals alleged to have provided the statutory cure notice in this action are the California Subclass Plaintiffs, the absent members of the putative California Subclass lack any substantive right under the CCPA to seek statutory damages. If each of the absent members of the California Subclass filed individual actions for relief under the CCPA, none of the members of the California Subclass (other than the California Subclass Plaintiffs) would have the right to seek statutory damages, having failed to send the statutorily required cure notice to Defendants.

    **C.**    **California Law Prohibits an Expansive Interpretation of the CCPA Notice Provision that Dispenses with the CCPA's Requirement of a Statutory Cure Notice.**

        **i.**    **Rules of Statutory Construction of Penal Statutes Require a Holding that Only Consumers who actually Gave Statutory Notice have Perfected a Right to Seek Statutory Damages Under the CCPA.**

The Supreme Court of California characterizes statutory damages as "penal," *Hale v. Morgan,* 22 Cal 3rd 388, 401 (Cal. 1978), and looks "with disfavor on ever mounting civil penalties." California law requires a narrow construction of statutes that either require or permit statutory damages. *Id.*; *see also* Cal. Civ. Code § 1798.150(a)(2) (instructing trial court to consider culpability when assessing CCPA statutory damages rather than compensation of the plaintiff). *Hale* explains that when a statute is penal, the trial court must adopt "the narrowest construction of its penalty clause to which it is reasonably susceptible in the light of its legislative purpose." *Id.* at 405; *Walsh v. Dept. Alcoholic Bev. Control*, 59 Cal.2d 757, 764 (Cal. 1963). *Hale* constitutes the leading case in California jurisprudence on statutory penalties. *See, e.g., Starbucks Corp. v. Superior Court*, 168 Cal. App. 4th 1436, 1450 (Cal. Court of Appeal, 4th Dist. 2008) (referring to *Hale* as the "leading case involving a statutory penalty").

Interpreting the CCPA's penalty clause (that is, the statutory damages provision) consistent with *Hale* and its progeny mandates a finding that statutory damages are only available on a class-wide basis under 1798.150 to those individuals who provided the requisite pre-suit notice. While the statute does make reference to the possibility of "class-wide" relief, it does not identify who falls within that class. Nor does the statute expressly authorize a consumer to send a cure notice and, thereby, satisfy the notice requirement for all persons in a proposed class, thereby perfecting the rights of hundreds of thousands of consumers to obtain statutory damages, which are staggering when aggregated. Under *Hale* and its progeny, the CCPA cannot be expanded to create such rights.

Rather, it is most reasonable to read the CCPA, consistent with *Griffey* and *Convergent, supra*, as limiting recovery of statutory damages to those consumers who provide the requisite notice. This is certainly consistent with California's Supreme Court's ruling that penal statutes are to be given their narrowest construction.

Any other reading would deprive a defendant of its right to provide a customized cure to a sender of a notice in a data breach dispute. For example, in response to a specific cure letter, a defendant could simply delete all information relating to that complaining consumer, thereby making it impossible for a future exfiltration of that consumer's data. The statute was meant to protect businesses that cure from liability for statutory damages. Expansively reading the penalty clause to authorize a few cure notices to trigger statutory damages for hundreds of thousands of consumers deprives defendants of their statutory right to provide a customized cure in response to a cure notice.

> ii. **The Canon of Constitutional Doubt Also Counsels in Favor of Requiring Compliance with the Notice and Cure Provision by a Claimant Before the Claimant Can Recover Statutory Damages.**

"Article I, section 17 of the California Constitution commands that 'excessive fines' not be imposed." *See Hale v. Morgan*, 584 P.2d 512, 524 (Cal. 1978) (Newman, Concurring). Statutory damages violate the bar on excessive fines when the statutory penalty is mandatory, mechanical, unrelated to actual damages, so substantial as to be potentially confiscatory and subject to potential abuse by creating a potential for a "veritable financial bonanza" for a plaintiff. *Id*. at 522 (striking applicability of a statute imposing a mandatory daily penalty on a landowner that deprives a tenant of utilities where the penalty's application was "mandatory, mechanical, potentially limitless in its effect regardless of circumstance, and capable of serious abuse" and converted a single wrongful act into a veritable financial bonanza).

