**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Master File No. 22-20955-Civ-GAYLES/TORRES

In re LAKEVIEW LOAN SERVICING
DATA BREACH LITIGATION

---

### *ORDER ON PRODUCTION OF INVESTIGATIVE REPORTS*

The parties have briefed and presented argument with respect to a discovery issue surrounding Plaintiffs' efforts to compel production of communications with and reports prepared by cybersecurity firms Mandiant and Protiviti over Defendants' objections. Defendants contend that they are protected from disclosure because they were prepared in anticipation of litigation and adverse regulatory proceedings after an unauthorized access to certain devices in Bayview's network (the "breach").

After considering the parties' supplemental briefing on this matter as well as argument of counsel, the Court preliminarily sustains the Defendants' objection. Any motion for reconsideration of this Order should be accompanied with supporting factual evidence obtained since the date of the last hearing that further supports Plaintiffs' position that the materials here are not privileged. And any motion for reconsideration should be filed within fourteen days from this date.

### *I.*     **BACKGROUND**

In October 2019, Mandiant and Bayview Asset Management, LLC ("Bayview") entered into a Master Services Agreement ("MSA") and executed a Statement of Work

- 1 -

("SOW") that secured Mandiant's services in the event of a data incident, which would be defined at the time of engagement. To be ready to quickly provide services in the event of a data incident, Mandiant gathered information about Defendants' systems, security tooling, logging, and other relevant matters.

On December 2, 2019, a different security company, Protiviti, was engaged by Bayview through its counsel, BakerHostetler, to provide various services, two of which were related to data privacy or information security but unrelated to the breach. Prior to BakerHostetler engaging Protiviti, Protiviti had not entered into any SOW with Defendants to provide similar work.

In June 2021, Mandiant and Bayview executed a renewal SOW for Mandiant to continue to be at the ready so that Bayview could respond quickly in the event of a data incident. Mandiant was purportedly not actively performing any work at the time the breach was discovered. But when the breach was discovered on December 7, 2021, the only work Mandiant had performed for Bayview was the report providing an assessment of Bayview's ability to support requests that may be made by Mandiant during an incident response engagement. Otherwise, Mandiant was simply at the ready to quickly respond if a data incident occurred.

And, four days after the breach was discovered, Bayview's counsel BakerHostetler engaged Mandiant to perform the forensic investigation related to the breach. After that investigation was completed, an internal report was prepared for counsel's review. That report has not been produced in the litigation. But Bayview has produced an Incident Summary Report that is Bayview's summary of the facts

identified during the investigation. Further, Lakeview's Rule 30(b)(6) witnesses testified at length regarding the facts surrounding Defendants' security posture, the Incident, Defendants' response to the Incident and the factual findings made by Mandiant and Protiviti.

Nevertheless, Plaintiffs are moving to compel production of the internal reports and other documentation created by Mandiant and Protivity.  Plaintiffs argue that these reports were created within the ordinary course of Bayview's business and, therefore, are not protected work-product. The key factors supporting their position are: (1) there was a pre-existing continuous business relationship between Bayview and both Mandiant and Protiviti; (2) per the available facts and SOWs, Bayview was extensively involved in the post-breach investigation; and (3) the clear scope of the SOWs demonstrates an obvious business need to investigate and remediate the breach.

Defendants object on work product grounds.  They argue that these reports were generated at the direction of counsel and for the defense of just this type of litigation. Thus, so long as the underlying facts have been produced to Plaintiffs, their security experts' reports themselves are protected from disclosure as work product.

## II.    ANALYSIS

In the Eleventh Circuit, courts have used either the primary purpose or dual purpose test in addressing claims of work product protection. *Goosby v. Branch Banking & Trust Co.*, 309 F. Supp. 3d 1223, 1234 (S.D. Fla. 2018). Under the primary purpose test, a document is protected "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Id.* at 1233 (quoting

*U.S. v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981)). With the dual purpose test, "even if a document has some purpose within the ordinary course of business, the document is protected as work product if it is substantially infused with litigation purpose." *Id.* (quoting *Devs. Sur. & Indem. Co. v. Harding Vill., Ltd.*, No. 06-21267CIV, 2007 WL 2021939, at *2 (S.D. Fla. July 11, 200)). This Court has previously found that it "view[s] the issue from a practical standpoint" and looks to whether litigation was one important reason for the creation and use of a document. *See, e.g., Van Calcar v. Royal Caribbean Cruises, Ltd.*, No. 14-20280-CIV-COOKE/TORRES, 2014 WL 12861855, at *3 (S.D. Fla. Nov. 19, 2014); *Button v. Royal Caribbean Cruises, Ltd.*, No. 12-23624-Civ-UNGARO/TORRES, 2013 WL 12064489, at *5 (S.D. Fla. June 25, 2013).

