**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| In re Lakeview Loan Servicing Data Breach Litigation | Case No. 1:22-cv-20955-DPG |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED**
**CLASS ACTION COMPLAINT**

## I.      PLAINTIFFS CONTINUE TO ENGAGE IN SHOTGUN PLEADING

Plaintiffs argue the Complaint is not a shotgun pleading because its allegations distinguish Bayview from "Lakeview, Pingora, and Community." ECF 206 ("Opp.") at 3. However, "Lakeview, Pingora, and Community" are separate Defendants and distinguishing one of four Defendants does not suffice because Defendants are denied fair notice of the allegations against them, resulting in "unnecessary and unchannelled discovery" and "unwarranted expense." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356–57 (11th Cir. 2018) (describing the "vices" of shotgun pleadings and their "intolerable toll" on courts and litigants). In any event, Plaintiffs' string cites purporting to show "Defendant-specific" allegations show just the opposite. Opp. at 3-4.[1]

Plaintiffs argue that incorporating all ***625 paragraphs*** of factual allegations into every Count is permissible because they do not incorporate legal allegations. Opp. at 4-5. This is wrong as a matter of law. ECF 201 ("Mot.") at 3-4 (citing *Jackson*, 898 F.3d at 1356 ("The amended complaint is an incomprehensible shotgun pleading [because it] incorporates by reference all of its factual allegations into each claim") & *Pelletier v. Zweifel*, 921 F.2d 1465, 1517–18 (11th Cir. 1991) (describing complaints incorporating all factual allegations into each count as "quintessential 'shotgun' pleadings" because "[a]nyone schooled in the law … would know that many of the facts alleged could not possibly be material to all of the counts")).[2,3]

---

[1] Plaintiffs cite ¶¶ 197, 200, 203-05, 208, 212, 706-07 (Opp. at 3), but ¶¶ 197, 200, 203, 205, 208, 212, and 706-07 recycle the same allegations and ¶ 204 recycles the allegations in ¶¶ 198 and 209. Plaintiffs' cites also encompass ¶¶ 196-213 (Opp. at 4, Pt. (6)), which recycle the same allegations for Lakeview, Pingora, and Community. *See also* Mot. at 3 (citing examples of shotgun pleading).

[2] In any event, Plaintiffs repeatedly incorporate hundreds of paragraphs of factual ***and legal*** allegations, so the Complaint is a shotgun pleading under Plaintiffs' own definition. ECF 187 ("Compl.") ¶¶ 713, 723, 733, 743, 767, 774, 781, 788, 875, 916, 931, 955.

[3] Plaintiffs argue that incorporating all Plaintiffs' allegations into Counts asserted by one or a few Plaintiffs is appropriate because all Plaintiffs' experiences are relevant. However, Plaintiffs incorporate ***430 paragraphs*** of allegations concerning all Plaintiffs into Counts asserted by one or a few Plaintiffs. Opp. at 5 n.4 (citing Compl., ¶¶ 27-78, 227-604); Mot at 3-4. Thus, *Bradbury v.*

Plaintiffs' argument that the Complaint complies with Rule 8 is belied by a cursory review of the 323-page Complaint. Opp. at 5-7; Mot. at 2. While "a lengthy complaint is not automatically a shotgun pleading," Plaintiffs fail to support their assertion that the Court and Defendants can sift through 323 pages and figure out which incorporated allegations relate to which Counts. Opp. at 5-6. Plaintiffs were required to provide "a short and plain statement of the claim," and cannot put the onus on the Court and Defendants.[4] Plaintiffs' argument that "Section V of the Complaint (¶¶ 227-613) describes Plaintiffs' damages," is unavailing because citing ***387 paragraphs*** underscores the fact that the Complaint is a shotgun pleading. Opp. at 7. In any event, Plaintiffs cited between ***712 and 954 paragraphs*** in support of their damages claims. Mot., *passim* (citing Compl. ¶¶ 713, 723, 733, 743, 767, 774, 781, 788, 875, 916, 931, 955).

