UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Master File No. 1:22-cv-20955-DPG

| | | |
|---|---|---|
| In re LAKEVIEW LOAN SERVICING DATA BREACH LITIGATION | ) ) ) | <u>CLASS ACTION</u><br><br>**Hearing Requested** |

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF LAW IN SUPPORT**

**TABLE OF CONTENTS**

<strong>Page</strong>

I.  INTRODUCTION ....................................................................................................1

II.  FACTUAL BACKGROUND ...................................................................................5

  A. Defendants Were Duty Bound to Protect Customers' PII and Understood the Risks of Their Failure to Do So ....................................................................6

  B. The Data Breach ........................................................................................6

  C. Known and Preventable Data Security Vulnerabilities Led to the Data Breach ..............................................................................................................9

    1. Inadequate Endpoint and Network Security Controls ..............................10

    2. Inadequate Incident Detection Systems .....................................................11

    3. Inadequate Controls Over Access to Network Locations Containing Sensitive Information .............................................................13

    4. Inadequate Sanitation and Over-Retention of Files With Customer PII ..........................................................................................................14

  D. The Impact of the Data Breach on Plaintiffs and Class Members .........................15

III. THE PROPOSED CLASSES AND PROPOSED CLASS COUNSEL ...........................18

IV. THE NAMED PLAINTIFFS HAVE STANDING AND THE PROPOSED CLASS AND SUBCLASSES ARE WELL DEFINED. ....................................................19

V.  RULE 23 LEGAL STANDARDS ...................................................................21

VI. THE PROPOSED CLASS AND SUBCLASSES SATISFY RULE 23(a). ....................21

  A. Joinder of All Proposed Class and Subclass Members Is Impracticable. ..............22

  B. There Are Many Common Questions of Fact and Law. ....................................22

  C. Plaintiffs' Claims Are Typical of Those of the Class and Subclasses. .................23

  D. Plaintiffs Will Fairly and Adequately Protect the Proposed Classes' Interests. ...............................................................................................24

VII. THE PROPOSED CLASSES SATISFY RULE 23(b)(3). ..............................................26

  A. Common Questions Predominate Plaintiffs' Claims. ....................................26

1.       Common Questions Predominate Over Plaintiffs' Negligence Claims. ......................................................................................27

2.       Predominance Is Also Satisfied as to Plaintiffs' Statutory Claims. ...........33

B.     A Class Action Is the Superior Method of Adjudication for This Case. ..............35

VIII.   CERTIFICATION OF A RULE 23(B)(2) CLASS FOR INJUNCTIVE AND CORRESPONDING DECLARATORY RELIEF IS ALSO WARRANTED. .................37

IX.    ALTERNATIVELY, RULE 23(c)(4) ISSUE CERTIFICATION IS APPROPRIATE. ...................................................................................39

X.     CONCLUSION...............................................................................40

REQUEST FOR HEARING ...............................................................................41

# TABLE OF AUTHORITIES

## CASES

*Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686 (N.D. Cal. 2019)...................................................... 39

*Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. 2003)...................................... 30

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997)...................................................... 26

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013)...................................... 21, 26

*Attias v. CareFirst, Inc.*, 346 F.R.D. 1 (D.D.C. 2024), *motion to certify appeal denied*, 2024 WL 3886643 (D.D.C. Aug. 20, 2024) ................................................................ 33

*Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183 (11th Cir. 2009)...................................... 21

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)...................................... 33

*Brink v. Raymond James & Assoc., Inc.*, 328 F.R.D. 437 (S.D. Fla. 2018)................................ 22

*Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225 (11th Cir. 2016) .............................. 30

*Bush v. Calloway Consol. Grp. River City, Inc.*, 2012 WL 1016871 (M.D. Fla. Mar. 26, 2012) ................................................................ 36

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013) ...................................... 39

*Cardenas v. Toyota Motor Corp.*, 2021 WL 6926418 (S.D. Fla. Aug. 12, 2021)...................... 23

*Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016)................................. 18, 26, 30, 33

*Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024).............. 35

*Cherry v. Dometic Corp.*, 986 F.3d 1296 (11th Cir. 2021)...................................... 20

*Chianne D. v. Weida*, 2024 WL 1743334 (M.D. Fla. Apr. 23, 2024) .......................................... 37

*Coffey v. WCW & Air, Inc.*, 2020 WL 4519023 (N.D. Fla. Mar. 25, 2020) .............................. 33

*Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011).............................................. 26

*Fabricant v. Sears Roebuck*, 202 F.R.D. 310 (S.D. Fla. 2011) ...................................... 37

*Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176 (M.D. Fla. 2022).............................................. 38

*Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941 (S.D. Fla. May 24, 2019) ................................................................ 22

*Green-Cooper v. Brinker Int'l Inc.*, 73 F.4th 883 (11th Cir. 2023) ........................................ passim

*Griffin v. Dugger*, 823 F.2d 1476 (11th Cir. 1987)........................................................................ 19

*Guy v. Convergent Outsourcing, Inc.*, 2023 WL 4637318 (W.D. Wash. July 20, 2023) ............. 35

*H & U Foods, Inc. v. Ellison*, 439 So. 2d 923 (Fla. 4th DCA 1983)............................................. 33

*Hameed-Bolden v. Forever 21 Retail, Inc.*, 2018 WL 6802818 (C.D. Cal. Oct. 1, 2018) ....................................................................................................................................... 38

*In re Brinker Data Incident Litig.*, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) .... 23, 30, 36, 37

*In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374 (E.D. Va. 2020) ....................................................................................................................................... 35

*In re Checking Acct. Overdraft Litig.*, 286 F.R.D. 645 (S.D. Fla. 2012)................................ 23, 37

*In re Equifax Inc. Cust. Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. 2021) ............... 21, 24

*In re Marriott Int'l Customer Data Sec. Breach Litig.*, 345 F.R.D. 137 (D. Md. 2023) .............. 23

*In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023) .................................................................. 23

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022) ...................................................................................................................... 23, 27, 40

*In re Mednax Servs., Inc. Cust. Data Sec. Breach Litig.*, 2024 WL 1554329 (S.D. Fla. Apr. 10, 2024) ................................................................................................................ 19, 20

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1222 (S.D. Fla. 2022)........................................................................................................... 28

*In re Sonic Corp. Cust. Data Breach Litig.*, 2020 WL 6701992 (N.D. Ohio Nov. 13, 2020) ....................................................................................................................................... 27

*In re Sonic Corp.*, 2021 WL 6694843 (6th Cir. Aug. 24, 2021)...................................... 27, 30, 33

*In re Tri-State Crematory Litig.*, 215 F.R.D. 660 (N.D. Ga. 2003)............................................... 39

*Jerue v. Drummond Co., Inc.*, 2023 WL 6610603 (M.D. Fla. Aug. 25, 2023), *R&R adopted*, 2023 WL 6586087 (M.D. Fla. Oct. 10, 2023) .................................................. 33

*Jones v. Depuy Synthes Prods., Inc.*, 330 F.R.D. 298 (N.D. Ala. 2018) ...................................... 39

*Kennedy v. Tallant*, 710 F.2d 711 (11th Cir. 1983) ....................................................... 37

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ...................................................... 33

*Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984) ................................. 24

*Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694 (S.D. Fla. 2018) ............................ 36

*Legg v. Spirit Airlines, Inc.*, 315 F.R.D. 383 (S.D. Fla. 2015) ...................................... 34

*Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275 (N.D. Fla. 2017) ................................... 39

*Nunley v. Chelan-Douglas Health Dist.*, 558 P.3d 513 (Wash. Ct. App. 2024) ........................... 35

*Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010) .................................................. 40

*POC USA, LLC v. Expeditors Int'l of Wash., Inc.*, 2024 WL 1579522 (W.D. Wash.
    Apr. 11, 2024) ................................................................................. 34

*Ramos v. Wells Fargo Bank, N.A.*, 2023 WL 5310540 (S.D. Cal. Aug. 17, 2023) ...................... 34

*Rensel v. Centra Tech, Inc.*, 2 F.4th 1359 (11th Cir. 2021) .................................... 20, 21

*Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) ............................... 34

*Russell v. Educ. Comm'n for Foreign Med. Grads.*, 15 F.4th 259 (3d Cir. 2021) ...................... 39

*Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228 (11th Cir. 2000) ...................................... 26

*Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661 (W.D. Ky. 2024) .............................. 23, 30, 33

*Smith v. Triad of Alabama, LLC*, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) ........... 23, 27, 30

*Stevens v. Cricket Club Condo., Inc.*, 784 So. 2d 517 (Fla. 3d DCA 2001) ................................ 33

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ................................................. 26

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) .......................................... 22

*Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140 (W.D. Wash.
    2017) ...................................................................................... 35, 38

*Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329 (11th Cir. 2012) ...................................... 27

*Walker v. City of Calhoun, Georgia*, 2016 WL 361580 (N.D. Ga. Jan. 28, 2016)...................... 38

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ....................................................... 22, 23, 37

*Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350 (11th Cir. 2009)............................................... 23

**STATUTES**

California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150 (version eff. Jan. 1, 2020)............................................................................................................. passim

California Unfair Competition Law ("UCL"), Cal. Bus & Prof. Code § 17200, *et seq.* ........ 18, 37

Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.* ............................................................................................................................. 18, 37

Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code Ann. § 19.86.010, *et seq.* ........................................................................................... 18, 33, 34, 37

WCPA, Wash. Rev. Code Ann. § 19.86.020 ............................................................................... 34

**REGULATIONS**

16 C.F.R. § 314.3 ...................................................................................................................... 28

16 C.F.R. § 314.4 ...................................................................................................................... 28

**RULES**

Fed. R. Civ. P. 23 ........................................................................................................................ 1

Fed. R. Civ. P. 23(a) ........................................................................................................... passim

