# EXHIBIT 26

Partially Redacted

Filed Under Seal

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Master File No. 1:22-cv-20955-DPG**

| | |
|---|---|
| **In re LAKEVIEW LOAN SERVICING** <br> **DATA BREACH LITIGATION** | **CLASS ACTION** |

**PLAINTIFFS' PROPOSED TRIAL PLAN**

### I.      INTRODUCTION

Plaintiffs move to certify a Class under Rule 23(b)(3) with respect to their claims against Defendants Bayview Asset Management, LLC, Lakeview Loan Servicing, LLC, Pingora Loan Servicing, LLC, and Community Loan Servicing, LLC (collectively, "Defendants") for negligence, and under Rule 23(b)(2) with respect to their claims for negligence (to the extent it seeks injunctive relief), violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA") and declaratory and injunctive relief. Plaintiffs further move to certify under Rule 23(b)(3) two state subclasses for damages as to their California Consumer Privacy Act ("CCPA") and Washington's Consumer Protection Act ("WCPA") claims. In addition, Plaintiffs seek to certify under Rule 23(b)(2) the same two state subclasses as to their injunctive relief claims under the CCPA, California's Unfair Competition Law ("UCL"), and the WCPA, and a third state (Florida) subclass as to their FDUPTA claim, in the event the Court declines to certify the (national) Class with respect to the FDUPTA claim. In this trial plan, Plaintiffs refer collectively to the claims as to which they seek certification under Rule 23(b)(2) as the "Injunctive Relief Claims."

Plaintiffs submit this trial plan together with their class certification motion to demonstrate that a trial of their common law and statutory claims will be manageable. The trial

1

plan provides a representative summary of the common evidence that will establish each of the elements of Defendants' negligence and violations of the respective state laws. Because, as discussed below, the claims under these laws contain similar elements, they can be jointly and efficiently tried in a single proceeding.[1] Plaintiffs propose that the jury decide the damages claims for negligence and violations of the CCPA and WCPA; and the Court decide the Injunctive Relief Claims. These causes of action have overlapping elements and will be proved using common evidence.

## II.    DETAILS OF TRIAL MANAGEMENT PLAN

### A.    Preliminary Instructions to the Jury

At the commencement of the trial, jurors will be provided with a summary of the key factual and legal issues that will be at issue during the trial. Manual for Complex Litigation (Fourth) § 12.432 (2004). The jury will also be instructed at the outset about the distinction between liability elements and determination of damages. Although the final instructions given to the jurors will govern the jurors' deliberations, these preliminary instructions will orient the jurors to the evidence they will see and hear throughout trial.

Consistent with Rule 49(a), a special verdict form will be used to ensure consistent findings on common elements, and upon any liability finding, the jury will proceed to answer damage questions. The verdict form will help the jury focus on the dispositive issues while also reducing the length and complexity of the Court's instructions.

### B.    Opening Statements

The parties will present opening statements regarding all issues of Defendants' liability.

### C.    Common Liability Evidence

Under Florida law, a negligence claim requires the plaintiff must prove "a duty, breach of that duty, causation, and damages." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012). The CCPA likewise requires a showing that Defendants violated their "duty to implement

---

[1] *See, e.g.*, *Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1310 (11th Cir. 2023) (comparing the elements of FDUPTA and WCPA); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 550 (C.D. Cal. 2012) (noting that, other than the statute of limitations, "[t]here are no material differences" in the consumer protection laws of California and Florida).

PLAINTIFFS' PROPOSED TRIAL PLAN
CASE NO. 1:22-cv-20955-DPG

and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the [PII]." Cal. Civ. Code § 1798.150(a), (b) (version eff. Jan. 1, 2020); *see Ramos v. Wells Fargo Bank, N.A.*, 2023 WL 5310540, at *2 (S.D. Cal. Aug. 17, 2023). A failure to maintain adequate data security also constitutes an unfair business practice under the FDUTPA, WCPA, and UCL. *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1190 (M.D. Fla. 2022); *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1162 (W.D. Wash. 2017); *Hameed-Bolden v. Forever 21 Retail, Inc.*, 2018 WL 6802818, at *4 (C.D. Cal. Oct. 1, 2018).

Plaintiffs will demonstrate that Defendants were negligent and violated (and continue to violate) the above statutes by showing: (1) that Defendants had a duty to protect class member PII; (2) Defendants breached that duty and engaged in unfair business acts or practices by failing to implement adequate internal data security measures; (3) that Defendants' failure to adequately secure Plaintiffs' PII caused the Data Breach resulting in damages; and (4) Defendants still have not adequately addressed the deficiencies that led to the Data Breach. The evidence necessary to establish Defendants' liability will come from common sources, including Defendants' internal documents and communications, the testimony of Defendants' employees, and expert testimony.

This evidence will, for example, reflect:

- **Defendants owed a legal duty of care to protect the security, confidentiality, and integrity of Class members' PII.**
    - o   Defendants ███████████████████████████████████████.
    - o   Defendants are required by federal and state laws to protect the security, confidentiality, and integrity of PII by developing a comprehensive security program that contains administrative, technical, and physical safeguards.
    - o   The risk of the theft of Class member PII was foreseeable because ████████
    
    ████████████████████████████████████████████████████████████
    
    ████████████████████████████████████████████████████.

