**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Master File No. 1:22-cv-20955-Civ-GAYLES/TORRES

In re Lakeview Loan Servicing Data Breach
Litigation

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**

**MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

                                                                                          **Page**

INTRODUCTION................................................................................................................1

BACKGROUND ...............................................................................................................3

I.      DEFENDANTS AND THE INCIDENT. ......................................................................3

II.     THE NAMED PLAINTIFFS. ..................................................................................4

ARGUMENT.....................................................................................................................4

I.      LEGAL STANDARD AND BURDEN OF PROOF. .......................................................4

II.     CLASS CERTIFICATION IN THE DATA BREACH CONTEXT. ....................................5

III.    INDIVIDUALIZED ISSUES REGARDING ARTICLE III STANDING FOR NAMED
        PLAINTIFFS AND ABSENT CLASS MEMBERS PREDOMINATE, PRECLUDING
        CERTIFICATION. ...............................................................................................6

        A.      The Burden to Establish Article III Injury in Fact and Traceability Increases
                as the Litigation Progresses. ..............................................................6

        B.      Individualized Standing Questions Matter to the Class Certification Analysis.......7

        C.      The Named Plaintiffs Do Not Have Article III Standing and Their Stories
                Show That Individualized Inquiries as to the Unnamed Class Members'
                Standing Defeat Rule 23(b)(3)'s Predominance Requirement. .............................7

                1.      Individualized Issues Predominate With Respect to Whether Putative
                        Class Members' PII Was Deleted Before it Could be Accessed. ................9

                2.      There are No Facts to Support Alleged Misuse or Publication of PII
                        for Grossman, Rubio, Saporta, and McMahon. ...........................................9

                3.      For the Alleged Misuse Plaintiffs, Whether the Misuse is Fairly
                        Traceable to the Incident is an Individualized Question. .........................10

                4.      The named Plaintiffs' circumstances illustrate that Rule 23(b)(3)'s
                        predominance requirement cannot be satisfied. ........................................15

                5.      There is no widespread publication of PII from the Incident that
                        would support standing based on increased risk of future harm..............15

                6.      Traceability and injury are questions central to standing; they are not
                        mere damages issues that can be ignored at the class certification
                        stage. ........................................................................................16

IV.     THE CALIFORNIA SUBCLASS SHOULD NOT BE CERTIFIED. ...............................18

        A.      California Plaintiffs Cannot Show Concrete Injury....................................18

        B.      The California Subclass (CCPA) is not Manageable or Ascertainable. ................18

        C.      The Proposed California Subclass Representatives are Inadequate. ...................21

        D.      Putative Class Members Cannot Recover Statutory Damages. ...........................21

V.      PLAINTIFFS' NEGLIGENCE, FDUTPA, AND WCPA CLAIMS ALSO REQUIRE PROOF
        OF INJURY AND CAUSATION, WHICH ARE PREDOMINATING INDIVIDUAL ISSUES...........22

VI.     PLAINTIFFS' CLASS-WIDE DAMAGES THEORIES DO NOT ELIMINATE THE
        PROBLEM THAT ISSUES OF INJURY AND CAUSATION ARE INHERENTLY
        INDIVIDUALIZED. ....................................................................23

        A.      Matolo Does Not Opine that Plaintiffs' PII Lost Value. .......................23

        B.      Matolo's Value of Time Assessment is Flawed. .................................25

        C.      Plaintiffs' Value Protection and Monitoring Opinions are Flawed. .............26

VII.    THE VARIOUS PROPOSED CLASSES AND SUBCLASSES CANNOT BE CERTIFIED. .............29

        A.      The Court Should Decline to Certify a Nationwide Class........................29

        B.      The Court Should Decline to Certify a Nominal Damages Class...................31

        C.      The Proposed Injunctive and/or Declaratory Relief Classes and Subclasses
                are not Subject to Certification. ............................................32

        D.      The Florida Subclass (FDUTPA) Alleged in the Alternative......................33

        E.      The Washington Subclass (WCPA)................................................34

VIII.   PLAINTIFFS ARE NOT ADEQUATE TO SERVE AS CLASS REPRESENTATIVES.................35

        CONCLUSION ..........................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abernathy v. Brandywine Urology Consultants, P.A.*,
2021 WL 211144 (Del. Super. Ct. Jan. 21, 2021) ...................................................27

*Adair v. Johnston*,
221 F.R.D. 573 (M.D. Ala. 2004)...........................................................................20

*Adkins v. Facebook, Inc.*,
424 F. Supp. 3d 686 (N.D. Cal. 2019) .....................................................................5

*Anderson v. U.S. Dep't of Hous. & Urb. Dev.*,
554 F.3d 525 (5th Cir. 2008) ................................................................................34

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................24

*Attias v. CareFirst, Inc.*,
346 F.R.D. 1 (D.D.C. 2024)............................................................................31, 32

*Baker v. GE Retail Sales Fin. Inc.*,
2011 WL 9352058 (N.D. Cal. Sept. 30, 2011) .......................................................19

*Bishop v. Fla. Specialty Paint Co.*,
389 So. 2d 999 (Fla. 1980)....................................................................................30

*Blanco GmbH+Co. KG v. Vlanco Indus., LLC*,
992 F. Supp. 2d 1225 (S.D. Fla. 2014) ...................................................................33

*Bozek v. Arizona Lab. Force Inc.*,
2025 WL 264174 (D. Ariz. Jan. 22, 2025) .............................................................23

*Bradshaw v. Associated Transp., Inc.*,
1974 WL 232 (M.D.N.C. July 26, 1974) .................................................................33

*Brown v. Electrolux Home Prods., Inc.*,
817 F.3d 1225 (11th Cir. 2016) .........................................................................4, 5

*Browne v. Avvo Inc.*,
525 F. Supp. 2d 1249 (W.D. Wash. 2007)...............................................................34

*Buetow v. A.L.S. Enters., Inc.*,
888 F. Supp. 2d 956 (D. Minn. 2012)......................................................................31

*Butterworth v. Quick & Reilly, Inc.*,
171 F.R.D. 319 (M.D. Fla. 1997)................................................................35

*CareerFairs.com v. United Business Media LLC*,
838 F. Supp. 2d 1316 (S.D. Fla. 2011) .....................................................22

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)...........................................................................11, 25

*Clark v. Experian Info. Sols., Inc.*,
2001 WL 1946329 (D.S.C. Mar. 19, 2001) ..........................................21, 31

*Cooper v. S. Co.*,
390 F.3d 695 (11th Cir. 2004) ..................................................................34

*Cordoba v. DIRECTV LLC*,
942 F.3d 1259 (11th Cir. 2019) ...........................................................6, 15

*Dapeer v. Neutrogena Corp.*,
2015 WL 10521637 (S.D. Fla. Dec. 1, 2015) ...............................................7

*Delgado v. Laundromax, Inc.*,
65 So.3d 1087 (Fla. 3d DCA 2011) ..........................................................22

*DiPierro v. Florida Health Sciences Center, Inc.*,
737 F. Supp. 3d 1314 (M.D. Fla. 2024)..................................8, 10, 15, 16, 23

*Dolmage v. Combined Ins. Co. of Am.*,
2017 WL 1754772 (N.D. Ill. May 3, 2017) ........................................5, 17, 29

*Fero v. Excellus Health Plan, Inc.*,
502 F. Supp. 3d 724 (W.D.N.Y. 2020) .........................................................5

*Figueroa v. Sharper Image Corp.*,
517 F. Supp. 2d 1292 (S.D. Fla. 2007) .....................................................32

*Forbes v. Wells Fargo Bank, N.A.*,
420 F. Supp. 2d 1018 (D. Minn. 2006).......................................................27

*Fraga v. UKG, Inc.*,
2022 WL 19486310 (S.D. Fla. May 10, 2022) ........................................24, 25

*Fryatt v. Lantana One, Ltd.*,
866 So. 2d 158 (Fla. Dist. Ct. App. 2004) ..................................................25

*Gardner v. Equifax Info. Servs., LLC*,
2007 WL 2261688 (D. Minn. Aug. 6, 2007) ...............................................31

*Gardner v. Health Net, Inc.*,
　2010 WL 11579028 (C.D. Cal. Sept. 13, 2010) ................................................30

*Green-Cooper v. Brinker Int'l, Inc.*,
　73 F.4th 883 (11th Cir. 2023) ................................................7, 15, 16

*Greenstein v. Noblr Reciprocal Exch.*,
　585 F. Supp. 3d 1220 (N. D. Cal. 2022) ................................................25

*Hale v. Morgan*,
　22 Cal.3d 388 (Cal. 1978)................................................22

*Hammond v. The Bank of New York Mellon Corp.*,
　2010 WL 2643307 (S.D.N.Y. June 25, 2010) ................................................5

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
　2024 WL 2155221 (D.S.C. May 14, 2024)................................................5

*In re Brinker Data Incident Litig.*,
　2020 WL 4287270 (M.D. Fla. July 27, 2020) ................................................17, 27, 33

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
　317 F.R.D. 675 (N.D. Ga. 2016)................................................19

*In re Gen. Motors LLC Ignition Switch Litig.*,
　339 F. Supp. 3d 262 (S.D.N.Y. 2018)................................................25

*In re Google Privacy Policy Litig.*,
　2015 WL 4317479 (N.D. Cal. July 15, 2015)................................................24

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
　293 F.R.D. 21 (D. Me. 2013)................................................5

*In re Numotion Data Incident Litig.,*
　2025 WL 57712 (M.D. Tenn. Jan. 9, 2025)................................................23

*Johansen v. Bluegreen Vacations Unlimited, Inc.*,
　2021 WL 4973593 (S.D. Fla. Sept. 30, 2021) ................................................36

*Johnson v. U.S. Beef Corp.*,
　2006 WL 680918 (W.D. Mo. Mar. 14, 2006)................................................35

*Karhu v. Vital Pharms., Inc.*,
　621 F. App'x 945 (11th Cir. 2015) ................................................19

*Krueger v. Wyeth, Inc.*,
　2008 WL 481956 (S.D. Cal. Feb. 19, 2008)................................................21

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ................................................................................6, 16, 17

*McClain v. Metabolife Int'l,*
  401 F.3d 1233 (11th Cir. 2005) ...............................................................16

*McGlenn v. Driveline Retail Merch., Inc.,*
  2021 WL 165121 (C.D. Ill. Jan. 19, 2021) ...............................................5, 17, 30

*McLaughlin v. Am. Tobacco Co.,*
  522 F.3d 215 (2d Cir. 2008)......................................................................5

*MSPA Claims 1, LLC v. Scottsdale Ins. Co.,*
  352 F. Supp. 3d 1234 (S.D. Fla. 2018) ....................................................6

*Muchnik v. Sambodromo, LLC,*
  2009 WL 10667067 (S.D. Fla. May 18, 2009) ..........................................25, 26

*P&G Trucking of Brandon, Inc. v. Riverland Hedging & Topping, Inc.,*
  301 So. 3d 294 (Fla. 4th DCA 2020) ........................................................25

*Panag v. Farmers Ins. Co. of Washington,*
  166 Wash. 2d 27 (2009)............................................................................35

