UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Master File No. 1:22-cv-20955-DPG

| In re LAKEVIEW LOAN SERVICING DATA BREACH LITIGATION | ) ) ) | CLASS ACTION |
|---|---|---|
| | | **Hearing Requested** |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

Page

TABLE OF ABBREVIATIONS ................................................................................. viii

II.     INTRODUCTION .............................................................................................. 1

III.    ARGUMENT .................................................................................................... 3

     A.     The Court Should Certify the California Statutory Damages Subclass ................. 3

          1.     All California Plaintiffs Have Article III Standing ...................................... 3

          2.     The California Subclass is Ascertainable and Manageable ....................... 5

          3.     The CCPA's Notice Requirement is Satisfied ............................................ 6

          4.     The California Plaintiffs are Adequate ...................................................... 7

     B.     The Court Should Certify Plaintiffs' Compensatory Damages Classes ................. 8

          1.     Standing is Not an Obstacle to Class Certification ..................................... 8

               a.     Plaintiffs Suffered Injury in Fact ...................................................... 8

               b.     Plaintiffs' Injuries Are Fairly Traceable to Defendants' Conduct ................................................................................... 11

               c.     Defendants' Arguments Regarding Class Member Standing Misstate the Law .............................................................. 12

               d.     Defendants' Google Drive Argument Goes to the Merits and is Wholly Speculative ............................................ 13

          2.     The Compensatory Damages Classes Satisfy Rule 23(b)(3) .................... 14

               a.     Common Questions Predominate as to Causation ......................... 14

               b.     Class Members' Injuries are Susceptible to Common Proof Based on Reliable Damages Models ............................................... 15

                   (1)     Plaintiffs' Damages Models Are Sound ............................ 15

                   (2)     Plaintiffs' Entitlement to Nominal Damages is Capable of Class-Wide Determination ............................. 19

i

3.      The Compensatory Damages Classes Satisfy Rule 23(a) because
        Plaintiffs are Adequate Class Representatives............................................20

C.      The Court Should Certify Plaintiffs' Declaratory and Injunctive Relief
        Classes Under Rule 23(b)(2)..................................................................................24

D.      Defendants' Do Not Dispute That the Court Can Certify a Rule 23(c)(4)
        Issues Class ..............................................................................................................25

IV.    CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

**Page**

### CASES

*Allapattah Servs., Inc. v. Exxon Corp.*
  333 F.3d 1248 (11th Cir. 2003) ................................................................. 15

*Allen v. Wenco Mgmt., LLC*
  696 F. Supp. 3d 432 (N.D. Ohio 2023) .................................................... 4

*Asghari v. Volkswagen Grp. of Am., Inc.*
  42 F. Supp. 3d 1306 (C.D. Cal. 2013) ...................................................... 6

*Attias v. CareFirst, Inc.*
  346 F.R.D. 1 (D.D.C. 2024) ...................................................................... 20

*Attias v. Carefirst, Inc.*
  865 F.3d 620 (D.C. Cir. 2017) .................................................................. 11

*Baron v. Syniverse Corp.*
  2022 WL 6162696 (M.D. Fla. Oct. 7, 2022) .......................................... 3, 4

*Baton v. Ledger SAS*
  740 F. Supp. 3d 847 (N.D. Cal. 2024) .................................................... 4, 8

*Bohnak v. Marsh & McLennan Cos., Inc.*
  79 F.4th 276 (2d Cir. 2023) ...................................................................... 4

*Bovee v. Coopers & Lybrand*
  216 F.R.D. 596 (S.D. Ohio 2003) ............................................................ 23

*Bridging Communities Inc. v. Top Flite Fin. Inc.*
  843 F.3d 1119 (6th Cir. 2016) .................................................................. 5

*Buetow v. A.L.S. Enters., Inc.*
  888 F. Supp. 2d 956 (D. Minn. 2012) ...................................................... 19

*Cardenas v. Toyota Motor Corp.*
  2021 WL 5811741 (S.D. Fla. Dec. 6, 2021) ............................................ 15

*Carollo v. United Cap. Corp.*
  528 F. Supp. 3d 37 (N.D.N.Y. 2021) ....................................................... 23

*Carriuolo v. Gen. Motors Co.*
  823 F.3d 977 (11th Cir. 2016) .................................................................. 15

*Cason v. Baskin*
  155 Fla. 198 (1944) .................................................................................. 19

*Cherry v. Dometic Corp.*
    986 F.3d 1296 (11th Cir. 2021) ................................................................. 5

*Cooper v. Pac. Life Ins. Co.*
    229 F.R.D. 245 (S.D. Ga. 2005) .............................................................. 22

*De Ford v. Koutoulas*
    348 F.R.D. 724 (M.D. Fla. 2025).............................................................. 20

*Dickens v. GC Servs. Ltd. P'ship*
    706 F. App'x 529 (11th Cir. 2017) ............................................................. 7

*DiPierro v. Florida Health Sciences Center, Inc.*
    737 F. Supp. 3d 1314 (M.D. Fla. 2024)................................................... 12

*Doe v. Beasley Broad. Grp., Inc.*
    105 So. 3d 1 (Fla. Dist. Ct. App. 2012) ................................................. 19

*Doe v. MG Freesites, LTD*
    707 F. Supp. 3d 1157 (N.D. Ala. 2023)..................................................... 6

*Felice v. Invicta Watch Co. of Am., Inc.*
    2017 WL 3336715 (S.D. Fla. Aug. 4, 2017).......................................... 25

*Figeroa v. Sharper Image Corporation*
    517 F. Supp. 2d 1292 (S.D. Fla. 2007) ................................................... 20

*Galaria v. Nationwide Mut. Ins. Co.*
    663 Fed. Appx. 384 (6th Cir. 2016)........................................................... 9

*Gamache v. Hogue*
    338 F.R.D. 275 (M.D. Ga. 2021) .............................................................. 7

*Green-Cooper v. Brinker Int'l, Inc.*
    73 F.4th 883 (11th Cir. 2023) ......................................................... passim

*Guy v. Convergent Outsourcing, Inc.*
    2023 WL 4637318 (W.D. Wash. July 20, 2023) ..................................... 8

*Hale v. Morgan*
    22 Cal.3d 388 (Cal. 1978)........................................................................ 6

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*
    48 F.4th 1236 (11th Cir. 2022) ................................................................. 4

*In re Accellion, Inc. Data Breach Litig.*
    713 F. Supp. 3d 623 (N.D. Cal. 2024) ..................................................... 8

*In re Disposable Contact Lens Antitrust*
    329 F.R.D. 336 (M.D. Fla. 2018)...................................................... 16, 19

iv

*In re Equifax Inc. Customer Data Sec. Breach Litig.*
 999 F.3d 1247 (11th Cir. 2021) ................................................................. 8, 9

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*
 440 F. Supp. 3d 447 (D. Md. 2020) ............................................................. 16

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*
 603 F. Supp. 3d 1183 (S.D. Fla. 2022) ....................................................... 11

*In re Packaged Seafood Prods. Antitrust Litig.*
 332 F.R.D. 308 (S.D. Cal. 2019) ................................................................. 16

*In re Pawn Am. Consumer Data Breach Litig.*
 2022 WL 3159874 (D. Min. Aug. 8. 2022) .................................................... 4

*In re Terazosin Hydrochloride*
 220 F.R.D. 672 (S.D. Fla. 2004) ................................................................... 5

*In re Wells Real Est. Inv. Tr., Inc. Sec. Litig.*
 2009 WL 10688777 (N.D. Ga. Sept. 16, 2009) ........................................... 22

*Jancik v. WebMD LLC*
 2025 WL 560705 (N.D. Ga. Feb. 20, 2025) ................................................. 5

*Johansen v. Bluegreen Vacations Unlimited, Inc.*
 2021 WL (S.D. Fla Sept. 30, 2021) ............................................................. 23

*Keim v. ADF MidAtlantic, LLC*
 328 F.R.D. 668 (S.D. Fla. 2018) ................................................................. 21

*Legg v. Spirit Airlines, Inc.*
 315 F.R.D. 383 (S.D. Fla. 2015) ................................................................... 7

*Limon v. Circle K Stores*
 84 Cal. App. 5th 671 (2022) ......................................................................... 7

