**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Master File No. 1:22-cv-20955-DPG/EGT**

**In re LAKEVIEW LOAN SERVICING**
**DATA BREACH LITIGATION**                     **CLASS ACTION**

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**
**AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION AND FACTUAL BACKGROUND ...................................................1

II.     PROCEDURAL BACKGROUND..............................................................................................2

III.    THE SETTLEMENT TERMS...................................................................................................6

       A.  Definition of the Settlement Class ...............................................................................7

       B.  Benefits to the Settlement Class ...................................................................................8

             1.  Reimbursement For Out-of-Pocket Losses ....................................................8

             2.  *Pro Rata* Cash Payments as Compensation for
                Valid Claims as Described in the Settlement Agreement.......................................8

             3.  Identity Theft Monitoring ..............................................................................9

       C.  Notice Program ............................................................................................................9

       D.  Claims, Opt-Outs, Objections, and Exclusions...........................................................10

             1.  Claims ..........................................................................................................10

             2.  Exclusions ....................................................................................................10

             3.  Objections ....................................................................................................10

       E.  Attorneys' Fees and Expenses ...................................................................................11

       F.  Service Awards ...........................................................................................................11

       G.  Mutual Release............................................................................................................14

IV.    ARGUMENT AND AUTHORITIES........................................................................................14

       A.  Legal Standard for Preliminary Approval...................................................................14

       B.  The Settlement Satisfies Rule 23(e) Criteria for Preliminary Approval.....................15

             1.  Plaintiffs and Their Counsel Have Adequately Represented
                the Class.......................................................................................................15

             2.  The Settlement Is the Product of Good-Faith, Informed, and
                Arm's-Length Negotiations .........................................................................16

3.  The Settlement Provides Significant Relief to Class Members ...................... 17

    a.  The Settlement Mitigates the Costs, Risks, and Delays of Continued Litigation. ......................................................................... 18

    b.  The Distribution of Settlement Benefits Is Effective ......................... 20

    c.  Class Counsel's Application for Attorney's Fees and Expenses Will Be Made Separately and Has Not Been Previously Negotiated ......... 20

    d.  The Settlement Agreement Represents the Full Agreement of the Parties ............................................................................................. 20

4.  The Settlement Treats All Class Members Equitably ..................................... 21

C.  Certification of the Settlement Class Is Appropriate .................................................... 22

    1.  The Settlement Class Meets the Requirements of Rule 23(a) ....................... 22

    2.  The Settlement Class Meets the Requirements of Rule 23(b) ....................... 25

    3.  The Proposed Class is Adequately Defined and Clearly Ascertainable ......... 28

V.  CONCLUSION ..................................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                          **<u>Page(s)</u>**

*Ass'n for Disabled Americans, Inc. v. Motiva Ent., LLC*,
    No. 99-0580, 1999 WL 35815520 (S.D. Fla. Oct. 19, 1999)........................................................ 23

*Altamonte Springs Imaging, L.C. v. State Farm Mutual Automobile Insurance Co*
    12 So. 3d 850, 857 (Fla. 3d DCA 2009) ....................................................................13

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ........................................................27

*Arnold v. State Farm Fire & Cas. Co.,* No.
    2:17-CV-148-TFM-C, 2023 WL 7308098 (S.D. Ala. Nov. 6, 2023) ...............................12

*Ault v. Walt Disney World Co.*,
    692 F.3d 1212 (11th Cir. 2012)..................................................................................24

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ...................................................................................14

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988)................................................................................17

*Borcea v. Carnival Corp.*,
    238 F.R.D. 664 (S.D. Fla. 2006)................................................................................22

*Bouton v. Ocean Prop., Ltd.*,
    322 F.R.D. 683 (S.D. Fla. 2017)................................................................................24

*Briggs v. North Highland Co.*,
    No. 1:22-cv-03640 (N.D. Ga. Nov. 27, 2024) .............................................................14

*Busby v. JRHBW Realty, Inc.*,
    513 F.3d 1314 (11th Cir. 2008) .................................................................................15

*Cain v. CGM, L.L.C.*,
    No. 1:23-CV-02604-SEG, 2025 WL 2814398 (N.D. Ga. Mar. 10, 2025) .......................13

*Carter v. Forjas Taurus, S.A.*,
    701 F. App'x 759 (11th Cir. 2017) ............................................................................20

*Carriuolo v. Gen. Motors Co.*,
    823 F.3d 977 (11th Cir. 2016)...................................................................................26

*Cherry v. Dometic Corp.*,
    986 F.3d 1296 (11th Cir. 2021) .................................................................................22

*Cheryl Gaston v. FabFitFun, Inc.*,
   No. 2:20-CV-09534-RGK-E, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) ....................19

*Corona-Cantu v. Ingo Money Inc.*,
   No. 1:24-cv-03023-MHC (N.D. Ga. June 17, 2025) ........................................................13

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ...............................................................................16, 18

*Cox v. Am. Cast Iron Pipe Co.*,
   784 F.2d 1546 (11th Cir. 1986) .......................................................................................23

*Ebert v. PRIX Global*,
   No. 1:23-cv-04233-TWT (N.D. Ga. Jan. 23, 2025)..........................................................14

*Erie R.R. Co. v. Tompkins*,
   58 S. Ct. 817 (1938).........................................................................................................13

*Fabricant v. Sears Roebuck*,
   202 F.R.D. 310 (S.D. Fla. 2001)......................................................................................25

*Fox v. Iowa Health Sys.*,
   No. 3:18-cv-00327, 2021 WL 826741 (W.D. Wis. Mar. 4, 2021).....................................19

*Fulton-Green v. Accolade, Inc.*,
   No. 18-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ...............................................19

*Griffin v. Dugger*,
   823 F.2d 1476 (11th Cir. 1987)........................................................................................14

*Harbour v. California Health & Wellness Plan*,
   No. 5:21-CV-03322-EJD, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024)............................17

*Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOX),
   2022 WL 2155117 (C.D. Cal. Feb. 22, 2022)...................................................................19

*Hines v. Widnall*,
   334 F.3d 1253 (11th Cir. 2003) ........................................................................................24

*Holman v. Student Loan Xpress, Inc.*,
   No. 8:08-cv-305-T-23MAP, 2009 WL 4015573 (M.D. Fla. Nov. 19, 2009).............25, 26

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) .....................................................................................26

iv

*In re Blue Cross Blue Shield Antitrust Litig.*,
    85 F.4th 1070 (11th Cir. 2023) ....................................................................21

*In re CorrectCare Data Breach Litig.*,
    No. CV 5:22-319-DCR, 2024 WL 1403075 (E.D. Ky. Apr. 1, 2024)..............................18

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    999 F.3d 1247 (11th Cir. 2021) ....................................................................12

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    293 F.R.D. 21 (D. Me. 2013)........................................................................19

*In re Home Depot Inc.*,
    931 F.3d 1065 (11th Cir. 2019) ...............................................................20, 21

*In re Lakeview Loan Servicing Data Breach Litig.*,
    No. 1:22-cv-20955-GAYLES/TORRES (S.D. Fla.).........................................11

*In Re: Mednax Servs., Inc., Customer Data Sec. Litig.*,
    No. 21-MD-02994-RAR (S.D. Fla.) ............................................................18

*In re Parkmobile*,
    No. 1:21-cv-02182-SCJ (N.D. Ga. May 6, 2025) ............................................13

