# EXHIBIT 2

Joint Declaration of Class Counsel

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Master File No. 1:22-cv-20955-DPG**

| | |
|---|---|
| **In re LAKEVIEW LOAN SERVICING**<br>**DATA BREACH LITIGATION** | **CLASS ACTION** |

_____/

**JOINT DECLARATION OF CLASS COUNSEL IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

1.      We are counsel for Plaintiffs and members of Plaintiffs' Executive Committee and interim class counsel ("Class Counsel") in the above-captioned case. This declaration supports Plaintiff's Motion for Preliminary Approval of Class Action Settlement with Defendants, Bayview Asset Management LLC ("Bayview"), Lakeview Loan Servicing, LLC ("Lakeview"), Pingora Loan Servicing, LLC ("Pingora"), and Community Loan Servicing, LLC ("Community Loan") (collectively, "Lakeview" or "Defendants"), and the attachments thereto, including the Settlement Agreement, Claim Form, the Short Notice, the Long Form Notice, and the Proposed Preliminary Approval Order. We have personal knowledge of the facts in this declaration and could testify to them if called on to do so.

**LITIGATION BACKGROUND**

**A.  The Complaint**

2.      Plaintiffs allege that Defendants suffered a data breach of their systems in October 2021, when an intruder gained entry to Defendants' linked network systems and then accessed and exfiltrated the personally identifiable information (PII) stored therein (the "Incident").

1

3.      Plaintiffs further alleged that Defendants discovered the Incident on December 6, 2021, when an outside entity made them aware that their systems were breached and information, including Plaintiffs' and class members' PII potentially may have been exfiltrated. Over the next months, Defendants learned that the PII of additional customers also may have been impacted in the Incident.

4.      Beginning on March 16, 2022, and continuing through May 16, 2022, Defendants sent notices of the Incident to millions of individuals.  All told, Defendants determined that the PII of over 5,800,000 individuals potentially may have been accessed by cybercriminals. Thereafter, multiple Plaintiffs initiated class action complaints against Defendants in multiple federal jurisdictions, the first of which was filed on March 29, 2022. Each was transferred to this jurisdiction and consolidated in this litigation. Interim class counsel was appointed.

5.      Prior to filing these cases, Plaintiffs' counsel conducted extensive pre-suit discovery to ascertain all publicly available details about the cause, scope, and result of the data breach, as well as about the damages suffered by the Plaintiffs and the Class.

**B.  Procedural History**

6.      On August 1, 2022, Plaintiffs, by and through Class Counsel, filed their Consolidated Class Action Complaint, which included various state common law and statutory consumer protection and privacy claims against all Defendants except Community Loan, including claims for negligence and violation of the California Consumer Privacy Act ("CCPA"). (*See* ECF No. 47.)

7.      On September 1, 2022, Defendants filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) (ECF No. 59), which the Court granted, in part, without prejudice. (*See* ECF No. 144.).

8.      On March 28, 2024, Plaintiffs filed the operative First Amended Consolidated Class Action Complaint ("Complaint") against all Defendants. (*See* ECF No. 187.) Defendants moved to dismiss under Rule 12(b)(6) (ECF No. 201) and separately moved to strike the CCPA claim brought by certain Plaintiffs on behalf of a California subclass (ECF No. 209).

9.      On March 20, 2025, the Court denied the motion to strike without prejudice. (*See* ECF No. 269.) And, on March 31, 2025, following oral argument, the Court granted in part and denied in part Defendants' motion to dismiss. (*See* ECF No. 283.).

10.     The remaining claims of the Complaint after this decision consisted of negligence and claims brought by certain Plaintiffs on behalf of state subclasses for violation of the CCPA, Cal. Civ. Code § 1798.100, *et seq.*, the California Customer Records Act, Cal. Civ. Code § 1798.80, *et seq.*, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505, *et seq.*, New York General Business Law § 349, the Washington Consumer Protection Act, RCW Ch. 19.86, *et seq.*, and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* (for injunctive relief only).

11.     Plaintiffs conducted substantial formal discovery from October 21, 2022 to October 31, 2025. Document discovery included, among other things, searches for and collections of electronically stored information by Defendants and Plaintiffs; service subpoenas for documents on third parties that contracted with Defendants in connection with their information security and the Incident; five  sets of document requests, five sets of interrogatories, and one set of requests for admission served on Defendants; and two sets of document requests, two sets of interrogatories, and one set of requests for admission served on Plaintiffs. All told, Defendants and third parties produced, and Plaintiffs reviewed, a total of 517,135 pages of documents; Plaintiffs produced, and Defendants reviewed, 46,928 pages of documents.

12.    The Parties also took numerous depositions. Specifically, Plaintiffs took 17 fact and Rule 30(b)(6) witness depositions, and Defendants took the depositions of 16 Plaintiffs.

