**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Master File No. 1:22-cv-20955-DPG**

**In re LAKEVIEW LOAN SERVICING**
**DATA BREACH LITIGATION**                    **CLASS ACTION**

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT AND**
**INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

I.    BACKGROUND AND PROCEDURAL HISTORY.........................................................2

II.   SUMMARY OF THE SETTLEMENT ......................................................................3

      A.  Settlement Class..............................................................................................3

      B.  Settlement Fund and Benefits ........................................................................3

      C.  Attorneys' Fees, Expenses, and Service  ......................................................4

III.  NOTICE PLAN, CLAIMS, OPT-OUTS AND OBJECTIONS .........................................5

IV.   ARGUMENT...........................................................................................................7

      A.  The Settlement Class Should Be Finally Certified, and the Appointments of Class
          Representatives, Class Counsel, and the Settlement Administrator Should Be
          Affirmed ...........................................................................................................7

      B.  The Settlement Should be Finally Approved ................................................8

          1.  Adequacy of Representation (Rule 23(e)(2)(A)) ..................................9

          2.  The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B)) ............10

          3.  This Case Settled at an Appropriate Stage of the Proceedings (*Bennett* Factor
              6) ...........................................................................................................11

          4.  The Settlement Class Overwhelmingly Supports the Settlement (*Bennett*
              Factor 6)...............................................................................................12

          5.  The Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and *Bennet* Factors
              1-4 .........................................................................................................13

          6.  The Equitable Treatment of the Settlement Class Members (Rule 23(e)(2)(D))
              ...............................................................................................................15

      C.  Notice was Adequate and Satisfies Rule 23 and Due Process Requirements...........16

V.    CONCLUSION........................................................................................................17

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                              **Page(s)**

*Bennett v. Behrig Corop*
    N737 F.2d 982 (11th Circ. 1984).............................................................................................. 9

*Burrows v. Purchasing Power, LLC,*
    2013 WL 10167232 (S.D. Fla. Oct. 7, 2013)........................................................................14

*Carter v. Vivendi Ticketing US LLC,*
    2023 WL 8153712 (C.D. Cal. Oct. 30, 2023)........................................................................15

*Gonzalez v. TCR Sports Broad. Holding, LLP,*
    2019 WL 2249941 (S.D. Fla. May 24, 2019))......................................................................12

*Hall v. Bank of America, N.A.,*
    2014 WL 7184039 (S.D. Fla. Dec. 17, 2014)........................................................................13

*Hamilton v. SunTrust Mortg. Inc., 2014*
    WL 5419507 (S.D. Fla. Oct. 24, 2014)..................................................................................13

*In re Checking Account Overdraft Litig.,*
    275 F.R.D. 654 (S.D. Fla. 2011)............................................................................................11

*In re Equifax Inc. Customer Data Sec. Breach Litig.,*
    999 F.3d 1247 (11th Cir. 2021) .............................................................................................14

*In Re Lincare Holdings Inc. Data Breach Litig.,*
    No. 8:22-cv-1472-TPB-AAS (M.D. Fla. June 24, 2024), ECF No. 126 ............................14

*In re Mednax Services, Inc., Customer Data Security Breach Litigation*
    2024 WL 1554329 (S.D. Fla. Apr. 10, 2024) .....................................................................9,15

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.,*
    No. 21-MD-02994-RAR (S.D. Fla. Oct. 5, 2024), ECF No. 328 .......................................14

*Lipuma v. Am. Express Co.,*
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) .................................................................................12

*Lomedico v. MarineMax, Inc.*
    No. 8:24-cv-01784-MSS-AEP (M.D. Fla. June 24, 2025) ..................................................13

*Mullane v. Cent. Hanover Bank & Tr. Co.,*
    339 U.S. 306 (1950)...............................................................................................................16

*Perez v. Asurion Corp.,*
    501 F. Supp. 2d 1360 (S.D. Fla 2007) .................................................................11

*Poertner v. Gillette Co.,*
    618 F. App'x 624 (11th Circ. 2015) ....................................................................11

