**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Master File No. 1:22-cv-20955-DPG**

**In re LAKEVIEW LOAN SERVICING**
**DATA BREACH LITIGATION**                    <u>**CLASS ACTION**</u>

**PLAINTIFFS' MOTION FOR AWARD OF**
**ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS AND**
<u>**INCORPORATED MEMORANDUM OF LAW IN SUPPORT**</u>

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................................1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY ......................................2

    A.  Factual Background ...................................................................................................2

    B.  The Settlement Provides Substantial Relief to the Settlement Case.............................4

    C.  The Settlement Provides Reasonable Service Awards  ..................................................4

    D.  Attorneys' Fees and Expenses ...................................................................................5

III.    LEGAL STANDARD.........................................................................................................5

IV.     ARGUMENT.......................................................................................................................5

    A.  The Requested Fee Award is Reasonable and Well-Supported ....................................5

    B.  The *Camden* Factors Support the Requested Fee  ........................................................8

        1.  The Results Obtained Predominate.....................................................................8

        2.  The Claims Against Defendants Required Substantial Time and Labor ...........9

        3.  This Litigation Involved Complex Issues Requiring Skilled Attorneys..........10

        4.  Class Counsel Assumed Significant Risk on a Contingency Basis .................12

        5.  The Requested Fee Comports with Fees Award in Similar Cases...................14

        6.  The Remaining *Camden I* and Other Factors Favor Approval .......................16

    C.  A Lodestar Cross-Check Confirms that the Requested Fees Are Reasonable.............16

    D.  The Litigation Expenses are Reasonable ..................................................................18

    E.  The Service Awards Requested Are Reasonable.........................................................19

V.      CONCLUSION.................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                            **Page(s)**

*Allapattah Servs., Inc. v. Exxon Corp.,*
    454 F. Supp. 2d 1185 (S.D. Fla. 2006) ........................................................................12,16

*Altamonte Springs Imaging, L.C. v. State Farm Mutual Auto. Ins. Co.,*
    12 So. 3d 850 (Fla. 3d DCA 2009)..............................................................................20

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp.,*
    77 F.4th 74 (2d Cir. 2023)............................................................................................13

*Arnold v. State Farm Fire & Cas. Co.,*
    No. 2:17-CV-148-TFM-C, 2023 WL 7308098 (S.D. Ala. Nov. 6, 2023)..................19

*Atkinson v. Wal-Mart Stores, Inc.,*
    2011 WL 6846747 (M.D. Fla. Dec. 29, 2011).............................................................14

*Behrens v. Wometco Enters., Inc.,*
    118 F.R.D. 534 (S.D. Fla. 1988) .................................................................................12

*Blum v. Stenson,*
    465 U.S. 886 (1984) .....................................................................................................16

*Briggs v. North Highland Co.,*
    *No. 1:22-cv-03640 (N.D.Ga. 2024)*............................................................................20

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) .......................................................................................................5

*Cabot E. Broward 2 LLC v. Cabot,*
    2018 WL 5905415 (S.D. Fla. Nov. 9, 2018) ........................................................7,8,11,15

*Cain v. CGM, L.L.C.,*
    No. 1:23-CV-02604, 2025 WL 2814398 (N.D. Ga. Mar. 10, 2025) ...............................20

*Camden I Condo. Ass'n v. Dunkle,*
    946 F.2d 768 (11th Cir. 1991) ....................................................... 5-8,11,15,16

*Columbus Drywall & Insulation, Inc. v. Masco Corp.,*
    2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) .........................................................11,18

*Corona-Cantu v. Ingo Money Inc.,*
    No. 1:24-CV-03023, (N.D. Ga. 2025) ..........................................................................20

*Cravens v. Garcia CL Se., Inc.,*
   No. 1:24-CV-80400, (S.D. Fla. 2025) ..................................................................7


*Duckworth v. Whisenant,*
   97 F.3d 1393 (11th Cir. 1996) ...........................................................................17

*Ebert v. PRIX Global,*
   No. 1:23-CV-04233, (N.D. Ga. 2025) ................................................................20

*Edmonds v. United States,*
   658 F. Supp. 1126 (D.S.C. 1987) .......................................................................10

*Erie Railroad Co. v. Tompkins,*
   58 S. Ct. 817 (1938) ...........................................................................................20

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.,*
   2017 WL 7798110 (S.D. Fla. Dec. 18, 2017) ....................................................18

*Fulton-Green v. Accolade, Inc.,*
   2019 WL 4677954 (E.D. Pa. Sep. 24, 2019) .....................................................10

*Gavaert's v. TD Bank, NA,*
   2015 WL 6751061 (S.D. Fla. Nov. 5, 2015) ........................................................6

*George v. Duke Energy Ret. Cash Balance Plan,*
   2011 WL 13218031 (D.S.C. May 16, 2011) ......................................................13

*Glickenhaus & Co. v. Household Int'l, Inc.,*
   787 F.3d 408 (7th Cir. 2015) .............................................................................13

*Gutter v. E.I. DuPont De Nemours & Co.,*
   No. 95-cv-2152-ASG (S.D. Fla. May 30, 2003), ECF No. 626 ........................14

*Hamilton v. SunTrust Mortg. Inc.,*
   2014 WL 5419507 (S.D. Fla. Oct. 24, 2014) .......................................................6

*Hanley v. Tampa Bay Sports & Ent. LLC,*
   2020 WL 2517766 (M.D. Fla. Apr. 23, 2020) .....................................................7

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983) .............................................................................................8

*In re BankAtlantic Bancorp, Inc.,*
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), aff'd on other grounds sub nom.
   *Hubbard v. BankAtlantic Bancorp, Inc.,*

688 F.3d 713 (11th Cir. 2012) ..........................................................................................13

*In re Checking Acct. Overdraft Litig.,*
2020 WL 4586398 (S.D. Fla. Aug. 10, 2020),aff'd,
2022 WL 472057 (11th Cir. Feb. 16, 2022) ..........................................................8,15,16
830 F.Supp. 2d 1359 (2022) ......................................................................................11

*In re Continental Ill. Sec. Litig.,*
962 F.2d 566 (7th Cir. 1992) ..................................................................................12,15

*In re Equifax Inc. Customer Data Sec. Breach Litig.,*
999 F.3d 1247 (11th Cir. 2021) ..................................................................................19

*In re Flowers Foods, Inc. Sec. Litig.,*
2019 WL 6771749 (M.D. Ga. Dec. 11, 2019) ...............................................................7