7

If a "statue is susceptible of two constructions, one of which will render it constitutional and the other . . . [which will] raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it . . . free from doubt . . ." *Ware v. Antelope Valley Union High School District*, 2018 U.S. Dist. LEXIS 226913 at *9 (C.D. Cal. 2018). In *Ware*, the California Supreme Court considered the application of a California Statute that imposed a minimum penalty of $4,000 in connection with a violation of the Americans with Disabilities Act (the "ADA"). The California Supreme Court framed the "key question" before it to be whether the minimum statutory damages award should be calculated based on each day Plaintiff attended classes and was not properly accommodated or on the number of disability-related obstacles that deprived Plaintiff of full and equal access to educational services. *Id*. at *7. Invoking the canon of constitutional doubt, the Court in *Ware* narrowly construed the penalty at issue and held the statute imposes the minimum penalty for each separate violation of the ADA rather than for each class day the plaintiff did not receive an adequate accommodating device. The *Ware* court explained:

> Awarding Plaintiff $4,000 in statutory damages for each day she attended school (i.e., $2,572,000)—irrespective of the extent of her actual injury—transforms a single wrongful failure to provide Plaintiff with a particular AAC device into a "veritable financial bonanza," thereby violating the constitutional prohibition on excessive penalties.

*Id*. at 10.

In *Starbucks Corp. v. Superior Court*, 168 Cal. App. 4th 1436, 1440 (Cal. 4th Dist. 2008), the appellate court invoked the canon of constitutional doubt to issue a writ of mandate vacating a denial of a motion for summary judgment on a class claim demanding statutory penalties. There, the plaintiffs sought class-wide recovery of a statutory penalty of $200 for each job applicant at Starbucks who was asked about past criminal convictions for marijuana possession, which

translated to an aggregate potential recovery of $26 million. *Id*. The trial court held on summary judgment that the statute in question prohibited the question regarding such convictions and entitled each applicant to a statutory penalty of no less than $200. The appellate court rejected this interpretation. Instead, the appellate court limited the penalty only to aggrieved persons – meaning persons who actually had marijuana convictions at the time of the application. The appellate court's interpretation sought to avoid a constitutionally "excessive penalty" and noted the following:

> Applying these principles of statutory construction, we narrowly interpret section 432.7, subdivision (c) in accordance with the traditional principle thaat the applicant be a person who has been aggrieved by the statutory violation. Any other construction would produce the absurd result of turning the statute into the veritable "adding machine" that has been decried by our Supreme Court.

*Id*. at 1451. Similarly, in *Balmoral Hotel Tenants Association v. Lee*, 226 Cal. App. 3d 686, 689 (Cal. App. 1st Dep't 1990), the Court of Appeals reversed a wrongful eviction award of $4.8 million in favor of three tenants because the award wrongly included a statutory penalty of treble damages for mental anguish. The court found that the term "'actual damages'" was "unquestionably ambiguous" and, to avoid Constitutional doubt that it constituted an excessive penalty, found that the term did not include mental anguish. *Id.* at 697. The court refused to sanction mandatory penalties of such disproportionate culpability finding them to be constitutionally excessive.

The canon of Constitutional doubt mandates that the CCPA be construed to require that each member of a class seeking statutory damages fully comply with the notice and cure provisions that were meant to protect businesses in California. The statutory penalty provisions of Section 1798.150 raise serious issues of Constitutional doubt regarding excessive penalties in a class action setting because they are mandatory, mechanical (being no less than $100 per person and as much

9

as $750 per person) and wholly unrelated to actual damages. In addition, the penalties are so substantial as to be confiscatory and subject to potential abuse because they create a potential for a "veritable financial bonanza" for the putative California Subclass and their counsel. In fact, the potential statutory damages in this case of no less than $88,813,600 and up to $666,102,000 dwarf the potential damages in *Starbucks* of $26,000,000 that the Court of Appeals decried as a "veritable financial bonanza." *See also Ratner v. Chemical Bank New York Trust Co.,* 54 F.R.D. 412, 416 (S.D.N.Y 1972) ("the proposed recovery of $100 each for some 130,000 class members would be a horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant, for what is at most a technical and debatable violation of the Truth in Lending Act."). California law compels this Court to give Section 1798.150 a construction that does not raise Constitutional doubts; namely, the construction that requires each class member to comply with the notice and cure provision of the CCPA meant to protect businesses before invoking potential statutory penalties.

    **D.**    **Because the CCPA Statutory Damage Provision Raises Constitutional Problems, the Court Should Adopt a Plausible Interpretation of the Statute that Avoids Constitutional Doubt.**

Where a statute is capable of two possible statutory constructions and one of those raises constitutional problems, the other interpretation should prevail. *Clark v. Martinez*, 543 U.S. 371, 380-381 (2005). This "canon of constitutional avoidance in statutory interpretation" rests on the reasonable presumption that the legislature did not intend to raise serious constitutional doubts. *Id.* at 381. The mandatory statutory damage provisions of the CCPA also raise serious Constitutional questions under Due Process Clause of the United States Constitution. Consistent with the guidelines set forth in *Clark*, this Court must give Section 1798.150 a construction that does not raise Constitutional doubts; namely, the construction that requires each class member to

comply with the notice and cure provision of the CCPA meant to protect businesses before invoking potential statutory penalties.