At the first discovery hearing held in the case, Plaintiffs argued they did not timely challenge Defendants' privilege and work product assertions because they did not know that the Defendants had a relationship with Mandiant and Protiviti prior to the Incident until documents were produced. Thus, Plaintiffs' challenge to Defendants' privilege and work product assertions appears focused on their assertion that Defendants had a relationship with Mandiant and Protiviti prior to the breach.

They thus seek (1) the written reports prepared by Mandiant and Protiviti; and (2) communications between Defendants and Mandiant and Protiviti that did not include (as author, recipient, or cc) legal counsel.  But Defendants have persuasively argued that, at least on a prima facie basis, Bayview's pre-breach relationships with Mandiant and Protiviti do not invalidate work product protection.  There is certainly support for Defendants' position in similar cases.

- 4 -

In *In re Experian Data Breach Litig.,* No. SACV 15-01592, 2017 WL 4325583, at * 2-3 (C.D. Cal. May 18, 2017), the court addressed a similar work product issue involving the same vendor, Mandiant, that had performed work for Experian prior to a data breach. This work involved Mandiant performing an analysis of Experian's systems, not unlike Mandiant's initial work here. *Id.* at *3. But, while Mandiant had previously performed work for Experian, it was outside counsel who hired Mandiant to perform the investigation pertaining to the subject data breach. *Id.* So, notwithstanding that Mandiant had previously performed work for Experian, the court found that "Mandiant conducted the investigation and prepared its report for [outside counsel] in anticipation of litigation, even if that wasn't Mandiant's only purpose" and, therefore, it was protected work product. *Id.* at *2.

Similarly, in *In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.,* MDL No. 19-MD-2879, 2021 WL 2660180 (D. Md. June 29, 2021), plaintiffs argued that Marriott could not claim work product over another security consultant's work relating to a data breach because Marriott had an existing relationship with that entity. *Id.* at *3. The court rejected that argument, finding that because Marriott had retained IBM to provide the services specific to assisting BakerHostetler in providing legal advice to Marriott, the documents related to the consultant's investigation were protected attorney work product. *Id.* at *3-6. The fact that IBM's work "yielded a result or results similar to work done before…[could not] negate the universal agreement of the witnesses that Marriott had retained IBM for a specific purpose—to aid [counsel] in his defense of Marriott." *Id.* at *6.

These decisions are in accord with how this Court has analyzed claims of attorney work product over reports following an investigation. *See, e.g., Van Calcar*, 2014 WL 12861855 at *3; *Button*, 2013 WL 12064489 at *5. Like the reports in *Van Calcar* and *Button*, which generated fact work product used by defense counsel, Mandiant's report following its forensic investigation generated fact work product for BakerHostetler to use in providing legal advice. Protiviti's report also generated fact work product to be used by BakerHostetler in the legal defense of Defendants. The Mandiant and Protiviti reports are no different than those prepared by Royal Caribbean in *Val Calcar* and *Button* as far as their intended purpose. The fact that it is possible to ascribe a business purpose to such work is not dispositive because a business purpose can be ascribed to any incident reports, as an entity always has a business purpose in understanding how any type of incident occurred.

Accordingly, at least without further evidence supporting the contrary view, or a stronger showing of substantial hardship than has been made here, a prima facie basis exists to find that the security reports at issue are indeed protected as work product based on the dual purpose nature of the engagements that generated the reports. Plaintiffs' request to compel production of those reports and related documentation is thus DENIED.

**DONE AND ORDERED** by the Court this 12th day of June, 2024.

_____
EDWIN G. TORRES
Chief United States Magistrate Judge