## II.     PLAINTIFFS FAIL TO STATE A CLAIM

### A.     Negligence (Count I)

Plaintiffs fail to show a logical nexus between the Incident and their alleged damages. Plaintiffs argue their allegations suffice because they "took steps to safeguard their PII before the breach and soon after the breach (some almost immediately), several of them began experiencing (for the first time ever) identity fraud, plausibly accomplished via use of the PII exposed in the breach." Opp. at 7. However, alleging that only "several" Plaintiffs experienced fraud "after the

---

*NCL (Bahamas) Ltd.* is inapposite because the court permitted "***some*** unnecessary factual allegations." 2021 WL 2530664, at *3 (S.D. Fla. June 17, 2021). Plaintiffs' reliance on *Amin v. Pepperman* is misplaced because the court found that dismissal was warranted. 2023 WL 7323082, at *2 (M.D. Fla. Nov. 7, 2023). Here, the Complaint is far more egregious than the ***pro se*** complaint in *Amin*. Mot at 2 (explaining that a second shotgun pleading filed by "***a counseled plaintiff***" should be dismissed with prejudice).

[4] Plaintiffs' statement that Defendants "argued (successfully) that the prior complaint was insufficiently detailed" and are trying to "have it both ways" is baseless. Opp. at 6-7. Defendants argued the negligence claim was a shotgun pleading and the Court, *sua sponte*, held that additional Counts suffered from the same defect. ECF 59 at 5-6; ECF 144 at 14-15.

breach" does not, by itself, adequately support causation. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1327–28 (11th Cir. 2012) ("[A] mere temporal connection is not sufficient; Plaintiffs' pleadings must indicate a logical connection between the two incidents.").

Further, for the "several" Plaintiffs alleging fraud, there is no logical relationship between much of the alleged fraud and the accessed PII: "names, addresses, dates of birth, Social Security numbers, loan numbers, financial and bank account information, and, for some, additional information provided in connection with a loan application, loan modification, or other items regarding loan servicing." Compl. ¶ 4. Many of their fraud allegations do not involve use of this PII. *Id.* ¶¶ 272, 302 (Amazon and PayPal login credentials), ¶¶ 288, 333, 376, 377, 391, 421, 449 (credit/debit card information), ¶¶ 420 (mortgage account login credentials), ¶¶ 391, 450 (hacking cell phone and computer). There are no allegations that usernames, passwords, or other information necessary to access these accounts was accessed. Moreover, Plaintiffs allege they took "reasonable steps" to protect their PII before the Incident and cannot manufacture damages by undertaking efforts beyond what is "reasonable." Mot. at 19-20. Lastly, Plaintiffs' negligence per se allegations should be disregarded for the reasons stated in the Motion. *Id.* at 20.

**B.      California Consumer Privacy Act ("CCPA") (Count III)**

Plaintiffs' excuses for their failure to comply with the CCPA's notice requirement fail. Plaintiffs argue that Kim and Grossman did not file a "***complaint***" until after 30 days passed, but the CCPA requires notice before "any ***action***" is filed, and this "action" was filed before Kim and Grossman provided notice. Opp. at 9-10; Mot. at 6; Cal. Civ. Code § 1798.150(b).

Plaintiffs seek to avoid the plain language of Cal. Civ. Code § 1798.150(b) and rely on a "tentative ruling" in *Bohannon v. Lyon Real Estate* to allow them to file suit prematurely and then "amend to seek [statutory] damages" later. Opp. at 9-10. However, placeholder lawsuits violate the plain language of § 1798.150(b), which only dispenses with the notice requirement for "***an***

3

*action **solely** for actual pecuniary damages*….." Cal. Civ. Code § 1798.150(b). *Bohannan* is not

binding and should not be followed because it conflicts with the plain language of the CCPA and

the authorities cited in Defendants' Motion. Mot. at 6-7.