Fed. R. Civ. P. 23(a)(4) ............................................................................................................. 24

Fed. R. Civ. P. 23(b)(2)....................................................................................................... passim

Fed. R. Civ. P. 23(b)(3)....................................................................................................... passim

Fed. R. Civ. P. 23(c)(4)................................................................................................... 1, 39, 40

Fed. R. Civ. P. 23(g) ............................................................................................................ 19, 25

S.D. Fla. L.R. 7.1(b)................................................................................................................... 41

**OTHER AUTHORITIES**

2 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:90 (6th ed.) ............... 40

Plaintiffs Mark Arthur, Beth Berg, David Cunningham, Savannah Farley, Jorge Gonzalez, Norma Grossman, Deborah Hamilton, Michael Kassem, Thomas Lapenter, John McMahon, Pedro Rubio, Kimberley Rowton, Jay Saporta, Hardik Sevak, Cindy Villanueva, and Peter Wojciechowski respectfully move under Rules 23(a), (b)(2), and (b)(3) or, alternatively, (c)(4) of the Federal Rules of Civil Procedure for certification of the Class and Subclasses (defined below), appointment of Plaintiffs as Class representatives, and appointment of Proposed Class Counsel (defined below) as Class counsel. In support, Plaintiffs submit: (a) the following Memorandum of Law; (b) the attached declarations of interim class counsel John A. Yanchunis, Chair, Plaintiffs' Executive Committee (Exhibit 1 hereto), Plaintiffs (Exhibits 2 to 17 hereto), and experts Eric Matolo, Christopher Thompson, Darren J. Mott, Mary T. Frantz, and Terry Long (Exhibits 18 to 22 hereto); and (c) the additional materials attached hereto as Exhibits 23 to 69.

## I.  INTRODUCTION

Plaintiffs are 16 individuals who—along with over five million other American consumers—had their highly sensitive personally-identifiable information ("PII"), including Social Security numbers ("SSN"), stolen in a months' long data breach (October-December 2021) of Defendants'[1] shared computer network (the "Data Breach"). The negligence and consumer-protection claims Plaintiffs bring are well suited for class treatment under Rule 23. The key liability questions of whether Defendants owed a duty to safeguard Class members' PII, breached that duty, and whether Defendants' conduct caused the Data Breach and consequent injury to Class members are the central questions in this case and can and should all be resolved—for or against the Class—through common evidence.

---

[1] Defendants are Bayview Asset Management, LLC ("Bayview"), Lakeview Loan Servicing, LLC ("Lakeview"), Pingora Loan Servicing, LLC ("Pingora"), and Community Loan Servicing, LLC ("CLS").

On the existence of a duty, common evidence will show that Defendants were under duties imposed by federal and state laws that had been on the books for years, including the California Consumer Privacy Act ("CCPA"), to implement and maintain reasonable security measures. Defendants expressly represented that ████████████████████████████████████ ████. Defendants also recognized their ████████████████████████████████████. A Bayview Senior Vice President acknowledged that Defendants had a █████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████"[2]

As to breach and causation, class-wide evidence will show, among other things, that ████████████████████████████████████████████████████████████████ ████████████████████████████. Worse, ████████████████████████████ ████████████████████████████████. On December 31, 2024, Defendants agreed to a $20 million fine and to take corrective action, after financial regulators of forty-nine states, Washington, D.C., and Puerto Rico found Defendants' pre-Breach IT and cybersecurity practices "deficient," constituting "compliance violations of State and Federal law."[3]

Defendants—████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

---

[2] Ex. 23 (BAYVIEW000138037).

[3] Ex. 24 (Settlement Agreement and Consent Order) at 1-4, also available at https://dfpi.ca.gov/wp-content/uploads/2025/01/Consent-Order-Lakeview-Loan-Servicing-LLC.pdf (last visited March 30, 2025); *see also* Jan. 8, 2025 Press Release, California Dept. of Financial Protection & Innovation, *California Joins States in Levying $20 Million Penalty Against Nation's Largest Nonbank Mortgage Servicing Company*, available at https://dfpi.ca.gov/press_release/california-joins-states-in-levying-20-million-penalty-against-nations-largest-nonbank-mortgage-servicing-company/ (last visited March 30, 2025) ("State regulators … found that Bayview Companies' information technology and cybersecurity practices did not meet federal or state requirements.").



. As Plaintiffs' cybersecurity expert Christopher Thompson explains, Defendants compounded these failures by ██████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████.

Making matters worse, Defendants ██████████████

████████████████████████████████████████

████████████████████████████"[4] As a result of Defendants' numerous security failures, hackers were allowed to exfiltrate ████ ████████████████████████████

████████████████████████.

        Causation is also closely tied to damages, and it is well-established in the Eleventh Circuit that individual damages calculations do not defeat predominance. Plaintiffs concurrently submitted expert declarations demonstrate the common harm Class members have suffered due to the Data Breach. These declarations also set forth damages models showing that damages stemming from the Data Breach can be calculated class-wide using common methodologies to determine: (i) the value of stolen PII; (ii) compensation for the increased risk of future identity theft; and (iii) compensation for economic value of time spent to respond and mitigate the actual and potential future harms caused by the Data Breach. Alternatively, for their negligence claims,

---

[4] Ex. 25 (BAYVIEW000033873) ██████████████████████
████████████████████████████

Plaintiffs seek nominal damages, which can be calculated on a class-wide basis and requires no individualized inquiry. Similarly, the proposed California Subclass seeks statutory damages under the CCPA, rendering proof of aggregate damages a matter of basic arithmetic. As courts have held in other data breach cases, the overriding common issues of breach and duty, and whether Defendants' security practices caused the Data Breach, predominate over any potential individual damages issues.

Rule 23's other requirements are also met. The proposed Class of millions of Americans satisfies numerosity. Plaintiffs' and Class members' negligence and consumer protection claims arise out of the same Data Breach, involve the same legal theories, and share the same interests and injuries, so the requisite nexus for typicality exists. Plaintiffs and their counsel have and will continue to adequately represent the interests of Class members, having demonstrated their dedication to litigating this case for several years. A class action is the superior method to resolve the claims of all similarly situated victims of Defendants' misconduct in one fell swoop, rather than numerous individual lawsuits addressing the same identical facts and law. As detailed in Plaintiffs' proposed trial plan (Exhibit 26), a class proceeding will be manageable because Plaintiffs seek certification of the Class for their negligence claim under Florida law (which Defendants have conceded applies across the board) and of the Subclasses for claims under the laws of only a handful of states with overlapping elements.

Last, because Defendants failed to adequately safeguard the PII of Plaintiffs and Class members and common evidence will show that ███████████████████████████ ██████████████████████████████████████████, the Court should also certify the proposed Class and Subclasses for injunctive and declaratory relief under Rule 23(b)(2).

## II.    FACTUAL BACKGROUND

Bayview is an investment firm that focuses on mortgage-related assets, including mortgage servicing rights, and its affiliates Lakeview, Pingora, and CLS are mortgage loan servicers owned and/or controlled by Bayview.[5] ███████████████████████

███████████████████████████████████████████████

███████████████████.[6] As a result, ███████████████████

███████████████████████████████████[7] ████████

███████████████████████████████ (most importantly

for present purposes), ███████████████████████████

████████████████████████.[8]

At the time of the Data Breach, Defendants ████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████"[9] In other words, at the time of the Breach, ████████████████

████████"[10] Yet at that time, Bayview ████████████████████

███████████████████████████████████.[11]

---

[5] Ex. 24 (Settlement Agmt. & Consent Order) at 2.
[6] Ex. 27 (BAYVIEW000371774) at -774.
[7] Ex. 28 (Resp. to Interrogs.) at No. 6.
[8] Ex. 29 (BAYVIEW000271724) at -724.
[9] Ex. 28 (Resp. to Interrogs.) at Nos. 2, 6, 11; Ex. 24 (Settlement Agmt. & Consent Order) at 2.
[10] Ex. 30 (Buitrago Dep.) 75:14-18, 76:6-10, 78:10-79:25, 87:1-88:20, 90:5-11.
[11] Ex. 31 (BAYVIEW000002779) at -281.

**A.     Defendants Were Duty Bound to Protect Customers' PII and Understood the Risks of Their Failure to Do So**

As financial institutions and custodians of customer PII, Defendants were required to protect it from foreseeable criminal exploits. Yet here, ████████████████████████████ ███████████████████████████████████████████████████. Years before, Defendants ████████████████████████████████████████ ███████████████.[12] ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████[13]

**B.     The Data Breach**

On ████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████████████.[15] On ██████████████████



---

[12] Ex. 32 (Rosario Dep.) 64:8-21, 65:11-19.

[13] Ex. 32 (Rosario Dep.) 50:14-51:25, 145:1-14 ████████████████████████████████ ██████████████████████████████████████████████████; Ex. 33 (BAYVIEW000371311); *see also* Ex. 34 (BAYVIEW000297131) at -133 ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████

[14] Ex. 29 (BAYVIEW000271724) at -724; Ex. 19 (Thompson Decl.) ¶ 51.

[15] Ex. 35 (Wilkey 30(b)(1) Dep.) at 159:25-160:18; Ex. 29 (BAYVIEW000271724) at -725 ████████████████████████████████████████████████████. Ex. 19 (Thompson Decl.) ¶¶ 51, 122-125.



.[20] Putting that in perspective, the average one-page text document is roughly 12 kilobytes.[21] If those documents were stacked, they would circle the Earth ███ times, or reach ████████████ the moon. As one Bayview executive later admitted,

███████████████████████████████████████████████████████████████

█████████████████████████████████████████[22] And here, ██████████████████████

██████████████████████████████████████████████.

---

[16] Ex. 36 (BAYVIEW000395411) at 2; Ex. 29 (BAYVIEW000271724) at -724.