- **Defendants breached their duty and engaged in unfair trade practices when they failed to remediate known cybersecurity vulnerabilities before the Data Breach.**

PLAINTIFFS' PROPOSED TRIAL PLAN
CASE NO. 1:22-CV-20955-DPG

- o Before the Data Breach, Defendants' ███████████████████ ████████████████████████████ .
- o Defendants' ████████ ██████ ███ ███ ███████ █████ █ █ ██████████████████████████████ ████████████████████████████ ████████████████████████ .
- o Defendants' ████████████████████████ ████████████████████████████ ████████████████████ .
- o Defendants' ████████████████████████ ████████████████ .
- o Defendants ████████████████████████████ █████████████████████████████ .
- o Defendants ████████████████████████ ███████████████████████ .
- o Defendants also ██████████████████ ████████████████████████████ ████████████████ 

- **Defendants' failure to adequately secure Plaintiffs' PII caused the Data Breach and the exposure of their PII to unauthorized third parties.**
  - o As shown in Defendants' documents and deposition testimony, and by Plaintiffs' expert Christopher Thompson, the Data Breach exposed Class members' PII to third parties.
  - o As shown in Defendants' documents and deposition testimony, and by Plaintiffs' expert Mary Frantz, ████████████████████████ ████████████████████ .

4

PLAINTIFFS' PROPOSED TRIAL PLAN
CASE NO. 1:22-CV-20955-DPG

o Based on internal and external audits and as shown in the expert declaration of Christopher Thompson, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

o Defendants knew or should have known of the risk that a data breach would pose.

- **Class members remain at risk of substantial harm.**

    o Defendants have not addressed the deficiencies that led to the Data Breach, thus presenting an ongoing threat to the Class members.

    o Defendants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

    o Defendants still have not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

    o Defendants still have not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

    o Defendants still have not ▮▮▮▮▮▮▮▮▮▮▮▮▮.

    o Defendants still have not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮.

    o Defendants still have not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮.

### D.    Additional Liability Issues

While Plaintiffs' common law and statutory claims largely share common elements, any state-specific issues will be addressed using special verdict forms asking a limited number of questions concerning the additional elements for the pertinent state subclasses. For instance, the WCPA requires a showing that the unfair or deceptive practices affected the public interest, and the CCPA is appliable only to "business[es.]" *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 788-92 (1986); *Karter v. Epiq Sys., Inc.*, 2021 WL 4353274, at *2 (C.D. Cal. July 16, 2021). The special verdict forms thus will include questions such as: Did Defendants' unfair or deceptive acts or practices affect the public interest? And, are Defendants "businesses" under the CCPA? The jury will only proceed to these and any other questions if it has answered "yes" to questions regarding the common liability elements outlined above.

### E.       Damages

In the event Defendants are found liable for negligence and violating the WCPA, the jury will determine the damage sustained by the named Plaintiffs and the class on a separate page of the verdict form. Class-wide damages can be readily determined. As explained in the expert declarations of Eric Matolo and Terry Long, damages attributable to the Data Breach can be calculated on a class-wide basis to determine: (1) the value of stolen PII; (2) compensation for the increased risk of future identity theft; and (3) compensation for economic value of time spent to respond and mitigate the actual and potential future harms caused by the Data Breach.

As for the CCPA, it provides for statutory damages of between $100 and $750. Because Defendants acted or failed to act in the same way with respect to all members of the California subclass, the jury can determine the appropriate amount of statutory damages for all members. Calculating class-wide damages under this statute is thus a simple matter of arithmetic.

### F.       Injunctive Relief

With respect to the Injunctive Relief Claims, including Defendants' negligence and alleged violations of the UCL, CCPA, FDUPTA and WCPA necessitating injunctive relief, Plaintiffs will file proposed findings of fact and conclusions of law with the Court, supported by appropriate citations to legal authority. *See, e.g.*, *Farmer*, 582 F.Supp.3d at 1191-92 (non-speculative injuries supported claim for injunctive relief under the FDUTPA). The elements of the Injunctive Relief Claims overlap and will be proved with the same common evidence showing Defendants still have not addressed the deficiencies that led to the Data Breach, thus presenting an ongoing threat to the Class members as discussed in Section II.C.

### G.       Closing Statements

The parties will present closing statements summarizing the evidence presented.

### H.       Post-Certification Notice Program

Consistent with the process followed in other class cases, Plaintiffs will present a notice program, which would govern the pre-trial notice program as well as post-judgment submissions, processing, and resolution of claims. Plaintiffs would propose an experienced and well-regarded

notice and claims administrator who would provide the substance for both pre-trial notice program and post-judgment notification and administrative process.

### I.     Post-Verdict Procedures

After the jury determines the total damages, awards to individual class members will be distributed in a post-trial claim process. At that time, Plaintiffs expect to present a Claims Administration Protocol that will set forth proposed procedures for the submission, processing, and resolution of individual class member claims, which procedures may include appointment of a claims administrator. The Court will be asked to enter a final judgment based on the results of the class trial and approve the protocol for distribution of individual awards.

### III.    <u>CONCLUSION</u>

This proposed Trial Plan demonstrates how the trial of this action may be efficiently managed. Plaintiffs reserve the right to make changes to this trial plan in advance of trial as may be necessary or appropriate.

Dated: March 30, 2025

PLAINTIFFS' PROPOSED TRIAL PLAN
CASE NO. 1:22-CV-20955-DPG