*Pines Nursing Home (77), Inc v. Rehabcare Grp., Inc.,*
  2014 WL 12531512 (S.D. Fla. June 20, 2014) ..........................................36

*Pisciotta v. Old Nat. Bancorp,*
  499 F.3d 629 (7th Cir. 2007) ....................................................................26

*Prado-Steiman ex rel. Prado v. Bush,*
  221 F.3d 1266 (11th Cir. 2000) ................................................................7, 33

*Pruchnicki v. Envision Healthcare Corp.,*
  845 F. App'x 613 (9th Cir. 2021) .............................................................23

*Rensel v. Centra Tech, Inc.,*
  2 F.4th 1359 (11th Cir. 2021) ...................................................................18

*Resnick v. AvMed, Inc.,*
  693 F.3d 1317 (11th Cir. 2012) ................................................................22

*S. Indep. Bank v. Fred's, Inc.,*
  2019 WL 1179396 (M.D. Ala. Mar. 13, 2019)..........................................17, 30

*Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.,*
  601 F.3d 1159 (11th Cir. 2010) ................................................................17

iv

*Schiff v. Liberty Mut. Fire Ins. Co.*,
    542 P.3d 1002 (Wash. 2024)...................................................................................22

*Shafran v. Harley-Davidson, Inc.*,
    2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) .........................................................27

*Simmons v. Blodgett*,
    110 F.3d 39 (9th Cir. 1997) ....................................................................................5

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)...............................................................................................18

*State Franchise Tax Bd. v. Hyatt*,
    2003 WL 23100266 (Cal. Ct. App. Dec. 31, 2003) ...............................................19

*Townhouse Rest. of Oviedo, Inc. v. NuCO2, LLC*,
    2020 WL 5440581 (S.D. Fla. Sept. 9, 2020) .........................................................30

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)....................................................................................7, 18, 32

*Tsao v. Captiva MVP Rest. Partners, LLC*,
    986 F.3d 1332 (11th Cir. 2021) ...........................................................................7, 8

*Usry v. EquityExperts.org, LLC*,
    2019 WL 1140236 (S.D. Ga. Mar. 12, 2019) ........................................................20

*Vision Constr. Ent. Inc. v. Argos Ready Mix LLC*,
    2019 WL 11075886 (N.D. Fla. Nov. 7, 2019).........................................................4

*Waine-Golston v. Time Warner Ent.-Advance/New House P'ship*,
    2012 WL 6591610 (S.D. Cal. Dec. 18, 2012).........................................................34

*Wakefield v. ViSalus, Inc.*,
    51 F.4th 1109 (9th Cir. 2022) ................................................................................22

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..............................................................................................4, 5

*Weikel v. Tower Semiconductor Ltd.*,
    183 F.R.D. 377 (D.N.J. 1998)............................................................................37, 38

*Williams v. Reckitt Benckiser LLC*,
    65 F.4th 1243 (11th Cir. 2023) ................................................................................7

*WSG W. Palm Beach Dev., LLC v. Blank*,
    990 So. 2d 708 (Fla. Dist. Ct. App. 2008) .............................................................25

*Yonan v. Walmart, Inc.*,
  591 F. Supp. 3d 1291 (S.D. Fla. 2022) ......................................................................32

**Statutes**

28 U.S.C. § 1332 .............................................................................................................32

Cal. Civ. Code § 1798.150 ...............................................................................19, 21, 22

Cal. Code Regs. tit. 18, § 17014 ....................................................................................19

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................... *passim*

**Other Authorities**

Black's Law Dictionary (12th ed.)...................................................................................16

# INTRODUCTION

Plaintiffs' Motion for Class Certification and Memorandum of Law in Support (Doc. 282) (the "**Motion**") treats class certification as a foregone conclusion. Nearly half of the Motion focuses on Plaintiffs' characterizations of Defendants' data security and how the data security incident at issue here (the "**Incident**") allegedly occurred. Mot. at 5-18. However, this focus on irrelevant "merits" arguments is an attempt to divert attention from the multiple barriers to class certification.

A threshold barrier to certification is that Plaintiffs and putative class members lack Article III standing. No named Plaintiff suffered a concrete injury traceable to the Incident and Plaintiffs' reliance on the Court's earlier determination that certain Plaintiffs adequately *alleged* standing is misplaced. That determination was based on a facial analysis of allegations in the Complaint. Now, Plaintiffs must *prove* facts supporting standing and *prove* that standing can be established on a class-wide basis. They fail to do so. The facts developed in discovery as to the named Plaintiffs demonstrate that whether they or proposed class member suffered an Article III injury is an individualized question dependent on whether their data was misused or published due to the Incident. The threshold question of standing predominates over all other issues.

That certain Plaintiffs seek certification of a statutory damages class under the California Consumer Privacy Act ("**CCPA**") does not fix the standing problem. Plaintiffs cannot, through common evidence, prove misuse, publication, or any injury recognized under common law as the Supreme Court's concrete injury standard requires. Moreover, the proposed California Subclass is neither manageable nor ascertainable. The same is true of Plaintiffs' class definitions for their claims of negligence, violation of the Florida Deceptive and Unfair Trade Practices Act ("**FDUTPA**"), and violation of the Washington Consumer Protection Act ("**WCPA**"). Those

1

claims also fail because Plaintiffs cannot prove injury or causation, necessary elements of each of those claims.

Plaintiffs also fail to establish a viable class-wide theory of injury, causation, and damages. They propose three theories, all of which amount to proposed remedies and not ways of proving that a class of individuals has actually suffered cognizable injury: (1) compensation for the value of their personally identifiable information ("**PII**"); (2) lifetime identity theft monitoring; and (3) hourly compensation for steps recommended by the FTC to mitigate the risk of identity theft. These models fail because Plaintiffs fail to show the value of their PII was diminished, fail to provide any basis for awarding lifetime identify theft monitoring, and fail to present evidence that Plaintiffs took the steps recommended by the FTC.

Plaintiffs also fail to meet their burden of proving that certification of classes for nominal damages, statutory damages, and injunctive relief is appropriate. Some putative class members may be able to prove fraud and resulting loss, but would be required to opt out of a certified class or forego claims for actual damages in favor of a token award or a statutory damages award capped at $750. Plaintiffs' willingness to jettison putative class members' claims for actual damages to certify a class makes them inadequate. The Court should also decline to certify injunctive relief classes because there is no imminent threat of harm. Moreover, Defendants are subject to a Settlement Agreement and Consent Order ("**Consent Order**"), which imposes extensive data security requirements and ongoing auditing, so further injunctive relief would be superfluous.

Plaintiffs' superficial treatment of Rule 23 falls short of what is necessary to certify a class and their focus on merits issues is irrelevant. Thus, while Defendants dispute Plaintiffs' characterizations, they instead focus on the barriers to class certification which Plaintiffs ignore.

## BACKGROUND

### I.   DEFENDANTS AND THE INCIDENT.

Defendants are Bayview Asset Management LLC ("**Bayview**"), Lakeview Loan Servicing LLC ("**Lakeview**"), Pingora Loan Servicing LLC ("**Pingora**"), and Community Loan Servicing LLC ("**Community**") (collectively, "**Defendants**"). Bayview provides investment management services. Ex. 1, Bayview Dep. at 9:4-14:8. Lakeview, Pingora, and Community are in the mortgage servicing business. ECF No. 187 ("**Am. Compl.**") ¶¶ 81–86, 94, 99. ████████████████████

████████████████████ Ex. 1, Bayview Dep. at 27:4-7, 28:12-29:9, 36:5-37:10. In December 2021, Defendants discovered unauthorized access to their network between October 27 and December 7, 2021. Am. Compl., ¶ 5. ████████████████

██████████████████ Ex. 2. ████████████████

██████████████████████

██████████ *Id.*; Ex. 3, Norton Decl., ¶ 5. Defendants notified borrowers beginning in March 2022 and the process was complete by December 2022. Am. Compl., ¶¶ 7, 119–24.

████████████████████████

██████████████████ Ex. 4, Hart Rep., ¶¶ 13-25. L████████████████████████

██████████ *Id.*, ¶¶ 22-25. ████████

████████████████████

██████████ Ex. 3, Norton Decl., ¶ 6. ████████████

████████████████ Mot. at 9. ████

██████████ Ex. 3, Norton Decl., ¶¶ 23-24.████

██████████████████. Ex. 5, Mott Dep. at 94:11-14.

## II.     THE NAMED PLAINTIFFS.

There are 16 named Plaintiffs: Mark Arthur, Beth Berg, David Cunningham, Savannah Farley, Jorge Gonzalez, Norma Grossman, Deborah Hamilton, Michael Kassem, Thomas Lapenter, John McMahon, Pedro Rubio, Kimberly Rowton, Jay Saporta, Hardik Sevak, Cindy Villanueva, and Peter Wojciechowski.

Four of these Plaintiffs allege fraud after the Incident (Berg, Cunningham, Lapenter, and Sevak) (the "**Alleged Misuse Plaintiffs**") and assume causation based on temporal sequence. However, they acknowledge that: ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

Four other Plaintiffs (Grossman, Rubio, Saporta, and McMahon) do not allege misuse of their PII more than three years after the Incident. None of the remaining Plaintiffs can prove misuse that is traceable to the Incident and their unique circumstances are representative of the individualized standing inquiries that will predominate among putative class members.

## ARGUMENT

## I.     LEGAL STANDARD AND BURDEN OF PROOF.

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quotation marks omitted). "The [movant] has a burden of *proof*, not a burden of pleading." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016) (emphasis in original). The movant must establish by a preponderance of the evidence that each of Rule 23's requirements are met. *Vision Constr. Ent. Inc. v. Argos Ready Mix LLC*, 2019 WL 11075886, at *6 (N.D. Fla. Nov.

7, 2019). "[I]f doubts remain about whether the standard is satisfied, 'the party with the burden of proof loses.'" *Brown*, 817 F.3d at 1233 (quoting *Simmons v. Blodgett*, 110 F.3d 39, 42 (9th Cir. 1997)). "All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Id.* Meeting this burden requires an evidentiary showing: "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law and fact, etc." *Dukes*, 564 U.S. at 350 (emphasis in original); *Brown*, 817 F.3d at 1233-34.

## II.   CLASS CERTIFICATION IN THE DATA BREACH CONTEXT.

Courts routinely deny class certification in data breach cases for the same reasons certification is inappropriate here. In particular, courts deny certification where issues relating to causation and damages would predominate. *Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 734–45 (W.D.N.Y. 2020); *Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 694–97 (N.D. Cal. 2019); *In re Blackbaud, Inc., Customer Data Breach Litig.*, 2024 WL 2155221, at *23–26 & n.41 (D.S.C. May 14, 2024) (denying certification on ascertainability grounds but noting that individualized injury and damages predominate); *Dolmage v. Combined Ins. Co. of Am.*, 2017 WL 1754772, at *8 (N.D. Ill. May 3, 2017); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 30-33 (D. Me. 2013); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 227-28 (2d Cir. 2008) (decertifying class because damages theories were arbitrary and "the acceptable measure of injury—out-of-pocket damages—would require individualized proof"); *McGlenn v. Driveline Retail Merch., Inc.*, 2021 WL 165121, at *10 (C.D. Ill. Jan. 19, 2021). Courts also deny certification where plaintiffs seek prospective relief to prevent a speculative risk of future injury. *Hammond v. The Bank of New York Mellon Corp.*, 2010 WL 2643307, at *7 (S.D.N.Y. June 25, 2010). No reported case, it should be noted, has ever certified a class under the CCPA.