*Nunley v. Chelan-Douglas Health Dist.*
 558 P.3d 513 (Wash. Ct. App. Oct. 31, 2024) .............................................. 8

*Owens v. Metro. Life Ins. Co.*
 323 F.R.D. 411 (N.D. Ga. 2017)................................................................... 5

*People ex rel. Lungren v. Super. Ct.*
 14 Cal. 4th 294 (1996) ................................................................................. 7

*Petito v. A.H. Robins Co.*
 750 So. 2d 103 (Fla. Dist. Ct. App. 1999) ................................................... 17

*Pines Nursing Home (77), Inc. v. Rehabcare Grp., Inc.*
 2014 WL 12531512 (S.D. Fla. June 20, 2014) ............................................. 23

*Remijas v. Neiman Marcus Grp.*
  794 F.3d 688 (7th Cir. 2015) ............................................................ 9

*Rensel v. Centra Tech, Inc.*
  2 F.4th 1359 (11th Cir. 2021) ........................................................... 5

*Richardson v. Progressive Am. Ins. Co.*
  2022 WL 154426 (M.D. Fla. Jan. 18, 2022) ...................................... 7

*Savidge v. Pharm-Save, Inc.*
  727 F. Supp. 3d 661 (W.D. Ky. 2024) ........................................ 14, 15

*Shedd v. Sturdy Mem'l Hosp., Inc.*
  2022 WL 1102524 (Mass. Super. Apr. 5, 2022) ............................... 17

*Sobel v. Hertz Corp.*
  53 F. Supp. 3d 1319 (D. Nev. 2014) ................................................. 20

*Sos v. State Farm Mut. Auto. Ins. Co.*
  2019 WL 3854761 (M.D. Fla. May 2, 2019) (similar)
  *aff'd*, 2023 WL 5608014 (11th Cir. Aug. 30, 2023) ......................... 21

*Spinelli v. Cap. One Bank*
  265 F.R.D. 598 (M.D. Fla. 2009) ....................................................... 5

*Theus v. Brinker Int'l, Inc.*
  2025 WL 1786346 (M.D. Fla. June 27, 2025) .................................. 13

*TransUnion LLC v. Ramirez*
  594 U.S. 413 (2021) ............................................................. 4, 11, 24

*Tsao v. Captiva MVP Rest. Partners, LLC*
  986 F.3d 1332 (11th Cir. 2021) .................................................. 8, 10

*Tyson Foods, Inc. v. Bouaphakeo*
  577 U.S. 442 (2016) ......................................................................... 18

*United States v. Robles*
  408 F.3d 1324 (11th Cir. 2005) ....................................................... 25

*Uzuegbunam v. Preczewski*
  592 U.S. 279 (2021) ......................................................................... 19

*Veal v. Crown Auto Dealerships, Inc.*
  236 F.R.D. 572 (M.D. Fla. 2006) ..................................................... 23

*Webb v. Injured Workers Pharmacy, LLC*
  72 F.4th 365 (1st Cir. 2023) ............................................................ 11

*Wilding v. DNC Servs. Corp.*
  941 F.3d 1116 (11th Cir. 2019) ....................................................... 11

vi

**STATUTES**

Cal. Civ. Code § 1798.150 ........................................................................................... 6

Fla. Stat. §§ 501.201, *et seq* ....................................................................................... 25

**RULES**

Fed. R. Civ. P. 23 ............................................................................................... passim

## TABLE OF ABBREVIATIONS

| Document | Location | Short Cite |
|---|---|---|
| Plaintiffs' Motion for Class Certification and Memorandum of Law in Support | ECF No. 282 | "Motion" or "Mot." |
| Declaration of Eric Matolo, PH.D. in Support of Plaintiffs' Motion for Class Certification | ECF No. 282-18 | "Matolo Decl." |
| Declaration of Christopher Thompson in Support of Plaintiffs' Motion for Class Certification | ECF No. 282-19 | "Thompson Decl." |
| Expert Declaration of Darren J. Mott | ECF No. 282-20 | "Mott Decl." |
| Expert Declaration of Mary T. Frantz | ECF No. 282-21 | "Frantz Decl." |
| Expert Declaration of Terry M. Long, FSA, MAAA | ECF No. 282-22 | "Long Decl." |
| Defendants' Memorandum of Law in Opposition to Motion for Class Certification | ECF No. 294 | "Opposition" or "Opp." |
| Expert Report of Jonathan M. Orszag | ECF No. 294-36 | "Orszag Rpt." |
| Plaintiffs' Reply in Support of Motion for Class Certification | | "Reply" |
| Rebuttal Expert Declaration of Stuart Madnick | Reply, Ex. 2 | "Madnick Reb." |
| Rebuttal Expert Declaration of Darren J. Mott | Reply, Ex. 3 | "Mott Reb." |
| Rebuttal Expert Declaration of Mary T. Frantz | Reply, Ex. 4 | "Frantz Reb." |
| Rebuttal Expert Declaration of Eric Matolo | Reply, Ex. 5 | "Matolo Reb." |

## I.    INTRODUCTION

The central questions in the case turn on Defendants' common conduct, including whether Defendants violated the CCPA or breached their duty of care, and whether this conduct contributed to the Data Breach and harm to Plaintiffs and Class members. Defendants attempt to manufacture individualized issues where there are none, misstate the law and Plaintiffs' theories of liability and damages, and distort the factual record. The Court should reject Defendants' arguments and grant Plaintiffs' motion.

First, the Court should certify Plaintiffs' California Subclass seeking statutory damages under the CCPA. Each California Plaintiff has standing because they suffered concrete harm with a close relationship to the traditional common-law harm of public disclosure of private facts. Common issues predominate as to the CCPA claim because—as Defendants concede—whether they violated the law is common to the California Subclass, and statutory damages are a matter of basic arithmetic. And like the liability issue, the answer to whether Defendants "cured" their CCPA violation will be the same for everyone. The California Subclass is manageable and ascertainable because it is defined as residents of the State of California whose PII was accessed or exfiltrated during the Data Breach. This definition makes membership capable of determination using Defendants' records. Notice under the CCPA is common: Defendants concede that the California Plaintiffs provided adequate notice, satisfying the notice requirement for the California Subclass.

Second, the Court should certify Plaintiffs' nationwide negligence Class under Florida law, and the Washington Subclass under the WCPA. Plaintiffs seek compensatory damages for both of these claims. Each Plaintiff and Class member has Article III standing based on an actual, present, and continuing risk of harm. All had their PII, including their Social Security numbers ("SSNs"), exfiltrated by a criminal organization with demonstrably nefarious intent. Hundreds of thousands of records from the Data Breach are known to have been posted on a relatively accessible dark

web page, and some Plaintiffs have already experienced fraud and misuse. Expert testimony demonstrates that all Plaintiffs and Class members are at significant and continuing risk of harm. Plaintiffs also demonstrate standing separately through a concrete present harm—the uncompensated value of their PII. These injuries are fairly traceable to the Data Breach.

Common issues also predominate as to Plaintiffs' negligence and WCPA claims. Defendants do not contest that duty and breach, the central liability issues, can be determined all at once, or that a class action is superior. Instead, Defendants contend that causation and damages will require individualized inquiries, but their arguments largely ignore Plaintiffs' theory of the case. Rather than focus on whether the Data Breach caused Plaintiffs' claimed harm—substantial risk of harm necessitating money damages to secure identity theft protection products, and compensation for lost value of PII and time spent—Defendants contend that other data breaches *may have* caused spam, fraud, and identity theft. Speculation aside, Defendants ignore that, at a minimum, their inadequate data security practices caused each Plaintiff and Class member to experience additional risk. Plaintiffs put forward damage models capable of mechanical calculation, and Defendants' criticisms of these models' inputs are wrong and do not negate their classwide applicability. Even if the damages models are deficient (they are not), nominal damages are still available to Plaintiffs and Class members, which Defendants do not credibly dispute.

Plaintiffs meet the Rule 23(a) requirements as well. Defendants do not contest numerosity, commonality, or typicality. While Defendants argue that eight of the sixteen Plaintiffs are inadequate, they cherry-pick and misstate testimony to demand a level of legal and technical understanding that the law does not require.