*In re U.S. Oil and Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) .....................................................................14

*Johnson v. NPAS Solutions, LLC*,
    975 F.3d 1244 (11th Cir. 2020) ...................................................................12

*Kilgo v. Bowman Trans.*,
    789 F.2d 859 (11th Cir. 1986) .....................................................................23

*Kirkpatrick v. J.C. Bradford & Co.*,
    827 F.2d 718 (11th Cir. 1987) .....................................................................25

*Koenig v. Lime Crime, Inc.*,
    No. CV 16-503 PSG (JEMX), 2018 WL 11358228 (C.D. Cal. Apr. 2, 2018) .................19

*Kornberg v. Carnival Cruise Lines, Inc.*,
    741 F.2d 1332 (11th Cir. 1984) ...................................................................24

*Lazarus v. Lakeview Loan Servicing, LLC*,
    No. 25-CV-018437 (Cal. Super. Ct., Sacramento County) ...........................3, 27

*Lipuma v. Am. Express Co.,*
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) ................................................................16, 17, 19

*Little v. T-Mobile USA, Inc.,*
    691 F.3d 1302 (11th Cir. 2012)......................................................................................22, 28

*Mitchell v. Allstate Vehicle and Prop. Ins.,*
    No. 2:21-cv-347, 2023 WL 5004064 (S.D. Ala. Aug. 3, 2023) ........................................12

*Mohamed v. American Motor Co., LLC,*
    320 F.R.D. 301 (S.D. Fla. 2017)......................................................................................27

*Murray v. Auslander,*
    244 F.3d 807 (11th Cir. 2001) ..........................................................................................24

*Prado-Steiman ex rel Prado v. Bush,*
    221 F.3d 1266 (11th Cir. 2000) ........................................................................................22

*Roth v. GEICO Gen. Ins. Co.,*
    No. 16-62942-CIV, 2020 WL 10818393 (S.D. Fla. Oct. 8, 2020) ...................................13

*Sanchez v. State Farm Mut. Auto. Ins. Co.,*
    No. 3:21CV-00372-TJC-LLL, 2025 WL 2460560 (M.D. Fla. Aug. 26, 2025)...............13

*South v. Progressive Select Ins. Co.,*
    No. 19-CV-21760-WPD, 2023 WL 2733548 (S.D. Fla. Mar. 21, 2023) ..........................13

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016).........................................................................................................14

*Theus v. Brinker Int'l, Inc.,*
    2025 WL 1786346 (June 27, 2025) ..................................................................................19

*Vega v. T-Mobile USA, Inc.,*
    564 F.3d 1256 (11th Cir. 2009) ........................................................................................23

*Venerus v. Avis Budget Car Rental, LLC,*
    674 F. Supp. 3d 1107 (M.D. Fla. 2023)......................................................................12, 13

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011).....................................................................................................23

*Wang v. Corp. of Mercer Univ.,*
    No. 5:23-CV-00193-TES, 2025 WL 1136132 (M.D. Ga. Apr. 17, 2025)........................13

*Wenston Desue v. 20/20 Eye Care Network, Inc., et al.,*
    No. 21-CV-61275-RAR (S.D. Fla.) ..................................................................................18

*Williams v. Mohawk Indus., Inc.*,
    568 F.3d 1350 (11th Cir. 2009) ...................................................................................23

*Wilson v. EverBank*,
    2016 WL 457011 (S.D. Fla. Feb. 3, 2016) ..................................................................17

## <u>STATUTES</u>

*California Consumer Privacy Act*
    Cal. Civ. Code § 1798.100 *et seq.*.................................................................................3
    Cal. Civ. Code § 1798.80 *et seq.*...................................................................................3

*Florida*
    Fla. Stat. § 501.204 *et seq.* ............................................................................................3

*Illinois*
    815 Ill. Comp. Stat. Ann. 505 .......................................................................................3

*New York*
    N.Y. Gen. Bus. Law § 349.............................................................................................3

*Washington*
    RCW Ch. 19.86 *et seq.*..................................................................................................3

## <u>RULES</u>

Fed R. of Civ. P. 23.............................................................................................*Passim*

Fla. R. Civ. P. 1.310(b)(6) ...........................................................................................4

## <u>OTHER AUTHORITY</u>

Manual for Complex Litigation (Fourth) § 13.14 (Fed. Jud. Ctr. 2004)......................16

Newberg on Class Actions § 11:53 at 167 (4th ed. 2002) ........................................9, 21

Plaintiffs, individually and on behalf of the putative class, move pursuant to Federal Rule of Civil Procedure ("Rule") 23(e) for an Order: (i) granting preliminary approval of the proposed Settlement; (ii) preliminarily certifying a class for purposes of Settlement; (iii) appointing Plaintiffs as the Class Representatives; (iv) appointing John Yanchunis, Julie Braman Kane, M. Anderson Berry, Stuart Davidson, Gary Klinger, and Adam Polk as Class Counsel; (v) approving the Parties' proposed form and method of giving notice of the pendency of this action and the Settlement to the Settlement Class; (vi) directing notice to be given to the Settlement Class; (vii) scheduling a hearing at which time the Court will consider the request for final approval of the Settlement Agreement and request for attorneys' fees, expenses, and service awards; and (viii) granting such other and further relief as the Court deems proper.[1]

## I.      INTRODUCTION AND FACTUAL BACKGROUND

This is a proposed class action arising out of a breach of Defendants Bayview Asset Management LLC ("Bayview"), Lakeview Loan Servicing, LLC ("Lakeview"), Pingora Loan Servicing, LLC ("Pingora"), and Community Loan Servicing, LLC's ("Community Loan") (collectively, "Lakeview" or "Defendants") systems.[2]  Defendants discovered the security incident on December 6, 2021, when they became aware of unauthorized access to their systems and that information, including Plaintiffs' and class members' personally identifiable information ("PII"), may have been exfiltrated. Defendants determined that the PII of over 5,800,000 individuals may

---

[1]   Defendants do not oppose the relief sought by this Motion for Preliminary Approval of Class Action Settlement (the "Motion") and agree that the Court should grant preliminary approval of the settlement and allow notice to issue to the Settlement Class.  By not opposing this relief, Defendants do not make any factual concessions and do not concede the factual basis for any claim and deny liability. The language in this Motion, including the description of proceedings, as well as legal and factual arguments, is Plaintiffs', and Defendants may disagree with certain of those characterizations and descriptions and reserve all rights to contest same.

[2]   Unless otherwise noted, all capitalized terms used herein are defined in the parties' Stipulation of Class Action Settlement (Settlement Agreement or SA) dated January 27, 2026, *see* Exhibit 1.

have been accessed by cybercriminals.

Thereafter, multiple plaintiffs filed class action complaints against Defendants in multiple state and federal jurisdictions, the first of which was filed on March 29, 2022. Each was transferred to this jurisdiction and consolidated in this Litigation.

Since these cases were initiated, and following appointment of interim class counsel on June 16, 2022, the Parties have vigorously litigated this Litigation, with a total of thirty-three depositions, over 564,063 pages of documents being produced, multiple rounds of dispositive motion practice, and full briefing of class certification.