13.    During the Litigation, the Parties negotiated dozens of discovery-related disputes. They presented nine unresolvable discovery disputes for hearing to Magistrate Judge Torres and appeared before Judge Torres on five occasions. (*See* ECF Nos. 132, 191, 254, 266, 307.)

14.    On March 31, 2025, Plaintiffs filed their motion for class certification, along with five expert reports regarding the Incident, Defendants' data security practices, damages, and the risk of harm to alleged victims of the Incident. (*See* ECF No. 282.) Defendants opposed class certification on May 30, 2025, and filed three reports from their own experts and two non-expert declarations. (*See* ECF No. 294.) The Parties also each moved to strike the opposing Party's experts under *Daubert* and Plaintiffs moved to exclude Defendants' declarants. (*See* ECF Nos. 311, 313, 334–35, 342, 346.) As of October 24, 2025, Plaintiffs' motion for class certification, the Parties' *Daubert* motions, and Plaintiffs' motions to exclude Defendants' declarants were fully briefed and awaiting hearing or decision.

**C.  Settlement Negotiations and Settlement**

15.    This Settlement is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class-action litigation and with the legal and factual issues of this case. The parties engaged in extensive, adversarial negotiations over three mediation sessions with three different experienced mediators.

16.    Throughout this case, the Parties engaged in numerous discussions concerning a potential resolution. The Parties engaged in early mediation on April 17, 2023, in Miami, with Rodney Max of Upchurch Watson White & Max. While the Parties were unable to reach agreement

during this first mediation, they agreed to keep the lines of communication open to further discussions.

17.     The Parties engaged in a second mediation on December 9, 2024, in Miami, with the Honorable Scott Silverman (ret.), but again were unable to reach agreement.

18.     Once class certification, *Daubert* motions, and Plaintiffs' motions to exclude Defendants' declarants were fully briefed, the Parties agreed to attend a third mediation on November 12, 2025, in Philadelphia, with the Honorable Diane Welsh (ret.), a former United States Magistrate Judge and a highly experienced mediator in data breach class actions. After a full day of mediation with Judge Welsh, the Parties were able to reach an agreement in principle on the settlement of this Litigation that provides substantial benefits to the Settlement Class.

19.     Specifically, the Settlement provides monetary relief that includes a non-reversionary Settlement Fund of twenty six million Dollars ($26,000,000), from which the following cash benefits will be offered to Settlement Class Members as compensation for valid claims as described in the Settlement Agreement.: (i) reimbursement of Out-of-Pocket Losses up to $5,000.00 per person for documented out-of-pocket expenses actually and reasonably incurred that are fairly traceable to the Incident; and (ii) two forms of *pro rata* Cash Payments. The first form of Pro Rata Cash Payment is for California Settlement Class Members, and consists of two *pro rata* Shares of the Remainder Settlement Fund for each Settlement Class Member residing in California at the time of the Incident who submits a Valid Claim. The second form of Pro Rata Cash Payment is for all other Settlement Class Members who are not eligible to receive the California Pro Rata Cash Payment and who submit a valid claim, and consists of a single pro rata Share of the Remainder Settlement Fund.

20.     In addition, all Settlement Class Members are eligible to receive one year of identity theft monitoring services in the form of CyEx's Financial Shield Total service, a state-of-the-art identity theft monitoring product designed to proactively protect against identity theft. Financial Shield Total includes credit monitoring with three credit bureaus, financial transaction monitoring, monthly credit score and tracker, fictitious identity monitoring, bank and financial account monitoring, address change monitoring, home title monitoring, dark web monitoring, real-time authentication alerts, high-risk transaction monitoring, lost wallet protection, $1,000,000 of insurance coverage for identity theft with no deductible, security freeze assist, victim assistance, and customer support. The one-year period will commence when Settlement Class Members use their activation codes. All costs of Monitoring Services will be paid out of the Settlement Fund. As of January 2026, the retail reference value of Financial Shield Total is $32.95 per month.[1]

21.     While some individual Settlement Class Member's recoveries will vary depending on whether they submit a claim for Out-of-Pocket Losses, the recovery available to each Settlement Class Member is significant, fair, and equitable. California residents who submit valid claims for Pro Rata Cash Payments will receive payments that are twice the amount of payments made to non-California residents due to the heightened protections afforded to California residents under the CCPA.

22.     Class Counsel will petition the Court for an award of Attorneys' Fees and Expenses by separate motion for their significant work on behalf of the Settlement Class. Over the course of over four years of hard-fought litigation, Class Counsel fully briefed and defeated motions to dismiss, motions to strike, and discovery motions, pushed for and conducted fulsome discovery to investigate the facts of the case, including the review of hundreds of thousands of pages of

---

[1] https://financialshield.com/ (last visited January 24, 2026)

documents, took seventeen separate fact and expert depositions, retained appropriate experts to assist them in the case, and fully briefed class certification along with the other motions referenced here.