*Saccoccio v. JP Morgan Chase Bank, N.A.,*
    297 F.R.D. 683 (S.D. Fla. 2014).........................................................................11

*Sherwood v. Horizon Actuarial,*
    No. 1:22-cv-01495-ELR (N.D. Ga. April 2, 2024), ECF No. 94 ......................15

*Wilson v. EverBank,*
    2016 WL 457011 (S.D. Fla. Feb. 3, 2016) .........................................................13

## **RULES**

Fed R. of Civ. P. 23...............................................................................................*Passim*

Fed. R. Civ. P. 23(a) ..........................................................................................7, 17

Fed. R. Civ. P. 23(a)(4)............................................................................................8

Fed. R. Civ. P. 23(b)(3)......................................................................................7, 17

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................16

Fed. R. Civ. P. 23(e) ................................................................................................7

Fed. R. Civ. P. 23(e)(2)............................................................................................9

Fed. R. Civ. P. 23(e)(2)(A) ......................................................................................9

Fed. R. Civ. P. 23(e)(2)(B) ....................................................................................10

Fed. R. Civ. P. 23(e)(2)(C) ....................................................................................13

Fed. R. Civ. P. 23(e)(2)(D) ....................................................................................15

Fed. R. Civ. P. 23(g)(1)(A)......................................................................................8

Fed. R. Civ. P. 23(g)(1)(B) ......................................................................................8

Fed. R. Civ. P. 23(h)(1)..........................................................................................17

## **OTHER AUTHORITY**

FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010) ............................................................................6

Pursuant to Fed. R. Civ. P. 23 and the Court's Order dated February 4, 2026 (ECF No. 406), granting preliminary approval of the proposed Settlement, Plaintiffs Mark Arthur, Jorge Gonzalez, Cindy Villanueva, Deborah Hamilton, Michael Kassem, Beth Berg, Savannah Farley, Thomas Lapenter, Hardik Sevak, Peter Wojciechowski, Kimberley Rowton, John McMahon, Jay Saporta, David Cunningham, Pedro Rubio, Norma Grossman, Charlene Lazarus, David Miller, Douglas Pearl, Steven Harris, Sarah Carvalho, and Nili Steiner ("Plaintiffs" or "Class Representatives")[1] respectfully submit this Unopposed Motion for Final Approval of Class Action Settlement, supported by the Declaration of John A. Yanchunis in Support of Motion for Final Approval of Class Action Settlement and Award of Attorneys' Fees, Expenses, and Service Awards ("Yanchunis Decl.") attached as **Exhibit 1**, and the Declaration of Andrea Dudinski of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement ("Kroll Decl."), attached as **Exhibit 2**.

On February 4, 2026, this Court preliminarily approved the proposed Settlement (ECF No. 406). The Settlement provides for substantial Settlement Class Member Benefits, including a non-reversionary, all-cash $26,000,000.00 Settlement Fund, from which Settlement Class Members may elect to receive Pro Rata Cash Payments, Reimbursement for Out-of-Pocket Losses, and one year of CyEx Financial Shield Total. The Settlement Fund will be used to pay Settlement Class Member Benefits, all Settlement Administration Costs, and any Court-awarded attorneys' fees and expenses, and Taxes and Tax Expenses.

Plaintiffs and Class Counsel now move the Court for Final Approval.[2] The Settlement

---

[1] All capitalized terms used herein shall have the same meanings as those defined in the Settlement Agreement.  ECF 405-1, Exh. 1A.

[2] Class Counsel's Motion for an Award of Attorneys' Fees and Expenses is being filed contemporaneously with this Motion for Final Approval.

satisfies all the criteria for Final Approval and there has been an overwhelmingly positive reaction from the Settlement Class. As of May 11, 2026, Kroll has received 234,758 Claim Forms through the mail and 315,348 Claim Forms filed electronically through the Settlement Website, for a total of 550,106 Claims received. Ex. 2, ¶ 15. This represents a 9.5% claims rate with the claims period being open until June 22, 2026. *Id*. There have been only three objections and fifty-seven opt-outs out of approximately 5.8 million Class Members as of the date of this Motion.[3] *See Id.*, ¶ 18.