*In re Fortra File Transfer Software Data Sec. Breach Litig.,*
2025 WL 457896 (S.D. Fla. Feb. 11, 2025) .............................................................6,7

*In re Health Ins. Innovations Sec. Litig.,*
2021 WL 1341881 (M.D. Fla. Mar. 23, 2021), ........................................................16,18

*In re Lincare Holdings Inc. Data Breach Litig.,*
No. 8:22-cv-1472-TPB-AAS (M.D. Fla. June 24, 2024), ECF No. 126 ............................9

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.,*
No. 21-MD-02994-RAR (S.D. Fla. Oct. 5, 2024), ECF No. 328 ............................9,15,18

*In re Parkmobile,*
No. 1:21-cv-02182-SCJ (N.D. Ga. May 6, 2025), ECF No. 300 ......................................20

*In re Solara Med. Supplies Data Breach Litig.,*
No. 3:19-cv-02284-H-KSC (S.D. Cal. Sep. 12, 2022), ECF No. 150 ..............................15

*In re Sonic Corp. Customer Data Sec. Breach Litig.,*
2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ...........................................................10

*In re Sunbeam Sec. Litig.,*
176 F. Supp. 2d 1323 (S.D. Fla. 2001) ................................................................6,8,12,16

*In re TD Ameritrade acct. Holder Litigation,*
2011 WL 4079226 ...............................................................................................11

*In re Terazosin Hydrochloride Antitrust Litig.,*
No. 99-md-1317-PAS (S.D. Fla. Apr. 19, 2005), ECF No. 1557 ....................................14

*In re U.S. Steel Consol. Cases,*
    2023 WL 11997192 (W.D. Pa. Mar. 21, 2023) ................................................................19

*In re Vivendi Universal, S.A., Sec. Litig.,*
    842 F. Supp. 2d 522 (S.D.N.Y. 2012) ................................................................14

*In re Walter Energy, Inc. Sec. Litig.,*
    2016 WL 7230505 (N.D. Ala. May 3, 2016) ................................................................7

*In re Williams Sec. Litig.,*
    555 F. 3d 1130 (10th Cir. 2009) ................................................................14

*Johnson v. Ga. Highway Express, Inc.,*
    488 F.2d 714 (5th Cir. 1974) ................................................................7

*Johnson v. NPAS Sols., LLC,*
    975 F.3d 1244 (11th Cir. 2020) ................................................................1,19

 *Kukorinis v. Walmart, Inc.,*
    2024 WL 3226772 (M.D. Fla. June 28, 2024) ................................................................7

*I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.,*
    2015 WL 5626414 (N.D. Ala. Sep. 14, 2015) ................................................................19

*McWhorter v. Ocwen Loan Servicing, LLC,*
    2019 WL 9171207 (N.D. Ala. Aug. 1, 2019) ................................................................7

*Mitchell v. Allstate Vehicle and Prop. Ins.,*
    No. 2:21-cv-347, 2023 WL 5004064 (S.D. Ala. Aug. 3, 2023) ................................................................19

*Morefield v. NoteWorld, LLC,*
    2012 WL 1355573 (S.D. Ga. Apr. 18, 2012) ................................................................14

*Morgan v. Pub. Storage,*
    301 F. Supp. 3d 1237 (S.D. Fla. 2016) ................................................................7

*Norman v. Housing Auth. of City of Montgomery,*
    836 F.2d 1292 (11th Cir. 1988) ................................................................17

*Pinto v. Princess Cruise Lines, Ltd.,*
    513 F. Supp. 2d 1334 (S.D. Fla. 2007) ................................................................17

*Reyes v. AT&T Mobility Servs.,*
    LLC, 2013 WL 12219252 (S.D. Fla. June 21, 2013) ................................................................6

*Ressler v. Jacobson,*

149 F.R.D. 651 (M.D. Fla. 1992) .................................................................................12

*Robbins v. Koger Props., Inc.,*
116 F.3d 1441 (11th Cir. 1997) ...............................................................................13

*Roth v. GEICO Gen. Ins. Co.,*
2020 WL 10818393 (S.D. Fla. Oct. 8, 2020) ...........................................................20

*Sanchez v. State Farm,*
2025 WL 2460560 (M.D. Fla. Aug. 26, 2025) ..........................................................20

*Sawyer v. Intermex Wire Transfer, LLC,*
2020 WL 5259094 (S.D. Fla. Sep. 3, 2020) ...............................................................7

*Seghroughni v. Advantus Rest., Inc.,*
2015 WL 2255278 (M.D. Fla. May 13, 2015) ...........................................................14

*South v. Progressive Select Ins. Co.,*
No. 19-CV-21760-WPD, 2023 WL 2733548 (S.D. Fla. Mar. 21, 2023) ..........................20

*Venerus v. Avis Budget Car Rental, LLC,*
674 F. Supp. 3d 1107 (M.D. Fla. 2023) ................................................................19,20

*Walco Invs., Inc. v. Thenen,*
975 F. Supp. 1468 (S.D. Fla. 1997) ............................................................................8

*Wang v. Corp. of Mercer Univ.,*
No. 5:23-CV-00193-TES, 2025 WL 1136132 (M.D. Ga. Apr. 17, 2025) ......................20

*Waters v. Int'l Precious Metals Corp.,*
190 F.3d 1291 (11th Cir. 1999) .......................................................................5,7,14,17

*Wolff v. Cash 4 Titles,*
2012 WL 5290155 (S.D. Fla. Sep. 26, 2012) ............................................................15

## **RULES**

Fed R. Civ. P. 23(h) ...................................................................................................1,5,18

Fed. R. Civ. P. 54(d)(2)....................................................................................................1

## **OTHER AUTHORITY**

*In Re RJR Nabisco, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) 194, 268.................................16

Pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, Plaintiffs,[1] individually and on behalf of the Settlement Class defined in the Stipulation of Class Action Settlement[2], respectfully move for an award of attorneys' fees, expenses, and service awards.