The Due Process Clause of the Fourteenth Amendment prohibits a State from depriving any person of property without due process of law. "The due process clause . . . set[s] outer limits on the magnitude of damages awards." *Wakefield v. ViSalus, Inc.*, 51 F. 4th 1109, 1120 (9th Cir. 2022). Damages awarded pursuant to a statute violate due process when they are "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919); *Wakefield* at 1120. Aggregated statutory damages, as those in class actions, in particular raise serious constitutional concerns because of their potential for being astronomical. *Wakefield* at 1121. Thus, aggregated statutory damages violate due process when they are wholly disproportionate and unreasonable in relation to the goals of the statue and the conduct at issue, even where the per-violation penalty is constitutional. *Wakefield* at 1123. Furthermore, Constitutional Due Process concerns "are heightened" when "statutory damages are awarded as a matter of strict liability when plaintiffs are unable to quantify any actual damages they have suffered . . ." *Wakefield* at 1120.

In *Wakefield*, the Ninth Circuit Court of Appeals vacated a denial of a post-trial motion challenging the constitutionality of a statutory award in the amount of $925,220,000 under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). *Wakefield* at 1125. The TCPA provides that recipients of robocalls can sue to recover "for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). In *Wakefield*, the defendant sent 1,850,440 prerecorded robocalls in violation of the TCPA. Because of the $500 minimum penalty per call under the TCPA, the total damage award against the defendant was $925,220,000. The Ninth Circuit found that the trial Court failed to

evaluate the Constitutional challenge to the statutory award under the guidelines of *Williams* and did not consider the factors set forth in *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1309 (9th Cir. 1990) to determine if the statute was disproportionately punitive. *Wakefield* at 1123 (the seven factors being: "1) the amount of award to each plaintiff, 2) the total award, 3) the nature and persistence of the violations, 4) the extent of the defendant's culpability, 5) damage awards in similar cases, 6) the substantive or technical nature of the violations, and 7) the circumstances of each case."); *see also Internet Tracking Litig. v. Meta Platforms, Inc. (In re Facebook, Inc.)*, 2024 U.S. App. LEXIS 3952, *4, 2024 WL 700985 (9th Cir. 2024) ("In its final order approving the settlement, the district court applied the correct legal standard under Federal Rule 23 of Civil Procedure and the *Hanlon* factors. With 124 million potentially affected Facebook users in the United States, the district court properly rejected the $1.24 trillion in statutory damages proposed by Objectors as an unreasonable baseline that would violate due process."); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 963 (8th Cir. 2019) (upholding finding that aggregated statutory damages of $1.6 billion in a TCPA class action violated Due Process Clause; "the absolute amount of the award, not just the amount per violation, is relevant to whether the award is 'so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.'"); *Montera v. Premier Nutrition Corp.*, 621 F. Supp. 3d 1012, 1020-21 (N.D. Cal. 2022) (statutory damages of $91,436,950, are "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable, and thus violative of the Due Process Clause;"); *Bellshaw v. Farmers Ins. Co.*, 326 Ore. App. 605, 630 (Or. App. 2023) (remanding with instructions to evaluate aggregated statutory class action award based upon the holdings in *Williams* and *Wakefield, supra*.).

Here, the Court has a plausible interpretation of the CCPA statutory cure provision that avoids a Constitutional quandary. In particular, the Court can read, and in accordance with *Clark*,

should read, the CCPA to require that a consumer first send a notice and allow a defendant its statutory right to cure before that consumer is entitled to recover any statutory damages. Allowing one, or small group of consumers, to act on behalf of a class of hundreds of thousands of consumers and thereby create a potential recovery of hundreds of millions of dollars in statutory damages wholly unrelated to and disconnected from any actual damages suffered, renders the CCPA infirm under the Due Process Clause of the Fourteenth Amendment as in *Wakefield* and *In re Facebook, Inc.*

E. **Plaintiffs Cannot Use the Class Action Procedure to Expand the California Subclass' Substantive Rights.**

Class actions cannot expand a litigant's substantive rights. 28 U.S.C. § 2072, the enabling act for the Federal Rules of Civil Procedure, provides that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right." Rule 23 of the Federal Rules of Civil Procedure governing class actions must be interpreted subject to this limitation. *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right.'") (quoting 28 U.S.C. § 2072).