Plaintiffs argue they identified the provisions that were allegedly violated. Opp. at 11

(citing Cal. Civ. Code §§ 1798.81.5, 1798.150). However, §§ 1798.81.5 and 1798.150 are ***statutes***

containing numerous ***provisions***. Cal. Civ. Code § 1798.81.5(e) (recognizing the statute contains

numerous "provisions"); *id.* § 1798.150 (containing numerous provisions and incorporating "the

specific provisions of this title"). This is insufficient. Cal. Civ. Code § 1798.150(b) (requiring

"written notice identifying the ***specific provisions***"). Moreover, Plaintiffs fail to respond to

Defendants' argument that "none of the specific violations alleged in the Complaint were disclosed

in Plaintiffs' notice letters," so Plaintiffs concede this crucial point. Mot. at 6; *Giuliani v. NCL*

*(Bahamas) Ltd.*, 558 F. Supp. 3d 1230, 1244 (S.D. Fla. 2021). Indeed, the Complaint relies on

allegations that are nowhere to be found in Plaintiffs' notice letters. Compl. ¶ 173 (lack of "network

segmentation"), ¶ 180 (failure to implement "Endpoint Detection and Response Services").

Plaintiffs argue it is not enough for Defendants to provide assurances that they cured. Opp.

at 11-12. However, the CCPA contemplates "an express written statement that the violations have

been cured" and creates a cause of action for breach if curative efforts prove inadequate, so

Plaintiffs have recourse. Cal. Civ. Code 1798.150(b). Moreover, Plaintiffs allege Defendants did

not cure because they did not: (1) retrieve lost PII; (2) encrypt PII; or (3) delete PII that is no longer

needed. Compl. ¶ 745. However, the CCPA does not require retrieval, encryption, or deletion, so

Plaintiffs do not adequately allege that Defendants failed to cure. Cal. Civ. Code §§1798.100, *et*

*seq.*; *In re Waste Mgmt. Data Breach Litig.*, No. 21CV6147 (DLC), 2022 WL 561734, at *7

(S.D.N.Y. Feb. 24, 2022) (rejecting retrieval argument). Indeed, the CCPA permits consumers to request deletion of PII, so proactive deletion is clearly not required. Cal. Civ. Code § 1798.105.

Plaintiff Kim argues that her statutory damages claim against Community is governed by a three-year statute of limitations because the CCPA's statutory damages are compensatory, not penal. Opp. at 12-13. That argument is foreclosed by the CCPA, which directs courts to assess statutory damages with reference to factors related to culpability. Mot. at 8-9 (citing Cal. Civ. Code. § 1798.150(a)(2) (directing courts to consider "the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth")); *LaFace v. Ralphs Grocery Co.*, 75 Cal. App. 5th 388, 399 (2022) (describing the same factors as "equitable considerations" used to determine an appropriate "penalty"). Thus, Kim's reliance on legislative history is misplaced because legislative history cannot supplant the CCPA's unambiguous text. *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1224 (11th Cir. 2001). Further, the Supreme Court of California characterizes statutes providing for mandatory statutory damages as "penal." *Hale v. Morgan*, 22 Cal. 3d 388 (1978).

Kim's perfunctory argument that a class-wide CCPA claim against Community is tolled by an earlier complaint fails. Opp. at 13 n.11 (citing *Johnson v. Cmty. Loan Servicing, LLC*, No. 1:22-cv-23079 (S.D. Fla.) (ECF 1) ("Johnson Complaint") and *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974)). *American Pipe* only permits tolling of "individual claims," not class-wide claims. *China Agritech v. Michael H. Resh*, 584 U.S. 732, 736 (2018). In any event, the Johnson Complaint did not include a CCPA claim, so it cannot toll the statute of limitations. *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 467 (1975) (*American Pipe* applies where "exactly the same cause of action" was asserted). Kim's superficial argument relying on the relation back doctrine

fails because the "[t]he critical issue … is whether the original complaint gave notice to the defendant of the claim now being asserted." *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993). Kim fails to explain how a complaint that did not assert a CCPA claim provides notice of her claim. In any event, Rule 15 only permits relation back to the "original pleading" (*i.e.*, the Johnson Complaint); it cannot be used to amend the Complaint here. Fed. R. Civ. P. 15(c)(1)(B).