[17] Ex. 36 (BAYVIEW000395411) at 2; Ex. 19 (Thompson Decl.) ¶ 24; *see also* Ex. 32 (Rosario Dep.) 53:24-54:20.

[18] Ex. 36 (BAYVIEW000395411) at 2; Ex. 19 (Thompson Decl.) ¶¶ 22, 26-27.

[19] Ex. 36 (BAYVIEW000395411) at 2; Ex. 19 (Thompson Decl.) ¶¶ 57, 111; Ex. 37 (BAYVIEW000281035) at -042 ████████████████████████████████████████ .").

[20] Ex. 29 (BAYVIEW000271724) at -724; Ex. 38 (BAYVIEW000289247) at -249, -251.

[21] *See, e.g.*, https://service.alaska.edu/TDClient/36/Portal/KB/ArticleDet?ID=95 (last visited March 30, 2025).

[22] Ex. 39 (Lozano Dep.) 206:15-207:20.



26—including ███████████████████████████████████████ consumers.27



.[30] All victims, including Plaintiffs,

**C.**

In the wake of the Data Breach, state mortgage regulators across the country conducted a coordinated cybersecurity examination of Defendants. In May 2023, they issued a report identifying multiple "deficient IT and cybersecurity practices, which allegedly constitute violations of certain federal and state-specific compliance laws and regulations."[32] While, to date, Plaintiffs have been denied access to some of the most critical evidence Defendants provided to the regulators                                                              [33] the evidence that Plaintiffs have obtained from Defendants, as well as the findings of Plaintiffs' cybersecurity expert Thompson, shows

---

[28] Ex. 46 (BAYVIEW000019980); Ex 47 (O'Brien Dep.) 67:11-19, 69:6-21.

[29] Ex. 48 (BAYVIEW000138620); Ex. 49 (BAYVIEW000150569, BAYVIEW000150585–87); Ex. 32 (Rosario Dep.) 219:9-220:21; Ex. 35 (Wilkey 30(b)(6) Dep.) 128:17-129:6; Ex. 47 (O'Brien Dep.) 71:1-19, 72:25-73:9.

[30] Ex. 50 (BAYVIEW000002669).

[31] Each Plaintiff's declaration (Exs. 2–17 hereto) attaches as Ex. A the notice letter they received.

[32] Ex. 24 (Settlement Agmt. & Consent Order) at 3-4. The identified deficient practices "include … insufficient IT patch management, insufficient centralized IT vulnerability remediation monitoring and enterprise reporting, insufficient IT inventory tracking, and failure to appropriately encrypt certain personally identifiable information when that data was at rest." *Id.* at 4.

[33] Ex. 1 (Yanchunis Decl.) ¶¶ 9-11.



. These

Put simply: Defendants' ███████████████████ were in total disarray.

     1. ████████████████████

Defendants failed to adequately implement industry-standard practices and technologies to

. For example,

.[34]

.[35]

This occurred because

.[36]

---

[34] Ex. 35 (Wilkey 30(b)(1) Dep.) at 159:25-160:18; Ex. 29 (BAYVIEW000271724) at -725 (███); Ex. 19 (Thompson Decl.) ¶¶ 122-129.

[35] Ex. 29 (BAYVIEW000271724) at -724; Ex. 36 (BAYVIEW000395411) at 2 Ex. 19 (Thompson Decl.) ¶¶ 124-125.

[36] Ex. 19 (Thompson Decl.) ¶¶ 166-167; Ex. 51 (Acuff Dep.) 125:12-126:8; Ex. 52 (BAYVIEW000020872) ("████████████████████").

██████████████████████████████████████████████████

███████████████ .[37] ████████████████████████████████

████████████████████████████████████████████ .[38]

**2.** ████████████████████████████

Although  Defendants  had  ██████████████████  in  place  before  the  Data

Breach, they significantly ███████████████████ at every step. Defendants ███████████

█████████████████████████████████████████████████

██████████████████████████████████████  As  a  result,  the

cybercriminals' activity, which ████████████████████████████████

███████████████████████████████████████████

██████████████████████ .[39] EDR is cybersecurity

technology used to monitor endpoints (*e.g.*, computers, mobile devices, and servers) by, among

other things, collecting and analyzing endpoint data in real-time to detect and alert to suspicious

activities. ████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████ .[40] ████████

█████████████████████████ [41]

---

[37] Ex. 19 (Thompson Decl.) ¶¶ 178-179; Ex. 51 (Acuff Dep.) 165:23-25; Ex. 35 (Wilkey 30(b)(1) Dep.) 164:19-165:18.

[38] Ex. 19 (Thompson Decl.) ¶¶ 157-163, 178; Ex. 32 (Rosario Dep.) 96:25-97:4.

[39] Ex. 19 (Thompson Decl.) ¶ 133.

[40] Ex.51 (Acuff Dep.)119:7-13;Ex.32(Rosario Dep.)88:18-89:1;Ex.53(Morales Dep.)48:16-49:16.

[41] Ex. 32 (Rosario Dep.) 44:2-20.



██████████████████████████████████████████████████████

████████████████████████████████████ had dire consequences. ████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████[42]███████

██████████████████████████████████.[43]████████████████████

██████████████████████████████████████████████████████

███████████████████████[44]███████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████.[45] Moreover, at the time of the Data

Breach, ██████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████.[46]

Among their many failings, ████████████████████████████████

was particularly ██████████████████████████████████████████

████████████████████████████████████████████████████.[47]

---

[42] Ex. 29 (BAYVIEW000271724) at -724.

[43] Ex. 19 (Thompson Decl.) ¶¶ 51-56; Ex. 54 (BAYVIEW000002006).

[44] Ex. 54 (BAYVIEW000002006); Ex. 42 (Wilkey 30(b)(6) Dep.) 82:5-83:18; Ex. 35 (Wilkey 30(b)(1) Dep.) 168:4-12; Ex. 19 (Thompson Decl.) ¶¶ 55-56, 134, 168-172.

[45] Ex. 19 (Thompson Decl.) ¶¶ 168-175; Ex. 29 (BAYVIEW000271724) at -724.

[46] Ex. 19 (Thompson Decl.) ¶ 147. ██████████████████████████

████ . *See* Ex. 55 (BAYVIEW000280995) at -1004 ████████

████████████████████████████████████████ Ex. 19 (Thompson Decl.) ¶¶ 149-153.

[47] Ex. 32 (Rosario Dep.) 53:24-54:20.



**3.** ████████████████████████████████████

Making matters worse, Defendants failed to ████████████████████████████

████████████████████████████████████████████████

██. For example, Defendants did not properly ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████. [49] A ████████

██████████████████████ [50] ██████████████████████████

██████████████████████. [51] And yet, ██████████████████████████

████████████████████████████ [52]

Defendants' ████████████████████████████████████████

████████████████████████████████████████████████

████. [53] At the time of the Data Breach, ██████████████████████████

████████████████████████████████████████████████

---

[48] Ex. 32 (Rosario Dep.) 54:21-56:5, 178:14-181:21; Ex. 19 (Thompson Decl.) ¶ 141.

[49] Ex.19(Thompson Decl.)¶¶ 90-97;Ex.53(Morales Dep.)151:6-9;Ex.30(Buitrago Dep.)186:10-13.

[50] Ex. 55 (BAYVIEW000280995) at -966, -1002.

[51] Ex. 56 (BAYVIEW000038066) at -068; Ex. 57 (BAYVIEW000048952).

[52] Ex. 53 (Morales Dep.) 150:21-151:5, 151:18-23; Ex. 19 (Thompson Decl.) ¶¶ 96-97.

[53] Ex. 19 (Thompson Decl.) ¶¶ 98-111.

██████████████████████████████████████████████████████████████████████.[54]

Defendants compounded this problem by failing to ████████████████████████████████

██████████████████████████████████████████████████████████████████████.[55]

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ ██████████████████.[57]

    **4.** ████████████████████████████████████████████

Defendants also knew they had ████████████████████████████████████████

██████████████████████████████████████████████████[58]████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████"[59]████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████[60] In ██████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████."[61] Indeed,

foreshadowing the Data Breach that would occur ████████████████████████████

████████████████████████████████████████████████████████████████████████



---

[54] Ex. 19 (Thompson Decl.) ¶¶ 87-89, 107, 111; Ex 30 (Buitrago Dep.) 142:3-143:13, 283:2-285:14.

[55] Ex. 19 (Thompson Decl.) ¶¶ 112-117; Ex. 55 (BAYVIEW000280995) at -996, -003.

[56] Ex. 55 (BAYVIEW000280995) at -003.

[57] Ex. 35 (Wilkey 30(b)(1) Dep.) 164:15-18; Ex. 31 (BAYVIEW000002779); Ex. 19 (Thompson Decl.) ¶¶ 116-117.

[58] Ex. 19 (Thompson Decl.) ¶¶ 73-82.

[59] Ex. 39 (Lozano Dep.) 103:10-104:8; Ex. 58 (BAYVIEW000006189) at -190-91.

[60] Ex. 25 (BAYVIEW000033873) (emphasis added).

[61] Ex. 58 (BAYVIEW000006189) at -191, -194.



Yet at the time of the Data Breach, ████████████████████████████████████████

████████████████████████  Instead, they were still ████████████████████

██████████████████████████████[63]██████████████

███████████████████████████████████████. In fact,██

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████.[64]██████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████[65]

### D.    The Impact of the Data Breach on Plaintiffs and Class Members

Because of the Data Breach, all Class members face a present and continuing risk of fraud.

Plaintiffs Berg, Cunningham, Lapenter, and Sevak experienced fraud following the Data Breach,[66]

and all Plaintiffs have already spent time and/or money mitigating the risk of future identity theft

---

[62] Ex. 59 (BAYVIEW000269537) at 1-3.