As shown below, these same barriers to class certification are present here, so the Motion should be denied.

### III. INDIVIDUALIZED ISSUES REGARDING ARTICLE III STANDING FOR NAMED PLAINTIFFS AND ABSENT CLASS MEMBERS PREDOMINATE, PRECLUDING CERTIFICATION.

Plaintiffs bear the burden of showing they have Article III standing both for themselves and for the class of persons they seek to represent. *Cordoba v. DIRECTV LLC*, 942 F.3d 1259, 1268 (11th Cir. 2019). Even if one named Plaintiff has standing, the issue of the "unnamed class members' standing poses a powerful problem under Rule 23(b)(3)'s predominance factor." *Id.*, 1273-74. "[C]ommon issues will not predominate over individual questions if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." *Id.*, 1274. "Determining which type of question predominates requires 'more of a qualitative than quantitative analysis.'" *Id.* And, with respect to standing, "[t]he essential point…is that at some time in the course of the litigation the district court will have to determine whether each of the absent class members has standing before they could be granted any relief." *Id.* This is an issue the Court must consider when deciding whether common issues predominate over individualized ones. *Id.*

### A. The Burden to Establish Article III Injury in Fact and Traceability Increases as the Litigation Progresses.

The Court held that certain Plaintiffs sufficiently alleged standing at the pleading stage, but on a *factual* challenge, they cannot rest on allegations. Doc. 144 at 6-7; *MSPA Claims 1, LLC v. Scottsdale Ins. Co.*, 352 F. Supp. 3d 1234, 1238 (S.D. Fla. 2018). Plaintiffs' burden is not static: "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Thus, Plaintiffs

must establish that they have standing at the class certification stage. *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1253 (11th Cir. 2023) ("'[P]rior to the certification of a class, and … before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim.'" (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)); *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 891 (11th Cir. 2023) ("Where… the facts … firmly contradict the allegation in the complaint, the District Court cannot rely on the complaint's factual allegation."); *Dapeer v. Neutrogena Corp.*, 2015 WL 10521637, at *12 (S.D. Fla. Dec. 1, 2015) ("The bar is simply higher than a pleading standard …"). As illustrated below, none of the Plaintiffs have met their burden to show a concrete injury fairly traceable to the Incident.

**B.     Individualized Standing Questions Matter to the Class Certification Analysis.**

"Rule 23(b)(3)'s predominance analysis implicates Article III standing." *Green-Cooper*, 73 F.4th at 891. "The predominance inquiry is especially important in light of *TransUnion's* reminder that 'every class member must have Article III standing in order to recover individual damages' because a district court must ultimately weed out plaintiffs who do not have Article III standing before damages are awarded to a class." *Id.* (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). Thus, even if one Plaintiff has standing, the Court must examine the class definitions and consider standing in its analysis of Rule 23(b)(3)'s predominance requirement. *Id.*

**C.     The Named Plaintiffs Do Not Have Article III Standing and Their Stories Show That Individualized Inquiries as to the Unnamed Class Members' Standing Defeat Rule 23(b)(3)'s Predominance Requirement.**

To establish concrete injury, Plaintiffs must show that "as a result of the breach, [they] experience[d] 'misuse' of [their] data in some way." *Green-Cooper*, 73 F.4th at 889-90 (quoting *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1343 (11th Cir. 2021)). Courts find misuse sufficient for an individual plaintiff's standing (but not necessarily the entire class) if they

7

suffered an injury from actual identity theft or publication of their PII to the dark web. *Id.* The Eleventh Circuit rejects "vague, conclusory allegations" of misuse as insufficient to confer standing. *Tsao*, 986 F.3d at 1343. Moreover, "a single conclusory allegation of misuse as to one plaintiff ... is [not] enough to supply a multi-million-member class with a universal injury...." *DiPierro v. Florida Health Sciences Center, Inc.*, 737 F. Supp. 3d 1314, 1324 (M.D. Fla. 2024). Likewise, generic claims of increased risk of fraud, lost time, diminished value of PII, spam, or emotional distress do not suffice. *Id.*, 1321–28.

The Motion points to the Alleged Misuse Plaintiffs, who allege post-Incident fraud but make no showing that any fraud can be traced to the Incident. Mot. at 15-16, 20. Plaintiffs also claim that █████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████ *Id.*, 20. However, Plaintiffs' proffered dark web expert █████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████ Ex. 6, Frantz Dep. at 271:8-18. Plaintiffs' speculation does not satisfy their burden of proving injury and traceability. *DiPierro*, 737 F. Supp. 3d at 1324 (speculation that "information has been or will be sold" is insufficient).

Plaintiffs stand in different positions with respect to standing and their ability to prove injury and causation. These individualized facts and circumstances illustrate why individualized questions related to injury and causation will predominate, precluding certification of any class.[1]

---

[1] For the Court's convenience, Defendants prepared a summary chart summarizing Plaintiffs' allegations of misuse and publication. Ex. 48.

1.     *Individualized Issues Predominate With Respect to Whether Putative Class Members' PII Was Deleted Before it Could be Accessed.*

Individualized inquiries are necessary to determine ███████████████████████

█████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ Ex. 3, Norton Decl., ¶ 5. ████

█████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████. *Id.*, ¶¶ 7-10. Thus,

individualized inquiries would be necessary to determine whose PII was deleted, as deleted PII

cannot be misused or published.

2.     *There are No Facts to Support Alleged Misuse or Publication of PII for Grossman, Rubio, Saporta, and McMahon.*

Grossman, Rubio, Saporta, and McMahon have no evidence of misuse or publication.

Grossman has not experienced misuse or publication. Moreover, ██████████████████

█████████████████████████████████████. Ex. 7, Grossman

Dep. at 43:21-46:11, 54:12-19, 66:19-69:12, 98:15-24, 101:6-102:17, 117:9-25, 186:25-188:15.

Rubio has not experienced misuse or publication, but ████████████████████████

█████████████████████████████████████████████ Am. Compl.,

¶¶ 576–91; Ex. 8, Rubio Dep. at 45:23-47:19, 115:2-120:14; Ex. 4, Hart Rep., ¶¶ 51-61 & Ex. 4.

Saporta has not experienced misuse or publication, but ████████████████████████

███████████████████████████. Ex. 9, Saporta at 24:13-21, 56:21-59:22, 139:20-

140:8, 157:8-158:18, 215:22-216:15; Ex. 4, Hart Rep., ¶¶ 51-61 & Exs. 3, 5. McMahon alleges

publication, but ██████████████████████████████████████████. Ex.

10, McMahon Dep. at 105:21-115:11; Am. Compl., ¶¶ 464–65; *compare* Ex. 11 (████████

████████████) *with* Mot. at 9 (████████████████████). McMahon's ████████

█████████████████████████████████████████████████████████████████████████

██████████████████ Ex. 12; Ex. 4, Hart Rep., ¶¶ 51-61 & Exs. 3-5. Thus, Grossman, Rubio, Saporta, and McMahon lack standing.

3.      *For the Alleged Misuse Plaintiffs, Whether the Misuse is Fairly Traceable to the Incident is an Individualized Question.*

The Alleged Misuse Plaintiffs lack standing because they cannot prove misuse that is fairly traceable to the Incident. "[W]hen the alleged injury is based on scattered instances of individualized misuse, a more nuanced inquiry necessarily applies." *DiPierro*, 737 F. Supp. 3d at 1329. Merely alleging post-breach misuse is insufficient. *Id.*, 1329–31. The Alleged Misuse Plaintiffs suffer from the same traceability and causation issues that defeated standing in *DiPierro*; namely, "whether the alleged misuse stems from one of many parallel, independent causes, each of which could have resulted in the harm." *Id.*, 1330. Each alleges post-Incident misuse and fails to prove traceability.



Berg alleges ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████ Ex. 13, Berg Dep. at 124:18-129:13; Ex. 14. Moreover, ████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████. Ex. 13, Berg Dep. at 53:22-54:23, 94:14-21, 126:17-23; Ex. 4, Hart Rep., ¶¶ 51-61 & Exs. 3-5. Indeed, ████████████████████████████████████████████████████████ ███████████████████. Ex. 13, Berg Dep. at 59:10-18. Berg also alleges ███████ ████████████████████████████████████████████████████████ ███████████████████████. *Id.*, 44:22-49:11, 59:2-5, 94:23-95:5, 139:17-140:2, 299:5-301:4. Notably, exfiltration did not begin until October 27, 2021. Ex. 2. Thus, to conclude that ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ These

implausible assumptions are not enough to show causation. *Clapper v. Amnesty Int'l USA*, 568

U.S. 398, 410 (2013) ("attenuated chain of possibilities" insufficient to establish standing); *see*

*also* IRS Publication 509 (requiring taxpayers to filed by April 15 or by October 15 if a six-month

extension).

      Cunningham alleged ████████████████████████████████████

███████████████████████████████████████████████████████ Ex. 15,

Cunningham Dep. at 71:2-75:1, 96:2-98:2, 118:11-119:13. Moreover, ██████████████

████████████████████████████████████████ *Id.*, 47:7-48:6, 50:21-51:20, 57:6-

58:14, 61:5-9, 81:7-83:22, 124:6-125:4; Ex. 4, Hart Rep., ¶¶ 51-61 & Exs. 3-5.

      Lapenter alleges ████████████████████████████████████████

███████████████████████████████████████████. Mot. Ex. 10, ¶ 6; Ex. 16,

Lapenter Dep. at 90:6-93:14. ███████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████ Ex. 16, Lapenter Dep. at 36:13-39:17, 45:11-49:10,

169:4-173:19, 205:3-227:2; Exs. 17-19; Ex. 4, Hart Rep., ¶¶ 51-61 & Exs. 3-5. ████████

██████████████████████████████████ Ex. 16, Lapenter Dep. at 42:23-43:6, 193:17-

194:3.

      Sevak ████████████████████████████████████████████████

████████████████████. Ex. 20, Sevak Dep. at 83:9-91:15. ████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████. *Id.*, 92:3-94:14, 208:7-21,

210:23-212:3. ████████████████████████

████████████████████████████████████████████. *Id.*, 37:10-38:23, 41:13-44:5, 93:20-94:2, 121:1-123:14, 141:22-142:13, 208:7-21, 210:23-213:18, 237:20-256:9; Ex. 21; Ex. 4, Hart Rep., ¶¶ 51-61 & Exs. 3-5.

The Alleged Misuse Plaintiffs have not shown any misuse that is fairly traceable to the Incident. The remaining Plaintiffs fare no better. None present evidence of monetary loss and they abandoned any fraud allegations in the Amended Complaint by choosing to not rely on them in the Motion. Even if that were not the case, those allegations are insufficient.