Third, the Court should certify Plaintiffs' injunctive relief classes under Rule 23(b)(2) because much of their data remains on Defendants' servers and continues to be at risk despite the consent order Defendants are subject to, and having sustained one breach, injunctive relief is

required to ensure another breach does not occur. Finally, Defendants do not dispute that the Court can certify a Rule 23(c)(4) issues class, which Plaintiffs respectfully seek in the alternative to establish Defendants' liability, as it is preferable to *seriatim* trials on common issues of liability that will require, at a minimum, costly motions practice, burdensome discovery, and repetitive expert work—for potentially millions of individuals.

## II.     ARGUMENT

### A.       The Court Should Certify the California Statutory Damages Subclass

Defendants concede that their liability under the CCPA is a common question and that damages are statutorily prescribed. As a result, Defendants seek to manufacture standing and adequacy arguments that are unmoored from the facts. Defendants further resort to notice and ascertainability arguments that are both unprecedented and in conflict with the plain language of the CCPA. Each of Defendants' arguments falls flat.

### 1.       All California Plaintiffs Have Article III Standing[1]

Defendants concede that the disclosure of Plaintiffs' PII in the Data Breach has a "close common-law analogue" to public disclosure of private facts. Opp. at 18 (cleaned up). Defendants also concede that this information, including SSNs, is sufficiently private. *Id.* Defendants' sole contention, relying on a single district court opinion, is that the disclosure is not sufficiently "public" to establish standing. *Id.* (citing *Baron v. Syniverse Corp.*, 2022 WL 6162696, at *6 (M.D. Fla. Oct. 7, 2022)). Defendants' argument and reliance on *Baron* are unpersuasive, as "the weight of post-*TransUnion* authority establishes that" the disclosure of private information through a data breach "is sufficiently concrete for Article III purposes." *Allen v. Wenco Mgmt., LLC*, 696 F. Supp. 3d 432, 437 (N.D. Ohio 2023) (collecting cases).

---

[1] The California Plaintiffs are Cindy Villanueva, Pedro Rubio, Norma Grossman, and Jay Saporta.

3

The Supreme Court was clear that the "close relationship" test for standing to assert statutory violations does "not require an exact duplicate." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 433 (2021).[2] Numerous courts have held that the harm plaintiffs experience when a criminal actor steals their PII is "close" enough to the harm of public disclosure of private facts. *See, e.g.*, *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 285 (2d Cir. 2023); *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 875-76 (N.D. Cal. 2024); *In re Pawn Am. Consumer Data Breach Litig.*, 2022 WL 3159874, *3 (D. Min. Aug. 8. 2022). And Plaintiffs satisfy the "close relationship" test under the Eleventh Circuit's post-*TransUnion en banc* decision in *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236 (11th Cir. 2022). There, the court held that allegations of an intangible harm for a procedural violation of the Fair Debt Collection Practices Act were insufficient to establish a concrete injury because the plaintiff "ma[de] no allegations that suggest publicity," only that the creditor sent his debt information to a mail vendor, and there was no indication these entities would circulate the information. *Id.* at 1240-41, 1247-48.

The record here is unlike the bare allegations in *Hunstein* or *Baron*, where the plaintiffs failed to allege that the hacker disclosed the information, let alone that the text messages and phone call records were private. *Baron*, 2022 WL 6162696, at *5-7 (distinguishing cases "involv[ing] disclosure of PII"). The California Plaintiffs demonstrate that PII, including SSNs, was taken by criminal hackers in the Data Breach, ███████████████████████████████ ███████████████████ and all records from the hack are ████████████████████████████ ██████████████████████████ Frantz ██████ ., §III ¶7, §VIII ¶1; *see generally* Frantz Reb.

---

[2] The Eleventh Circuit is clear that *TransUnion's* standing analysis applies only to statutory violations. *See Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 890 n.9 (11th Cir. 2023).

## 2. The California Subclass is Ascertainable and Manageable

Defendants argue that the California Subclass is not ascertainable—and therefore a class action is unmanageable—because the CCPA's residency requirement purportedly depends on individual "intent" to remain or return to California. Opp. at 18-19. This argument can easily be disposed of because "the mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3)." *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016). Defendants' argument is speculative and unsupported by any evidence. *See Jancik v. WebMD LLC*, 2025 WL 560705, at *4 (N.D. Ga. Feb. 20, 2025) (defendants' "concerns appear entirely speculative … and do not defeat the ascertainability of the Class").[3]

Defendants' argument also fails because they rely on cases that treat administrative feasibility as a standalone requirement (Opp. at 18-20), which is no longer the law. *See Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). The California Subclass is ascertainable because it is "defined such that its membership is capable of determination." *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1361 (11th Cir. 2021). This is a low bar: "membership can be capable of determination without being capable of *convenient* determination." *Cherry*, 986 F.3d at 1303.

The administrative burden here is minimal because residency can be determined through Defendants' Data Breach notice letters, ████████████████████████████ ████████████. *See* Mot., Exs. 2-17 [attachment A to each]; *Belin v. Health Ins. Innovations, Inc.*, 337 F.R.D. 544, 553-44 (S.D. Fla. 2021) (ascertainability met using defendants' records and self-identification); Reply, Ex. 6 (Norton Dep. at 202:3-208:4). During post-verdict distribution, California Subclass members can also submit declarations confirming their California residency.

---

[3] Defendants offer the Court no reason to depart from the many decisions that certified classes limited to residents of a particular state. *See, e.g.*, *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 703 (S.D. Fla. 2004); *Spinelli v. Cap. One Bank*, 265 F.R.D. 598, 605, 618 (M.D. Fla. 2009); *Owens v. Metro. Life Ins. Co.*, 323 F.R.D. 411, 424 (N.D. Ga. 2017).

*See Doe v. MG Freesites, LTD*, 707 F. Supp. 3d 1157, 1171 (N.D. Ala. 2023) (approving determining class membership through claims administration process).

### 3.   The CCPA's Notice Requirement is Satisfied

This Court should not be the first to adopt Defendants' unsupported argument: California Subclass members are not entitled to statutory damages because they did not provide sufficient notice. Opp. at 21-22. The CCPA requires that before an action for statutory damages is commenced, "*a consumer* [must] provide[] a business 30 days' written notice." *See* Cal. Civ. Code § 1798.150(b) (emphasis added). The statute's plain text *does not* require that each absent class member provide notice to recover statutory damages. Defendants concede that California Plaintiffs provided written notice before initiating this class action. Thus, California Plaintiffs satisfied the CCPA notice requirement for the California Subclass.

Defendants' tortured interpretation would require the Court to treat the CCPA's pre-suit notice requirement differently than other California statutes. For example, under the California Consumer Legal Remedies Act, written notice sent by a named plaintiff is sufficient for absent class members. *See Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1317-18 (C.D. Cal. 2013) (collecting cases). There is no reason to require more for the CCPA, since pre-suit notice aims to provide a business a chance to cure. Cal. Civ. Code § 1798.150(b). Requiring thousands of class members with the same claims to retain counsel and send the same letter vitiates the purpose of class actions: to allow the few to litigate the claims of the many efficiently.

Defendants' only argument is that the Court should rewrite the CCPA because penal statutes are disfavored. *See* Opp. at 22 (citing *Hale v. Morgan*, 22 Cal.3d 388, 401, 405 (Cal. 1978)). But *Hale*'s strict construction rule does not apply to statutes like the CCPA because the statute provides for statutory *or* actual damages and is thus "not intended to penalize." *See Limon v. Circle K Stores*, 84 Cal. App. 5th 671, 700-03 (2022); *see also People ex rel. Lungren v. Super.*

*Ct.*, 14 Cal. 4th 294, 312-14 (1996) (limiting *Hale's* holding and noting civil statutes are broadly construed).