Throughout the case, the Parties have separately explored resolutions, attending three mediation sessions with three different mediators over the life of the case. On November 12, 2025, after full briefing of Plaintiffs' class certification motion, the Parties reached an agreement in principle to resolve this action for $26,000,000. The resolution was achieved with the assistance of The Honorable Diane Welsh (Ret.), one of the most experienced privacy mediators in the country. The $26,000,000 result, was negotiated on a fully developed record, falls in the upper range of data breach settlements and is an outstanding result considering the considerable risks of continued litigation.

Plaintiffs respectfully request that the Court certify the Settlement Class, and preliminarily approve the Settlement Agreement, so that notice may be disseminated and Settlement Class Members can evaluate the Settlement Agreement.

## II.     PROCEDURAL BACKGROUND

On August 1, 2022, Plaintiffs, by and through interim class counsel, filed their Consolidated Class Action Complaint, which included various state common law and statutory consumer protection and privacy claims against all Defendants except Community Loan, including claims for

negligence and violation of the California Consumer Privacy Act ("CCPA"). (*See* ECF No. 47.) On September 1, 2022, Defendants filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) (*see* ECF No. 59), which the Court granted, in part, without prejudice. (*See* ECF No. 144.)

On March 28, 2024, Plaintiffs filed the operative Amended Consolidated Class Action Complaint ("Complaint") against all Defendants. (*See* ECF No. 187.) Defendants moved to dismiss under Rule 12(b)(6) (*see* ECF No. 201) and separately moved to strike the CCPA claim brought by certain Plaintiffs on behalf of a California subclass (ECF No. 209).  On March 20, 2025, the Court denied the motion to strike without prejudice. (*See* ECF No. 269.) And, on March 31, 2025, following oral argument, the Court granted in part and denied in part Defendants' motion to dismiss. (*See* ECF No. 283.) The remaining claims of the Complaint after this decision consisted of negligence and claims brought by certain Plaintiffs on behalf of state subclasses for violation of the CCPA, Cal. Civ. Code § 1798.100, *et seq.*, the California Customer Records Act, Cal. Civ. Code § 1798.80, *et seq*., the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505, *et seq*., New York General Business Law § 349, the Washington Consumer Protection Act, RCW Ch. 19.86, *et seq.*, and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* (for injunctive relief only).  Also pending settlement herewith is a California state court complaint styled *Lazarus v. Lakeview Loan Servicing, LLC*, No. 25-CV-018437 (Cal. Super. Ct., Sacramento County). The Complaints each allege that Defendants failed to sufficiently protect PII from unauthorized access. (*See* ECF No. 187.)

Substantial discovery occurred from October 21, 2022 to October 31, 2025. Document discovery included, among other things, searches for and collections of electronically stored information by Defendants and Plaintiffs; service subpoenas for documents on third parties that contracted with Defendants in connection with their information security and the Incident; five sets

of document requests, five sets of interrogatories, and one set of requests for admission served on Defendants; and two sets of document requests, two sets of interrogatories, and one set of requests for admission served on Plaintiffs. All told, Defendants and third parties produced, and Plaintiffs reviewed, a total of 517,135 pages of documents; Plaintiffs produced, and Defendants reviewed, 46,928 pages of documents.

The Parties also took numerous depositions. Specifically, Plaintiffs took 17 fact and Rule 30(b)(6) witness depositions, and Defendants took the depositions of 16 Plaintiffs.

During the Litigation, the Parties negotiated dozens of discovery-related disputes. They presented nine discovery disputes for hearing to Magistrate Judge Torres and appeared before Judge Torres on five occasions. (*See* ECF Nos. 132, 191, 254, 266, 307.)

On March 31, 2025, Plaintiffs filed their motion for class certification, along with five expert reports regarding the Incident, Defendants' data security practices, damages, and the risk of harm to alleged victims of the Incident. (*See* ECF No. 282.) Defendants opposed class certification on May 30, 2025, and filed three reports from their own experts and two non-expert declarations. (*See* ECF No. 294.) The Parties also each moved to strike the opposing Party's experts under *Daubert* and Plaintiffs moved to exclude Defendants' declarants. (*See* ECF Nos. 311, 313, 334–35, 342, 346.) As of October 24, 2025, Plaintiffs' motion for class certification, the Parties' *Daubert* motions, and Plaintiffs' motions to exclude Defendants' declarants were fully briefed and awaiting hearing or decision.

Throughout this case, the Parties have engaged in numerous discussions concerning a potential resolution. The Parties engaged in early mediation on April 17, 2023, in Miami, with Rodney Max of Upchurch Watson White & Max. While the Parties were unable to reach agreement

during this first mediation, they agreed to keep the lines of communication open to further discussions.

The Parties engaged in a second mediation on December 9, 2024, in Miami, with the Honorable Scott Silverman (ret.), but again were unable to reach agreement. Once class certification, *Daubert* motions, and Plaintiffs' motions to exclude Defendants' declarants were fully briefed, the Parties agreed to attend a third mediation on November 12, 2025, in Philadelphia, with the Honorable Diane Welsh (ret.), a former United States Magistrate Judge and a highly experienced mediator in data breach class actions. After a full day of mediation with Judge Welsh, the Parties were able to reach an agreement in principle on the Settlement of this Litigation that provides substantial benefits to the Settlement Class. Specifically, the Settlement provides monetary relief from which the following cash benefits will be offered to Settlement Class Members as compensation for valid claims: (i) a non-reversionary Settlement Fund of twenty-six million Dollars ($26,000,000) (SA, ¶ 1.43); (ii) reimbursement of Out-of-Pocket Losses up to $5,000.00 per person for documented out-of-pocket expenses actually and reasonably incurred that are fairly traceable to the Incident (*id*. ¶ 3.2(a)); (iii) two forms of *Pro Rata* Cash Payments. The first form of *Pro Rata* Cash Payment is for California Settlement Class Members, and consists of two *pro rata* Shares of the Remainder Settlement Fund for each Settlement Class Member residing in California at the time of the Incident who submits a Valid Claim. The second form of *Pro Rata* Cash Payment is for all other Settlement Class Members who are not eligible to receive the California *Pro Rata* Cash Payment and who submit a valid claim and consists of a single pro rata Share of the Remainder Settlement Fund (*id*. ¶ 1.33); and (iv) Service Awards to the Class Representatives in an amount to be approved by the Court (*id*. ¶ 9.5). In addition, all Settlement Class Members are eligible to receive one year of identity theft monitoring services in the form of CyEx's Financial Shield Total service, a state-of-the-art identity

theft monitoring product designed to proactively protect against identity theft. Financial Shield Total includes credit monitoring with three credit bureaus, financial transaction monitoring, monthly credit score and tracker, fictitious identity monitoring, bank and financial account monitoring, address change monitoring, home title monitoring, dark web monitoring, real-time authentication alerts, high-risk transaction monitoring, lost wallet protection, $1,000,000 of insurance coverage for identity theft with no deductible, security freeze assist, victim assistance, and customer support. The one-year period will commence when Settlement Class Members use their activation codes. All costs of Monitoring Services will be paid out of the Settlement Fund. As of January 2026, the retail reference value of Financial Shield Total is $32.95 per month (*id*. ¶ 3.5). This is an outstanding result for Plaintiffs and the Settlement Class considering the challenges faced and the risks of protracted litigation.