23.     The Parties never discussed the amount of Attorneys' Fees and Expenses Class Counsel would seek form the Court. Nor did Defendants agree not to oppose any amount of fees or expenses Class Counsel may apply for. All requests for Attorney's Fees and Expenses are subject to Court approval and will be paid from the Settlement Fund.

24.     Class Counsel intends to request an award of reasonable attorneys' fees and litigation expenses. Presently, litigation costs include document management fees, court reporting fees, expert fees, mediation fees, and general litigation costs.

25.     The Settlement Agreement also provides that Class Representatives are entitled to petition the Court for a service award in recognition of their substantial efforts on behalf of the Settlement Class.

26.     Plaintiffs have been dedicated and highly active participants in this Litigation and were essential to the success achieved. They provided information to Class Counsel, assisted in the investigation of the facts, and remained in contact with counsel throughout the Litigation. Plaintiffs spent significant time responding to extensive and broad discovery served by Defendants, including having a third-party vendor preserve, search for, and collect and produce ESI from their personal devices, reviewing pleadings, and willingly disrupted their lives to prepare and sit for depositions before ultimately reviewing and approving the Settlement.

27.     Plaintiffs' interests are not antagonistic to the interests of the absent Settlement Class Members. Plaintiffs and absent Settlement Class Members have a coextensive interest in obtaining the relief offered by the Settlement, and absent Settlement Class Members have no

diverging interests. Plaintiffs are familiar with the facts of this case and have protected the Settlement Class throughout this Litigation, including by seeking out qualified and competent counsel with experience prosecuting class actions and specifically data breach class actions to represent them in this action.

28.     The proposed Settlement Class Representatives here have no conflicts with the Settlement Class and have more than demonstrated their adequacy by: (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-attorneys; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Litigation.

29.     Plaintiffs put their names and reputations on the line for the sake of the Settlement Class and took on the additional significant stress of litigation. The Class recovery here would not have been possible without their efforts.

## COUNSEL'S EFFORTS

30.     Class Counsel in this matter zealously represented Plaintiffs' and Class Members' interests through vigorous litigation, and then settlement negotiations, over the course of three years.

31.     Our collective years of experience in representing individuals in complex class actions—including data breach actions—informed Plaintiffs' settlement position, and the needs of Plaintiffs and the proposed Settlement Class. While Plaintiffs and Class Counsel are confident in their claims, they recognize that Defendants have mounted a vigorous defense, and there are always risks and delays inherent to litigation. Defendants already have opposed class certification, challenged Plaintiffs' class-wide liability and damages theories, moved to strike several of

Plaintiffs' experts' reports, and proffered their own experts. The proposed Settlement saves Plaintiffs and the Settlement Class Members from facing these substantial obstacles and eliminates the significant risk that they would recover nothing at all after several more years of litigation and appeals.

32.    Based upon our collective substantial experience, it is our collective opinion that the proposed settlement of this matter provides significant relief to the members of the Settlement Class and warrants the Court's preliminary approval. The settlement is well within the range of other data breach settlements in the relief that it provides.

33.    The Settlement Agreement's terms are designed to address the potential harms caused by the data breach, providing credit monitoring and identity theft restoration services, reimbursing losses, and verifying that Defendants have improved their data security.

34.    This result is particularly favorable given the risks of continued litigation. Plaintiffs face serious risks prevailing on the merits, including proving causation, as well as risk at class certification and at trial, and surviving appeal. A settlement today not only avoids the risks of continued litigation, but it also provides a benefit to the members of the Settlement Class now as opposed to after years of risky litigation.

35.    The Settlement Agreement's benefits unquestionably provide a favorable result to the members of the settlement class, placing the Agreement well within the range of possible final approval and satisfying the requirements for preliminary approval; therefore, the Court should grant preliminary approval.

36.    Additionally, the Notice program contemplated by the Settlement Agreement provides the best practicable method to reach the Settlement Class members and is consistent with

other class action notice programs that have been approved by various courts for similarly situated matters.

37.     Thus, Class Counsel asks the Court to grant preliminary approval of The Settlement Agreement and enter the proposed preliminary approval order attached to the Settlement Agreement and filed with this motion.

## COUNSEL'S QUALIFICATIONS

38.     Class Counsel have submitted their qualifications to this Court previously in connection with their Motion for Appointment as Interim Class Counsel at ECF No. 26. Those qualifications are briefly restated here for purposes of this motion for preliminary approval, and for provisional class certification for settlement purposes.