The response of the Settlement Class so far affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate. *See* ECF No. 406. All applicable factors under Rule 23(e) are satisfied. Notice to the Settlement Class was robust and effective, with direct notice reaching 99.10% of the Settlement Class Members thus meeting all due process considerations. Defendants do not oppose the relief sought in this motion. For all the reasons set forth herein, the Court should grant Final Approval of the Settlement.

## I.      BACKGROUND AND PROCEDURAL HISTORY

In the interest of brevity and efficiency, Plaintiffs incorporate by reference the background and procedural history outlined in their Unopposed Motion for Preliminary Approval (ECF No. 405-1), their concurrently filed Motion for Attorneys' Fees, Costs, and Service Awards, and the Yanchunis Declaration.

Preliminary Approval of the Settlement was granted on February 4, 2026, thereafter, Kroll commenced the Notice Plan and began overseeing the Claim submission process. *See generally* Ex. 2. The Notice Plan has now been completed in full compliance with the Agreement and the Preliminary Approval Order, and the Claims process is ongoing. *Id.*

---

[3] Class Counsel will respond to the existing objections and any other objections that are filed by the June 11, 2026, deadline in their reply brief that is due no later than June 25, 2026.

II.     **SUMMARY OF THE SETTLEMENT**

A.     **Settlement Class.** Plaintiffs seek Final Approval of the Settlement on behalf of the following Settlement Class: all persons residing in the United States who were sent notice from any Defendant that their personally identifiable information ("PII") was potentially accessed during the Incident. SA ¶ 1.44. The Settlement Class specifically excludes: (i) Defendants and their respective officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge and/or Magistrate assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Incident or who pleads *nolo contendere* to any such charge. *Id*. The Settlement Class consists of 5,774,688 individuals.

B.     **Settlement Fund and Benefits.**

The settlement negotiated on behalf of the Settlement Class establishes a non-reversionary Settlement Fund of twenty-six million dollars ($26,000,000). SA ¶ 1.43. From the Settlement Fund, Settlement Class Members could claim: (i) reimbursement of Out-of-Pocket Losses up to $5,000.00 per person for documented out-of-pocket expenses actually and reasonably incurred that are fairly traceable to the Incident (*id*. ¶ 3.2(a)); and (ii) two forms of *pro rata* Cash Payments. The first form of Pro Rata Cash Payment is for California Settlement Class Members and consists of two *pro rata* Shares of the Remainder Settlement Fund for each Settlement Class Member residing in California at the time of the Incident who submits a Valid Claim. The second form of *pro rata* Cash Payment is for all other Settlement Class Members who are not eligible to receive the California Pro Rata Cash Payment and who submit a valid claim and consists of a single pro rata Share of the Remainder Settlement Fund. *Id*. ¶ 1.33.

In addition, all Settlement Class Members are eligible to receive one year of identity theft

3

monitoring services in the form of CyEx's Financial Shield Total service, a state-of-the-art identity theft monitoring product designed to proactively protect against identity theft. Financial Shield Total includes credit monitoring with three credit bureaus, financial transaction monitoring, monthly credit score and tracker, fictitious identity monitoring, bank and financial account monitoring, address change monitoring, home title monitoring, dark web monitoring, real-time authentication alerts, high-risk transaction monitoring, lost wallet protection, $1,000,000 of insurance coverage for identity theft with no deductible, security freeze assist, victim assistance, and customer support. The one-year period will commence when Settlement Class Members use their activation codes. All costs of Monitoring Services will be paid out of the Settlement Fund. As of January 2026, the retail reference value of Financial Shield Total is $32.95 per month. *Id*. ¶ 3.5. To receive this benefit, Settlement Class Members need only make an election on their Settlement Claim Form. *Id.* ¶ 3.4.