The Court preliminarily approved the total Settlement of $26,000,000.00 on February 4, 2026, and authorized dissemination of Notice to the provisionally certified Settlement Class. (ECF No. 406.) Pursuant to the deadlines approved by the Court, Plaintiffs will move for Final Approval of the Settlement on May 28, 2026, and a Final Fairness Hearing shall take place on July 2, 2026. (*See id.* at 4-5.)  Plaintiffs will address class member objections to the relief requested in this Motion[3] in their reply papers due on June 25, 2026.[4]

## I.     INTRODUCTION

This Litigation arises from a breach of Defendants' systems that compromised the Personally Identifiable Information ("PII") of Plaintiffs and 5.8 million Settlement Class Members. After four years of hard-fought litigation, including extensive discovery, significant discovery motion practice, *Daubert* challenges, class certification briefing, and more than two years of arm's-length settlement negotiations before three neutral mediators, Class Counsel obtained an excellent

---

[1]     Plaintiffs refers to Mark Arthur, Jorge Gonzalez, Cindy Villanueva, Deborah Hamilton, Michael Kassem, Beth Berg, Savannah Farley, Thomas Lapenter, Hardik Sevak, Peter Wojciechowski, Kimberley Rowton, John McMahon, Jay Saporta, David Cunningham, Pedro Rubio, Norma Grossman, Charlene Lazarus, David Miller, Douglas Pearl, Steven Harris, Sarah Carvalho, and Nili Steiner (collectively, "Plaintiffs").

[2]     The Stipulation of Class Action Settlement ("Settlement Agreement," "S.A.," or "Settlement"), including all exhibits thereto, is filed at docket entry 405-1. Unless otherwise defined, all capitalized terms shall have the same definitions and meanings as set forth in the S.A.

[3]     To date, only three objections have been submitted in response to the requested fee award. The deadline to submit objections is June 11, 2026. (*See* ECF No. 406 at 4.)

[4]     *See Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1252 (11th Cir. 2020) ("We hold that Rule 23(h)'s plain language requires a district court to sequence filings such that class counsel file and serve their attorneys'-fee motion *before* any objection pertaining to fees is due.").

settlement providing significant relief to Plaintiffs and the Settlement Class.

Pursuant to the Settlement, Plaintiffs now seek (i) attorneys' fees in the amount of $8,666,666.67, representing 33.3% of the $26,000,000 non-reversionary Settlement Fund; (ii) reimbursement of reasonable litigation expenses in the amount of $1,708,278.34; and (iii) service awards of $7,500.00 to each Class Representative, totaling $165,000.00, to be paid from the Settlement Fund. (*See* S.A. ¶¶ 9.1-9.5.) As set forth below, the attorneys' fees and expenses are fair, reasonable, well within the range awarded in similar class action cases in this District and the Eleventh Circuit, and take into account four years of substantial time and effort expended without any compensation. Likewise, the requested service awards are reasonable and consistent with authority approving such awards in diversity actions involving state-law claims.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.  Factual Background

In October 2021, Defendants suffered a data security breach when an intruder gained entry to their network systems and exfiltrated PII (the "Incident"). (*See* Declaration of John A. Yanchunis in Support of Motion for Final Approval of Class Action Settlement and Award of Attorneys' Fees, Expenses, and Service Awards ("Yanchunis Decl."), ¶ 11.) Defendants purportedly discovered the Incident on December 6, 2021, after an outside entity informed them of the breach. (*Id.*) Beginning on March 16, 2022, Defendants sent notices of the Incident to over 5,800,000 individuals whose PII may have been accessed by the cybercriminals. (*Id.* ¶ 12.)

Beginning on March 29, 2022, multiple Plaintiffs initiated class action lawsuits against Defendants in multiple federal jurisdictions. (*Id.*) Each was transferred to and consolidated in this District. (*Id.*) On August 1, 2022, Plaintiffs filed their Consolidated Class Action Complaint (ECF No. 47), alleging that Defendants failed to protect Plaintiffs' and Class Members' PII from being

2

compromised. (*Id.* ¶ 13.) For the next three and a half years, the parties participated in extensive motion practice and discovery related to the pleadings and disputes concerning privilege, forensic investigative materials, custodial data, and the scope of discovery. (*Id.* ¶¶ 11-18, 20-25.)

With substantial discovery completed, Plaintiffs moved for class certification on March 31, 2025. (ECF No. 282.) In support, Plaintiffs submitted five expert reports concerning the Incident, Defendants' data security practices, damages, and the risk of harm to individuals affected by the Incident. (*Id.*) Defendants opposed class certification on May 30, 2025, submitting three expert reports and two non-expert declarations. (ECF No. 294.). The parties then deposed the individuals responsible for these reports and declarations. By October 24, 2025, Plaintiffs' class certification motion, the parties' *Daubert* motions, and Plaintiffs' motions to exclude Defendants' declarants were fully briefed and awaiting hearing or decision. Collectively, the briefing spanned about 332 pages and was supported by nearly 5,227 pages of declarations and exhibits derived from myriad document productions and discovery responses, as well as from 33 depositions.

Although the parties' negotiations remained professional, they involved significant factual and legal disputes that materially impacted the valuation of the case and the parties' litigation positions. (*See* Yanchunis Decl., ¶ 36.) From Class Counsel's perspective, the extensive discovery, motion practice, expert litigation, and class certification proceedings sharpened the issues and positioned the case for meaningful settlement discussions. (*Id.*) At a third mediation on November 12, 2025, in Philadelphia before the Honorable Diane Welsh, a former United States Magistrate Judge experienced in mediating data breach class actions, the parties reached an agreement in principle to resolve the Litigation on terms providing substantial benefits to the Settlement Class. (*Id.* ¶ 34.) At all times, the negotiations were conducted at arm's length, free of collusion, and without any guarantee that a compromise would be achieved. (*Id.* ¶ 36.) Attorneys' fees and

3

expenses for Class Counsel were never discussed during the negotiations. (*Id.* ¶¶ 31, 36.)

### B.  The Settlement Provides Substantial Relief to the Settlement Class.

The Settlement provides substantial monetary and non-monetary relief to a nationwide Settlement Class consisting of approximately 5.8 million individuals defined as: "All Persons residing in the United States who were sent notice from any Defendant that their [PII] was potentially accessed during the Incident." (S.A. ¶1.44.)

Through the S.A., Defendants will fund a non-reversionary $26,000,000 Settlement Fund to provide Settlement Class benefits and to pay Settlement Administration costs, Taxes and Tax Expenses, any Fee and Expense Award approved by the Court, and any approved Service Awards to the Class Representatives. (*Id.* ¶¶ 1.23, 1.40, 1.43, 1.46, 3.1–3.5.) The details of the proposed Settlement and claims process are outlined in the S.A. and Class Counsel's declaration.