In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the Supreme Court struck down an effort to use the class action procedures under Fed. R. Civ. P. 23 to expand the substantive rights of a plaintiff class. The Supreme Court held that a trial court in a class action seeking redress for alleged employment discrimination could not certify a class of employees seeking backpay based on a "Trial by Formula." In the "Trial by Formula," "a sample set of the class members would be selected, as to whom liability for sex discrimination and the backpay owing as a result would be determined in depositions supervised by a master. The percentage of claims determined

to be valid would then be applied to the entire remaining class, and the number of (presumptively) valid claims thus derived would be multiplied by the average backpay award in the sample set to arrive at the entire class recovery--without further individualized proceedings." *Id*. at 367. The Supreme Court rejected this novel approach. The Supreme Court explained that when a plaintiff seeks individual relief such as reinstatement or backpay after establishing a pattern or practice of discrimination, a district court must usually conduct additional proceedings to determine the scope of individual relief. *Id*. at 366. "At this phase, the burden of proof will shift to the employer, but the employer will have the right to raise any individual affirmative defenses it may have, and to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons. *Id.* at 366-367. The "Trial by Formula" methodology adopted by the trial court, however, stripped the employer of its entitlement to litigate its statutory defenses to individual claims. The Court then denied class certification explaining:

> Because the Rules Enabling Act forbids interpreting *Rule 23* to "abridge, enlarge or modify any substantive right," *28 U.S.C. § 2072(b)*; see *Ortiz, 527 U.S., at 845, 119 S. Ct. 2295, 144 L. Ed. 2d 715*, a class cannot be certified on the premise that *Wal-Mart* will not be entitled to litigate its statutory defenses to individual claims.

*Id*. at 367.

In this action, Plaintiffs seek to enlarge the substantive rights of absent class members who did not give the requisite statutory cure notice by lumping hundreds of thousands of them in with a handful of California plaintiffs who allege they did. The FAC only alleges that the California Subclass Plaintiffs provided the statutory cure notice. Had all of the members of the putative California Subclass sued individually, only those who provided the requisite notice would be entitled to statutory damages. Nonetheless, the named plaintiffs in this case seek to recover statutory damages on behalf of all of the members of the putative California Subclass and thereby improperly expand the rights and remedies available to the California Subclass through the use of

14

a class action. That constitutes a distortion of the class action rules expressly barred by 28 USCS § 2072.

## CONCLUSION

For all of the foregoing reasons, the class demand by the California Subclass for statutory damages under the CCPA should be stricken.

## **REQUEST FOR HEARING**

Defendants request oral argument. The Motion addresses a fundamental deficiency in what is by far the Plaintiffs' largest claim for damages. Defendants believe the Court will benefit from oral argument and the opportunity to question the parties. Disposition of this Motion will potentially narrow a critical issue in this case and facilitate settlement discussions. Defendants estimate that a half-hour per side will be sufficient.

| | |
|---|---|
| Dated: June 11, 2024 | <u>*s/Jacob J. Givner*</u> |
| | Jacob Joseph Givner |
| | Florida Bar No. 850705 |
| | jgivner@givner.law |
| | paralegal@givner.law |
| | GIVNER LAW GROUP, LLP |
| | 19790 W. Dixie Hwy, Suite 706 |
| | Miami, Florida 33180 |
| | Telephone: 305.933.9970 |
| | |
| | Julie Singer Brady |
| | Florida Bar No. 389315 |
| | jsingerbrady@bakerlaw.com |
| | Yameel L. Mercado Robles |
| | Florida Bar No. 1003897 |
| | ymercadorobles@bakerlaw.com |
| | BAKER & HOSTETLER LLP |
| | 200 South Orange Avenue, Suite 2300 |
| | Orlando, Florida 32801 |
| | Telephone: 407.649.4000 |
| | Facsimile: 407.841.0168 |
| | |
| | Paul Karlsgodt (*pro hac vice*) |
| | PKarlsgodt@bakerlaw.com |
| | BAKER & HOSTETLER LLP |
| | 1801 California Street, Suite 4400 |
| | Denver, CO 80202 |
| | Telephone: 303.861.0600 |
| | Facsimile: 303.861.7805 |
| | |
| | Evan M. Mannering (*pro hac vice*) |
| | emannering@bakerlaw.com |
| | BAKER & HOSTETLER LLP |
| | 1050 Connecticut Ave, NW, Suite 1100 |
| | Washington, DC 20036 |
| | Telephone: 202.861.1500 |
| | Facsimile: 202.861.1783 |
| | |
| | *Counsel for Defendants* |

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on June 11, 2024, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF, which will send a Notice of Electronic Filing to all counsel of record.

                        *s/ Jacob J. Givner*
                        Jacob Joseph Givner