### C.    California Consumer Records Act ("CCRA") (Count IV)

Plaintiffs argue it is enough that they *indirectly* provided their PII to Defendants. Opp. at 14. However, that PII was provided to secure a home loan, not loan servicing, so Plaintiffs cannot satisfy the CCRA's definition of "customer." Mot. at 11-12. Plaintiffs' suggestion that they provided their PII to receive loan servicing, rather than the loan itself, is baseless. Opp. at 13-14.

Plaintiffs ask the Court to take judicial notice of Defendants' websites, which Plaintiffs claim show that they are Defendants' "customers" under the CCRA. *Id.* at 14. However, Community's website states that it "service[es] loans *for a number of banks and other financial institutions*." ECF 207-1 at 2. Moreover, "mortgage servicing" involves "the collection of payments, release of liens, and payment of property insurance and taxes." Black's Law Dictionary (11th ed. 2019). Collecting borrower's payments and remitting the funds to lenders is a service to lenders, not borrowers. Likewise, collecting borrowers' money and using it to pay insurance premiums and taxes protects lenders by ensuring their collateral is insured and protected from tax liens. That is why lenders, not borrowers, hire servicers. *Knott v. Nationstar Mortg., LLC*, 2016 WL 5329613, at *5 n.6 (W.D.N.C. Sept. 21, 2016) ("A mortgage servicer is typically in privity with the lender and note holder…."). In any event, offhand references to "customers" on a website do not show that the CCRA's definition of "customer" is satisfied.

Plaintiffs argue they suffered incremental damages because the alleged delay in notification prevented them from taking mitigation efforts sooner. Opp. at 14. However, they do not allege that any harm would have been prevented if they undertook those mitigation efforts sooner.

### D.    California's Unfair Competition Law ("UCL") (Count V)

Plaintiffs argue that they cite the specific UCL section that was violated, but the cited paragraphs do not identify any "section." Opp. at 14-15 (citing Compl. ¶¶ 796-98, 803-05, 810-12, 817-19). Plaintiffs also argue they are entitled to "restitution of money Defendants acquired from them indirectly by means of their unfair business practice." Opp. at 15. However, Plaintiffs concede they can only recover money acquired by means of an unfair practice (*id.*) and they do not allege that they made their mortgage payments because of alleged inadequate data security. Thus, those payments were not obtained by means of an unfair practice.

### E.    Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count VI)

Plaintiffs argue they need not be consumers if "there was an injury or detriment to consumers," but they do not point to an injury to anyone who satisfies the definition of "consumer," so their claim fails under their own authority. Opp. at 15-16 (citing *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 860 (11th Cir. 2023) ("A plaintiff need not be a consumer …. [but] must prove that there was an injury or detriment to consumers.")); Mot. at 14. Moreover, Plaintiffs' reliance on their request for judicial notice fails because nothing in the referenced materials establishes that Plaintiffs are "consumers," as that term is defined. Opp. at 15 n.13. Plaintiffs also argue they need not allege "any *direct* representations," but Defendants' argument was that "[they] did not make *any* representations to the Florida plaintiffs regarding data security," direct or otherwise. Opp. at 15-16; Mot. at 14. Plaintiffs do not point to any representation that induced them to purchase a good or service, so their claim fails. Mot. at 14 (citing *DFG Grp., LLC. v. Stern*, 220 So. 3d 1236,

1238 (Fla. Dist. Ct. App. 2017) ("[Defendant] made no representations to [plaintiff] to induce him to enter into a purchase contract. Therefore, he suffered no injury….")).