[63] Ex. 60 (BAYVIEW000002010).

[64] Ex. 61 (BAYVIEW000006042) at -050.

[65] Ex.61 (BAYVIEW000006042) at -050; Ex. 19 (Thompson Decl.) ¶¶ 70-89.

[66] Ex. 3 (Berg Decl.) ¶ 6; Ex. 4 (Cunningham Decl.) ¶ 6; Ex. 10 (Lapenter Decl.) ¶ 6; Ex. 15 (Sevak Decl.) ¶ 6.

and fraud.[67] For many Plaintiffs and Class members, ███████████████████ and, as discussed in Section VIII below, Plaintiffs will present evidence at trial that the security deficiencies that led to the Data Breach still persist, including the ████████████████ ██████████████████████.

In addition, and as explained by Plaintiffs' experts Darren Mott and Mary Frantz, ██ ████████████████████████████████████████████████████ ████████████████████████.[69] ███████████████████████ ████████████████████████████████████████████████████ ████████████████████████ The dark web serves as a marketplace for illegal products and services including drugs, weapons, and stolen data that can only be accessed with special tools and utilizes anonymized site names. Ex. 20 (Mott Decl.) ¶¶ 19-23. Malicious actors take advantage of the dark web's anonymity to trade, sell, and share information, knowing it will be difficult, if not impossible, for law enforcement to identify them. *Id.* ¶ 22. PII stolen in data breaches is commonly listed on the dark web for sale. *Id.* ¶¶ 25-26. This case is no exception.

As discussed above and ████████████████████████████ ████████████████████████████████████████████████████

In addition to ████████████████, a search of the dark web performed by Plaintiffs' expert Mary Frantz has identified Class members' PII being advertised and posted as

---

[67] Ex. 2 Arthur Decl. ¶¶ 5-8;Ex. 3 Berg Decl. ¶¶ 5-8;Ex. 4 Cunningham Decl. ¶¶ 5-8; Ex. 5 Farley Decl. ¶¶ 5-8;Ex. 6 Gonzalez Decl. ¶¶ 6-9; Ex. 7 Grossman Decl. ¶¶ 5-8; Ex. 8 Hamilton Decl. ¶¶ 5-8; Ex. 9 Kassem Decl. ¶¶ 5-8; Ex. 10 Lapenter Decl. ¶¶ 5-8; Ex. 11 McMahon Decl. ¶¶ 5-8; Ex. 12 Rubio Decl. ¶¶ 5-7; Ex. 13 Rowton Decl. ¶¶ 5-8; Ex. 14 Saporta Decl. ¶¶ 6-8; Ex. 15 Sevak Decl. ¶¶ 5-8; Ex. 16 Villanueva Decl. ¶¶ 5-8; Ex. 17 Wojciechowski Decl. ¶¶ 5-8.
[68] Ex. 62 (Portugal Dep.) 41:14-42:7; Ex. 30 (Buitrago Dep.) 94:23-95:17.
[69] *See also* Ex. 63 (BAYVIEW000280362) at -362 ████████████████████ ████████████████████████████████████████

"samples" by Lockbit's affiliates, who rarely post all the files taken. Ex. 21 (Frantz Decl.) § III ¶ 7, § IV, § V ¶¶ 12, 18, § VI ¶¶ 16-22, § VIII. This is because ransomware operators like Lockbit typically provide only a portion of the data to affiliates, to demonstrate the nature and quality of the data they have available for sale. *Id.* § III ¶ 7, § V ¶ 9. Because affiliates do not have the entire corpus of information taken in a data breach, they expose only a "miniscule portion" of stolen information. *Id.* § III ¶ 7, § IV ¶ 7, § V ¶¶ 12, 18, § VIII .

Because of this, while some of the information taken in the Data Breach has been posted on the dark web, all victims whose PII was taken in the Data Breach remain at risk for years to come, as the attackers have demonstrated that the data was taken and they will expose it. Unlike credit card numbers, which become useless once canceled, PII such as the SSNs and birth dates taken in this Data Breach do not change and can be employed in a variety of schemes. Such information "remains perpetually valuable for committing identity theft, fraudulently opening accounts, or even for blackmail and extortion." Ex. 20 (Mott Decl.) ¶ 33.

The specific risks facing all Class members in this case include: (1) financial fraud and identity theft from stolen SSNs, dates of birth, and/or financial account details; (2) mortgage and loan fraud because bad actors can impersonate victims to modify or divert mortgage payments or use this data for mortgage fraud; (3) property and real estate fraud from bad actors who can use stolen PII to conduct unauthorized sales or place fraudulent property rental listings using only basic PII such as name, address, phone number and SSN; and (4) targeted scams and phishing, and reputational damage. *Id.* ¶ 29. Again, "[a]ll stolen PII will exist, within cybercriminals' possession and/or on the [dark web] and on criminal forums, in perpetuity." *Id.* ¶ 36; *see also* Ex. 21 (Frantz Decl.) § III ¶¶ 5, 7, § VII, § VIII (because the information stolen by the cybercriminals in the breach "is versatile and immutable," it "will remain in high demand, for multiple purposes for

17

many years"). Therefore, "victims will have to incur [the] expense [of identity protection services] for the remainder of their lives to continue to protect their PII." Ex. 20 (Mott Decl.) ¶ 39.

## III.    THE PROPOSED CLASSES AND PROPOSED CLASS COUNSEL

To obtain class certification, Plaintiffs must show that each of the four requirements of Rule 23(a), and at least one of the three alternative requirements of Rule 23(b), are satisfied. *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016).

Plaintiffs seek certification of the following class (the "Class") under Rule 23(b)(3) for their negligence claim (Count I) and under Rule 23(b)(2) for their negligence, violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"), and declaratory and injunctive relief claims (Counts I (to the extent it seeks injunctive relief), VI, X):

> **The Class.** All individuals in the United States whose PII was accessed or exfiltrated during the Data Breach.[70]

Plaintiffs separately seek certification under Rule 23(b)(3) of the following state subclasses (collectively, the "Subclasses") as to their corresponding claims under state law for violations of the CCPA and Washington's Consumer Protection Act, Wash. Rev. Code Ann. § 19.86.010, *et seq.* ("WCPA") (Counts III, IX). They also seek certification of the state Subclasses under Rule 23(b)(2) for injunctive relief under the CCPA,, FDUTPA (in the event the Court declines to certify the (national) Class with respect to that claim), and WCPA (Counts III, VI, IX).[71]

> **The California Subclass (CCPA).** All individuals residing in California whose PII

---

[70] All sixteen Plaintiffs are the proposed Class representatives.

[71] Plaintiffs do not seek certification as to their claims under California's Consumer Records Act, Illinois' Consumer Fraud and Deceptive Business Practices Act, or New York's General Business Law (Counts IV, VII, VIII).  Based on the Court's ruling of March 31, 2025, dismissing the claim under California's Unfair Competition Law, Cal. Bus & Prof. Code § 17200, *et seq.* ("UCL"), Plaintiffs withdraw the request to certify only that claim for injunctive relief under Rule 23(b)(2).

was accessed or exfiltrated during the Data Breach.[72]

**The Florida Subclass (FDUTPA).** All individuals residing in Florida whose PII was accessed or exfiltrated during the Data Breach.[73]

**The Washington Subclass (WCPA).** All individuals residing in Washington whose PII was accessed or exfiltrated during the Data Breach.[74]

Excluded from each proposed Class and Subclass are: Defendants and Defendants' parents, subsidiaries, members, affiliates, officers and directors, and any entity in which any Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and any Judges assigned to hear any aspect of this litigation, as well as their immediate family members and staff.

In addition, Plaintiffs move to appoint the following attorneys and firms as Class Counsel under Fed. R. Civ. P. 23(g): John Yanchunis of Morgan & Morgan Complex Litigation Group; Stuart A. Davidson of Robbins Geller Rudman & Dowd LLP; Adam E. Polk of Girard Sharp LLP; Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC; Julie Braman Kane of Colson Hicks Eidson, P.A.; and M. Anderson Berry of the Law Firm of Clayeo C. Arnold (collectively, "Proposed Class Counsel").

## IV.   THE NAMED PLAINTIFFS HAVE STANDING AND THE PROPOSED CLASS AND SUBCLASSES ARE WELL DEFINED.

"[B]efore any of the factors under Rule 23 can be addressed, a Court must ensure that standing under Article III is met." *In re Mednax Servs., Inc. Cust. Data Sec. Breach Litig.*, 2024 WL 1554329, at *4 n.2 (S.D. Fla. Apr. 10, 2024) (citing *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987)). "[A]t the class certification stage only the named plaintiffs need have standing."

---

[72] The proposed California Subclass representatives are Cindy Villanueva, Pedro Rubio, Norma Grossman and Jay Saporta.

[73] The proposed Florida Subclass representative is Peter Wojciechowski.

[74] The proposed Washington Subclass representative is Mark Arthur.

*Green-Cooper v. Brinker Int'l Inc.*, 73 F.4th 883, 888-89 (11th Cir. 2023). The issue of Plaintiffs'

standing was extensively briefed in connection with Defendants' September 2022 motion to

dismiss,[75] and this Court found that Plaintiffs have standing. *See* ECF No. 144 at 6-7; *see also*

*Mednax*, 2024 WL 1554329, at *4 n.2 (standing requirements at class certification were met based

on ruling on motion to dismiss). All Plaintiffs ██████████████████████████████████████████

████████████████████████████████████,[76] and the evidence ████████████████████████

████████████████████████████████████.[77] Plaintiffs Berg, Cunningham, Lapenter, and Sevak

experienced fraud following the Data Breach,[78] and ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████.[79] The standing requirement is readily met.