**Arthur.** He alleges ████████████████████████████████



████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████ Ex. 22, Arthur Dep. at 175:23-186:3. ████████████████████

████████████████████████████████████████████████

██████████████████████████████. *Id.*, 42:6-43:2, 44:5-45:17, 62:2-20, 67:9-68:13, 70:13-75:9, 93:14-94:6, 214:19-231:14, 273:4-24, 280:1-25, 285:22-287:3; Ex. 4, Hart Rep., ¶¶ 51-61 & Exs. 3-5.

**Farley.** She alleges █████████████████████████████████████████████

██████████████████ Ex. 23, Farley Dep. at 35:6-20, 75:4-77:12, 79:3-80:18, 103:1-24, 182:6-184:9. ██████████████████████████████████████████ Ex. 4, Hart Rep., ¶¶ 51-58. ████████████████████████████████████████████████

████████████████████████████████████████████████████████. Ex. 23, Farley Dep. at 32:6-36:12, 40:10-42:22, 131:22-138:25.

**Gonzalez.** He experienced ████████████████████████████

██████████████████████████. Ex. 24, Gonzalez Dep. at 44:9-11, 47:10-49:7, 56:9-60:21,

63:25-67:8, 147:6-151:1; Ex. 4, Hart Rep., ¶¶ 53-61 & Exs. 3-5. █████████████████

██████████████████████████████████████████████████████████████████████████.

Ex. 24, Gonzalez Dep. at 99:13-103:6, 104:5-105:16, 123:13-124:3, 125:18-20, 126:24-129:22,

130:20-132:7, 198:22-199:7.

**Hamilton.** ███████████████████████████████████████

████████████████████. Ex. 25, Hamilton Dep. at 84:23-85:14, 90:8-106:3, 125:24-135:15, 183:18-

184:24; Ex. 4, Hart Rep., 53-61 & Exs. 3, 5. ██████████████████████████████

█████. Ex. 25, Hamilton Dep. at 38:15-41:6, 43:7-11. █████████████████████

████████████████████████████████ *Id.*, 42:12-44:12, 51:3-54:9; Ex. 26,

RFA Nos. 28, 30.

**Kassem.** ████████████████████████████████. Ex. 4, Hart

Rep., ¶¶ 53-61 & Exs. 3-5. █████████████████████████████████████████

████████████████████. Ex. 27, Kassem Dep. at 64:6-71:16. ██████████████

███████████████████████████████████████████████████████████████████

████████████████████████ *Id.*, 100:3-102:5. ████████████████████████

████████████████████████████████████████████████████████████ *Id.*,

222:8-223:25. ████████████████████████████████

████████ Ex. 3, Norton Decl., ¶ 5.

**Rowton.** ██████████████████████████████████████████████████

██████████████████████████████████████████████████████. Ex. 28, Rowton

Dep. at 50:1-53:25, 73:7-84:7, 96:11-98:13, 168:7-175:13, 210:4-215:25, 262:12-268:19; Ex. 4,

Hart Rep., ¶¶ 53-61 & Exs. 3-4. ████████████████████████████████████████

█████████████████████████████████████████████████████████████████████



██████████████████████████████████████████████

██████████████. Ex. 28, Rowton Dep. at 35:15-37:20, 114:12-123:11; Ex. 29.

**Villanueva.** ███████████████████████████████████████

████████████████████. Ex. 30, Villanueva Dep. at 28:23-29:7, 137:9-142:12, 193:7-24,

195:25-200:14, 214:8-215:16; Am. Compl. ¶ 277; Mot. Ex. 16, ¶ 6. ██████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████.

Ex. 30, Villanueva Dep. at 28:8-14, 51:20-52:14, 71:10-78:23, 81:16-82:5, 104:8-18, 105:15-24,

106:23-107:14, 114:15-116:22, 137:19-138:5, 141:17-25, 144:22-148:18, 151:14-152:11, 181:21-

183:8, 184:10-17, 185:1-191:8, 199:24-200:14, 217:1-220:19, 268:16-271:22; Ex. 4, Hart Rep., ¶¶

53-61 & Exs. 3-5. █████████████████████████████████████████. Ex. 30, Villanueva

Dep. at 106:2-110:25, 178:13-181:14.

**Wojciechowski.** ████████████████████████████████

███████████████████████████████████████████. Ex. 31,

Wojciechowski Dep. at 111:23-116:23, 119:10-124:8. ████████████████████

████████████████████████████████████████████████

██████████ *Id.*, 80:8-84:11, 149:17-153:7. ███████████████████████████

██████████████████████████████████████████████. *Id.*,

154:14-156:24, 185:25-188:25. ███████████████████████

████████████████████████████████████████████████

██. *Id.*, 73:23-74:19, 194:18-195:22; Ex. 4, Hart Rep., 53-61 & Exs. 3-5.

4. *The named Plaintiffs' circumstances illustrate that Rule 23(b)(3)'s predominance requirement cannot be satisfied.*

The individualized questions that exist among the named Plaintiffs illustrate why individualized questions related to standing will predominate among putative class members. Plaintiffs' allegations of injury and causation require inquiry into their unique circumstances to determine whether an injury occurred and, if so, whether it is fairly traceable to the Incident. Thus, individualized issues will predominate because each putative class member must present individualized proof of standing. *Green-Cooper*, 73 F.4th at 892 n.13 ("In the predominance inquiry, a district court must determine whether 'each plaintiff will likely have to provide some individualized proof that they have standing.'"); *Cordoba*, 942 F.3d at 1275 ("[E]ach plaintiff will likely have to provide some individualized proof [of] standing…. When this standing question is added to the mix, individualized questions may predominate over common issues susceptible to class-wide proof."). These individualized inquiries will predominate as to putative class members.

5. *There is no widespread publication of PII from the Incident that would support standing based on increased risk of future harm.*

Plaintiffs claim that some PII from the Incident was published and, therefore, assume "all Plaintiffs and Class members suffered harm" and face an increased risk of identity theft. Mot. at 16. However, their allegations are speculative and a mere *belief* that PII is on the dark web is not enough to confer standing. *DiPierro*, 737 F. Supp. 3d at 1323-24.

Plaintiffs also fail to present evidence of widespread publication. . Mot. at 16-18; Ex. 6, Frantz Dep. at 271:8-18

). Moreover, she did not preserve the supposed evidence underlying her claims, so we

15

are left only with her *ipse dixit*. *Id.*, 35:19-37:13, 44:16-46:9, 51:17-21, 56:5-62:22, 130:17-131:21, 142:22-144:20, 200:14-201:6; *McClain v. Metabolife Int'l*, 401 F.3d 1233, 1244 (11th Cir. 2005) ("[N]othing … requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.") (citation and quotation marks omitted). Thus, Plaintiffs' allegation of widespread publication is mere speculation. Ex. 4, Hart Rep., ¶¶ 26-41.

Lastly, Plaintiffs point to ██████████████████████████████████████████████.

Mot. at 9, 16-17. However, ████████████████████████████████████████████

████████████████████████ Ex. 5, Mott Dep. at 94:11-14. Plaintiffs made no effort to show that

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ *DiPierro*, 737 F. Supp. 3d at 1324 ("Without the 'critical' allegation that buttressed the complaint in *Green-Cooper* (that the entire batch of stolen data was posted for sale on a specific dark web marketplace), Plaintiffs' conclusory allegation that they believe their information has been or will be sold because that is the nature of things is speculative."); Ex. 4, Hart Rep., ¶¶ 26-41 (████████████████████████████████████████████████

██████████████████████████████████). Plaintiffs fail to meet their burden of showing that there is common evidence capable of establishing a uniform increased risk of harm that is fairly traceable to the Incident.

> 6.    *Traceability and injury are questions central to standing; they are not mere damages issues that can be ignored at the class certification stage.*

Plaintiffs ignore traceability, claiming that "individual damages calculations do not defeat predominance." Mot. at 3-4. However, this conflates damages, which describes the computation of a remedy, with Article III's *threshold* injury requirement. *Lujan*, 504 U.S. at 560-61 (describing the "irreducible constitutional minimum of standing"); Black's Law Dictionary (12th ed.)

(defining "damages" as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury"). Moreover, the problems associated with Plaintiffs' Motion in this case go beyond quantifying "damages"; they involve the lack of common proof of cognizable injury and causation that would justify an award of damages. *S. Indep. Bank v. Fred's, Inc.*, 2019 WL 1179396, at *19 (M.D. Ala. Mar. 13, 2019) ("But the court does not agree that recharacterizing causation issues as damages issues puts Plaintiff on a quick path to certification. There is 'no support in the text of Rule 23 or interpretive case law,' the Eleventh Circuit has said, for the court to make a 'rigid distinction between liability and damages.'") (quoting *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1178 (11th Cir. 2010)).

Under *Lujan*, threshold questions of Article III standing do not become damages issues merely because the case proceeds past a motion to dismiss. Those issues remain core disputes regarding the extent and scope of the Court's subject matter jurisdiction. *In re Brinker Data Incident Litig.*, 2020 WL 4287270, at *2–4 (M.D. Fla. July 27, 2020) (finding lack of standing because risk of a future breach was "too speculative" since it "rests on a series of contingencies" and a second breach "has not happened in the more than two years since the original breach"); Am. Compl., ¶ 5 (the Incident occurred **three-and-a-half** years ago). Labeling these as "damages" also does not moot the individualized nature of these questions or prevent them from being analyzed. *Dolmage*, 2017 WL 1754772, at *8 (rejecting reliance on "cases holding that the need for individual proof [of damages] alone does not necessarily preclude class certification" because "determining whether each class member suffered a resulting injury will require a highly individualized inquiry") (citations and quotation marks omitted); *McGlenn*, 2021 WL 165121, at *10 ("[Plaintiffs] failed to establish that the common questions will predominate" due to "[i]ndividualized issues on causation, injury, and damages").

17

## IV.    THE CALIFORNIA SUBCLASS SHOULD NOT BE CERTIFIED.

### A.    California Plaintiffs Cannot Show Concrete Injury.

California Plaintiffs seek statutory damages under the CCPA, but "Article III standing requires a concrete injury even in the context of a statutory violation." Mot. at 34; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *TransUnion*, 594 U.S. at 427. The concreteness analysis looks to whether "the alleged injury 'has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts.'" *Baron v. Syniverse Corp.*, 2022 WL 6162696, at *6 (M.D. Fla. Oct. 7, 2022) (quoting *TransUnion*, 594 U.S. at 417). "[T]he unauthorized disclosure of [Plaintiffs'] private information due to the data breach … has a close common-law analogue, namely, the tort of public disclosure of private information." *Id.* However, to satisfy the elements of that common law tort, mere disclosure of confidential information is insufficient. Instead, a plaintiff must show "that Defendant or the hacker(s) communicated their private information to the public at large or to so many people that the content of their text messages and call logs are certain to become public knowledge." *Id.* None of the California Plaintiffs have presented facts sufficient to meet this standard, let alone evidence that would be sufficient to meet this standard based on common evidence. The information relating to the vast majority of California plaintiffs has never surfaced on the dark web, let alone in a way that would support the inference that it is "certain to become public knowledge."