### 4.    The California Plaintiffs are Adequate

Defendants' arguments for why the California Plaintiffs are inadequate are unpersuasive.[4]

The first argument (Opp. at 21) fails because the Eleventh Circuit rejects that pursuing statutory damages is a basis for finding a class representative inadequate. *See Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 536 (11th Cir. 2017). Pursuing certain claims or damages is "a reasonable litigation strategy" that does not render a plaintiff inadequate. *Richardson v. Progressive Am. Ins. Co.*, 2022 WL 154426, at *15 (M.D. Fla. Jan. 18, 2022). And the opt-out procedures of Rule 23 protect absent class members' rights. *See Legg v. Spirit Airlines, Inc.*, 315 F.R.D. 383, 390 (S.D. Fla. 2015). Unlike in Defendants' cited cases (Opp. at 21), Plaintiffs are not abandoning more valuable claims but seeking statutory damages in addition to other claims.

Defendants also argue that two California Plaintiffs are inadequate because they allegedly ████████████████████████████████████████████. Opp. at 21. But Defendants merely point to testimony calling for expert and legal opinions from lay witnesses about disputed facts, which is not a basis for finding a plaintiff inadequate. *See Gamache v. Hogue*, 338 F.R.D. 275, 290 (M.D. Ga. 2021) ("An unresolved factual dispute about a key element of the case does not begin to raise a question of credibility that would disqualify [a plaintiff] as a class representative.").[5]

---

[4] Defendants' argument that Saporta's CCPA notice was sent by someone ██████████████████ ███████ (Opp. at 21) ignores that ██████████████████████████. Reply, Ex. 7.

[5] Defendants' argument concerning the purported ████████████████████ is an unsubstantiated merits issue irrelevant to adequacy and is addressed in Section II.B.1.d.

**B.      The Court Should Certify Plaintiffs' Compensatory Damages Classes**

**1.      Standing is Not an Obstacle to Class Certification**

Contrary to Defendants' assertions, misuse is not required to satisfy standing in a data breach case. Opp. at 7. Instead, Plaintiffs establish standing through a substantial risk of harm, shown by some misuse or publication, or a concrete, presently felt harm.

**a.      Plaintiffs Suffered Injury in Fact**

When a plaintiff's theory of harm is a risk of identity theft or fraud, they must show that the "hypothetical harm alleged is either 'certainly impending' or there is a 'substantial risk' of such harm." *See Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1339 (11th Cir. 2021). Where the harm has materialized, however, Plaintiffs have suffered a concrete injury. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262-63 (11th Cir. 2021). Plaintiffs seek damages for two theories of harm based on a substantial risk of identity theft or fraud: money for identity theft protection products and time spent.[6]

Defendants' focus on whether *all* Plaintiffs' data was misused is misdirected. *E.g.*, Opp. at 7-9. The Eleventh Circuit has never *required* a plaintiff (and every Class member) to demonstrate they suffered misuse to satisfy standing. *Tsao*, 986 F.3d at 1343 ("Of course, as our sister Circuits have recognized, evidence of actual misuse is not necessary for a plaintiff to establish standing following a data breach."); *Equifax*, 999 F.3d at 1262 ("[A]ctual identity theft is by no means required when there is a sufficient risk of identity theft."). Instead, the fact that some Plaintiffs *or* Class members have suffered misuse "further demonstrates the risk of identity theft all Plaintiffs

_____

[6] Plaintiffs' lost value of PII theory of harm is not premised on a substantial risk of identity theft or fraud; it is a present injury caused by the disclosure itself that is independently sufficient to support standing. *See Baton*, 740 F. Supp. 3d at 877-78; *Guy v. Convergent Outsourcing, Inc.*, 2023 WL 4637318, at *8 (W.D. Wash. July 20, 2023); *Nunley v. Chelan-Douglas Health Dist.*, 558 P.3d 513, 527 (Wash. Ct. App. Oct. 31, 2024); *see also In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 637 (N.D. Cal. 2024).

face." *Equifax*, 999 F.3d at 1262. In other words, misuse by some Plaintiffs or Class members is sufficient, but not necessary, to demonstrate substantial risk.

Plaintiffs can also demonstrate substantial, present, and continuing risk based on the type of information exposed in the Data Breach, whether criminal actors exfiltrated the data, or whether some of the information was posted to the dark web. For example, where criminal actors exfiltrated millions of "Social Security numbers, names, and dates of birth," in a data breach, the Eleventh Circuit had "no hesitation in holding that [p]laintiffs adequately alleged that they face a 'material' and 'substantial' risk of identity theft that satisfies the concreteness and actual-or-imminent elements" given "the unequivocal damage that can be done with this type of data." *Id*. This is an *independent* basis for finding standing here. *See id.* at 1263.

All Plaintiffs face a substantial, present, and continuing risk of harm sufficient for standing because ██████████████████████████████████████████████████████████ ████████████████. *See* Mot. at 8-9 & n.27 (citing evidence). ████████████████████████ ████████████████████████████████████. Mot. at 9 (citing evidence). Unlike accidental data disclosure, it is far more likely that nefarious hackers will use the illegal fruits of their crime (Plaintiffs' data) in a manner that harms Plaintiffs down the road. *See Galaria v. Nationwide Mut. Ins. Co.*, 663 Fed. Appx. 384, 388 (6th Cir. 2016). As the Seventh Circuit succinctly put it, "Why else would hackers break into a store's database and steal consumers' private information? Presumably, the purpose of the hack is, sooner or later, to make fraudulent charges or assume those consumers' identities." *Remijas v. Neiman Marcus Grp.*, 794 F.3d 688, 693 (7th Cir. 2015).

Plaintiffs' expert Darren Mott—a retired FBI agent with decades of cybercrime experience—opines that ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ Mott Decl., ¶29. Plaintiffs and Class members' data is ████████████████████████████ Frantz

Decl., §VIII ¶1. Defendants contend—with no support—that Plaintiffs are not at risk because LockBit's website, ███████████████████████████████, was taken down by law enforcement in 2024. Opp. at 16. Defendants also cite their experts' testimony that ███████████ ████████████████████████████████████ *Id.* at 16 (citing Hart Rpt., ¶¶26-41). This reflects a fundamental misunderstanding of how the dark web and data breach threat research work. Mott explains ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ Mott Decl., ¶¶21, 23. Defendants' expert Hart agrees. *See* Reply, Ex. 8 (Hart Dep. at 33:21-24). That a ███████████████████████████████████████████████████████████████ is the tip of the iceberg of Plaintiffs' exposure on the dark web. *See id.*, ¶ 24; Frantz Decl., §III ¶7, §VIII ¶1, §V ¶¶12, 18; Frantz Reb., ¶¶1-84. ██████████████████████████████ ███████████████████████████████████████████████████████████████████████ ████████████████████████████ *See* Mott Decl., ¶¶29, 33-34. Defendants do not counter this expert testimony.

The Eleventh Circuit cases that Defendants rely on lend them no support. Opp. at 7-8 (citing *Tsao* and *Green-Cooper*). In *Tsao*, where a fast-food chain experienced a data breach of a payment card database, the court held that the plaintiff lacked Article III standing at the pleading stage because he could not demonstrate a substantial risk of future identity theft based on allegations that his credit card information "may" have been exposed, absent any allegations of misuse. 986 F.3d at 1335, 1345. By contrast, in *Green-Cooper*, the court held that the plaintiffs demonstrated a substantial risk of harm at class certification where their credit card information *was* stolen in a data breach and posted on the dark web. 73 F.4th at 889. This case is more like

*Green-Cooper* (and *Equifax*) than *Tsao*. Each Plaintiff and Class member  ██████████, and Class member data was ██████████, evidencing a substantial risk of harm for all Plaintiffs and Class members. Plaintiffs Berg, Cunningham, Lapenter, and Sevak also ██████████ following the Data Breach. Mot. at 15.[7]

### b.    Plaintiffs' Injuries Are Fairly Traceable to Defendants' Conduct

Defendants contend that Plaintiffs cannot satisfy the traceability requirement because they cannot prove that *this* Data Breach caused any specific identity theft or fraud. Opp. at 10-14. This argument misstates the law and confuses traceability with causation.

To satisfy Article III's traceability requirement, Plaintiffs need not prove that "[D]efendants [are] the most immediate cause, or even a proximate cause, of [P]laintiffs' injuries." *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1197 (S.D. Fla. 2022). "Even harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019) (citation and alteration omitted).