As further discussed below, the Settlement falls well within the range of judicially approved settlements and includes a comprehensive notice plan. The terms of the Settlement reached are memorialized in the Settlement Agreement, which was negotiated at arm's-length, in good faith and without collusion, by capable and experienced counsel, with full knowledge of the facts, the law, and the inherent risks in the Litigation, and with the active involvement of the Plaintiffs and Defendants. (*Id.*) Plaintiffs and Defendants proffer that preliminary approval of the proposed class action settlement is warranted and now seek preliminary approval of the Settlement Agreement.

## III.   THE SETTLEMENT TERMS

The settlement negotiated on behalf of the Settlement Class establishes relief that include as compensation for valid claims: (i) a non-reversionary Settlement Fund of twenty-six million Dollars ($26,000,000) *id,* ¶ 1.43); (ii) reimbursement of Out-of-Pocket Losses up to $5,000.00 per person for documented out-of-pocket expenses actually and reasonably incurred that are fairly traceable to the

Incident (*id*. ¶ 3.2(a)); (iii) two forms of *pro rata* Cash Payments.  The first form of Pro Rata Cash Payment is for California Settlement Class Members, and consists of two *pro rata* Shares of the Remainder Settlement Fund for each Settlement Class Member residing in California at the time of the Incident who submits a Valid Claim. The second form of *pro rata* Cash Payment is for all other Settlement Class Members who are not eligible to receive the California Pro Rata Cash Payment and who submit a valid claim, and consists of a single pro rata Share of the Remainder Settlement Fund (*id*. ¶ 1.33); and (iv) Service Awards to the Class Representatives in an amount to be approved by the Court (*id*. ¶ 9.5).  In addition, all Settlement Class Members are eligible to receive one year of identity theft monitoring services in the form of CyEx's Financial Shield Total service, a state-of-the-art identity theft monitoring product designed to proactively protect against identity theft. Financial Shield Total includes credit monitoring with three credit bureaus, financial transaction monitoring, monthly credit score and tracker, fictitious identity monitoring, bank and financial account monitoring, address change monitoring, home title monitoring, dark web monitoring, real-time authentication alerts, high-risk transaction monitoring, lost wallet protection, $1,000,000 of insurance coverage for identity theft with no deductible, security freeze assist, victim assistance, and customer support. The one-year period will commence when Settlement Class Members use their activation codes. All costs of Monitoring Services will be paid out of the Settlement Fund. As of January 2026, the retail reference value of Financial Shield Total is $32.95 per month (*id*. ¶ 3.5).

### A.   Definition of the Settlement Class.

Plaintiffs request certification, for settlement purposes only, a nationwide class of 5,802,065 individuals, defined as follows:

> [A]ll persons residing in the United States who were sent notice from any Defendant that their personally identifiable information ("PII") was potentially

accessed during the Incident.

(*Id.* ¶ 1.44.) The Settlement Class specifically excludes: (i) Defendants and their respective officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge and/or Magistrate assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Incident or who pleads *nolo contendere* to any such charge. (*Id.*)

### B.  Benefits to the Settlement Class.

#### 1.  Reimbursement For Out-of-Pocket Losses.

Settlement Class Members may submit a claim for reimbursement of documented out-of-pocket losses, not to exceed $5,000.00 per Settlement Class Member. This category shall not exceed $5,000,000.00 in the aggregate for all Class Members and is subject to *pro rata* reduction if the total of Valid Claims for Out-Of-Pocket Loss Payments exceed $5,000,000.00 in the aggregate. (*Id.* ¶ 1.30.) In order to receive reimbursement for out-of-pocket expenses, Settlement Class Members need to provide the Settlement Administrator with: (i) the Settlement Class Member's name and current address; (ii) documentation and an attestation supporting the Settlement Claim and demonstrating that the expenses are fairly traceable to the Incident and were not incurred due to some other event or reason; and (iii) a brief description of the documentation describing the nature of the expenses, if the nature of the expenses is not apparent from the documentation alone. (*Id.* Exhibit A, Claim Form)

#### 2.  *Pro Rata* Cash Payments as Compensation for Valid Claims as Described in the Settlement Agreement.

Settlement Class Members may submit a claim for *Pro Rata* Cash Payments as compensation for Valid Claims as described in the Settlement Agreement. (*Id.* ¶ 3.3.) This Cash

Payment is a one-time payment to all Settlement Class Members who submit a timely and Valid Claim Form.  (*Id.* ¶ 1.33.) The *Pro Rata* Cash Payment shall differ between Settlement Class Members who reside in California and in other places. (*Id.* ¶ 1.33 and 1.34.) For purposes of determining the number of Valid Claims for *Pro Rata* Cash Payments, each approved claim for California *Pro Rata* Cash Payments shall be counted twice, to create an accurate count for purposes of awarding those claiming California *Pro Rata* Cash Payments two *Pro Rata* Shares.

### 3.   Identity Theft Monitoring

Settlement Class Members may elect to receive one year of Monitoring Services with CyEx's Financial Shield Total. To receive this benefit, Settlement Class Members need only make an election on their Settlement Claim Form. (*Id.* ¶ 3.4.)

### C.   Notice Program

"For any class certified under Rule 23(b)(3)…the court must direct to class members the best notice that is practicable under the circumstances, including notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal..." Fed. R. Civ. P. 23(e)(1)(B). Notice is "adequate if it may be understood by the average class member." Newberg on Class Actions § 11:53 at 167 (4th ed. 2002).

The Parties have agreed to retain Kroll Settlement Administration LLC ("Kroll") as the Settlement Administrator. Within forty five (45) days of entry of the Preliminary Approval Order, Notice shall be provided to Settlement Class Members via direct notice, either by email, by U.S. Mail, or on the Settlement Website. (*Id.,* ¶¶ 1.26, 1.27.) The proposed Notice Plan provides all information required by Rule 23(c)(2)(B). The Notice Plan outlines a program for notifying Settlement Class Members of the Settlement and their rights in simple terms. (*See id., at* Ex. C.)

**D.      Claims, Opt-Outs, Objections, and Exclusions**

The timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, make a claim, or decide whether they would like to opt out or object.

**1.      Claims**

Settlement Class Members will have ninety (90) days from the Notice Date to complete and submit a Claim to the Claims Administrator. (S.A. ¶ 1.6.) Settlement Class Members making a Claim must complete and submit a written Claim Form to the Settlement Administrator, postmarked (or, if submitted electronically in accordance with the requirements for electronic submission of a Claim Form, the date of such submission) on or before the Claims Deadline. (*Id.*)

**2.      Exclusions**

Settlement Class Members will have up to and including twenty-one (21) days before the date set for the Final Fairness Hearing in the Preliminary Approval Order to opt out of the Settlement Agreement. (*Id.* ¶ 5.1.) To be considered valid, the request to opt out must: (i) be postmarked no later than twenty-one (21) days before the date set for the Final Fairness Hearing; (ii) clearly manifest the Settlement Class Member's intent to opt out of the Settlement Class; (iii) identify the name and address of the individual seeking exclusion from the Settlement; and (iv) be personally signed by the individual seeking exclusion. (*Id.* ¶ Exh. C.) If submitted online, the opt-out request must be submitted no later than the opt-out deadline using the link sent to the individual who submitted the request for exclusion. (*Id.*)

**3.      Objections**

Each Settlement Class Member desiring to object to the Settlement Agreement shall timely file with the Court a written notice of his or her objection by the Objection Date. Such notice shall

state: (i) the objector's full name and address; (ii) the case name and docket number: *In re Lakeview Loan Servicing Data Breach Litig.*, No. 1:22-cv-20955-GAYLES/TORRES (S.D. Fla.); (iii) a written statement of all grounds for the objection, including whether the objection applies only to the objector, to a subset of the Settlement Class, or to the entire Settlement Class, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of any and all counsel representing the objector in connection with the objection; (v) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and (vi) the objector's signature, even if represented by counsel. To be timely, written notice of an objection in the appropriate form must be received by the Clerk of Court no later than twenty-one (21) days before the date set for the Final Fairness Hearing in the Preliminary Approval Order**.** (*Id.* ¶ 6.1.)