### A.     John A. Yanchunis of Morgan and Morgan Complex Litigation Group

39.     John A. Yanchunis leads Morgan & Morgan's class action group. Morgan & Morgan is America's largest personal injury law firm with over 900 lawyers in offices throughout the United States. Its depth as a trial firm, and its self-funded financial resources, allow it to undertake the largest and most significant cases throughout the country. Mr. Yanchunis — whose career as a trial lawyer began over 42 years ago following the completion of a two-year clerkship with United States District Judge Carl O. Bue, Southern District of Texas (now deceased) — has efficiently and expeditiously led many privacy related Multidistrict Litigation (MDL) and non-MDL class action proceedings, including as Lead or Co-Lead Counsel in some of the largest privacy class actions. He has focused his practice on class action litigation for over 28 years. Mr. Yanchunis began his work in privacy litigation in 1999 with the filing of *In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001), alleging privacy violations based on the placement of cookies on hard drives of internet users. Beginning in 2003, he served as Co-Lead

Counsel in the successful prosecution and settlement of privacy class action cases involving the protection of privacy rights of more than 200 million consumers under the Driver's Protection Privacy Act ("DPPA") against the world's largest data and information brokers, including Experian, R.L. Polk, Acxiom, and Reed Elsevier (which owns Lexis/Nexis). *See Fresco v. Auto. Directions, Inc.*, No. 03-61063-JEM (S.D. Fla.), and *Fresco v. R.L. Polk*, No. 07-cv-60695-JEM (S.D. Fla.). Subsequently, he also served as Co-Lead Counsel in the DPPA class cases, *Davis v. Bank of Am.*, No. 05-cv-80806 (S.D. Fla.) ($10 million class settlement), and *Kehoe v. Fidelity Fed. Bank & Trust*, No. 03-cv-80593 (S.D. Fla.) ($50 million class settlement). For more information, *see* Declaration of John Yanchunis in Support of Motion for Appointment As Interim Class Counsel at ECF No. 26-1, and Exhibit A thereto at ECF No. 26-2.

### B.   Julie Braman Kane of Colson Hicks Eidson

40.   Julie Braman Kane has decades of experience successfully representing plaintiffs in high-stakes litigation. A partner of one of Florida's premium law firm, Colson Hicks Eidson, since 1999, she has secured multimillion-dollar verdicts and settlements in diverse areas including medical malpractice, class actions, pharmaceutical litigation, commercial litigation and personal injury. Her litigation practice focuses exclusively on the representation of plaintiffs, and she is banded by Chambers and Partners as well as recognized by Lawdragon's 500 Leading Litigators in America for her litigation on behalf of plaintiffs.

41.   Ms. Kane currently serves as Lead and Liaison counsel in the *In Re: Monat Hair Products Multidistrict Litigation* and on the Executive Committee for *Allergan Biocell* MDL. She previously served as Liaison counsel for *the In Re: Mednax Data Breach* MDL, on the Plaintiffs' Steering Committee for the *In Re 21st Century Oncology Customer Data Security Breach* MDL Litigation, was counsel to the Receiver in the *SEC v. Mutual Benefits Corporation* receivership, and she was co-lead counsel for the class in the Menorah Gardens cemetery desecration litigation

against Service Corporation International. For more information, see ECF 26-7 (resume of Ms. Kane).

### C.   Stuart A. Davidson of Robbins Geller Rudman & Dowd LLP

42.   Stuart Davidson is a partner in Robbins Geller Rudman & Dowd LLP's Boca Raton office. His practice focuses on complex consumer class actions, including cases involving deceptive and unfair trade practices, privacy and data breach issues, and antitrust violations. He has served as class counsel in some of the nation's most significant privacy and consumer cases, including: *In re Facebook Biometric Information Privacy Litig.*, No. 3:15-cv-03747-JD (N.D. Cal.) ($650 million recovery in a cutting-edge class action concerning Facebook's alleged privacy violations through its collection of user's biometric identifiers without informed consent); *In re Yahoo! Inc. Customer Data Sec. Breach Liti.*, No. 5:16-md-02752-LHK (N.D. Cal.) ($117.5 million recovery in the largest data breach in history); *Kehoe v. Fidelity Federal Bank & Trust*, No. 9:03-cv-80593-DTKH (S.D. Fla.) ($50 million recovery in Driver's Privacy Protection Act case on behalf of half-a-million Florida drivers against a national bank); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, No. 3:11-md-02258-AJB-MDD (S.D. Cal.) (settlement valued at $15 million concerning the massive data breach of Sony's PlayStation Network); and *In re Solara Medical Supplies Data Breach Litig.*, No. 3:19-cv-02284-H-KSC (S.D. Cal.) ($5 million all-cash settlement for victims of healthcare data breach). For more information, *see* ECF 26-4 (resume of Mr. Davidson and firm resume of Robbins Geller).