### C. Attorneys' Fees, Expenses, and Service Awards

Pursuant to the Settlement Agreement (SA ¶ 9.2) and contemporaneously with this motion, Class Counsel submits a request to the Court for an award of reasonable attorneys' fees and expenses. Class Counsel seeks an award of one-third (approximately 33.33%) of the $26 million Settlement Fund they secured for the Settlement Class, or $8,666,666.67, as well as an award of their reasonable litigation costs and expenses of $1,708,278.34. The Settlement Agreement also contemplates Service Awards for the Class Representatives in an amount to be approved by the Court. *Id.* ¶ 9.5. Class Counsel's fee motion seeks such awards in the amount of $7,500.00 per Class Representative.

### III. NOTICE PLAN, CLAIMS, OPT-OUTS AND OBJECTIONS

4

The Notice Plan here, designed and carried out by Kroll, was robust, effective, and the best notice practicable under the circumstances. Notice was carried out by a combination of direct mail notice and a targeted social media campaign, as described in the Kroll Decl., Ex. 2.

On February 5, 2026, Kroll sent CAFA notice in accordance with the statute. *Id*. ¶ 4. On February 5, 2026, Kroll received eight (8) data files from the Defendants. The files contained 5,856,693 records with names, physical mailing addresses, a client identifier, and a decedent designation for Settlement Class Members. *Id*. ¶ 7. After taking multiple steps to review and de-duplicate the Class List, they determined that the list contained 5,774,688 unique Settlement Class Members. *Id*.

On March 23, 2026, Kroll caused the mailing of 5,774,688 Short Form Notices via first-class mail. *Id*. ¶ 9. Prior to mailing, in an effort to ensure that Short Form Notices would be deliverable to Settlement Class Members, Kroll ran the list through the USPS's National Change of Address ("NCOA") database and updated the list with address changes received from the NCOA. *Id*. at ¶ 7. After all remailings and additional attempts at delivery, Kroll has reason to believe that Short Form Notices likely reached 5,722,431 of the 5,774,688 Settlement Class Members, which equates to a reach rate of the direct mail notice of approximately 99.02%. *Id*. ¶ 13. This reach rate is consistent with, if not significantly larger than, other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches[4] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.

---

[4] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

A targeted social media campaign was implemented by Kroll Notice Media Solutions, a business unit of Kroll, to supplement direct notice. The media campaign commenced on March 30, 2026, and was substantially completed by April 28, 2026. Impressions were served via Facebook and Instagram. *Id*. ¶ 10. The social media campaign delivered a total of 6,152,455 impressions. *Id*.

The direct notice and digital media campaign were supplemented by Kroll establishing a dedicated Settlement website that "went live" on February 6, 2026. *Id*. ¶ 8. The Settlement Website contains a summary of the Settlement, important dates and deadlines, contact information for the Settlement Administrator, answers to frequently asked questions, downloadable copies of relevant documents, including the Settlement Agreement, Preliminary Approval Order, Long Form Notice, and Claim Form, and allowed Settlement Class Members an opportunity to file a Claim Form online. *Id*.

Finally, on January 21, 2026, Kroll established a toll-free telephone number, (833) 754-5757, for Settlement Class Members to call and obtain additional information regarding the Settlement through an Interactive Voice Response ("IVR") system and by being connected to a live operator. *Id*. ¶ 5.

The response of the Settlement Class, as judged by the objections, opt-outs, and claims rate, is overwhelmingly positive, and demonstrates the effectiveness of the Notice Program. To date, only three people have submitted objections,[5] and there have been only 57 requests for exclusion, out of a class of nearly six million persons. *Id*. ¶ 19. Further, as of May 21, 2026, Kroll has received 234,758 Claim Forms through the mail and 315,348 Claim Forms electronically. *Id.*

---

[5] Class Counsel will separately respond to this, and any other timely filed objections, on or before the June 25, 2026 deadline for Class Counsel to file their reply in support of final approval.

6

¶ 15. This equates to a current claims rate of approximately 9.02%, with the claims still subject to final validation and with over a month remaining until the June 22, 2026 Claims Deadline. This is a high claims rate at both this stage of the claims process, and for comparable data breach settlements overall. The current high claims rate confirms both the effectiveness of the Notice Program, and the positive reaction of this Class to the Settlement.

## IV.    ARGUMENT

### A.    The Settlement Class Should Be Finally Certified, and the Appointments of Class Representatives, Class Counsel, and the Settlement Administrator Should Be Affirmed.