### C.  The Settlement Provides Reasonable Service Awards.

The S.A. permits Plaintiffs to seek reasonable Service Awards for the Class Representatives in recognition of the substantial time, effort, and participation they devoted to the Litigation over nearly four years. (*Id.* ¶ 9.5.) The Class Representatives actively participated in the prosecution of the case, including assisting Class Counsel with factual investigation, responding to written discovery, producing sensitive financial documents and electronically stored information, preparing for and sitting for depositions, reviewing pleadings and settlement materials, and remaining involved throughout the litigation and settlement process. Their efforts materially contributed to the successful resolution of this action on behalf of the Settlement Class.

Consistent with the S.A., Plaintiffs seek Service Awards of $7,500 for each Class Representative. Should the Court decline to award the requested Service Awards, or awards less than requested, , such order shall not affect the enforceability of the S.A. (*Id.*, ¶ 9.5) If the Court awards less than the amount requested, the difference will remain in the Settlement Fund for the

benefit of the Settlement Class. (*Id.*)

### D.  Attorneys' Fees and Expenses

The parties did not negotiate Class Counsel's attorneys' fees and costs at any point. Instead, the parties agreed that, as part of the Settlement, the Court shall determine the amount of any award of fees and expenses to Class Counsel. (*Id.* ¶ 9.1.) Any fees or expenses awarded by the Court shall be paid from the Settlement Fund. (*Id.* ¶ 9.3.)

### III.    LEGAL STANDARD

Rule 23 permits a court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). A district court "has great latitude in formulating attorney's fees awards subject only to the necessity of explaining its reasoning." *Waters v. Int'l Precious Metals Corp*., 190 F.3d 1291, 1293 (11th Cir. 1999).

### IV.    ARGUMENT

Plaintiffs request an attorneys' fee award of $8,666,666.67, or one-third of the $26,000,000.00 Settlement Fund created by the Settlement. The requested fee is reasonable under the factors listed in *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768 (11th Cir. 1991), and controlling Eleventh Circuit authority governing common fund fee awards. For the reasons detailed herein, Plaintiffs submit that the requested fee is appropriate, fair, and reasonable (especially considering Class Counsel expended lodestar nearly ***double*** the proposed award), and respectfully request that it be approved by the Court.

### A.  The Requested Fee Award is Reasonable and Well-Supported.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *See Camden I Condo.,* 946 F.2d at 771; *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The

doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *Gevaerts v. TD Bank, NA*, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) (cleaned up). "The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are 'unjustly enriched' at the expense of the successful litigant." *Id.* (quoting *Van Gemert*, 444 U.S. at 478). As a result, "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001).

In *Camden I*, the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." 946 F.2d at 774; *see also Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507, at *7-8 (S.D. Fla. Oct. 24, 2014) (class counsel are entitled to fees based on the total benefits provided by class settlement); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 2025 WL 457896, at *11-12 (S.D. Fla. Feb. 11, 2025) (same).

The Court has discretion in determining the fee percentage. "'There is no hard and fast rule mandating a certain percentage of a common fund . . . as a fee because the amount of any fee must be determined upon the facts of each case.'" *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774). That said, Eleventh Circuit courts have noted that a fee in complex class actions of "one-third of the settlement fund is . . . consistent with the trend in this Circuit." *Reyes v. AT&T Mobility Servs., LLC*, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013); *see also Kukorinis v. Walmart, Inc.*, 2024 WL 3226772, at *12 (M.D. Fla. June 28, 2024) (same);

6

*Cabot E. Broward 2 LLC v. Cabot*, 2018 WL 5905415, at *4 (S.D. Fla. Nov. 9, 2018) (award of 1/3 of settlement fund is "consistent with what courts routinely award in class actions"); *Hanley v. Tampa Bay Sports & Ent. LLC*, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) ("courts in [this] Circuit routinely approve fee awards of one-third of the common settlement fund").[5]

Although "[t]here is no hard and fast rule" governing common fund fee awards, the Eleventh Circuit recommends that district courts consider several factors to determine what constitutes a reasonable percentage award. *See Camden I*, 946 F.2d at 772-75 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds). These factors include: (i) the time and labor required; (ii) the novelty and difficulty of the questions; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment by the attorney due to the acceptance of the case; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) time limitations imposed by the client or the circumstances;[6] (viii) the amount involved and the results obtained; (ix) the experience, reputation, and ability of

---

[5]   *Accord Waters*, 190 F.3d at 1300 (11th Cir. 1999) (affirming fee award of 33 1/3% of $40 million settlement); *Fortra*, 2025 WL 457896, at *11-12 (awarding a 33.33% fee); *Sawyer v. Intermex Wire Transfer, LLC*, 2020 WL 5259094, at *1 (S.D. Fla. Sep. 3, 2020) (awarding fee equal to one-third of the settlement fund); *McWhorter v. Ocwen Loan Servicing, LLC*, 2019 WL 9171207, at *13-14 (N.D. Ala. Aug. 1, 2019) (awarding 33% fee, and noting "The Court of Appeals and numerous district courts in this circuit have held that one-third of the fund represents a reasonable attorneys' fee, especially in contingency fee cases, such as this one."); *Cravens v. Garda CL Se., Inc.*, No. 24-CV-80400-BER, slip op. at 20 (S.D. Fla. Sep. 11, 2025) (awarding a 33.33% fee); *In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at *1 (M.D. Ga. Dec. 11, 2019) (awarding 33 1/3% fee)); *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1257 (S.D. Fla. 2016) (recognizing that "a fee award of 33% . . . is consistent with attorneys' fees awards in federal class actions in this Circuit"); *In re Walter Energy, Inc. Sec. Litig.*, 2016 WL 7230505, at *1 (N.D. Ala. May 3, 2016) (awarding fee equal to 33% of the settlement fund).

[6]   This factor is not applicable to the circumstances of this case and therefore is not addressed in depth here. Although the Litigation was vigorously contested and required substantial attorney time and resources over nearly four years, the case did not involve unusual emergency proceedings or extraordinary client-imposed deadlines beyond those ordinarily associated with complex class action litigation.

the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client;[7] and (xii) awards in similar cases. *See Camden I*, 946 F.2d at 772 n.3. "These twelve factors are guidelines; they are not exclusive." *In re Checking Acct. Overdraft Litig.*, 2020 WL 4586398, at *17 (S.D. Fla. Aug. 10, 2020). "'Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action.'" *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). The Eleventh Circuit has also encouraged lower courts to consider "additional factors unique to the particular case." *Walco Invs., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997). All these factors and considerations support approval of the requested fee award here.