### F.   Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count VII)

Plaintiffs argue the alleged ICFA violations occurred "substantially and sufficiently" in Illinois because they "received [Defendants'] services in Illinois, and that is where they provided their PII." Opp. at 16-17 (citing Compl. ¶¶ 313, 517, 530). However, the cited paragraphs say no such thing and Plaintiffs misstate the standard. The transactions must "occur *primarily* and substantially in Illinois," not "substantially and *sufficiently*," as Plaintiffs assert. Mot. at 15-16; Opp. at 16-17. Plaintiffs cannot credibly contend that the loan servicing at issue occurs *primarily* in Illinois. Compl. ¶¶ 88-89 (alleging Defendants conduct their activities in Florida).

Plaintiffs' argument that their claims do not need to comply with the ICFA's heightened pleading standard fails for the reasons stated in Defendants' Motion. Opp. at 17; Mot. at 16. Plaintiffs' argument that they are "consumers" under the "consumer nexus" test also fails for the reasons stated in Defendants' Motion. Opp. at 17; Mot. at 17.

Plaintiffs' argument that "acts or omissions are actionable … if they are intended to induce the plaintiff's reliance" fails because Plaintiffs do not allege intent to induce reliance. Opp. at 17; Compl. ¶¶ 876-917. Moreover, their argument that intent can be inferred where Defendants "engaged in consumer-facing conduct" is not supported by their cited authority. Opp. at 17-18.

Plaintiffs' argument that they each properly allege "actual damages" is false. Plaintiffs must show specific "economic damages." *Flores v. Aon Corp.*, 2023 IL App (1st) 230140, ¶ 42 (holding that "emotional distress due to [] loss of privacy, [] lost time dealing with the consequences of the data breach, the increase in spam messages …, and the imminent risk of fraud and identity theft" are not "the specific economic damages required for a claim under the [ICFA]").

Plaintiffs' only reference to "actual damages" is in paragraph 916, which directs the Court and Defendants to review **915 paragraphs** to figure out Plaintiffs' alleged damages. Compl. ¶ 916.

### G.      New York General Business Law, § 349 (Count VIII)

Plaintiff Sevak's argument that he lives in and was deceived in New York is irrelevant. Opp. at 18. The issue is "location of the **transaction**"—*i.e.*, loan servicing—and Sevak does not allege that loan servicing occurred in New York. Mot. at 9-10; Compl. ¶ 921-25.

Sevak's argument that he "alleges the requisite materially deceptive act or practice and resulting harm" fails for the reasons state in the Motion. *Id*. at 10; *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817, 828 (N.Y. Sup. Ct. 2020) ("[A]lleged failure to safeguard information … did not mislead plaintiff in any material way and does not constitute a deceptive practice [under § 349]."). Sevak's argument that "while [he] may not have read the Privacy Policy, it can be plausibly inferred from the Complaint's allegations that he was at least exposed to it" is non-sensical. Opp. at 19. Sevak cannot be deceived by something he never read.[5]

Sevak's argument that "Lakeview concealed … that it did not reasonably or adequately protect his PII or comply with its legal duties" fails because "an omission-based claim must plausibly allege that … defendants had knowledge of the material information and failed to disclose or actively concealed such information." *Prignoli v. Bruczynski*, 2021 WL 4443895, at *7 (E.D.N.Y. Sept. 28, 2021). Sevak makes no such allegation in the Complaint.