In addition to standing, Plaintiffs also must establish that the proposed classes are

"'adequately defined and clearly ascertainable.'" *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302

(11th Cir. 2021) (citation omitted). Ascertainability does not mean there must be an

administratively feasible way of identifying class members. Rather, it asks only whether the

proposed class "is adequately defined such that its membership is capable of determination." *Id.*

at 1304; *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1369 (11th Cir. 2021) (reiterating there is no

"administrative feasibility requirement"). Here, the Class definitions are clear and use only

objective criteria so that membership is capable of determination, including, for example, ████████

████████████████████████████████████████████████████████████████████████████████████

---

[75] *See* ECF No. 59 (MTD) at 4-6; ECF No. 71 (Opp.) at 14-17; ECF No. 75 (Reply) at 2-3. All cites to the Docket use the ECF pagination.

[76] *See supra* note 31 and accompanying text.

[77] *See supra* notes 20, 26 and accompanying text.

[78] Ex.3 Berg Decl. ¶6; Ex.4 Cunningham Decl. ¶6; Ex.10 Lapenter Decl. ¶6; Ex.15 Sevak Decl.¶6.

[79] *See supra* Section II.D.

████████████████████████████████████████████

███████████████████████████████████████"[80]

Ascertainability is thus satisfied. *Rensel*, 2 F.4th at 1370 (ascertainability met where membership turned on "objective, verifiable criterion" and could be identified through defendant's records).

The threshold requirements for class certification are therefore met.

## V.      RULE 23 LEGAL STANDARDS

In determining whether the requirements of Rule 23 are met, the Court must conduct a "rigorous analysis." *Brinker*, 73 F.4th at 888. The Court does not, however, have "free-ranging" authority at the class certification stage "'to conduct a preliminary inquiry into the merits of a suit.'" *Id.* (quoting *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)). Rather, "'[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites … are satisfied.'" *Id.* (quoting *Amgen*, 568 U.S. at 466); *accord Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009). Each of Rule 23's applicable requirements are satisfied here.

## VI.      THE PROPOSED CLASS AND SUBCLASSES SATISFY RULE 23(a).

Rule 23(a) requires that: (i) the proposed class is "so numerous that joinder of all members is impracticable" (numerosity); (ii) there are "questions of law or fact common to the class" (commonality); (iii) the named representatives' claims are "typical" of those of the class (typicality); and (iv) the representatives have the ability to "fairly and adequately protect the interests of the class" (adequacy). Fed. R. Civ. P. 23(a); *In re Equifax Inc. Cust. Data Sec. Breach Litig.*, 999 F.3d 1247, 1274-75 (11th Cir. 2021). These requirements are met.

---

[80] Ex. 28  (Resp. to Interrog.) at No. 1; *see also* Ex. 64 (BAYVIEW000389481) at -482 (████████████ ██████████████████████████████████████████████████████████ ███████████████████████████).

21

## A.      Joinder of All Proposed Class and Subclass Members Is Impracticable.

Rule 23(a)(1)'s numerosity requirement is a "generally low hurdle." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009). Plaintiffs "do not need to know the 'precise number of class members'"; a "reasonable estimate" is enough. *Brink v. Raymond James & Assoc., Inc.*, 328 F.R.D. 437, 444 (S.D. Fla. 2018) (citation omitted). And numerosity "is generally satisfied when there are more than forty putative class members." *Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *1 (S.D. Fla. May 24, 2019) (Gayles, J.). The estimated membership in the Class and Subclasses here far exceeds that number.

Defendants readily acknowledge that there are millions of Class members. *See* Ex. 44 (Dec. 19, 2024 Hr'g Tr.) at 19:6-11 (Mr. Mannering: "We have explained in interrogatory responses that ██████████████████████████████████ …. So I don't think we are going to have a dispute on numerosity."). This is confirmed by Defendants' own documents which show that ███████████████████████████████████████████.[81] As for the Subclasses, according to Defendants' own discovery responses, ████████████████████████████████

████████████████████████████████████████████████████████████

█████.[82] The proposed Class and Subclasses are thus sufficiently numerous.

## B.      There Are Many Common Questions of Fact and Law.

Commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Like numerosity, the commonality requirement is a "'low

---

[81] Ex. 50 (BAYVIEW000002669); Ex. 45 (3/4/25 Supp. Kroll Interrog. Resp.) at No. 13.
[82] Ex. 28 (Resp. to Interrogs.) at No. 4; Ex. 45 (3/4/25 Supp. Kroll Interrog. Resp.) at No. 13.

hurdle'" or "'light burden,'" as it "'does not require that all questions of law and fact raised be common.'" *Cardenas v. Toyota Motor Corp.*, 2021 WL 6926418, at *8 (S.D. Fla. Aug. 12, 2021) (quoting *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009)). Even "'a single [common] question' will do." *Dukes*, 564 U.S. at 359 (citation omitted).

There are multiple issues in this case whose resolution will affect ***all*** Class members "in one stroke," including "whether [Defendants] had a duty to protect customer data," and "whether [Defendants] failed to implement adequate data security measures to protect customers' data." *In re Brinker Data Incident Litig.*, 2021 WL 1405508, at *8 (M.D. Fla. Apr. 14, 2021), *vacated in part on other grounds by Brinker*, 73 F.4th 883; *see also Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 698 (W.D. Ky. 2024) (common questions included defendant's duty to class members, breach of duty and whether defendant caused data breach that resulted in data theft); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 148 (D. Md. 2022) (common "central issues" included "whether Defendants failed to adequately protect customers' PII such that they breached a duty" or "violated a state consumer protection statute"), *rev'd on other grounds*, *In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023), *reinstated after appeal*, *In re Marriott Int'l Customer Data Sec. Breach Litig.*, 345 F.R.D. 137, 146 (D. Md. 2023); *Smith v. Triad of Alabama, LLC*, 2017 WL 1044692, at *8 (M.D. Ala. Mar. 17, 2017) (similar). Commonality is met.

### C.    Plaintiffs' Claims Are Typical of Those of the Class and Subclasses.

To be "typical," a "class representative must possess the same interest and suffer the same injury as the class members." *Williams*, 568 F.3d at 1357 (citation omitted). The test "is not demanding." *In re Checking Acct. Overdraft Litig.*, 286 F.R.D. 645, 653 (S.D. Fla. 2012).

Typicality is satisfied because all Plaintiffs and Class members had their PII compromised in the same Data Breach, out of which all of their claims arise. In other words, Plaintiffs and Class

members suffered the same injury. Moreover, all claims are also based on the same course of conduct by Defendants—before, during and after the Breach—and the same known, unaddressed vulnerabilities that allowed the Breach to occur. Further, "there is no variation in legal theory" between Plaintiffs and Class members. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

### D. Plaintiffs Will Fairly and Adequately Protect the Proposed Classes' Interests.

Rule 23(a)(4)'s "adequacy requirement is that a class representative 'must adequately protect the interests of those he purports to represent.'" *Equifax*, 999 F.3d at 1275 (citation omitted). The requirement is met when: (1) no "fundamental" conflicts exist between the interests of the class representatives and the rest of the class; and (2) the class representatives and their counsel will "adequately prosecute" the case. *Id.* at 1275-77. Both elements are satisfied here.

Plaintiffs' interests do not conflict in any fundamental way with the interests of any other Class or Subclass member.[83] Just as in *Equifax*, all of Plaintiffs' claims "arise out of the same unifying event, [Defendants'] data privacy breach," the "class members all had their personal information compromised in the same data breach," "they seek redress for similar injuries," and there can be "no dispute that the data breach harmed all class members and made none better off." *Equifax*, 999 F.3d at 1275-77 (affirming trial court's adequacy finding on these grounds). Under *Equifax* and the "reasoned approach adopted by courts in other data breach cases," the first element of adequacy is satisfied. *Id.* at 1276.

---

[83] Ex.2 Arthur Decl. ¶13; Ex.3 Berg Decl. ¶13; Ex.4 Cunningham Decl. ¶13; Ex.5 Farley Decl. ¶ 13; Ex.6 Gonzalez Decl. ¶14; Ex.7 Grossman Decl. ¶13; Ex.8 Hamilton Decl. ¶12; Ex.9 Kassem Decl. ¶13; Ex.10 Lapenter Decl. ¶13; Ex.11 McMahon Decl. ¶13; Ex.12 Rubio Decl. ¶11; Ex.13 Rowton Decl. ¶3; Ex.14 Saporta Decl. ¶13; Ex.15 Sevak Decl. ¶13; Ex.16 Villanueva Decl. ¶12; Ex. 17 Wojciechowski Decl. ¶13.

As to adequacy's second element, the record establishes that Plaintiffs are committed to seeking redress on behalf of the entire Class and each Subclass. They have actively participated in the litigation, including by conferring with counsel on numerous occasions, responding to discovery requests, reviewing and commenting on court filings, producing documents, and preparing and appearing for depositions.[84] Moreover, Proposed Class Counsel, selected by this Court as Interim Class Counsel (ECF Nos. 43, 243), have substantial experience and expertise prosecuting class actions, including similar nationwide cases arising from major data breaches, have committed and will continue to apply the resources necessary to represent the Class, and have otherwise demonstrated their commitment and ability to vigorously prosecute this case in the best interests of the Class. *See* ECF No. 26 (Mtn. for Apptmt. As Interim Lead Counsel); ECF Nos. 26-2–26-7 (firm resumes). Among other things, they have conducted a significant factual investigation, drafted the consolidated complaints, opposed Defendants' motions to dismiss, conducted significant discovery, including 14 defense witness depositions and the review of over 123,000 documents produced by Defendants, engaged in months of discovery motion practice, engaged experts, and prepared and filed this Motion for Class Certification. *See* Ex. 1 (Yanchunis Decl.) ¶¶ 3-4.