### B.    The California Subclass (CCPA) is not Manageable or Ascertainable.

The Court should decline to certify the California Subclass under Rule 23(b)(3) for statutory damages under the CCPA because the proposed class is not manageable or ascertainable. Fed. R. Civ. P. 23(b)(3)(D) (directing courts to consider "the likely difficulties in managing a class action"); *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1361 (11th Cir. 2021) ("considerations of administrative feasibility may still be relevant to Rule 23(b)(3)(D) manageability analysis").

18

Only a "consumer" can recover statutory damages. Cal. Civ. Code § 1798.150(b). The CCPA defines "consumer" as "a natural person who is a California resident, as defined in [Cal. Code Regs. tit. 18, § 17014]," a regulation promulgated by the Franchise Tax Board ("**FTB**"). *Id.*, § 1798.140(i). That regulation defines "resident" to include "(1) every individual who is in the State for other than a temporary or transitory purpose, and (2) every individual who is domiciled in the State who is outside the State for a temporary or transitory purpose." Cal. Code Regs. tit. 18, § 17014. This definition requires inquiry into each putative class member's intent, which defeats ascertainability. *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 680 (N.D. Ga. 2016) ("[A] class definition lacks objective criteria where, for example, membership is contingent on the prospective member's state of mind[.]") (citation and quotation marks omitted).

Moreover, the FTB publishes "Guidelines for Determining Resident Status," which include over a dozen factors to consider. Ex. 32, at 5. Plaintiffs contend that the mailing address in Defendants' files is dispositive of residency, but the FTB has made clear that domicile is ***not*** dispositive of residency. *Id.*; Mot. at 20-21; Cal. Code Regs. tit. 18, § 17014 ("[A]n individual may be a resident although not domiciled in this State, and, conversely, may be domiciled in this State without being a resident."); *State Franchise Tax Bd. v. Hyatt*, 2003 WL 23100266, at *6 (Cal. Ct. App. Dec. 31, 2003) ("[R]esidency … turns on the facts and circumstances of the individual case."); *Baker v. GE Retail Sales Fin. Inc.*, 2011 WL 9352058, at *4 (N.D. Cal. Sept. 30, 2011) (explaining that receipt of a notice letter at an address is not dispositive of residency).

It is not enough to assert "that class members can be identified using the defendant's records"; Plaintiffs must "establish that the records are in fact useful for identification purposes." *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 948–49 (11th Cir. 2015). Plaintiffs make no effort to show suitability for that purpose, nor can they because addresses in Defendants' files may be

outdated or may correspond to a rental or vacation property. Mot. at 20-21; Ex. 3, Norton Decl.,

¶¶ 15-22. Indeed, discovery has shown that ████████████████████████████████████

███████████████▌ ████████████████████████████████████████████████████████████

█████████████████████████████████████████▌. Ex. 3, Norton Decl., ¶¶ 11-18. Moreover,

a significant portion of the loans at issue correspond to ████████████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████ *Id.*, ¶¶ 19-20.

Defendants must be permitted to challenge Plaintiffs' residency claims to avoid violation

of their due process rights, but that would require █████ mini-trials, which defeats predominance

and makes the California Subclass unmanageable and not ascertainable. Mot. Ex. 28, Rog No. 4

(identifying 888,136 individuals notified at a California address); *Usry v. EquityExperts.org, LLC*,

2019 WL 1140236, at *5–6 (S.D. Ga. Mar. 12, 2019) (denying class certification on

ascertainability grounds because defendant's records show ownership of property in Georgia, not

residency, so "mini-trials" would be necessary to protect defendant's due process rights); *Adair v.*

*Johnston*, 221 F.R.D. 573, 577 (M.D. Ala. 2004) ("When individualized fact-finding [is] necessary

in order to identify class members, class certification is inappropriate.").

---

[2] By way of illustration as to the inability to rely on addresses in Defendants' files, Lapenter moved from ████████████████████████████████████████████████████████████████████████
███████████████████████████████ Ex. 16, Lapenter Dep. at 9:7-21; Am. Compl., ¶ 43.
████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████ Ex. 31,
Wojciechowski    Dep.    at    10:14-11:7,    36:25-37:3,    92:10-12,    113:11-17,    164:5-10;
█████████████████████████ Am. Compl., ¶ 47; Mot. Ex. 17, ¶ 2.
██████████████████████████████████████████████████ Ex. 28, Rowton Dep.
at 9:23-10:12; Am. Compl., ¶ 49; Mot. Ex. 13, Rowton Decl., ¶ 2.
███████████████████████████████████████ Ex. 10, McMahon Dep. at 8:1-22; Ex. 9, Saporta
Dep. at 12:17-25. ██████████████████████████████████████████

### C.    The Proposed California Subclass Representatives are Inadequate.

The California Plaintiffs are inadequate because they would forego actual damages, which they claim are significant, in favor of statutory damages, which are capped at $750. Cal. Civ. Code § 1798.150(a)(1)(A); Mot. at 31-32 (describing alleged damages); *Clark v. Experian Info. Sols., Inc.*, 2001 WL 1946329, at *4 (D.S.C. Mar. 19, 2001) (finding plaintiffs inadequate because they only sought statutory damages, which may "jeopardize the remaining class members' rights to seek alternative [] relief") (citation and quotation marks omitted); *Krueger v. Wyeth, Inc.*, 2008 WL 481956, at *2–4 (S.D. Cal. Feb. 19, 2008) (same). Saporta is also inadequate because the pre-suit notice bearing his name ████████████████████████████████████████████████ ████████████████ Ex. 9, Saporta Dep. at 44:1 ██████████████ "), 159:11-163:8, 166:21-172:4 ("█████████████████████████████████████████████████████████ ████████████████████████████████████ "). Grossman also admits ████████████ ████████████████████. Ex. 7, Grossman at 108:6-113:8 ████████████████ ████████████████████████████████████████████████ Cal. Civ. Code § 1798.150(b) (requiring pre-suit notice and absence of a cure). Moreover, Grossman and Saporta's data ████████████████████████████████████████████. Am. Compl., ¶¶ 66, 78. Ex. 33, O'Brien Decl., ¶¶ 2-3; Ex. 3, Norton Decl., ¶¶ 5-11. Thus, Defendants provided the precise cure demanded in the notice bearing Saporta's name. Ex. 34.

### D.    Putative Class Members Cannot Recover Statutory Damages.

Plaintiffs seek to certify a class of ██████ purported Californians. Mot. at 18-19; Mot. Ex. 28, Rog No. 4 (identifying ██████ individuals notified at a California address). However, to recover statutory damages, a consumer must provide pre-suit notice. Cal. Civ. Code. § 1798.150(b). Only the named California Plaintiffs are alleged to have provided notice, but they seek statutory damages on behalf of hundreds of thousands of people who did not. Am. Compl.,

¶¶ 282, 516, 591, 604. While the CCPA permits a consumer who provides notice to initiate a class-wide action, that provision does not relieve putative class members of the obligation to provide notice. Cal. Civ. Code § 1798.150(b). Moreover, extending the right to recover statutory damages to individuals who did not provide notice is contrary to California law. The California Supreme Court characterizes statutory damages as "penal" and looks "with disfavor on ever mounting civil penalties." *Hale v. Morgan*, 22 Cal.3d 388, 401 (Cal. 1978). Therefore, the CCPA's statutory damages provision is subject to "the narrowest construction … to which it is reasonably susceptible in the light of its legislative purpose." *Id.*, 405. Consistent with *Hale*, the Court should hold that statutory damages are only available to individuals who provided the required notice and opportunity to cure because a contrary holding would result in "ever mounting civil penalties."[3]

## V.     PLAINTIFFS' NEGLIGENCE, FDUTPA, AND WCPA CLAIMS ALSO REQUIRE PROOF OF INJURY AND CAUSATION, WHICH ARE PREDOMINATING INDIVIDUAL ISSUES.

Plaintiffs also must prove injury and causation to prevail on their negligence, FDUTPA, and WCPA claims. *Delgado v. Laundromax, Inc.*, 65 So.3d 1087, 1089 (Fla. 3d DCA 2011) (requiring injury and causation for negligence); *CareerFairs.com v. United Business Media LLC*, 838 F. Supp. 2d 1316, 1324 (S.D. Fla. 2011) (requiring "a deceptive act or unfair practice" and that plaintiff was aggrieved for FDUTPA injunctive relief); *Schiff v. Liberty Mut. Fire Ins. Co.*, 542 P.3d 1002, 1006 (Wash. 2024) (requiring injury to business or property and "a causal link between the [violation] and the injury" to state a claim under the WCPA). Plaintiffs cannot make this showing because they merely assume causation based on timing, which is not enough: "[T]o prove that a data breach caused identity theft, the pleadings must include allegations of a nexus between the two instances beyond allegations of time and sequence." *Resnick v. AvMed, Inc.*, 693

---

[3] Assuming ████ class members, statutory damages are ████████. Even at the low end, such an award would be unconstitutional. ECF No. 209 at 10-13; *Wakefield v. ViSalus, Inc.*, 51 F. 4th 1109, 1120 (9th Cir. 2022).

F.3d 1317, 1326 (11th Cir. 2012); Ex. 5, Mott Dep. at 131:9-16 ███████████████

████████████████████████████████████████████.”). Plaintiffs cannot show

a nexus because they allege varied forms of misuse that are too dissimilar to permit any sort of

common resolution of the question of causation. *Supra* at 9-14 (detailing alleged misuse of PII);

*DiPierro*, 737 F. Supp. 3d at 1329 (“[W]hen the alleged injury is based on scattered instances of

individualized misuse, a more nuanced inquiry necessarily applies.”). Thus, Plaintiffs have failed

to show that Rule 23(b)(3)’s predominance requirement is met for their state law claims.

## VI.   PLAINTIFFS’ CLASS-WIDE DAMAGES THEORIES DO NOT ELIMINATE THE PROBLEM THAT ISSUES OF INJURY AND CAUSATION ARE INHERENTLY INDIVIDUALIZED.

Plaintiffs ignore the individualized nature of their injury allegations and problems with

causation. Instead, they purport to satisfy their burden through their proffered experts, primarily

Eric Matolo, who opines that putative class members are entitled to recover: (1) compensation for

the value of their PII; (2) compensation for time spent on mitigation efforts; and (3) lifetime

identity theft protection. Mot. Ex. 18 at 29-39. However, Matolo’s analyses are flawed.

### A.     Matolo Does Not Opine that Plaintiffs’ PII Lost Value.

Matolo does not opine that putative class members’ PII lost value, so his opinions do not

support using this measure of damages: ████████████████████████████████████

██████████████   Ex. 35, Matolo Dep. at 44:3-5; Ex. 36, Orszag Rep., ¶¶ 18-22. Thus, he fails to

show damages as a matter of law because proof of diminished value is required. *Pruchnicki v.