In the context of a data breach, the Eleventh and other Circuits have held that injuries are fairly traceable when a plaintiff demonstrates that their information was exposed in the data breach. *Green-Cooper*, 73 F.4th at 890 n.10; *Attias v. Carefirst, Inc.*, 865 F.3d 620, 629 (D.C. Cir. 2017); *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 377 (1st Cir. 2023). Here, ██████████ that exposed their PII. Mot. at 6-15. Each Plaintiff and Class member received a notice

---

[7] Although Defendants do not separately address it, Plaintiffs have standing to "pursue forward-looking, injunctive relief to prevent" the risk of another Data Breach because "the risk of harm is sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 435.

from Defendants informing them that their PII was exfiltrated. Mot. at 9. ███████████████

███████████████████████ *Id.* This is all that is required to satisfy traceability.[8]

### c.   Defendants' Arguments Regarding Class Member Standing Misstate the Law

Defendants argue that questions regarding Plaintiffs' standing show that standing presents an individualized inquiry for class members. Opp. at 15. The Eleventh Circuit is, however, clear: "at the class certification stage only the named plaintiffs need have standing." *Green-Cooper*, 73 F.4th at 888. As discussed above, each Plaintiff has standing.

*Green-Cooper* does not suggest that the issue of absent class member standing defeats predominance. There, the court found it was sufficient for the plaintiffs' standing that their information was posted to the dark web, but remanded the case to "give the District the opportunity to clarify its predominance finding" concerning absent class member standing, including in relation to misuse. 73 F.4th at 889-90, 892-93. The plaintiffs there did not argue, and the Eleventh Circuit did not address, whether under *Tsao* and *Equifax*, publication or misuse for some plaintiffs or class members of sensitive PII like SSNs stolen by cybercriminals adequately demonstrates standing for all plaintiffs and class members (and therefore satisfies predominance). As discussed above, it does. *See, supra* § II.B.1.a.[9]

---

[8] Defendants' argument that Plaintiffs have a traceability problem because their injuries may stem from other data breaches (*see, e.g.*, Opp. at 9) confuses standing with causation, which Plaintiffs address in Section II.B.2.a. Defendants' reliance on *DiPierro v. Florida Health Sciences Center, Inc.*, is misplaced because the plaintiffs relied entirely on an "opaque" notice that did not definitively state that their information was stolen. 737 F. Supp. 3d 1314, 1324, 1329 (M.D. Fla. 2024). And because the plaintiff did not allege that his financial information was taken, there was a "gap" between the stolen data and the bank and ATM fraud that the plaintiff claimed. *Id.* at 1330. Moreover, contrary to Defendants' assertions (Opp. at 10), Plaintiffs do not need to show that each Plaintiff and Class member suffered actual fraud caused by this Data Breach to satisfy traceability.
[9] The standing issues that precluded class certification on remand in *Green-Cooper* are not present here. *Theus v. Brinker Int'l, Inc.*, 2025 WL 1786346, at *4 (M.D. Fla. June 27, 2025). Unlike here, that case involved credit and debit cards with short shelf lives and harm that could be cured via a

      **d.**      **Defendants' ██████████ Argument Goes to the Merits and is Wholly Speculative**

Defendants' argument that individualized inquiries will be necessary to determine whether Class member data was part of files on a ███████████████████████████ (Opp. at 3, 9) is a merits issue and is wholly speculative.

The Data Breach ████████████████████████████████████. Reply Decl., Ex. 9 (BAYVIEW000416354 at '56). During that time, ██████████████████ ████. *Id.*, Ex. 6 (Norton Dep. at 114:7-12). The Data Breach was ██████████████████, and the ██████████████████████████████████. Norton Decl., ¶¶ 3-5.[10] Defendants concede they do not know ██████████████████ ████████████████████████████████████ ██████████████████. Reply, Ex. 6 (Norton Dep. at 174:14-176:6, 187:3-20); *see also id.*, Ex. 8 (Hart Dep. at 41:4-7). Defendants even sent warnings to Plaintiffs, given that ██████ ████████████████████████████████████ ████████." *Id.*, Ex. 6 (Norton Dep. at 201:6-21). ████████████████████████████████████

██ ██ ███ ████ ███ ███ ██ ██ ████ ████. *Id.*, Ex. 11

_____

fraud reversal, ████████████████████████████████████ ██████████████ *See, e.g.*, Mott Decl., ¶¶29, 33-34. Further, analysis of absent class member standing in that case would require individualized inquiries because the data breach affected different Chili's locations at different times (or not at all). *Theus*, 2025 WL 1786346, at *3. The plaintiff also "never submitted any evidence to demonstrate that any particular Chili's customer's credit or debit card was posted on the dark web" (*id.*), whereas here, Plaintiffs have. [10] The evidence suggests that Defendants did not, in fact, ██████████████████ ████████████████ ██████████ ████████████████████████████ ██ ██████ ██ ██ ██ ██████ ████████████████████████████████████ █████████████████████████████.

(BAYVIEW000411200). Thus, for *two and a half months*, the hacker ███████████
███████████████████████████████████████████████████████████████████
████████████████████

### 2.    The Compensatory Damages Classes Satisfy Rule 23(b)(3)

Defendants do not contest that (i) common questions concerning duty and breach predominate, (ii) a class action is superior to other forms of adjudication, or (iii) state-law variation poses no barrier to Plaintiffs' two state law compensatory damages classes. Defendants instead focus their arguments on causation and damages, but these arguments should be rejected.

### a.    Common Questions Predominate as to Causation

Defendants incorrectly argue individualized issues predominate concerning whether other data breaches caused fraud or misuse (*see, e.g.,* Opp. at 10-14, 22-23), instead of focusing on the harm Plaintiffs and Class members allege: exfiltration of their PII leading to (i) a substantial risk of harm necessitating identity theft protection products, (ii) lost value of PII, and (iii) time spent remediating the consequences of the Data Breach. Defendants' inadequate data security practices caused each Plaintiff and Class member to experience some additional risk and be deprived of compensation for stolen valuable PII. Defendants' concerns, therefore, "do not require a 'causation-related determination of whether [C]lass members were injured *at all* by [Defendants]'"—each Class member had their information exfiltrated during the Data Breach. *Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 706 (W.D. Ky. 2024).

Plaintiffs' cybercrime expert Darren Mott opines that ███████████████████████
███████████████████████████████████████████████████████████████████



███████████████████████████████████████ Mott Decl., ¶31; Mott Reb., ¶16; Frantz Reb., §IV. █
███████████████████████████████████████████████████████████████████
███████████████████ Mott Reb., ¶17. ████████████████████████████████

14

████████████████████████. *Id.*, ¶18-20. Consequently, ████████

██████████████████████████████████████████████████████████████

Mott Decl., ¶ 31. Thus, even if their information was previously exposed, each Class member faces a risk from this Data Breach. Any purported differences in degree of risk from other data breaches "go to individual variations in damages," which do not defeat class certification. *Savidge*, 727 F. Supp. 3d at 706; *see also Smith v. Triad of Ala., LLC*, 2017 WL 1044692, at *14 (M.D. Ala. Mar. 17, 2017).

As to Plaintiffs' lost value of PII harm, Plaintiffs seek compensation for the value of the stolen PII. This harm does not differ depending on whether the information was stolen in another data breach. *See* Matolo Reb., ¶27 ████████████████████████████

### b.   Class Members' Injuries are Susceptible to Common Proof Based on Reliable Damages Models

Defendants contend that Plaintiffs' damages methodologies are flawed. Opp. at 23. But "nothing in Rule 23 'requires plaintiffs to prove predominance separately as to both liability and damages.'" *Cardenas v. Toyota Motor Corp.*, 2021 WL 5811741, at *13 (S.D. Fla. Dec. 6, 2021) (quoting *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016)). Instead, it is well settled that "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1260 (11th Cir. 2003). Defendants' arguments, therefore, do not require denial of certification.

### (1)   Plaintiffs' Damages Models Are Sound

Defendants' challenges to Plaintiffs' damages calculations are either irrelevant to class certification or based on misapplications of the law and facts.

Lost Value of PII. Plaintiffs contend that they should be compensated for the stolen PII's market value—much like a theory of harm based on conversion. Defendants insist Plaintiffs must

show diminished value, *i.e.*, that ███████████████████████████████████████ ██████████████████████████████████ because of the Data Breach. Orszag Rpt., ¶21; *see also* Opp. at 23 (citing diminished value cases). But numerous courts have rejected Defendants' argument. *See, e.g.*, *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020) (collecting cases).