### E.    Attorneys' Fees and Expenses

The Parties did not discuss the amount of attorneys' fees and expenses until after the substantive terms of the settlement had been agreed upon. (Exhibit 2, Joint Declaration of Class Counsel, hereafter Class Counsel Decl. ¶ 23.) Nor did Defendants agree not to oppose any amount of fees or expenses Class Counsel may apply for. All requests for attorney's fees and expenses are subject to Court approval and will be paid from the Settlement Fund. (*Id.*)

Should the Court grant the preliminary approval sought herein, Class Counsel shall submit a motion to the Court, no later than thirty-five (35) days prior to the Final Fairness Hearing scheduled by the Court, requesting a Fee and Expense Award and Service Awards.

### F.    Service Awards

Under the Settlement Agreement, the Class Representatives are entitled to petition the Court for a service award in recognition of their substantial efforts on behalf of the Settlement Class. (SA ¶ 9.5.) Plaintiffs have been dedicated and highly active participants in this Litigation and were

essential to the success achieved. (Class Counsel Decl. ¶ 26.) They provided information to Class Counsel, assisted in the investigation of the facts, and remained in contact with counsel throughout the Litigation. (*Id.*) Plaintiffs spent significant time responding to extensive and broad discovery served by Defendants, including having a third-party vendor preserve, search for, and collect and produce ESI from their personal devices and reviewing pleadings. Plaintiffs also willingly disrupted their lives to prepare and sit for depositions. (*Id.*) In doing so, Plaintiffs put their names and reputations on the line for the sake of the Class and took on the additional significant stress of litigation. The Class recovery here would not have been possible without their efforts. In view of these efforts, Plaintiffs will petition the Court for approval of a $7,500.00 service award each.

Service awards are routinely approved in class actions arising out of state law causes of action. In *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), the Eleventh Circuit addressed incentive awards in the context of a class action settlement involving federal statutory claims and held that such awards were impermissible under federal common law.[3] Courts sitting in diversity jurisdiction, however, have since explained that *Johnson* does not apply in cases involving state-law claims, where state law governs the availability and reasonableness of service awards. *See, e.g.*, *Venerus v. Avis Budget Car Rental, LLC*, 674 F. Supp. 3d 1107, 1110 (M.D. Fla. 2023) ("There is nothing in [*Johnson*] to suggest that it is applicable to cases arising under state law."); *Mitchell v. Allstate Vehicle and Prop. Ins.*, No. 2:21-cv-347, 2023 WL 5004064, *6 (S.D. Ala. Aug. 3, 2023) ("The Court agrees with its several sister courts in this Circuit that [*Johnson*] is inapplicable in diversity jurisdiction cases where the underlying claims arise under state law."); *Arnold v. State Farm Fire & Cas. Co.*, No. 2:17-CV-148-TFM-C, 2023 WL 7308098 (S.D. Ala. Nov. 6, 2023) (same). Because this Court sits in diversity and Plaintiffs' claims all arise under state

---

[3]   *See also In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. 2021).

law, state law governs the propriety of service awards. *See Erie R.R. Co. v. Tompkins*, 58 S. Ct. 817, 822 (1938) (holding that federal courts sitting in diversity must apply substantive state law and federal procedural law).

Under Florida law, service awards are allowed. In *Altamonte Springs Imaging, L.C. v. State Farm Mutual Automobile Insurance Co.*, the court approved a $10,000 service award, noting that "[t]he position as fiduciary for the class is less an honor than a headache." 12 So. 3d 850, 857 (Fla. 3d DCA 2009). Federal courts applying Florida law have followed this approach and approved service awards in class action cases. *See Roth v. GEICO Gen. Ins. Co.*, No. 16-62942-CIV, 2020 WL 10818393, at *3 (S.D. Fla. Oct. 8, 2020) (approving a $10,000 incentive award to each named plaintiff); *South v. Progressive Select Ins. Co.*, No. 19-CV-21760-WPD, 2023 WL 2733548, at *5 (S.D. Fla. Mar. 21, 2023) (same); *Sanchez v. State Farm Mut. Auto. Ins. Co.*, No. 3:21CV-00372-TJC-LLL, 2025 WL 2460560, at *5 (M.D. Fla. Aug. 26, 2025) (same); *Venerus*, 674 F. Supp. 3d at 1110 (approving service award of $25,000 for the class representative).

Courts in the Eleventh Circuit have likewise approved service awards in data breach class actions proceeding in diversity, like this one. *See In re Parkmobile*, No. 1:21-cv-02182-SCJ (N.D. Ga. May 6, 2025), ECF No. 300 (awarding a total of $35,000 in service awards to seven class representatives and noting that "[c]ourts in the Eleventh Circuit continue to find service awards are permitted for common law claims in diversity cases."); *Corona-Cantu v. Ingo Money Inc.*, No. 1:24-cv-03023-MHC (N.D. Ga. June 17, 2025) (awarding $2,500 service award and noting that "courts in the Eleventh Circuit have recently found service awards are permitted for common law claims in diversity cases."); *Wang v. Corp. of Mercer Univ.*, No. 5:23-CV-00193-TES, 2025 WL 1136132 (M.D. Ga. Apr. 17, 2025) (approving service awards of $1,500 for each class representative); *Cain v. CGM, L.L.C.*, No. 1:23-CV-02604-SEG, 2025 WL 2814398 (N.D. Ga.

13

Mar. 10, 2025) (awarding a total of $11,500 in service awards to seven class representatives); *Ebert v. PRIX Global*, No. 1:23-cv-04233-TWT (N.D. Ga. Jan. 23, 2025) (approving service awards of $1,750 for each class representative); *Briggs v. North Highland Co.*, No. 1:22-cv-03640 (N.D. Ga. Nov. 27, 2024) (approving service award of $2,500 for class representative).

### G.      Mutual Release

Mutual releases shall be deemed provided by operation of Judgment. Defendants and the Settlement Class Members who do not timely and validly opt out of the Settlement shall be bound by the mutual releases as described in the Settlement Agreement. (*Id*. ¶¶ 8.1, 8.2.)

## IV.      ARGUMENT AND AUTHORITIES

### A.      Legal Standard for Preliminary Approval.

"[A]ny analysis of class certification must begin with the issue of standing." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). To satisfy Article III standing, a plaintiff must "(1) suffer[] an injury in fact, (2) that is fairly traceable to the challenged conduct of defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs extensively argued and maintained they had Article III standing in their Opposition to Defendants' Motion to Dismiss. (*See* ECF No. 71.) For the reasons stated therein, the standing requirement is met to allow a class settlement for the Settlement Class.