### D.   Gary M. Klinger of Milberg PLLC

43.   Gary Klinger is a Senior Partner at Milberg, PLLC ("Milberg") and Chair of its Cybersecurity and Data Privacy Practice Group. Mr. Klinger is recognized as one of the most respected data privacy attorneys in the United States, having been ranked by Chambers and

Partners as Band 3 for Privacy & Data Security Litigation (2024 and 2025) and having been selected to Lawdragon's 500 Leading Litigators in America for his accomplishments in privacy litigation (2024 and 2025). Law360 also highlighted Mr. Klinger's work in the privacy space.

44.     Mr. Klinger has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country. *See, e.g., In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (where Mr. Klinger was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers); *Isaiah v. LoanDepot, Inc*., 8:24-cv-00136-DOC-JCE (C.D. Cal) (where Mr. Klinger was appointed co-lead counsel in a data breach that impacted 17 million consumers). Mr. Klinger and his firm have played an important role in developing the favorable case law that many plaintiffs rely on in the data breach space. *See e.g., Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal with prejudice of a data breach case and finding Article III standing); *In re Arthur J. Gallagher Data Breach Litig*., 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers); *Flores v. Aon Corp*., 2023 IL App. (1st) (230140) (where Mr. Klinger obtained reversal of a dismissal with prejudice in a data breach class action); In re Blackbaud, Inc., Customer Data Breach Litig., No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case).

45.     Over the past three years, Mr. Klinger has settled on a classwide basis more than 100 class actions involving privacy violations, the majority of which are data breaches, in state and federal courts across the country as lead or co-lead counsel. To his knowledge, no other

attorney in the country has settled and won court approval of more data breach class actions during this period. For more information, see ECF 26-6 (resume of Mr. Klinger and firm resume of Milberg).

### E. Adam E. Polk of Girard Sharp, LLP

46.     Adam E. Polk is a partner at Girard Sharp who takes a client-focused approach to each matter he handles. A devoted and experienced advocate, Mr. Polk concentrates his practice on complex privacy, consumer, and securities class actions. Mr. Polk's experience covers all aspects of civil litigation, from initial case investigation and complaint preparation through settlement or trial.

47.     Mr. Polk currently serves as sole lead counsel in *In re Delta Dental of California Data Breach Litigation* (privacy litigation on behalf of Delta employes and insureds whose personal information was compromised in a recent data breach); *In re Accellion Data Breach Litigation* (represents certified class in privacy litigation on behalf of consumers nationwide whose personal information was compromised in a breach of the Accellion File Transfer Appliance); *In re Blue Shield of California Data Privacy litigation* (an ongoing data privacy case centering on allegations that Blue Shield transmitted personal health information to Google and Meta without consent); *In re Illumina Inc. Shareholder Litigation* (an action alleging violations of the Securities Act of 1933); and *In re Arcadium Litihium Shareholder Litigation* (an action alleging violations of the Securities Act of 1933). He has recently served successfully as lead counsel in a number of cases that have resolved favorably for his clients, including *In re Pacific Fertility Center Litigation* (a product defect case related to the failure of an IVF tank holding human eggs and embryos that Mr. Polk successfully tried to verdict); and *In re PFA Insurance Marketing Litigation* (a consumer

protection class action alleging the unfair and deceptive sale of life insurance that resolved favorably for his clients).

48.     In addition to his general complex litigation experience, Mr. Polk has substantial experience in privacy litigation. His recent appointments as lead or co-lead counsel in the *Delta*, *Accellion*, and *Blue Shield* cases follows years of leading cases on behalf of consumers whose privacy rights were violated. For more information, see ECF 26-5 (resume of Mr. Polk and firm resume of Girard Sharp).

**F.     M. Anderson Berry of Emery Reddy, PC**

49.     M. Anderson Berry is a partner with Emery Reddy where he heads the data breach complex litigation and *qui tam* practices. He brings substantial experience in complex litigation matters with a history of litigating in an efficient and practical manner, including as Lead Class Counsel, Co-Lead Class Counsel, and as a member of numerous Plaintiffs' Executive Committees. Mr. Berry has an extensive background in privacy and consumer/government fraud litigation, actively participating in a currently sealed False Claims Act case involving widespread cybersecurity fraud upon the United States, and data privacy class action litigations filed in federal and state courts across the nation. Before joining the Emery Reddy in 2025, Mr. Berry was a partner at The Arnold Law Firm, worked as an Assistant United States Attorney for the Eastern District of California (where he handled a wide variety of complex cases and recovered millions of dollars for the United States), and practiced at one of the world's largest law firms, Jones Day, where he represented clients in international arbitration and complex commercial litigation, including defending class action allegations. For more information, see ECF No. 242-1 (resume of Mr. Berry).