Plaintiffs' Unopposed Motion for Preliminary Approval detailed the bases for certifying the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3). In compliance with Fed. R. Civ. P. 23(e), the Court's Preliminary Approval Order details its findings for why it would be likely to certify the Settlement Class at the Final Approval stage, finding the following requirements were all met with respect to a Settlement Class: standing, ascertainability, numerosity, commonality, typicality, adequacy of representation, predominance, and superiority. ECF No. 406. Nothing has changed since Preliminary Approval was granted and the Settlement Class was provisionally certified. Therefore, for the reasons set forth in Plaintiffs' Preliminary Approval Motion (ECF No. 405-1 at 22-28), and based upon the same analysis that this Court employed in granting preliminary approval, the Court should finally certify the Settlement Class.

Plaintiffs' appointment as the Class Representatives should be affirmed as well, as they remain adequate representatives. For the same reasons the Court found them adequate under Fed. R. Civ. P. 23(a)(4), the Court should also affirm the designation of John A. Yanchunis of Morgan & Morgan Complex Litigation Group, Stuart A. Davidson of Robbins Geller Rudman & Dowd LLP, Adam E. Polk of Girard Sharp LLP, Gary M. Klinger of Milberg, PLLC, Julie Braman Kane

of Colson Hicks Eidson, P.A., and M. Anderson Berry of the Emery Reddy PC as Class Counsel. Federal Rule of Civil Procedure 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B).

Here, Class Counsel are qualified and competent leaders in the field with extensive experience prosecuting and resolving complex class actions, including data breach class actions. Joint Declaration of Class Counsel, ECF No. 403-2, ¶¶ 39-49. Class Counsel zealously represented Plaintiffs and the Settlement Class for over four years throughout the pendency of this Litigation. *See generally* Yanchunis Decl. and Joint Declaration of Class Counsel, ECF No. 403-2. Class Counsel and other plaintiffs' counsel under their direction have devoted substantial time and resources to this Litigation and will continue to do so. Ex. 1, ¶¶ 42(a), 45, 47.

### B. The Settlement Should be Finally Approved.

The Preliminary Approval Order found that the Court would likely finally approve the Settlement after considering and finding the Settlement is fair, adequate, and reasonable under Fed. R. Civ. P. 23(e)(2) and the *Bennett* factors. Now, the Court should grant Final Approval considering those same factors, being able to now judge the Settlement Class's positive reaction to the Settlement with only one objection and receipt of over 524,285 Claims, with the deadline to submit claims not expiring until June 22, 2026.

The Rule 23(e)(2) factors are:

8

(A) the class representatives and class counsel adequately represented the class;
(B) the proposal was negotiated at arms' length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

The *Bennett* factors include the following: (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

### 1.    Adequacy of Representation (Rule 23(e)(2)(A))

As another judge of this Court held in *In re Mednax Services, Inc., Customer Data Security Breach Litigation*, 2024 WL 1554329, at *6 (S.D. Fla. Apr. 10, 2024), "[t]he first factor heavily weighs in favor of granting preliminary approval because both Class Counsel and the Class Representative have adequately represented the Class." Here, Class Counsel thoroughly investigated and analyzed Plaintiffs' claims and engaged in years of formal discovery. Ex. 1, ¶¶ 21-25. Class Counsel fully briefed, argued, and successfully overcame Defendants' two motions to dismiss. *Id*. ¶¶ 14-20. Class Counsel used both formal and informal discovery to learn what caused the Incident and what information was impacted in the Incident, before attending three separate full-day mediation sessions. *Id*. ¶¶ 31-34. Class Counsel also briefed and filed a motion for class certification, *Daubert* motions, and motions to exclude Defendants' declarants, all of which were still pending at the time this case was settled. *Id*. ¶¶ 26-30. Class Counsel used their experience in complex class action litigation, including similar data breach actions, and devoted

substantial time and resources to vigorous litigation. *Id.* ¶¶ 42(a)-(c), (e).