### B. The *Camden* Factors Support the Requested Fee.

#### 1. The Results Obtained Predominate.

While listed as the eighth *Camden I* factor, Class Counsel discusses this factor first because "'[the] monetary results achieved . . . *predominate* over all other criteria,'" making "the amount involved and results obtained . . . the 'most important factor' in determining an award of attorneys' fees." *Cabot*, 2018 WL 5905415, at *5 (emphasis in original); *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[T]he most critical factor is the degree of success obtained.").

The Settlement primarily consists of a $26 million non-reversionary common fund, an outstanding result that represents a significant recovery for Settlement Class Members. Given the significant litigation risks Class Counsel faced over four years of Litigation, the Settlement

---

[7] This factor is not applicable to the circumstances of this case and therefore is not addressed in depth here. Class Counsel does not have a continuing attorney-client relationship with the named Plaintiffs that would have caused them to offer a volume discount or reduced fee to obtain future business.

represents an excellent result for the Settlement Class. Through Class Counsel's zealous, effective, and efficient prosecution of this action through extensive fact and expert discovery and class certification briefing, Settlement Class Members are entitled to meaningful benefits specifically tailored to the harms alleged in the Litigation, including reimbursement of up to $5,000 in documented out-of-pocket losses, *pro rata* cash payments from the Settlement Fund, and identity protection and monitoring services directly tethered to the Incident.

The Settlement also eliminates the substantial risk that Settlement Class Members could recover less—or nothing at all—through continued litigation. Absent settlement, Plaintiffs faced significant risks at every stage, including adverse rulings on class certification, summary judgment, *Daubert* motions, trial, and appeal. Rather than continuing to litigate those uncertain and highly contested issues for years to come, the Settlement secures immediate and substantial relief for approximately 5.8 million individuals whose PII was potentially compromised in the Incident. Balanced against the risks and complexities presented by the Litigation, the Settlement achieved here is objectively an outstanding result that strongly supports the requested fee award.

Moreover, the monetary benefits provided to the Settlement Class compare favorably to those obtained in other recent data breach class action settlements. *See, e.g.*, *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR (S.D. Fla. Oct. 5, 2024), ECF No. 328 (Ruiz, J.) (approving $6 million settlement on behalf of 2,712,790 class members); *In re Lincare Holdings Inc. Data Breach Litig.*, No. 8:22-cv-1472-TPB-AAS (M.D. Fla. June 24, 2024), ECF No. 126 (approving $7,250,000 settlement on behalf of 2,900,000 class members).

### 2. The Claims Against Defendants Required Substantial Time and Labor.

This Litigation required substantial time, labor, and professional resources. As detailed in the Yanchunis Declaration, Plaintiffs' counsel devoted significant attorney and professional resources to investigating the Incident, analyzing Defendants' data security practices, researching

9

and developing Plaintiffs' claims, and litigating the action through extensive motion practice, discovery, class certification proceedings, expert challenges, and settlement negotiations.

Notably, Class Counsel alone expended more than $16,400,000.00 in lodestar to date and will continue to incur time and expenses defending this Settlement against objectors and potential appeal. Because Class Counsel will only recover a fraction of that time, this further demonstrates Class Counsel's commitment to putting the interests of Class Members above all.

The settlement process likewise required significant preparation and effort. The parties participated in three mediations over a multi-year period before reaching an agreement in principle. Before and after those mediations, Class Counsel analyzed the strengths and weaknesses of the claims and defenses, evaluated damages and settlement structures, prepared mediation submissions, and engaged in arm's-length negotiations. Following the agreement in principle, Class Counsel dedicated additional time and resources to negotiating and drafting the S.A. and settlement documents, including notices, claim forms, settlement administration procedures, and preliminary approval materials. The requested fee appropriately compensates Class Counsel for the substantial time, labor, skill, and resources devoted to this Litigation and to achieving this Settlement and meaningful relief for the Settlement Class.

### 3.   This Litigation Involved Complex Issues Requiring Skilled Attorneys.

"[P]rosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). This is particularly true for data breach litigation. *See, e.g.*, *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2019 WL 3773737, at *6 (N.D. Ohio Aug. 12, 2019) ("The realm of data breach litigation is complex and largely undeveloped."); *Fulton-Green v. Accolade, Inc.*, 2019 WL 4677954, at *8 (E.D. Pa. Sep. 24, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare."). To be sure, as the court in *In*

10

*re TD Ameritrade Account Holder Litigation* noted, "many [data breach class actions] have been dismissed at the pleading stage." 2011 WL 4079226, at \*14 (N.D. Cal. Sep. 12, 2011).

Relatedly, in evaluating a fee request, courts in this circuit consider the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit like this one, including "the experience, reputation, and ability of the attorneys" involved. *Camden I*, 946 F.2d at 772 n.3; *see also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at \*4 (N.D. Ga. Oct. 26, 2012) (awarding one-third of the recovery, and finding "[t]he appropriate fee should…reflect the degree of experience, competence, and effort required").

This was one of the most heavily litigated data breach cases in this District's history. (Yanchunis Decl. ¶42.) The skills and experience required to prosecute this complex data breach class action were significant. Class Counsel possess substantial experience litigating complex class actions, particularly data breach litigation. Collectively, Class Counsel have litigated hundreds of data breach cases, including many of the largest litigated nationwide, and that experience directly informed their prosecution and resolution of this Litigation. Class Counsel's skill and experience are reflected in the efficient and successful prosecution of this matter over nearly four years, culminating in an outstanding Settlement that provides meaningful relief designed to address the harms and risks consumers commonly face following a data breach. *See Cabot*, 2018 WL 5905415, at \*3 ("Class Counsel also has a well-deserved reputation for successfully trying complex cases to conclusion and defending those outcomes on appeal, a factor which likely played into the Defendants' decision to avoid a trial in this case."); *Checking Acct.*, 830 F. Supp. 2d at 1359 ("Class Counsel took on a great deal of risk in bringing this case, and turned a potentially empty well into a significant judgment. That kind of initiative and skill must be adequately compensated to insure that counsel of this caliber is available to undertake these

11

kinds of risky but important cases in the future.").

The quality of opposing counsel is also important in evaluating the quality of services rendered by Class Counsel. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1209 (S.D. Fla. 2006) ("'[I]n assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced.'") (alteration in original). This Litigation was defended by highly skilled and experienced counsel from Baker & Hostetler LLP and Givner Law Group, LLP, firms with substantial experience defending complex class action and data breach litigation. Defendants vigorously contested liability, class certification, discovery, and damages throughout the Litigation. The defense mounted in this case further demonstrates the skill and effectiveness of Class Counsel in achieving the Settlement and relief for the Settlement Class. This factor thus weighs in favor of the requested fee award.