Lastly, Sevak claims an actual injury because he allegedly spent time mitigating harm. Opp. at 19. This is insufficient because "[he] must allege that, on account of a materially

---

[5] Sevak chides Defendants for citing his sworn discovery responses in a motion to dismiss and tells the Court that he "**may not** have read the Privacy Policy." Opp. at 18-19. However, Sevak cannot create a fact issue by rejecting his sworn discovery responses. ECF 201-3 (admitting "under penalty of perjury" that "[he] did not read any Defendant's privacy policy….").

misleading practice, [he] ***purchased*** a product and did not receive the full value of [his] ***purchase***." *Orlander v. Staples, Inc.*, 802 F. 3d 289, 302 (2d Cir. 2015); Mot. at 10-11. Sevak alleges that he "paid for ***or otherwise availed***" himself of Lakeview's services. Compl. ¶ 922. Thus, Sevak does not allege he actually purchased any service and does not explain how "otherwise avail[ing]" himself of a service constitutes a "purchase." Regardless, it is common knowledge that borrowers do not purchase loan servicing. ECF 144 at 10 (recognizing that lenders hire mortgage servicers); *Knott*, 2016 WL 5329613, at *5 ("A mortgage servicer is typically in privity with the lender and note holder…."). Further, there must be a "connection between the misrepresentation and any harm from, or failure of, the product." *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999) (emphasis added). Here, the product is loan servicing, which is not alleged to be defective.

### H.    Washington Consumer Protection Act ("WCPA") (Count IX)

Plaintiff Arthur's WCPA claim fails because he did not adequately allege damages. Instead, he directed the Court and Defendants to somehow figure out his damages by reviewing ***954 paragraphs***. Mot. at 18; Compl. ¶ 955. Now, Arthur tells the Court that only two of those 954 paragraphs support his damages claim, underscoring the shotgun pleading nature of the Complaint. Opp. at 19-20 (citing Compl. ¶¶ 231, 233). Lastly, Arthur fails to show a sufficient connection between the alleged conduct and Washington. Defendants perform loan servicing for lenders and do so from Florida. Mot. at 9-10. Arthur's argument that he receives loan services in Washington and provided his PII is Washington is unsupported and insufficient. Opp. at 19; Compl. ¶¶ 88-89 (alleging Defendants conduct their activities in Florida). Moreover, Arthur's alleged harm was caused by criminal actors who accessed Defendants' network without authorization, not by commerce connected to Washington. *Browne v. Avvo Inc.*, 525 F. Supp. 2d 1249, 1254 (W.D. Wash. 2007) (explaining that possession of information is not commerce).

Dated: June 21, 2024.                    *s/ Julie Singer Brady*
                                         Julie Singer Brady
                                         Florida Bar No. 389315
                                         jsingerbrady@bakerlaw.com
                                         Yameel L. Mercado Robles
                                         Florida Bar No. 1003897
                                         ymercadorobles@bakerlaw.com
                                         BAKER & HOSTETLER LLP
                                         200 South Orange Avenue, Suite 2300
                                         Orlando, FL 32801
                                         Telephone: 407.649.4000
                                         Facsimile: 407.841.0168

                                         Paul Karlsgodt (*pro hac vice*)
                                         PKarlsgodt@bakerlaw.com
                                         BAKER & HOSTETLER LLP
                                         1801 California Street, Suite 4400
                                         Denver, CO 80202
                                         Telephone: 303.861.0600
                                         Facsimile: 303.861.7805

                                         Evan M. Mannering (*pro hac vice*)
                                         emannering@bakerlaw.com
                                         BAKER & HOSTETLER LLP
                                         1050 Connecticut Ave, NW, Suite 1100
                                         Washington, DC 20036
                                         Telephone: 202.861.1500
                                         Facsimile: 202.861.1783

                                         Joseph Givner
                                         Florida Bar No. 850705
                                         Primary Email: jgivner@givner.law
                                         Secondary Email: paralegal@givner.law
                                         GIVNER LAW GROUP, LLP
                                         19790 W. Dixie Hwy, Suite 706
                                         Miami, Florida 33180
                                         Telephone: 305.933.9970

                                         *Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on June 21, 2024, I electronically filed the foregoing document with the Clerk of the Court by using the Florida E-Filing Portal, which will send a Notice of Electronic Filing to all counsel of record.

*<u>s/ Julie Singer Brady</u>*
Julie Singer Brady