Accordingly, the requirements of Rules 23(a) and 23(g) are satisfied, and the Court should appoint Proposed Class Counsel to represent the Class.

---

[84] Ex.2 Arthur Decl. ¶¶11, 14-17; Ex.3 Berg Decl. ¶¶11, 14-17; Ex.4 Cunningham Decl. ¶¶11, 14-17; Ex.5 Farley Decl. ¶¶11, 14-17; Ex.6 Gonzalez Decl. ¶¶12, 15-18; Ex.7 Grossman Decl. ¶¶11, 14-17; Ex.8 Hamilton Decl. ¶¶13-16; Ex.9 Kassem Decl. ¶¶11, 14-17; Ex.10 Lapenter Decl. ¶¶11, 14-17; Ex.11 McMahon Decl. ¶¶11, 14-17; Ex.12 Rubio Decl. ¶¶12-15; Ex.13 Rowton Decl. ¶¶ 11,14-17; Ex.14 Saporta Decl. ¶¶11,14-17; Ex.15 Sevak Decl. ¶¶11, 14-17; Ex.16 Villanueva Decl. ¶¶13-16; Ex.17 Wojciechowski Decl. ¶¶11, 14-17.

## VII.   THE PROPOSED CLASSES SATISFY RULE 23(b)(3).

Where certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate over individual issues, and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615-16 (1997). Both requirements are satisfied here.

### A.    Common Questions Predominate Plaintiffs' Claims.

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Carriuolo*, 823 F.3d at 985 (quoting *Amchem*, 521 U.S. at 623-24). As the Supreme Court has explained: "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages[.]" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotations and citation omitted).

The predominance inquiry "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Plaintiffs need not prove every element of their claims is susceptible to class-wide proof. *Amgen*, 568 U.S. at 469. Rather, the Court should assess each element and determine whether the issues "that are subject to generalized proof … predominate over those issues that are subject only to individualized proof." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000) (citation omitted).

As in other data breach cases, the most important liability questions related to Plaintiffs' negligence and consumer protection claims are subject to common proof and thus capable of resolution on a class-wide basis. The "'glue binding this putative class action' is Defendants' data security policies and practices and … Defendants' responsibilities to class members regarding data

protection ...." *Marriott*, 341 F.R.D. at 155 (citation omitted). Because these questions can be answered—up or down—for the entire Class using class-wide proof, predominance is met.

### 1.    Common Questions Predominate Over Plaintiffs' Negligence Claims.

The parties agree that Florida law governs Plaintiffs' negligence claim. *See* ECF No. 59 (MTD) at 6 n.1 ("Florida law governs Plaintiffs' negligence claims."); ECF No. 144 at 7 (analyzing negligence claim "under Florida law"); *In re Sonic Corp. Cust. Data Breach Litig.*, 2020 WL 6701992, at *6 (N.D. Ohio Nov. 13, 2020) (finding "there will be common legal negligence standards" because parties agreed that one state's law applied to all class members' claims). Under Florida law, to recover on a negligence claim, a plaintiff must prove "a duty, breach of that duty, causation, and damages." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012). Class-wide evidence will be used to determine whether each element has been established.

***Duty and Breach.*** In a data breach case, "questions of duty and breach" are "common issues susceptible to proof on a class-wide basis" and the "two central questions" predominating over any individualized questions. *Smith*, 2017 WL 1044692, at *13-15; *see also In re Sonic Corp.*, 2021 WL 6694843, at *3 (6th Cir. Aug. 24, 2021) (predominance met because "duty, breach, and causation" all arose from common questions). This case is no different.

To start with, the same evidence will determine whether or not Defendants had a duty to adequately secure the consumer PII. For instance, common evidence will show that Defendants ███████████████████████████████████████████,[85] and that Defendants are required by federal and state laws, such as the Gramm-Leach-Bliley Act ("GLBA"), to protect the security, confidentiality, and integrity of PII by developing a comprehensive security program that contains

---

[85] *See supra* notes 6–8 and accompanying text.

administrative, technical, and physical safeguards,[86] and to provide privacy notices. Defendants themselves also recognized they ████████████████████████"[87] ██████████████████████ and each ███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████."[88] Common evidence will also demonstrate that the risk of the theft of that information was foreseeable because ██████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████. *See supra* Section II.A; *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1222-23 (S.D. Fla. 2022) (discussing duty in data breach context). Because the circumstances which give rise to Defendants' duty to safeguard Class members' PII do not vary between Class members, whether Defendants had such a duty can be answered once for everyone.

As for breach, common evidence applicable to all Class members, including Defendants' own evidence and analysis, and the report of Plaintiffs' cybersecurity expert Thompson, show that

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████. *See* Sections II.B, II.C, *supra*. This evidence will show, for example, that, ████████████████████████████████████████████

---

[86] *See* 16 C.F.R. §§ 314.3, 314.4; *see also* Ex. 65 (BAYVIEW000007193) at -194 ██████████ ███████████████████████████).

[87] Ex. 23 (BAYVIEW000138037).

[88] Ex. 66 (BAYVIEW000171495) at -496; Ex. 67 (BAYVIEW000006566) at -570; *see also* Ex. 68 (BAYVIEW000004233) at -312, -315-316.

██████████████████████████████,[89] █████████████████████████████████████████,[90]

and ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████. *See* Section II.C.2, *supra*; Ex. 19 (Thompson Decl.) ¶¶ 164, 168-175. Common

evidence further shows that Bayview's IT security team failed to ███████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██. *See* Section II.C.1-2, *supra*; Ex. 19 (Thompson Decl.) ¶¶ 143-163, 173-175.

Other common evidence going to Defendants' breach of their duty includes their failure to

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████ *See* Section II.C.3, *supra*. Defendants also failed to comply with industry standards by

allowing ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████. *See* Section II.C.4, *supra*.

In sum, whether Defendants owed and breached a duty to provide adequate data security are

predominating questions that can be answered for all Class members at once using the same

---

[89] Ex. 69 (BAYVIEW000414625) at -627; *see also* Ex. 35 (Wilkey 30(b)(1) Dep.) 116:18-117:21
("████████████████████████████████████████████ ....").
[90] Ex. 33 (BAYVIEW000371311) (████████████████████████████████████").

evidence. *See Brinker*, 2021 WL 1405508, at *11-13 (predominance met as to negligence claim); *Savidge*, 727 F. Supp. 3d at 706-07 (same).

***Causation and Damages.*** Causation, too, is a predominating common issue because it also will be determined based on common evidence germane to the adequacy of Defendants' internal data security measures. *Sonic*, 2021 WL 6694843, at *3 ("Here, the alleged elements of a negligence claim—duty, breach, and causation—all arise from common questions: whether Sonic's internal data security measures and its remote access policy caused the data breach, leading to the issuance of the alerts and actions by the plaintiffs to limit or reimburse harms."). As for questions of Class members' financial history, courts have held that it is a matter that can be addressed together with damages and is secondary to the questions of duty and breach. *See, e.g.*, *Smith*, 2017 WL 1044692, at *14-15 (explaining that causation and damages "orbit around" the "two central questions" of duty and breach). The Eleventh Circuit has repeatedly held, including in *Brinker*, that even if damages must be calculated individually, "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Brinker*, 73 F.4th at 893 (quoting *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003)); *see also Carriulo*, 823 F.3d at 988; *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1240 (11th Cir. 2016). In *Brinker*, the court also held that causation issues were bound up with the issue of damages, and that questions about whether the defendant's conduct caused a class member's injuries should "be determined at the damages phase." 2021 WL 1405508, at *12. Because the plaintiffs' expert presented a "common method of calculating damages that allows the Court to determine individual class members' damages in a non-complex and non-burdensome way," "causation and damages do not require significant individualized proof such that individual questions predominate over common ones." *Id.* at *12-13. On appeal, the

Eleventh Circuit upheld the plaintiffs' damages model, rejecting the defendant's argument that individualized damages issues predominated.[91] 73 F.4th at 893-94.

Here, as in *Brinker*, Plaintiffs will use common proof to establish that Class members suffered the same injuries as a result of Defendants' conduct and common methodologies to calculate the amount of those losses. Plaintiffs' experts, Eric Matolo and Terry Long, show that damages attributable to the breach can be calculated on a class-wide basis, using several methodologies to determine: (1) the value of stolen PII; (2) compensation for the increased risk of future identity theft; and (3) compensation for economic value of time spent to respond and mitigate the actual and potential future harms caused by the Data Breach.

As to the first category, PII has "economic value" and there are both legitimate and illicit markets where PII is traded. Ex. 18 (Matolo Decl.) ¶¶ 25-28, 34. The value of PII stolen in this case can be measured with reference to arms-length transactions where companies sell access to PII that they have obtained, as well as research on arms-length transactions where individuals sell access to their PII for a price. It can also be assessed with reference to values corresponding to transactions that occur on the black market. *Id.* ¶¶ 34-35, 38, 41-71. On the basis of this extensive data, values for the categories of PII exposed in the Data Breach can be calculated on a class-wide basis, and range from $0.03 to $55 while class-wide damages are $320,473,832. *Id.* ¶¶ 72-78.