Envision Healthcare Corp.*, 845 F. App’x 613, 614–15 (9th Cir. 2021) (“Pruchnicki failed to

adequately allege that her [PII] actually lost value.”); *Bozek v. Arizona Lab. Force Inc.*, 2025 WL

264174, at *5 (D. Ariz. Jan. 22, 2025) (following *Pruchnicki*); *In re Numotion Data Incident Litig.*,

2025 WL 57712, at *15–16 (M.D. Tenn. Jan. 9, 2025) (“[T]he allegations of the diminished value

of their [PII] does not state a cognizable damages claim.”). Matolo admits ███████████████

█████████████████████████. Ex. 35, Matolo Dep. at 131:7-133:9. Moreover, the

"mere misappropriation of [PII]" is not enough. *In re Google Privacy Policy Litig.*, 2015 WL

4317479, at *5 n.63 (N.D. Cal. July 15, 2015) ("The mere misappropriation of [PII], without a

resultant economic harm—for example in the form of being deprived of the ability to monetize

that information—is neither damage nor injury-in-fact.") (collecting cases).

The relevant question is whether PII lost value and, if so, whether the loss can be calculated

on a class-wide basis. Ex. 36, Orszag Rep., ¶ 19. Matolo never opines that value was lost, let alone

that loss can be reliably calculated. Ex. 35, Matolo Dep. at 45:21-22 ████████████████████

████████"), 131:7-133:9; *Fraga v. UKG, Inc.*, 2022 WL 19486310, at *10–*11 (S.D. Fla. May

10, 2022) (rejecting diminished value theory as "'an unadorned, the-defendant-unlawfully-

harmed-me accusation'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The values Matolo assigns to PII are also arbitrary. He admits █████████████████

████████████████████████████████████████████████████████████████████

████████ Ex. 35, Matolo Dep. at 184:2-186:1, 230:9-234:5; Ex. 36, Orszag Rep., ¶¶ 31-38.

Undeterred, he opines on the value of PII using a benchmarking approach where he estimates

market values for PII based on advertised prices for similar data, but a reliable analysis requires

benchmark and target markets that are comparable. Ex. 36, Orszag Rep., ¶¶ 31-38. Matolo's

benchmarks are legitimate information clearinghouses that employ varying pricing models for data

that is verified and sold legally. However, he uses those benchmarks to value stolen PII that is

unverified and illegally sold on the black market, even though the authority he cites recognizes

that his target market is composed of "ever-present rippers who cheat other participants" and that

it is a "market for lemons" and "cannot operate effectively." *Id.*, ¶ 31; Ex. 35, Matolo Dep. at

93:12-100:14, 184:2-12, 208:10-211:14 ████████████████████████

███████████████████████████ *Fraga*, 2022 WL 19486310, at *11 (rejecting diminution in value theory because there is no market where plaintiffs legally sell PII).

### B.    Matolo's Value of Time Assessment is Flawed.

Matolo's value of time assessment is flawed. As an initial matter, lost time (as opposed to lost earnings) is not recoverable under Florida law. *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 327 (S.D.N.Y. 2018); *P&G Trucking of Brandon, Inc. v. Riverland Hedging & Topping, Inc.*, 301 So. 3d 294, 297–98 (Fla. 4th DCA 2020) (denying recovery for lost time for negligence claim); *WSG W. Palm Beach Dev., LLC v. Blank*, 990 So. 2d 708, 712 (Fla. Dist. Ct. App. 2008) (affirming denial of recovery for lost time); *Fryatt v. Lantana One, Ltd.*, 866 So. 2d 158, 159 (Fla. Dist. Ct. App. 2004) (reversing award of damages for lost time).

Matolo's methodology also fails because Plaintiffs cannot recover for time allegedly spent on mitigation efforts without proof of an imminent threat of identity theft. *Muchnik v. Sambodromo, LLC*, 2009 WL 10667067, at *2 (S.D. Fla. May 18, 2009) ("[T]he time and expense of credit monitoring to combat an increased risk of future identity theft is not, in itself, an injury that the law is prepared to remedy."); *id.* ("A potential for harm without showing of actual harm is too speculative to establish actual damages."); *Clapper*, 568 U.S. at 416 ("[R]espondents cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending."); *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1229–30 (N. D. Cal. 2022) (finding alleged "time and effort spent monitoring … credit reports" did not establish injury in fact where the "risk of identity theft and fraud" was not "real and imminent").

Matolo's proposed compensation rate is not viable because it is theoretical and is not tied to actions taken by Plaintiffs or putative class members. ████████████████████████ ████████████████████████████████████████████ Ex. 35, Matolo Dep. at 235:12-251:19. However, there is no evidence that Plaintiffs or putative class members took those steps and Matolo

██████████████████████████████████████████████████████. *Id.*, 51:16-20, 235:12-251:19. Without knowing what steps were taken, Matolo cannot reasonably opine on an appropriate rate of compensation. Ex. 36, Orszag Rep., ¶¶ 61-68. Moreover, he does not show that the data he relies upon are reliable proxies for the value of putative class members' time and there is no basis to assume all ████████ putative class members' time is worth the same. Ex. 36, Orszag Rep., ¶ 61-68; Ex. 35, Matolo Dep. at 237:12-20 (████████████████████████ ████████████████████████████████████████).

Lastly, Matolo's methodology ignores the fact that putative class members were (or should have been) undertaking these same efforts irrespective of the Incident as a matter of good practice or to mitigate the effect of other breaches. Ex. 35, Matolo Dep. at 62:1-63:12, 73:3-8, 238:2-251:19, 257:16-261:19; Ex. 4, Hart Rep., ¶¶ 48-61 & Exs. 3-5 (████████████████████████ ████████ I). Thus, his methodology ignores causation and assumes, counterfactually, that the Incident is the only reason why Plaintiffs should safeguard their PII. Ex. 36, Orszag Rep., ¶ 65.

### C. Plaintiffs' Value Protection and Monitoring Opinions are Flawed.

Plaintiffs' protection and monitoring damages theory is also flawed. Their experts opine that putative class members face ongoing risks, so they need lifetime protection. But their proffered expert admitted ████████████████████████████████████████████████ ████████. Ex. 5, Mott Dep. at 133:2-24. There is no evidence that is the case; each of the named Plaintiffs ████████████████████████████████████ Ex. 4, Hart Rep., ¶¶ 48-61 & Exs. 3-5. In any event, "time and expense of credit monitoring to combat an increased risk of future identity theft is not, in itself, an injury that the law is prepared to remedy." *Muchnik*, 2009 WL 10667067, at *2; *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 639–40 (7th Cir. 2007) (rejecting credit monitoring as a cognizable injury because "[w]ithout more than allegations of increased risk of future identity theft, the plaintiffs have not suffered a harm that the

law is prepared to remedy"); *Forbes v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018, 1020–21 (D. Minn. 2006); *Shafran v. Harley-Davidson, Inc.*, 2008 WL 763177, at *2–3 (S.D.N.Y. Mar. 20, 2008).

Over ***three-and-a-half-years*** after the Incident, there is no evidence of misuse that is fairly traceable to the Incident, which forecloses any claim an injury is imminent. *Supra* at 9-14; *Abernathy v. Brandywine Urology Consultants, P.A.*, 2021 WL 211144, at *4 (Del. Super. Ct. Jan. 21, 2021) (passage of one year "undermine[s] the notion that identity theft would happen in the near future") (citation and quotation marks omitted); *In re Brinker*, 2020 WL 4287270, at *2–4 (M.D. Fla. July 27, 2020) (finding risk of injury too speculative where a second breach "has not happened in the more than two years since the original breach"). Indeed, as explained by Defendants' expert, ███████████████████████████████████████████████ ███████████ Ex. 4, Hart Rep., ¶¶ 22-25. ██████████████████████████████. Ex. 5, Mott Dep. at 94:11-14; Ex. 6, Frantz Dep. at 81:22-82:3, 84:17-85:21. Thus, the risk of identity theft is purely speculative and provides no basis for awarding lifetime monitoring.

Moreover, Plaintiffs' insistence on LifeLock Ultimate Plus is arbitrary. LifeLock *does not prevent identity theft*; it merely warns of suspicious activity after the fact. Ex. 4, Hart Rep., ¶¶ 42-47; Ex. 5, Mott Dep. at 221:22-23 ("████████████████████████."). Plaintiffs can actually prevent identity theft by freezing their credit, checking their credit reports, using multi-factor authentication, and choosing strong passwords, which are free steps that all Americans should take since virtually everyone's PII has been compromised in data breaches. Ex. 4, Hart Rep., ¶¶ 42-47. Nevertheless, Plaintiffs demand LifeLock because their proffered expert, Mott, opined that it "would best protect Class members." Mot. at 23. However, he ██████████ ████████████████████████████████████████████. Ex. 5, Mott Dep.

at 200:13-207:10 

He conceded that

*Id.*, 186:19-187:1 ("

), 198:4-204:4, 218:18-223:18. Indeed, the only thing that distinguishes LifeLock from the other products he considered is that LifeLock is the most expensive product and serves as the basis for Plaintiffs to claim the exorbitant figure of ***nearly $█████ dollars*** in damages for monitoring. *Id.*, 187:21-24; Mot. Ex. 22, Long Decl., ¶ 7.

Plaintiffs' lifetime monitoring damages are also inflated because they disregard fundamental actuarial principals. Plaintiffs' proposed actuarial expert, Terry Long, was told to

Ex. 37, Long Dep. at 85:4-92:12, 94:24-100:2. However, Defendants offered free monitoring to putative class members *and* █████████. Ex. 36, Orszag Rep., ¶ 72; Ex. 5, Mott Dep. at 210:21-216:14; Exs. 38-40. Plaintiffs' 100% utilization rate disregards actuarial principals to inflate their alleged damages by $██████. Ex. 41, Fedchak Rep. at 5-10.

In calculating the present value of lifetime monitoring—*i.e.*, what Defendants should pay today to cover the cost of lifetime monitoring—Long also selects a discount rate tied to U.S. treasuries, which is necessarily low because treasuries are considered risk free. However, here the payor is not the U.S. government, so Long's rate is inappropriate. Ex. 37, Long Dep. at 40:18-42:8, 56:1-65:1, 68:8-85:1; Ex. 41, Fedchak Rep. at 10-13. Not surprisingly, using this low discount rate results in a higher present value because the discount rate used and resulting present

value are inversely related. Thus, Plaintiffs' alleged monitoring damages, which correspond to the present value of a lifetime of monitoring, are further inflated. Ex. 41, Fedchak Rep. at 10-13.

Lastly, Plaintiffs' lifetime monitoring damages are based on life expectancy, but the data Long uses to calculate life expectancy is incomplete and unreliable. He claims the data shows ██████████████████████████████████████." Mot. Ex. 22, Long Decl., ¶ 8. However, the data merely shows ███████████████████████████████████████████████████ ██████████████████████████████████████ Ex. 42. Moreover, as Defendants explained, ██ ███████████████████████████████████████████████████ ██ *Id.* Long's methodology is also unreliable. He calculates life expectancy based solely on age, but there are many variables that affect life expectancy. Ex. 36, Orszag Rep., ¶ 73.

The Court should reject Plaintiffs' monitoring damages because they are not entitled to lifetime monitoring. Moreover, their methodology for calculating the cost of lifetime monitoring is not grounded in actuarial science and uses data that is unreliable on its face.