Although Defendants identify a split in legal authority, the reasoning of courts that have rejected the diminished value approach is more persuasive. For example, in *Marriott*, the court reasoned that it should not "ignore what common sense compels it to acknowledge – the value that personal identifying information has in our increasingly digital economy" to join the "growing number of courts that have recognized the loss of this property value in data breach cases." 440 F. Supp. 3d at 462. The parties' experts agree that ████████████████████████████████████ ██████████████████ Orszag Rpt., ¶19. And Plaintiffs' expert opines █████████████████████ ████████████████████████████████ Matolo Decl., ¶¶44-66.[11]

<u>Identity Theft Protection Products</u>. Contrary to Defendants' assertions, Plaintiffs' expert *did not* ███████████████████████████████████████████████████████████████ ████████████████████████ Opp. at 26 (citing Ex. 5, Mott Dep. at 133:2-24). Instead, Mott testified it was ████████████████ whether there would be an increased risk in such circumstances. Opp., Ex. 5 (Mott Dep. at 133:21-24). In his rebuttal report, with the benefit of considering Defendants' hypothetical question, Mott opines ████████████████████████████████████████████████████

---

[11] Defendants criticize Matolo, claiming █████████████████████████████. Opp. at 24. ████ ██ *See generally* Matolo Reb. (rebutting Orszag's opinions). Regardless, these are disputes about inputs to Matolo's methodology, not the methodology itself, and are not a reason to deny class certification. *See, e.g.*, *In re Packaged Seafood Prods. Antitrust Litig.*, 332 F.R.D. 308, 343 (S.D. Cal. 2019) (finding "disagreement about the results of the model, rather than the viability of the model itself . . . do[] not defeat class certification) (collecting cases); *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 421 (M.D. Fla. 2018) (similar).

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████ *See* Mott Reb., ¶¶15-16.

Defendants contend that the need for identity theft protection products is not a legally cognizable damage, relying on older, non-binding cases that do not address Florida negligence law. Opp. at 26-27. The answer applies classwide and is thus inappropriate to consider at class certification. Nevertheless, cases applying Florida negligence law suggest identity theft protection product costs are cognizable damages. *Cf. Petito v. A.H. Robins Co.*, 750 So. 2d 103, 105 (Fla. Dist. Ct. App. 1999) (medical monitoring is cognizable under Florida law); *Shedd v. Sturdy Mem'l Hosp., Inc.*, No. 2173CV00498C, 2022 WL 1102524, at *6 (Mass. Super. Apr. 5, 2022) (medical monitoring is analogous to credit monitoring and cognizable under Massachusetts Law).

Defendants' remaining criticisms go to the weight of the expert testimony and are not a basis for denying class certification. For instance, Defendants' argument that Plaintiffs' methodology is arbitrary and has errors (Opp. at 27-29) is not an issue with the classwide method itself, but inputs into that methodology, which are not a basis for denying class certification. *Supra* note 11. Defendants' claim that Plaintiffs' ███████████████████████ arbitrary is not a basis to deny certification. Opp. at 27-28. ████████████████████████████████████ ██████████████████████████████████████████. *See* Mott Reb., ¶24. Defendants wrongly argue that credit freezes and other free techniques represent a reasonable alternative to paid services ████████████. They do not. *Id.*, ¶¶ 21-27; Frantz Reb., § VII. Defendants' expert Hart ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ Reply, Ex. 8 (Hart Dep. at 56:1-16, 57:4-7). Indeed, ████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████ Mott Decl., ¶43.

Defendants are also wrong that Plaintiffs' lifetime monitoring damages are inflated. Defendants' actuarial expert, Fedchak, ███████████████████████████████████████

███████ *See* Reply, Ex. 12 (Fedchak Dep. at 57:6-24) (admitting that ████████████████

███████████████████████████████████████████████.[12] Regardless, these are all inputs into Plaintiffs' methodology that can be adjusted, if needed, at the merits. None present individualized issues that predominate.

<u>Value of Time</u>. Defendants' argument that Matolo's methodology is flawed because it is "theoretical" ignores that the Supreme Court has condoned average time spent as a methodology common to a class. *See generally Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016); *Green-Cooper*, 73 F.4th at 894 (citing *Tyson Foods* and finding individualized issues did not predominate regarding time spent damages in data breach case). Plaintiffs need not, at this stage, determine the amount of time each Plaintiff or Class member spent remediating the consequences of the Data Breach. Instead, "[i]t is sufficient to note at this stage that there are methodologies available, and that Rule 23(c)(1) and (d) allow ample flexibility to deal with the individual damages issues that may develop." *In re Disposable Contact Lens Antitrust*, 329 F.R.D. at 421.

---

[12] *See also, e.g.*, *id.* at 42:23-44:18 [admitting that his ████████████████████████

████████████████████████████████████████████████████████

████ ; 64:5-11 [admitting he could ████████████████████████████

█████████████████████████████████████████████████]; 73:6-18, 74:6-25 [admitting he did not ████████████████████

███████████████████████████████]).

18

(2)     **Plaintiffs' Entitlement to Nominal Damages is
Capable of Class-Wide Determination**

Plaintiffs are at least entitled to nominal damages for the invasion of their privacy. *See Doe v. Beasley Broad. Grp., Inc.*, 105 So. 3d 1, 2 (Fla. Dist. Ct. App. 2012) (citing *Cason v. Baskin*, 155 Fla. 198 (1944)). If the Court determines that all Plaintiffs' non-statutory damages methodologies are uncommon to the Class, it should still certify a nominal damages class. Defendants' only argument is that nominal damages generally undermine class certification, an assertion unsupported by relevant legal authority. Opp. at 31.

Defendants cite cases where courts denied certification because class members would be required to opt out of potentially valuable claims in exchange for a nominal award. This argument fails because Plaintiffs seek to recover nominal damages as an alternative to actual damages. *See* Mot. at 3-4, 33.[13] Defendants' next argument, that nominal damages do not benefit the Class (Opp. at 31), contradicts the law. The Supreme Court "expressly rejected" the "flawed premise that nominal damages are purely symbolic, a mere judicial token that provides no actual benefit to the plaintiff." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 290 (2021). Courts have also lauded the importance of nominal damages to establish plaintiffs as the prevailing party under fee-shifting statutes that "provide[] an incentive for citizens to enforce certain laws by ensuring that they will be compensated for their efforts by the non-prevailing party." *Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1326 (D. Nev. 2014).

Although Defendants concede that an award of nominal damages can satisfy CAFA's amount-in-controversy threshold, they nonetheless contend that nominal damages are inconsistent with CAFA's purposes. Opp. at 32. Defendants rely on *Figeroa v. Sharper Image Corporation*, in

---

[13] Defendants' reliance on *Buetow v. A.L.S. Enters., Inc.*, is misplaced because that case addressed the "public benefit" element of a cause of action under Minnesota's private attorney general statute. 888 F. Supp. 2d 956, 961 (D. Minn. 2012).

which the court quoted a Senate Judiciary Committee's statement about abusive coupon settlements. 517 F. Supp. 2d 1292, 1328 (S.D. Fla. 2007). Nothing in this statement can fairly be read to disfavor certification of nominal damages classes upon a finding of liability, particularly because "[a]ggregating smaller claims that are not worthwhile to pursue individually is class action's raison d'être." *Attias v. CareFirst, Inc.*, 346 F.R.D. 1, 12 (D.D.C. 2024).

### 3. The Compensatory Damages Classes Satisfy Rule 23(a) because Plaintiffs are Adequate Class Representatives

Defendants do not dispute that the Class and Subclasses satisfy the numerosity, commonality, and typicality requirements of Rule 23(a).[14] Nor do Defendants argue that Class Counsel is inadequate. Defendants instead argue that eight of the sixteen Plaintiffs (the "Contested Plaintiffs")[15] are inadequate. Opp. at 35-40. But "[a] named plaintiff is [adequate] if he holds a basic understanding of the facts and legal theories underpinning the lawsuit and is willing to shoulder the burden of litigating on the class's behalf" and has no conflicts of interest. *De Ford v. Koutoulas,* 348 F.R.D. 724, 737 (M.D. Fla. 2025). The Contested Plaintiffs easily meet this standard.[16]

Each Contested Plaintiff received 

.[17] They

---

[14] Defendants touch on typicality and commonality while arguing that the Court should decline to certify a nationwide class (Opp. at 29), but these arguments are repackaged causation and manageability arguments, which are addressed in Sections II.A.2. and II.B.2.a.