Rule 23(e) requires judicial approval of the settlement of class claims. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Before certifying a class for settlement, the court must consider whether: (1)

"the class representatives and class counsel have adequately represented the class;" (2) "the proposal was negotiated at arm's length;" (3) "the relief provided for the class is adequate[;]" and (4) "the proposal treats [C]lass [M]embers equitably relative to each other." Fed. R. Civ. P. 23(e)(2). The court must also find the Rule 23(a) prerequisites (numerosity, commonality, typicality, and adequacy) are met, and the proposed class must also meet the requirements of one of the three class types found in Rule 23(b). These requirements are met here.

Finally, neither formal notice nor a hearing is required at the preliminary approval stage. *See Manual for Compl. Litig.* § 13.14.

### B.    The Settlement Satisfies Rule 23(e) Criteria for Preliminary Approval.

#### 1.    Plaintiffs and Their Counsel Have Adequately Represented the Class.

"The adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (internal quotation marks omitted).

There are no conflicts between the Plaintiffs and the Settlement Class. Rather, Plaintiffs' interests are aligned and coextensive with those of absent Settlement Class Members. Plaintiffs were subjected to the same alleged conduct by Defendants and allege the same injuries as absent Class Members.

Additionally, Plaintiffs and Class Counsel "had an adequate information base" before negotiating and entering into the Settlement. *See* Rule 23(e)(2)(A) advisory committee's note to 2018 amendment; *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (considering the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits

of settlement against further litigation"). Here, Class Counsel zealously represented Plaintiffs' and Settlement Class Members' interests through vigorous litigation, and then settlement negotiations, over the course of three years. (Class Counsel Decl. ¶ 30.) Counsel briefed and argued multiple motions, pushed for and conducted fulsome discovery to investigate the facts of the case, including review of hundreds of thousands of pages of documents, taking depositions, and retaining appropriate experts to assist them in developing their opinions as they relate to the claims and defenses in the case. (*Id*. ¶ 22) Each Plaintiff was likewise actively engaged in the Litigation by providing relevant documents and materials. (*Id*. ¶ 26) and sitting for a detailed deposition. Class Counsel respectfully request appointment as Settlement Class Counsel under Rule 23(g)(3), and confirmed under 23(g)(1) upon final approval.

### 2. The Settlement Is the Product of Good-Faith, Informed, and Arm's-Length Negotiations.

Rule 23(e)(2)(B) requires courts to consider whether "the proposal was negotiated at arm's length." Class action settlements should be approved so long as a court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Lipuma*, 406 F. Supp. 2d at 1318-19.

This Settlement Agreement is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class-action litigation and with the legal and factual issues of this case. (Class Counsel Decl. ¶ 15.) The Parties engaged in extensive, adversarial negotiations over three mediation sessions with three different experienced mediators. (*Id*.) A settlement process facilitated by a mediator weighs heavily in favor of approval. *See Wilson v. EverBank*, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016). This settlement was achieved in a procedurally fair manner, under the supervision of an experienced mediator, and in the absence of collusion.

### 3.      The Settlement Provides Significant Relief to Class Members.

Rule 23(e)(2)(C) requires a court to consider whether "the relief provided for the class is adequate," considering several factors, including "the costs, risks, and delay of trial and appeal," "the effectiveness of any proposed method of distributing relief to the class," "the terms of any proposed award of attorneys' fees," and any other agreements between the Parties. Settlements are reasonable even when class members recover only part of their actual losses. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate."). "[T]he existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

Here, the monetary benefits of the settlement are substantial and more than adequate. The negotiations produced a Settlement that provides significant relief to the Settlement Class. Defendants will make a non-reversionary total of $26 million available to the Settlement Class Members for the payment of claims and Settlement Administration. The Settlement Agreement ensures that Settlement Class Members will receive a maximum of $5,000.00 reimbursement of documented out-of-pocket expenses as well as *Pro Rata* Cash Payments to each class member from the residual Settlement fund.

While individual Settlement Class Members' recoveries will vary depending on whether they submit a claim for an Out-of-Pocket Loss Payment, the recovery available to each Settlement Class Member is significant, fair, and equitable. (*See* Class Counsel Decl. ¶ 21). California residents who submit Valid Claims will receive payments that are twice the amount of payments made to non-California residents due to the heightened protections including statutory damages afforded to California residents under the CCPA. *Harbour v. California Health & Wellness Plan*,

17

No. 5:21-CV-03322-EJD, 2024 WL 171192, at *2 (N.D. Cal. Jan. 16, 2024); *In re CorrectCare Data Breach Litig.*, No. CV 5:22-319-DCR, 2024 WL 1403075, at *2 (E.D. Ky. Apr. 1, 2024).

This is an excellent result that compares favorably with other data breach class action settlements that have been approved in this jurisdiction. *See, e.g.*, *In Re: Mednax Servs., Inc., Customer Data Sec. Litig.*, No. 21-MD-02994-RAR (S.D. Fla.) [October 5, 2024] Order Granting Final Approval of Class Action Settlement and Plaintiffs' Motion for Attorneys' Fees and Costs [ECF No. 328] (approving a $6,000,000 settlement for a class of 2,712,790 members that provided reimbursement up to $5,000 for out-of-pocket losses); *Wenston Desue v. 20/20 Eye Care Network, Inc., et al.*, No. 21-CV-61275-RAR (S.D. Fla.) July 8, 2023 Order Granting Final Approval [ECF No. 100] (approving a $3,000,000 settlement for a class of 3,976,023 members that allowed reimbursement up to $5,000 in out-of-pocket losses).

**a.      The Settlement Mitigates the Costs, Risks, and Delays of Continued Litigation.**

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id*.

While Plaintiffs and Class Counsel are confident in their claims, they recognize that Defendants have mounted a vigorous defense, and there are always risks and delays inherent to litigation. Defendants already have opposed class certification, challenged standing, challenged Plaintiffs' class-wide liability and damages theories, moved to strike several of Plaintiffs' experts' reports, and proffered their own experts. The proposed Settlement Agreement saves Plaintiffs and the Settlement Class from facing these substantial obstacles and eliminates the significant risk that they would recover nothing at all after several more years of litigation and appeals. (Class Counsel

18

Decl. ¶ 31.) *See Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).

Data breach class actions are notoriously risky. For example, historically, data breach cases face substantial hurdles in surviving the class certification stage. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013); *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting that data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare."). Damages methodologies are also "largely untested[.]" *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOX), 2022 WL 2155117, at *7 (C.D. Cal. Feb. 22, 2022); *Cheryl Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534-RGK-E, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021); *Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMX), 2018 WL 11358228, at *3 (C.D. Cal. Apr. 2, 2018) ("Because of the difficulty of proving damages and causation, Plaintiffs faced a substantial risk of losing at summary judgment or at trial.").

As another court observed in finally approving a settlement with similar class relief, "[d]ata breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex." *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021). Further, maintaining class certification through trial is another over-arching risk emphasizing what is true in all class actions – class certification through trial is never a settled issue, and is always a risk for the plaintiffs. *See*, *e.g.*, *Theus v. Brinker Int'l, Inc.*, 2025 WL 1786346 (June 27, 2025) (decertifying class after years of litigation, including favorable decision for plaintiffs on Rule 23(f) appeal). Thus, the costs, risks, and delay of continued litigation are great, and weigh heavily in favor of preliminary approval. Given this risk and uncertainty, settlement is the more prudent course when a reasonable one can be reached.