50.     The biographies above, and those previously submitted in connection with the Motion for Appointment As Interim Class Counsel, demonstrate our vast experience as vigorous

data breach class action litigators.  Our qualifications, along with the substantial time and resources devoted to vigorous litigation of this action for over four years (as described above), demonstrate our adequacy as Class Counsel.

## COUNSEL'S RECOMMENDATIONS

51.     Our collective years of experience in representing individuals in complex class actions — including data breach and privacy class actions — informed Plaintiffs' settlement position, and the needs of Plaintiffs and the Settlement Class. As Class Counsel, we believe in the merits of the claims brought in this case, but we are also aware that a successful outcome is uncertain and would be achieved only after prolonged, arduous litigation with the attendant risk of drawn-out appeals. We have fully investigated the facts and legal claims; prepared the various complaints; conducted extensive formal discovery and negotiated and reached an Agreement after three rounds of mediation at arm's-length, in good faith, and without collusion. Based upon our collective substantial experience, it is our opinion that the settlement of this matter provides significant relief to the Settlement Class as it is well within the range of other data breach settlements in the relief that it provides and addresses the common types of repercussions sustained by consumers following a data breach and thus warrants the Court's preliminary approval as the Settlement is fair, reasonable, and adequate.

52.     The Agreement was reached following adversarial arm's-length negotiations, conducted in good faith and without collusion, with full knowledge of the facts, the law, and the inherent risks in the Litigation, and with the active involvement of the Plaintiffs. After the settlement was reached, the Settling Parties worked diligently to: (a) finalize the settlement documentation, including the Settlement Agreement and accompanying exhibits, and Plaintiffs'

Motion for Preliminary Approval with this declaration in support; and (b) solicit bids and mutually agree on a Settlement Administrator.

53.     The Settlement Agreement's terms are designed to address the alleged harms caused by the data breach, including by providing reimbursement for Out-of-Pocket losses, as well as Pro Rata Cash Payment awards for California and non-California residents, and identity theft protection offered to the entire Settlement Class.

54.     This result is particularly favorable given the risks of continued litigation, risks that included the uncertain outcome of the motion for class certification. A settlement today not only avoids the risks of continued litigation, but it also provides benefits to members of the Settlement Class now as opposed to after years of risky litigation.

55.     The Settlement Agreement's benefits unquestionably provide a favorable result to the members of the Settlement Class, placing the Settlement Agreement well within the range of possible final approval and satisfying the requirements for preliminary approval; therefore, the Court should grant preliminary approval.

56.     Additionally, the Notice Plan contemplated by the Settlement Agreement meets all due process requirements and provides the best practicable method to reach the Settlement Class Members and is consistent with other class action notice programs that have been approved by various courts for similarly situated matters. The notices themselves are clear and straightforward. They define the Settlement Class; clearly describe the options available to Settlement Class Members and the deadlines for taking action; describe the essential terms of the settlement and apprise the Settlement Class of the pendency of the case; the terms of the Settlement; our request for an award of attorney's fees, costs, and expenses; Settlement Class Members' rights to opt-out

of or object to the Settlement; describe the date, time, and place of the Final Fairness Hearing; and prominently display our addresses and phone numbers.

57.     The Notice is designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the Settlement, with adequate time to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether they would like to object or opt-out. *See generally* Declaration of Andrea Dudinsky of Kroll Settlement Administration LLC in Connection with Preliminary Approval of Settlement, attached hereto as **Exhibit A**.

58.     Based upon our decades of work litigating complex class actions, we ask the Court to grant preliminary approval of the Settlement Agreement and enter the proposed Preliminary Approval Order attached to the Settlement Agreement and filed with this motion.

## PLAINTIFFS

59.     Plaintiffs have demonstrated that they are well-suited to represent the Settlement Class. They (a) have a genuine personal interest in the outcome of the case; (b) selected well-qualified Class Counsel; (c) produced information and documents to us to permit investigation and development of the complaints; (d) sat for depositions; (e) have been available as needed throughout the Litigation; and (f) have been monitoring the Litigation. These Plaintiffs, like all Settlement Class Members, have been alleged victims of the same Data Security Incident, and thus have common interests with the Settlement Class. Moreover, they have ably represented the Settlement Class, maintaining contact with us, assisting in the investigation of the case, reviewing the material terms of the Settlement Agreement, remaining available for consultation throughout the settlement negotiations and answering our many questions.

Pursuant to 28 U.S.C. § 1746, we declare signed under penalty of perjury of the United States of America that the foregoing is true and correct.