The Class Representatives have more than demonstrated their adequacy for purposes of this Settlement Class by (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) collecting and producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available to Class Counsel as needed throughout the Litigation; and (v) monitoring the Litigation. *Id.* ¶ 55. Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class. Joint Declaration of Class Counsel, ECF No. 403-2, ¶ 59. Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class Members have no diverging interests. *Id.*

### 2.  The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B))

The Settlement is without collusion and the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake, and with the assistance of three different neutral mediators, Rodney Max of Upchurch Watson White & Max, during the initial unsuccessful mediation session that took place in April 2023, the Honorable Scott Silverman (ret.), during the unsuccessful mediation in December of 2024, and finally the Honorable Diane Welsh (ret.), during a third mediation in November of 2025, at which the parties ultimately reached a resolution. Ex. 1, ¶¶32-34, 36. These circumstances weigh in favor of final approval. *See, e,g.*, *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) (concluding that a settlement achieved only after engaging in extensive arm's-length negotiations moderated by an experienced mediator belies any suggestion of collusion); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) (approving settlement where it "was reached in the absence of collusion, is the product of

10

informed, good-faith, arms'-length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced mediator"); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

The Parties engaged in significant offensive and defensive discovery and attendance at numerous mediation sessions have ensured a fair, reasonable, and adequate Settlement. *Id.*; *see also Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (approving settlement where parties settled relatively early with experienced counsel who had sufficient information to evaluate merits of the case, engaged in full-day mediation, and engaged in post-mediation discovery).

### 3.  This Case Settled at an Appropriate Stage of the Proceedings (*Bennett* Factor 6)

The timing of this Settlement—after Plaintiffs partially defeated a motion to dismiss, discovery has been exchanged, and numerous pretrial motions have been briefed and are pending decision by the Court—further supports final approval. This *Bennett* factor "is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (citations omitted).

Here, the Parties engaged in significant formal discovery to understand the strengths and weaknesses in the Litigation. Ex. 1, ¶¶ 21-23. They participated in the exchange of additional information in advance of each mediation as well. Thus, the Settling Parties had sufficient information to adequately evaluate the merits of the case. Among the information shared through formal and pre-mediation discovery was class size and demographics, information regarding the

11

technical aspects of the Incident, and Defendants' liability and security enhancements. Additionally, Class Counsel relied on their experience presenting expert evidence and litigating the key legal issues in other major data breach cases to assist in evaluating the merits of this case. Ex. 1, ¶ 42(c). As recognized in other cases, "[i]nformation obtained from other cases may be used to assist in evaluating the merits of a proposed settlement of a different case." *Lipuma*, 406 F. Supp. 2d at 1325. It is clear that based on the knowledge Class Counsel brought to this matter and the amount of information exchanged throughout the pendency of this Litigation, Plaintiffs had more than sufficient information available to weigh the benefits of Settlement against further Litigation. *See, e.g.*, *Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *5 (S.D. Fla. May 24, 2019) ("the early settlement reached between the parties and the extent to which the parties were informed about the merits of their claims and defenses weighs in favor of approving the Settlement Agreement.").

### 4. The Settlement Class Overwhelmingly Supports the Settlement (*Bennett* Factor 5)

The reaction of the Settlement Class to the Settlement has been extremely positive. Out of nearly six million Settlement Class members, only three objections have been filed to date, and 57 opt-outs have been received. *See* Ex. 2 ¶ 18. These are powerful indicators that the Settlement is fair, reasonable, and adequate and worthy of final approval. *See Hall v. Bank of America, N.A.*, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (finding the settlement was reasonable and fair where only nine (9) objections were filed on behalf of seventeen (17) class members, which equated to less than 0.0016% of the class); *Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (finding the fact there was only one objection to the settlement, which equated to less than 0.003% of the class, to be "clear evidence of [the settlement's]

12

reasonableness and fairness). The lack of opposition to the Settlement, along with the minimal opt-outs (less than 0.00001%), overwhelmingly supports the Court's granting of final approval.