**4. Class Counsel Assumed Significant Risk on a Contingency Basis.**

By prosecuting this case on a wholly contingent basis, Class Counsel assumed a significant risk of nonpayment of both fees and expenses for nearly four years. That risk supports the requested fee. *See Sunbeam*, 176 F. Supp. 2d at 1335 ("contingency fee arrangement often justifies an increase in the award of attorneys' fees"); *In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (plaintiffs' counsel in contingent common fund cases must be compensated for the risk of nonpayment); *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award"). As Judge King observed, "very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988).

Here, Class Counsel litigated this case without any guarantee of success or recovery. (Yanchunis Decl. ¶42.) Defendants vigorously contested every stage of the case and spared no

12

effort in attempting to defeat Plaintiffs' claims through extensive motion practice, discovery disputes, *Daubert* challenges, and opposition to class certification. (*Id.*) The Litigation presented significant challenges relating to causation, Article III standing, class certification, damages, and liability under the CCPA. (*Id.*) Class Counsel continuously evaluated these risks and strategically advanced the Litigation despite the possibility of recovering nothing. (*Id.*) Class Counsel rejected smaller settlement opportunities in favor of continuing to litigate the case through subsequent stages to maximize recovery for the Settlement Class. (*Id.*) Numerous adverse outcomes— including dismissal, denial of class certification, adverse *Daubert* rulings, or unfavorable summary judgment or appellate decisions—could have resulted in Class Counsel recovering nothing for the substantial time, labor, and resources invested in the case. (*Id.* ¶42.)

The risks inherent in contingent litigation are well recognized. *See, e.g.*, *George v. Duke Energy Ret. Cash Balance Plan*, 2011 WL 13218031, at *6 (D.S.C. May 16, 2011) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs, yet have lost the case despite their advocacy."). Even cases that survive dismissal, summary judgment, or trial may fail on appeal or on a post-trial motion. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing $2.46 billion jury verdict after 13 years of litigation due to error in jury instruction); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (overturning jury verdict and entering judgment as a matter of law for defendants), *aff'd on other grounds sub nom*, *Hubbard v. BankAltantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (reversing $81 million jury verdict after almost seven years of litigation); *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp.*, 77 F.4th 74 (2d Cir. 2023) (class decertified after more than 12 years of litigation and after plaintiffs' counsel incurred nearly $7

13

million in expenses and dedicated over 115,000 hours); *In re Vivendi Universal, S.A., Sec. Litig.*,
842 F. Supp. 2d 522 (S.D.N.Y. 2012) (granting judgment on the pleadings following a change in
law related to jurisdiction); *In re Williams Sec. Litig. - WCG Subclass*, 558 F.3d 1130, 1143 (10th
Cir. 2009) (affirming summary judgment for energy company following a change in law). A very
real risk existed here that Class Counsel would invest substantial resources and recover nothing.

The progress of this case further shows the substantial risk assumed by Class Counsel in
accepting and prosecuting this matter on a contingency fee basis. Despite devoting over
$16,400,000.00 in attorney time through March 2026 and advancing nearly $1.7 million in
litigation expenses—including expert fees, mediation costs, deposition expenses, document
hosting, and discovery-related costs—Class Counsel remained uncompensated throughout the
Litigation and had no assurance that those expenses would ever be recovered absent a successful
result. Those risks and investments strongly support the requested fee award.

### 5. The Requested Fee Comports with Fees Awarded in Similar Cases.

An award of one-third of the Settlement Fund is the benchmark in this Circuit.[8] Numerous
decisions within District Courts in Florida and throughout the Eleventh Circuit have found a one-

---

[8] *Waters*, 190 F.3d at 1292-98 (affirming fee award of 33 1/3 % of settlement of $40 million);
*Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An
attorney's fee . . . which is one-third of the settlement fund . . . is fair and reasonable in light of the
results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's
ability and experience in class action litigation, and fee awards in comparable cases."); *Morefield
v. NoteWorld, LLC*, 2012 WL 1355573, at *5 (S.D. Ga. Apr. 18, 2012) (awarding fees of 33 1/3%
of the $1,040,000 settlement fund in addition to expenses); *Atkinson v. Wal-Mart Stores, Inc.*, 2011
WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-third of the
maximum $2,020,000 common fund); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-md-
1317-PAS (S.D. Fla. Apr. 19, 2005), ECF No. 1557 at 8-10 (awarding class counsel 33.3% of
settlement fund in part because they prosecuted the action on a wholly contingent basis); *Gutter v.
E.I. DuPont De Nemours & Co.*, No. 95-cv-2152-ASG (S.D. Fla. May 30, 2003), ECF No. 626 at
7 (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees); *Cabot*, 2018 WL
5905415, at *4 (S.D. Fla. Nov. 9, 2018) (awarding a fee equal to one-third of the settlement fund,
"consistent with what courts routinely award in class actions"); *In re Solara Med. Supplies Data
Breach Litig.*, No. 3:19-cv-02284-H-KSC (S.D. Cal. Sep. 12 2022), ECF No. 150 (awarding fee

third fee is well within the range of reasonableness under the factors identified by the court in *Camden I. See Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5-6 (S.D. Fla. Sep. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third."); *Fortra*, 2025 WL 457896, at *11-12 (data breach class action settlement awarding 33.33% of settlement fund for attorneys' fees); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2024 WL 4415214, at *5 (S.D. Fla. Oct. 5, 2024), at *5 (data breach class action final approval order noting that Eleventh Circuit courts routinely approve 1/3 common fund fee awards).