As to the second category, Matolo opines that, "[f]rom an economic perspective, the bearing of extra risk, without any corresponding potential increased payout, is economic harm." *Id.* ¶ 86. Matolo explains that economists assess the magnitude of the harm by considering the "value or cost of a means to protect against the harm of the wrongful act." *Id.* Thus, an appropriate

---

[91] The Eleventh Circuit vacated the class certification order in part as to two plaintiffs who lacked standing because they visited the defendant's restaurants outside the affected class period. 73 F.4th at 890-91.

economic measure of the harm suffered by Class members is the cost of protection against the consequences of the Data Breach. Here, as Matolo notes, this cost was calculated by actuarial expert Long, on the basis of cybersecurity expert Mott's opinions on: (1) the nature and duration of the risk faced by Class members and (2) the commercial products available to address it. *Id.* ¶¶ 87-95. Mott identifies the multitude of risks faced by Class members as a result of the Data Breach, including the risk of identity theft "for the rest of their lives." Ex. 20 (Mott Decl.) ¶¶ 16, 29, 33, 36, 39, 45. Mott opines that identity theft protection product LifeLock Ultimate Plus ($420/year) would best protect Class members against the consequences of the Data Breach. *Id.* ¶ 43. Long calculates the cost of purchasing that product for the duration of Class members' lives (as well as shorter periods), by applying the relevant actuarial tables to the Class member date of birth ("DOB") information produced by Defendants. Ex. 22 (Long Decl.) ¶¶ 8, 10-11, 26-40. Long performed this calculation for Class members as to whom Defendants have provided DOBs – 4.75 million Class members. *Id.* ¶ 8. Long can apply the same methodology to calculate the value of the cost of protection for each and all Class or Subclass members if provided those Class or Subclass members' DOBs prior to trial. *Id.* ¶¶ 8-9. His methodology would not change. *Id.*

Finally, to calculate the value of time required to address the actual and potential effects of the Data Breach, Matolo calculates the market value of the hourly labor rate required to accomplish the tasks generally recommended to be undertaken in the wake of a data breach. Ex. 18 (Matolo Decl.) ¶¶ 36, 81-84. Although Class Members may not actually be incurring out-of-pocket costs for third-party mitigation services, using the market value of the effort involved is a well-established valuation method for assessing the cost of lost time. *Id.* ¶ 85. Matolo arrives at the value of $23-$33 dollars, on average, for an hour spent addressing the effects of the Data Breach. *Id.* ¶¶ 82-84.

Even if individualized damage issues were valid grounds to deny certification (they are not), Plaintiffs also seek nominal damages,[92] the award of which to Class members will not require any individualized calculation. *See, e.g.*, *Attias v. CareFirst, Inc.*, 346 F.R.D. 1, 11-12 (D.D.C. 2024), *motion to certify appeal denied*, 2024 WL 3886643 (D.D.C. Aug. 20, 2024) (certifying data breach claims for nominal damages). Because "the predominating questions concerning liability will [not] be overwhelmed by intensive, individualized damages determinations," class treatment is appropriate. *Carriuolo*, 823 F.3d at 988-89; *see Brinker*, 73 F.4th at 893 ("At the class certification stage, all that the named plaintiffs had to prove was that a reliable damages methodology existed, not the actual damages plaintiffs sustained.").[93]

Because duty, breach and causation will be answered the same way for each class member, based on the same evidence, they will have "a direct impact on every class member's effort to establish liability." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). Common issues therefore predominate as to Plaintiffs' negligence claims. *See Sonic*, 2021 WL 6694843, at *3; *Savidge*, 727 F. Supp. 3d at 706-07.

### 2.   Predominance Is Also Satisfied as to Plaintiffs' Statutory Claims.

Predominance is also satisfied with respect to Plaintiffs' claims on behalf of the respective state Subclasses for violations of the CCPA and WCPA.

---

[92] Under Florida law, "[c]ompensatory damages include both actual and nominal damages." *H & U Foods, Inc. v. Ellison*, 439 So. 2d 923, 924 (Fla. 4th DCA 1983); *see also Stevens v. Cricket Club Condo., Inc.*, 784 So. 2d 517, 519 (Fla. 3d DCA 2001).

[93] *See also Jerue v. Drummond Co., Inc.*, 2023 WL 6610603, at *7 (M.D. Fla. Aug. 25, 2023), *R&R adopted,* 2023 WL 6586087 (M.D. Fla. Oct. 10, 2023); *Coffey v. WCW & Air, Inc.*, 2020 WL 4519023, at *4-6 (N.D. Fla. Mar. 25, 2020).

**CCPA**. Plaintiffs' CCPA claim is based on Defendants' alleged violation of their "duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the [PII]," which Plaintiffs claim resulted in the unauthorized access, exfiltration and theft of the California Subclass members' PII and remains uncured. Cal. Civ. Code § 1798.150(a), (b) (version eff. Jan. 1, 2020); *Ramos v. Wells Fargo Bank, N.A.*, 2023 WL 5310540, at *2 (S.D. Cal. Aug. 17, 2023) (discussing CCPA claim). Thus, just like the negligence claim, the CCPA claim is amenable to common proof because it arises out of the same course of conduct by Defendants. And the pivotal liability questions—Defendants' statutory duty, whether their security procedures and practices were inadequate and thus breached that duty, whether Defendants' security deficiencies enabled the Data Breach to occur, and whether Defendants have (as they contend) cured those deficiencies—have common answers that can be obtained with class-wide evidence. The CCPA also provides for statutory damages of between $100 and $750, Cal. Civ. Code § 1798.150(a)(1)(A), making class-wide damages a simple matter of arithmetic. *See Legg v. Spirit Airlines, Inc.*, 315 F.R.D. 383, 391 (S.D. Fla. 2015) (predominance met in part because Plaintiffs were seeking statutory damages).

**WCPA**. Plaintiffs' WCPA claim is no different. *See Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1135 (9th Cir. 2016) (elements of WCPA claim were either subject to common proof or went to damages). This claim, like Plaintiffs' other claims, arise out of Defendants' common course of conduct which Plaintiffs contend (as courts consistently conclude) violated the WCPA's prohibition of "unfair" acts and practices. *See* Wash. Rev. Code Ann. § 19.86.020; *POC USA, LLC v. Expeditors Int'l of Wash., Inc.*, 2024 WL 1579522, at *4 (W.D. Wash. Apr. 11, 2024) ("failure to employ adequate data security measures" constitutes "unfair" act under WCPA," as

"federal courts applying Washington law have consistently found") (citations omitted); *see also Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1162 (W.D. Wash. 2017).

The value of the stolen PII and the cost of monitoring are each cognizable under the WCPA. *See Guy v. Convergent Outsourcing, Inc.*, 2023 WL 4637318, at *8 (W.D. Wash. July 20, 2023) (lost value of PII "satisfies" WCPA's injury "element" and "lost time" spent remedying PII disclosure "is evidence of damages"); *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *11 (W.D. Wash. Nov. 14, 2024) (diminution in value of personal data constitutes injury under WCPA); *Mednax*, 603 F. Supp. 3d at 1217-18 ("diminution in [PII's] value within the marketplace of credit" constitutes "injury to property under the WCPA"); *see also Nunley v. Chelan-Douglas Health Dist.*, 558 P.3d 513, 527 (Wash. Ct. App. 2024) ("We follow the line of cases that hold that a person's means of identification, PII and PHI, can have value and conceivably that value can be diminished or destroyed when their identities are misappropriated for illegal purpose."); *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 428 (E.D. Va. 2020) ("[U]ndertaking tasks or incurring expenses to respond to the alleged deceptive practice, including costs incurred in response to data breach, which may affect individual time or business profits, qualifies as a cognizable injury [under WCPA]."). And, as demonstrated above, *see supra* Section VII.A.1, these injuries can be proved with common evidence and are capable of measurement on a class-wide basis using common methodologies. Common issues therefore predominate as to the WCPA claim. *See also* Ex. 18 (Matolo Decl.) ¶ 79; Ex. 22 (Long Decl.) ¶¶ 8-9.

**B.    A Class Action Is the Superior Method of Adjudication for This Case.**

Rule 23(b)(3) also requires that use of a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The "four factors pertinent to a superiority discussion" include: (1) "the class members' interests in individually

controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." *Brinker*, 2021 WL 1405508, at *13 (quoting Fed. R. Civ. P. 23(b)(3)). Each supports a finding of superiority here.

First, there is no indication any absent class member has any interest in controlling their own litigation and Proposed Class Counsel are unaware of any other parallel litigation against Defendants. Further, the small amount of recovery available to each Class member on an individual basis, including on their CCPA statutory damages claims ($100-$750), would not justify the prosecution of separate lawsuits. *See, e.g.*, *Bush v. Calloway Consol. Grp. River City, Inc.*, 2012 WL 1016871, at *11 (M.D. Fla. Mar. 26, 2012).

Second, class treatment of the predominating common questions of law and fact is superior to multiple, individual actions. The "predominance analysis has a tremendous impact on the superiority analysis," and where, as here, the "common issues" overwhelmingly "predominate over individual issues," a class action is "the more desirable … vehicle for adjudicating the plaintiffs' claims, both relative to other forms of litigation such as joinder or consolidation, and in absolutely terms of manageability." *Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 702 (S.D. Fla. 2018) (citation and internal quotation marks omitted). Third, the prosecution of separate actions by individual Class members would create a risk of inconsistent adjudications.

Finally, as detailed in Plaintiffs' proposed trial plan (Exhibit 26), this case presents no management difficulties that would preclude maintaining it as a class action because the key questions going to Defendants' liability can be efficiently tried together at once using common evidence primarily under Florida law and a handful of other states. By contrast, the difficulties in

36

managing potentially thousands of individual actions far outweigh any difficulties the Court may encounter in managing this case as a class action. *See, e.g., Brinker*, 2021 WL 1405508, at \*13. Put simply, a "class action is the only realistic way Plaintiffs' claims can be adjudicated. 'Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts.'" *Checking*, 286 F.R.D. at 659 (quoting *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983)).

Accordingly, the Court should certify the proposed Class and Subclasses under Rule 23(b)(3) with respect to their claims for negligence and violations of the CCPA and WCPA.