## VII.   THE VARIOUS PROPOSED CLASSES AND SUBCLASSES CANNOT BE CERTIFIED.

### A.   The Court Should Decline to Certify a Nationwide Class.

The Court should decline to certify a nationwide damages class. Plaintiffs seek certification of a nationwide damages class under Rule 23(b)(3) in connection with their negligence claims. Mot. at 18. However, Article III standing and causation with respect to damages alleged by ██ putative class members would require individualized inquiries. *Supra* at 9-14. Moreover, Rule 23(b)(3)(D) directs courts to consider "the likely difficulties in managing a class action," and a class that would require ████████ mini-trials on causation is necessarily unmanageable and defeats commonality and typicality. Fed. R. Civ. P. 23(b)(3)(D); *Dolmage*, 2017 WL 1754772, at *8 ("[D]etermining whether each class member suffered a 'resulting injury' will require a highly individualized inquiry. This is not a case, then, where the Court can simply determine liability on

a class-wide basis and leave the matter of damages for a later stage."); *S. Indep. Bank*, 2019 WL 1179396, at *19 ("But the court does not agree that recharacterizing causation issues as damages issues puts Plaintiff on a quick path to certification."); *McGlenn*, 2021 WL 165121, at *6 (finding commonality was not established because "issues of causation and injury require individual inquiry"); *Gardner v. Health Net, Inc.*, 2010 WL 11579028, at *3 (C.D. Cal. Sept. 13, 2010) ("[T]he typicality requirement is not met in an action that would require individualized inquiries regarding causation and injury.") (collecting cases). The Motion does little to advance Plaintiffs' burden of proving a nationwide class can be certified despite these individualized inquiries.

Plaintiffs further seek certification of nationwide injunctive relief classes under FDUTPA and the Declaratory Judgment Act. Mot. at 18. However, certification of injunctive relief classes is inappropriate. *Infra* at 32-34. Moreover, certification of a nationwide FDUTPA class is inappropriate because choice of law principles favor application of the consumer protection laws of the state where each putative class member was allegedly injured. Florida courts follow most significant relationship test, which considers several factors, but "'[t]he state where the injury occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law.'" *Townhouse Rest. of Oviedo, Inc. v. NuCO2, LLC*, 2020 WL 5440581, at *6–8 (S.D. Fla. Sept. 9, 2020) (quoting *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980)). In *Townhouse*, plaintiffs sought to certify a nationwide FDUTPA class, but the court held that for "putative class members with no Florida footprint," the consumer protection laws of the state where their injuries occurred apply. *Id.*, *6–8. The same is true here. Plaintiffs seek to certify a nationwide FDUTPA class, but fail to show that FDUTPA should be applied to non-Florida residents. They ignore conflict of law principles altogether and "[their] failure to show the absence of conflicts among other states' laws is fatal to certifying a nationwide class." *Id.*, *6.

They also appear to recognize the futility of trying to certify a nationwide FDUTPA class because, alternatively, they seek certification of a Florida Subclass to pursue the same relief. *Infra* at 33-34.

## B.    The Court Should Decline to Certify a Nominal Damages Class.

Plaintiffs seek to sidestep manageability, commonality, and typicality issues by seeking certification of a nominal damages class. Mot. at 3-4, 33. However, courts deny certification where putative class members would be required to opt out or forego allegedly valuable claims in exchange for a token award. In *Gardner v. Equifax Info. Servs.*, LLC, the court concluded that plaintiffs were inadequate because they sought to forego actual damages in favor of statutory damages. 2007 WL 2261688, at *4–6 (D. Minn. Aug. 6, 2007) (requiring "members of the potential class to opt-out if they wish to [pursue] actual damages… places a burden on too many absent class members who may have a significant actual damage claim …."). In *Clark*, the court found plaintiffs inadequate for the same reason and explained that the ability to opt out was insufficient to protect putative class members, who may be foreclosed from pursuing actual damages. 2001 WL 1946329, at *3–*4. In *Buetow v. A.L.S. Enters., Inc.*, the court addressed whether pursuit of nominal damages satisfied the public benefit element of a claim asserted by a plaintiff acting as a private attorney general. 888 F. Supp. 2d 956, 960–61 (D. Minn. 2012). The court noted that the case "devolved into a series of small claims for nominal damages" and concluded that "no public benefit that will be vindicated by Plaintiffs continuing to litigate this case [because] it will serve only to provide an exclusive remedy—and a small one, at that." *Id.*

Plaintiffs' out-of-circuit authority does not counsel a different result. Mot. at 33 (citing *Attias v. CareFirst, Inc.*, 346 F.R.D. 1, 11-12 (D.D.C. 2024)). The *Attias* court certified a nominal damages class for breach of contract claims because individual claims were too small to pursue individually, and putative class members were unlikely to pursue individual claims a decade after the breach. *Attias*, 346 F.R.D. at 11–12. ("Because the data breach occurred back in 2014, this

hypothetical group would have to believe that they suffered some form of fraud due to the … breach but… have slept on their rights for a decade."). Indeed, the court recognized that certification would be inappropriate if it meant "foreclosing broad swaths of plaintiffs from pursuing much more valuable individual cases." *Id.* Here, Plaintiffs do not assert a contract claim, but they do contend that actual damages are significant, so *Attias* is distinguishable. Mot. at 31-32.

Certification of a nominal damages class is also inappropriate given that jurisdiction is premised on the Class Action Fairness Act ("**CAFA**"), which creates jurisdiction where there is minimal diversity and the amount in controversy exceeds $5 million. Am. Compl. ¶ 87 (citing 28 U.S.C. § 1332(d)(2)). While a traditional award of $1 per individual may satisfy the amount-in-controversy threshold, CAFA was intended to curtail "'[a]busive class action settlements in which plaintiffs receive promotional coupons or other nominal damages.'" *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1328–29 (S.D. Fla. 2007) (quoting S. Rep. 109-14, 33, 2005 U.S.C.C.A.N. 3, 32). While the Court is not evaluating a class action settlement, the same rationale applies. If a nominal damages class is certified, the most that class members may recover is a token award, a result CAFA was intended to avoid not facilitate.

Thus, the Court should decline to certify a nominal damages class because putative class members would either have to accept token awards after three years of litigation or opt out and file individual actions, defeating the purpose of Rule 23.

### C.    The Proposed Injunctive and/or Declaratory Relief Classes and Subclasses are not Subject to Certification.

The Court should decline to certify Plaintiffs' requests for declaratory and injunctive relief. Plaintiffs do not face "a real and immediate threat of future injury," so they lack standing to pursue injunctive relief. *Supra* at 26-29; *Yonan v. Walmart, Inc.*, 591 F. Supp. 3d 1291, 1304-05 (S.D. Fla. 2022) (requiring "a real and immediate threat of future injury"); *TransUnion*, 594 U.S. at 435

("[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial."); *In re Brinker*, 2020 WL 4287270, at *2–4 (possibility of a future breach was "too speculative" because it "rests on a series of contingencies" and a second breach "has not happened in the more than two years since the original breach"); Ex. 4, Hart Rep., ¶¶ 26-41 (explaining why Plaintiffs' claims of increased risk are unfounded). Moreover, Defendants are already subject to extensive injunctive relief by virtue of the Consent Order. Mot. Ex. 24 (requiring comprehensive security enhancements and ongoing monitoring and auditing). Thus, the injunctive relief Plaintiffs seek is superfluous. *Blanco GmbH+Co. KG v. Vlanco Indus., LLC*, 992 F. Supp. 2d 1225, 1233–35 (S.D. Fla. 2014) ("[I]njunctive relief is unnecessary because the Consent Judgment already prohibits the conduct that Plaintiff seeks to enjoin[.]"); *Bradshaw v. Associated Transp., Inc.*, 1974 WL 232, at *10 (M.D.N.C. July 26, 1974) (finding request for injunctive relief moot where "consent decree secured by the government … enjoined the defendant from further [violations]").

### D.   The Florida Subclass (FDUTPA) Alleged in the Alternative.

The Court should decline to certify the Florida Subclass because it seeks superfluous injunctive relief, *supra* at 32-33, and for three additional reasons.

*First*, Wojciechowski is inadequate because he is not a member of the proposed Florida Subclass, which is limited to "individuals **residing** in Florida." Mot. at 19 (emphasis added); *Prado-Steiman*, 221 F.3d at 1279 ("a class representative must be part of the class"). The evidence shows Wojciechowski is a ███ resident. *Supra* at 20 n.2. Moreover, mini-trials would be necessary to determine residency for all ███ individuals who received a notice letter at a Florida address. *Supra* at 18-20 (explaining why residency cannot be assumed based on address); Mot. Ex. 28, Rog No. 4 (identifying ███ individuals notified at a Florida address).

*Second*, Wojciechowski abandoned his injunctive relief claim. *Compare* ECF No. 47, ¶ 702 (original consolidated complaint seeking injunctive relief under FDUTPA) *with* Am. Compl. ¶¶ 874-75 (seeking only damages and declaratory relief); *Anderson v. U.S. Dep't of Hous. & Urb. Dev.*, 554 F.3d 525, 528–29 (5th Cir. 2008) ("The district court's authority to certify a class under Rule 23 does not permit it to structure a class around claims not pled."); *Waine-Golston v. Time Warner Ent.-Advance/New House P'ship*, 2012 WL 6591610, at *3 (S.D. Cal. Dec. 18, 2012) ("Plaintiffs may not certify a class based on claims not asserted in the complaint.").

*Third*, Wojciechowski is inadequate because he is willing to jettison putative class members' claims for actual damages to secure an easier path to certification of superfluous injunctive relief claims. *Cooper v. S. Co.*, 390 F.3d 695, 721 (11th Cir. 2004), *overruled on other grounds*, 546 U.S. 454, 457 (2006) ("[T]o the extent the named plaintiffs were willing to forego class certification on damages in order to pursue injunctive relief …, it is far from clear that the named plaintiffs [are adequate].").

## E.    The Washington Subclass (WCPA)

The Court should decline to certify the Washington Subclass because the proposed representative, Arthur, is inadequate. *Infra* at 39. Moreover, mini-trials would be necessary to determine residency for the ███ individuals who received notice at a Washington address. *Supra* at 18-20 (explaining why residency cannot be assumed based on address); Mot. Ex. 28, Rog No. 4 (identifying ███ individuals).

Arthur is also inadequate because he cannot satisfy the causation element of his WCPA claim. *Browne v. Avvo Inc.*, 525 F. Supp. 2d 1249, 1254 (W.D. Wash. 2007) (reciting elements). Under the WCPA, "a claim for damages will fail if the damages are too remote[.]" *Id.*, 1255. In determining whether damages are too remote, courts consider several factors, including "whether there are more direct victims … who can be counted on to vindicate the law" and "whether the

court[] will have to adopt complicated rules apportioning damages to [prevent] multiple recoveries." *Id.* Arthur alleges ███████████████████████████████████

██████████████████████████████████████████████████████████████████████

Ex. 22, Arthur Dep. at 190:15-191:4, 199:6-200:18, 205:12-206:8, 232:8-12; Ex. 43 (██████

████████████████████████). He also alleges ████████████████████████████

██████████████████████████ *Id.*, 144:25-145:10; Mot. Ex. 2, ¶ 6;

*infra* at 39. Thus, ascertaining damages—*i.e.*, what spam was caused by the Incident—is

impossible, and Arthur has potential claims against ████████████████████████, so

the Court would need to "adopt complicated rules apportioning damages to [avoid] multiple

recoveries." *Supra* at 12. The same is true for lifetime monitoring given ██████████████

████. *Id.* He also cannot recover the alleged value of his PII because he does not show it was

diminished and cannot recover for lost time without a corresponding loss of income. *Panag v.*

*Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 57–58 (2009). Lastly, a similar causation

analysis would be necessary for all purported Washington residents, which defeats predominance.