[15] Plaintiffs Villaneuva, Rubio, Kassem, Saporta, Grossman, Arthur, Cunningham, and Wojciechowski.

[16] Defendants also argue Plaintiffs are inadequate because they lack standing or the Data Breach did not cause harm. Those issues are addressed above.

[17] Mot., Exs. 2-17; Reply, Exs. 13 (Rubio Dep. at 30:7-9, 99:18-22); 14 (Grossman Dep. at 32:13-23, 34:2-3); 15 (Kassem Dep. at 27:4-12); 16 (Villanueva Dep. at 29:25-30:20); 17 (Cunningham Dep. at 35:4-22); 18 (Wojciechowski Dep. at 29:11-23); 19 (Arthur Dep. at 29:6-13).



███████████████.[18] And they exp██████████████████████████████
████████████████████████████.[19] Thus, each Contested Plaintiff is adequate. *See,
e.g.*, *Keim v. ADF MidAtlantic, LLC*, 328 F.R.D. 668, 687-88 (S.D. Fla. 2018) (plaintiff adequate
who reviewed the complaint, participated in discovery, sat for a deposition, and understood their
role as a class representative); *Sos v. State Farm Mut. Auto. Ins. Co.*, 2019 WL 3854761, at *6
(M.D. Fla. May 2, 2019) (similar), *aff'd*, 2023 WL 5608014 (11th Cir. Aug. 30, 2023).

Defendants' adequacy challenges rely on cherry-picked deposition testimony. For
example, Defendants contend that Villanueva ███████████████████(Opp. at 36), but
she was █████████████████████. Reply, Ex. 16 (Villanueva Dep. at 33:19-
34:20).[20] Defendants claim Grossman is "███████████████████████" (Opp. at
38), but she was responding to ███████████████████████████████████
████████████████████████. Reply, Ex. 14 (Grossman Dep. at 28:2-
30:5). Defendants claim Kassem is inadequate because ████████████████████
██████████████ (Opp. at 37), but he testified that ████████████████████

---

[18] Reply, Exs. 20 (Saporta Dep. at 26:10-21, 27:13-28:4, 38:7-15, 203:15-204:4, 213:14-21); 13 (Rubio Dep. at 25:3-17, 202:11-13, 202:16-19); 14 (Grossman Dep. at 31:10-19, 61:5-24, 76:11-77:8); 15 (Kassem Dep. at 83:19-84:5, 138:7-12, 194:9-195:5, 198:1-14); 16 (Villanueva Dep. at 101:1-13, 175:10-19, 237:2-10); 17 (Cunningham Dep. at 32:5-33:24; 25:2-27:7); 18 (Wojciechowski Dep. at 61:25-62:14, 140:6-22, 178:18-20, 192:15-18); 19 (Arthur Dep. at 24:2-17, 121:13-16).
[19] Reply Exs. 13 (Rubio Dep. at 22:13-23, 23:1-2, 31:9-16); 14 (Grossman Dep. at 25:6-19); 15 (Kassem Dep. at 142:3-14); 16 (Villanueva Dep. at 30:21-23, 31:3-9, 32:3-11); 17 (Cunningham Dep. at 20:23-25, 21:13-22, 28:7-29:1, 30:4-11); 18 (Wojciechowski Dep. at 20:12-15, 20:19-21:2); 19 (Arthur Dep. at 18:14-17, 20:4-18); 20 (Saporta Dep. at 138:12-14, 211:21-212:2, 221:19-222:4).
[20] Defendants also claim that Villanueva ████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████. Reply, Ex. 16 (Villanueva Dep. at 90:9-91:9, 101:1-13).

████████████████████████████████████████████████████████.” Reply, Ex. 15 (Kassem

Dep. at 136:20-21, 144:8-14).[21]

Defendants' concerns with certain Contested Plaintiffs' understanding of the facts and legal

issues of the case are equally unavailing. "A lack of detailed factual knowledge about the case or

a lack of understanding regarding the legal theories . . . does not preclude class certification in

[this] complex case." *Cooper v. Pac. Life Ins. Co.*, 229 F.R.D. 245, 258 (S.D. Ga. 2005). Each

testified accurately concerning the fundamental factual issues in the case: their PII was stolen in

the Data Breach.[22] Defendants focus on Plaintiffs' understanding of their negligence, CCPA, or

breach of contract claims, but these are matters on which Plaintiffs are "expected to rely on [their]

counsel for advice and guidance." *In re Wells Real Est. Inv. Tr., Inc. Sec. Litig.*, 2009 WL

10688777, at *5 (N.D. Ga. Sept. 16, 2009).[23]

Finally, Defendants' concerns with certain Contested Plaintiffs' credibility are unfounded;

they largely involve immaterial discrepancies between deposition testimony and interrogatory

responses. *See Carollo v. United Cap. Corp.*, 528 F. Supp. 3d 37, 56 (N.D.N.Y. 2021) (plaintiffs

adequate despite discrepancies between deposition testimony and interrogatory responses); *see

also Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 579 (M.D. Fla. 2006) (finding memory

---

[21] Defendants attempted to discourage Kassem from ████████████████████████████████████
████████████████████████████████████. Reply, Ex. 15 (Kassem Dep. at 145:19-146:7).
[22] *See, e.g.*, Reply, Exs. 13 (Rubio Dep. at 62:4-11); 14 (Grossman Dep. at 34:2-12, 56:11-16); 15
(Kassem Dep. at 25:24-26:3, 51:18-20, 53:3-10); 16 (Villanueva Dep. at 63:21-64:1); 17
(Cunningham Dep. at 159:20-160:2); 18 (Wojciechowski Dep. at 50:15-51:13); 19 (Arthur Dep.
at 81:8-24); 20 (Saporta Dep. at 23:5-23).
[23] *See, e.g.*, Reply, Exs. 17 (Cunningham Dep. at 69:12-71:17, 75:6-77:17 [testimony concerning
████████████████████████████████████████████████████████ 15 (Kassem Dep. at
49:2-6, 195:10-11, 19, 199:1-200:23 [testimony concerning ████████████████████
████████████████████]); 16 (Villanueva Dep. at 170:7-172:14 [asking
complex ████████████████████████████]); 20 (Saporta Dep. at 163:2-11, 165:15-
20 [similar]); 14 (Grossman Dep. at 112:17-113:8 [similar], 197:22-198:12 [questions concerning
████████████████]); 13 (Rubio Dep. at 164:15-165:10 [similar]).

issues did not create credibility concerns). For example, Villanueva testified that she ██████████

████████████████████████████████████████████████████████████████████████████

████████████████" Reply, Ex. 16 (Villanueva Dep. at 101:1-13, 175:10-19, 237:2-10,

237:11-20). That discovery suggests certain Plaintiffs need to supplement their written discovery

responses before the close of fact discovery is not a basis to find a plaintiff inadequate. *Bovee v.*

*Coopers & Lybrand*, 216 F.R.D. 596, 616 (S.D. Ohio 2003) (finding "incongruity in the discovery

answers and deposition testimony" did not "undermine[] those plaintiffs' credibility to the point

that it makes them inadequate class representatives").[24]

Defendants cite testimony from Plaintiffs Cunningham, Rubio, and Wojciechowski,

suggesting these plaintiffs ███████████████ (Opp. at 36-37, 39-40), but these selective quotes

███████████████████████████. For example, Cunningham was █████████████

██████████████████████████████████ Reply, Ex. 17 (Cunningham Dep. at

75:6-78:2). He was then asked ████████████████████████████████████████████

████████████████████████████ *Id.* at 78:3-5. Then he was asked █████████

████████████████████████████████████████████████████████████████████

████████████████████████████ (*id.* at 78:9-13), which is ██████████████

---

[24] The cases Defendants rely on that found plaintiffs were inadequate because of credibility
concerns are inapposite. *See Pines Nursing Home (77), Inc. v. Rehabcare Grp., Inc.*, 2014 WL
12531512 at *3-4 (S.D. Fla. June 20, 2014) (corporate plaintiff deemed inadequate because it had
significant regulatory issues and its owners were criminally charged with Medicaid fraud);
*Johansen v. Bluegreen Vacations Unlimited, Inc.*, 2021 WL 4973593 at *5-6 (S.D. Fla Sept. 30,
2021) (plaintiff had a history of filing similar lawsuits and admitted to using deceptive tactics and
providing false information).