Facing these headwinds, the results achieved for the Settlement Class here are quite positive. This Settlement provides immediate and substantial relief and is therefore reasonable and adequate.

    **b.**  **The Distribution of Settlement Benefits Is Effective.**

The benefits will be distributed via a simple claims process. Claims will be processed and vetted using best practices by the Settlement Administrator, a neutral party which has significant experience processing these claims in similar cases. After the deadline for submission of claims has passed, the Settlement Administrator will review each Claim Form and, if applicable, supporting documentation to determine the claim's validity.

    **c.**  **Class Counsel's Application for Attorney's Fees and Expenses Will Be Made Separately and Has Not Been Previously Negotiated.**

As set forth above, Class Counsel intends to request an award of reasonable attorneys' fees and litigation expenses. Presently, litigation costs include document management fees, court reporting fees, expert fees, mediation fees, and general litigation costs. (Class Counsel Decl. ¶24) The Parties did not negotiate Class Counsel's fees and costs before or after reaching an agreement on the terms of relief for the Settlement Class. (*Id.* ¶23.) *See In re Home Depot Inc.*, 931 F.3d 1065, 1080–81 (11th Cir. 2019) (approving situation where "[t]he fees were left entirely to the District Court's discretion [and] [t]he parties did not even agree to a cap, often referred to as a "clear-sailing agreement."); *accord Carter v. Forjas Taurus, S.A.*, 701 F. App'x 759, 766 (11th Cir. 2017) (even "despite the clear-sailing agreement, the district court did not err in this regard when it approved the settlement").

    **d.**  **The Settlement Agreement Represents the Full Agreement of the Parties.**

There is no other agreement between the Parties that is required to be identified by Rules

23(e)(3) or any agreement made in connection with the Settlement Agreement that is not memorialized in the Settlement Agreement. The Court can, therefore, determine the fairness and adequacy of the Parties' proposal for settlement by looking solely to the Settlement Agreement.

### 4.      The Settlement Treats All Class Members Equitably.

Rule 23(e)(2)(D) considers "whether the apportionment of relief among [C]lass [M]embers takes appropriate account of differences among their claims," *see* Rule 23(e)(2)(D) advisory committee's note to 2018 amendment. This factor "requires equity, not equality, and treating class members equitably does not necessarily mean treating them all equally." *In re Blue Cross Blue Shield Antitrust Litig.*, 85 F.4th 1070, 1093 (11th Cir. 2023). In other words, "the court's goal is to ensure that similarly situated class members are treated similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated." Newberg on Class Actions § 13:56.

Here, Settlement Class Members are treated equitably even though the amounts paid to each Settlement Class Member will vary based on their out-of-pocket costs, state of residence, time spent and whether they select a Monitoring Service. Each Settlement Class Member who submits a Valid Claim is entitled to a maximum payment of out-of-pocket losses fairly traceable to the Incident of $5,000.00 (Class Counsel Decl. ¶ 19); *Pro Rata* Cash Payments as compensation for valid claims as described in the Settlement Agreement (*id.*); additional *Pro Rata* Cash Payments as compensation for California residents as described in the Settlement Agreement (*id.*); and one year of Monitoring Services with CyEx's Financial Shield Total. (*Id.* ¶ 20). The Settlement Agreement is an equitable and excellent result for the Class.

### C.      Certification of the Settlement Class Is Appropriate.

Plaintiffs request that the Court certify a Settlement Class and permit dissemination of

notice concerning the settlement. Where a class has not been certified prior to settlement, the Court must consider the prospect of class certification in determining whether to direct notice to the class. "A class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks omitted). The court must also find the Rule 23(a) prerequisites to be met, and the proposed class must also meet the requirements of one of the three class types found in Rule 23(b). The Eleventh Circuit also requires that a class representative have standing to sue and that the proposed class is adequately defined and clearly ascertainable. *See Prado-Steiman ex rel Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). Each of these criteria are met here.

### 1. The Settlement Class Meets the Requirements of Rule 23(a).

The Settlement Class satisfies the four Rule 23(a) pre-requisites for class certification: numerosity, commonality, typicality, and adequacy. The proposed class definition is also adequate because "its membership is capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302, 1304 (11th Cir. 2021) ("[a]scertainability is an implied prerequisite of Rule 23" that must be considered "before the district court can consider whether the class satisfies the enumerated prerequisites of Rule 23(a)").

The proposed Class is objectively defined. In broad strokes, Defendants had obtained and stored Settlement Class Members' PII prior to the time of the Incident in furtherance of their business, and their PII was potentially accessed in the Incident.

Rule 23(a)(1) is satisfied where, as here, "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, Defendants notified 5,802,065 potential Settlement Class Members nationwide, which is sufficient to satisfy numerosity in this Circuit. The

numerosity requirement is "generally [a] low hurdle" and, "as a general rule…less than twenty-one is inadequate . . . [and] more than forty is adequate[.]" *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (cleaned up); *see also Kilgo v. Bowman Trans*., 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area"); *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (numerosity generally satisfied where there are more than 40 class members).

Rule 23(a)(2) requires class action plaintiffs to identify questions of law or fact common to the proposed class. *See* Fed. R. Civ. P. 23(a)(2). "Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). Commonality may be shown when the claims of all class members "depend upon a common contention," with "'[e]ven a single [common] question'" sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 2556 (2011). Therefore, "in order to satisfy Rule 23's commonality element, the question is whether [p]laintiff has shown that the alleged issues require generalized proof, applicable to the proposed class in its entirety." *Ass'n for Disabled Americans, Inc. v. Motiva Ent., LLC*, No. 99-0580, 1999 WL 35815520, at *2 (S.D. Fla. Oct. 19, 1999). Here, Plaintiffs' claims turn on whether Defendants were negligent and/or violated state statutory laws in allegedly failing to protect Plaintiffs' and Settlement Class Members' PII. Evidence to resolve that claim does not vary among Settlement Class Members, and so can be fairly resolved, at least for purposes of settlement, for all Settlement Class Members at once. These common questions would generate common answers "apt to drive the resolution of the litigation" for the Settlement Class as a whole. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. at 2551.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical

of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003) (citation omitted). Settlement Class Members' claims "need not be identical to satisfy [this] requirement." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012). Instead, "[t]he claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Bouton v. Ocean Prop., Ltd.*, 322 F.R.D. 683, 699 (S.D. Fla. 2017) (internal citations omitted). Plaintiffs' interests are aligned with the Settlement Class because they each were sent a notice letter from Defendants informing them their PII may have been compromised as a result of the Incident, and each was therefore impacted by the same allegedly inadequate data security that allegedly harmed the rest of the Settlement Class. Plaintiffs, like all Settlement Class Members, allegedly suffered the loss of their data to criminal actors and allegedly face the threats that arise from this loss. Plaintiffs' claims are coextensive with those of the absent Class Members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy under Rule 23(a)(4) considers (1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake the litigation. *See Fabricant v. Sears*

*Roebuck*, 202 F.R.D. 310, 314 (S.D. Fla. 2001).