*/s/John A. Yanchunis*

JOHN A. YANCHUNIS
Florida Bar No. 324681
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor Tampa,
Florida 33602 (813) 223-5505
jyanchunis@ForThePeople.com
*Chair, Plaintiffs' Executive Committee*

*/s/Julie Braman Kane*

JULIE BRAMAN KANE
Florida Bar No. 980277
**COLSON HICKS EIDSON**
806 S. Douglas Road, Suite 1200
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
julie@colson.com
*Plaintiffs' Liaison Counsel*

*/s/Stuart A. Davidson*

STUART A. DAVIDSON
Florida Bar No. 0084824
**ROBBINS GELLER RUDMAN & DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: (561) 750-3000
(561) 750-3364 (fax)
sdavidson@rgrdlaw.com

*/s/Adam E. Polk*

ADAM E. POLK (*pro hac vice*)
**GIRARD SHARP LLP**
601 California St, Ste 1400

19

San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com

*/s/Gary M. Klinger*

GARY M. KLINGER (*pro hac vice*)
**MILBERG PLLC**
227 Monroe Street, Suite 2100
Chicago, IL 60606
866.252.0878
gklinger@milberg.com

*/s/M. Anderson Berry*

M. ANDERSON BERRY (*pro hac vice*)
**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
916.823.6955 (Tel)
206.441.9711 (Fax)
anderson@emeryreddy.com

*Members, Plaintiffs' Executive Committee*

# EXHIBIT 2A

Declaration of Settlement Administrator

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| In re LAKEVIEW LOAN SERVICING DATA BREACH LITIGATION | Master File No. 1:22-cv-20955-DPG <br><br> <u>CLASS ACTION</u> <br><br> **DECLARATION OF ANDREA DUDINSKY OF KROLL SETTLEMENT ADMINISTRATION LLC IN CONNECTION WITH PRELIMINARY APPROVAL OF SETTLEMENT** |

I, Andrea Dudinsky, hereby declare:

1.      I am a Director of Kroll Settlement Administration LLC ("Kroll"),[1] the proposed Settlement Administrator to be appointed in the above-captioned case, whose principal office is located at One World Trade Center, 285 Fulton Street, 31st Floor, New York, New York 10007. I am over 21 years of age and am authorized to make this declaration on behalf of Kroll and myself. The following statements are based on my personal knowledge and information provided by other experienced Kroll employees working with me and/or under my general supervision. This declaration is being filed in connection with preliminary approval of the Settlement.

2.      Kroll has extensive experience in class action matters, having provided services in class action settlements involving antitrust, privacy, securities, labor and employment, consumer and government enforcement matters. Kroll has provided class action services in over 3,000 settlements varying in size and complexity over the past 50 years.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement (as defined below).

DECLARATION OF ANDREA DUDINSKY IN CONNECTION WITH PRELIMINARY APPROVAL

3.      Kroll is prepared to provide a full complement of Settlement Administration services in connection with that certain Stipulation of Class Action Settlement (the "Settlement Agreement") entered into in this Litigation, including dissemination of the notice by email, mail, online media, and through the use of a Settlement Website to be created in connection with this matter.

4.      It is Kroll's understanding that it will be provided with Settlement Class Member Information pursuant to the Settlement Agreement, which will contain a combination of names, addresses, email addresses, and other data elements pertinent to the administration of the Settlement.

## CAFA Notice

5.      On behalf of the Defendants, Kroll will provide notice of the proposed Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b). At Defendants' Counsel's direction, Kroll will send the CAFA Notice, which identifies how to access required documents relating to the Settlement, via first-class certified mail to (a) the Attorney General of the United States; and (b) the applicable state Attorneys General. The CAFA Notice will direct the recipients to the website www.CAFANotice.com, a site that will contain all the documents relating to the Settlement referenced in the CAFA Notice.

## Notice by Mail

6.      Kroll will work with Counsel to format the Short Form Notice for mailing (the "Postcard Notice"). Upon approval, Kroll will coordinate the preparation of Postcard Notice proofs for Counsel's review and final approval.

7.      As required under paragraph 11.1(d) of the Settlement Agreement, Kroll will send the Postcard Notice by first-class mail to the physical mailing addresses of Settlement Class Members who have a physical mailing address in the Settlement Class Member Information to be provided by Defendants. The Postcard Notice will include a summary "tear-off" claim form with Business Reply Mail postage that Settlement Class Members may use to easily make a claim for the Pro Rata cash payment and credit monitoring services.

DECLARATION OF ANDREA DUDINSKY IN CONNECTION WITH PRELIMINARY APPROVAL

8.      In preparation for the Postcard Notice mailing, Kroll will send the Settlement Class Member Information through the United States Postal Service's ("USPS") National Change of Address ("NCOA") database. The NCOA process will provide updated addresses for Settlement Class Members who have submitted a change of address with the USPS in the last 48 months, and the process will also standardize the addresses for mailing. Kroll will then prepare a mail file of Settlement Class Members that are to receive the Postcard Notice via first-class mail.

9.      As required under paragraph 11.1(e) of the Settlement Agreement, Postcard Notices returned by the USPS with a forwarding address will be automatically re-mailed to the updated address provided by the USPS.