**5.   The Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and *Bennett* Factors 1-4)**

Although Plaintiffs believe the claims asserted are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendants would be complex, expensive, and pose significant risks that would make any recovery for the Settlement Class uncertain. Data breach class actions are risky. *Mednax*, 2024 WL 1554329 at *7; *Lomedico v. MarineMax, Inc.* No. 8:24-cv-01784-MSS-AEP (M.D. Fla. June 24, 2025), ECF. No. 38 at 13 ("Continued litigation of this action would be complex, expensive, and risky for both Parties."). The Settlement's fairness is underscored by the obstacles the Settlement Class would face in ultimately succeeding on the merits, as well as the litigation's expense and likely duration. *Mednax*, 2024 WL 1554329 at *7. Should this litigation continue, class certification is a significant hurdle that introduces additional complexities, including the potential for denial of certification. *See, e.g., Wilson v. EverBank,* 2016 WL 457011, at *8 (S.D. Fla. Feb. 3, 2016) ("Plaintiffs might have recovered nothing for themselves or the class had they proceeded with litigation. Plaintiffs would have faced motions for class certification and for summary judgment, and possibly a lengthy trial and an appeal. Claims based on similar facts and the same [or similar] legal theories as those advanced here have met with mixed results in courts across the country, on both dispositive motions and class certification."). Given those risks, the Settlement provides outstanding benefits. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) ("Settlements also save the bench and bar time, money, and headaches").

The Settlement is well within the range of possible recoveries and is fair, adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7,

13

2013) (finding similar settlement in doubtful and disputed data breach case to be fair, reasonable, and adequate). In determining whether a settlement is fair and reasonable, the Court must also examine the range of possible damages Plaintiffs could recover at trial and combine this with an analysis of Plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries. *See, e.g.*, *Equifax*, 999 F.3d at 1274 (affirming district court's decision that settlement was "fair, reasonable, and adequate because the settlement reflects relief the Court finds is in the high range of what could have been obtained had the parties continued to litigate."). In terms of relief offered, the Settlement is as comprehensive as nearly any other data breach settlement, and the specific benefits compare favorably to what has been previously approved by federal courts and affirmed on appeal, including a sizeable reimbursement for up to $5,000 of Out-of-Pocket Losses; Pro Rata Cash Payments; and medical monitoring from CyEx.

A few recent examples of approved data breach settlements from federal courts in Florida and the Eleventh Circuit demonstrate how the instant Settlement compares very favorably to other similar common fund data breach settlements. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR (S.D. Fla. Oct. 5, 2024), ECF No. 328 (Ruiz, J.) (approving $6 million settlement on behalf of 2,712,790 class members); *In Re Lincare Holdings Inc. Data Breach Litig.*, No. 8:22-cv-1472-TPB-AAS (M.D. Fla. June 24, 2024), ECF No. 126 (approving $7,250,000 settlement on behalf of 2.9 million class members); *Sherwood v. Horizon Actuarial*, No. 1:22-cv-01495-ELR (N.D. Ga. April 2, 2024), ECF No. 94 (approving at $8,733.446 common fund settlement for 4,386,969 class members).

Also, the Claim Form submission process and the planned distribution of Settlement Class Member Benefits is fair, convenient, and effective. *See generally* Ex. 2. Settlement Class Members will promptly receive Cash Payments in the manner they elected on the Claim Form. Kroll is highly

14

qualified to manage the entire process. *Id*. "Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all." *Mednax*, 2024 WL 1554329, at *7.

Finally, the Settlement Agreement is the only agreement the Parties have relating to the Litigation.

**6.      The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D))**

As the court found in *Mednax*, 2024 WL 1554329, at *7, all Settlement Class members are given an equal opportunity to claim Settlement Class Member Benefits. The additional payment amount for California Class Members is reasonable and equitable. *See, e.g.*, *Carter v. Vivendi Ticketing US LLC*, 2023 WL 8153712, at *11 (C.D. Cal. Oct. 30, 2023) (granting final approval in data breach settlement and noting, "[t]he Settlement also treats California sub-class members differently than class members from other states based on their claims that provide for statutory damages. This distinction is also reasonable. The release is also the same for all class members. The Court finds that the Settlement treats class members equitably."). Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Mednax,* 2024 WL 1554329, at *7.