Class Counsel carefully considered the fee request in this case and determined that a fee award of 33.33% of the Settlement Fund—is fair, appropriate, and reasonable considering the numerous factors supporting the request. (Yanchunis Decl. ¶42.) As reflected in the extensive record before the Court, this Litigation involved particularly novel and complex issues, even within the context of data breach litigation. (*Id.*) The Litigation required Class Counsel to navigate unsettled questions regarding how traditional common law and statutory theories apply to evolving technological harms from modern cybersecurity incidents. (*Id.*) Those issues were extensively litigated through multiple rounds of motion to dismiss and class certification briefing, expert challenges, and discovery disputes. (*Id.*) Given the complexity, novelty, and risk presented by the Litigation, the requested one-third fee award is particularly appropriate here. Moreover, not only does it fall within the benchmark percentage routinely approved in class actions, but it is also below the range commonly charged in the private marketplace, where contingency fee arrangements often approach or equal forty percent of any recovery. *See Continental*, 962 F.2d at 572 ("The object in awarding a reasonable attorney's fee . . . is to simulate the market."); *RJR*

---

equal to 45.45% of settlement fund); *Checking Acct.*, 2020 WL 4586398, at *16-17 (S.D. Fla. Aug. 10, 2020) (awarding fee equal to 35% of the settlement fund), *aff'd*, 2022 WL 472057 (11th Cir. Feb. 16, 2022).

*Nabisco, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) ¶94, 268 (S.D.N.Y. 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases"). And, "[i]n tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers…the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring). Accordingly, the requested fee award here is appropriate.

### 6.   The Remaining *Camden I* and Other Factors Favor Approval.

The remaining *Camden I* factors and related considerations likewise favor approval of the requested fee. The "'economics involved in prosecuting a class action'" support the reasonableness of the award. *Sunbeam*, 176 F. Supp. 2d at 1333. As courts in this Circuit have recognized, "proper incentives must be maintained to insure that attorneys of this caliber are available to take on cases of significant public importance like this one." *Checking Acct.*, 830 F. Supp. 2d at 1368. Moreover, the considerable time spent prosecuting this case—over 30,000 collective hours—was time that Class Counsel could not devote to other matters. *See, e.g.*, *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *11 (M.D. Fla. Mar. 23, 2021) ("'It is uncontroverted that the time spent on the [a]ction was time that could not be spent on other matters. This factor too supports the requested fee.'"); *Allapattah*, 454 F. Supp. 2d at 1209 ("[t]aking on this resource-sapping, risk-based venture" "had some adverse impact on the attorney's ability to accept other work"). These considerations further support the fee award.

### C.  A Lodestar Cross-Check Confirms the Requested Fees Are Reasonable.

Under *Camden I*, use of the lodestar analysis is improper in common fund cases. *See Checking Acct.*, 830 F. Supp. 2d at 1362-63 (declining to perform lodestar cross-check because *Camden I* "mandated the exclusive use of the percentage approach in common fund cases" and noting that "courts in this Circuit regularly award fees . . . without discussing lodestar at all") (cleaned up). Still, other courts have used lodestar as a "cross-check" to the percentage-of-the-

fund analysis. *Waters*, 190 F.3d at 1298 ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1343 (S.D. Fla. 2007) (noting that "[s]ome courts use the lodestar method as a cross-check of the percentage of the fund approach").

To determine the lodestar amount, the "court must multiply the number of hours reasonably expended by a reasonable hourly rate." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). "A reasonable hourly rate is the prevailing market rate…for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "[T]he court must next consider the necessity of an adjustment for results obtained," and "[i]f the results obtained were exceptional, then some enhancement of the lodestar might be called for." *Id.* at 1302.

The lodestar cross-check strongly supports the requested fee. Over nearly four years, Class Counsel devoted over 26,000 hours to this Litigation, with their audited lodestar alone exceeding $16,400,000 when those hours are multiplied by standard hourly rates.[9] (*See* Class Counsel Decl. ¶42.) From the outset, Class Counsel implemented a rigorous timekeeping and billing review process, requiring firms to submit contemporaneously recorded time and expenses monthly consistent with the Court's Order (ECF No. 46). (*Id.*) Class Counsel audited all time and expense records and eliminated or returned for correction any inadequate, duplicative, or non-compliant entries. (*Id.* ¶46.) The lodestar therefore reflects only time reasonably expended in furtherance of the Litigation. (*Id.* ¶47.) Given the combined lodestar of Class Counsel of over

---

[9]   All firm's reported lodestar and hourly rates are summarized in Exhibit A to its declaration, attached as Exhibits 1-21 to the Yanchunis Declaration, which confirm that the rates are consistent with those charged by firms of comparable skill, experience, and reputation in complex litigation. (*Id.* ¶49.)

$16,400,000, the requested fee award would result in a nearly 50% **negative** multiplier of lodestar just for Class Counsel, who will recover less than half of the value of the time they put in. (*Id.* ¶50.) That negative multiplier strongly supports the reasonableness of the requested fee. *See, e.g.*, *Mednax.*, 2024 WL 4415214, at *5 ("This negative multiplier supports the reasonableness of the fee request."); *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *12 (M.D. Fla. Mar. 23, 2021), *report and recommendation adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021) ("negative lodestar multiplier of 0.33…supports the reasonableness of the [33%] fee"). Moreover, the lodestar does not include the additional time that Class Counsel will devote through final approval and implementation of the Settlement, responding to objections, overseeing settlement administration, communicating with the Settlement Administrator and Settlement Class, preparing for and attending the final approval hearing, and addressing appeals. (*Id.* ¶51.) Class Counsel will receive no additional compensation for that work, which will further increase the lodestar and reduce the effective multiplier. (*Id.*) Therefore, although not required in this Circuit, it is clear from a lodestar cross-check that the requested fees are fair and reasonable.[10]

### D. The Litigation Expenses Are Reasonable.

Class Counsel seek an award of reasonable and necessary litigation expenses.[11] In class action settlements, courts may award nontaxable costs authorized by law or the parties' agreement. *See* Fed. R. Civ. P. 23(h). "Courts routinely note that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses." *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2017 WL 7798110, at *5 (S.D. Fla. Dec. 18, 2017).

---

[10] *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *5 (N.D. Ga. Oct. 26, 2012) (applying a multiplier of four times lodestar and surveying cases applying multipliers of approximately four to nine times lodestar).

[11] The expenses are reflected in the declarations and expense summaries attached to the Yanchunis Declaration.

The requested expenses are those routinely incurred in complex litigation and charged to fee-paying clients, including expenses for expert witnesses, depositions, mediation, travel, legal research, and document hosting. (Yanchunis Decl. ¶53.) These expenses were reasonably incurred, directly contributed to the successful resolution of this case, and were advanced without any guarantee of repayment. Because these were necessary litigation expenses, they should be paid from the Settlement Fund. *See, e.g.*, *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 2015 WL 5626414, at *1 (N.D. Ala. Sep. 14, 2015) (approving nearly $1.7 million in expenses); *In re U.S. Steel Consol. Cases*, 2023 WL 11997192, at *1 (W.D. Pa. Mar. 21, 2023) (approving $2.7 million in expenses). Accordingly, Class Counsel respectfully requests reimbursement of expenses of $1,708,278.34.