## VIII. CERTIFICATION OF A RULE 23(B)(2) CLASS FOR INJUNCTIVE AND CORRESPONDING DECLARATORY RELIEF IS ALSO WARRANTED.

Plaintiffs also seek certification under Rule 23(b)(2) of the Class as to their Declaratory Judgment and Injunctive Relief claim (Count X) and negligence claim (Count I, to the extent it seeks injunctive relief), the California Subclass as to the CCPA injunctive relief claims (Counts III), the Florida Subclass as to FDUTPA claim (Count VI), and the Washington Subclass as to the WCPA injunctive relief claim (Count IX) (collectively, the "Injunctive Relief Claims"). Certification under Rule 23(b)(2) does not require a showing of predominance or superiority, *Chianne D. v. Weida*, 2024 WL 1743334, at \*22 (M.D. Fla. Apr. 23, 2024), and is appropriate when, in addition to the four requirements of Rule 23(a) discussed above, "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The "key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted[.]'" *Dukes*, 564 U.S. at 360 (citation omitted).[94]

---

[94] That Plaintiffs also seek certification of a Rule 23(b)(3) damages class has no impact on the Court's analysis of whether to also certify a Rule 23(b)(2) injunctive class. *See Fabricant v. Sears*

The Injunctive Relief Claims meet the Rule 23(b)(2) standard because Defendants ███

████████████.[95] Class members have an interest and indeed the right to ensure that

their PII is adequately protected, or if no longer needed, destroyed. ███████████

████████████████, thus continuing to violate the CCPA,

FDUTPA, and WCPA, and presenting an ongoing threat to the Class members.[96] *See Walker v.*

*City of Calhoun, Georgia*, 2016 WL 361580, at *3, *9 (N.D. Ga. Jan. 28, 2016) (plaintiffs had

standing and Rule 23(b)(2) certification warranted on claims challenging defendant's policies and

practices even if defendant had changed policies after lawsuit's filing, as "new" policy "may well

give rise to the same concerns" and "cause the same harm" as previous policy). Among other

things, ████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

█████████.[97] Plaintiffs seek an order appointing an independent and qualified security

monitor with the authority to regularly audits and ensure that Defendants develop and properly

secure their computer systems and networks. Moreover, a Court order directing Defendants to,

among other things (1) ██████████████████████████

---

*Roebuck*, 202 F.R.D. 310, 315 (S.D. Fla. 2011) ("A court … may certify multiple classes: a class
for injunctive relief under Rule 23(b)(2) and a damages class under Rule 23(b)(3).").

[95] Ex. 62 (Portugal Dep.) 41:14-42:7; Ex. 30 (Buitrago Dep.) 94:23-95:17.

[96] The failure to maintain adequate data security constitutes an unfair business practice that violates
the FDUTPA and WCPA,. *See Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1190 (M.D. Fla.
2022); *Veridian*, 295 F. Supp. 3d at 1162; *Hameed-Bolden v. Forever 21 Retail, Inc.*, 2018 WL
6802818, at *4 (C.D. Cal. Oct. 1, 2018).

[97] Ex. 19 (Thompson Decl.) at ¶¶ 180-188.



; (2) ▮▮▮▮▮▮▮▮▮▮▮▮▮ (3) ▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (4) ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮ and (5) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮

Declaratory and injunctive relief requiring Defendants to take the above actions is needed to remediate Defendants' inadequate data security, which uniformly applies to all Class members, will ensure that Class members' PII now is adequately protected in the future. *See Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 697-99 (N.D. Cal. 2019) (certifying Rule 23(b)(2) class seeking declaration of insufficient data security practices and corresponding injunctive relief).

## IX. ALTERNATIVELY, RULE 23(c)(4) ISSUE CERTIFICATION IS APPROPRIATE.

Should the Court determine that a Rule 23(b)(3) class is inappropriate for any claim, the Court should still certify the Class or Subclass under Rule 23(c)(4), which provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Specifically, the Court may certify "particular common issues" under Rule 23(c)(4) if their resolution "would materially advance the disposition of the litigation as a whole," with the focus being "Rule 23's goals of promoting judicial efficiency." *Jones v. Depuy Synthes Prods., Inc.*, 330 F.R.D. 298, 309 (N.D. Ala. 2018) (citation omitted). "[C]ourts commonly use Rule 23(c)(4) to certify some *elements* of liability for class determination, while leaving other elements to individual adjudication …." *Russell v. Educ. Comm'n for Foreign Med. Grads.*, 15 F.4th 259, 269 (3d Cir. 2021) (citation omitted); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) (issue certification "will often be the sensible way to proceed").[98]

---

[98] *See, e.g.*, *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 696-97 (N.D. Ga. 2003) (concluding that "certain negligence issues are appropriate for class treatment"); *Navelski v. Int'l Paper Co.*,

Here, the central questions of Defendants' tort and statutory duties to the Class, their breach of those duties and violations of the statutes alleged, and the adequacy and reasonableness of Defendants' data security measures are common to every member of the Class, are at the heart of this litigation, and fit squarely within this analysis. *See*, *e.g.*, *Marriott*, 341 F.R.D. at 170. The answers to these main questions can be adjudicated on a class-wide basis, based on the same evidence, will be the same for every class member, and will therefore materially advance the resolution of this case.

Absent a class-wide determination of these issues, which are the most costly and burdensome to prove in terms of time, experts and Court resources, wronged consumers may be left with no practicable route to a remedy. *Cf. Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010). Accordingly, to the extent the Court finds that Plaintiffs have not met the requirements for Rule 23(b)(3) with respect to any of their claims as a whole, it should certify these issues for class treatment under Rule 23(c)(4).

## X.    CONCLUSION

Based on the above, Plaintiffs have established all of the prerequisites for class certification and respectfully request that the Court enter an order certifying the Class and Subclasses under Rule 23(b)(3) or, alternatively, Rule 23(c)(4), and under Rule 23(b)(2) for injunctive and declaratory relief. Plaintiffs further request that this Court appoint Plaintiffs as Class representatives and appoint Proposed Class Counsel as Class Counsel.

---

244 F. Supp. 3d 1275, 1310 (N.D. Fla. 2017) (exercising "discretion under Rule 23(c)(4) to certify a liability-only class and bifurcate damages from liability"). Although the Eleventh Circuit has not provided guidance on the interplay between Rules 23(b)(3) and (c)(4), the overwhelming majority of Circuits have adopted this "broad view" of Rule 23(c)(4), which holds that issue certification is proper even if common questions do not predominate as to the entire case or a specific cause of action. *See* 2 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:90 (6th ed.) (discussing "widespread consensus" in support of this "broad view").

**REQUEST FOR HEARING**

Pursuant to S.D. Fla. L.R. 7.1(b), Plaintiffs respectfully request oral argument to present their arguments as to why class certification is justified for these consolidated data breach class actions and to answer any questions of the Court on that subject. Plaintiffs estimate that up to two hours of oral argument may be required given the issues in dispute.

Dated: March 31, 2025

*/s/John A. Yanchunis*
JOHN A. YANCHUNIS
Florida Bar No. 324681
RYAN McGEE
Florida Bar No. 64957
RON PODOLNY
**MORGAN & MORGAN COMPLEX**
  **LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com
rpodolny@ForThePeople.com
*Chair, Plaintiffs' Executive Committee*

JULIE BRAMAN KANE
Florida Bar No. 980277
**COLSON HICKS EIDSON**
255 Alhambra Circle – Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
julie@colson.com
*Plaintiffs' Liaison Counsel*

ADAM E. POLK (*pro hac vice*)
SIMON GRILLE (*pro hac vice*)
KRISTEN PALUMBO (*pro hac vice*)
MIKAELA BOCK
**GIRARD SHARP LLP**
601 California St, Ste 1400
San Francisco, CA  94108
Telephone: (415) 981-4800
apolk@girardsharp.com
jelias@girardsharp.com
sgrille@girardsharp.com
kmacey@girardsharp.com

41

GARY M. KLINGER (*pro hac vice*)
**MILBERG COLEMAN BRYSON
 PHILLIPS GROSSMAN, PLLC**
227 Monroe Street, Suite 2100
Chicago, IL 60606
866.252.0878
gklinger@milberg.com

STUART A. DAVIDSON
Florida Bar No. 0084824
DOROTHY P. ANTULLIS
Florida Bar No. 890421
NICOLLE B. BRITO
Florida Bar No. 43399
**ROBBINS GELLER RUDMAN
     & DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  (561) 750-3000
(561) 750-3364 (fax)
sdavidson@rgrdlaw.com
dantullis@rgrdlaw.com
nbrito@rgrdlaw.com

M. ANDERSON BERRY (*pro hac vice*)
GREGORY HAROUTUNIAN (*pro hac
vice*)
**CLAYEO C. ARNOLD,
A PROFESSIONAL CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com
*Members, Plaintiffs' Executive Committee*

DAVID K. LIETZ (*pro hac vice*)
**MILBERG COLEMAN BRYSON
 PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW
Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

RYAN D. MAXEY
**MAXEY LAW FIRM, P.A.**
107 North 11th Street, Suite 402
Tampa, FL 33602

ryan@maxeyfirm.com

TERRY R. COATES (*pro hac vice*)
DYLAN J. GOULD (*pro hac vice*
forthcoming)
**MARKOVITS, STOCK &**
  **DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: 513/651-3700
513/665-0219 (fax)
tcoates@msdlegal.com
dgould@msdlegal.com

LORI G. FELDMAN (*pro hac vice*)
**GEORGE GESTEN**
  **MCDONALD, PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Phone: (917) 983-9321
Fax: (888) 421-4173
LFeldman@4-Justice.com
E-Service: eService@4-Justice.com

JOSEPH M. LYON (*pro hac vice*)
**THE LYON FIRM, LLC**
2754 Erie Avenue
Cincinnati, OH 45208
(513) 381-2333
jlyon@thelyonfirm.com

*Attorneys for Plaintiffs*