## VIII.   PLAINTIFFS ARE NOT ADEQUATE TO SERVE AS CLASS REPRESENTATIVES.

Plaintiffs are inadequate because they lack standing and would forego actual damages just

to certify a class. *Supra* at 7-17, 29-30. Additionally, the Court should find that the Plaintiffs below

are inadequate for three reasons. *First*, several are not interested in serving as representatives.

*Johnson v. U.S. Beef Corp.*, 2006 WL 680918, at *7 (W.D. Mo. Mar. 14, 2006) (finding plaintiff

inadequate because he did not want to serve). *Second*, several do not understand the allegations in

this case. *Id.*; *Butterworth v. Quick & Reilly, Inc.*, 171 F.R.D. 319, 322-23 (M.D. Fla. 1997)

("[D]ue to plaintiff's unfamiliarity with the facts and essential elements of the case, plaintiff is not

[adequate]."). *Third*, there are legitimate concerns regarding certain Plaintiffs' credibility, which

would dominate at trial. *Pines Nursing Home (77), Inc v. Rehabcare Grp., Inc.*, 2014 WL

12531512, at *3–4 (S.D. Fla. June 20, 2014) ("Plaintiff's credibility could be seriously undermined at trial and would materially prejudice other class members."); *Johansen v. Bluegreen Vacations Unlimited, Inc.*, 2021 WL 4973593, at *5–6 (S.D. Fla. Sept. 30, 2021), *aff'd*, 2022 WL 17087039 (11th Cir. Nov. 21, 2022) ("A plaintiff's lack of credibility … can render him an 'inadequate' class representative.") (citation and quotation marks omitted).

**Villanueva.** 

Ex. 30, Villanueva Dep. at 89:13-90:18, 154:21-172:14.

*Id.*, 30:21-32:2, 37:2-25, 97:16-98:6.

*Id.*, 28:8-14, 51:20-52:14, 71:10-78:23, 81:16-82:5, 87:11-21, 104:8-18, 105:15-24, 106:23-107:14, 114:15-116:22, 137:9-138:5, 141:8-25, 144:22-148:18, 151:14-152:11, 156:11-157:3, 181:21-183:8, 184:10-17, 185:1-191:8, 199:24-200:14, 217:1-220:19, 268:16-271:24.

*Id.*, 28:23-29:7, 137:9-142:12, 193:7-24, 195:25-200:14, 214:8-215:16; Am. Compl. ¶ 277; Mot. Ex. 16, ¶ 6. Her deposition also revealed numerous inaccuracies in her discovery responses, but she chose not to amend. Rog. Nos. 2-3 (Ex. 30, Villanueva at 183:9-184:17, 185:1-191:8, 266:22-271:22).

**Rubio.**

██████████████████████ Ex. 8, Rubio Dep. at 112:20-113:9, 206:20-23 ████████████

████████████████████████████████████████████████████████████

Much of the information in his discovery responses was also shown to be inaccurate, but he chose

not to amend. Rog. No. 4 (*id.*, 125:19-134:2); Rog. No. 8 (*id.*, 146:24-147:24); Rog. No. 13 (*id.*,

161:15-166:18); RFA Nos. 11-12 (*id.*, 177:14-179:23); RFA Nos. 16-17 (*id.*, 78:16-82:7); RFA

No. 22 (*id.*, 184:9-186:4); RFA No. 24 (*id.*, 186:5-187:4); RFA No. 26 (*id.*, 187:5-21); RFA No.

32 (*id.*, 50:6-53:19, 187:22-189:13). ████████████████████████████████████

█████████████████████████████████. *Id.*, 36:12-25, 46:25-47:19, 66:23-68:3,

85:12-88:5, 98:16-108:1, 140:21-141:13, 143:12-144:9, 163:19-25, 170:8-10, 177:14-179:17,

193:25-194:19, 195:13-18, 198:1-10.

**Kassem.** ████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████ Ex. 27, Kassem Dep. at 143:14-144:17; *Weikel*

*v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 396 (D.N.J. 1998) (finding proposed representative

inadequate because he may be unavailable to attend trial). Moreover, █████████████████

██████ Ex. 27, Kassem Dep. at 43:5-49:6, 194:3-200:23.

**Saporta.** ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 9, Saporta Dep. at

38:17-40:12, 162:12-167:13. His credibility is also at issue. In his declaration, he purports to show

adequacy by presenting his testimony that ██████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████ *Id.*, 211:16-212:15, 228:2-229:7; Mot. Ex. 14, ¶ 17 & Ex. A thereto

at 212:3-15 (██████████████████████████████████████████████████

██████████████████████). Much of the information in his discovery responses was

inaccurate, but he chose not to amend. Rog. No. 1 (Ex. 9, Saporta Dep. at 60:6-72:19 (█████

████████████████████████████████████████████████████████████

as he stated in Ex. 45, Saporta Rog. No. 1)); Rog. Nos. 2-3 (Ex. 9, Saporta Dep. at 51:1-60:5,

184:6-185:16 & Ex. 45, Saporta Rog. Nos. 2-3 (███████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████")); Rog. No. 4 (Ex. 9, Saporta Dep. at 64:12-17 (showing his claim in Ex. 45,

Saporta Rog. No. 4 that he █████████████████████████████ is inaccurate)); Rog. No.

13 (*compare* Ex. 9, Saporta Dep. at 44:17-25 ████████████████████████

██████████████████████) *with* Ex. 46, Saporta Rog No. 13 ████████████████████

████████████)).

**Grossman.** ████████████████████████████ Ex. 7, Grossman Dep. at

29:21-30:6; *Weikel*, 183 F.R.D. at 396 (finding inadequacy where plaintiff may be unavailable to

attend trial). ████████████████████████████████████████████

██████████████████████████████████████████ Ex. 7, Grossman at

108:6-113:8. ████████████████████████████████████████████

██████████████████████. *Id.*, 43:21-46:11, 54:12-19, 66:19-69:12, 98:15-24, 101:6-102:17, 117:9-

25, 186:25-188:15. Her credibility is also at issue. █████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████     *Id.*, 133:4-137:14, 144:12-149:25, 194:23-212:4. Moreover, much of the information in her discovery responses was inaccurate, but she chose not to amend. Rog. Nos. 2-3 (*id.*, 54:12-19, 66:19-69:12, 118:5-120:4, 122:20-123:20, 187:2-188:4); Rog. Nos. 5 and 9 (*id.*, 105:5-10, 107:6-22, 127:12-129:8, 137:21-138:15, 181:11-183:10).

**Arthur.** His credibility is at issue. ████████████████████

███████████████████████████████████████████. Ex. 22, Arthur Dep. at 47:7-60:14. Many of his sworn discovery responses were also inaccurate, but he chose not to amend. Rog. No. 2 (*id.*, 211:9-214:18); Rog. No. 3 (*id.*, 231:23-233:9); Rog. No. 7 (*id.*, 249:2-251:1); RFA Nos. 14-15 (*id.*, 66:15-22, 114:18-115:8, 325:10-328:2); RFA No. 19 (*id.*, 331:3-333:24); RFA No. 20 (*id.*, 334:5-337:3); RFA No. 32 (*id.*, 50:15-60:14).

**Cunningham.** ██████████████████████████

████████████████████████████████████████

████████████████████████████████████████ Ex. 15, Cunningham Dep. at 69:3-71:8, 75:2-80:1. █████████████

████████████████████████████████████████

██████████████     *Id.*, 71:2-75:1, 96:2-98:2, 118:11-119:13; Am. Compl., ¶ 534.

████████████████████████████████████████

████████████████████████████████████████

████████████     Mot. Ex. 4, ¶ 6. Many of his discovery responses were shown to be inaccurate, but he chose not to amend. Rog. No. 1 (Ex. 15, Cunningham Dep. at 71:2-75:1, 118:11-119:13); Rog. Nos. 2-3 (*id.*, 49:16-51:20, 57:6-58:14, 61:5-9, 120:18-124:1); Rog. No. 5 (*id.*, 127:20-129:6); Rog. No. 7 (*id.*, 143:15-144:9); Rog. No. 12 (*id.*, 167:24-169:17); RFA No. 15 (*id.*, 211:16-213:1); RFA No. 23 (218:7-219:5).

**Wojciechowski.** He admits he 

Ex. 31, Wojciechowski Dep. at 141:1-7, 179:3-18, 199:6-17. He testified that

he received a notification showing ███████████████████████████ *Id.*, 30:24-

33:8, 138:11-139:19, 189:11-17, 227:18-228:9, 232:10-20, 237:3-18, 246:3-5. When Defendants

requested a copy, ███████████████████████████████. Ex. 47. His

deposition also revealed many inaccuracies in his discovery responses, but he chose not to amend.

Rog. No. 5 (Ex. 31, Wojciechowski at 159:16-162:4); RFA No. 13 (*id.*, 26:9-27:12, 59:1-23,

234:21-236:23, 265:5-268:13); RFA No. 20 (*id.*, 286:6-289:11).

## CONCLUSION

For the reasons set forth above, this action is not suitable for class treatment under Federal

Rule of Civil Procedure 23. The Court should deny the Motion.

## REQUEST FOR AN EVIDENTIARY HEARING

Defendants request an evidentiary hearing to address the issues raised in the Motion and

herein. There are disputed issues of fact between Plaintiffs' declaration and the evidentiary record,

including Plaintiffs' deposition testimony, and disputes between the opinions submitted by the

parties' experts. An evidentiary hearing would assist the Court in resolving these disputed issues.

Dated: May 30, 2025.

*s/ Julie Singer Brady*
Julie Singer Brady
Florida Bar No. 389315
jsingerbrady@bakerlaw.com
Yameel L. Mercado Robles
Florida Bar No. 1003897
ymercadorobles@bakerlaw.com
BAKER & HOSTETLER LLP
200 South Orange Avenue, Suite 2300
Orlando, FL 32801
Telephone: 407.649.4000
Facsimile: 407.841.0168

Paul Karlsgodt (*pro hac vice*)
PKarlsgodt@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO 80202
Telephone: 303.861.0600
Facsimile: 303.861.7805

Evan M. Mannering (*pro hac vice*)
emannering@bakerlaw.com
BAKER & HOSTETLER LLP
1050 Connecticut Ave, NW, Suite 1100
Washington, DC 20036
Telephone: 202.861.1500
Facsimile: 202.861.1783

Joseph Givner
Florida Bar No. 850705
Primary Email: jgivner@givner.law
Secondary Email: paralegal@givner.law
GIVNER LAW GROUP, LLP
19790 W. Dixie Hwy, Suite 706
Miami, Florida 33180
Telephone: 305.933.9970

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 30, 2025, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF filing system, which will send a Notice of Electronic Filing to all counsel of record.

*s*/Julie      Singer      Brady
Julie Singer Brady