██████████████████████████████████████████████████████. Rubio[25]

and Wojciechowski's[26] testimony reflects similar confusion.

    **C.**    **The Court Should Certify Plaintiffs' Declaratory and Injunctive Relief Classes Under Rule 23(b)(2)**

    Defendants' arguments opposing Plaintiffs' nationwide Class and state Subclasses seeking injunctive and declaratory relief (Opp. at 30-34) do not persuade. First, Plaintiffs face a "sufficiently imminent and substantial" risk of harm necessary to pursue injunctive relief. *TransUnion*, 594 U.S. at 435; Mot. at 37-39. ████████████████████████████████

████████████████████. *See* Reply, Ex. 21 (Buitrago Dep. at 94:3-95:23). Thus, the information remains at risk from future data breaches if it is not properly secured. Whether it is properly secured is a common, classwide issue that justifies 23(b)(2) certification. ████████████████████

████████████████████████████████████. Madnick Reb., ¶¶ 3, 22-47.

    Second, Defendants claim that the Court cannot certify a nationwide class seeking injunctive relief under FDUTPA because Florida does not have the "most significant relationship." Opp. at 30. Defendants took the opposite position at the motion to dismiss, arguing "Florida clearly has the 'most significant relationship' to Plaintiffs' negligence claims . . . because Florida is where

---

[25] *See* Reply, Ex. 13 (Rubio Dep. at 38:8-19 [███████████████████████████████████████████████████████], 112:14-113:9 [██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *see also* 16:19-17:19 [Rubio is a ████████████████████, 201:20-202:13 [Rubio ████████████████████████████]).
[26] *See* Reply, Ex. 18 (Wojciechowski Dep. at 61:3-62:9 [confirming that ███████████████████████████████████████████████████████████████████████████, 179:9-18 ██████████████████████████████████████████████████████████████████—a sentence that contains double negatives and legal terminology], 140:6-145:2 [similar regarding the complaint]).

the alleged injurious conduct occurred, where two of the three Defendants have their principal places of business, and where Defendants' computer systems reside." See ECF No. 59 (MTD) at 6 n.1. The Court should reject Defendants' duplicitous argument.

Finally, Defendants' challenges to Plaintiff Wojciechowski are wrong. Contrary to Defendants' assertions, Wojciechowski ████████████ where his primary home is.[27] Regardless, FDUTPA has no Florida residency requirement. *Felice v. Invicta Watch Co. of Am., Inc.*, No. 16-CV-62772-RLR, 2017 WL 3336715, at *3 (S.D. Fla. Aug. 4, 2017). And Wojciechowski did not "abandon[]" his injunctive relief claims,[28] nor is he willing to "jettison" his damages claims by seeking certification of injunctive relief claims *in the alternative*.

### D.  Defendants' Do Not Dispute That the Court Can Certify a Rule 23(c)(4) Issues Class

Defendants do not dispute that the Court may certify an issues class under Rule 23(c)(4) and have offered no argument why the Court should not do so, thus conceding Plaintiffs' argument. *See United States v. Robles*, 408 F.3d 1324, 1326 (11th Cir. 2005) ("Issues not raised in a party's initial brief will be deemed waived."). Defendants have therefore abandoned any opposition to certification of a Rule 23(c)(4) class.

## III.  CONCLUSION

For the foregoing reasons and the reasons stated in Plaintiffs' motion for class certification, the Court should certify the Class and Subclasses under Rule 23(b)(3) or, alternatively, Rule 23(c)(4), and under Rule 23(b)(2) for injunctive and declaratory relief. The Court should also appoint Plaintiffs as Class representatives and Proposed Class Counsel as Class Counsel.

---

[27] *See* Reply, Ex. 18 (Wojciechowski Dep. at 10:14-11:9).

[28] Am. Compl. ¶874 ("Plaintiffs and Class Members seek relief under the FDUTPA, Fla. Stat. §§ 501.201, *et seq.*, *including, but not limited to,* a declaratory judgment that Defendants' actions and/or practices violate the FDUTPA.") (emphasis added); *id.*, p. 219-21 (seeking injunctive relief in Prayer for Relief).

Dated: July 15, 2025                   Respectfully Submitted,

                                       */s/ John A. Yanchunis*

                                       JOHN A. YANCHUNIS (FBN 324681)
                                       RYAN McGEE (FBN 64957)
                                       RON PODOLNY (pro hac vice)
                                       **MORGAN & MORGAN COMPLEX**
                                       **LITIGATION GROUP**
                                       201 N. Franklin Street, 7th Floor
                                       Tampa, Florida 33602
                                       Telephone: (813) 223-5505
                                       jyanchunis@ForThePeople.com
                                       rmcgee@ForThePeople.com
                                       rpodolny@ForThePeople.com

                                       *Chair, Plaintiffs' Executive Committee*

                                       JULIE BRAMAN KANE (FBN 980277)
                                       **COLSON HICKS EIDSON**
                                       255 Alhambra Circle – Penthouse
                                       Coral Gables, Florida 33134
                                       Telephone: (305) 476-7400
                                       Facsimile: (305) 476-7444
                                       julie@colson.com

                                       *Plaintiffs' Liaison Counsel*

                                       ADAM E. POLK (*pro hac vice*)
                                       SIMON GRILLE (*pro hac vice*)
                                       KRISTEN PALUMBO (*pro hac vice*)
                                       MIKAELA BOCK (*pro hac vice*)
                                       KYLE P. QUACKENBUSH (*pro hac vice*)
                                       **GIRARD SHARP LLP**
                                       601 California Street, Suite 1400
                                       San Francisco, CA 94108
                                       Telephone: (415) 981-4800
                                       apolk@girardsharp.com
                                       sgrille@girardsharp.com
                                       kpalumbo@girardsharp.com
                                       mbock@girardsharp.com
                                       kquackenbush@girardsharp.com

                                       GARY M. KLINGER (*pro hac vice*)
                                       **MILBERG COLEMAN BRYSON**
                                       **PHILLIPS GROSSMAN, PLLC**
                                       227 Monroe Street, Suite 2100

Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

STUART A. DAVIDSON (FBN 0084824)
DOROTHY P. ANTULLIS (FBN 890421)
NICOLLE B. BRITO (FBN 43399)
**ROBBINS GELLER RUDMAN
& DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364
sdavidson@rgrdlaw.com
dantullis@rgrdlaw.com
nbrito@rgrdlaw.com

M. ANDERSON BERRY (*pro hac vice*)
GREGORY HAROUTUNIAN (*pro hac vice*)
**CLAYEO C. ARNOLD,
A PROFESSIONAL CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com

*Members, Plaintiffs' Executive Committee*

DAVID K. LIETZ (*pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

RYAN D. MAXEY (FBN 59283)
**MAXEY LAW FIRM, P.A.**
107 North 11th Street, Suite 402
Tampa, Florida 33602
Telephone: (813) 448-1125
ryan@maxeyfirm.com
TERRY R. COATES (*pro hac vice*)
DYLAN J. GOULD  (*pro hac vice*)

27

**MARKOVITS, STOCK &
DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
tcoates@msdlegal.com
dgould@msdlegal.com

LORI G. FELDMAN (*pro hac vice*)
**GEORGE GESTEN
MCDONALD, PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Telephone: (917) 983-9321
Facsimile: (888) 421-4173
lfeldman@4-Justice.com

JOSEPH M. LYON (*pro hac vice*)
**THE LYON FIRM, LLC**
2754 Erie Avenue
Cincinnati, Ohio 45208
Telephone: (513) 381-2333
jlyon@thelyonfirm.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 15th day of July, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served today on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Julie Braman Kane*

JULIE BRAMAN KANE