As set forth above, Plaintiffs and their counsel easily satisfy the adequacy-of-representation requirement. "[C]lass counsel and the class representatives are adequate representatives of the class if: (1) 'plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation' and (2) the plaintiffs lack 'interests antagonistic to those of the rest of the class.'" *Holman v. Student Loan Xpress, Inc.*, No. 8:08-cv-305-T-23MAP, 2009 WL 4015573, at *2 (M.D. Fla. Nov. 19, 2009) (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987)). The Settlement Class Representatives here have no conflicts with the Settlement Class and have more than demonstrated their adequacy by: (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the Litigation; and (v) monitoring the Litigation. (Class Counsel Decl., ¶ 28.)

Proposed Class Counsel are adequate because of their vast experience as vigorous data breach class action litigators. Proposed Class Counsel have devoted substantial time and resources to vigorous litigation of this action over three years, from inception through the date of the Settlement Agreement. (Class Counsel Decl. ¶¶ 38-50.) Class Counsel fully briefed and defeated motions to dismiss, motions to strike, and discovery motions, pushed for and conducted fulsome discovery to investigate the facts of the case, including the review of hundreds of thousands of pages of documents, took seventeen separate fact and expert depositions, retained appropriate experts to assist them in the case, and fully briefed class certification along with the other motions referenced here. (*Id*. ¶ 22) Class Counsel respectfully request appointment as Settlement Class Counsel under Rule 23(g)(3), and confirmed under 23(g)(1) upon final approval.

**2.      The Settlement Class Meets the Requirements of Rule 23(b).**

The Settlement Class meets the requirements of Rule 23(b)(3).

A class is certified under Rule 23(b)(3), when "questions of law or fact common to class members predominate over any questions affecting only individual members," and a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiffs satisfy the predominance requirement because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member. "[C]ommon issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016).

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Defendants. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 311-16 (N.D. Cal. 2018). The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." (*Id.* at 312.) All Settlement Class Members had their data potentially compromised in the Incident, and the security practices at issue did not vary from person to person. Thus, because these common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis. Thus, the predominance requirement is satisfied.

The evidence necessary to establish Plaintiffs' claims is common to all members of the Settlement Class: in the absence of a settlement, they would seek to prove that the Incident was

preventable, was a result of Defendants' negligence and/or statutory violations, and caused harm.

Under Rule 23(b)(3), the Court considers a non-exhaustive list of four factors in making its superiority determination: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. (*Id.*) "The focus of the superiority analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Mohamed v. American Motor Co., LLC*, 320 F.R.D. 301, 316 (S.D. Fla. 2017) (internal quotations omitted).

The superiority factors weigh in favor of certification under Rule 23(b)(3). As to the first factor, adjudicating individual actions here is impracticable. The amount in dispute for individual class members is too small, the technical issues involved are too complex, and the expert testimony and document review is too costly. The individual amounts here are insufficient to allow anyone to file and prosecute an individual lawsuit with the aid of competent counsel. Rather, individual prosecution of claims would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings.

As to the second factor, Class Counsel are unaware of the existence of any pending litigation against Defendants concerning this Incident besides the consolidated cases herein and *Lazarus v. Lakeview Loan Servicing, LLC*, No. 25CV018437 (Cal. Super. Ct., Sacramento County), to be dismissed upon final approval of this case. (SA ¶ 12.6.)  With respect to the third factor, this Court has been competently handling this consolidated matter through three years of litigation. The final factor, manageability, does not apply here. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620

(1997) ("a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). Thus, the Court should certify the Settlement Class pursuant to Rule 23(b)(3).

**3.      The Proposed Class is Adequately Defined and Clearly Ascertainable.**

A class must be "adequately defined and clearly ascertainable." *Little*, 691 F.3d at 1304. Identifying Settlement Class Members here is simple and objective: Defendants have a list of all individuals who were sent notice that their information was compromised in the Data Incident. As such, ascertainability is satisfied.

## V.      CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed order granting preliminary approval and direct notice be given to the Settlement Class.

Dated: January 28, 2026

Respectfully submitted,

*/s/John A. Yanchunis*
JOHN A. YANCHUNIS
Florida Bar No. 324681
RYAN McGEE
Florida Bar No. 64957
RONALD PODOLNY (*pro hac vice*)
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor Tampa, Florida 33602 (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com
rpodolny@ForThePeople.com
*Chair, Plaintiffs' Executive Committee*

JULIE BRAMAN KANE
Florida Bar No. 980277
**COLSON HICKS EIDSON**
806 S. Douglas Road, Suite 1200
Coral Gables, Florida 33134
Telephone: (305) 476-7400

Facsimile: (305) 476-7444
julie@colson.com
*Plaintiffs' Liaison Counsel*

STUART A. DAVIDSON
Florida Bar No. 0084824
DOROTHY P. ANTULLIS
Florida Bar No. 890421
NICOLLE B. BRITO
Florida Bar No. 43399
**ROBBINS GELLER RUDMAN
& DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: (561) 750-3000
(561) 750-3364 (fax)
sdavidson@rgrdlaw.com
dantullis@rgrdlaw.com
nbrito@rgrdlaw.com

ADAM E. POLK (*pro hac vice*)
SIMON GRILLE (*pro hac vice*)
KRISTEN PALUMBO (*pro hac vice*)
MIKAELA BOCK (*pro hac vice*)
**GIRARD SHARP LLP**
601 California St, Ste 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
jelias@girardsharp.com
sgrille@girardsharp.com
kmacey@girardsharp.com

GARY M. KLINGER (*pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 Monroe Street, Suite 2100
Chicago, IL 60606
866.252.0878
gklinger@milberg.com

M. ANDERSON BERRY (*pro hac vice*)
GREGORY HAROUTUNIAN (*pro hac vice*)
**EMERY REDDY PC**
600 Stewart Street, Suite 1100
Seattle, WA  98101-1269

29

Telephone: (916) 823-6955
aberry@emeryreddy.com
gharoutunian@emeryreddy.com
*Members, Plaintiffs' Executive Committee*

DAVID K. LIETZ (*pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW
Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

RYAN D. MAXEY
**MAXEY LAW FIRM, P.A.**
107 North 11th Street, Suite 402
Tampa, FL 33602
ryan@maxeyfirm.com

TERRY R. COATES (*pro hac vice*)
DYLAN J. GOULD (*pro hac vice*
forthcoming)
**MARKOVITS, STOCK &**
**DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: 513/651-3700
513/665-0219 (fax)
tcoates@msdlegal.com
dgould@msdlegal.com

LORI G. FELDMAN (*pro hac vice*)
**GEORGE GESTEN**
**MCDONALD, PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Phone: (917) 983-9321
Fax: (888) 421-4173
LFeldman@4-Justice.com
E-Service: eService@4-Justice.com

JOSEPH M. LYON (*pro hac vice*)
**THE LYON FIRM, LLC**
2754 Erie Avenue
Cincinnati, OH 45208

30

(513) 381-2333
jlyon@thelyonfirm.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2026, a true and correct copy of the foregoing was electronically filed and served using CM/ECF.

*/s/ Julie Braman Kane*
Julie Braman Kane

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(3)(A), the undersigned certifies that she conferred with Evan Mannering, counsel for Defendants, regarding the relief sought in this motion, and counsel for the Defendants advised that Defendants do not oppose the request to the Court.

*/s/ Julie Braman Kane*
Julie Braman Kanes

31