10.     As required under paragraph 11.1(f) of the Settlement Agreement, Postcard Notices returned by the USPS undeliverable as addressed without a forwarding address at least fourteen (14) calendar days prior to the Opt-Out Date and Objection Date will be sent through an advanced address search process in an effort to find a more current address for the record. If an updated address is obtained through the advanced search process, Kroll will re-mail the Postcard Notice to the updated address, within seven (7) days of obtaining the updated address.

**Targeted Internet Ad Campaign**

11.     Social media ads on Facebook and Instagram will appear natively to users in-platform via such placements as Feed, Stories, video feeds, and more.[2] These ads will primarily reach adults 18 years of age or older who have expressed an interest in or liked Pages related to mortgage loans.

12.     Social media advertising will include relevant information for the user to self-identify. If the user clicks on the social media ad, an embedded link takes them to the Settlement Website, where they can learn more about the Settlement.

13.     The targeted internet ad campaign is estimated to deliver approximately 5.9 million impressions over 30 days.

---

[2] Feeds are where Facebook and Instagram users look for information about friends, family, news, and brand information. Along with Feeds, Stories and Reels comprise Facebook's and Instagram's main content formats.

DECLARATION OF ANDREA DUDINSKY IN CONNECTION WITH PRELIMINARY APPROVAL

14.     The direct Notice Plan as outlined in the Settlement Agreement and as expected to be implemented by Kroll contemplates robust Settlement Class Member Information to be provided by Defendants that will allow for direct notice to reach the vast majority of Settlement Class Members through direct mail and email, consistent with due process. Based upon information provided by Counsel, and assuming data received is relatively up to date, Kroll estimates an average undeliverable rate of no more than 10% and thus projects direct notice will likely reach 90% of the likely proposed Settlement Class Members. This reach is further supplemented by the targeted internet ad campaign. These assumptions are subject to the accuracy and quality of the data received. Kroll's estimated reach for direct notice is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches[3] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[4]

### Settlement Website

15.     Kroll will work with Counsel to create a dedicated Settlement Website. The Settlement Website URL will be determined and approved by Counsel. The Settlement Website will contain a summary of the Settlement, answers to frequently asked questions, will allow Settlement Class Members to contact the Settlement Administrator with any questions or changes of address, provide notice of important dates such as the Final Fairness Hearing, Claims Deadline, Objection Date, and Opt-Out Date, and will provide Settlement Class Members who file Claim Forms online the opportunity to select an electronic payment method, including Venmo, Zelle, PayPal, or ACH, or payment by check. The Settlement Website will also contain downloadable copies of relevant documents, including the Settlement Agreement, Long Form Notice, Short Form

---

[3] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

[4] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation:  A Pocket Guide for Judges, at 27 (3d ed. 2010).

DECLARATION OF ANDREA DUDINSKY IN CONNECTION WITH PRELIMINARY APPROVAL

Notice, Claim Form, Preliminary Approval Order, and any other materials agreed upon by Counsel and/or required by the Court.

### Toll-Free Telephone Number

16.     Kroll will also establish a toll-free telephone number for the Settlement. The toll-free telephone number will allow Settlement Class Members to call and obtain information about the Settlement through an Interactive Voice Response system and a live operator option. Settlement Class Members may also request copies of the Long Form Notice and Claim Form, as well as the Settlement Agreement.

### Post Office Box

17.     Kroll will designate a post office box with the mailing address *In re Lakeview Loan Servicing Data Breach Litigation*, c/o Kroll Settlement Administration LLC, P.O. Box <<####>>, New York, NY 10150-####, in order to receive requests for exclusion, Claim Forms, and correspondence from Settlement Class Members.

### Reminder Notices

18.     If directed by Counsel, Kroll will send reminder notices to Settlement Class Members who have not yet submitted a Claim Form and have not opted out of the settlement. The reminder notice will be sent in the same manner as the initial Short Form Notices were sent and delivered.

### Notice and Administration Expenses

19.     Based on Kroll's current understanding of the Settlement Class size and requested Settlement Administration services and typical administration activity volumes, estimated Notice and Administration Expenses are approximately $6,400,000 for fees, costs and other expenses incurred for Settlement Administration pursuant to the Settlement Agreement. The current estimate is subject to change depending on factors such as the actual Settlement Class size, claim rate, changes in U.S. postage rates, and/or any Settlement Administration scope change not currently under consideration.

DECLARATION OF ANDREA DUDINSKY IN CONNECTION WITH PRELIMINARY APPROVAL

I declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge and that this declaration was executed on January 27, 2026, in Kansas City, Missouri.

_____

ANDREA DUDINSKY

DECLARATION OF ANDREA DUDINSKY IN CONNECTION WITH PRELIMINARY APPROVAL