Accordingly, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class members.

**C.      Notice Was Adequate and Satisfies Rule 23 and Due Process Requirements.**

The Court-approved Notice Plan carried out by Kroll resulted in direct Notice reaching 99.02% of the Settlement Class Members and conforms with the procedural and substantive requirements of due process and Rule 23. Ex. 2 ¶ 13. The direct notice was supplemented by a targeted social media campaign, further ensuring that Settlement Class Members received Notice

of the Settlement and have the opportunity to be heard and participate in the Action. *See* Fed. R. Civ. P. 23(c)(2)(B).

The Court exercised its discretion to approve a reasonable Notice Plan. As the Court held when granting Preliminary Approval, the proposed notices and the Settlement Website "fairly and adequately" described the terms and effect of the Settlement Agreement and of the Settlement, notified the Settlement Class concerning the plan of allocation of Settlement Benefits, and gave adequate notice of the attorneys' fees to be sought, the final approval hearing date, and the procedures for objecting or seeking exclusion. ECF No. 406. The best notice practicable is that which "is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The Notices included, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day to opt-out of the Settlement Class; the last day to object to the Settlement or Fee Application; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. *See* Ex. 2 Exhibits C, D, E, and F. The Notice Plan also included a toll-free number with an interactive voice recording (IVR) system that provides answers to frequently asked questions, and a Settlement Website containing relevant Settlement Information. Finally, the Notice Plan satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement Class that Class Counsel may apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund and reasonable expenses, and Settlement Class Members will have time to review the concurrently filed Motion for Attorneys' Fees, Costs, and Service Awards to determine if they would like to object to the award or opt-out of the Settlement entirely. *See Id.*

16

## V.    CONCLUSION

Plaintiffs and Class Counsel respectfully request this Court enter an order: (1) granting Final Approval to the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) confirming the appointment of Plaintiffs as Class Representatives and Class Counsel; and (4) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation.

Dated: May 28, 2026.

Respectfully submitted,

*/s/Julie Braman Kane*
JULIE BRAMAN KANE
Florida Bar No. 980277
**COLSON HICKS EIDSON**
806 S. Douglas Road, Suite 1200
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
julie@colson.com
*Plaintiffs' Liaison Counsel*

JOHN A. YANCHUNIS
Florida Bar No. 324681
RYAN McGEE
Florida Bar No. 64957
RONALD PODOLNY (*pro hac vice*)
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor Tampa, Florida 33602 (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com
rpodolny@ForThePeople.com
*Chair, Plaintiffs' Executive Committee*

ADAM E. POLK (*pro hac vice*)
**GIRARD SHARP LLP**
601 California St, Ste 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com

17

GARY M. KLINGER (*pro hac vice*)
**MILBERG PLLC**
227 Monroe Street, Suite 2100
Chicago, IL 60606
866.252.0878
gklinger@milberg.com

STUART A. DAVIDSON
Florida Bar No. 0084824
DOROTHY P. ANTULLIS
Florida Bar No. 890421
NICOLLE B. BRITO
Florida Bar No. 43399
**ROBBINS GELLER RUDMAN
& DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: (561) 750-3000
(561) 750-3364 (fax)
sdavidson@rgrdlaw.com
dantullis@rgrdlaw.com
nbrito@rgrdlaw.com

M. ANDERSON BERRY (*pro hac vice*)
GREGORY HAROUTUNIAN (*pro hac vice*)
**EMERY REDDY PC**
600 Stewart Street, Suite 1100
Seattle, WA  98101-1269
Telephone:  916/823-6955
anderson@emeryreddy.com
gregory@emeryreddy.com
*Members, Plaintiffs' Executive Committee*

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(3)(A), the undersigned certifies that she conferred telephonically and in writing with Evan Mannering, counsel for Defendants, regarding the relief sought in this motion, and counsel for the Defendants advised that Defendants do not oppose the motion.

/s/ *Julie Braman Kane*
Julie Braman Kane

18

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2026, a true and correct copy of the foregoing

was electronically filed and served using CM/ECF.

*/s/ Julie Braman Kane*
Julie Braman Kane