### E.  The Service Awards Requested Are Reasonable.

Service Awards are routinely approved in class actions involving state-law claims proceeding in diversity jurisdiction. Although the Eleventh Circuit in *Johnson v. NPAS Solutions, LLC,* 975 F.3d 1244 (11th Cir. 2020), addressed incentive awards in the context of federal statutory claims and later applied *Johnson* in *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. 2021), vacating the service awards but otherwise leaving the settlement intact, courts within the Eleventh Circuit have since recognized that *Johnson* does not preclude service awards in diversity actions governed by state law. *See, e.g.*, *Venerus v. Avis Budget Car Rental, LLC*, 674 F. Supp. 3d 1107, 1110 (M.D. Fla. 2023) ("There is nothing in [*Johnson*] to suggest that it is applicable to cases arising under state law."); *Mitchell v. Allstate Vehicle and Prop. Ins.*, No. 2:21-cv-347, 2023 WL 5004064, *6 (S.D. Ala. Aug. 3, 2023) ("The Court agrees with its several sister courts in this Circuit that [*Johnson*] is inapplicable in diversity jurisdiction cases where the underlying claims arise under state law."); *Arnold v. State Farm Fire & Cas. Co.*, No. 2:17-CV-148-TFM-C, 2023 WL 7308098 (S.D. Ala. Nov. 6, 2023) (same). Because this

action arises under state law and proceeds in diversity jurisdiction, state law governs the propriety of Service Awards. *See Erie Railroad Co. v. Tompkins*, 58 S. Ct. 817, 822 (1938).

Under Florida law, service awards are permissible and routinely approved. *See, e.g., Altamonte Springs Imaging, L.C. v. State Farm Mutual Auto. Ins. Co.*, 12 So. 3d 850, 857 (Fla. 3d DCA 2009) (approving a $10,000 service award); *Roth v. GEICO Gen. Ins. Co.*, 2020 WL 10818393, at *3 (S.D. Fla. Oct. 8, 2020) (approving a $10,000 incentive award to each named plaintiff)[12]. Courts in the Eleventh Circuit have likewise approved service awards in data breach class actions proceeding in diversity jurisdiction. *See, e.g., In re Parkmobile,* No. 1:21-cv-02182-SCJ (N.D. Ga. May 6, 2025), ECF No. 300 (awarding a total of $35,000 in service awards to seven representatives); *Corona-Cantu v. Ingo Money Inc.*, No. 1:24-cv-03023-MHC (N.D. Ga. June 17, 2025) (awarding $2,500 service award).[13] Given the Class Representatives' substantial participation in this Litigation, the requested $7,500 Service Awards are fair and reasonable.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the requested award of attorneys' fees consisting of $8,666,666.67, one-third of the $26,000,000 Settlement Amount, litigation expenses of $1,708,278.34, and service awards of $7,500 to each Class Representative.

---

[12]    *Accord South v. Progressive Select Ins. Co.*, No. 19-CV-21760-WPD, 2023 WL 2733548, at *5 (S.D. Fla. Mar. 21, 2023) (same); *Sanchez v. State Farm Mut. Auto. Ins. Co.*, No. 3:21CV-00372-TJC-LLL, 2025 WL 2460560, at *5 (M.D. Fla. Aug. 26, 2025) (same); *Venerus*, 674 F. Supp. 3d at 1110 (approving service award of $25,000).

[13]    *See also Wang v. Corp. of Mercer Univ.*, No. 5:23-CV-00193-TES, 2025 WL 1136132 (M.D. Ga. Apr. 17, 2025) (approving service awards of $1,500); *Cain v. CGM, L.L.C.*, No. 1:23-CV-02604-SEG, 2025 WL 2814398 (N.D. Ga. Mar. 10, 2025) (awarding a total of $11,500 in service awards to seven representatives); *Ebert v. PRIX Global*, No. 1:23-cv-04233-TWT (N.D. Ga. Jan. 23, 2025) (approving service awards of $1,750 for each class representative); *Briggs v. North Highland Co.,* No. 1:22-cv-03640 (N.D. Ga. Nov. 27, 2024) (approving service award of $2,500).

Dated: May 28, 2026.

Respectfully submitted,

*/s/Julie Braman Kane*
JULIE BRAMAN KANE
Florida Bar No. 980277
**COLSON HICKS EIDSON**
806 S. Douglas Road, Suite 1200
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
julie@colson.com
*Plaintiffs' Liaison Counsel*

JOHN A. YANCHUNIS
Florida Bar No. 324681
RYAN McGEE
Florida Bar No. 64957
RONALD PODOLNY (*pro hac vice*)
**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602 (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com
rpodolny@ForThePeople.com
*Chair, Plaintiffs' Executive Committee*

ADAM E. POLK (*pro hac vice*)
**GIRARD SHARP LLP**
601 California St, Ste 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com

GARY M. KLINGER (*pro hac vice*)
**MILBERG PLLC**
227 Monroe Street, Suite 2100
Chicago, IL 60606
866.252.0878
gklinger@milberg.com

STUART A. DAVIDSON
Florida Bar No. 0084824
DOROTHY P. ANTULLIS
Florida Bar No. 890421

21

NICOLLE B. BRITO
Florida Bar No. 43399
**ROBBINS GELLER RUDMAN**
**& DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: (561) 750-3000
(561) 750-3364 (fax)
sdavidson@rgrdlaw.com
dantullis@rgrdlaw.com
nbrito@rgrdlaw.com

M. ANDERSON BERRY (*pro hac vice*)
GREGORY HAROUTUNIAN (*pro hac*)
**EMERY REDDY PC**
600 Stewart Street, Suite 1100
Seattle, WA  98101-1269
Telephone:  916/823-6955
anderson@emeryreddy.com
gregory@emeryreddy.com

*Members, Plaintiffs' Executive Committee*

## LOCAL RUE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(3)(A), the undersigned certifies that she conferred telephonically and in writing with Evan Mannering, counsel for Defendants, regarding the relief sought in this motion, and counsel for the Defendants advised that Defendants do not oppose the motion.

*/s/ Julie Braman Kane*
Julie Braman Kane

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2026, a true and correct copy of the foregoing was electronically filed and served using CM/ECF.

*/s/ Julie Braman Kane*
Julie Braman Kane

22